Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Master Docket No.: 19-cv-04286-BLF |
| This Document Relates to:<br><br>ALL ACTIONS | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Beth L. Freeman<br>Date First Action Filed: July 25, 2019 |

Plaintiffs Asif Kumandan, Melissa Spurr, Melissa Spurr as guardian of B.S., a minor, Lourdes Galvan, and Eleeanna Galvan (collectively "Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against Defendants Alphabet Inc. and Google LLC (collectively, "Google" or "Defendants"), as follows:

## SUMMARY OF ALLEGATIONS

1.      This action arises from Google's unlawful and intentional interception and recording of individuals' confidential communications without their consent and subsequent unauthorized disclosure of those communications to third parties from approximately May 18, 2016 to the present (the "Class Period") in violation federal and state law.  Plaintiffs, on behalf of themselves and similarly situated purchasers of Google Assistant Enabled Devices (defined below) bring this suit under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq.*, Stored Communications Act ("SCA"), 18 U.S.C. §2701, *et seq.*, California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§631(a) and 632, intrusion upon seclusion, invasion of privacy under Art. I, Sec. 1 of the California Constitution, breach of contract, breach of express warranty, breach of implied warranty of merchantability, Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, and California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and for declaratory and other equitable relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.

2.      Google Assistant is an artificial intelligence-based virtual assistant developed by Google that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for simple tasks that Google Assistant executes.  Google preloads Google Assistant on devices it manufactures, including Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart displays, Google Nest Hub and Nest Hub Max; and its Pixel smartphones, laptops, and tablets ("Google Manufactured Devices").  Google Assistant also comes pre-installed on, or can be downloaded onto, smartphones, including those running Google's Android operating system (where the Google Assistant is pre-installed), and many other electronics manufactured by third parties ("Other Manufacturer Devices") (collectively, with Google Manufactured Devices, "Google Assistant Enabled Devices").

In order to use the Google Assistant feature on any Google Assistant Enabled Device, the user of the device must sign up for a Google Account and agree to Google's Terms of Service ("TOS") and Privacy Policy.  A Google Account is linked to every Google Assistant Enabled Device.  Google Assistant Enabled Devices are sold throughout the United States at national retailers, such as Wal-Mart, Best Buy, Target, and Home Depot, as well as through Google's own online store.

3.　　Federal and state privacy laws uniformly recognize individuals' reasonable expectations of privacy in confidential communications, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  Federal privacy laws prohibit unauthorized interception, access, disclosure, and use of the contents of oral and electronic communications.  California specifically recognizes privacy as a fundamental right, and accordingly, California law prohibits, among other things, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.

4.　　Well aware of consumers' legitimate and reasonable expectations of privacy, Google assured, and continues to assure, its customers, like Plaintiffs and members of the Class and Subclasses (defined below) (respectively, "Class Members" and "Subclass Members"), that Google Assistant Enabled Devices will only listen to, record, and share their conversations with their consent, which can be given only: (i) by uttering an activation command, like "Okay, Google" or "Hey, Google" ("hot word(s)"); or (ii) by manually pressing a button on the device.  By making these promises in its TOS and Privacy Policy, Google expressly and impliedly guaranteed that the Google Assistant Enabled Devices will conform to certain minimum standards for their ordinary and intended purpose.  Consequently, individuals who have purchased or used Google Assistant Enabled Devices and interacted with Google Assistant, including minors, have not consented to Google recording or disclosing conversations where "Okay, Google" or "Hey, Google" has not been uttered and no button on the device has been pressed.

5.　　On July 10, 2019, unsuspecting consumers learned that despite Google's assurances, Google has intercepted, recorded, disclosed, and misused private conversations of thousands of

individuals, including minors, without consent.[1]  As reported by Belgian news outlet VRT NWS, Google collects audio recordings of Google Assistant users in numerous instances where a hot word never is spoken and uses these recordings for its own commercial and financial benefit, namely to improve the speech recognition abilities of its Google Assistant Enabled Devices.  Worse, Google discloses these recording to subcontractors without Google Assistant users' knowledge or consent. Each such recording and disclosure constitutes an egregious breach of social norms and is a violation of federal and state law.

6.      To be sure, Google's violations are deliberate and calculated to lead to increased revenues for Google.  Google admitted that Google Assistant Enabled Devices can experience "false accepts," capturing conversations without the parties' consent or authorization.[2]  Yet, Google profits on this invasion of privacy by using the content of conversations Google admits it obtains without consent or authorization to improve the functionality of Google Assistant and to target personalized advertising to the very consumers whose privacy has been invaded.[3]  In short, Google intentionally, willfully, and knowingly violated consumers' privacy rights, including within the sanctity of consumers' own homes where they have the greatest expectation of privacy.

7.      Millions of Google Assistant Enabled Devices were sold to U.S. consumers during the Class Period.  Plaintiffs and Class Members would not have bought their Google Assistant Enabled Devices, or would have paid less for them, if they had known Google was intercepting, recording, disclosing, and otherwise misusing their conversations without consent or authorization.[4]

---

[1]     Lente Van Hee, *Google employees are eavesdropping, even in your living room, VRT NWS has discovered*, VRT NWS (Jul. 10, 2019), https://www.vrt.be/vrtnws/en/2019/07/10/google-employees-are-eavesdropping-even-in-flemish-living-rooms/.    Unless otherwise indicated, all websites in this Consolidated Amended Complaint ("Complaint") were last visited on October 24, 2019.

[2]     David Monsees, *More information about our processes to safeguard speech data*, GOOGLE'S THE KEYWORD (Jul. 11, 2019), https://www.blog.google/products/assistant/more-information-about-our-processes-safeguard-speech-data/.

[3]     Alphabet readily admits in its regulatory filings that Alphabet "generate[s] revenues primarily by delivering [advertising].  *See* Alphabet, Annual Report (Form 10-K) (Feb. 6, 2018), https://www.sec.gov/Archives/edgar/data/1652044/000165204418000007/goog10-kq42017.htm.

[4]     For convenience, Plaintiffs use variations of the phrase "intercepting, recording, disclosing, and otherwise misusing" throughout the Complaint in an effort to summarize the range of conduct that Plaintiffs allege is unlawful as set forth in the Claims for Relief below.  Use of this phrase,

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class Members, and minimal diversity exists because more than two-thirds of putative Class Members are citizens of a state different than Defendants.

9.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 since this suit is brought under the following federal statutes:  Wiretap Act, 18 U.S.C. §2510, *et seq*., SCA, 18 U.S.C. §2701, *et seq*., and Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*.  This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claims over which the Court has original jurisdiction.

10.     This Court has general personal jurisdiction over Defendants because their principal place of business is in California.   Additionally, Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' and the Class' claims occurred in this State.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District.  Furthermore, Defendants Alphabet Inc. and Google LLC are headquartered in this District and subject to personal jurisdiction in this District.

12.     **Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

---

however, is not intended to limit the scope of any required elements set forth in each respective Claim for Relief alleged herein.

# PARTIES

## A.   Plaintiffs

13.   Plaintiff Asif Kumandan ("Plaintiff Kumandan") is a natural person and citizen of the State of New York and a resident of Kings County.

14.   Plaintiff Melissa Spurr ("Plaintiff Spurr") is a natural person and citizen of the State of New Jersey and a resident of Union County.

15.   Plaintiff B.S. ("Plaintiff B.S.") is a minor and brings this suit by and through her legal guardian Plaintiff Spurr.  Plaintiff B.S. is a natural person and citizen of the State of New Jersey and a resident of Union County.

16.   Plaintiff Lourdes Galvan ("Plaintiff Galvin") is a natural person and citizen of the State of California and a resident of Los Angeles County.

17.   Plaintiff Eleeanna Galvan ("Plaintiff E.G.") was a minor during a portion of the Class Period and brings this suit on her own.  Plaintiff E.G. is a natural person and citizen of the State of California and a resident of Los Angeles County.

## B.   Defendants

18.   Defendant Alphabet Inc. ("Alphabet") is a Delaware corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351.  Alphabet is the successor issuer to, and parent holding company of, Google LLC.  Alphabet owns all the equity interests in Google LLC.[5]

19.   Defendant Google LLC ("Google LLC") is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

---

[5]   During the 2015 reorganization, certain of Google LLC's business segments were spun off and separated into independent entities under the ownership of Alphabet.  At various times during the Class Period, certain of the business segments re-merged with Google LLC under one corporate structure.  Accordingly, Alphabet and Google LLC both have been named as defendants in order to ensure all corporate entities who may be found liable for any portion of the alleged wrongdoing are part of this lawsuit.

## SUBSTANTIVE ALLEGATIONS

**I.     Background Information On Google and Google Assistant**

20.     Google's unofficial motto always has been "don't be evil."  Google was founded in 1998 by Larry Page and Sergey Brin as a search engine website.  Today, Google achieves a significant portion of its profits through advertising.  To support its advertising platform, Google has launched numerous products that enable Google to target personalized advertising to users.

21.     One of these products is Google Assistant.  Google Assistant is a computer program developed by Google that is pre-installed on or can be downloaded onto Google Assistant Enabled Devices.

22.     Google Assistant is intended to provide its users with easy access to information available on the internet and/or control over other internet-connected devices using their voice.  To facilitate this process, Google Assistant listens for two sets of "hot words" – "Hey Google" and "Okay Google."  These phrases indicate the start of a user command.

