Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Master Docket No.: 19-cv-04286-BLF |
| This Document Relates to: | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| ALL ACTIONS | |
| | Judge:  Beth L. Freeman |
| | Date:    April 9, 2020 |
| | Time:   9:00 a.m. |
| | Dept.:  Courtroom 3 – 5th Floor |

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    ISSUES TO BE DECIDED ................................................................................ 1

III.   FACTUAL BACKGROUND .............................................................................. 1

    A.   Background on Google Assistant........................................................... 1

    B.   Plaintiffs and the Class Have a Reasonable Expectation of Privacy in Their Confidential Communications....................................................................... 2

    C.   Google Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent ................................. 3

IV.    ARGUMENT ..................................................................................................... 3

    A.   Plaintiffs State a Claim for Violation of the Federal Wiretap Act ............................ 3

        1.   Google's Interception Was Intentional ........................................................ 4

        2.   Google Intercepted Plaintiffs' and Class Members' Oral Communications. 5

        3.   The Ordinary Course of Business Exception Does Not Apply ..................... 6

        4.   Plaintiffs Have Alleged Unlawful Use and Disclosure ................................ 7

    B.   Plaintiffs State a Claim for Violation of the Stored Communications Act .............. 8

        1.   Google Assistant and/or the Google Servers Used to Store Plaintiffs' and Class Members' Confidential Communication Constitute a "Facility" Under the SCA ........................................................................... 9

        2.   Plaintiffs Sufficiently Allege Unauthorized Access to Communications Facility ............................................................................ 9

        3.   Plaintiffs and the Class Never Consented to Google's Use and Disclosure ............................................................................................ 11

    C.   Plaintiffs State a Claim Under California Invasion of Privacy Act ....................... 12

        1.   Google's Interception of Plaintiffs' Communication Is Unlawful Under Section 631(a) ......................................................................... 13

        2.   Plaintiffs Have Alleged Confidential Communication Under Section 632 ............................................................................................. 14

    D.   Plaintiffs State a Claim for Intrusion Upon Seclusion and Invasion of Privacy ..... 15

    E.   Plaintiffs State a Claim for Breach of Contract....................................................... 17

    F.   Plaintiffs State a Claim for Breach of Express Warranty........................................ 20

    G.   Plaintiffs State Claims for Breach of the Implied Warranty of Merchantability and Magnuson-Moss Warranty Act ........................................... 20

    H.   Plaintiffs State a Claim Under California's Unfair Competition Law ................... 22

        1.   Plaintiffs Have Standing Under the UCL................................................... 22

        2.   Plaintiffs Adequately Allege Affirmative Misrepresentations, Material Omissions, and Reliance ........................................................................... 23

        3.   Plaintiffs' Allegations Satisfy the UCL's Unlawful Prong........................ 24

        4.   Plaintiffs' Allegations Satisfy the UCL's Unfair Prong............................. 24

V.     CONCLUSION ................................................................................................. 25

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alkayali v. Hoed*,
   Case No.: 3:18-cv-777, 2018 WL 3425980 (S.D. Cal. July 16, 2018) ....................................20

5

6

*Allen v. ConAgra Foods, Inc.*,
   Case. No. 13-CV-01279-JST, 2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) .........................20

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................3

9

10

*Backhaur v. Apple, Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ......................................................................................5

11

*Belluomini v. Citigroup, Inc.*,
   No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ..................................17

12

13

*Berenblat v. Apple, Inc.*,
   No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) .....................................22

14

15

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................................7, 11

16

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*,
   169 Cal. App. 4th 116 (2008)..............................................................................................21, 22

17

18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ........................................................................................................25

19

20

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) .................................................................................................25

21

*Doe 1 v. AOL LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..................................................................................24

22

23

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002)........................................................................................................14, 15

24

25

*Hauck v. Advanced Micro Devices, Inc.*,
   Case No. 18-CV-00447-LHK, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) .........................20

26

*Hernandez v. Lopez*,
   180 Cal. App. 4th 932 (2009)...................................................................................................19

27

28

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   938 F.3d 985 (9th Cir. 2019).....................................................................................................10

ii

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................................22

*In re Anthem, Inc. Data Breach Litigation*,
    Case No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .............23, 24, 25

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................21

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ..........................................................17, 18, 20

*In re Google Android Consumer Priv. Litig.*,
    No. 11-MD-2264, 2014 WL 988889 (N.D. Cal. Mar. 10, 2014) ............................................23

*In re: Google Inc. Gmail Litig.*,
    Case No. 13-MD-2430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)...................7, 12, 13, 14

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016)...............................................................................16, 17

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) .....................................................................................5

*In re Pharmatrak, Inc. Privacy Litig.*,
    220 F. Supp. 2d 4 (D. Mass. 2002) *rev'd sub nom. In re Pharmatrak, Inc.*, 329
    F.3d 9 (3d Cir. 2016) .........................................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices &*
    *Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010).................................................................21, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Prods. Liab. Litig.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) .......................................................................24

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) (Koh, J.) ........................................................11, 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
    Case No. 16-MD-2752, 2017 WL 3727318 (N.D. Cal. Apr. 4, 2019).......................................24

*Katz v. United States*,
    389 U.S. 347 (1967) ..........................................................................................6

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006)........................................................................................15

iii

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011)..................................................................................................23

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................................17

*Manzarek v. St. Paul Fire & Marine Ins.*,'
   519 F.3d 1025 (9th Cir. 2008)......................................................................................3

*Matera v. Google Inc.*,
   Case No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ........13

*McDonald v. Kiloo ApS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019) ................................................................16, 17

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012)......................................................................16

*People v. Superior Court of Los Angeles Cty.*,
   70 Cal. 2d 123 (1969)..................................................................................................14

*Rackemann v. LISNR, Inc.*,
   Case No. 1:17-cv-00624, 2017 WL 4340349 (S.D. Ind. Sept. 29, 2017) ...................6

*Reynolds v. City & Cty. of San Francisco*,
   No. C 09-0301 RS, 2012 WL 1143830 (N.D. Cal. Mar. 30, 2012), aff'd, 576 F.
   App'x 698 (9th Cir. 2014)...........................................................................................15

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985)..................................................................................................14

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975).........................................................................................12

*Sanders v. Robert Bosch Corp.*,
   38 F.3d 736 (4th Cir. 1994)...........................................................................................5

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) .........................................................................5

*Svenson v. Google, Inc.*,
   2014 WL 459659 (N.D. Cal. Jan. 15, 2014) .............................................................11

*Svenson v. Google Inc.*,
   65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................................10, 19

*Svenson v. Google Inc.*,
   Case No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015)..........19, 20

*Tavernetti v. Superior Court,*
    22 Cal. 3d 187 (1978)................................................................................13

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004)...................................................................10

*Thompson v. Dulaney,*
    970 F.2d 744 (10th Cir. 1992)................................................................5, 7

*United States v. Smith,*
    155 F.3d 1051 (9th Cir. 1998)...............................................................9, 10

**Statutes, Rules & Regulations**

United States Code
    18 U.S.C. §1030(e)(6)..............................................................................10
    18 U.S.C. §2510, *et seq.*............................................................................1
    18 U.S.C. §2510(5)(a)(ii)...........................................................................7
    18 U.S.C. §2510(15)................................................................................7, 9
    18 U.S.C. §2511(1)(a)................................................................................3
    18 U.S.C. §2511(1)(c)-(d)..........................................................................4
    18 U.S.C. §2701, *et seq.*............................................................................1
    18 U.S.C. §2701(a)....................................................................................8
    18 U.S.C. §2702(a)(1)................................................................................8

