Bobbie J. Wilson, Bar No. 148317
*BWilson@perkinscoie.com*
Sunita Bali, Bar No. 274108
*SBali@perkinscoie.com*
**PERKINS COIE LLP**
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone: 415.344.7000
Facsimile:  415.344.7050

Attorneys for Defendants
GOOGLE LLC and ALPHABET INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 5:19-cv-04286-BLF |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Judge:      Hon. Beth Labson Freeman |
| | Date:      April 9, 2020<br>Time:      9:00 a.m.<br>Dept.:      Courtroom 3 - 5th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ....................................................................................................... 1

    A. Plaintiffs' Wiretap Act Claims Should be Dismissed ............................................ 1

        1. Plaintiffs have not alleged the requisite intent. ........................................... 1

        2. Plaintiffs have not alleged any "oral communications." ............................. 2

        3. Plaintiffs' allegations establish the ordinary course of business exception. ................................................................................................. 3

        4. Plaintiffs have not alleged an unlawful use or disclosure. .......................... 4

    B. Plaintiffs' SCA Claims Should be Dismissed. ...................................................... 4

        1. Plaintiffs fail to state a claim under Section 2701 ...................................... 4

        2. Plaintiffs fail to state a claim under Section 2702 ...................................... 5

    C. Plaintiffs Fail to State a Claim under CIPA ......................................................... 6

        1. Plaintiffs cannot state a claim under Section 631(a). ................................. 6

        2. Plaintiffs have not stated a claim under Section 632. ................................ 7

    D. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion or Invasion of Privacy .............................................................................................................. 7

    E. Plaintiffs Have Not Alleged a Breach of Contract Claim ...................................... 8

        1. Plaintiffs fail to adequately identify the contract Google allegedly breached. ................................................................................................. 8

        2. The conduct alleged by Plaintiffs is not a breach of the TOS or Privacy Policy. ........................................................................................ 9

        3. Plaintiffs fail to allege damages .............................................................. 10

    F. Plaintiffs Kumandan and Spurr Fail to Allege Breach of Any Warranty ............. 10

        1. Plaintiffs have not and cannot allege the existence or breach of any express warranty ................................................................................... 10

        2. Plaintiffs do not allege breach of the implied warranty of merchantability ....................................................................................... 11

            a. Google's disclaimer of the implied warranty of merchantability in its Terms of Service is valid and enforceable. ............................................................................... 11

**TABLE OF CONTENTS**
**(continued)**

Page

b.  Plaintiffs have not alleged a fundamental defect that renders their GAEDs unfit for their intended purpose..............................11

c.  Plaintiffs do not allege they were in vertical privity with Google. .......................................................................................12

G.  Plaintiffs Fail to State a Claim Under the UCL ...................................13

1.  Plaintiffs fail to allege a tangible, economic loss entitling them to standing. ...................................................................................13

2.  Plaintiffs fail to allege that they relied on any misrepresentation or omission. ....................................................................................14

3.  Plaintiffs fail to articulate any unfair conduct.........................................15

4.  Plaintiffs do not state a claim for unlawful conduct under the UCL. .......15

III.  CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alkayali v. Hoed*,
No. 3:18-cv-777, 2018 WL 3425980 (S.D. Cal. July 16, 2018) ...............................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................8

*Baba v. Hewlett-Packard Co.*,
No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) .......................................15

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................................................2

*Belluomini v. Citigroup, Inc.*,
No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ...................................8

*C.M.D. v. Facebook, Inc.*,
No. C 12-1216 RS, 2014 WL 1266291 (N.D. Cal. Mar. 26, 2014), *aff'd sub
nom. C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir.
2015) .....................................................................................................................................6

*Cardinal Health 301, Inc. v. Tyco Electronics. Corp.*,
169 Cal. App. 4th 116 (2008) ........................................................................................12, 13

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017, 1022 (9th Cir. 2008)...............................................................................11, 12

*Cousineau v. Microsoft Corp.*,
6 F. Supp. 3d 1167 (W.D. Wash. 2014)..................................................................................5

*Cullen v. Netflix, Inc.*,
880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................................15

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ............................................................................................................7

*Hauck v. Advanced Micro Devices, Inc.*,
No. 18-CV00447-LHK, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019)....................................11

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ............................................................................................................8

*Hernandez v. Lopez*,
180 Cal. App. 4th 932 (2009) ...............................................................................................10

-iii-

# TABLE OF AUTHORITIES
### (continued)

Page

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)................................14

*In re Carrier IQ*, Inc.
   78 F. Supp. 3d 1051 (2015).........................................................................................12, 13

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................13, 14

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264 JSW, 2014 WL 988889 (N.D. Cal. Mar. 10, 2014) ..................................14

*In re Google Inc. Gmail Litig.*,
   No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)............................3, 7

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................5, 15

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ..............................................................................11

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016).............................................................................................8