23.     Google Assistant Enabled Devices listen for these hot words by recording and analyzing short snippets of audio from their surroundings.  This audio is stored locally in the Google Assistant Enabled Device's random-access memory ("RAM").  Audio stored in a Google Assistant Enabled Device's RAM is continuously overwritten as new audio is recorded and analyzed until a hot word is detected or the device is manually activated.

24.     When a Google Assistant Enabled Device detects a hot word or is manually activated by pressing a button on the device, it switches into "active listening" mode.  At this point, the Google Assistant Enabled Device begins recording and transmitting audio to Google for analysis.  One purpose of this analysis is to allow the Google Assistant Enabled Device to respond to the user commands issued after a hot word or manual activation.  For example, if a user asks Google Assistant, "Hey Google, what is the weather in Los Angeles?" the Google Assistant Enabled Device will transmit that audio to Google for analysis and to provide a response.  Users can also ask Google Assistant to, among other things, provide reminders ("Remind me to pick up groceries at 5 P.M."),

set timers ("Set a timer for 20 minutes"), or control other internet-connected "smart devices" such as a thermostat, television, or music player.

25.     Google also analyzes recorded audio to improve the functionality of Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled Devices. This includes audio that is captured without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  Google therefore profits by using the content of conversations obtained without authorization or consent.

26.     There are approximately 2.3 billion Google Assistant Enabled Devices in the world. It is estimated that as of the end of 2018 Google had sold approximately 43 million Google Home devices in the United States.[6]  That number is projected to rise to 60 million in 2019.[7]  Google Pixel smartphone adoption also is on the rise with an estimated 5.3 million Pixel's projected to be in use by the end of 2019.[8]  Although Google does not report its earnings by Google-manufactured hardware segment, one analyst recently estimated that Google's Pixel, Home, and Nest products would generate in 2019 approximately $12.2 billion in revenue and $4.2 billion in gross profits.[9] Google Manufactured Devices also provide Google with increased personalized advertising monetization opportunities.[10]

## II.     Users of Google Assistant Enabled Devices Reasonably Expected That Their Private Conversations Would Not Be Intercepted, Recorded, Disclosed, Or Otherwise Misused

27.     Plaintiffs' and Class Members' expectation of privacy in their confidential and private communications, which Google intercepted, recorded, disclosed, or otherwise misused, is deeply enshrined in California's Constitution.  Article I, section 1 of the California Constitution

---

[6]     Bret Kinsella, *RBC Analyst Says 52 Million Google Home Devices Sold to Date and Generating $3.4 Billion in 2018 Revenue*, VOICEBOT.AI (Dec. 24, 2018), https://voicebot.ai/2018/12/24/rbc-analyst-says-52-million-google-home-devices-sold-to-date-and-generating-3-4-billion-in-2018-revenue/; Mark S.F. Mahaney, *Alphabet Inc.*, RBC CAPITAL MARKETS, at 15 (Dec. 20, 2018) ("RBC Report").

[7]     RBC Report at 15.

[8]     *Id.* at 8.

[9]     *Id.* at 4.

[10]    *Id.* at 1, 3.

provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, ***and privacy***." Art. I., Sec. 1, Cal. Const. [Emphasis added].

28. The phrase "***and privacy***" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11. Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> ***The right of privacy is the right to be left alone.*** It is a fundamental and compelling interest. It protects ***our homes***, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose. ***It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.***
>
> ***Fundamental to our privacy is the ability to control circulation of personal information.*** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[11]

[Emphasis added].

29. Consistent with the language of Proposition 11, a number of studies examining the collection of consumers' personal data confirms that the surreptitious taking of personal, confidential, and private information from hundreds of thousands of individuals, as Google has done here, violates expectations of privacy that have been established as general social norms. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data. Indeed, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe

---

[11] Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[12]  Similarly, a study published in the *Harvard Business Review* shows that consumers are largely unaware of how their personal information is used by businesses, with fewer than 20% of consumers realizing that they share their communication history, IP addresses, and web-surfing history when using a standard web browser.[13]  A recent article published by the *USA Today*, revealed that 93% of parents who use voice-activated devices say "it is important to know when their family's voices are being recorded [and an] equal number said it's important to control whatever information is collected about them."[14]  It also is simply common sense that voice-activated software like Google Assistant should only become activated when a hot word is spoken or the device is manually triggered.

30.     The expectation of privacy is heightened in one's own home, which historically is a legally protected zone of privacy.  Indeed, the passage of California's Proposition 11 evidences that voters sought to definitively ensure that a right of privacy was recognized in one's own home.  It is undeniable that Google Assistant Enabled Devices are used in the home, and some can **only** be used in the home.  As the name implies, Google Home devices, as well as other Google Assistant enabled smart speaker devices, necessarily are located in the home.  And, market research indicates that one-quarter of smart speakers are located in the bedroom, where there is an even greater expectation of privacy.[15]  Google Nest devices, which operate as a hub to control, including with Google Assistant,

---

[12]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[13]     Timothy Morey, Theodore Forbath, and Allison Shoop, *Customer Data: Designing for Transparency and Trust*, HARVARD BUSINESS REVIEW (May 2015), https://hbr.org/2015/05/customer-data-designing-for-transparency-and-trust.

[14]     Edward C. Baig, *Hey, Google and Alexa: Parents worry voice assistants can listen in on kids, survey finds*, USA TODAY (Mar. 28, 2019), https://www.usatoday.com/story/tech/talkingtech/2019/03/28/parents-dont-want-smart-speakers-to-secretly-record-kids-survey/3288806002/.

[15]     Dave Chaffey, *Consumer use of voice-controlled digital assistants / smart speakers*, SMART INSIGHTS (Jan. 15, 2018), https://www.smartinsights.com/digital-marketing-strategy/consumer-use-of-voice-controlled-digital-assistants-smart-speakers/.

various household devices such as thermostats, security cameras, and door locks, also are exclusively located in the home.

31.     However, ***regardless*** of where a Google Assistant Enabled Device is used, Google ***itself*** expressly and impliedly assures Plaintiffs and Class Members that Google Assistant Enabled Devices will ***only*** listen to and record their private confidential communications and transmit the recordings thereof to Google if users speak a hot word or otherwise manually activate "active listening" mode.   Accordingly, in its official Privacy Policy,[16] Google denies recording users' conversations absent the utterance of a hot word.  In describing its Privacy Policy, Google provides the following answer to a Frequently Asked Question:

**Is Google Home recording all of my conversations?**

No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard. When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime. [17]

32.     Google's policies also state that the audio of recordings from Google Assistant Enabled Devices will not be shared with third parties.  *Id*.

33.     These assurances confirm the reasonableness of Plaintiffs' and Class Members' expectation of privacy in the context of their homes and in the presence of Google Assistant Enabled Devices ***in any location***.  Based on Google's representations, Plaintiffs and Class Members did not expect that their private and confidential information would be intercepted, recorded, disclosed, or otherwise misused, including by being listened to by unauthorized third parties.  Despite Google's assurances, Google intercepted, recorded, disclosed, and otherwise misused intimate conversations,

---

[16]     GOOGLE PRIVACY & TERMS, Information Google collects, https://policies.google.com/privacy#infocollect.

[17]     GOOGLE, Google Nest Help, Help Center, Your Privacy, *More about data security and privacy on devices that work with Assistant*, https://support.google.com/googlenest/answer/7072285?hl=en.

including, *inter alia*, talks between parents and children and/or confidential business phone calls, for Google's own business purposes.

**III.     Google Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent or Authorization**

34.     On July 10, 2019, VRT NWS, a Belgian news media outlet, reported that "thousands of [Google's subcontractors]" are systematically listening to audio files recorded by Google Home smart speakers and the Google Assistant smartphone app from devices around the world, including audio that does not contain a hot word.[18]

35.     According to VRT NWS, when an individual interacts with Google Assistant's speech recognition feature, the software automatically generates a script of the conversation which is then stored along with the audio recording.  Google subcontractors are then tasked with analyzing whether Google Assistant has accurately interpreted the individual's speech.  To do so, Google's subcontractors log into the online tool and are presented with a list of audio files and corresponding transcripts to analyze.  The reviewers double check that "every cough and every audible comma" is reflected in the transcript.  VRT NWS reports that they "have 3 sources confirming that this is the way Google works."[19]

36.     VRT NWS was given access to "more than a thousand" audio recordings and identified 153 conversations "that should never have been recorded and during which the command 'Okay Google' was clearly not given."  According to VRT NWS, these recordings include "bedroom conversations, conversations between parents and their children" as well as "professional phone calls containing lots of private information." [20]

37.     The level of detail in the recordings reviewed by VRT NWS was substantial enough to enable VRT NWS to identify the individuals without VRT NWS having any of their information.  VRT NWS tracked down one couple and played the audio recording from their Google Assistant

---

[18]     Van Hee, *supra* n.1

[19]     *Id.*

[20]     *Id.*

Enabled Device.  The couple immediately identified the voices as those "of their son and their grandchild."[21]

38.     VRT NWS's report reveals that instead of only recording what an individual says after uttering a hot word, Google Assistant Enabled Devices record anything said that is preceded by anything that *remotely* sounds like a hot word, and that even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording.[22]

39.     In response to VRT NWS's report, Google confirmed that their language reviewers listen to, recorded, and stored conversations, claiming that only "0.2 percent" of all audio snippets are subject to human review.  Google also acknowledged that "devices that have the Google Assistant built in may experience what we call a 'false accept.'  This means that there was some noise or words in the background that our software interpreted to be the hot word (like "Ok Google")."  Google defends its actions as "necessary to creating products like Google Assistant." [23]

40.     Following this disclosure, on August 1, 2019, German regulators prohibited Google from listening to any conversations utilizing the Google Assistant Software in Europe.[24] Specifically, the Hamburg Commissioner for Data Protection and Freedom of Information stated that in banning Google from listening to conversations that "those recordings could include sensitive and private information, not only from people using the device, but also from others in the same household."[25]

41.     As with the recordings Google obtains with consent, Google analyzes the recordings it obtains where no hot word has been uttered or button pushed to improve the functionality of Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled

---

[21]     *Id.*

[22]     *Id.*

[23]     Monsees, *supra* n.2.