Federal Rules of Civil Procedure
    Rule 9(b)..................................................................................................24
    Rules 12(b)(1)..........................................................................................11

California Code
    Business and Professions Code §22576.....................................................24
    Cal. Bus. & Prof. Code §17204.................................................................22
    Cal. Civ. Code §§658, 663........................................................................12
    Cal. Comm. Code §2314(2)(c)...................................................................21
    Cal. Fam. Code §6701...............................................................................12
    Cal. Pen. Code §4.....................................................................................14
    Cal. Penal Code §§631 and 632................................................................12
    Cal. Penal Code §631(a).......................................................................13, 14
    Cal. Penal Code §632(c)...........................................................................15
    California Penal Code §632........................................................................14
    Cal. Bus. & Prof. Code §17200...................................................................1

**Other Authorities**

Barb Darrow, *Google Says Its Speech Recognition Leads the Pack,* THE FORTUNE,
    May 18, 2017............................................................................................8

S. Rep. No. 541, 99th Cong, 2d Sess. (1986)..................................................9

# I.        INTRODUCTION

In the Consolidated Amended Complaint ("CAC"), Plaintiffs allege that Google surreptitiously listens to Plaintiffs' and Class Members' confidential communications, including those which occur within the sanctity of consumers' own homes.  Worse, Google records these conversations and transmits them to third-party vendors.  Google does this without Plaintiffs' and Class' knowledge or authorization and despite Google's representations that it would not listen to, record, disclose, and/or use users' private communications without their prior consent.  Google's conduct invades Plaintiffs' and the Class' constitutional, statutory, and common law privacy rights, and thereby violates federal and California laws, including the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq.,* Stored Communications Act ("SCA"), 18 U.S.C. §2701, *et seq.,* federal and state warranty laws, California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and constitutes a breach of contract between Google and Plaintiffs and the Class.

In its motion to dismiss ("MTD"), Google essentially argues that because the recordings resulted from an "inadvertent error," Google escapes liability altogether.  Google's own admissions, however, undermine its defense.  Google admitted that its actions of surreptitiously listening, recording, and disseminating Plaintiffs' and Class' confidential communications is calculated to improve the functionality of Google Assistant, and is, therefore, deliberately designed to secure significant financial profit for Google.  Unfortunately for Plaintiffs and the Class, Google values its own commercial benefit more than it does Plaintiffs' and the Class' privacy.

# II.       ISSUES TO BE DECIDED

Whether Plaintiffs plead sufficient facts, taken as true, to state claims for relief in the CAC.

# III.      FACTUAL BACKGROUND

## A.        Background on Google Assistant

Google develops and manufactures Google Assistant, a computer program intended to provide its users with easy access to information available on the internet and/or control over other internet-connected devices using their voice.  ¶¶21-22.[1]  Google Assistant is pre-installed on devices manufactured by Google, such as Google Home, Home Mini, and Home Max, or can be downloaded

---

[1]        All references to "¶_" and "¶¶__" are to the CAC.

onto smartphones and other devices manufactured by third parties ("Google Assistant Enabled Devices" ("GAEDs")).  ¶¶2, 21.  Google Assistant can be placed into "active listening" mode by uttering a "hot word" or by pressing a button on the device on which it is installed.  ¶¶22-24.  Being placed in an "active listening" mode allows GAEDs to respond to the user's commands issued after a hot word or manual activation.  ¶24.  For example, if a user asks Google Assistant, "Hey Google, what is the weather in Los Angeles?," the GAED will provide a response based on information available on the internet.  *Id.*  With approximately 2.3 billion GAEDs sold in the world, the sale of Google Assistant significantly contributes to Google's revenue.  ¶26.

**B.      Plaintiffs and the Class Have a Reasonable Expectation of Privacy in Their Confidential Communications**

Plaintiffs and the Class have a reasonable expectation of privacy in their confidential and private communications, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  ¶¶27-30.  California specifically recognizes privacy as a fundamental right, and accordingly, the California Constitution as well as California privacy laws prohibit, *inter alia*, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.  ¶27.  Consumer studies examining the collection of consumers' personal data confirm that the surreptitious taking of personal, confidential, and private information from individuals seriously offends consumers' expectations of privacy.  ¶29.  Well aware of, and consistent with, these expectations, Google *itself* expressly and impliedly assures Plaintiffs and the Class that GAEDs will *only* listen to and record their private confidential communications if users speak a hot word or otherwise manually activate "active listening" mode.  ¶31.  To that effect, Google's Privacy Policy provides the following assurance:

**Is Google Home recording all of my conversations?**

***No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.*** When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime.

*Id.*[2]  Google's Privacy Policy also warranted that audio recordings from GAEDs will not be shared with third parties.  *Id.*  Thus, Google expressly assured Plaintiffs and the Class that their confidential and private conversations would not be listened to, let alone recorded and disseminated to third parties absent their authorization.  *Id.*

### C.   Google Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent

On July 10, 2019, VRT NWS, a Belgian news media outlet, reported that "thousands" of Google's subcontractors are systematically listening to audio files recorded by Google Home smart speakers and the Google Assistant smartphone app from devices around the world, including audio not preceded by a hot word.  ¶34.  VRT NWS further reported that it was given access to more than a thousand audio recordings of which at least 153 conversations "should never have been recorded [because] the command 'Okay Google' was clearly not given."  ¶36.  Following publication of the VRT NWS article, Google admitted that it uses human language reviewers to listen to recorded conversations even when no hot word is uttered.  ¶39.

## IV.   ARGUMENT

A motion to dismiss should be denied where, as here, the complaint "'state[s] a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins*. *Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court's analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### A.   Plaintiffs State a Claim for Violation of the Federal Wiretap Act

A Wiretap Act violation exists when any person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. §2511(1)(a).  The Wiretap Act also imposes liability on any

---

[2]       Unless otherwise indicated, emphasis is added and citations are omitted.

person who "intentionally discloses" to "any other person the contents of any wire, oral, or electronic communication," or "intentionally uses" the "contents of any wire, oral or electronic communication" while "knowing or having reason to know that the information was obtained through the [unlawful] interception." 18 U.S.C. §2511(1)(c)-(d). Here, Plaintiffs allege that Google intentionally intercepted Plaintiffs' and Class Members' private and confidential oral communications without the utterance of a hot word or manual activation (*i.e.*, consent) while such communications were in transmission and occurring in real time. ¶¶86-93. These allegations are sufficient to state a claim under the Wiretap Act.

### 1.    Google's Interception Was Intentional

Google mischaracterizes Plaintiffs' claims to say that "the crux of Plaintiffs' case is that the Google Assistant misinterprets words or sounds as a hot word, and thus inadvertently records communications when no hot word is spoken." MTD at 5 (citing CAC ¶¶4-6, 38-39). As set forth in detail in Sec. IV.E., *infra*,[3] this case does not rest on whether Google misinterprets the hot word. Rather, it rests on the allegations that: (i) Google made assurances to Plaintiffs and Class Members that Google Assistant would not record their conversations without the utterance of a hot word or the manual activation of "active listening" mode (¶¶4, 31, 32); and (ii) Plaintiffs and Class Members have not consented to Google's recording, let alone disclosure of, conversations to third parties (¶¶4-5, 42, 50, 54, 88, 90-91).