*In re Pharmatrak, Inc. Privacy Litig.*,
   329 F.3d 9 (1st Cir. 2003) ...............................................................................................2

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................................8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).....................................................................................13, 14

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) ....................................................................................................14

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................8

*McDonald v. Kiloo ApS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019) ............................................................................8

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ................................................................................12

-iv-

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...................................................................15

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009)..................................................................................4

*People v. Buchanan*,
    26 Cal. App. 3d 274 (1972)....................................................................................7

*Rackemann v. LISNR, Inc.*,
    No. 1:17-cv-00624, 2017 WL 4340349 (S.D. Ind. Sept. 29, 2017)........................3

*Ribas v. Clark*,
    38 Cal.3d. 355 (1985) ...........................................................................................7

*Satchell v. Sonic Notify, Inc.*,
    234 F. Supp. 3d 996 (N.D. Cal. 2017) ...................................................................3

*Svenson v. Google, Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...............................................................5, 10

*Svenson v. Google Inc.*,
    No. 13-CV-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015)....................10

*Tavernetti v. Superior Court*,
    22 Cal.3d 187 (1978) .........................................................................................6, 7

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004)................................................................................5

*Thompson v. Dulaney*,
    970 F.2d 744 (10th Cir. 1992)................................................................................4

*U.S. v. Townsend*,
    987 F.2d 927 (2d Cir. 1993)...................................................................................2

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................9

**STATUTES**

18 U.S.C. § 2510 .........................................................................................................3

18 U.S.C. § 2701 .....................................................................................................4, 5

18 U.S.C. § 2702 .........................................................................................................5

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3   Cal. Penal Code § 631 .................................................................................6, 7

4   Cal. Penal Code § 632 ....................................................................................7

5   **RULES**

6   Fed. R. Civ. P. 8(a)(2) ................................................................................2, 8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
5:19-CV-04286-BLF

# I.   INTRODUCTION

Plaintiffs' Opposition, like their Consolidated Amended Complaint ("CAC"), is replete with inflammatory rhetoric, but that does not change the fact that Plaintiffs have not alleged sufficient facts to state a claim under any legal theory.

All of Plaintiffs' claims are premised on the rare instances when the Google Assistant ("the Assistant") experiences a "false accept," meaning that it identifies other words or sounds as a hotword and begins recording although no hotword was spoken. But it is unreasonable to expect a voice activated device like the Assistant to never experience an unintentional activation, and it certainly does not amount to a violation of federal or state privacy laws or a breach of Google's Terms of Service ("TOS") or Privacy Policy. On Plaintiffs' theory, no voice activated technology could exist in any consumer product without exposing technology companies to extensive criminal and civil liability, as no such technology is perfect. This is reason enough to dismiss Plaintiffs' claims. Moreover, the use of these recordings to improve Google's speech recognition technology also does not give rise to any claim as it is expressly permitted under Google's Privacy Policy. Plaintiffs cannot, on the one hand, complain that the Assistant does not function perfectly, and, on the other hand, complain about Google's efforts to improve it.

# II.   ARGUMENT

## A.   Plaintiffs' Wiretap Act Claims Should be Dismissed

### 1.   Plaintiffs have not alleged the requisite intent.

Plaintiffs acknowledge that to state a claim under the federal Wiretap Act, they must allege that Google acted *intentionally*. Opposition to Motion to Dismiss, ECF No. 58, ("Opp.") at 3-4. Plaintiffs plainly have not done so. Rather, Plaintiffs' own allegations, and the sources on which they are based, all make clear that any recordings not preceded by a hotword or a manual activation were the result of an error in hotword detection. Defendants' Motion to Dismiss, ECF No. 56, ("Mot.") at 5; Decl. of Sunita Bali ISO Mot., ECF No. 56-1 ("Bali Decl."), Exs. A and B; *see also, e.g.,* CAC ¶38 (alleging that GAEDs "record anything said that is preceded by anything that remotely sounds like a hot word"). This is fatal to their claims. *In re Pharmatrak, Inc.*

*Privacy Litig.*, 329 F.3d 9, 23 (1st Cir. 2003) ("inadvertent interceptions are not a basis for criminal or civil liability under the [Wiretap Act]").

Plaintiffs argue that they have adequately alleged intent because they allege that Google had knowledge that the Assistant sometimes records communications when no hotword is uttered. Opp. at 4-5. But knowledge that the Assistant may sometimes misinterpret other words or sounds as a hotword does not establish intent under the Wiretap Act. "As used in the [Wiretap Act], the term 'intentional' [requires] that [s]uch conduct or the causing of the result must have been the person's conscious objective." *In re Pharmatrak*, 329 F.3d at 23 (quoting S.Rep. No. 99-541, at 23 (1986)); *U.S. v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993). Plaintiffs cite to *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) for support, but that case is distinguishable. In *Backhaut*, the plaintiffs alleged that Apple was aware that it was intercepting consumers' text messages for years, had been notified of the problem and failed to remedy it, and even charged consumers to fix the problem. *Id*. No such allegations are present here.