[24]     Richard Neiva, *Google temporarily banned from listening to voice recordings in the EU*, CNET (Aug. 1, 2019), https://www.cnet.com/news/google-temporarily-banned-from-listening-to-voice-recordings-in-the-eu/.

[25]     *Id.*

Devices.  By analyzing consumers' conversations without their authorization or consent, Google is profiting from its invasion of such consumers' privacy.

42.     Significantly, Google Assistant makes no distinction between the voices of adults and children.  As a result, Google is recording children's conversations, and disclosing the content of those communications to third parties, whenever those children say a word that ***remotely*** sounds like a hot word to the Google Assistant Enabled Device.  This is especially troubling as children ***cannot*** consent to being recorded by the Google Assistant Enabled Device or to having their communications disclosed.

43.     Google therefore engaged in several unlawful actions by capturing Plaintiffs' and Class Members' communications without the utterance of a hot word or manual activation of the Google Assistant Enabled Device, and subsequently disclosing those communications without authorization.  As set forth with specificity in the Claims for Relief, Google:  (1) intentionally intercepted oral communications without consent, and subsequently disclosed to third parties and used those communications, in violation of the Wiretap Act, 28 U.S.C. §2511(1)(a), (c), (d); (2) intentionally made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers recordings of Plaintiffs' and Class Members' communications and then knowingly divulged those communications to third parties in violation of the SCA, 18 U.S.C. §2701(a) and §2702(a)(1); (3) intentionally made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and willfully learned the contents of Plaintiffs' and Class Members' communications without consent and used that information for its own business purposes in violation of CIPA, Cal. Penal Code §631(a); (4) intentionally recorded Plaintiffs' and Class Members' confidential communications without consent in violation of CIPA, Cal. Penal Code §632; (5) intentionally intruded into Plaintiffs' and Class Members' private conversations in violation of their privacy rights under California common law and the California Constitution; (6) breached material terms of its contract with Plaintiffs and Class Members as well as breached the express and implied warranties that Google promised to Plaintiffs and Class Members; and (7) engaged in unfair and unlawful acts in violation of the UCL.

44.     Given the concealed and secretive nature of Google's conduct, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

**IV.   Google Has Unlawfully Violated Users' Privacy Rights for Decades**

45.     Contrary to its unofficial motto, Google *is* evil.  Google's recidivist track record as a violator of privacy rights evidences that Google is well aware that its conduct encroaches on its customers' privacy.  In recent years, Google has been investigated by dozens of countries and has paid tens of millions of dollars to U.S. federal and state regulators in penalties and settlements.

46.     For example, beginning in 2010, nine countries found Google had violated their privacy laws in connection with Google's deployment of the Street View program,[26] during which Google unlawfully collected people's email, passwords, and other personal data.  U.S. regulators also investigated Google's conduct in connection with its use of Street View.  Ultimately, 38 state attorneys general fined Google $7 million for its illegal and deceptive collection of consumers' WiFi data, while the Federal Communications Commission ("FCC") fined Google $25,000 for obstructing its investigation.

47.     Shortly thereafter, in 2011, the Federal Trade Commission ("FTC") initiated an investigation into Google's violations of its own privacy promises to consumers when it launched its social network, Google Buzz, in 2010.[27]  As part of the settlement with the FTC in 2011, Google was barred from misrepresenting the extent to which consumers could exercise control over the collection of their information.  Google, however, violated the terms of the settlement, for which it was fined $22.5 million in August 2012, representing one of the largest civil penalties the FTC has imposed for a violation of an FTC order.[28]  The very next year, Google paid $17 million to 37 U.S.

---

[26]     Street View is the name for Google's web-based geographic photography program that captured 360-degree images of roads, homes, and individuals.

[27]     *FTC Charges Deceptive Privacy Practices in Googles Rollout of Its Buzz Social Network,* FEDERAL TRADE COMMISSION (Mar. 30, 2011), https://www.ftc.gov/news-events/press-releases/2011/03/ftc-charges-deceptive-privacy-practices-googles-rollout-its-buzz.

[28]     *Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser,* FEDERAL TRADE COMMISSION (Aug. 9, 2012), https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented.

states and the District of Columbia as compensation for circumventing the privacy settings of millions of users of Apple's Safari web browser between 2011 and 2012.[29]

48.    On January 21, 2019, the French administrative regulatory body, *Commission nationale de l'informatique et des libertés* ("CNIL") fined Google $57 million for, *inter alia*, lack of transparency and the lack of valid basis to process the personal data of the users of its services.[30] During its investigation, which the CNIL conducted beginning in June 2018, CNIL observed that Google failed to validly obtain consent from its users because the users' consent was not "sufficiently informed" and was not "specific" nor "unambiguous" as required pursuant to the General Data Protection Regulation, Europe's regulatory framework for data protection and privacy.[31]

49.    Google did not spare minors of its privacy intrusions either.  For years, Google indiscriminately collected personal information from children under the age of 13 through YouTube channels directed at children without first notifying parents and getting their consent in violation of the Children's Online Privacy Protection Act ("COPPA").[32]  For this violation, Google and its subsidiary YouTube paid a record $170 million to the FTC and the N.Y. Attorney General in September 2019.[33]

## V.    Google's Unlawful Actions Have Harmed Plaintiffs

50.    Plaintiffs each either owned and/or interacted with a Google Assistant Enabled Device during the Class Period and their conversations were intercepted, recorded, disclosed, or otherwise misused by Google without their consent or authorization.

---

[29]    Brian Fung, *Why States are the Big Winner in the $17 Million Google-Safari Settlement*, THE WASHINGTON POST (Nov. 19, 2013), https://www.washingtonpost.com/news/the-switch/wp/2013/11/19/why-states-are-the-big-winner-in-the-17-million-google-safari-settlement/.

[30]    *The CNIL's restricted committee imposes a financial penalty of 50 Million euros against GOOGLE LLC,* CNIL (Jan. 21, 2019), https://www.cnil.fr/en/cnils-restricted-committee-imposes-financial-penalty-50-million-euros-against-google-llc.

[31]    *Id.*

[32]    *See Federal Trade Commission et al. v. Google LLC et al.*, No. 1:19-cv-02642 (D.C.).

[33]    *Google and YouTube Will Pay Record $170 Million for Alleged Violations of Children's Privacy Law,* FEDERAL TRADE COMMISSION (Sept. 4, 2019), https://www.ftc.gov/news-events/press-releases/2019/09/google-youtube-will-pay-record-170-million-alleged-violations.

15

51.     Plaintiff Spurr owned a Google Home device during the Class Period. Plaintiffs Spurr and B.S., who is a member of Plaintiff Spurr's household, interacted with this Google Home device repeatedly during the Class Period.  As described above, Google and this Google Assistant Enabled Device intentionally accessed Plaintiffs' communications without authorization and unlawfully recorded Plaintiffs Spurr and B.S. without their consent on multiple occasions, including when they failed to utter a hot word or manually activate the Google Assistant Enabled Device.

52.     Plaintiff Kumandan owned a Google Pixel smartphone with Google Assistant installed during the Class Period.  Plaintiff Kumandan interacted with the Google Assistant on his Google Pixel repeatedly during the Class Period.  As described above, Google and this Google Assistant Enabled Device intentionally accessed Plaintiff's communications without authorization and unlawfully recorded Plaintiff Kumandan without his consent on multiple occasions, including when he failed to utter a hot word or manually activate the Google Assistant Enabled Device.

53.     Plaintiff Galvan and Plaintiff E.G., who is a member of Plaintiff Galvan's household, owned a Samsung Galaxy Tab device during the Class Period.  Plaintiff E.G's Samsung Galaxy Tab device contained the Google Assistant, which Plaintiff E.G. activated upon purchase of the device. Plaintiff Galvan and Plaintiff E.G. interacted with the Google Assistant Enabled Device repeatedly during the Class Period.  As described above, Google and this Google Assistant Enabled Device intentionally accessed Plaintiffs' communications without authorization and unlawfully recorded Plaintiff Galvan and Plaintiff E.G. without their consent on multiple occasions, including when they failed to utter a hot word or manually activate the Google Assistant Enabled Device.

54.     At no point did Plaintiffs consent to or authorize Google to intercept, record, disclose, or otherwise misuse their and their children's conversations when no hot word was spoken or button pushed.  Google does not disclose that it intercepts, records, and otherwise misuses conversations that are not preceded by a hot word or in instances where the Google Assistant Enabled Device is not manually activated.  Plaintiffs Spurr, Kumandan, Galvan, and E.G., therefore, did not agree to having Google intercept, record, disclose, or otherwise misuse their conversations through their respective Google Assistant Enabled Devices.  Moreover, Google could not have obtained consent

from Plaintiff B.S., who was a minor during the entire Class Period, and Plaintiff E.G., who was a minor during a portion of the Class Period.  Plaintiffs would not have purchased, or would have paid less for their Google Assistant Enabled Devices had they known that Google engaged in the unlawful actions described herein.