Google's attempt to excuse away its unlawful intercepting of Plaintiffs' and the Class' confidential communications based on the "inadvertent misinterpretation" of words or sounds (MTD at 5, 13) also contradicts the allegations evidencing Google's consciousness of wrongdoing. Plaintiffs alleged – and Google admits – that Google obtained users' recordings for its own commercial and financial benefit, namely, to improve the speech recognition abilities of Google Assistant, and to generate substantial profit. *See, e.g.,* ¶¶38-39, 93-98, 120; *see also* Sec. 4.C.2., *infra.*

Further, Google's knowledge of Google Assistant's design defect establishes intent. *See,*

---

[3]    To the extent Defendant repeats the same arguments in various sections of its MTD, in the interest of avoiding needless repetition, Plaintiffs incorporate their arguments in opposition from all other sections along with the authority cited therein.

*e.g., Backhaur v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014).  Defendant designed Google Assistant to continuously listen to Plaintiffs' and Class Members' conversations and to record them – including in instances where sounds remotely resembling a hot word are uttered – and to transmit the recording to Google's subcontractors for analysis.  ¶¶38, 88.  Google uses the audio recordings or the transcripts thereof to improve the functionality of its products for its own financial benefit.  ¶¶6, 41, 93.  Google knew that at least some of the audio recordings resulted in error when no hot word was uttered, yet continued the unlawful conduct without remedying it.  It was only after the VTR NWS article was published that Google admitted that Google Assistant was recording and transmitting "false accepts."  ¶39.   Therefore, "[p]laintiffs have alleged facts foreclosing the possibility that [Google's] actions were the product of inadvertence or mistake. *Backhaur,* 74 F. Supp. 3d at 1044; *see also In re Pharmatrak, Inc.,* 329 F.3d 9, 23 (1st Cir. 2003) ("An interception may be more likely to be intentional when it serves a party's self-interest to engage in such conduct.").

Cases cited by Defendants hardly support their position.  *See, e.g., Sunbelt Rentals, Inc. v. Victor,* 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014) (finding lack of intent where the transmission of text messages to Defendant was entirely of the plaintiff's own doing.); *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) (on summary judgment, remanding the determination of intent); *Pharmatrak,* 329 F.3d at 23 (same);  *Sanders v. Robert Bosch Corp.,* 38 F.3d 736 (4th Cir. 1994) (no liability where no one knew of the microphone's design defect and none of defendant's employees ever listened to, recorded, or otherwise acquired any conversations by means of the defective microphone).  Accordingly, Plaintiffs sufficiently alleged that Google's conduct was intentional for purposes of the Wiretap Act.

### 2.       Google Intercepted Plaintiffs' and Class Members' Oral Communications

Google argues that Plaintiffs fail to allege any "oral communications" within the meaning of the Wiretap Act.  Google is mistaken.  Plaintiffs allege that an independent review of "more than a thousand" audio recordings taken from users' GAEDs identified at least 153 conversations "that should never have been recorded [because] the command 'Okay Google' was ***clearly not given***."

5

¶36.

Plaintiffs further allege that where no hot word was uttered and the listening mode was not manually activated, Plaintiffs and Class Members have a reasonable expectation that their private conversations – including bedroom conversations, conversations between parents and their children, and professional phone calls – will not be listened to and/or disseminated to a third party.  ¶¶27-30, 179-80.  This expectation is based on: (i) the context and setting in which they occurred, namely the solitude of their homes to the exclusion of everyone else (¶¶30-33, 250); (ii) the choice not to speak a Hot Word or manually activate the GAEDs into active listening mode (¶31); (iii) Google's own affirmative assurances in its Terms of Service ("TOS") and Privacy Policy that the audio recordings from GAEDs will not be shared with third parties (¶¶31-33). As such, Plaintiffs' allegations of oral communications are far from conclusory.  In these instances, Plaintiffs and the Class had a clear expectation of privacy, which was objectively reasonable.  *Rackemann v. LISNR, Inc.,* Case No. 1:17-cv-00624, 2017 WL 4340349, at *5 (S.D. Ind. Sept. 29, 2017) (noting that plaintiff's inability to "pinpoint the precise dates and times that his smartphone was activated" is not fatal).  *See also* Sec. IV.C.2., *infra.*  Here, the CAC alleges that the conversations intercepted by Google were uttered by a person (1) who has a subjective expectation of privacy, and (2) whose expectation was objectively reasonable.  *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("[A] man's home is, for most purposes, a place where he expects privacy. . . .").

Google's last-resort argument that Plaintiffs failed to specify the "general understanding" of how personal assistants work or to allege that they expected Google Assistant to operate "error-free" (MTD at 6, 17) is a red herring and fails for the same reasons as those discussed in Sec. IV.E.2., *infra,* and Sec. IV.A.1., *supra.*  Again, no part of Plaintiffs' case rests on whether Google's Privacy Policy explicitly promised Google Assistant to operate error-free, but instead, on the affirmative assurances Google gave that it will not record, let alone disseminate, users' confidential information absent the utterance of the hot word or manual activation.  *Id.*

### 3.    The Ordinary Course of Business Exception Does Not Apply

Google argues that it is entitled to the ordinary course of business exception because "the entire function of the Assistant is to listen and respond to user commands."  MTD at 7.  Google

completely ignores that this function is only authorized when users utter a hot word or manually activate the device.  ¶31.  Absent such authorization, Google Assistant is not responding to users' commands, but instead is recording and analyzing the oral communications for purposes unrelated to the Assistant – *i.e.*, product improvement.  *See In re: Google Inc. Gmail Litig.,* Case No. 13-MD-2430, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013) (interception of email content primarily used to create user profiles and to provide targeted advertising not related to the transmission of emails).  Google cannot reasonably argue that its ordinary course of business is intercepting and recording private communications without authorization - conduct Google terms as "false accept." MTD at 17.  Further, the exception only applies to a provider of an "electronic communication service," (18 U.S.C. §2510(5)(a)(ii)), and Google cannot be considered an electronic service provider in the instance when it is recording Plaintiffs' private oral communication because the definition of "electronic communication service" excludes "oral communications."  18 U.S.C. §2510(15).

Even if Google could be considered to provide an "electronic communications service," it does not explain how "the interception facilitated the communication service or was incidental to the functioning of the provided communication service."  *Google Inc. Gmail Litig.,* 2013 WL 5423918, at *8; *see also, Campbell v. Facebook Inc.,* 77 F. Supp. 3d 836, 844 (N.D. Cal. 2014) ("Facebook's unwillingness to offer any details regarding its targeted advertising practice prevents the court from being able to determine whether the specific practice challenged in this case should be considered 'ordinary'").  Further, because Plaintiffs have alleged that Google exceeded the scope of its own privacy policies (¶¶31-32, 96), the ordinary course of business exception cannot apply. *Google Inc. Gmail Litig.,* 2013 WL 5423918, at *12.

**4.     Plaintiffs Have Alleged Unlawful Use and Disclosure**

To establish use and disclosure liability, "a defendant must be shown to have been aware of the factual circumstances that would violate the statute . . . and that the defendant knew [or had a reason to know], *inter alia,* that neither party to the intercepted conversation had consented to the interception." *Thompson*, 970 F.2d at 749.  Google knew that Plaintiffs and Class Members had not consented to the interception of their oral communications based on the fact that no hot word was

7

uttered and no manual activation occurred.  ¶¶87, 90.  Moreover, Google was aware of the factual circumstances surrounding its interception – Google admitted that Google Assistant intercepted and recorded oral communications that were not preceded by a hot word.  ¶31.  Google cannot seriously argue it did not know when a communication was "intercepted" versus when it was intentionally addressed to the Assistant.  MTD at 8.  Critically, Google's argument contradicts Google's own admissions regarding Google Assistant's speech recognition error rate.  For example, in 2017, Google's CEO, Sundar Pichai, publicly announced that Google's speech recognition technology had an error rate of about 5%.  *See* Barb Darrow, *Google Says Its Speech Recognition Leads the Pack,* THE FORTUNE, May 18, 2017.  This means that Google was well aware that at least some recordings were done without users' consent, and therefore, unlawful.  Instead of screening for false accepts – and immediately deleting them – Google retained these recordings and gratuitously used them for its own financial benefit.  ¶¶35, 39, 98.  Third parties (including Google contractors and news media) read and heard oral communications that were clearly not preceded by a hot word.  ¶¶35-38.  Google admitted that it intentionally disclosed these recordings to human beings – contractors and third parties - in order to improve the functionality of Google Assistant, and thereby to generate substantial profit.  ¶93.