Finally, Plaintiffs' argument that intent is established because Google allegedly obtained users' recordings for its own commercial and financial benefit also fails. Opp. at 4. Plaintiffs have not alleged how recording communications that were not intended for the Assistant benefits Google financially or otherwise serves Google's interest.

### 2.   Plaintiffs have not alleged any "oral communications."

Google argued that Plaintiffs failed to allege any "oral communications" that were intercepted by Google. Mot. at 5-6. In response, Plaintiffs cite to the VRT NWS Article, which reported that certain audio recordings "should never have been recorded [because] the command 'Okay Google' was clearly not given." Opp. at 5-6 (citing CAC ¶36). But reciting language from a news article is not a substitute for alleging facts regarding the named Plaintiffs. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that *the pleader* is entitled to relief") (emphasis added).

Plaintiffs further argue that they have alleged sufficient facts to establish a reasonable expectation of privacy based on "the context and setting" in which their "private conversations" occurred, but the CAC is devoid of any such facts specific to Plaintiffs. Opp. at 6 (citing CAC

-2-

¶¶30-33, 250). Plaintiffs also argue that their expectation of privacy is based on Google's affirmative assurances in its TOS and Privacy Policy that audio recordings will not be shared with third parties. Opp. at 6. But Google makes no such assurances.  And whether Plaintiffs have a reasonable expectation that their audio recordings will not be *shared* has no bearing on whether they have alleged "oral communications," which require a reasonable expectation that the "communication is not subject to *interception* under circumstances justifying such expectation . . ." *See* 18 U.S.C. § 2510(2) (emphasis added).

Plaintiffs cite *Rackemann v. LISNR, Inc.*, No. 1:17-cv-00624, 2017 WL 4340349, at *5 (S.D. Ind. Sept. 29, 2017) to argue that they need not "pinpoint the precise dates and times" that their communications were allegedly intercepted. Opp. at 6. But in *Rackemann*, the plaintiff alleged that "he carried [his smartphone] on his person, and would take his smartphone to places where he would not invite other people, and to places where he would have private conversations," as well as when the alleged private communications occurred. *Rackemann*, 2017 WL 4340349, at *5. Plaintiffs do not allege any such facts here, and even if they had, similar allegations have been found inadequate in this District. *See Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1008 (N.D. Cal. 2017).

### 3. Plaintiffs' allegations establish the ordinary course of business exception.

Plaintiffs contend that the ordinary course of business exception does not apply because Google is not responding to users' commands where a user does not utter a hotword or manually activate the device. Opp. at 7. But Plaintiffs overlook that even in such instances, the Assistant "detects" a hotword (even if it does so in error), and thus "begins recording and transmitting audio to Google for analysis" for the "purpose of . . . respond[ing] to the user command[]." CAC ¶24. Thus, "the interception facilitated the communication service or was incidental to the functioning of the communication service" because the alleged interception is nothing more than the Assistant preparing to respond to what it perceives to be a legitimate user command. *See In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5423918 at *8 (N.D. Cal. Sept. 26, 2013).

Plaintiffs also claim that the exception cannot apply to Google because it only applies to a provider of an "electronic communication service." Opp. at 7. But Plaintiffs themselves allege that Google is a provider of an electronic communication service. CAC ¶112. And Plaintiffs' argument that the ordinary course of business exception does not apply because Google exceeded the scope of its own Privacy Policy also fails, as all of Google's conduct was expressly permitted under its Privacy Policy. *See* Mot. at 11, 17.

### 4. Plaintiffs have not alleged an unlawful use or disclosure.

Plaintiffs' claims for unlawful use or disclosure fails because Plaintiffs have not alleged any unlawful interception. *See Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009).

Moreover, liability for use or disclosure of the contents of an intercepted communication "requires more" than intentional conduct. *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992). A plaintiff must also show that the defendant knows "1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited [under the Wiretap Act]." *Id*. Plaintiffs do not come close.

Plaintiffs claim that Google knows that at least some recordings are not preceded by the utterance of a hotword or a manual activation of the device, and cite to a news article from 2017 in which Google's CEO states that its speech recognition technology has an error rate of less than 5%. As an initial matter, Plaintiffs cannot cite to a news article in their Opposition as a substitute for facts that are not alleged in the CAC. Moreover, nothing in the article or the CAC establishes that Google knew that the recordings allegedly disclosed to Google's subcontractors included any recordings that were not preceded by a hotword or manual activation of the device or that such recordings constituted unlawful interceptions under the Wiretap Act (which they do not).