55.    Plaintiffs would like to continue to use Google Assistant Enabled Devices in the future, but will be uncertain as to whether Google has ceased its unlawful practices and violation of their privacy rights without the equitable relief requested herein, specifically an injunction prohibiting Google from engaging in the unlawful practices alleged herein.  This is particularly the case given the surreptitious nature of Google's misconduct.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

56.    The applicable statutes of limitations have been tolled by Google's knowing and active concealment and denial of the facts alleged herein, namely its practice of intercepting, recording, disclosing, and misusing users' private and confidential communications.  Plaintiffs and Class Members could not have reasonably discovered the truth about Google's practices until shortly before this class action litigation was commenced.

57.    As alleged in detail herein, Google expressly and impliedly assured consumers that Google Assistant Enabled Devices will *only* listen to and record their voice with the consumers' consent, by uttering a hot word or by manually pressing a button on the device to enable "active listening," and that it will not share personal information with third parties without consent.  Accordingly, Google denies listening to and recording users' conversations absent the utterance of a hot word or manual activation.  Google policies likewise deny that audio recordings from Google Assistant Enabled Devices will be shared with third parties.

58.    Furthermore, Plaintiffs and Class Members also have a reasonable expectation of privacy in oral and electronic communication regardless of Google's express assurances.  This expectation is particularly heightened where, as here, such communication occurs within one's home, which is a zone of privacy uniformly recognized by state and federal privacy laws.

59.    Thus, based on Google's representations and Plaintiffs' and Class Members' expectations of privacy, Plaintiffs and Class Members would not have been able to uncover the facts underlying their claims prior to the publication of the July 10, 2019 VRT NWS article, which exposed Google's practices of intercepting, recording, and sharing with unauthorized third parties users' private and confidential information.  This is because all relevant facts were in the possession of Google who actively concealed their existence.

## CLASS ACTION ALLEGATIONS

60.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individual purchasers of a Google Assistant Enabled Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent from at least as early as May 18, 2016 to the present, or during the applicable statute of limitations period (the "Class Period").  Within the Class is a Subclass of those who are or were minor children and were recorded by a Google Assistant Enabled Device and whose conversations were shared with third parties during the Class Period ("Minors Subclass").[34]  Also within the Class is a Subclass of individual purchasers of a Google Manufactured Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent during the Class Period ("Google Manufactured Device Subclass").

61.    Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

---

[34]    Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

62.     **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records, including the Google Accounts associated with each Google Assistant Enabled Device.

63.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.  The Class likely consists of hundreds of thousands of individuals, if not millions of individuals, and Class Members can be identified through Defendants' records.

64.     **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members.  Common questions for the Class include, but are not limited to, the following:

a.     Whether Google Assistant Enabled Devices intercept or record individuals' conversations absent that user uttering a hot word or otherwise activating the device;

b.     Whether Google Assistant Enabled Devices record the conversations of minors who interact with them;

c.     Whether individuals who use Google Assistant Enabled Devices have a reasonable expectation of privacy under federal and California law;

d.     Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information violated state and federal privacy laws;

e.     Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information constitute a breach of the contract that exists with Plaintiffs and Class Members;

f.     Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information breached its express warranties and implied warranties of merchantability;

g.    Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information violated the Magnuson-Moss Warranty Act;

h.    Whether Plaintiffs and Class Members are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

i.    Whether Plaintiffs and Class Members have sustained damages as a result of Google's conduct, and, if so, what is the appropriate measure of damages or restitution.

65.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Class.  Plaintiffs and Class Members suffered an invasion of privacy as a result of Defendants' wrongful conduct that is uniform across the Class.

66.    **Adequate Representation:** Plaintiffs have fairly and adequately represented and protected the interests of the Class and will continue to do so.  They have retained counsel competent and experienced in complex litigation and class actions, including privacy violations.  Plaintiffs have no interests that are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.

67.    **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

68.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

69.     California's substantive laws apply to every member of the Class, regardless of where in the United States the Class Member resides.  Defendants' TOS states: "By using our Services, you are agreeing to these terms.  Please read them carefully."

70.     Specifically, Defendants' TOS states under the subheading "About These Terms" that: "The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services.  All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."[35]

71.     By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

72.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

73.     Defendants' U.S. headquarters and principal place of business is located in California.  Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws.  Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

---

[35]     *See* GOOGLE PRIVACY & TERMS, About these Terms, https://policies.google.com/terms?hl=en-US#toc-about.

74. California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class Members.

75. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Wiretap Act**
**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. §2510, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

76. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

77. The Wiretap Act prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

78. "Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]" 18 U.S.C. §2510(2).

79. "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

80. "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. §2510(8).

81. "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. §2510(6).

82. Plaintiffs and Class Members, as individuals, are persons as defined under §2510(6).

83.     Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

84.     Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

85.     Google Assistant is a device for purposes of the Wiretap Act because it is a software program used to intercept oral communications.

86.     Plaintiffs' and Class Members' private and confidential verbal communications that were intercepted in real time by Google Assistant when a hot word was not uttered or in instances where the Google Assistant Enabled Device was not manually activated are "oral communications" within the meaning of 18 U.S.C. §2510(2).

87.     Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not intercepting, recording, disclosing, or using their oral communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential oral communications.

88.     Pursuant to 18 U.S.C. §2511(1)(a), Google, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with Google Assistant and Google Assistant Enabled Devices, intentionally intercepted, intercepts, or endeavored to intercept, the content of oral communications made by Plaintiffs and Class Members without obtaining actual consent from any authorized party to the oral communication.

89.     Interception of Plaintiffs' and Class Members' private and confidential oral communications without their consent occurs when the Google Assistant switches to active listening mode without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  This interception occurred during transmission, as Google Assistant operates in real time to acquire the content of Plaintiffs' and Class Members' oral communications.  The contents of the oral communications intercepted are the verbatim utterances of Plaintiffs and Class Members.

90.     Plaintiffs and Class Members could not have provided consent to interception of their oral communications because such consent could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

91.     Additionally, Plaintiffs and Class Members who are minors never consented to being recorded or having their communications disclosed by Google, nor did Google even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Google recording or disclosing their children's interactions with Google Assistant.

92.     Pursuant to 18 U.S.C. §2511(1)(c), Google intentionally disclosed, discloses, or endeavored to disclose to third parties the contents of Plaintiffs' and Class Members' oral communications while knowing or having reason to know that the information was obtained through the interception of the oral communications in violation of 18 U.S.C. §2511(1)(a).

93.     After Google intentionally intercepts the contents of Plaintiffs' and Class Members' oral communications without their consent, the Google Assistant records and transmits the intercepted communications over the internet to Google's servers for analysis and storage.  Google then intentionally discloses these recordings of the contents of Plaintiffs' and Class Members' intercepted communications or transcripts of these recordings to third parties in order to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

94.      Pursuant to 18 U.S.C. §2511(1)(d), Google intentionally used, uses, or endeavors to use the contents of Plaintiffs' and Class Members' oral communications knowing or having reason to know that the oral communication was obtained through interception in violation of 18 U.S.C. §2511(1)(a).

95.     Google intentionally uses the contents of Plaintiffs' and Class Members' intercepted communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

96.     The practices complained of in this Count fall outside of the scope of Google's ordinary course of business because they violate of Google's own policies and are in contradiction

1   to the generally understood manner in which voice recognition software like Google Assistant is

2   supposed to function.

3        97.    Google's actions were at all relevant times knowing, willful, and intentional as

4   evidenced by Google's admission that a significant portion of the recordings it shares with its

5   contractors are made without use of a hot word and its use of the information to, among other things,

6   improve the functionality of Google Assistant for Google's own financial benefit, to target

7   personalized advertising to users, and to generate significant profits.

8        98.    Google intercepted, disclosed, and used the contents of Plaintiffs' and Class

9   Members' oral communications in reckless disregard for Plaintiffs' and Class Members' privacy

10   rights and for its own financial benefit to profit from the improved functionality of Google Assistant

11   and targeted personalized advertising to users.

12        99.    As a result, Plaintiffs and Class Members have suffered harm and injury due to the

13   interception, disclosure, and/or use of private and personal, confidential, and sensitive

14   communications.

15        100.    Pursuant to 18 U.S.C. §2520, Plaintiffs and Class Members have been damaged by

16   the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and

17   are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be

18   determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs

19   and the Class and any profits made by Google as a result of the violation or (b) statutory damages

20   of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys'

21   fees and other litigation costs reasonably incurred.

22   **SECOND CLAIM FOR RELIEF**
**Violation of the SCA**
23   **Title II of the ECPA (18 U.S.C. §2701, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**
24

25        101.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

26   the same force and effect as if fully restated herein.

27

28

102.    Although Plaintiffs believe that they have independent claims under both the Wiretap Act and the SCA, in the event that the Court determines any of the allegations are contradictory, Plaintiffs plead in the alternative.

103.    The SCA prohibits a person from intentionally accessing without authorization, or exceeding authorization to access, a facility through which an "electronic communication service" is provided, and thereby obtains an "electronic communication" while it is in "electronic storage." 18 U.S.C. §2701(a).