## B.    Plaintiffs State a Claim for Violation of the Stored Communications Act

The SCA prohibits certain unauthorized access to stored communications and records.  18 U.S.C. §2701(a). The SCA provides a private cause of action against anyone who: "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) initially exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ."  *Id.*  The SCA also prohibits a person or entity providing an electronic communication service from "divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service."  18 U.S.C. §2702(a)(1).  Plaintiffs here allege that Google accesses Plaintiffs' Google Assistants when it is not authorized to do so and no consent has been given.  These allegations are sufficient to plead an SCA claim.

1.   **Google Assistant and/or the Google Servers Used to Store Plaintiffs' and Class Members' Confidential Communication Constitute a "Facility" Under the SCA**

Although not defined in the statute, a "facility" for purposes of the SCA is considered to be something that provides electronic communication services.  *See In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012).  An electronic communications service is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  18 U.S.C. §2510(15).  Thus, web servers and computer servers generally meet such criteria.  *See In re Pharmatrak, Inc. Privacy Litig.,* 220 F. Supp. 2d 4, 6 (D. Mass. 2002) *rev'd sub nom. Pharmatrak*, 329 F.3d 9.  Here, Plaintiff alleges that the Google Assistant is a "facility" through which Google gained unauthorized access, or exceeded authorization to access, Plaintiffs' communications and obtained those communications while they were temporarily stored on their GEAD's "RAM," when it transmitted the communications to its servers without a hot word being uttered.  ¶¶114, 119.  *See* S. Rep. No. 541, 99th Cong, 2d Sess. at 16 (1986) ("Electronic storage" covers "storage within the random access memory of a computer.").  Additionally, Plaintiffs allege that the servers Google utilizes are a "facility" through which Google gained unauthorized access or exceeded authorization to access Plaintiffs' communications (because no hot word was uttered) and obtained access to Plaintiffs' communications which were stored on such servers.  ¶¶43, 93.  Google divulged the contents of those communications when it transmitted the recordings and/or transcripts to third parties.  ¶¶120-122.  Google Assistant and Google's remote servers are thus "facilities" under the SCA because they provide users with the ability to send and receive (*i.e.*, to ask questions and receive answers) wire and electronic communications and store such communications. ¶¶22-24, 112.

2.   **Plaintiffs Sufficiently Allege Unauthorized Access to Communications Facility**

Plaintiffs' CAC is replete with allegations that establish that Google accessed or exceeded the authorization to access Plaintiffs' communications.  ¶¶31-32, 36-39, 117-122.  While the term "access" is not defined within the SCA, courts construe the term as "*being in position* to acquire the contents of a communication." *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998)

9

1    (emphasis in original).  Thus, someone accesses a communications facility "by simply making

2    ***unauthorized use of [a] . . . password and roaming about [a facility]***," even without recording or

3    disclosing data stored on that system. *Id.*  Furthermore, "exceeds authorized access," as defined by

4    the Computer Fraud and Abuse Act, means accessing "a computer ***with authorization and [using]***

5    ***such access to obtain or alter information*** in the computer that the accesser is not entitled so to

6    obtain or alter." 18 U.S.C. §1030(e)(6).  "'The similarity of language in [the SCA and the CFAA]

7    is a strong indication that [they] should be interpreted *pari passu.*'"  *hiQ Labs, Inc. v. LinkedIn*

8    *Corp.,* 938 F.3d 985, 1003 (9th Cir. 2019) (alterations in original) (finding that "the CFAA's

9    prohibition on accessing a computer 'without authorization' is violated when a person circumvents

10   a computer's generally applicable rules regarding access permissions, such as username and

11   password requirements, to gain access to a computer.").

12        Here, Google itself expressly and impliedly assured Plaintiffs and Class Members that

13   Google Assistant would only listen to, record, and disseminate their conversations with their

14   ***consent***, which can ***only*** be given by (1) uttering "hot words"; or (2) manually pressing a button on

15   a GAED.  ¶¶4, 31, 195.  Google itself thus voluntarily limited its authorization to access Plaintiffs'

16   oral communications stored in Google Assistant or on its servers.  Despite that limitation, Google

17   accessed Plaintiffs' communications by placing itself, and third parties, in a position from which it

18   could view and acquire the contents of Plaintiffs' communications.  ¶¶35-41, 114-117, 120-124.

19        In the same vein, Google exceeded any authorization given to it by virtue of the retention,

20   processing, and dissemination of the audio recordings which Plaintiffs had no knowledge of, nor

21   consented to.  *See* Sec. 4.B.3, *supra.*  Accordingly, the provider-consent exception does not apply

22   here.  *See Theofel v. Farey-Jones,* 359 F.3d 1066, 1073 (9th Cir. 2004) ("Section 2701(c)(1)

23   therefore provides no refuge for a defendant who procures consent by exploiting a known mistake

24   that relates to the essential nature of his access.").  *Svenson v. Google Inc.,* 65 F. Supp. 3d 717 (N.D.

25   Cal. 2014) on which Google relies is distinguishable because the plaintiff there did not "contend

26   Defendants obtained her information unlawfully in the first place; rather, her argument is that after

27   she willingly provided her information to Defendants in connection with her purchase of the app . .

28   . , Defendants made unauthorized use of it," by sharing it with third parties.  Plaintiff's Opposition

10

to Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) an 12(b)(6), *Svenson v. Google, Inc.,* 2014 WL 459659 (N.D. Cal. Jan. 15, 2014) (No. 12-cv-04080-EJD) (ECF No. 32).   Unlike in *Svenson,* Plaintiffs here allege that Defendants were not authorized to access their oral communications absent a hot word or manual activation – therefore, Google's access was unauthorized in the first place, and any access (or use) of the information in electronic storage, was likewise unauthorized.

### 3.   Plaintiffs and the Class Never Consented to Google's Use and Disclosure

Google contends that Plaintiffs consented to its access, use and dissemination of their confidential communications because the Privacy Policy allows it to do so.  MTD at 11.  Google, however, ignores the provision of the Privacy Policy that is specific to audio information, which prohibits the conduct alleged in the CAC.  The Privacy Policy states that such information will only be collected when the audio features are in use.  Bali Declaration, ECF No. 56-1 ("Bali Decl."), Ex. D at 22.  Here, Google obtains and disseminates recordings when the audio devices are not in use – when no hot word is communicated.  Accordingly, rather than permit the conduct complained of, the Privacy Policy prohibits such conduct.

Moreover, as the party seeking the benefit of the consent defense – and because Plaintiff has pled that Plaintiffs and Class Members do not consent to the interception, recording, and disclosure of their confidential communications (*see, e.g.*, ¶¶50-54) – "the burden is on [Google] to prove that it obtained consent."  *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (Koh, J.). To do that, Google must show that the language upon which it relies to establish consent is specific and unambiguous.  *See, e.g¸, Campbell,* 77 F. Supp. 3d at 847 (disclosure that Facebook "'may use the information we received about you'" for "'data analysis'" was "not specific enough to establish that users expressly consented to the scanning of the content of their messages . . . for alleged use in targeted advertising").  Here, for there to be consent, a reasonable user viewing Google's Privacy Policy would have to understand that Google listens to their confidential communications – including without the utterance of a hot word or manual activation – and discloses the contents thereof to third parties for analysis.  Google's Privacy Policy, which merely states that Google "***provide[s] personal information*** [to third parties] ***to process it***" does not achieve that objective.