### B. Plaintiffs' SCA Claims Should Be Dismissed

### 1. Plaintiffs fail to state a claim under Section 2701.

Plaintiffs' Section 2701 claims fail because they do not allege that Google accessed an electronic communications "facility" without authorization. 18 U.S.C. §2701(a). Plaintiffs acknowledge that a facility is a physical server used to provide an electronic communications

-4-

service. *See* Opp. at 9 (recognizing that web servers and computer servers generally qualify as a "facility"). Nonetheless, Plaintiffs argue that the Assistant is a facility. But Plaintiffs' argument is directly contradicted by their characterization of the Assistant as "a software program" that *transmits communications to Google's servers for storage*, rather than a "facility" that physically stores communications. CAC ¶¶112, 116; *cf. Theofel v. Farey-Jones*, 359 F.3d 1066, 1072, 1077 (9th Cir. 2004); *Cousineau v. Microsoft Corp.*, 6 F. Supp. 3d 1167, 1174-75 (W.D. Wash. 2014).

Plaintiffs try to salvage their claims by arguing that Google gained unauthorized access to Plaintiffs' communications while they were temporarily stored on their GAEDs "RAM." Opp. at 9. But Plaintiffs' claims still fail under this theory because neither Plaintiffs' personal GAEDs nor their RAM qualify as a "facility." *See, e.g., In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1058 (N.D. Cal. 2012). Courts have reasoned that interpreting "facility" to include users' personal devices "would render other parts of the statute illogical" because "[a]nother provision of the statute authorizes access to a "facility" by a provider of an electronic communication service. *Id.*

And Plaintiffs' alternative argument that Google's own servers are the "facility" that Google accessed without authorization fails as a matter of law. Plaintiffs plainly allege that Google provides the electronic communications service at issue. CAC ¶¶115, 116. And Section 2701(c)(1) exempts conduct authorized "by the person or entity providing a wire or electronic communications service." *See also Svenson v. Google, Inc.*, 65 F. Supp. 3d 717, 726-27 (N.D. Cal. 2014). Plaintiffs' attempt to distinguish *Svenson* on the grounds that the plaintiff there "willingly" provided her information to Google. *See* Opp. at 10-11. The question under Section 2701(c)(1) is whether the conduct was authorized by the entity providing the electronic communications service; if the answer is yes, then the provider cannot be liable under Section 2701(a). *Svenson*, 65 F. Supp. 3d at 727.

**2.**     **Plaintiffs fail to state a claim under Section 2702.**

First, Plaintiffs do not even address Google's argument that Plaintiffs have not alleged a disclosure to any *third party* as required to state a claim under Section 2702. Mot. at 10-11, n.3. Plaintiffs consented to any alleged disclosure.

Second, Plaintiffs' argument that the Privacy Policy is too general to establish consent is undermined by its plain language. *See* Opp. at 12. First, the Privacy Policy expressly states that Google collects information about users' activity in Google services, including "voice and audio information." Bali Decl., Ex. D at 21-22. Second, the Privacy Policy makes clear that Google uses its users' information to "ensure [its] services are working as intended" and "to make improvements to [its] services." *Id*. at 24. Third, the Privacy Policy states that Google may share users' personal information with "Google employees, contractors, and agents" as well as with Google's "affiliates and other trusted businesses or persons" for processing. *Id*. at 31-32. There is nothing ambiguous about this language.[1] Plaintiffs thus consented to the alleged disclosure.

## C.   Plaintiffs Fail to State a Claim Under CIPA

### 1.   Plaintiffs cannot state a claim under Section 631(a).

Section 631(a) does not apply to in-person verbal communications, and none of the cases cited by Plaintiffs state otherwise. Indeed, *Tavernetti v. Superior Court*, which Plaintiffs cite, expressly states that Section 631(a) prohibits: "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." 22 Cal.3d 187, 192 (1978). Here, Plaintiffs allege that in-person oral communications were recorded by GAEDs, that those recordings were transferred to Google's servers, and that Google later "transferred those communications to third parties for analysis for the purpose of reading or learning the content of [those] communications." CAC ¶¶134-136. This is not the conduct prohibited by Section 631(a). *See Tavernetti*, 22 Cal.3d at 192. And none of the

---

[1] Plaintiffs also have not shown that the Privacy Policy and TOS do not apply to the putative subclass of minors, as they do not fall into one of the three narrow categories of contracts that minors cannot enter under Family Code Section 6701. *C.M.D. v. Facebook, Inc.*, No. C 12-1216 RS, 2014 WL 1266291, at *4 (N.D. Cal. Mar. 26, 2014), *aff'd sub nom. C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015) (finding that Facebook's Statement of Rights and Responsibilities was binding on minors).

cases that Plaintiffs cite say otherwise. *See In re Google Inc. Gmail Litig.,* 2013 WL 5423918 at *20 (Section 631(a) "is not limited to communications passing over '*telegraphic or telephone*' wires, lines, or cables"); *Ribas v. Clark*, 38 Cal. 3d. 355, 359 (1985) (defendant's act of eavesdropping on the plaintiff's telephone conversation with his wife qualified as an attempt to read or learn the contents of the communication while it was "'in transit' or was 'being sent from' and 'received at' a place within this state.").