104.    The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]"  18 U.S.C. §2702(a)(1).

105.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]"  18 U.S.C. §2510(12).

106.    "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]"  18 U.S.C. §2510(17)(A)-(B).

107.    "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]"  18 U.S.C. §2510(15).

108.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. §2510(6).

109.    Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

110.    Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

111.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

112.    Google Assistant is a service that provides Plaintiffs and Class Members the ability to send and receive electronic communications to and from Google's servers over the internet and thus, is an "electronic communication service" within the meaning of the SCA.  Google provides an electronic communication service "to the public" because the Google Assistant is a software program that anyone within a certain proximity to a Google Assistant Enabled Device can use and because Google Assistant Enabled Devices are available for purchase and use by anyone.

113.    Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not accessing, recording, or disclosing their communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential communications.

114.    Google made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers recordings of communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated.

115.    Google Assistant is required for the transmission of an electronic communication to Google and is the facility through which Google provides an electronic communication service (receiving and responding to Plaintiffs' and Class Members' queries).

116.    Once Google Assistant switches into active listening mode, it records "sounds, data, or intelligence" that is then transmitted over the internet to Google's servers, which are located all over the world, for analysis and storage.  Thus, Plaintiffs' and Class Members' interactions with Google Assistant constitute "electronic communications" for purposes of 18 U.S.C. §2701(a).

117.    Google Assistant listens for hot words by recording and analyzing short snippets of audio, which is stored locally in the Google Assistant Enabled Device.  Audio stored in a Google

27

Assistant Enabled Device is continuously overwritten until a hot word is detected or the device is manually activated.  Pursuant to 18 U.S.C. §2701(a)(1), Google accesses this temporary, intermediate storage without authorization when Google Assistant sends the electronic communication to its servers without a hot word being uttered or without the Google Assistant Enabled Device being manually activated.

118.    Plaintiffs and Class Members could not have provided consent or authorization to Google to access their electronic communications because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

119.    Additionally, Plaintiffs and Class Members who are minors never consented to being recorded or having their communications disclosed by Google, nor did Google even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Google recording or disclosing their children's interactions with Google Assistant.

120.    Google intentionally accessed without authorization Plaintiffs' and Class Members' Google Assistant Enabled Devices and obtained Plaintiffs' and Class Members' electronic communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Google Assistant and targeting of personalized advertising to users.

121.    Google's servers also store Plaintiffs' and Class Members' recorded audio for purposes of back-up.  According to Google, Plaintiffs and Class Members can access this back-up audio to view it or delete it.

122.    Pursuant to 18 U.S.C. §2702(a)(1), Google knowingly divulged the contents of Plaintiffs' and Class Members' communications while they were in electronic storage when it transmitted the recorded audio and/or transcripts to third parties for analysis or other purposes, including improving the functionality of Google Assistant for Google's own financial benefit and targeting personalized advertising to users.

123.   Google knowingly divulged Plaintiffs' and Class Members' communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Google Assistant and the targeting of personalized advertising to users.

124.   Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

125.   As a result of Google's violations of the SCA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, due to the unauthorized access and disclosure of private and personal, confidential, and sensitive communications.

126.   Pursuant to 18 U.S.C. §2707, Plaintiffs and Class Members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Google as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

### THIRD CLAIM FOR RELIEF
**Violation of the CIPA**
**Cal. Penal Code §631(a)**
**(On Behalf of Plaintiffs and the Class)**

127.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

128.   Cal. Penal Code §630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting

1  from the continual and increasing use of such devices and techniques has created a serious threat to

2  the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

3      129.    Cal. Penal Code §631(a) prohibits the use of "any machine, instrument, or

4  contrivance, or . . . any other manner" to "intentionally tap[], or make[] unauthorized connection,

5  whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or

6  telephone wire, line, cable, or instrument" *or* to "willfully and without the consent of all parties to

7  the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the

8  contents or meaning of any message, report, or communication while the same is in transit or passing

9  over any wire, line, or cable, or is being sent from, or received at any place within this state."

10      130.    Cal. Penal Code §631(a) further prohibits the "use[], or attempt[] to use, in any

11  manner, or for any purpose, or to communicate in any way, any information so obtained."

12      131.    Pursuant to Cal. Penal Code §7, Google, as a corporation, is a "person."

13      132.    Plaintiffs and Class Members owned or interacted with Google Assistant through

14  Google Assistant Enabled Devices during the Class Period.

15      133.    Plaintiffs and Class Members reasonably expected, based on a general understanding

16  of how voice recognition software like Google Assistant is supposed to function and based on

17  Google's own assurances, that Google was not accessing, recording, or learning the contents of their

18  communications unless they uttered a hot word or manually activated the Google Assistant Enabled

19  Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members'

20  confidential communications.  Google's actions would be highly offensive to a reasonable person.

21      134.    Google made unauthorized connections with Plaintiffs' and Class Members' Google

22  Assistant and Google Assistant Enabled Devices and transmitted to Google's servers Plaintiffs' and

23  Class Members' communications not preceded by the utterance of a hot word or where the Google

24  Assistant Enabled Device was not manually activated.

25      135.    Google, and those who aided or were employed by Google, willfully and without the

26  consent of all parties read, attempted to read, or learned the content of Plaintiffs' and Class

27  Members' communications without the consent of all parties to the communication while the same

28

was in transit or being sent from or received at any place within the state.  Google recorded and transmitted to Google, Plaintiffs' and Class Members' communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated and then transferred those communications to third parties for analysis for the purpose of reading or learning the content of Plaintiffs' and Class Members' communications to improve the functionality of Google Assistant, to target personalized advertising to users, and to generate significant profit.

136.    After Google obtained Plaintiffs' and Class Members' communications by unauthorized means in violation of CIPA, Google used the contents of those communications by transferring them to third parties in order to improve the functionality of Google Assistant, to target personalized advertising to users, and to generate significant profit.

137.    Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

138.    Additionally, Plaintiffs and Class Members who are minors never consented to being recorded by Google, nor did Google even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Google recording their children's interactions with Google Assistant.

139.    Each of the actions taken by Google and complained of herein extends beyond the normal occurrences, requirements, and expectations regarding the facilitation and transmission of queries via Google Assistant and Google Assistant Enabled Devices.

140.    Google's acts in violation of CIPA occurred in the State of California because those acts resulted from business decisions, practices, and operating policies that Google developed, implemented, and utilized in the State of California.  Google developed, designed, built, and physically placed in California the Google Assistant used by Google via Google Assistant Enabled Devices that violate CIPA.

141.    Google has publicly acknowledged that such unauthorized actions occurred during the Class Period.

142.   Google's acts and practices complained of herein, engaged in for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits, violated and violate Cal. Penal Code §631.

143.   Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.  Google's actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

144.   As a result of Google's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

145.   Google is able, and the Court should require it, to destroy the recordings of Plaintiffs' and the Class Members' interactions with Google Assistant Enabled Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

146.   Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code §1021.5.

**FOURTH CLAIM FOR RELIEF**
**Violation of the CIPA**
**Cal. Penal Code §632**
**(On Behalf of Plaintiffs and the Class)**

147.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

148.    Cal. Penal Code §632 prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one another or by means of a telephone, telegraph or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication.

149.    Pursuant to Cal. Penal Code §7 and §632(b), Google, as a corporation, is a "person."

150.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

151.    Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not recording them unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' confidential communications.  Google's actions would be highly offensive to a reasonable person.

152.    Google Assistant and Google Assistant Enabled Devices created recordings that were transmitted to Google of Plaintiffs' and Class Members' confidential communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated during the Class Period.  These recordings were made without Plaintiffs' consent.

153.    Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

154.    Additionally, Plaintiffs and the Class Members who are minors never consented to being recorded by Google, nor did Google even attempt to seek such consent.  The parents of Plaintiffs and Class Members who are minors likewise never consented to Google recording their children's interactions with such Google Assistant Enabled Devices.

155.    Google has publicly acknowledged that such unauthorized recording occurred during the Class Period.

156.    By recording Plaintiffs and Class Members without consent when a hot word was not uttered or the Google Assistant Enabled Device was not manually activated, Google "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to . . . record the confidential communication" in violation of California law.  Cal. Penal Code §632.

157.    Google engaged in the acts and practices complained of herein for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

158.    Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.  Google's actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

159.    As a result of Google's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

160.    Google is able, and the Court should require it, to destroy the unauthorized recordings of Plaintiffs' and the Class Members' interactions with Google Assistant Enabled Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

161.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code §1021.5.

1

2

### FIFTH CLAIM FOR RELIEF
**Intrusion Upon Seclusion**
**(on Behalf of Plaintiffs and the Class)**

3       162.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

4   the same force and effect as if fully restated herein.

5       163.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the

6   defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a

7   reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable

8   person.

9       164.     Google's business practice of intercepting, recording, transmitting, and disclosing

10  Plaintiffs' and Class Members' communications on the Google Assistant Enabled Devices without

11  their consent constituted an intentional intrusion upon the Plaintiffs' and Class Members' solitude

12  or seclusion in that Google effectively placed itself in the middle of a conversation to which it was

13  not invited, welcomed, or authorized.

14      165.    Plaintiffs and Class Members did not consent to, authorize, or know about Google's

15  intrusion at the time it occurred.  Plaintiffs and Class Members never agreed that Google Assistant

16  would record their conversations without the utterance of a hot word or it being manually activated,

17  whether it be via consent provided through Plaintiffs' and Class Members' Google accounts, internet

18  service providers, or web-browsers, and never agreed that Google would disclose those recorded

19  conversations to third parties.  None of the Subclass Members consisting of minor children gave

20  consent or authorization to Google to intrude upon, record, transmit, or disclose their conversations

21  and/or interactions with the Google Assistant Enabled Devices.