11

Rather, the Privacy Policy merely mentions disclosure to third parties, but nowhere does it adequately explain what "personal information" or "process[ing]" means, nor that the recording and processing occurs without the utterance of a hot word or manual activation. *See Google Inc. Gmail Litig.*, 2013 WL 5423918, at *14 (finding that prior versions of Google's TOS and Privacy Policy failed to establish consent in part because they did not "specifically mention the content of users' emails to each other or to or from non-users"). Worse, Google misleadingly uses "name or phone number" as an example of "personal information," further obfuscating its surreptitious listening and dissemination from the awareness of reasonable users. *See* Bali Decl., Ex. D at 20. In the same vein, Google fails to explain that "process[ing]" involves the provision of transcripts of Plaintiffs' and Class Members' communications for review by humans, as opposed to aggregate data analysis, as the word "processing" implies.

In any event, Google's consent argument is completely irrelevant to the Subclass of minor children because under California law, a minor has no capacity to "give a delegation of power" or "make a contract relating to any personal property not in the immediate possession or control of the minor." Cal. Fam. Code §6701. Because the confidential information belonging to the Subclass comprised of minor children is not a real property, it is, by definition, "personal property." *See* Cal. Civ. Code §§658, 663 ("Every kind of property that is not real is personal."). Furthermore, the contents of the confidential communication were not in the "immediate possession or control" of the Subclass while the communication was in transit or was being transmitted via the GAEDs to Google's servers, thus entitling the Subclass to relief under §6701.

**C.** **Plaintiffs State a Claim Under California Invasion of Privacy Act**

Plaintiffs adequately allege two claims under the California Invasion of Privacy Act ("CIPA") – Cal. Penal Code §§631 and 632 – both of which were enacted to prevent unauthorized eavesdropping and other invasions of privacy. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("'Eavesdropping' is the problem the Legislature meant to deal with [in enacting Penal Code section 630]").

1

### 1.    Google's Interception of Plaintiffs' Communication Is Unlawful Under Section 631(a)

2

Section 631(a) proscribes three separate acts: (1) intentional wiretapping, (2) willful attempts

3

to learn the contents of a communication in transit, and (3) attempts to use or publicize information

4

obtained in either manner.  *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192-193 (1978).  Plaintiffs

5

adequately plead that Google violates all three proscribed acts under CIPA by alleging that: (i)

6

Google made an unauthorized connection with Class Members' GAEDs (¶¶34-42, 134); (ii) through

7

the unauthorized interception, Google learned the contents of Plaintiffs' and Class Members'

8

confidential communications (¶¶36-37, 137-38); and (iii) Google transmitted the contents of the

9

confidential communications to Google's servers (¶¶24, 35, 134-36) as well as to third-party

10

vendors, for Google's own financial benefit (¶¶35, 39, 136).  Similar allegations have in the past

11

been found sufficient to state a claim for violation of §631(a).  *See, e.g.*, *Matera v. Google Inc.*, Case

12

No. 15-CV-04062-LHK, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citing cases and

13

noting that "courts across the country have found that the unauthorized interception of an

14

individual's private communications may state a claim for common law invasion of privacy").

15

Despite these well pled allegations, Google contends that it has not violated §631(a) because

16

it has not made a connection with a "telephone, wire, line, cable, or instrument."  MTD at 12.

17

Google's attempt to so constrain the application of §631(a) makes no sense.  The mutually

18

independent second clause of §631(a) specifically applies to "any message, report, or

19

communication," which is "being sent from, or received at any place within this state" without

20

regard to whether such connection was made with via a telephone, wire, line, cable, or instrument.

21

*See* Cal. Penal Code §631(a).  Thus, by its own terms, §631(a) applies to other unlawful acts, not

22

just those occurring on wires, lines, and cables, as Google incorrectly posits.  Indeed, the case on

23

which Google relies confirms precisely that.  *See Google Inc. Gmail Litig.*, 2013 WL 5423918, at

24

*20 ("the Court finds no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire,

25

line, cable, or instrument' in the first clause of the statute should be imported to the second clause

26

of the statute" and finding that CIPA encompasses emails.).

27

Moreover, the Legislature's intent in enacting §630 commands broad and liberal

28

construction, inconsistent with Google's narrow interpretation: "The Legislature by this chapter intends to protect the right of privacy of the people of this state" from what it perceived as "a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society."  Cal. Penal Code, §630.  Google's narrow reading also conflicts with the Penal Code, which expressly states that: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code."  Cal. Pen. Code §4; *see also Google Inc.Gmail Litig.*, 2013 WL 5423918, at *21 ("[T]he California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme.").

Next, Google stands §631(a) on its head by arguing that because "any review or analysis of Plaintiffs' communications occurred *after* the in-person communication was recorded and transmitted to Google's servers," such communication was not intercepted "*while* in transit or passing over any wire, line, or cable." (italics in original).  MTD at 13.  An identical argument has already been rejected by the Supreme Court of California in *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), where, as here, the defendant argued that "'once a phone message reaches its place of destination it is no longer *in transit . . . .*'"  *Id.* at 360.  The Court found that such argument "ignores the plain language of section 631," which provides for penalty for learning the contents of a communication while it is "*being sent from, or received at* any place within this state . . . ."  *Id.* (italics in original).  Here too, Google's "in-transit" argument fails.

### 2.    Plaintiffs Have Alleged Confidential Communication Under Section 632

To state a claim under California Penal Code §632, a plaintiff must prove (1) an electronic recording of or eavesdropping on (2) a confidential communication (3) to which all parties did not consent.  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 769 (2002).  Google first argues – as it did for purposes of the federal Wiretap Act (*see* MTD at 5) – that Plaintiffs failed to allege intent.  MTD at 13.  However, as detailed in Secs. IV.A.1., *infra* and 4.C.2., *supra*, Google's surreptitious eavesdropping was intentional as evidenced by Google's own admissions, the financial and commercial benefits it obtained therefrom (¶¶38-39, 93-98, 120), and its proven track record of violating consumers' privacy rights across the globe (¶¶45-49).  As such, the facts here stand in a sharp contrast with those in Google's cited authority.  *See People v. Superior Court of Los Angeles*

14

1    *Cty.,* 70 Cal. 2d 123, 125 (1969) (inadvertent recording in the context of testing the performance of

2    audio-recording equipment did not violate CIPA).

3        Google's next argument that Plaintiffs failed to allege communications that "qualify as

4    'confidential'" likewise misses the mark.   MTD at 14.   Section 632(c) defines "confidential

5    communication" as "any communication carried on in circumstances as may ***reasonably indicate***

6    that ***any party*** to the communication ***desires*** it to be ***confined to the parties thereto*** . . . "  Cal. Penal

7    Code §632(c).  As articulated in an unanimous decision of the California Supreme Court, the test

8    whether a conversation is confidential, hinges on whether a party to that conversation has an

9    "objectively reasonable expectation that the conversation is not being overheard or recorded . . .

10   ***regardless of the content of the conversation***."  *Flanagan,* 27 Cal. 4th at 776-77.