Finally, even if the Court finds that Section 631 can be applied here, Plaintiffs' claim still fails because they have not alleged the requisite intent. *See supra* at II.A.1.; *People v. Buchanan*, 26 Cal. App. 3d 274, 288 (1972) (claims under both Sections 631(a) and 632(a) require intentional wiretapping and eavesdropping).

### 2.   Plaintiffs have not stated a claim under Section 632.

As with Plaintiffs' Wiretap Act claims, Plaintiffs' claims under Section 632 fail because Google lacked the requisite intent. *See supra* at II.A.1; *see also Buchannan,* 26 Cal. App. 3d at 288; *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002).

Plaintiffs also have not alleged a confidential communication. Plaintiffs correctly observe that they must allege that they had an objectively reasonable expectation that the communication would not be overheard or recorded. Opp. at 15 (citing *Flanagan*, 27 Cal. 4th at 776-77). Not only are Plaintiffs' allegations conclusory on this score, they are belied by the fact that GAEDs display a visual cue when recording is in progress. *See* CAC ¶31. Under these circumstances, Plaintiffs could not reasonably contend that they did not know their device was recording.

Finally, Plaintiffs do not even attempt to point to paragraphs in the CAC in which they allege facts showing that the parties did not consent to the alleged recording. Opp. at 16.

### D.   Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion or Invasion of Privacy

Google argued that Plaintiffs' intrusion upon seclusion and invasion of privacy claims should be dismissed because their allegations were merely a "bare recitation of the elements" of such claims, without any factual support. Mot. at 15. In response, Plaintiffs cite to various paragraphs of the CAC, none of which include factual allegations sufficient to establish an actionable intrusion into a legally protected privacy interest. *See, e.g., In re Yahoo Mail Litig.*, 7

-7-

F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (invasion of privacy claim dismissed for failure to allege facts regarding the content disclosed and circumstances of the alleged intrusion). For example, Plaintiffs claim that they "allege the type of information Google accessed and the parties thereto." Opp. at 16:15-16 (citing CAC ¶¶36, 179-80). But they simply parrot statements from the VRT NWS Article without including any factual allegations specific to Plaintiffs. This is not enough. *See* Fed. R. Civ. Proc. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs argue that no more specificity is required under *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019), but the allegations in that case were far more detailed than Plaintiffs' allegations here. In *McDonald,* the plaintiffs "state[d] in detail what data was secretly collected, how the collection was done, and how the harvested data was used." *Id.* at 1035.

Plaintiffs allegations also fall far short of the "high bar" required to establish that Google's alleged intrusion was "highly offensive." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). The law is clear that alleged privacy intrusions are not "highly offensive" and thus cannot support a claim when they are based on "accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Similarly, where the alleged privacy invasion supports a legitimate commercial purpose -- here, responding to user queries -- it is not "highly offensive." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294 (3d Cir. 2016). Plaintiffs attempt to distinguish *Nickelodeon* on the grounds that their claims are based on "the secret interception of confidential communications occurring in the solitude of one's homes." Opp. at 17. But Plaintiffs have not alleged any facts showing that Google intercepted confidential communications in their homes, and any recordings certainly were not "secret" because GAEDs display a visual cue when recording. *See* CAC ¶31.

**E.     Plaintiffs Have Not Alleged a Breach of Contract Claim**

    **1.     Plaintiffs fail to adequately identify the contract Google allegedly breached.**

Plaintiffs' breach of contract claims must be dismissed because Plaintiffs fail to adequately identify the contract they claim Google has breached. *Young v. Facebook, Inc.*, 790 F.

-8-

1   Supp. 2d 1110, 1117 (N.D. Cal. 2011) (plaintiff must allege the specific provisions in the contract

2   creating the obligation the defendant is said to have breached). Plaintiffs concede that a contract

3   must explicitly reference or contain a direct link to another webpage in order to bind the parties to

4   the content of that webpage. *See* Opp. at 18 (citing *In re Facebook, Inc. Consumer Privacy User*

5   *Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019)). Yet, the CAC does not allege, and the

6   Opposition does not explain, how the various webpages cited by Plaintiffs are specifically

7   referenced in or linked to the TOS and Privacy Policy. Plaintiffs argue that the TOS states that

8   additional terms or policies may apply to certain services or products but fail to explain what

9   those specific terms or policies are and how they are binding on the parties here. *See* Opp. at 18.

10  Plaintiffs' argument, like their allegations, fails to show how the various texts quoted in the CAC

11  are included as part of the contract. Mot. at 16.