22      166.    Google's intentional intrusion on Plaintiffs' and Class Members' solitude or

23  seclusion without consent would be highly offensive to a reasonable person.  Plaintiffs and Class

24  Members reasonably expected, based on a general understanding of how voice recognition software

25  like Google Assistant is supposed to function and based on Google's own assurances, that Google

26  was not listening to, recording, disclosing, or misusing their oral communications unless they uttered

27  a hot word or manually activated the Google Assistant Enabled Device.

28

167.    Google's intentional intrusion into Plaintiffs' and Class Members' private conversations was highly offensive to a reasonable person in that it violated federal and state criminal and civil laws designed to protect individual privacy.

168.    The surreptitious taking and disclosure of personal, confidential, and private information from hundreds of thousands of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms.  Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is harvested or shared.

169.    Google intentionally engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

170.    As a result of Google's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

171.    Unwanted access to data by electronic or other covert means, in violation of the law or social norms is actionable under California law.

172.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

173.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

### SIXTH CLAIM FOR RELIEF
**Invasion of Privacy**
**Art. I, Sec. 1 of the California Constitution**
**(On Behalf of Plaintiffs and the Class)**

174.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

175.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Art. I., Sec. 1, Cal. Const.

176.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

177.    The right to privacy in California's constitution creates a right of action against private and government entities.

178.    Google has intruded upon Plaintiffs' and Class Members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive and confidential information ("informational privacy"); (ii) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy"); (iii) the Wiretap Act as alleged herein; (iv) the SCA as alleged herein; (v) CIPA; and (vi) the Google TOS and Privacy Policy and other public assurances that Google does not intercept, record, disclose, and/or use people's conversations without their consent and/or without Plaintiffs' and Class Members' speaking the hot words that switch Google Assistant Enabled Devices into active listening mode.

179.    The confidential and sensitive information, which Google intercepted, recorded, transmitted, and disclosed without Plaintiffs' and Class Members' authorization and/or consent included, *inter alia*, Plaintiffs' and Class Members' bedroom conversations between parents and their children and professional phone calls.  Plaintiffs and Class Members had a legally protected informational privacy interest in the confidential and sensitive information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

180.    Plaintiffs and Class Members had a reasonable expectation of privacy in the circumstances in that:  (i) Defendants' invasion of privacy occurred during private and confidential conversations that Plaintiffs and Class Members had to the exclusion of everyone else; (ii) Plaintiffs and Class Members did not consent or otherwise authorize Google to intercept, record, disclose, or use their private information; (iii) Plaintiffs and Class Members could not reasonably expect Google would commit acts in violation of federal and state civil and criminal laws protecting privacy; (iv) Google affirmatively assured Plaintiffs and Class Members it would not listen to, record, disclose, and/or use their private communications without their consent or authorization by speaking a hot word or manually activating the Google Assistant Enabled Device into active listening mode.

181.    Google's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that:  (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for one purpose in order to serve other purposes; (ii) the invasion deprived Plaintiffs and Class Members of the ability to control circulation of personal information, which is considered fundamental to the right to privacy; and (iii) the invasion violated several federal and state criminal laws, including, *inter alia*, the Wiretap Act, the SCA, and CIPA.

182.    Google's invasion violated the privacy rights of ***at least*** hundreds of thousands of Class Members, including Plaintiffs, without their authorization or consent.  Committing criminal acts against ***at least*** hundreds of thousands of Class Members, including Plaintiffs, constituted an egregious breach of social norms.

183.    The surreptitious and unauthorized interception, recording, disclosure, and misuse of hundreds of thousands of Class Members', including Plaintiffs', personal confidential information constituted an egregious breach of social norms.

184.    Google lacked any compelling or legitimate business interest in listening to, recording, disclosing, and misusing the personal private and confidential information of ***at least***

1  hundreds of thousands of Class Members, including Plaintiffs, who did not consent or authorize

2  Google's behavior.

3      185.    Google intentionally engages in the misconduct alleged herein to improve the

4  functionality of Google Assistant for Google's own financial benefit, to target personalized

5  advertising to users, and to generate substantial profit.

6      186.    As a result of Google's actions, Plaintiffs and Class Members have been damaged as

7  a direct and proximate result of Google's invasion of their privacy and are entitled to just

8  compensation.

9      187.    Plaintiffs and the Class seek appropriate relief for that injury, including but not

10  limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to

11  their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions

12  upon Plaintiffs' and Class Members' privacy.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

15      188.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

16  the same force and effect as if fully restated herein.

17      189.    Plaintiffs purchased one or more Google Assistant Enabled Devices.   Google

18  Assistant is a computer program developed by Google that is pre-installed on numerous electronic

19  devices, including phones, speakers, displays, cars, televisions, laptops, and tablets, manufactured

20  by Google and other companies.  In order to use Google Assistant on any Google Assistant Enabled

21  Device, the user must create a Google Account and agree to Google's TOS.

22      190.    By agreeing to the TOS, Plaintiffs entered into a contract with Google.  Plaintiffs

23  have fully complied with their obligations under the TOS with regard to their use of Google's

24  services.

25      191.    The TOS state that "by using our Services, you are agreeing to these terms."  The

26  TOS expressly adopt additional terms relevant to specific services as follows:

27      Our Services are very diverse, so sometimes additional terms or product
     requirements (including age requirements) may apply. Additional terms will be

28

39

available with the relevant Services, and those additional terms become part of your agreement with us if you use those Services.[36]

192.   Google Assistant Enabled Devices are subject to the Google Privacy Policy, which is incorporated in the TOS.  The Google Privacy Policy states that Google does not share personal information with companies, organizations, or individuals outside of Google except in the following cases: (1) with consent; (2) with domain administrators; (3) for external processing; and (4) for legal reasons.[37]

193.   Under the "consent" prong of the Privacy Policy, Google states that it will "ask for your explicit consent to share any sensitive personal information."[38]   Likewise, Google has published a "Commitment to Privacy in the Home," which describes how Google's Privacy Policy is implemented in the context of Google devices such as Google Assistant which are used in users' private residences.  The "Commitment to Privacy in the Home" states that:

> We will only share audio recordings from your devices with third-party apps and services that work with our devices if you or a member of your home explicitly gives us permission, and we'll only ask for this permission in order to provide a helpful experience from an approved partner (such as a home security service provider).[39]

194.   Google's contract and policy also incorporate and implement "Privacy and Security Principles" which "guide our products, our processes, and our people in keeping our users' data private, safe, and secure."[40]   The overarching Privacy and Security Principle is to: "Respect our users.  Respect their privacy."

195.   In accordance with the provision of the TOS incorporating policies specific to different services provided by Google, Google has policies specific to Google Assistant Enabled Devices.  These policies state that Google Assistant Enabled Devices only record audio if users issue

---

[36]   GOOGLE PRIVACY & TERMS, Terms of Service (Oct. 25, 2017), https://policies.google.com/terms.

[37]   GOOGLE PRIVACY & TERMS, Privacy Policy (October 15, 2019), https://policies.google.com/privacy.

[38]   *Id.*

[39]   GOOGLE, Nest Help, *supra* n.17.

[40]   *See* GOOGLE SAFETY CENTER, *Our Privacy and Security Principles*, https://safety.google/principles/.

a "hot word" – such as "Hey Google" or "OK Google" – or otherwise approve of "active listening" mode by pressing a button on certain Google Assistant Enabled Devices.  In describing its Privacy Policy, Google provides the following answer to a Frequently Asked Question:

> **Is Google Home recording all of my conversations?**
>
> No. Google Home listens in short (a few seconds) snippets for the hotword.  Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.  When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request.  You can delete these recordings through My Activity anytime.[41]

196.    Google's policies also state that the audio of recordings from Google Assistant Enabled Devices will not be shared with third parties.  *Id.*

197.    In violation of the TOS and Privacy Policy, Google admits that Google Assistant Enabled Devices experience "false accepts," where the device automatically begins recording conversations despite the user not using a hot word.[42]  As a result, Google Assistant Enabled Devices records users' private conversations, including Plaintiffs' private conversations.  Worse, Google shared these recordings with third parties such as subcontractors.

198.    At no point did Plaintiffs consent to these unlawful recordings.  Nor did Google inform Plaintiffs that it was sharing their sensitive personal information with third parties.

199.    By recording and disclosing to third parties Plaintiffs' private conversations without their consent, Google has breached material terms of the TOS and Privacy Policy incorporated thereunder.

200.    Google engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

---

[41]    GOOGLE, Nest Help, *supra* n.17.

[42]    Monsees, *supra* n.2.

201.     As a result of Google's breach of the TOS and Privacy Policy, Plaintiffs' have suffered damages in an amount to be determined at trial.   Specifically, the services Plaintiffs received in exchange for the purchase price of Google Assistant Enabled Devices were worth less than the services they agreed to accept because Plaintiffs' information was recorded without their consent and divulged to third parties.   Plaintiffs would not have purchased, or would not have paid as high a price, for the Google Assistant Enabled Devices if they had known that Google would breach the TOS and Privacy Policy by recording and revealing Plaintiffs private conversations.   In addition, or in the alternative, Plaintiffs and the Class seek damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interest as well as disgorgement of profits made by Google as a result of its breach of contract.