11       As discussed in Section IV.4.2, *infra*, Plaintiffs and Class Members have a reasonable

12   expectation of privacy in their private communications.  These allegations more than demonstrate

13   Plaintiffs' desire "that the conversation is not being overheard or recorded." *Flanagan*, 27 Cal. 4th

14   at 777.  Google's cases do not demand a different result as they are easily distinguishable on their

15   facts.  *See Reynolds v. City & Cty. of San Francisco,* No. C 09-0301 RS, 2012 WL 1143830, at *1

16   (N.D. Cal. Mar. 30, 2012), aff'd, 576 F. App'x 698 (9th Cir. 2014) (finding, on a summary judgment,

17   "no reasonable expectation of privacy in a work related telephone call conducted at his desk in an

18   open office space"); *Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 118 (2006) (noting that

19   "[a] business that adequately advises all parties to a telephone call, at the outset of the conversation,

20   of its intent to record the call would not violate" CIPA).  Consequently, this Court cannot hold, as a

21   matter of law, that no inferences of an objectively reasonable expectation of privacy can be drawn

22   from the CAC.

23       Finally, Google repeats the mantra that its Privacy Policy disclosed its illicit practices, and

24   therefore, is sufficient to operate as a consent to record, process, and disseminate Plaintiffs' and

25   Class Members' confidential communications.  MTD at 13.  These arguments fail for the same

26   reasons they fail in the context of the federal Wiretap Act and the SCA.  *See* Secs. IV.B.3., *infra.*

27       **D.    Plaintiffs State a Claim for Intrusion Upon Seclusion and Invasion of Privacy**

28       Where, as here, a claim for violation of privacy under the California Constitution is asserted

in combination with the tort claim of intrusion upon seclusion, California courts assess the two claims together. *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019). The examination of the "largely parallel elements" of the two claims require the consideration of: "'(1) the nature of the any intrusion upon reasonable expectations of privacy; and (2) the offensiveness or seriousness of the intrusion . . .'" *Id.* Plaintiffs' allegations easily satisfy both elements.

Defendant does not – and cannot – challenge Plaintiffs' allegations regarding the reasonable expectation of privacy in the confidential communications nor the offensiveness of its conduct. MTD at 14-16. So instead, Defendant argues that Plaintiffs' failure to identify specific conversations is "fatally conclusory." *Id.* at 15. Defendant relies on *Yahoo Mail,* 7 F. Supp. 3d at 1041 where – unlike here – plaintiffs "'allege[d] no facts regarding the content of their emails, the intent in sending the emails, the circumstances under which the emails were sent, or who the recipients were[.].'" *Id.* at 1039. Thus, the court in *Yahoo* was essentially asked to recognize a protected privacy interest "in email *generally* . . . ***regardless of the specific content in the emails***." (first emphasis in original). *Id.* at 1040. Plaintiffs make no such request here.

Rather, Plaintiffs here allege the type of information Google accessed and the parties thereto (¶¶36, 179-80), the means by which Google recorded these communications (¶¶23, 38-39) and the method by which third-party vendors gained access to and reviewed them (¶35), the purpose for which Google recorded and disseminated such communications (¶¶5, 93, 95), and the studies, surveys, and other secondary materials establishing social norms relating to Google's intrusion (¶¶29-30). Courts have previously found similar allegations sufficient. *See Kiloo ApS*, 385 F. Supp. 3d at 1035 ("Plaintiffs state in detail what data was secretly collected, how the collection was done, and how the harvested data was used . . . [and presented in] reports, studies, surveys, case law and secondary legal materials [to allege offensiveness of recording].."); *also see Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012) (expectation of privacy found in email where plaintiff was the sole account holder, only used his email for personal matters, had the email account password protected, and did not give consent to defendants to access it).

Google's reliance on *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) does not warrant dismissal. In *Nickelodeon*, the Third Circuit affirmed the dismissal based

16

on the assumption that "tracking cookies can serve legitimate commercial purposes." *Id*. at 294 & n.203.   The same does not hold here, where the claim is based on the secret interception of confidential communications occurring in the solitude of one's home.  *See Kiloo ApS,* 385 F. Supp. 3d at 1036 (distinguishing *Nickelodeon* on the grounds that the practice of monitoring one's mobile phone activity far exceeds the practice of tracking cookies in *Nickelodeon*).  Defendant's other cases do not demand a different result.  *See Belluomini v. Citigroup, Inc*., No. CV 13-01743 CRB, 2013 WL 3855589, at *7 (N.D. Cal. July 24, 2013) (concerning the disclosure of "[p]*laintiffs' contact information*"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (concerning the disclosure of plaintiff's LinkedIn ID and the URL of the LinkedIn profile page).

As to Google's argument regarding offensiveness of its conduct to a reasonable user, Plaintiffs allege multiple bases for why Google's surreptitious listening and dissemination was sufficiently serious, and therefore highly offensive to well-established social norms regarding privacy.  *See* Sec. IV.A.2., *infra*.

### E.       Plaintiffs State a Claim for Breach of Contract

To state a claim for a breach of contract under California law, plaintiff must allege: (i) the existence of a contract; (ii) the plaintiff's performance or excuse for nonperformance of its side of the agreement; (iii) the defendant's breach; and (iv) resulting damage to the plaintiff.  *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019). Plaintiffs allege precisely that.   Google promises that: (1) the GAEDs will only record communications when a hot word has been spoken or Google Assistant has been manually activated; and (2) recordings made by the GAEDs will not be shared with third parties without Plaintiffs' consent.  ¶¶4, 5, 31-32, 195-196.  Plaintiffs allege that Google breaches these promises by: (1) recording Plaintiffs' and Class Members' conversations when no hot word has been spoken and no manual activation occurred (¶197); and (2) sharing confidential communications with third-party subcontractors without Plaintiffs' and Class Members' consent.  ¶197-198.  These allegations suffice to demonstrate that Google breached its contract.

Google argues that Plaintiffs fail to identify the contract at issue.  Not so.  The promises that form the basis of Plaintiffs' claim are made in Google's Privacy Policy, which is expressly

1  incorporated into Google's TOS and therefore part of the contract between Google and Plaintiffs

2  and the Class.  ¶¶191-192, 195.  In an attempt to narrow its liability, Google argues that its own

3  webpages cited in the CAC are not incorporated into Google's TOS or Privacy Policy, and are

4  therefore, not part of the contract between Plaintiffs and Google.  MTD at 16.  However, Google's

5  own TOS contradicts Google's argument as it states in relevant part:

6      Our Services are very diverse, so sometimes additional terms or product
       requirements (including age requirements) may apply.  ***Additional terms will be***
7      ***available with the relevant Services, and those additional terms become part of***
       ***your agreement with us if you use those Services***.

8  ¶191.  Furthermore, the TOS incorporates other websites and policies by stating:

9      Google's privacy ***policies*** explain how we treat your personal data and protect your
       privacy when you use our Services.  By using our Services, you agree that Google
10     can use such data in accordance with our privacy ***policies***.

11  *See* TOS[4] (emphasis added).  In the TOS, Google even provides a hyperlink to the Privacy Policy,

12  which Plaintiffs allege Google has breached.  Accordingly, the Privacy Policy, the TOS, and the

13  websites referenced therein are all part of the contract between Plaintiffs and Google.  *See, e.g.,*

14  *Facebook*, 402 F. Supp. 3d at 791 (a specific reference to a linked webpage sufficient to incorporate

15  such page by reference into the contract).

16      Google next argues that Plaintiffs fail to adequately allege which provisions of the contracts

17  it breached.  MTD at 16.  Yet, Plaintiffs' CAC expressly identified the pertinent provisions of

18  Google's Privacy Policy, which: (i) limited the use of "audio information" to instances when users

19  "use audio features" (Bali Decl., Ex. D at 22); and (ii) assured that dissemination to third parties

20  will only occur with Plaintiffs' and Class Members' consent.  ¶192.