12          **2.      The conduct alleged by Plaintiffs is not a breach of the TOS or Privacy Policy.**

13          Plaintiffs have failed to articulate how any of the conduct alleged in the CAC is a breach

14  of the Privacy Policy or TOS. *See* Opp. at 18-19. First, processing and analyzing voice recordings

15  that were the result of false accepts does not violate the TOS or Privacy Policy. The TOS makes

16  no promises about the reliability of the Assistant and expressly states that the service is provided

17  "as is." Bali Decl., Ex. C at 16. And, the Privacy Policy and TOS also state that Google gives

18  "access to personal information to Google employees, contractors, and agents," as well as to

19  "affiliates and other trusted businesses or persons to process it." *Id.*, Ex. D at 31, 32." Plaintiffs

20  argue that providing access to audio recordings to improve the functionality of the Assistant is

21  different than "processing" a recording and is therefore a breach. Opp. at 19. This is not so: the

22  Privacy Policy explains that Google "use[s] your information to ensure [its] services are working

23  as intended" and "to make improvements to [its] services." Bali Decl., Ex. D at 24.

24          Second, Plaintiffs erroneously state in their Opposition that "the Privacy Policy clearly

25  promises that voice and audio information will only be collected 'when you use audio features.'"

26  *See* Opp. at 18. But the Privacy Policy states that Google collects "information about your activity

27  in our services" which may include "voice and audio information when you use audio features."

28

-9-

Bali Decl., Ex. D at 21, 22. That language does not amount to a promise that the Assistant will never collect voice and audio information as a result of an error in hotword detection.

**3.      Plaintiffs fail to allege damages.**

All of Plaintiffs damages theories fail. Plaintiffs have not pleaded a benefit of the bargain theory because they do not (and cannot) allege that they paid any money to Google for the Assistant service or for any related privacy protections. *Svenson*, 65 F. Supp. 3d at 724. Plaintiffs state that they would have "paid less," but it is hard to understand how Plaintiffs could have paid less for a service they paid nothing for. *See* CAC ¶2 (use of Assistant requires Google account and acceptance of TOS; no allegation of payment or cost). And though Plaintiffs claim that they would have paid less for their GAEDs, they do not allege that any portion of their purchase price was paid to Google for the Assistant or any privacy features. *Id.* ¶201; *cf. Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2015 WL 1503429, at *4 (N.D. Cal. Apr. 1, 2015) (amended damages allegations sufficient where plaintiff pleaded that Google "did retain a percentage of the purchase price of the . . . [a]pp, but she did not receive the contracted-for privacy protections").

Plaintiffs remaining two damages theories fare no better. First, their restitutionary disgorgement theory is irreconcilable with their breach of contract claim. *Svenson*, 65 F. Supp. 3d at 723-24. Plaintiffs' contention otherwise, and their reliance on *Alkayali v. Hoed*, No. 3:18-cv-777, 2018 WL 3425980 (S.D. Cal. July 16, 2018), misinterprets California law. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938-939 (2009). Second, Plaintiffs plead no facts to support the bald assertion that they suffered "harm to their privacy interest." CAC ¶201; *Svenson*, 2015 WL 1503429, at *5 (deficient damages allegations cured by pleading market for private information).

**F.      Plaintiffs Kumandan and Spurr Fail to Allege Breach of Any Warranty**

**1.      Plaintiffs cannot allege the breach of any express warranty.**

First, Plaintiffs entirely ignore Google's argument that Plaintiffs' express warranty claims cannot be based on the TOS and Privacy Policy because such claims are based on their GAEDs rather than the Assistant service. *See* Opp. at 20; Mot. at 19, n.4.

Second, even if Plaintiffs' express warranty claims were based on the Assistant (rather than GAEDs), Plaintiffs do not "identify a specific and unequivocal statement" in the TOS or

-10-

Privacy Policy "that constitutes an explicit guarantee" that the Assistant will never misidentify a hotword. *See Hauck v. Advanced Micro Devices, Inc.*, No. 18-CV00447-LHK, 2019 WL 1493356, at *15-16 (N.D. Cal. Apr. 4, 2019) (citation omitted). Nor can they. The TOS expressly states that no such guarantees are made. Bali Decl., Ex. C at 16.

### 2. Plaintiffs do not allege breach of the implied warranty of merchantability.

Plaintiffs' implied warranty and Magnuson-Moss Warranty Act claims fail for the same reasons. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

#### a. Google's disclaimer of the implied warranty of merchantability in its Terms of Service is valid and enforceable.

Plaintiffs' implied warranty of merchantability claims should be dismissed with prejudice because the implied warranty of merchantability is expressly disclaimed in the TOS. *See* Bali Decl., Ex. C at 16 (disclaimer states in capitalized text that it "excludes all warranties" including the "implied warranty of merchantability" and provides the services "as is"); *see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 944 (N.D. Cal. 2018) (disclaimer of implied warranty of merchantability is enforceable if it is conspicuous and mentions merchantability).

And Plaintiffs have not alleged any facts to support their claim that Google's disclaimer is unconscionable. *See* CAC ¶¶211-222; *In re Nexus*, 293 F. Supp. 3d at 911 (plaintiffs are required to plead facts relevant to procedural and substantive unconscionability to show the disclaimer is unenforceable). Instead, Plaintiffs argue that the disclaimer is unconscionable and recite the legal definitions of unconscionability, without any explanation of how such requirements are satisfied here. *See* Opp. at 22. This is insufficient. *See In re Nexus*, 293 F. Supp. 3d at 911 (rejecting unconscionability argument where plaintiffs failed to allege they had no meaningful alternatives and made "no allegations relevant to substantive unconscionability").