## EIGHTH CLAIM FOR RELIEF
### Breach of Express Warranty
### (On Behalf of Plaintiffs Kumandan and Spurr
### and the Google Manufactured Device Subclass)

202.     The Uniform Commercial Code §2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

203.     As detailed above, Google marketed and sold the Google Manufactured Devices with representations that no recordings of users' communications would be shared with Google unless a hot word was used.   Google also sold the Google Assistant Enabled Devices with representations that no recordings would be shared with third parties.

204.     Google's representations set forth above regarding its privacy practices are uniformly made on Google's website, and are thus part of the basis of the bargain between Defendants and purchasers of the Google Manufactured Devices.

205.     California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code §2313).

206.     At the time that Defendants designed, manufactured, sold and distributed the Google Manufactured Devices, Defendants knew that representations alleged in the Seventh Claim for Relief (breach of contract) above were false.

207.   As set forth in the paragraphs above, Google Manufactured Devices *do* record conversations when no hot word has been used.  In addition, Google *does* share the recordings taken from the Google Manufactured Devices with third parties.

208.   On July 25, 2019, Plaintiffs sent a pre-suit demand letter to Google notifying it of Plaintiffs' claims.

209.   Google engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

210.   As a result of Google's breach of the express warranties promised in the TOS and Privacy Policy, Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members have suffered damages in an amount to be determined at trial.  Specifically, the services Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members received in exchange for the purchase price of Google Assistant Enabled Devices were worth less than the services they agreed to accept because the information of Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members was recorded without their consent and divulged to third parties.  Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members would not have purchased, or would not have paid as high a price, for the Google Assistant Enabled Devices if they had known that Google would breach the TOS and Privacy Policy by recording and revealing Plaintiffs private conversations.   In addition, or in the alternative, Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members seek damages that will reasonably compensate Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members for the harm to their privacy interest as well as disgorgement of profits made by Google as a result of its breach of express warranties.

**NINTH CLAIM FOR RELIEF**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs Kumandan and Spurr and the**
**Google Manufactured Device Subclass)**

211.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

212.   Plaintiffs Kumandan and Spurr bring this claim for breach of the California Commercial Code's implied warranty of merchantability on behalf of themselves and the Google Manufactured Device Subclass.

213.   Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members purchased Google Manufactured Devices and used the devices for the ordinary and intended purpose of using the Google Assistant feature to send messages, schedule appointments, display driving directions, and seek information about a variety of topics.  To activate the Google Assistant feature, Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members entered into agreements with Google or its agents and received and consented to uniform warranties in connection with the purchase of such Google Manufactured Devices.  Further, regardless of whether a Google Manufactured Device was purchased through Google or another retailer, the purchaser would have had to have set up a Google Account and agree to Google's TOS and Privacy Policy.

214.   Defendants are merchants as defined by Cal. Com. Code § 2104.

215.   Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members were in privity with Defendants in that they purchased their Google Manufactured Devices either directly from Google or from actual or apparent agents of Google, such as Google's "select authorized retailers."[43]

216.   Further, Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members are in privity with Google by virtue of the contractual relationship stemming from Google's written warranties provided in conjunction with the purchase of the Google Manufactured Devices, which are enforceable by Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members as against Google, regardless of from which retailer the Google Manufactured

---

[43]   GOOGLE STORE, https://support.google.com/googlenest/answer/7071997?hl=en.

Devices were purchased.  These written warranties include, but are not limited to, Google's TOS and Privacy Policy.  By virtue of the provision of the written warranties, Google is deemed to have engaged in conduct directly with Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members that functionally placed Google in the position of the direct seller.

217.    Defendants have breached the implied warranties of merchantability that they made to Plaintiffs and Class Members.  Defendants impliedly warranted that the Google Assistant feature was free of defects, that it was merchantable, and that it was fit for the ordinary purpose for which such goods are used.  *See*, *e.g.*, Cal. Com. Code §2314 (setting forth the implied warranty of merchantability).

218.    The ordinary purpose of the Google Assistant is to allow consumers via the Google Manufactured Devices to send messages, schedule appointments, display driving directions, and seek information about a variety of topics and issues.  Consumers have a reasonable expectation that Google Manufactured Devices will allow them to perform these tasks without having Google surreptitiously intercept, record, disclose, and transmit those communications to third parties without their adequately informed consent.  The expectations that the Google Manufactured Devices will not intercept, record, disclose, and transmit private and confidential communications are that much more heightened where Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members did not trigger Google Assistant's active listening mode by speaking a hot word or by manually activating the device.  Defendants impliedly represented to Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members that Google Assistant was free of defects that could impinge on these ordinary uses, that it was merchantable with respect to such uses, and that they were fit for all such purposes.

219.    As alleged herein, however, Defendants' sales of Google Manufactured Devices breached the implied warranty of merchantability because the Google Manufactured Devices were defective, unmerchantable, and not fit for the ordinary purpose for which such goods are used.  More specifically, all Google Manufactured Devices are defective and unfit for their ordinary purposes because, rather than performing as impliedly represented, these devices intercept, record, and misuse

consumers' private and confidential communications within the zone of their privacy and without their prior authorization or consent.  The private and confidential communications contained, *inter alia*, bedroom conversations between parents and their children and professional phone calls, in which Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members have a legally protected privacy interest.  Moreover, Google Manufactured transmit this human-readable content — unbeknownst to Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members — to locations accessible by Google's third-party vendors and to other third-parties with potentially malicious intent.

220.    On July 25, 2019, Plaintiffs sent a pre-suit demand letter to Google notifying it of Plaintiffs' claims.  Notwithstanding the provision of this notice, Defendants failed to take any steps to cure the alleged breach or to negotiate toward making Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members whole.

221.    Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members have been damaged as a direct and proximate result of Google's breach of the implied warranty of merchantability and are entitled to just compensation.

222.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Google Manufactured Device Subclass Members received goods whose defective and dysfunctional condition substantially impairs their value to Plaintiffs and Google Manufactured Device Subclass Members.  Plaintiffs and Google Manufactured Device Subclass Members have been damaged as a result of the diminished value of Google's products, the products' malfunctioning, and the nonuse of the Google Manufactured Devices.  Plaintiffs and the Google Manufactured Device Subclass, therefore, seek appropriate relief for that injury, including but not limited to the overpayment or diminution in value of their Google Manufactured Devices.

**TENTH CLAIM FOR RELIEF**
**Violation of Magnuson-Moss Warranty Act**
**15 U.S.C. §2301, *et seq.***
**(On Behalf of Plaintiffs Kumandan and Spurr**
**and the Google Manufactured Device Class)**

223.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

224.    Plaintiffs bring this claim for breach of the Magnuson-Moss Warranty Act on behalf of themselves and other similarly situated purchasers of Google Manufactured Devices.

225.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§2301-2312, is a consumer protection regime designed to supplement state warranty law.

226.    The Magnuson-Moss Warranty Act provides a cause of action for breach of warranty, including the implied warranty of merchantability, or other violations of the Act. 15 U.S.C. §2310(d)(1).  Defendants have breached their implied warranties of merchantability by failing to provide merchantable goods.  The Google Manufactured Devices at issue are not merchantable or fit for their ordinary purposes because these devices are designed and marketed for communication purposes, including for the transmittal and receipt of confidential, private, and sensitive communication, and yet Plaintiffs Spurr's and Kumandan's' and Google Manufactured Device Subclass Members' devices do not function accordingly.

227.    Rather, these Google Manufactured Devices intercept confidential and private personal communications of Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members, including, *inter alia*, bedroom conversations between parents and their children and professional phone calls in which Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members have a legally protected privacy interest.  The intercepted data is then purposefully recorded, disclosed, and misused by Google without the consent or authorization of Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members.

228.    Furthermore, the personal private and confidential communication of Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members is captured in human-readable form, such that it is being transmitted to Google and to third parties, such that it is

1   vulnerable to other third-parties with potentially malicious intent or to anyone with access to the

2   data storage location within Google's computer environment.

3       229.    Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members

4   have suffered damages as a result of Defendants' breaches of their implied warranties as set forth

5   herein.

6       230.    The Magnuson-Moss Warranty Act provides for "damages and other legal and

7   equitable" relief where there has been a breach of warranty or failure to abide by the obligations that

8   the Magnuson-Moss Warranty Act imposes.  15 U.S.C. §2310(d)(1).

9       231.    As a direct and proximate result of Defendants' breach of the implied warranty of

10  merchantability, Plaintiffs and Google Manufactured Device Subclass Members received goods

11  whose defective and dysfunctional condition substantially impairs their value to Plaintiffs and

12  Google Manufactured Device Subclass Members.  Plaintiffs and Google Manufactured Device

13  Subclass Members have been damaged as a result of the diminished value of Google's products, the

14  products' malfunctioning, and the nonuse of the Google Manufactured Devices.  Plaintiffs and the

15  Google Manufactured Device Subclass, therefore, seek appropriate relief for that injury, including

16  but not limited to the overpayment or diminution in value of their Google Manufactured Devices.

17      232.    In addition, or in the alternative, Plaintiffs and Google Manufactured Device

18  Subclass Members ask for equitable relief in the form of an order against Defendants that includes

19  but is not limited to requiring them to conform the Google Manufactured Devices at issue to the

20  implied warranties made with respect to them by requiring cessation of the interception, recording,

21  disclosure, and misuse of personal, private, confidential, and sensitive communications and data as

22  alleged in this Complaint.