21      Google also contends that Plaintiffs' breach of contract claim fails because neither the TOS

22  nor the Privacy Policy expressly promise that the GAEDs will never experience a "false accept."

23  MTD at 17.  This mischaracterizes Plaintiffs' allegations, which do not rest on whether or not the

24  Privacy Policy explicitly promises that the devices will not experience false accepts.  Rather, the

25  Privacy Policy clearly promises that voice and audio information will only be collected "when you

26  use audio features."  The devices are only activated, and thus "in use" when a hot-word is

27  communicated or the button is pressed.  ¶¶22-24.  Yet, Google collects audio recordings from the

28  _____

[4]      https://policies.google.com/terms?hl=en-US (last visited Jan. 17, 2020).

1    devices when the devices are not in use.  This is the promise Google is alleged to have breached.

2           With regard to sharing Plaintiffs' and Class Members' private conversations with third

3    parties, Plaintiffs allege that such conduct also violates the Privacy Policy.  ¶¶196-197.  The Privacy

4    Policy states that "we do not share your personal information with companies, organizations, or

5    individuals outside of Google except . . . [with the express consent of the user]. . . ."  ¶192.  Here,

6    Google shares the audio recordings obtained from Plaintiffs and the Class with third-party vendors

7    without Plaintiffs' consent (¶¶54, 198) in order to improve the functionality of the Google Assistant

8    and not for external processing of users' requests or queries.  ¶¶35, 41.  Accordingly, by sharing

9    Plaintiffs' communications with such third parties, Google violates the terms of the Privacy Policy.

10          Google's explanation of its conduct – that sharing Plaintiffs' confidential recordings with

11   subcontractors is acceptable because the contractors are not third-party apps – turns the entire

12   concept of the Privacy Policy on its head.  MTD at 17.  The Privacy Policy is designed to provide

13   express limitations on Google's collection, use, and dissemination of its users' confidential

14   information.  Google's contention that such policies allow Google to widely disseminate its users'

15   confidential information to any third parties other than apps and services is absurd and should be

16   rejected.

17          Finally, contrary to Google's contention (MTD at 18-19), Plaintiffs adequately allege

18   damages under three separate theories: (1) damage to their privacy interests; (2) benefit of the

19   bargain; and (3) disgorgement of profits.  ¶201.  Although all three are viable theories, and each

20   alone suffices to uphold Plaintiffs' claims (*Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939 (2009)),

21   Google only challenges one of them - the benefit of the bargain theory.

22          Under the benefit of the bargain theory, Plaintiffs seek damages resulting from their

23   overpayment for the GAEDs, which they allege are worth less due to Google's breaches of contract.

24   ¶201.  Google cites *Svenson,* 65 F. Supp. 3d at 717 for the proposition that the Plaintiffs who did

25   not pay for their devices cannot recover damages.  MTD at 18.  Google fails to mention that the

26   *Svenson* court subsequently upheld the plaintiff's breach of contract claim on both the harm to

27   privacy interests *and* benefit of the bargain theories.  *Svenson v. Google Inc.,* Case No. 13-cv-04080-

28   BLF, 2015 WL 1503429, at *3-5 (N.D. Cal. Apr. 1, 2015).

Furthermore, the CAC alleges two additional theories of damages, neither of which Google even attempts to address.  **First,** Plaintiffs seeks "damages that will reasonably compensate them and the Class for the harm to their privacy interests."  ¶201.  Under California law, a breach of contract that invades a plaintiff's privacy interests gives rise to an action for damages.  *Facebook*, 402 F. Supp. 3d at 802; *Svenson*, 2015 WL 1503429, at *5.  This is true even for Plaintiffs and members of the Class who may not have suffered any actual damages, as such individuals may nevertheless recover nominal damages.  *Id*.  **Second,** Plaintiffs seek "disgorgement of profits made by Google as a result of its breach of contract."  ¶201.  California law recognizes that restitutionary remedies such as disgorgement of profits are available in breach of contract actions.  *Alkayali v. Hoed*, Case No.: 3:18-cv-777, 2018 WL 3425980, at *6-7 (S.D. Cal. July 16, 2018).  Accordingly, Plaintiffs sufficiently allege damages.

### F.     Plaintiffs State a Claim for Breach of Express Warranty

Under California law, to prevail on a breach of express warranty claim a plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.  *Allen v. ConAgra Foods, Inc.,* Case. No. 13-CV-01279-JST, 2013 WL 4737421, at *11 (N.D. Cal. Sept. 3, 2013).  Here, Defendant challenges only the first element of Plaintiffs' claim for a breach of express warranty and incorrectly posits that Plaintiffs failed to identify "a specific and unequivocal written statement" about the product.  MTD at 19.  This is the same argument Defendant asserted in the context of Plaintiffs' claim for breach of contract, and therefore, fails for the same reasons set forth by Plaintiffs there.  *See* Sec. IV.E., *infra*.  As to cases cited by Google, they are of no avail to Google's position because there – unlike here – plaintiffs merely vaguely asserted that defendants gave warranties "regarding the security and processing speeds of the processors."  *Hauck v. Advanced Micro Devices, Inc.*, Case No. 18-CV-00447-LHK, 2019 WL 1493356, at *16 (N.D. Cal. Apr. 4, 2019).  Accordingly, Plaintiffs have adequately stated a claim for a breach of express warranty.

### G.     Plaintiffs State Claims for Breach of the Implied Warranty of Merchantability and Magnuson-Moss Warranty Act

The implied warranty of merchantability warrants that a purchased good is "fit for the

20

ordinary purposes for which such goods are used." Cal. Comm. Code §2314(2)(c).  For a product to be unfit for its ordinary purpose, the defect must be "fundamental" so that it affects the core functionality of the product," as defined by the common sense of reasonable consumers' expectations.  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1109-10 (N.D. Cal. 2015).  This Court's analysis in *Carrier IQ*, 78 F. Supp. 3d at 1010, illustrates this point.  There, consumers brought a suit against phone manufacturers for selling cell phones that – like in this case – surreptitiously intercepted personal communications and transmitted them to third parties.  *Id.* at 1062.  Like Defendant here (*see* MTD at 20), the manufacturers argued that the cell phones were not unfit for the devices' ordinary purpose because they continued to make and receive phone calls, send text messages, use mobile apps, and access the internet.  *Id.* at 1109.  The *Carrier* Court found defendants' argument "overly simplistic and underinclusive" and clarified that the defect does not have to "preclude any use of the product at all."  *Id.* at 1110.  The same logic applies with respect to Google's GAEDs.  ¶30.

As to devices sold by entities other than Google, Google argues that the lack of vertical privity between Google and the purchasers defeats Plaintiffs' claims.  MTD at 20.  Google ignores that vertical privity here is satisfied because Plaintiffs purchased their GAEDs from actual or apparent agents of the manufacturers, *i.e.*, "authorized retailers."  ¶215; *see also Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 138 (2008) ("Vertical privity means that the buyer and seller were parties to the sales contract.").  Moreover, Google does not even attempt to address the well-recognized exceptions to the vertical privity requirement: (1) when the manufacturer engages in conduct directly with the purchaser that functionally places the manufacturer in the position of the direct seller (the "direct dealings" exception) (*Id.* at 144); and (2) when a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability (the "third-party beneficiary" exception).  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-1185 (C.D. Cal. 2010) (*"Toyota Mktg. Litig."*) ("where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty claim").