#### b. Plaintiffs have not alleged a fundamental defect that renders their GAEDs unfit for their intended purpose.

Plaintiffs admit to using their GAEDs for their ordinary and intended purpose, including "using the Google Assistant feature to send messages, schedule appointments, display driving directions, and seek information about a variety of topics." CAC ¶213. Thus, Plaintiffs cannot now claim that their GAEDs failed to conform to their ordinary and intended use. *See Minkler v.*

-11-

1    *Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (court dismissed implied warranty claim

2    based on Apple Maps software because it found that although plaintiff alleged "several problems

3    exist in the software, she has not alleged that Apple Maps failed to work at all or even that it

4    failed to work a majority of the time").

5         Nor can Plaintiffs rely on the decision in *In re Carrier IQ, Inc.* to support their argument.

6    *See* Opp. at 21. The plaintiffs in *In re Carrier IQ, Inc.* alleged (1) that they did not know the

7    software that was allegedly intercepting plaintiffs' communications was installed and operating

8    on their devices, (2) that they were "never given the choice of opting into or out of" the

9    software's functionality, and (3) the precise information allegedly intercepted by the software

10   (i.e., behavioral data, text messages, etc.). 78 F. Supp. 3d 1051, 1062-63 (N.D. Cal. 2015). The

11   court held that "these allegations [we]re sufficient…to conclude that the [software] undermines

12   consumers' reasonable expectations in privacy to such a degree so as to render their mobile

13   devices unfit to perform their core functions." *Id.* at 1110. Here, in contrast, Plaintiffs knew the

14   Assistant was installed onto their GAEDs and they could have disabled the Assistant at any time.

15   Moreover, Plaintiffs knew that a function of the Assistant is to respond to voice-activated queries,

16   so it is reasonable to expect that it may activate in error. *See* CAC ¶¶2, 22, 24. The facts of this

17   case are a far cry from those presented in *In re Carrier IQ, Inc.*

18        **c.      Plaintiffs do not allege they were in vertical privity with Google.**

19        Plaintiffs argue that vertical privity is satisfied here simply because Plaintiffs allege they

20   purchased their GAEDs "from actual or apparent agents of the manufacturers, *i.e.,* 'authorized

21   retailers.'" *See* Opp. at 21. This exact argument was rejected in *In re Carrier IQ, Inc.,* where, as

22   here, plaintiffs failed to allege any facts regarding their purchases. 78 F. Supp. 3d at 1106; *see*

23   *also Clemens*, 534 F.3d at 1023. *Cardinal Health 301, Inc. v. Tyco Electronics. Corp.* does not

24   support their argument. In *Cardinal Health 301*, the court found vertical privity based on the

25   direct dealings exception because the defendant accepted and benefitted from the contract

26   negotiations between two identified parties. 169 Cal. App. 4th 116, 138 (2008). Here, Plaintiffs

27   allege no such facts. *See* CAC ¶¶213-216.

28

Moreover, the direct dealings exception does not apply simply because Plaintiffs allege Google provides "written warranties" such as the TOS and Privacy Policy, CAC ¶216, or because Google allegedly "benefitted from the sales" of GAEDs through its "authorized retailers." Opp. at 21-22. Indeed, "the act of providing an express warranty to a consumer does not establish the manufacturer has '[sufficient] direct dealings' with that consumer" to supply vertical privity." *In re Carrier IQ*, 78 F. Supp. 3d at 1106. And the third-party beneficiary exception does not apply here because Plaintiffs "have failed to allege the facts of the underlying putative contracts for which they contend they are intended third-party beneficiaries." *Id.*

**G.     Plaintiffs Fail to State a Claim Under the UCL**

**1.     Plaintiffs fail to allege a tangible, economic loss entitling them to standing.**

Plaintiffs acknowledge that they must allege "lost money or property," to establish standing under the UCL. Opp. at 22. Plaintiffs' allegations are insufficient.

Plaintiffs' primary theory of standing is that they would not have purchased or would have paid less for their GAEDs had they known that their communications would be "intercept[ed], record[ed], disclos[ed], or otherwise misus[ed]" by Google without their consent. Opp. at 24. But the CAC does not specifically allege that Plaintiffs purchased any GAEDs; rather, they allege that Plaintiffs "owned" and "interacted" with GAEDs. *See* CAC ¶¶51-53. This is insufficient to establish standing, particularly because Plaintiffs' allegations sound in fraud and must therefore satisfy the particularity requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL"); *In re Facebook,* 402 F. Supp. 3d at 804 (dismissing UCL claim where plaintiffs did "not allege that they paid any premiums (or any money at all) to [defendant] to potentially give rise to standing under California law."). Accordingly, such a purchase does not establish UCL standing as to Google.