23      233.    The Magnuson-Moss Warranty Act also provides for an award of costs and expenses,

24  including attorneys' fees, to prevailing consumers in connection with the commencement and

25  prosecution of lawsuits thereunder, unless the Court in its discretion determines that such an award

26  would be inappropriate.   15 U.S.C. §2310(d)(2).   Plaintiffs and Google Manufactured Device

27

28

Subclass Members seek such an award of attorneys' fees and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law**
**Cal. Business & Professions Code §17200,** *et seq.*
**(On Behalf of Plaintiffs and the Class)**

234.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

235.   Google engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Google unlawfully intercepted, recorded, disclosed, and otherwise misused Plaintiffs' and Class Members' interactions without consent in violation of the Wiretap Act, SCA, California common law, California Constitution, CIPA, and Cal. Penal Code §§631 and 632.  In addition, Google's breach of its privacy policy alleged above constitutes a violation of Cal. Bus. & Prof. Code §22576.  Further, Google's breach of its contract with Plaintiffs and the Class, breach of its express and implied warranties, and violations of the Magnuson-Moss Warranty Act constitute unlawful acts under the UCL.

236.   Google also engaged in business acts and practices deemed "unlawful" under the UCL, because, Google unlawfully intercepted, recorded, disclosed, and otherwise misused Plaintiff B.S.'s and Plaintiff E.G.'s and minor Class Members' interactions without consent, which violates public policy as declared by specific statutory provisions, including Cal. Fam. Code §6701 and §6710, which prohibit Defendants from obtaining consent by minors.

237.   Specifically, Cal. Fam. Code §6701 states that: "A minor cannot do any of the following: (a) Give a delegation of power . . . ."  Cal. Fam. Code §6710 states that: "Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative."

238.   Google did not obtain the minor Plaintiff B.S.'s or Plaintiff E.G.'s consent to intercept, record, disclose, or use their confidential communications.  Google could not obtain

1  consent to intercept, record, disclose or use the minor Plaintiff B.S.'s or Plaintiff E.G.'s confidential

2  communications.  To the extent that Google attempts to claim that it obtained the minor Plaintiff

3  B.S.'s or Plaintiff E.G.'s consent, pursuant to Cal. Fam. Code §6710, Plaintiff B.S. and Plaintiff

4  E.G. disaffirm such consent.

5        239.    Google also engaged in business acts or practices deemed "unfair" under the UCL

6  because, as alleged above, Google failed to disclose during the Class Period that these Google

7  Assistant Enabled Devices were intercepting, recording, disclosing and otherwise misusing

8  Plaintiffs' and Class Members' speech without their consent.  Unfair acts under the UCL have been

9  interpreted using three different tests: (1) whether the public policy which is a predicate to a

10 consumer unfair competition action under the unfair prong of the UCL is tethered to specific

11 constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the

12 consumer caused by the challenged business practice outweighs the utility of the defendant's

13 conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing

14 benefits to consumers or competition, and is an injury that consumers themselves could not

15 reasonably have avoided.  Defendants' conduct is unfair under each of these tests.  Google's conduct

16 alleged is unfair under all of these tests.

17       240.    As described above, Google's conduct violates the policies of the statutes referenced

18 above.  The gravity of the harm of Google's secret intercepting, recording, disclosure, and other

19 misuse of Plaintiffs' and Class Members' communications, including those by minors, is significant

20 and there is no corresponding benefit to consumers of such conduct.  Finally, because Plaintiffs and

21 Class Members were completely unaware of Google's secret recordings and disclosure, they could

22 not have possibly avoided the harm.

23       241.    Had Plaintiffs known that their communications would be intercepted, recorded,

24 disclosed, and misused, they would not have purchased a Google Assistant Enabled Device, or

25 would have paid less for them.  Plaintiffs and Class Members have a property interest in any

26 recordings of their communications.  By surreptitiously intercepting, recording, disclosing, or

27

28

otherwise misusing Plaintiffs' and Class Members' communications, Google has taken property from Plaintiffs and Class Members without providing just or any compensation.

242.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, to implement functionality sufficient to prevent unauthorized recordings in the future, to cease disclosing communications of the Class to third parties without prior consent, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; and (2) as to the Google Manufactured Device Subclass, restitution of Plaintiffs Spurr's and Kumandan's and the Google Manufactured Device Subclass Members' money and property lost as a result of Google's acts of in violation of the UCL.

### TWELFTH CLAIM FOR RELIEF
**Request for Relief under the Declaratory Judgment Act**
**28 U.S.C. §2201, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

243.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

244.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

245.    An actual controversy has arisen in the wake of Defendants' intercepting, recording, disclosure, and misuse of Plaintiffs' and Class members' communications without their consent as alleged herein in violation of Defendants' common law and statutory duties.

246.    Plaintiffs continue to suffer injury and damages as described herein as Defendants continue to intercept, record, disclose, and misuse Plaintiffs' and Class Members' communications, including communications by minors whose consent to record Defendants cannot obtain.

247.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants continue to owe a legal duty to not intercept, record, disclose, and otherwise misuse Plaintiffs' and Class Members' confidential communications under, *inter alia*, the common law, the Wiretap Act, the SCA, CIPA, Cal. Penal Code §§631 and 632, Cal. Bus. & Prof. Code §22576, and Cal. Fam. Code §6710;

b. Defendants continue to be in breach of their contract with and warranties promised to Plaintiffs and members of the Class and Subclasses;

c. Defendants continue to breach their legal duties and be in breach of their contract with Plaintiffs and Class Members by continuing to intercept, record, disclose, and misuse Plaintiffs' and Class Members' confidential communications; and

d. Defendants' ongoing breaches of their legal duty and breach of contract and warranties continue to cause Plaintiffs and Class Members harm.

248. The Court should also issue corresponding injunctive relief, including but not limited to enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

249. If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct

250. Federal and state laws prohibit, among other things, interception, recording, disclosure, and other misuse of confidential communications without consent, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy. California specifically recognizes privacy as a fundamental right. Given that Google admits that it continues to intercept, record, disclose, and misuse confidential communications, including those of minors, the risk of continued violations of federal and California law is real, immediate, and substantial. Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

251.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued.  On the other hand, the cost to Defendants of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

252.    Issuance of the requested injunction will serve the public interest by preventing ongoing intercepting, recording, disclosure, and misuse of confidential communications without consent, and intercepting, recording, disclosure, and misuse of confidential communications of minors, thus eliminating the injuries that would result to Plaintiffs, the Class and Subclasses, and the potentially hundreds of thousands of consumers who purchased Google Assistant Enabled Devices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class and Subclasses respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Class and Subclasses defined above, appointing Plaintiffs as representatives of the Class and Subclasses, and appointing their counsel as class counsel;

B.    Declaring that Google's actions, as set out above, violate the Wiretap Act cited herein;

C.    Declaring that Google's actions, as set out above, violate the SCA cited herein;

D.    Declaring that Google's actions, as set out above, violate California's privacy laws cited herein;

E.    Declaring that Google's actions, as set out above, constitute breach of contract;

F.    Declaring that Google's actions, as set out above, violate federal and state warranty laws cited herein;

G.    Declaring that Google's actions, as set out above, violate California's Bus. & Prof. Code cited herein;

1    H.    Requiring Google to delete all recordings of Members of the Class and Subclasses,

2  cease further recording, and implement functionality to prevent further recording of the Class and

3  Subclasses without prior consent, and to cease disclosing communications of the Class and

4  Subclasses to third parties without prior consent;

5    I.    Requiring Google to undertake measures to cure the harm caused to the Class and

6  Subclasses by its wrongdoing, as alleged herein, including, but not limited to improving its privacy

7  disclosures and obtaining adequately informed consent;

8    J.    Awarding damages, including nominal and statutory damages, and restitution where

9  applicable, to Plaintiffs and the Class and Subclasses in an amount to be determined at trial;

10   K.    Awarding Plaintiffs and the Class and Subclasses their costs of suit, including

11  reasonable attorneys' fees and expenses;

12   L.    Awarding Plaintiffs and the Class and Subclasses pre-and post-judgment interest, to

13  the extent allowable;

14   M.    Enjoining Google from further engaging in the unlawful conduct alleged herein;

15   N.    Awarding such other further injunctive and declaratory relief as is necessary to

16  protect the interests of Plaintiffs and the Class and Subclasses; and

17   O.    Awarding such other and further relief as the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

19    Plaintiffs demand a trial by jury for all issues so triable.

Dated:  October 25, 2019                **LEXINGTON LAW GROUP**

                                        */s/ Mark N. Todzo*
                                        Mark N. Todzo (Bar No. 168389)
                                        Eric S. Somers (Bar No. 139050)
                                        503 Divisadero Street
                                        San Francisco, CA  94117
                                        Telephone: (415) 913-7800
                                        Facsimile:  (415) 759-4112
                                        mtodzo@lexlawgroup.com

                                        Vincent Briganti (*pro hac vice*)
                                        Christian Levis (*pro hac vice*)
                                        Andrea Farah (*pro hac vice*)

54

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Stephanie A. Hackett (Bar. No. 238655)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway
Suite 3300
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
shackett@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone:  (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I, Mark Todzo, an attorney, hereby certify that on October 25, 2019, I caused a complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in this case.


*/s/ Mark N. Todzo*

56

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 5:19-cv-04286-BLF