Here, the direct dealings exception is satisfied because Google benefited from the sales

negotiations that took place when Plaintiffs purchased their devices from Google's "authorized retailers" (¶216), which "functionally places [Google] in the position of a direct seller." *Cardinal Health 301,* No. 169 Cal. App. 4th at 144.   The third-party beneficiary exception is likewise satisfied because Google's "authorized retailers" contracted directly with Google with the sole purpose to sell the GAEDs to consumers – the intended ultimate purchasers of Google's products. *See Toyota Mktg. Litig.,* 754 F. Supp. 2d at 1185 (third-party beneficiary exception applied where retailers were not intended to be the ultimate consumers).

Finally, Google argues that Plaintiffs' claim for implied warranty of merchantability fails on the grounds that Google's Privacy Policy disclaims it.   MTD at 20.   Google's disclaimer is ineffective because it is unconscionable in that it "creates an overly harsh or one-sided result that shocks the conscience." *Berenblat v. Apple, Inc*., No. 08-4969 JF (PVT), 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010).   This is because Google's TOS is a non-negotiable contract of adhesion that affords consumers no bargaining power and leaves them with no meaningful choice, as Google's biggest competitors (Amazon and Apple) both contain similar disclaimers.   Google's disclaimer also shocks the conscience because it operates as a relinquishment of consumers' right to privacy in the confidential communications occurring in the most private areas imaginable.

Accordingly, Plaintiffs have sufficiently pled implied warranty claims, and they have, therefore, sufficiently pled violations of the Magnuson-Moss Warranty Act.

## H.      Plaintiffs State a Claim Under California's Unfair Competition Law

### 1.      Plaintiffs Have Standing Under the UCL

The coverage of California's UCL is sweeping, and its standard for wrongful business conduct intentionally broad." *In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016).   The UCL confers standing on anyone who suffers an "injury in fact" – that is, has "lost money or property" as a result of the alleged violation.   Cal. Bus. & Prof. Code §17204.   Here, Plaintiffs plainly allege that they would not have purchased their GAEDs, or would have paid less for them, if they had known that Google was intercepting, recording, disclosing, and otherwise misusing their conversations without their authorization.   ¶¶7, 54, 241; *see also* Sec. IV.E.3., *infra.* These allegations fall squarely within the holding of the California Supreme Court that economic

loss under the UCL includes paying more or acquiring less in a transaction than one should have. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ("[An economic injury may be shown where plaintiff] surrender[s] in a transaction more, or acquire[s] in a transaction less, than he or she otherwise would have[.]").

Plaintiffs further allege that Google has wrongfully monetized and profited from Plaintiffs' personal content and information, which is of value, entitling Plaintiffs to restitution. Entitlement to restitution is sufficient to demonstrate a loss of money or property under the UCL. *In re Anthem, Inc. Data Breach Litigation* ("*Anthem II*"), Case No. 15-MD-02617-LHK, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016). Indeed, the UCL allows Plaintiffs to recover the profits Google reaped from their illegally recorded content and information. *See In re Google Android Consumer Priv. Litig.* ("*Google Android Litig. II*"), No. 11-MD-2264, 2014 WL 988889, at *7 (N.D. Cal. Mar. 10, 2014) ("Although Plaintiffs do not allege facts that show they paid money directly to Google, the Court cannot conclude that Plaintiffs might not be able to show an ownership interest in at least some of Google's profits."). In *Google Android Litigation II*, as here, it was alleged that Google collected personal information without the plaintiffs' consent. The court there ruled that the plaintiffs could collect as restitution the value of their wrongfully obtained information. *Id*., at *7. The UCL requires such a result, because it permits restitution when "a present or future property interest [is] diminished." *Kwikset*, 51 Cal. 4th at 323.

### 2. Plaintiffs Adequately Allege Affirmative Misrepresentations, Material Omissions, and Reliance

Google argues that Plaintiffs fail to adequately allege affirmative misrepresentation. MTD at 22-23. This is the same argument that Google has already asserted in the context of Plaintiffs' claim for breach of contract and fails for the same reason set forth by Plaintiffs there. *See* Sec. IV.E.2. As to Google's contention that Plaintiffs fail to allege actionable omissions, Google is likewise wrong because Plaintiffs plainly allege that Google failed to disclose that GAEDs were intercepting, recording, disclosing, and otherwise misusing Plaintiffs' and Class Members' speech without their consent. ¶239.

In addition, while Google argues that Plaintiffs failed not to plead reliance on a

misrepresentation or omission, Plaintiffs allege that they would not have purchased their GAEDs, or would have paid less for them, had they known that Google was intercepting, recording, disclosing, and otherwise misusing their conversations without consent or authorization.  ¶¶7, 54, 241.  Such an allegation supports a finding of reliance because "'[r]eliance can be prove[n] in a fraudulent omission case by establishing that had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently.'" *Anthem II*, 2016 WL 3029783, at *35 (alteration in original).  Moreover, reliance is presumed where a misrepresentation is material. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 790 F. Supp. 2d 1152, 1169 (C.D. Cal. 2011).

In addition, because "'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission,'" Rule 9(b) does not apply with the same force in an omission case. *Anthem II*, 2016 WL 3029783, at *35.  Plaintiffs' allegations also satisfy Rule 9(b)'s purpose "'to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations.'" *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010).

### 3.      Plaintiffs' Allegations Satisfy the UCL's Unlawful Prong

As discussed above, Plaintiffs allege that Google violated at least four statutes: the Wiretap Act, the SCA, the CIPA, and the Magnuson-Moss Warranty Act.  Plaintiffs further allege that Google breached its contract, including its Privacy Policy, which violates Business and Professions Code §22576.  In addition, Plaintiffs allege that Google violated the California Constitution by invading their privacy and violated common law prohibitions of intrusion upon seclusion.  Because Plaintiffs have adequately alleged violations of these statutes, Plaintiffs have adequately alleged claims under the UCL's unlawful prong.  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.* Case No. 16-MD-2752, 2017 WL 3727318, at *23 (N.D. Cal. Aug. 30, 2017) ("To the extent that Plaintiffs have sufficiently alleged these stand-alone causes of action, Plaintiffs have also alleged violations of the unlawful prong of the UCL.").

### 4.      Plaintiffs' Allegations Satisfy the UCL's Unfair Prong

The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair

24

"even if not proscribed by some other law."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999).  California courts apply a balancing approach, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

While Google argues that the utility of their devices outweighs the harm to the Plaintiffs, these arguments directly contradict the well-pled allegations of the CAC.  Here, Plaintiffs allege that Google's actions have violated California's strong public policy of protecting privacy by illegally wiretapping and wrongfully transmitting to third parties Plaintiffs' confidential communications. This strong public policy is embraced in the California Constitution, which recognizes privacy as a fundamental right.  ¶27.  Plaintiffs further allege that each unconsented recording is an "egregious breach of social norms" and that they "knowingly violated consumers' privacy rights, including within the sanctity of consumers' own homes where they have the greatest expectation of privacy. *See* Sec. IV.A.2., *supra.*  Such allegations satisfy the unfairness prong of the UCL.  *See Anthem II*, 2016 WL 589760, at *22 (denying motion to dismiss plaintiffs' UCL claim under the unfair prong and noting that defendants' actions violated "California's public policy of protecting consumer data").  Accordingly, Plaintiffs' UCL claims should be upheld.

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.  Further, as necessary to avoid dismissal of any of their claims, Plaintiffs respectfully ask that their request for leave to amend be granted.

Dated:  January 17, 2020                     **LEXINGTON LAW GROUP**


*/s/ Mark N. Todzo*
Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Stephanie A. Hackett (Bar. No. 238655)
Hal C. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
shackett@scott-scott.com
hcunningham@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone:  (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*