Plaintiffs also argue that entitlement to restitution based on the theory that Google "wrongfully monetized and profited," in the absence of any economic loss, is sufficient to give them standing under the UCL. Opp. at 23. But this is incorrect. *In re Facebook*, 402 F. Supp. 3d at 804 (dismissing UCL claim for failure to allege "lost money or property," and reasoning that

-13-

defendant's having "gained money through its sharing or use of the plaintiffs' information" is "different from saying the plaintiffs lost money"); *Kwikset Corp v. Sup. Ct.*, 51 Cal. 4th 310, 335-36 (2011). Even the cases Plaintiffs cite make clear that tangible economic loss is required. *See In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2014 WL 988889, at *5 (N.D. Cal. Mar. 10, 2014) (plaintiffs "alleged sufficient facts to show standing based on the diminished battery life" of their device); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783 at *32 (N.D. Cal. May 27, 2016) ( "[a]ll California plaintiffs paid premiums, which were in turn used to pay for services by Defendants," thus "establish[ing] economic injury").

**2.      Plaintiffs fail to allege that they relied on any misrepresentation or omission.**

Plaintiffs fail to allege a misrepresentation or omission actionable under the UCL. First, with respect to Plaintiffs' misrepresentation theory, they fail to allege any statements by Google regarding the Assistant that were false. *See Kearns*, 567 F.3d at 1125. The only statement that they cite states that the Google Home will record communications when it "detects" a hotword, which is true, as Plaintiffs themselves admit. *See* CAC ¶¶22-24.

Second, with respect to Plaintiffs' omissions theory, Plaintiffs argue that Google had a duty to disclose that the Assistant occasionally misinterprets other words or sounds as a hotword and thus records communications not intended for the Assistant. But Google's Terms of Service specifically state that it provides the service "as is" and without any commitments regarding the Assistant's "reliability, availability, or ability to meet [Plaintiffs'] needs." Bali Decl., Ex. C at 16. To the extent Plaintiffs contend that Google had a duty to disclose more based on Google's exclusive knowledge or active concealment, Plaintiffs' theory is belied by their own citation to an article from 2017 stating that Google publicly announced that its speech recognition technology has an error rate of just under 5%. Opp. at 8.

Plaintiffs' reliance allegations are equally defective. Plaintiffs point to their allegation that they would not have purchased their GAEDs or would have paid less for them had they known that Google was intercepting, recording, disclosing, and otherwise misusing their conversations without consent. Opp. at 24. But they only cite one statement regarding Google Home, and they

-14-

do not allege that they relied on it in purchasing their GAEDs. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1202 (N.D. Cal. 2014) (dismissing plaintiff's UCL claims for failure to allege reliance). Plaintiffs' allegations are also insufficient under an omissions theory because Google *did* make the relevant disclosures in its TOS. *See* Opp. at 24; *see supra* at II.E.2.

### 3. Plaintiffs fail to articulate any unfair conduct.

Plaintiffs fail to allege facts that show Google's alleged conduct was unfair. Although Plaintiffs' Opposition leans heavily on California's "strong public policy" of protecting privacy, the allegations in the CAC are insufficient to show that Google failed to do so. Plaintiffs cannot reasonably expect that the Assistant will never detect a hotword in error, and Plaintiffs certainly cannot base an unfair claim under the UCL on such an error, or on Google's use of such recordings to improve the Assistant so that such errors occur less. This is particularly so here, where Plaintiffs' CAC is replete with allegations regarding the Assistant's utility and benefit to consumers. *See, e.g.*, CAC ¶¶2, 22, 24, 51-55; *see also, e.g.*, *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012); *In re iPhone*, 844 F. Supp. 2d at 1073.

### 4. Plaintiffs do not state a claim for unlawful conduct under the UCL.

To the extent that Plaintiffs' claims for unlawful conduct under the UCL are predicated on their other causes of action, these claims fail along with those causes of action for the reasons discussed above and in Google's Motion to Dismiss. *see* Opp. at 25 and CAC ¶235. To the extent that Plaintiffs' claims are predicated on violations of California Family Code Sections 6701 and 6710, the claims still fail as Plaintiffs have not pleaded facts that would tend to show how Google allegedly violated the elements of those statutes. *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (dismissing UCL claim for unlawful conduct based on three factual allegations that did not align with elements of statutes invoked).

### III. CONCLUSION

For the foregoing reasons, and the reasons stated in Google's Motion, Google respectfully requests that the Court dismiss the CAC with prejudice.

1    DATED: January 31, 2020                    **PERKINS COIE LLP**

2

3                                               By: */s/ Sunita Bali*
                                                    Bobbie J. Wilson, Bar No. 148317
4                                                   Sunita Bali, Bar No. 274108

5                                               Attorneys for Defendants GOOGLE LLC
                                                and ALPHABET INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28