1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION


4
IN RE GOOGLE ASSISTANT PRIVACY    )   CV-19-74286-BLF
5   LITIGATION                        )
                                      )   SAN JOSE, CALIFORNIA
6                                     )
                                      )   APRIL 9, 2020
7                                     )
                                      )   PAGES 1-43
8                                     )
                                      )
9   _____  )

10              TRANSCRIPT OF PROCEEDINGS
11         BEFORE THE HONORABLE BETH FREEMAN
              UNITED STATES DISTRICT JUDGE
12

13                A P P E A R A N C E S

14

15   FOR THE PLAINTIFF:     **BY:  ANDREA FARAH**
                                 **CHRISTIAN LEVIS**
16                          LOWEY DANNENBERG, P.C.
                            44 SOUTH BROADWAY, SUITE 1100
17                          WHITE PLAINS, NY 10601

18

19   FOR THE DEFENDANT:     **BY:  SUNITA BALI**
                                 **BOBBIE WILSON**
20                          PERKINS COIE LLP
                            505 HOWARD STREET, SUITE 1000
21                          SAN FRANCISCO, CA 94105

22          APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

1          <u>APPEARANCES CONTINUED:</u>

2

3          FOR THE PLAINTIFF:        **BY:   JOHN T. JASNOCH**
                                     SCOTT & SCOTT, LLP
                                     600 WEST BROADWAY, SUITE 3300
4                                    SAN DIEGO, CA 92101

5          FOR THE PLAINTIFF:        **BY:  MARK N. TODZO**
                                     LEXINGTON LAW GROUP, LLP
6                                    503 DIVISADERO STREET
                                     SAN FRANCISCO, CA 94117

7

8          FOR THE PLAINTIFF:        **BY:  ERIN GREEN COMITE**
                                     SCOTT & SCOTT, LLP
9                                    156 SOUTH MAIN STREET
                                     COLCHESTER, CT 06415

10

11         ALSO PRESENT:            MAKESHA PATTERSON
           GOOGLE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              SAN JOSE, CALIFORNIA              APRIL 9, 2020

2                      P R O C E E D I N G S

3         (COURT CONVENED AT 9:00 A.M.)

4              THE COURT:  OKAY.  LET'S CALL THE GOOGLE CASE FIRST.

5              THE CLERK:  CALLING CASE 19-4286.  IN RE GOOGLE

6    ASSISTANT PRIVACY LITIGATION.

7              COUNSEL, IF WE COULD START WITH PLAINTIFF.  STATE YOUR

8    APPEARANCES, PLEASE.

9              MS. FARAH:  GOOD MORNING, YOUR HONOR.

10        THIS IS ANDREA FARAH WITH LOWEY DANNENBERG ON BEHALF OF

11   PLAINTIFF.

12             THE COURT:  MS. FARAH, GOOD MORNING.

13             MR. JASNOCH:  GOOD MORNING, YOUR HONOR.

14        THIS IS JOHN JASNOCH OF THE LAW FIRM SCOTT & SCOTT, ALSO

15   ON BEHALF OF PLAINTIFFS.

16             THE COURT:  GOOD MORNING.

17             MR. TODZO:  AND GOOD MORNING, YOUR HONOR.

18        THIS IS MARK TODZO WITH THE LEXINGTON LAW GROUP, ALSO ON

19   BEHALF OF PLAINTIFFS.

20             THE COURT:  MR. TODZO.

21             MS. COMITE:  ON BEHALF OF PLAINTIFFS, THIS IS ERIN

22   GREEN COMITE WITH SCOTT & SCOTT.

23             THE COURT:  GOOD MORNING.

24             MR. LEVIS:  GOOD MORNING, YOUR HONOR.

25        YOU ALSO HAVE CHRISTIAN LEVIS FROM LOWEY DANNENBERG ON
```

1       BEHALF OF THE PLAINTIFFS.

2                THE COURT:  GOOD MORNING.

3                THE CLERK:  OKAY.  IF WE COULD NOW HAVE DEFENSE

4       APPEARANCES, PLEASE.

5                MS. BALI:  GOOD MORNING, YOUR HONOR.

6            THIS IS SUNITA BALI FROM PERKINS COIE ON BEHALF OF

7       DEFENDANTS GOOGLE AND ALPHABET.

8            I ALSO HAVE MY COLLEAGUE HERE, BOBBIE WILSON, FROM

9       PERKINS COIE.  AND I BELIEVE THAT IN-HOUSE COUNSEL FOR GOOGLE

10      IS ALSO ON THE LINE, MAKESHA PATTERSON.

11               THE COURT:  ALL RIGHT.  AND WELCOME TO GOOGLE'S

12      COUNSEL.  I APPRECIATE YOU TAKING PART IN THE PROCEEDING.

13           ALL RIGHT.  I'M NOT SURE WHETHER YOU'VE ALL DONE THESE

14      HEARINGS BY TELEPHONE BEFORE.  IT'S CERTAINLY NOT OUR DESIRED

15      WAY TO DO IT, BUT I'VE HAD QUITE A FEW OF THEM OVER THE LAST

16      COUPLE OF WEEKS, AND FOUND IT TO BE VERY EFFECTIVE AND VERY

17      SUCCESSFUL, IF WE ALL PAY ATTENTION TO A COUPLE OF SIMPLE

18      RULES, AND THE RULES I HAVE TO REMIND MYSELF OF AS WELL.

19           WE DO HAVE A COURT REPORTER, SO YOU WILL HAVE THE SAME

20      OPPORTUNITY TO HAVE A TRANSCRIPT AS IF WE WERE IN THE

21      COURTROOM.  IT'S REALLY IMPORTANT THAT YOU IDENTIFY YOURSELF

22      BEFORE YOU SPEAK, AND THAT YOU SPEAK SLOWLY AND CLEARLY.

23           SECOND, IT'S EVEN MORE IMPORTANT THAN NORMAL THAT WE DON'T

24      SPEAK ON TOP OF EACH OTHER.  I HAVE A BAD HABIT OF

25      INTERRUPTING, I PROBABLY WILL DO IT AT SEVERAL POINTS THIS

1      MORNING, AND MY APOLOGIES TO MY COURT REPORTER ON THAT.

2          BUT THE WAY I THINK WE CAN HANDLE THIS IS THAT I WOULD

3      LIKE TO WALK THROUGH SOME OF THE ISSUES THAT I'M SEEING, AND

4      THEN I WANT TO GO TO THE DEFENDANTS, TO GOOGLE, TO ARGUE YOUR

5      MOTION, YOU ARE THE MOVING PARTY, TURN TO THE PLAINTIFF TO HEAR

6      THE OPPOSITION, AND A BRIEF REPLY FROM GOOGLE TO FINISH UP.

7          WE WILL THEN DO YOUR CASE MANAGEMENT CONFERENCE RIGHT AWAY

8      SO YOU DON'T HAVE TO HANG AROUND UNTIL THE END, OR UNTIL 11:00,

9      I'M NOT SURE WHEN YOURS WAS SCHEDULED, WHETHER IT WAS TO BE

10     RIGHT AFTERWARDS OR LATER, BUT I WILL TAKE IT UP RIGHT AWAY.

11         SO LET ME GO OVER, THIS IS IN THE ORDER THAT YOU BRIEFED

12     IT, BUT THERE'S LOTS OF CLAIMS HERE, AND THEY WERE EACH BRIEFED

13     SEPARATELY, WHICH WAS NICELY DONE, AND I DO APPRECIATE THAT.

14         OVERALL, JUST TO BE CLEAR, THIS CASE WILL MOVE ON TO THE

15     NEXT STEP.  IT MAY REQUIRE AMENDMENT.  I MAY GIVE IT A HAIRCUT

16     AND NOT ALLOW ALL THE CLAIMS TO GO FORWARD, BUT I DON'T SEE A

17     HOME RUN HERE FOR THE DEFENSE.

18         WITH THAT BEING SAID, I'M ACTUALLY OVERALL VERY CONCERNED

19     WITH THE DEGREE OF GENERALITY OF THE PLEADINGS.  AND THAT'S NOT

20     TO SAY THAT THE COMPLAINT IS TOO SHORT, BUT I DO AGREE WITH

21     GOOGLE THAT THE PLEADING SEEMS TO PLAY OFF THE NEWSPAPER

22     ARTICLE AS OPPOSED TO THE EXPERIENCE OF ANY OF THE NAMED

23     PLAINTIFFS.

24         AND TO THE EXTENT IT GENERALIZES AS TO THE EXPERIENCE OF

25     THE CLASS, I AM LOOKING AT THE COMPLAINT NOW TO MAKE SURE THAT

1    THESE NAMED PLAINTIFFS HAVE MADE OUT A CLAIM FOR RELIEF UNDER

2    EACH OF THESE CLAIMS.  WHETHER IT'S BROADENED TO A CLASS LATER

3    IS JUST NOT AN ISSUE THAT I'M WORRIED ABOUT.

4         SO THOSE ARE SOME -- AT THE VERY HIGHEST LEVEL, YOU WILL

5    SEE THAT THAT PERMEATES A NUMBER OF MY COMMENTS ABOUT THE

6    CLAIMS THEMSELVES.  SO LET ME WALK THROUGH THOSE, AND THEN I

7    WILL BE ABLE TO SIT BACK AND LISTEN.

8         GENERALLY, ON THE WIRE TAP ACT, I SEE THAT THERE IS A

9    SIGNIFICANT ARGUMENT ON INTENT.  AND I HAVE TO SAY THAT I

10   ACTUALLY THINK THAT THE ISSUE OF INTENT, AND AS ITS CARRIED

11   THROUGH TO THE OTHER CLAIMS THAT ALSO REQUIRE INTENT, UNTIL I

12   SEE A DEVELOPED RECORD TO SEE HOW WIDESPREAD THE FALSE ACCEPTS

13   ARE, AND WHEN AND WHAT GOOGLE KNEW ABOUT THE ERROR RATE, IT'S

14   VERY HARD FOR ME TO MAKE A DECISION ON WHETHER INTENT HAS BEEN

15   ESTABLISHED.

16        SO THAT'S -- I PROBABLY REALLY NEED TO LET THAT ISSUE GO,

17   BUT I AM CONCERNED ABOUT THE LEVEL OF DETAIL REGARDING THE ORAL

18   COMMUNICATIONS AT ISSUE, SO I MAY NEED SOME ADDITIONAL PLEADING

19   ON THAT.

20        ON THE STORAGE COMMUNICATIONS ACT CLAIM, I'M DOUBTFUL THAT

21   THERE'S BEEN AN ALLEGATION OF A FACILITY.  AND I'M CONCERNED

22   THAT THERE'S NO ALLEGATION OF UNAUTHORIZED ACCESS.

23        I ALSO HAVE CONCERN WITH THIS ISSUE OF DISCLOSURE TO A

24   THIRD PARTY UNDER SECTION 2702.  I THINK THAT TERM IS THROWN

25   AROUND, I DON'T KNOW WHAT'S MEANT BY IT.  AND GOOGLE ARGUES IN

1    ITS PAPERS THAT ITS SUBCONTRACTORS WHO DO WORK FOR GOOGLE, ARE

2    NOT THIRD PARTIES.  SO I'M GOING TO NEED SOME ADDITIONAL

3    CLARIFICATION IN THE PLEADINGS ABOUT WHAT POSITIONS THE THIRD

4    PARTIES HELD.

5         ON THE INVASION, THE CALIFORNIA INVASION OF PRIVACY ACT,

6    C-I-P-A, I THINK INTENT IS REALLY THE BIG ISSUE THERE, AND I'VE

7    MENTIONED THAT.

8         ON THE INTRUSION UPON SECLUSION AND INVASION OF PRIVACY,

9    GENERALLY IT LOOKS OKAY TO ME, BUT I AM CONCERNED THAT I NEED

10   SOME ALLEGATION OF CONTENT.

11        AND I WILL MENTION HERE, I LOOKED AT THE COMPLAINT TO SEE

12   THE CIRCUMSTANCES OF EACH OF THE NAMED PLAINTIFFS.  AND I'M

13   GOING TO PUT ASIDE THE MINOR PLAINTIFFS FOR A MINUTE BECAUSE

14   THERE'S REALLY NOT MUCH ON THEM.  BUT EXCEPT FOR PLAINTIFF

15   SPURR, S-P-U-R-R, WHO AT PARAGRAPH 57 INDICATES THAT SHE HAS A

16   GOOGLE HOME DEVICE, THE OTHER TWO PLAINTIFFS INDICATE -- ONE

17   HAS A SMART PHONE, THAT'S KUMANDAN, K-U-M-A-N-D-A-N, AND

18   GALVAN, G-A-L-V-A-N, HAD A TABLET, THE SAMSUNG TAB DEVICE.

19        IT'S NOT CLEAR TO ME THAT THOSE DEVICES, OR THE SECOND

20   TWO, WERE ACTUALLY USED IN THE HOME.  AND SO THAT COULD MAKE A

21   BIG DIFFERENCE HERE.  THE ONE THAT'S CALLED "GOOGLE HOME," I

22   DON'T REALLY KNOW MUCH ABOUT THESE DEVICES, I DON'T WANT

23   ANYBODY LISTENING TO ME, SO I DON'T HAVE THEM, BUT OTHER PEOPLE

24   MAKE DIFFERENT CHOICES.  SO I'M GOING TO NEED SOME ALLEGATIONS

25   ACTUALLY AS TO HOW THE PLAINTIFF USED THEIR DEVICES.

1          NOW WHEN I MOVE ON TO THE VERY SPECIFIC CLAIMS, THE BREACH

2     OF CONTRACT CLAIM, I AM GOING TO -- I'M INCLINED TO GRANT THE

3     MOTION TO DISMISS, AND THESE ARE ALL WITH LEAVE TO AMEND.  I

4     NEED TO KNOW THE EXACT LANGUAGE OF THE CONTRACT THAT WAS

5     BREACHED AND HOW IT WAS BREACHED.

6          AND I HAVE TO SAY THAT I'M VERY CONCERNED THAT THE

7     PLAINTIFFS ARE IGNORING WHAT I THINK IS THE CLEAR LANGUAGE OF

8     THE TERMS OF SERVICE, AND THAT IS WHEN THE HOT WORD IS DETECTED

9     AS OPPOSED TO WHEN IT IS SPOKEN, THERE'S A BIG DIFFERENCE.  AND

10    IN THE PAPERS, THE PLAINTIFFS SEEM TO GLOSS RIGHT OVER THAT

11    DIFFERENCE.  SO YOU ARE GOING TO NEED TO ACTUALLY ALLEGE THE

12    EXACT TERMS OF THE AGREEMENT THAT'S BEEN BREACHED FOR THE

13    BREACH OF CONTRACT.

14         AND AGAIN, WE'VE GOT THIS SHARING WITH THIRD PARTIES.  I

15    DON'T KNOW WHO YOU MEAN BY "THIRD PARTIES."  I THINK THERE'S A

16    PROBLEM THERE.

17         IN TERMS OF DAMAGES, THE DEFENSE INDICATES THAT THERE IS

18    NOT A PROPER THEORY OR A VIABLE THEORY OF DAMAGES.

19         ON THE THEORY OF OVERPAYING FOR THE DEVICES, I THINK THAT

20    ONLY CAPTURES PART OF THE PLAINTIFF'S CLASS FOR THOSE WHO

21    PURCHASED GOOGLE MANUFACTURED DEVICES, SO WE ARE GOING TO NEED

22    SOME CLARITY THERE.

23         ON THE DAMAGE FOR LOSS OF PRIVACY, AGAIN, I DON'T ACTUALLY

24    KNOW WHERE THESE DEVICES WERE USED, AND I DON'T KNOW -- YOU

25    KNOW, ONE OF THE BIG PROBLEMS HERE IS WHEN THERE'S A CAPTURING

1    OF ORAL COMMUNICATION OR STATEMENT THAT YOU'RE UNAWARE OF, YOU

2    DON'T KNOW WHAT THE CONTENT WAS, SO WE WILL HAVE TO TALK ABOUT

3    THAT.

4        ON THE BREACH OF EXPRESS WARRANTY, I THINK IT'S REALLY THE

5    SAME HERE, I NEED TO KNOW WHAT WAS THE WARRANTY LANGUAGE AND

6    WHAT WAS THE DEVICE, BECAUSE THERE'S SEEMS TO BE A MELDING

7    BETWEEN THE WARRANTY OF THE DEVICE VERSUS THE TERMS OF SERVICE

8    FOR THE GOOGLE ASSISTANT.  SO I NEED CLARITY THERE.

9        ON THE BREACH OF IMPLIED WARRANTY AND MERCHANTABILITY, I

10   THINK THESE CLAIMS GENERALLY DON'T GO FORWARD.  I THINK THAT

11   THIS -- I DON'T SEE THAT YOU'VE ALLEGED THE CORE FUNCTIONALITY

12   WAS NOT WORKING AS DESIGNED.

13       ON THE UCL, I THINK THESE REALLY FOLLOW, EVEN IF ONLY THE

14   WIRE TAP ACT CLAIM GOES FORWARD, THE UNLAWFUL CLAIM WILL GO

15   FORWARD.

16       IN TERMS OF ANY CLAIMS FOR OMISSIONS OR

17   MISREPRESENTATIONS, I'M GOING -- I'M NOT SURE OF THAT.

18       AND ON THE UNFAIR PRONG, YOU KNOW, I CAN'T EVEN ARTICULATE

19   THAT, CALIFORNIA LAW IS AMISS ON THAT ISSUE.

20       SO I THINK THAT GETS ME THROUGH EVERYTHING.  AND I WILL

21   ALSO ADD FOR THE PLAINTIFF, YOU GAVE ME TWO RECENT CASES, I

22   DON'T KNOW WHAT I'M SUPPOSED TO READ IN THEM.  I KNOW YOU CAN'T

23   ARGUE THEM IN THIS NOTICE, BUT ONE OF THE CLASS ACTION

24   SETTLEMENTS -- SO I'M NOT SURE WHAT IT IS YOU WANT ME TO LOOK

25   AT, AND THEN THE OTHER ONE, I DIDN'T SEE ANYTHING RELEVANT.

1    SO IF THERE'S SOMETHING THERE THAT YOU THINK IS IMPORTANT,

2   LET ME KNOW, OTHERWISE I DIDN'T SEE ANYTHING THAT WAS HELPFUL.

3    OKAY.  THAT'S A LOT.  THAT'S A LOT.  BUT I WANTED TO WALK

4   THROUGH IT WITH YOU.  AND SO LET ME TURN TO PLAINTIFF -- I'M

5   SORRY, TO DEFENDANTS FOR YOUR ARGUMENT.

6    MS. BALI:  GOOD MORNING, YOUR HONOR.

7    THANK YOU VERY MUCH FOR YOUR -- GOOD MORNING, YOUR HONOR.

8    THANK YOU VERY MUCH FOR YOUR THOUGHTS.  THIS IS SUNITA BALI FOR

9    DEFENDANTS GOOGLE AND ALPHABET.

10    FIRST, I WILL JUST START BY SAYING, YOU KNOW, PLAINTIFFS

11   HAVE ASSERTED 12 CLAIMS AGAINST GOOGLE, BUT I DON'T THINK THEY

12   HAVE SATISFIED THEIR PLEADING STANDARD FOR ANY OF THOSE CLAIMS.

13    YOU KNOW, AS YOU KNOW, THEIR GRIEVANCE IS THAT THE GOOGLE

14   ASSISTANT SOMETIMES ACTIVATES WHEN NO HOT WORD IS SPOKEN AND

15   THE DEVICE IS NOT MANUALLY ACTIVATED, AND THAT SOME SMALL

16   PORTION OF THOSE COMMUNICATIONS ARE REVIEWED BY GOOGLE'S

17   SUBCONTRACTORS TO IMPROVE THE ASSISTANT.

18    BUT THE ALLEGATIONS, AS THE COURT NOTED, ARE BASED

19   ENTIRELY ON AN ARTICLE PUBLISHED BY A BELGIAN NEWS ARTICLE AND

20   ARE ENTIRELY DEVOID OF ANY FACTS REGARDING THE SPECIFIC

21   PLAINTIFFS THAT ARE BRINGING THIS CASE.

22    AND THE ALLEGATIONS CONSIST OF A RECITATION OF THE

23   ELEMENTS OF THE VARIOUS CLAIMS WITH NO FACTS.  AND THAT'S JUST

24   NOT ENOUGH TO SATISFY THE PLEADING STANDARD UNDER TWOMBLY AND

25   IQBAL.  AND EVEN AS TO THE FEW FACTS THE PLAINTIFFS DO ALLEGE,

1    THEY HAVEN'T SHOWN THAT THEY HAVE A VIABLE CLAIM AND THAT THE

2    COMPLAINT IS NOT SUBJECT TO DISMISSAL.

3         AND AS YOUR HONOR NOTED, THERE ARE A NUMBER OF CLAIMS

4    HERE, AND WE'VE SORT OF WALKED THROUGH CLAIM-BY-CLAIM AND

5    ARGUMENT-BY-ARGUMENT IN OUR BRIEFING, AND I DON'T WANT TO

6    REPEAT THAT HERE, BUT THERE ARE A COUPLE OF BIG ISSUES THAT

7    CROSS A NUMBER OF PLAINTIFF'S CLAIMS THAT I WOULD LIKE TO FOCUS

8    ON IN MY ARGUMENT.

9         THE FIRST ISSUE IS THE ISSUE OF INTENT, WHICH IS REQUIRED

10   TO STATE A CLAIM FOR THE WIRE TAP ACT, CIPA, THE ACCESS PRONG,

11   THE STORED COMMUNICATIONS ACT, INTRUSION, AND INTRUSION UPON

12   SECLUSION.

13        THE SECOND ISSUE IS -- THAT I WOULD LIKE TO DISCUSS -- IS

14   THE FAILURE OF PLAINTIFFS TO ALLEGE ANY FACTS REGARDING THE

15   COMMUNICATIONS THAT THEY CLAIM WERE RECORDED, MUCH LESS, YOU

16   KNOW, THE FAILURE TO ALLEGE ANY FACTS THAT THOSE COMMUNICATIONS

17   QUALIFIED, ORAL COMMUNICATIONS OR CONFIDENTIAL COMMUNICATIONS

18   UNDER THE WIRE TAP ACT AND CIPA.

19        AND THEN THIRD, I WOULD LIKE TO DISCUSS THE PLAINTIFF'S

20   BREACH OF CONTRACT AND WARRANTY CLAIM, BECAUSE THEY ALL FAILED

21   TO ALLEGE ANY SPECIFIC PROVISION THAT GOOGLE BREACHED.

22        AND SIMILARLY, WITH RESPECT TO THE UCL CLAIM, THEY FAILED

23   TO ALLEGE ANY MISREPRESENTATIONS OR OMISSIONS ON WHICH THEY

24   RELIED.  AND THAT'S FATAL TO ALL OF THOSE CLAIMS.

25        SO I WILL START WITH INTENT.  AS I MENTIONED, IT IS

1    REQUIRED FOR A NUMBER OF PLAINTIFF'S CLAIMS.

2         SO AS AN INITIAL MATTER, THE ALLEGATIONS IN THE COMPLAINT

3    AND THE NEWS ARTICLE ON WHICH THEY ARE BASED, ALL MAKE CLEAR

4    THAT ANY RECORDING THAT WAS NOT PRECEDED BY A HOT WORD, WAS

5    MERELY THE RESULT OF AN INADVERTENT ERROR.

6         THERE'S NO FACTS IN THE COMPLAINT OR IN ANY OF THE

7    SUPPORTING MATERIALS, SUCH AS THE NEWS ARTICLE, THAT SUGGEST

8    THAT THE RECORDING WAS INTENTIONAL.  IN FACT, THE NEWS ARTICLE

9    EXPRESSLY REFERS TO ANY RECORDING AS UNINTENTIONAL OR MISTAKEN.

10   AND THE CASE LAW IS CLEAR THAT AN INADVERTENT ERROR IS NOT

11   ACTIONABLE UNDER THE WIRE TAP ACT.

12        AND PLAINTIFFS MAKE AN ARGUMENT IN THEIR OPPOSITION THAT

13   KNOWLEDGE IS ENOUGH, OR KNOWLEDGE THAT THERE'S SOME RATE OF

14   ERROR IS ENOUGH TO SATISFY THE INTENT REQUIREMENT.  BUT IT'S

15   DIFFICULT TO CONCEIVE OF A SCENARIO WHERE GOOGLE COULD HAVE

16   TAKEN STEPS TO REDUCE THE ERROR RATE TO ZERO.  I MEAN, WE ARE

17   TALKING ABOUT A SPEECH-ACTIVATED DEVICE, AND SO THERE WILL

18   NECESSARILY BE SOME RATE OF ERROR.

19        AND CERTAINLY GOOGLE WILL DO THE BEST IT CAN TO MAKE THAT

20   ERROR RATE AS LOW AS POSSIBLE, AND I THINK IN ONE OF THE

21   ARTICLES THAT PLAINTIFFS CITE TO IN THEIR OPPOSITION BRIEF,

22   THEY DISCUSS GOOGLE'S CEO STATING PUBLICLY IN 2017 THAT THE

23   ERROR RATE WAS LESS THAN FIVE PERCENT.

24        AND, YOU KNOW, WITH A SPEECH-ACTIVATED DEVICE, YOU HAVE TO

25   EXPECT THAT THERE'S GOING TO BE SOME RATE OF ERROR.  EVEN THE

1    HUMAN EAR HAS A RATE OF ERROR, YOU KNOW, AS FAR AS LISTENING.

2         AND SO, YOU KNOW, SIMPLY ALLEGING THAT GOOGLE KNEW THAT

3    THERE WAS SOME ERROR RATE AND DIDN'T -- AND FAILED TO DO

4    ANYTHING TO BRING IT DOWN TO ZERO, CANNOT QUALIFY AS SUFFICIENT

5    ALLEGATIONS TO SATISFY THE INTENT REQUIREMENT FOR THE WIRE TAP

6    ACT, OR ANY OF THE OTHER CLAIMS THAT REQUIRE INTENT.

7         SO THAT BRINGS ME TO MY SECOND ISSUE, WHICH IS JUST THE

8    COMPLETE ABSENCE OF ANY FACTS SPECIFIC TO THESE PLAINTIFFS; AND

9    PARTICULARLY, ANY FACTS SHOWING THAT THE ALLEGED COMMUNICATION

10   THAT PLAINTIFFS CLAIM WERE INTERCEPTED OR RECORDED, WERE

11   CONFIDENTIAL OR PRIVATE.

12        THE WIRE TAP ACT, CIPA, SECTION 632, COMMON LAW INTRUSION

13   UPON SECLUSION AND INVASION OF THE PRIVACY UNDER THE CALIFORNIA

14   CONSTITUTION, ALL REQUIRE THAT PLAINTIFFS ALLEGE CONFIDENTIAL

15   OR PRIVATE COMMUNICATION.

16        AND AS THE COURT NOTED IN THE PRELIMINARY COMMENTS,

17   PLAINTIFFS DON'T ALLEGE ANY FACTS AT ALL REGARDING THEIR USE OF

18   THE ASSISTANT, ANY FACTS SHOWING THAT THEIR DEVICES RECORDED

19   COMMUNICATIONS THAT WERE NOT INTENDED FOR THE ASSISTANT, OR ANY

20   FACTS REGARDING THE CIRCUMSTANCES OF THOSE COMMUNICATIONS TO

21   SHOW THAT THEY QUALIFY AS CONFIDENTIAL OR PRIVATE

22   COMMUNICATIONS THAT ARE SUBJECT TO PROTECTION UNDER ANY OF

23   THESE LAWS.

24        AND IT'S NOT ENOUGH FOR PLAINTIFFS TO JUST SAY IN A

25   CONCLUSORY FASHION THAT THE COMMUNICATIONS ARE "PRIVATE AND

1    CONFIDENTIAL" OR SIMPLY ALLEGE THAT THEY HAVE A REASONABLE

2    EXPECTATION OF PRIVACY IN THOSE COMMUNICATIONS.  THEY HAVE TO

3    ALLEGE FACTS, AND THEY HAVE TO ALLEGE FACTS TO SHOW THAT THEIR

4    COMMUNICATIONS, NOT SOMEONE ELSE'S COMMUNICATIONS, BUT THAT

5    THEIR COMMUNICATIONS WERE INTERCEPTED OR RECORDED UNDER

6    CIRCUMSTANCES THAT GIVE RISE TO BOTH A SUBJECTIVE AND

7    OBJECTIVELY REASONABLE EXPECTATION OF PRIVACY.

8         AND THERE ARE A NUMBER OF -- THERE ARE A NUMBER OF CASES

9    WHERE COURTS HAVE DISMISSED CLAIMS, JUST LIKE THE CLAIMS THAT

10   PLAINTIFFS ALLEGE, FOR FAILURE TO ALLEGE FACTS REGARDING THE

11   CIRCUMSTANCES OF THE COMMUNICATIONS.  AND WE CITE THEM IN OUR

12   BRIEF, BUT FAULKNER V. ADT, THE IN RE APPLE MAIL LITIGATION

13   CASE AND SATCHELL V. SONIC NOTIFY, THAT CASE IS BE PARTICULARLY

14   INSTRUCTIVE HERE BECAUSE IN THAT CASE, THE COURT FOUND -- THE

15   PLAINTIFF HAD ALLEGED FAR MORE FACTS THAN THE PLAINTIFF ALLEGED

16   HERE.

17        I MEAN, SHE ALLEGED THAT SHE TOOK HER PHONE TO PRIVATE

18   PLACES AND HAD PRIVATE CONVERSATIONS THAT WERE NOT ACCESSIBLE

19   TO THE PUBLIC.  AND THE COURT IN THAT CASE FOUND THAT THOSE ARE

20   JUST THE TYPES OF LEGAL CONCLUSION, COUCHED AS FACTS, THAT ARE

21   NOT SUFFICIENT UNDER TWOMBLY AND IQBAL.

22        AND PLAINTIFF'S ALLEGATIONS HERE, DON'T EVEN COME CLOSE TO

23   THE ALLEGATIONS THAT THE PLAINTIFF MADE IN THAT CASE.

24        YOU KNOW, AND IT'S PARTICULARLY HARD TO IMAGINE HOW

25   PLAINTIFFS CAN ALLEGE SOME OBJECTIVELY REASONABLE EXPECTATION

1    OF PRIVACY WHEN THE DEVICE AT ISSUE AND AS STATED IN

2    PLAINTIFF'S COMPLAINT, DISPLACE A VISUAL CUE WHEN THE RECORDING

3    IS IN PROGRESS, TO LET EVERYBODY KNOW THAT THE DEVICE IS

4    RECORDING.  SO THERE'S NOTHING SURREPTITIOUS ABOUT THE

5    RECORDING, IT'S VISIBLE ON THE DEVICE THAT THE RECORDING IS IN

6    PROGRESS.

7         AND, YOU KNOW, FURTHER, THEY ALSO ASSERT A NUMBER OF

8    CLAIMS BASED ON THE ALLEGED DISCLOSURE OF THESE -- OF

9    RECORDINGS OF THEIR COMMUNICATIONS TO SOME THIRD PARTY, BUT

10   THEY AGAIN DON'T ALLEGE ANY FACTS SHOWING THAT THEIR

11   COMMUNICATIONS WERE AMONG THE COMMUNICATIONS THAT WERE

12   DISCLOSED.

13        YOU KNOW, THERE'S JUST NO FACTS AT ALL ABOUT THE

14   PLAINTIFF'S EXPERIENCE, AND THERE'S ENOUGH OF A REASON TO

15   DISMISS PLAINTIFF'S COMPLAINT.

16        AND THEN THE THIRD ISSUE I WOULD LIKE TO DISCUSS IS WITH

17   RESPECT TO THE BREACH OF CONTRACT AND BREACH OF WARRANTY CLAIM.

18   AND ALL OF THOSE CLAIMS REALLY DO FAIL ON THEIR FACE FOR -- IT

19   APPEARS THAT PLAINTIFFS INTEND TO BASE THOSE CLAIMS ON GOOGLE'S

20   TERMS OF SERVICE AND PRIVACY POLICY.  BUT PLAINTIFFS DON'T

21   POINT TO ANY LANGUAGE IN THE TERMS OF SERVICE OR PRIVACY POLICY

22   THAT GOOGLE BREACHED.

23        GOOGLE NEVER PROMISES THAT THE GOOGLE ASSISTANT OR ANY

24   GOOGLE ASSISTANT-ENABLED DEVICE WILL OPERATE ERROR FREE.  THE

25   TERMS OF SERVICE, IN FACT, EXPRESSLY STATES THAT GOOGLE DOES

1     NOT MAKE ANY SPECIFIC PROMISES ABOUT THE SERVICES, INCLUDING

2     THE SPECIFIC FUNCTIONS OF THE SERVICES, OR THEIR RELIABILITY OR

3     AVAILABILITY OR ABILITY TO MEET USER'S NEEDS, BUT RATHER

4     PROVIDES THE SERVICES AS IS.

5         SO NOT ONLY DOES GOOGLE NEVER PROMISE THAT THE GOOGLE

6     ASSISTANT OR ANY GOOGLE ASSISTANT-ENABLED DEVICE WILL OPERATE

7     PERFECTLY, BUT IT EXPRESSLY STATES THAT THEY PROVIDE THE

8     SERVICES AS IS AND MAKE NO ASSURANCES AT ALL REGARDING THEIR

9     RELIABILITY OR ABILITY TO MEET USER'S NEEDS.

10        AND SIMILARLY, THE PRIVACY POLICY ALLOWS GOOGLE TO USE

11    DATA TO IMPROVE ITS PRODUCT AND SERVICES, INCLUDING THE

12    ASSISTANT.  IT SAYS, "WE USE YOUR INFORMATION TO ENSURE OUR

13    SERVICES ARE WORKING AS INTENDED AND TO MAKE IMPROVEMENTS TO

14    OUR SERVICES."

15        AND GOOGLE CAN'T BE HELD LIABLE, IN A BREACH OF WARRANTY

16    CLAIM, FOR DOING THINGS THAT ARE EXPRESSLY PERMITTED UNDER THE

17    TERMS OF CONTRACT AT ISSUE.

18        AND IT'S ALSO WORTH NOTING THAT WITH RESPECT TO

19    PLAINTIFF'S WARRANTY CLAIM, WHICH I BELIEVE WERE ONLY BROUGHT

20    ON BEHALF OF PLAINTIFF KUMANDAN, WHO ALLEGES TO OWN A PIXEL,

21    AND PLAINTIFF SPURR, WHO ALLEGES TO OWN A HOME, BUT THOSE

22    CLAIMS ALL CONCERN THE DEVICE, NOT THE ASSISTANT SOFTWARE.

23        AND THERE ARE EXPRESS WARRANTIES THAT APPLY TO EACH OF

24    THOSE DEVICES.  THERE'S A SPECIAL -- SPECIFIC WARRANTY, LIMITED

25    WARRANTY THAT APPLIES TO THE HOME DEVICE, AND A WARRANTY THAT

1    APPLIES TO THE PIXEL.  AND I'VE ATTACHED THEM BOTH TO MY

2    DECLARATION AS EXHIBIT E AND F, AND REQUESTED THAT THE COURT

3    TAKE JUDICIAL NOTICE OF THOSE WARRANTIES.

4        BUT BOTH WARRANTIES EXPRESSLY STATE THAT THEY ARE THE ONLY

5    EXPRESS WARRANTIES THAT APPLY TO THOSE DEVICES, AND THEY BOTH

6    STATE THAT GOOGLE DISCLAIMED ANY OTHER WARRANTIES, INCLUDING

7    THE IMPLIED WARRANTY OF MERCHANTABILITY, AND THAT BOTH

8    WARRANTIES ALSO STATE THAT THEY DON'T GUARANTEE THAT THE DEVICE

9    WILL OPERATE ERROR FREE, WHICH AS I DISCUSSED, IS ALSO IN

10   GOOGLE'S TERMS.

11       SO THOSE ARE THREE BIG PICTURE PROBLEMS THAT CROSS A

12   NUMBER OF PLAINTIFF'S CLAIMS, AND I THINK WARRANT DISMISSAL OF

13   A NUMBER OF -- OR ALL OF PLAINTIFF'S CLAIMS FOR JUST FAILURE TO

14   MEET THE PLEADING REQUIREMENTS OF TWOMBLY AND IQBAL.

15       AND THE ONLY OTHER THING I WOULD LIKE TO COVER, IN

16   RESPONSE TO THE COURT'S COMMENTS, IS THE COURT DID BRIEFLY

17   DISCUSS PLAINTIFF'S CIPA CLAIM, AND STATED THAT TURNED ON

18   INTENT.

19       AND I JUST WANTED TO WALK THROUGH CIPA IN A LITTLE BIT

20   MORE DETAIL AND ANSWER ANY QUESTIONS THAT THE COURT HAS.  BUT

21   PLAINTIFFS HAVE ATTEMPTED TO ALLEGE CLAIMS UNDER BOTH

22   SECTION 631(A) AND 632.  AND THERE'S JUST NO CLAIM AT ALL UNDER

23   631(A).

24       SO THERE'S THREE PROVISIONS IN 631(A).  AND THE FIRST ONE

25   REQUIRES THAT A DEFENDANT INTENTIONALLY TAP OR MAKE AN

1    UNAUTHORIZED CONNECTION WITH ANY TELEGRAPH OR TELEPHONE, WIRE

2    LINE, CABLE OR INSTRUMENT.

3        AND THERE ARE NO ALLEGATIONS THAT GOOGLE DID ANYTHING WITH

4    RESPECT TO A TELEPHONE OR -- TELEGRAPH OR TELEPHONE WIRE, LINE,

5    CABLE OR INSTRUMENT.  SO THERE CAN'T BE AN ALLEGED VIOLATION OF

6    THAT PROVISION.

7        THE SECOND PROVISION OF 631(A) REQUIRES THAT A DEFENDANT

8    WILLFULLY AND WITHOUT THE CONSENT OF ALL PARTIES TO THE

9    COMMUNICATION, OR IN ANY OTHER AUTHORIZED MANNER, READS OR

10   ATTEMPTS TO READ OR TO LEARN THE CONTENTS OR MEANING OF ANY

11   MESSAGE, REPORT OR COMMUNICATION WHILE THE SAME IS IN TRANSIT

12   OR PASSING OVER ANY WIRE, LINE OR CABLE, OR IS BEING SENT FROM

13   OR RECEIVED AT ANY PLACE WITHIN THE STATE.

14       AND PLAINTIFF'S ALLEGATION -- FIRST THING, PLAINTIFFS

15   DON'T ALLEGE ANY WIRE, LINE OR CABLE.  SO TO THE EXTENT THAT

16   PLAINTIFFS ARE RELYING ON THE LAST BIT OF THAT PROVISION THAT

17   REQUIRES THAT THE COMMUNICATION BE IN TRANSIT OR SENT OR

18   RECEIVED FROM ANY PLACE WITHIN THE STATE, PLAINTIFF'S

19   ALLEGATIONS ARE THAT GOOGLE RECORDED THEIR COMMUNICATION, SENT

20   THE COMMUNICATION TO GOOGLE SERVERS, AND THAT AT SOME POINT

21   AFTER THAT, THE COMMUNICATION WAS DISCLOSED TO THIRD PARTIES

22   AND LISTENED TO BY HUMAN REVIEWERS FOR THE PURPOSES OF LEARNING

23   THE CONTENT OF THE COMMUNICATION.

24       SO PLAINTIFFS DON'T ALLEGE THAT ANY OF THAT HAPPENED WHILE

25   THE COMMUNICATION WAS IN TRANSIT OR PASSING OVER ANY WIRE, LINE

1    OR CABLE, OR WHILE IT WAS BEING SENT OR RECEIVED AT ANY PLACE

2    WITHIN THE STATE.  SO PLAINTIFFS JUST HAVE NOT COME CLOSE TO

3    PLEADING A VIOLATION OF THAT SECOND PROVISION.

4         AND THE THIRD PROVISION OF 631 APPLIES TO USE, USE OR

5    DISCLOSURE OF THE COMMUNICATION.  AND IF YOU DON'T SHOW THAT

6    THE COMMUNICATION WAS OBTAINED IN VIOLATION OF THE FIRST OR

7    SECOND PROVISION, YOU CAN'T ALLEGE A VIOLATION OF THE THIRD

8    PROVISION.  SO THERE'S JUST NO CLAIM AT ALL UNDER 631(A).

9         AND YOU KNOW, SECTION 632 REQUIRES AN INTENTIONAL

10   RECORDING OF A CONFIDENTIAL COMMUNICATION WITHOUT THE CONSENT

11   OF ALL PARTIES.  AND AGAIN, PLAINTIFFS HAVEN'T COME CLOSE TO

12   ALLEGING ANY CONFIDENTIAL COMMUNICATIONS FOR THESE PLAINTIFFS.

13        SO IN ADDITION TO THE FAILURE TO ALLEGE INTENT, THEY

14   HAVEN'T SATISFIED THE CONFIDENTIAL COMMUNICATION REQUIREMENT.

15        SO I JUST WANTED TO WALK THROUGH THAT ANALYSIS OF CIPA.

16   AND WITH THAT, I THINK I WILL STOP AND SEE IF THE COURT HAS ANY

17   QUESTIONS.

18        I KNOW IT'S HARD ON THE PHONE, AND MAYBE YOU WOULD HAVE

19   INTERRUPTED ME ALREADY IF WE WERE IN PERSON.  SO I WANT TO GIVE

20   YOU THE CHANCE TO ASK ANY QUESTIONS YOU HAVE.

21        THE COURT:  YES, I WOULD HAVE INTERRUPTED, AND I CAN

22   WAVE MY HANDS IF I WANT TO DO THAT WHEN WE ARE IN COURT.

23        THE ONLY THING I WANT TO FOLLOW UP WITH MS. BALI, IS I'M

24   REALLY STRUGGLING WITH HOW PLAINTIFF COULD, PRE-DISCOVERY, BE

25   PUT TO THE TASK OF ALLEGING WHICH CONVERSATIONS WERE

1    INADVERTENTLY RECORDED BY GOOGLE WHEN THE PLAINTIFF CLAIMS HE

2    OR SHE HAD NOT ACTIVATED THE GOOGLE ASSISTANT.

3        YOU CAN'T KNOW THAT, AND YET THERE SEEMS TO BE SOME

4    ACKNOWLEDGEMENT THAT THERE IS AN ERROR RATE.

5        SO I DON'T KNOW HOW I COULD FAIRLY ASK PLAINTIFF TO MAKE

6    THOSE ALLEGATIONS AT THIS POINT ABOUT THE CONTENT, BUT I WANT

7    TO BE CLEAR, PLAINTIFF ULTIMATELY HAS THE OBLIGATION OF PROVING

8    THE CONTENT WAS CONFIDENTIAL.  AND EVIDENCE OF, I USED IT IN

9    PLACES I EXPECT TO BE CONFIDENTIAL, IS UNLIKELY TO BE ENOUGH.

10        SO IF YOU COULD JUST COMMENT ON THAT.

11            MS. BALI:  YEAH, THAT'S A GREAT QUESTION.

12        AND I COULDN'T AGREE MORE THAT THIS IS PLAINTIFF'S BURDEN

13    TO PROVE, AND IT'S ALSO PLAINTIFF'S BURDEN TO ALLEGE.

14        AND IF THEY BROUGHT THIS COMPLAINT, CERTAINLY THEY BELIEVE

15    THAT THEY'VE EXPERIENCED A FALSE SUCCESS, OR THERE HAVE BEEN

16    TIMES WHERE THE DEVICE RECORDED THEM WHERE THEY DID NOT INTEND.

17    SO CERTAINLY THEY CAN ALLEGE MORE THAN THEY'VE DONE HERE.

18        AND EVEN THOUGH THIS IS OUTSIDE THE SCOPE OF THE

19    PLEADINGS, YOU KNOW, IT'S WORTH NOTING JUST FOR YOUR HONOR'S

20    OWN KNOWLEDGE, BECAUSE YOU MENTION YOU ARE NOT A USER OF THIS

21    PRODUCT, THAT THERE IS A FEATURE WHERE USERS CAN LOG INTO THEIR

22    ACCOUNT AND SEE ALL OF THEIR GOOGLE ASSISTANT ACTIVITY, SO LONG

23    AS YOU -- DEPENDING ON YOUR SETTING.  SO IT'S NOT THAT WE HAVE

24    TO RELY ENTIRELY ON PLAINTIFF'S MEMORY.  IF THEY LOOK AT THEIR

25    ACCOUNT, THEY MIGHT BE ABLE TO SEE, DEPENDING ON THEIR

1    SETTINGS, WHAT THEIR COMMUNICATION HISTORY SHOWS.

2         SO THERE'S CERTAINLY MORE THAT THEY CAN DO TO SATISFY BOTH

3    THEIR PLEADING BURDEN, AND ULTIMATELY THEY WILL HAVE TO DO THE

4    STATUS BY THEIR BURDEN OF PROOF.

5              THE COURT:  THAT'S HELPFUL.  THAT'S HELPFUL.

6         GOOD.  THANK YOU, MS. BALI.

7         LET ME MOVE ON TO MS. FARAH AND MOVE ON TO PLAINTIFFS.

8              MS. FARAH:  YES.  GOOD MORNING, YOUR HONOR.

9         THIS IS ANDREA FARAH, LOWEY DANNENBERG, AGAIN.  WE

10    APPRECIATE THE OPPORTUNITY TO BE HEARD, YOUR HONOR, ESPECIALLY

11    GIVEN THE CIRCUMSTANCES.

12         WITH THE COURT'S PERMISSION, I WILL ADDRESS DEFENDANT'S

13    ARGUMENT AND THE COURT'S COMMENTS REGARDING PLAINTIFF'S STATE

14    AND FEDERAL PRIVACY CLAIMS, AND THEN MY COLLEAGUE,

15    JOHN JASNOCH, CAN ADDRESS THE CLAIMS, THE BREACH OF CONTRACT,

16    THE UCL, AND THE BREACH OF WARRANTY CLAIM.

17         SO I GUESS I WOULD START WITH THE BIG POINT, YOU KNOW,

18    WHICH IS THE QUESTION OF INTENT.  THE WIRE TAP, THE STORED

19    COMMUNICATIONS ACT AND THE CALIFORNIA PRIVACY ACT, THEY ALL

20    REQUIRE THAT THE INTERCEPTION OR EAVESDROPPING, AS THE CASE MAY

21    BE, BE DONE INTENTIONALLY.

22         AND PLAINTIFFS HERE HAVE DEMONSTRATED GOOGLE'S INTENT BY

23    ALLEGING THAT GOOGLE DESIGNED THE ASSISTANT TO ACTIVATE WITHOUT

24    AUTHORIZATION, AND THEN TOOK THOSE RECORDINGS AND USED THEM TO

25    THEIR OWN BENEFIT.

1        SO THIS BASICALLY BOILS DOWN TO TWO FACTORS; IT IS THE

2   DESIGN FOR WHICH GOOGLE IS SOLELY RESPONSIBLE, AND THE ENORMOUS

3   COMMERCIAL BENEFIT GOOGLE DERIVES FROM IT.

4        THE CALIFORNIA APPELLATE COURT HAS RECENTLY DECIDED A

5   CASE, AND I APOLOGIZE, I DO NOT THINK THAT THAT CASE IS CITED

6   IN OUR BRIEF, IT IS THE HSBC CARD SERVICES, INC.,

7   20.CAL.APP.5TH 427 CASE.  THERE, HSBC HAS EMPLOYED A FULL TIME

8   TELEPHONE CALL RECORDING SYSTEM THAT RECORDS ALL COMMUNICATION

9   OCCURRING ON COMPANY PHONE, INCLUDING EMPLOYEE PRIVATE

10  CONVERSATIONS THAT THEY WERE ALLOWED TO HAVE.

11       WHEN THE EMPLOYEES BROUGHT CLAIMS UNDER CALIFORNIA

12  INVASION OF PRIVACY, HSBC DEFENDED ITSELF, JUST LIKE GOOGLE

13  DOES HERE, BY SAYING THAT THEY NEVER INTENDED TO RECORD THOSE

14  SPECIFIC SUBGROUP OF CONVERSATIONS THAT INCLUDED PERSONAL

15  PRIVATE COMMUNICATIONS.

16       AND THE COURT REJECTED THAT ARGUMENT, HOLDING THAT BECAUSE

17  HSBC WAS USING AND KNEW IT WAS USING A FULL-TIME TELEPHONE CALL

18  RECORDING SYSTEM, THAT THAT RECORDED ALL CALLS.  HSBC

19  INTENTIONALLY RECORDED THE CALLS THAT ALSO CONTAINED THE

20  PLAINTIFF'S PRIVATE COMMUNICATIONS.

21       AND THAT CASE IS IDENTICAL -- OUR CASE HERE IS IDENTICAL

22  TO HSBC.  GOOGLE HAS DESIGNED THE ASSISTANT TO CONTINUOUSLY

23  RECORD INDIVIDUALS AND TO THEN RETAIN THOSE RECORDINGS,

24  INCLUDING IN INSTANCES WHEN NO HOT WORD OR MANUAL ACTIVATION

25  OCCURRED.

1      SO GOOGLE IS NOT SAYING THAT THE ASSISTANT MALFUNCTIONED

2    OR THAT IT CONTAINS A DEFECT THAT TRIGGERS THE RECORDING WHEN

3    IT SHOULDN'T HAVE.  ASSISTANT IS DOING EXACTLY WHAT GOOGLE

4    EXPECTED IT TO DO AND WHAT GOOGLE DESIGNED ASSISTANT TO DO,

5    WHICH IS TO RECORD.

6         THE COURT:  MS. FARAH, I AM GOING TO INTERRUPT YOU

7    HERE BECAUSE THIS IS GOING TO BE A VEXING PROBLEM THROUGHOUT

8    THE CASE, AND I THINK MS. BALI MADE A REALLY INTERESTING POINT.

9       THE DEVICE IS DESIGNED TO ACTIVATE WHEN IT DETECTS THE HOT

10   WORD.  AND AS MS. BALI SUGGESTED, EVEN THE HUMAN EAR MAKES

11    MISTAKES.  WE ALL HAVE MISHEARD WHAT SOMEONE ELSE HAS SAID AND

12    TAKEN ACTION BASED ON WHAT WE THINK WE'VE HEARD.

13      IT HAPPENS IN OUR HOME, FRANKLY.  THE ENTIRE CHILD'S GAME

14   OF TELEPHONE IS BASED ON THE FAILINGS OF THE HUMAN EAR.  AND SO

15   THIS DOESN'T SOUND LIKE THE CALIFORNIA CASE YOU'VE JUST

16   MENTIONED WHERE THE RECORDING IS A HUNDRED PERCENT AND DOESN'T

17   TURN OFF WHEN THERE ARE PRIVATE CONVERSATIONS.  HERE, THE

18   ENTIRE DEVICE IS DESIGNED TO LISTEN TO WORDS SPOKEN THAT MAY

19   NOT BE VERY CAREFULLY SPOKEN.

20      AND, YOU KNOW -- AND SO I'M REALLY STRUGGLING WITH YOUR

21   SAYING THAT THE DEVICE IS DESIGNED TO CAPTURE EVERYTHING.  BUT

22   THAT'S NOT WHAT YOUR CASE IS ABOUT.  YOUR CASE IS ABOUT THE

23   VERY SMALL PERCENTAGE OF FALSE ACCEPTS, WHERE SOMETHING IS

24   INCORRECTLY DETECTED.  SO I THINK YOU ARE OVERSTATING YOUR CASE

25   HERE.

1          MS. FARAH:  WELL, YOUR HONOR, I -- SO THE ARGUMENT

2     THAT THERE IS ONLY A SMALL FRAGMENT OR SMALL PERCENTAGE OF

3     RECORDINGS THAT ARE BEING DONE UNINTENTIONALLY, SO TO SPEAK, OR

4     UNLAWFULLY, I'M NOT A HUNDRED PERCENT SURE IF THAT HAS BEEN

5     ESTABLISHED IN THE CASE OR IF DEFENDANTS HAVE DONE ANYTHING TO

6     ACTUALLY DEMONSTRATE IT OTHER THAN JUST SAYING IT.

7          WE KNOW THAT GOOGLE, FROM THE MOMENT IT RELEASED GOOGLE

8     ASSISTANT, THAT GOOGLE KNEW THAT AT LEAST A PORTION OF THE

9     RECORDINGS WERE BE OBTAINED UNLAWFULLY WITHOUT USER'S KNOWLEDGE

10    OR THEIR CONSENT.

11         SO THE DUTCH MEDIA, FOR EXAMPLE, REPORTED THAT THE MEDIA

12    ITSELF, LISTENED TO MORE THAN THOUSANDS OF RECORDINGS AND

13    IDENTIFIED 153 OF THOSE THAT WERE UNLAWFULLY RECORDED.  THE

14    CONTRACTOR WHO SPOKE WITH THE MEDIA, CONFIRMED THAT HE,

15    HIMSELF, WAS TASKED WITH REVIEWING THOUSANDS OF RECORDINGS PER

16    WEEK.

17         SO IF WE TAKE THESE NUMBERS, WE ARE LOOKING AT A

18    15 PERCENT OF ALL RECORDINGS THAT ARE BEING DONE WITHOUT

19    CONSENT AND WITHOUT PEOPLE'S KNOWLEDGE.  SO 15 IS NOT A

20    FRAGMENT OR A SMALL PORTION, 15 IS A PRETTY BIG CHUNK.

21         NOW THERE ARE THOUSANDS OF REVIEWERS AROUND THE GLOBE.  SO

22    WE ARE POTENTIALLY LOOKING AT HUNDREDS OF THOUSANDS OF

23    RECORDINGS.  I THINK GOOGLE IS UNDERPLAYING THE PORTION OF

24    RECORDINGS THAT ARE ACTUALLY DONE UNLAWFULLY.

25         THE COURT:  OKAY.  I WOULD LIKE TO MOVE ON IN A

```
 1          SECOND, BUT WHEN YOU TELL ME IN THE COMPLAINT WHAT A NEWSPAPER

 2     ARTICLE SAID, THE ONLY FACT YOU ARE ALLEGING IS THAT THERE'S A

 3     NEWSPAPER ARTICLE, THE CONTENTS ARE NOT FACTUAL ALLEGATIONS.

 4          SO ONE OF THE BIG PROBLEMS YOU HAVE IS YOU CAN'T FILE A

 5     LAWSUIT AND SAY, READ THIS NEWSPAPER ARTICLE.  YOU NEED TO

 6     ALLEGE FACTS.  THEY CAN BE INFORMED BY THE NEWSPAPER ARTICLE.

 7     BUT THE ARTICLE ITSELF, I DON'T READ THE CONTENT OF IT.

 8          IF YOU SAY THAT GOOGLE WAS ON NOTICE BECAUSE OF THE

 9     ARTICLE, THAT WOULD BE FAIR.  YOU ARE RELYING ON IT FOR FAR

10     MORE, AND I NEED YOU TO GIVE ME FACTS IN THE COMPLAINT.

11               MS. FARAH:  YEAH.

12          SO THE IDEA IS THAT WE, AS PLAINTIFFS, HAVE CERTAIN

13     DEVICES AND WE USE THEM IN A CERTAIN WAY AND HAVE NOTICED THAT

14     THESE DEVICES ACTIVATE WITHOUT THEIR CONSENT.

15          NOW THERE IS AN ARTICLE, AND, YOU KNOW, NEWS ARTICLES ARE

16     GENERALLY AND READILY JUDICIALLY NOTED BY COURTS, AND TAKEN FOR

17     THEIR TRUTH, SO THEY ARE NOT --

18               THE COURT:  NO, THEY ARE NOT.  THAT'S INCORRECT, AND

19     IT WILL NOT HAPPEN IN MY COURT.  THEY ARE NOT ACCEPTED FOR THE

20     TRUTH.  THEY ARE NOT.

21          SO LET'S MOVE ON.

22               MS. FARAH:  ALL RIGHT.

23          BUT YOUR HONOR, GOOGLE DOESN'T DISPUTE THAT THEY DO RECORD

24     PEOPLE'S CONVERSATIONS, AND GOOGLE --

25               THE COURT:  THE AMOUNT OF IT.
```

1          I TOLD YOU, THIS INTENT ISSUE WILL PROBABLY ULTIMATELY

2     RISE AND FALL ON THE SCOPE OF THE PROBLEM.

3          ALL RIGHT.  I'M SORRY FOR INTERRUPTING YOU SO MUCH,

4     MS. FARAH.  I'M GOING TO LET YOU GO BACK TO YOUR ARGUMENT.

5               MS. FARAH:  SURE, SURE.

6          SO THEN INSIDE THE DESIGN, WE ALSO HAVE THE IDEA THAT

7     GOOGLE DERIVES INCREDIBLE BENEFIT FROM MAKING THESE RECORDINGS.

8     IF THESE RECORDINGS WERE TRULY UNINTENTIONAL AND UNWANTED,

9     GOOGLE COULD HAVE HAD PROCEDURES IN PLACE TO DETECT THOSE

10    RECORDINGS AND TO TIMELY DESTROY THEM TO AVOID RUNNING INTO

11    PRIVACY ISSUES OR VIOLATING INDIVIDUAL'S PRIVACY.

12         BUT QUITE THE OPPOSITE ACTUALLY HAPPENED HERE.  ONE OF THE

13    VENDORS WHO SPOKE WITH THE MEDIA CONFIRMED THAT GOOGLE HAS NO

14    PROCESS IN PLAY TO EVEN IDENTIFY OR FLAG THE RECORDINGS.

15    GOOGLE RETAINS THESE RECORDINGS INSTEAD AND USES THEM FOR THEIR

16    OWN COMMERCIAL BENEFIT.

17         SO -- AND THAT HUMAN REVIEW IS SINGULARLY CALCULATED TO

18    IMPROVE THE FUNCTIONALITY OF THE ASSISTANT, WHICH GOOGLE

19    DOESN'T DISPUTE.  AND IT IS ULTIMATELY AIMED AT GENERATING

20    CREATING GREATER REVENUES TO BENEFIT GOOGLE FINANCIALLY.

21         SO THE BENEFIT, AND THE PHARMATRAK CASE, OBSERVED THAT AN

22    INTERCEPTION MAY BE MORE LIKELY TO BE INTENTIONAL WHEN IT

23    SERVES THE PARTY'S SELF INTEREST TO ENGAGE IN SUCH CONDUCT.

24         SO EVEN IF THE CASE DOESN'T SEE THE IDEA OF THE DESIGN

25    OUTWEIGHED BY VIRTUE OF THE BENEFIT GOOGLE DERIVES HERE, WE CAN

1    ESTABLISH INTENT.  YOU KNOW, THIS IS NOT A CASE WHERE ONE

2    RECORDING OCCURRED, WHERE TWO RECORDINGS OCCURRED, WE HAVE

3    THOUSANDS OF HUNDREDS OF THOUSANDS, AND WE JUST TALKED ABOUT,

4    WHICH IS ANOTHER POINT THAT THE JUDGE IN THE HSBC CASE HAS

5    MADE, THAT 315 RECORDINGS, WHICH WAS THE CASE THERE, IS NOT BY

6    CHANCE OR AN ACCIDENT.

7         IN THAT REGARD, THE RECORDINGS THAT GOOGLE MAKES ARE VERY

8    DIFFERENT THAN THOSE.  IN THE CASES THAT GOOGLE CITES, SUCH AS

9    MICROPHONE DURING A TESTING SESSION TRIGGERS AND LISTENS TO

10   PEOPLE.  THAT'S NOT THE SAME.  GOOGLE SPECIFICALLY DESIGNED TO

11   MAKE THESE RECORDINGS, NOTWITHSTANDING THAT HOT WORD OR MANUAL

12   OPERATION HASN'T OCCURRED.

13        SO THOSE ARE, I GUESS, THE TWO MAIN POINTS ON INTENT, THE

14   DESIGN, THE SCOPE AND THE BENEFIT THAT GOOGLE DERIVED.

15        IN TERMS OF THE PRIVATE COMMUNICATIONS, AND THIS IS

16   SOMETHING THAT RELATES TO THE CALIFORNIA PRIVACY ACT, THE WIRE

17   TAP, INTRUSION UPON SECLUSION, CALIFORNIA CONSTITUTION.  SO ON

18   A MOTION TO DISMISS, THE QUESTION IS, HAS PLAINTIFFS PLED FACTS

19   THAT COULD LEAD TO THE PLAUSIBLE INFERENCE THAT THEIR

20   CONVERSATIONS WERE CONFIDENTIAL, MEANING THAT THEY HAVE

21   SUBJECTIVE EXPECTATION WHICH WAS OBJECTIVELY REASONABLE.  SO

22   IT'S ALMOST A TWO-PRONG INQUIRY.

23        AND THE SUBJECTIVE PART HERE IS EASILY MET BECAUSE IT IS

24   BASED ON THE FACT THAT PLAINTIFFS DID NOT TRIGGER GOOGLE

25   ASSISTANT IN ORDER TO ACTIVATE INTO LISTENING MODE.  PLAINTIFFS

1   DIRECTED THEIR CONVERSATIONS TO INDIVIDUALS WHOM THEY INTENDED

2   TO, WHATEVER INFORMATION WAS CONVEYED, AND THEY LIMITED THOSE

3   CONVERSATIONS TO PEOPLE WHO WERE IN THEIR VICINITY WHO SHOULD

4   OR COULD OVERHEAR THE CONTENTS THEREOF.  AND THEY DID THAT TO

5   THE EXCLUSION OF OTHERS, INCLUDING GOOGLE ASSISTANT CLEARLY

6   INDICATING THEIR SUBJECTIVE EXPECTATION THAT NO OTHER

7   UNANNOUNCED AUDITORS WILL BE PART OF THEIR CONVERSATION.

8        AND LET'S NOT FORGET THAT GOOGLE, ITSELF, ASSURED

9   PLAINTIFF THAT IT WILL NOT LISTEN TO THEM, ABSENT THE TRIGGER

10  WORD, OR MANUAL ACTIVATION, CONFIRMING THAT THEIR SUBJECTIVE

11  EXPECTATION WAS PERFECTLY APPROPRIATE.

12       WE KNOW WHAT THE NATURE OF THESE COMMUNICATIONS ARE FROM

13  THE DUTCH NEWS MEDIA.  SO WE KNOW THEY CONTAIN --

14            THE COURT:  EXCUSE ME.  I KNOW NOTHING FROM THE DUTCH

15   NEWS MEDIA.  PLEASE BE CLEAR ON THAT.  I TAKE NO FACTUAL

16   ALLEGATIONS FROM THE DUTCH NEWS MEDIA.  AND IN FACT, I DON'T

17   KNOW THAT THE EXPERIENCE OF GOOGLE ASSISTANT LISTENING IN A

18   DIFFERENT LANGUAGE THAN THE ENGLISH LANGUAGE IS EVEN THE SAME.

19       SO IF YOU WANT TO BASE YOUR CASE ON A NEWS ARTICLE, I WILL

20   NOT GIVE YOU LEAVE TO AMEND.

21            MS. FARAH:  NO, NO, YOUR HONOR.  IT'S NOT ONLY BASED

22   ON THE NEWS ARTICLE.

23       SO OUR PLAINTIFFS HAVE ALLEGED THAT THEY HAVE INTERACTED

24   WITH THEIR RESPECTIVE DEVICES, AND THAT THESE DEVICES RECORDED

25   THEIR CONFIDENTIAL CONVERSATIONS, ABSENT THEIR CONSENT.  SO

1    THESE ARE PARAGRAPHS 51 THROUGH 53 OF THE PLAINTIFF'S

2    COMPLAINT.

3            THE COURT:  I ACTUALLY LOOKED AT THE HISTORY THAT

4    MS. BALI SUGGESTED EACH USER CAN LOOK AT TO SEE WHAT WAS

5    RECORDED.

6            MS. FARAH:  YOUR HONOR, WE DON'T BELIEVE THAT THAT

7    WOULD BE APPROPRIATE FOR US TO DO ON A MOTION TO DISMISS

8    BECAUSE --

9            THE COURT:  NO, NO, FOR MAKING ALLEGATIONS IN YOUR

10   COMPLAINT, IT WOULD BE.  I MEAN, I'M EXPECTING YOU WILL DO THAT

11   NEAR YOUR AMENDED COMPLAINT, I GUESS IS WHAT I'M SAYING.

12           MS. FARAH:  SURE.  WE ARE MORE THAN HAPPY TO DO IT

13   FOR THE AMENDED COMPLAINT.  BUT YOU KNOW, THAT ASSUMES THAT IF

14   THE CONVERSATION IS RECORDED, THAT THAT ACTUALLY IS LOGGED AND

15   WOULD APPEAR IN PLAINTIFF'S ACCOUNT.

16           THE COURT:  TRUE ENOUGH.

17           MS. FARAH:  AND THE WE DON'T KNOW WHETHER THAT IS THE

18   CASE.  HOW DO WE KNOW, WITHOUT DISCOVERY, WHETHER A

19   CONVERSATION THAT WAS TRIGGERED WITHOUT THE HOT WORD, WOULD

20   ACTUALLY BE LOGGED ANYWHERE IN GOOGLE'S NETWORK OR THEY WOULD

21   ACTUALLY EVEN APPEAR ON PLAINTIFF'S ACCOUNT?

22       SO I CANNOT BASE MY ALLEGATIONS ON THAT BECAUSE I DON'T

23   KNOW HOW GOOGLE SYSTEM WORKED PRIOR TO DISCOVERY.

24       IF WE EVER GET TO THAT POINT, ON SUMMARY JUDGEMENT,

25   CERTAINLY GOOGLE IS FREE TO PULL UP THE ACCOUNT AND SHOW THE

1    COURT AND PROVE THAT THESE RECORDINGS WILL HAVE BEEN LOGGED.

2    ALL I KNOW IS THAT PLAINTIFFS KNOW THAT THEY HAVE EXPERIENCED

3    RECORDINGS WITHOUT THEIR CONSENT AND THAT THOSE RECORDINGS

4    RELATED TO THEIR CONFIDENTIAL COMMUNICATIONS.

5        AND I THINK THAT UNDER TWOMBLY AND IQBAL, THAT IS

6    SUFFICIENT FOR PLAINTIFFS TO ALLEGE AT THIS STAGE.

7            THE COURT:  OKAY.

8        SO I'M SORRY TO SAY, I'M WATCHING THE TIME BECAUSE I DO

9    HAVE ANOTHER CASE.  AND I'M GOING TO GIVE YOU JUST ANOTHER FOUR

10   OR FIVE MINUTES TO FINISH UP, IF I MAY.

11           MS. FARAH:  YES.  SURE.

12       SO SOME OF THE OTHER POINTS THAT CAME UP, YOU KNOW, THE

13   IDEA THAT PLAINTIFFS SHOULD HAVE EXPECTED THAT THERE WILL BE A

14   CERTAIN RATE OF ERROR HERE AND THAT PLAINTIFFS SHOULD HAVE

15   KNOWN, THESE ARE ARGUMENTS THAT HAVE PREVIOUSLY BEEN MADE IN

16   CASES, YOU KNOW, WITH THE IDEA OF, YOU KNOW HOW THE TECHNOLOGY

17   WORKS, SO YOU SHOULD HAVE ANTICIPATED ISSUES.

18       IN THE IN RE GOOGLE INC. 2013, JUDGE KOH REJECTED THOSE

19   ARGUMENTS, NOTING THAT A PERSON OF KNOWLEDGE, THAT THE

20   TECHNOLOGY HAS THE CAPACITY TO MONITOR COMMUNICATION, IS NOT

21   SUFFICIENT TO ESTABLISH IMPLIED CONSENT, WHICH THIS IS REALLY

22   WHAT IT TRANSLATES TO.

23       IN THE PHARMATRAK CASE, SAME IDEA.  DEFENDANTS THERE SAID

24   THAT THE PHARMACEUTICAL COMPANY THAT CONTRACTED WITH THE VENDOR

25   BASICALLY AGREED AND SHOULD HAVE KNOWN THAT THE VENDOR IS GOING

1      TO COLLECT INFORMATION ABOUT THEIR CLIENTS.

2           SAME ARGUMENTS REJECTED BY THE COURT, SAYING IT'S

3      NONSENSICAL BECAUSE IT ACTUALLY WOULD ALLOW COMPANIES TO

4      INSULATE THEMSELVES ON LIABILITY WHEN THEY DO THINK THEY ARE

5      CONTRARY TO THEIR CONTRACTURAL PROMISES THEY MADE TO PLAINTIFF.

6      SO THAT ARGUMENT ALSO WOULDN'T WORK.

7           IN TERMS OF THE CIPA VIOLATIONS, YOU KNOW, 631(A),

8      DEFENDANTS ARGUE THAT THE COMMUNICATION HAS TO OCCUR OVER WIRE.

9      IT DOESN'T HAVE TO OCCUR OVER WIRE.  THE LAW ALSO IS CLEAR ON

10     THIS, THE PLAIN LANGUAGE OF 631(A) ALLOWS -- PROHIBITS LEARNING

11     OF COMMUNICATIONS THAT IS IN TRANSIT OR TRAVELS THROUGH WIRE.

12          SO THOSE ARE TWO ALTERNATIVES.  IN ANY EVENT, LET'S NOT

13     FORGET THAT WE ALSO ALLEGE THE UNLAWFUL USE AND DISCLOSURE,

14     WHICH IS A SEPARATE PART OF CIPA.

15          ANOTHER BIG POINT, THE FACILITY AND THE ACCESS TO

16     FACILITIES.  SO AS AN INITIAL MATTER, THE FACILITY IS NOT

17     DEFINED UNDER THE STORED COMMUNICATIONS ACT.  AND THIS IS ALSO

18     A CASE OF FIRST IMPRESSION WHERE WE CANNOT POINT TO

19     NINTH CIRCUIT PRECEDENT FOR GUIDANCE.  WHAT WE DO KNOW IS THAT

20     WEB AND COMPUTER SERVERS GENERALLY HAVE BEEN FOUND TO

21     CONSTITUTE FACILITY.

22          AND ALTHOUGH GOOGLE MAY HAVE HAD ACCESS TO THEIR OWN

23     FACILITIES BY VIRTUE OF BEING THE COMMUNICATION SERVICE

24     PROVIDER, GOOGLE WOULD HAVE EXCEEDED ANY SUCH AUTHORIZATION BY

25     ALLOWING UNAUTHORIZED THIRD PARTIES TO ACCESS OR SHARE THE

1    INFORMATION.

2         AND IN ALL FAIRNESS TO PLAINTIFFS, TO EXACTLY PINPOINT THE

3    PRECISE PIECE OF EQUIPMENT IN A COMPUTER NETWORK OVER GLOBAL

4    TECHNOLOGY BEHEMOTHS, LIKE GOOGLE, ABSENT DISCOVERY, IS AN

5    IMPOSSIBLE TASK, AND A BURDEN THAT PLAINTIFFS CANNOT BE

6    REQUIRED TO MEET ON A MOTION TO DISMISS.

7         AND THEN LET'S NOT FORGET THAT UNDER THE STORED

8    COMMUNICATIONS ACT, WE ALSO HAVE THE UNLAWFUL USE AND

9    DISCLOSURE, WHICH IS A SEPARATE SECTION UNDER THE SCA.  AND IT

10   PROHIBITS SERVICE PROVIDERS FROM KNOWINGLY DIVULGING THE

11   CONTENT OF COMMUNICATION, IRRESPECTIVE OF WHETHER GOOGLE HAS A

12   STATUS OF A SERVICE PROVIDER, OR IRRESPECTIVE OF ITS AUTHORITY

13   TO ACT AS A FACILITY.

14        AND THAT IS EXACTLY WHAT THE COURT FOUND IN THE IN RE

15   YAHOO MAIL LITIGATION.  THERE, THE ISSUE WITH THE YAHOO

16   SCANNING, ANALYZING THOSE E-MAILS AND SHARING WITH TRUSTED

17   VENDORS.  THE COURT FOUND THAT SECTION 2702(A) WAS VIOLATED BY

18   VIRTUE OF THE YAHOO'S DIVULGENCE OF THE USER'S COMMUNICATION.

19        AND THIS CASE IS NOT LIKE SVENSON IN THAT REGARD BECAUSE

20   SVENSON CONCERNED GOOGLE DISCLOSURE OF PLAINTIFF'S RECORDS

21   INFORMATION AND DISTINGUISHED FROM CONTENT OF COMMUNICATION.

22        UNDER THE NINTH CIRCUIT PRECEDENT, RECORD INFORMATION,

23   WHICH IS NAME, ZIP CODE, E-MAIL ADDRESS, ET CETERA, IS NOT

24   PROTECTED BY 2702(A); WHEREAS CONTENT OF COMMUNICATION, SUCH AS

25   SUBSTANTIVE MESSAGES AND DISCUSSION, AS WE HAVE ALLEGED HERE,

1    ARE PROTECTED.  SO THE SVENSON CASE WOULDN'T GUIDE THIS COURT

2    TO DISMISS THE 2702 CLAIMS.

3        SO YOU ALSO RAISED THE QUESTION OF THE THIRD PARTY

4    CONTRACTORS.  SO IT'S THE SAME.  AGAIN, YOU KNOW, UNDER THE

5    TWOMBLY AND IQBAL, PLAINTIFF CANNOT BE ASKED TO IDENTIFY WHO,

6    FACTUALLY, THOSE INDIVIDUALS ARE.

7        WE KNOW THEY ARE REFERRED TO AS CONTRACTORS, THEY'RE

8    REFERRED TO AS VENDORS, THEY ARE REFERRED TO AS SUBCONTRACTORS.

9    SO ABSENT DISCOVERY, TO ASK PLAINTIFF WHAT IS THE BUSINESS

10   AFFILIATION BETWEEN THESE INDIVIDUALS AND GOOGLE, THAT THAT IS

11   NOT AN APPROPRIATE ENDEAVOR.

12       BUT IN ANY EVENT, TO THE EXTENT THAT THE COURT, AS

13   YOUR HONOR ARTICULATED TO US, NEEDS MORE INFORMATION, I THINK

14   THAT EVERYTHING YOU HAVE SAID IS CURABLE BY AN AMENDMENT, AND

15   PLAINTIFFS WOULD LIKE THE OPPORTUNITY TO GO AHEAD AND CERTAINLY

16   DO THAT.

17           THE COURT:  OKAY.

18       WELL -- AND, YOU KNOW, CERTAINLY THIS IS YOUR FIRST TIME

19   THROUGH WITH ME ON THE COMPLAINT.  AND I HAVE -- I'M NOT GOING

20   TO PROMISE THAT I WILL GIVE YOU LEAVE TO AMEND ON EVERYTHING,

21   BUT I CERTAINLY LEAN THAT WAY THE FIRST TIME THROUGH.

22       THE OTHER THING I WILL COMMENT, MS. FARAH, YOU DON'T NEED

23   12 ACTIVE CAUSES OF ACTION TO GO FORWARD, AND SO A HAIRCUT ON

24   THIS WOULD NOT BE -- I DON'T THINK THAT WOULD BE SO TRAGIC.

25   BUT I CERTAINLY HAVE AN EYE TOWARD GIVING YOU THE OPPORTUNITY

1   TO MAKE EACH OF THE CLAIMS THAT YOU'VE SET FORTH.

2        SO ALL RIGHT.  MS. BALI --  I'M SORRY, BUT I'M RUNNING OUT

3   OF TIME.  I ALLOTTED AN HOUR FOR THIS, AND WE HAVE A CASE

4   MANAGEMENT CONFERENCE.

5        GO AHEAD.

6        MR. JASNOCH:  THANK YOU, YOUR HONOR.  THIS IS.

7   JOHN JASNOCH WITH SCOTT & SCOTT.  I WILL BE VERY BRIEF.

8        WITH RESPECT TO PLAINTIFF'S BREACH OF CONTRACT CLAIMS, THE

9   COURT HAD PREVIOUSLY STATED THAT PLAINTIFFS HADN'T SPECIFICALLY

10  SET FORTH THE TERMS OF THE CONTRACT THAT WERE APPLICABLE HERE.

11       IN PARAGRAPHS 192, 193, 195 AND 196, WE SET FORTH THE

12  APPLICABLE CONTRACT.  AND AS TO DAMAGES, PARAGRAPH 201 WE SET

13  FORTH OUR THREE THEORIES OF DAMAGES:  BENEFIT OF THE BARGAIN,

14  DISGORGEMENT OF THE PROFITS, AND DAMAGES TO THE PRIVACY

15  INTERESTS.  NOTICEABLY, GOOGLE ONLY CHALLENGES THE BENEFIT OF

16  THE BARGAIN THEORY OF DAMAGES, MEANING THAT THEY WAIVED THE

17  OTHER THEORIES.

18       AND AS TO THE WARRANTY CLAIMS, THE SAME REPRESENTATIONS IN

19  THE BREACH OF CONTRACT CLAIMS FORM OUR BASIS FOR OUR WARRANTY

20  CLAIMS.

21       AND AS TO THE UCL CLAIMS, WE WILL STAND ON OUR PAPERS.

22  AND I DON'T THINK THERE'S ADDITIONAL ARGUMENT FOR THAT.

23       THANK YOU, YOUR HONOR.

24        THE COURT:  I DIDN'T MEAN TO CUT YOU OFF.  I JUST

25  NEEDED -- AND IT'S UNUSUAL TO HAVE TWO PEOPLE ARGUE, BUT I

1      WELCOME IT, THAT'S HOW YOU PROVIDED IT, AND SO THANK YOU.

2          I THINK THAT THE PROBLEMS I HAVE WITH THOSE CLAIMS ARE

3      READILY CORRECTABLE BY AMENDMENT, SO YOU DON'T NEED TO WORRY

4      ABOUT THAT.  I'M GLAD TO GIVE IT A SECOND LOOK, OKAY.

5              MR. JASNOCH:  THANK YOU, YOUR HONOR.

6              MS. FARAH:  THANK YOU.

7              THE COURT:  AND MS. BALI, I REALLY ONLY HAVE A FEW

8      SECONDS FOR YOU TO WRAP THINGS UP.  I'M NOT FEELING I NEED YOU

9      TO RESPOND TO ANYTHING, BUT I PROMISED YOU I WOULD LET YOU.

10             MS. BALI:  WELL, THANK YOU, YOUR HONOR.

11         I WILL BE TREMENDOUSLY BRIEF BECAUSE I CERTAINLY

12     APPRECIATE THE AMOUNT OF TIME THAT YOUR HONOR HAS DEVOTED TO

13     THIS MATTER, PARTICULARLY IN LIGHT OF ALL THE PARTICULAR

14     CIRCUMSTANCES.

15         AND I DO THINK THE MAJORITY OF THE ARGUMENTS THAT

16     PLAINTIFFS HAVE MADE ARE DISPOSED OF PRETTY READILY BY THE

17     ARGUMENTS THAT WE HAVE PUT FORTH IN OUR BRIEFING.

18         BUT JUST BRIEFLY, I WILL SAY THAT PLAINTIFF'S COMPLAINT

19     REALLY IS BASED ENTIRELY ON THIS NEWS ARTICLE.  YOU KNOW, I SEE

20     THAT THEY TRIED TO WALK THAT BACK DURING THE ARGUMENT, BUT YOU

21     KNOW, JUST REALLY, IF YOU LOOK AT THE COMPLAINT, IT ALMOST

22     PARROTS THE LANGUAGE IN THE NEWS ARTICLE.  THERE ARE NO

23     INDEPENDENT FACTS THAT ARE ALLEGED BY PLAINTIFFS THAT ARE

24     SEPARATE FROM THE ARTICLE OR THAT ARE PARTICULAR TO THESE

25     PLAINTIFFS.

```
 1          AND IT'S ACTUALLY PRETTY STARTLING TO ME THAT THEY HAVE

 2     NOT EVEN ATTEMPTED TO LOOK AT THEIR OWN ACCOUNT AND DETERMINE

 3     WHAT COMMUNICATIONS THEY THINK WERE RECORDED WITHOUT THEIR

 4     CONSENT.  SO THAT SEEMS, TO ME, THE FIRST THING YOU WOULD

 5     INTEND TO DO WHEN YOU BRING A LAWSUIT AGAINST GOOGLE BASED ON

 6     THE ASSISTANT.

 7          AND SO WITH THAT, I'M JUST LOOKING AT MY NOTES TO SEE IF I

 8     HAD ANY OTHER POINTS TO MAKE IN RESPONSE.

 9          JUST BRIEFLY ON THE SCA POINT.  THERE ARE A TON OF CASES

10     FINDING THAT PRIVATE DEVICES ARE NOT FACILITIES UNDER THE SCA.

11     AND OF COURSE GOOGLE HAS BROUGHT IMMUNITY UNDER

12     SECTION 2701(C)(1) AS A PROVIDER.  IT JUST DOESN'T MAKE ANY

13     SENSE AT ALL TO TREAT A PRIVATE DEVICE AS A FACILITY UNDER THE

14     SCA, AND THEY HAVEN'T MADE ANY ARGUMENT AS TO WHY THAT IMMUNITY

15     DOESN'T APPLY TO GOOGLE IN THIS SORT OF CASE.

16          AND JUST BRIEFLY ON THE CONTRACT POINT, THEY CITE TO

17     PARAGRAPH 193, BUT THAT INCLUDES LANGUAGE FROM A GOOGLE HELP

18     CENTER PAGE.  IT'S NOT EVEN A PART OF THE TERMS OF SERVICE OR

19     THE PRIVACY POLICY ON WHICH THEIR CLAIMS ARE BASED.

20          AND AS THE COURT NOTED EARLIER, ALL THAT LANGUAGE DOES IS

21     SAY THAT GOOGLE WILL BEGIN RECORDING WHEN IT DETECTS A HOT

22     WORD, NOT WHEN A HOT WORD IS SPOKEN, WHICH IS OBVIOUSLY THE WAY

23     A SPEECH-ENABLED DEVICE, LIKE THE ASSISTANT, FUNCTIONS.

24          SO WITH THAT, I THINK I WILL STOP AND JUST THANK

25     YOUR HONOR AGAIN FOR YOUR TIME THIS MORNING, AND WE CAN JUMP
```

1    INTO THE CASE MANAGEMENT CONFERENCE.

2            THE COURT:  AND THANK YOU.

3        I REALLY WANT TO SAY, THIS WAS DIFFICULT BRIEFING BECAUSE

4    THE COMPLAINT HAD SO MANY CLAIMS, AND IT IS A GOOD ROAD MAP FOR

5    ME TO WALK THROUGH THE COMPLAINT, AND SO I REALLY WANT TO THANK

6    YOU FOR THE BRIEFING.  YOUR ARGUMENT HAS BEEN HELPFUL TO ME

7    TODAY.

8        AND I'M SORRY I CAN'T BE A LITTLE MORE ROBUST WITH THE

9    GIVE AND TAKE, AND I DID INTERRUPT A FEW TIMES, MS. FARAH,

10   THANK YOU FOR ADDRESSING MY CONCERNS WHEN I DID INTERRUPT.

11           MS. FARAH:  THANK YOU, YOUR HONOR.

12           THE COURT:  OKAY.  LET'S TURN TO THE CASE MANAGEMENT

13   CONFERENCE.

14       LET ME TELL YOU, I'M ONLY GOING TO TRY TO GET A FEW THINGS

15   DONE ON THIS TODAY, AND HOPEFULLY THE NEXT TIME WE MEET, IT

16   WILL BE FACE-TO-FACE AND WE CAN ADDRESS MORE THINGS.

17       IN REVIEWING THE CLAIMS, AND THIS IS JUST FROM A CASE

18   MANAGEMENT STANDPOINT, I THINK A NUMBER OF ISSUES ARE GOING TO

19   BE ADDRESSED ON CLASS CERTIFICATION THAT COULDN'T BE ADDRESSED

20   NOW.

21       AND I HAVE SOME CONCERN ABOUT A MINOR SUBCLASS BECAUSE OF

22   MY CONCERN ABOUT HOW DIFFERENT EACH STATE LAW IS IN REGARD TO

23   PROTECTION OF MINORS.  IT MAY BE, AND I HAD A CASE AGAINST

24   FACEBOOK A FEW YEARS AGO WHERE IT'S ACTUALLY CALIFORNIA LAW

25   THAT WOULD APPLY BECAUSE THE CONDUCT AT ISSUE TOOK PLACE IN

1    CALIFORNIA, BUT YOU WILL CERTAINLY NEED TO TAKE A LOOK AT THAT.

2         AND SO THAT'S JUST A COMMENT OF THINGS THAT I WILL BE

3    LOOKING FOR, AND I WANT TO MAKE SURE THAT YOU DO ADDRESS THEM

4    WHEN WE GET DOWN THE ROAD.

5         YOU DO INDICATE THAT YOU MAY BE INTERESTED IN EITHER

6    PRIVATE MEDIATION OR MAGISTRATE JUDGE SETTLEMENT.  YOU HAVEN'T

7    DECIDED WHEN THAT WOULD BE.  SOMETIMES, AS THE CASE GOES ON,

8    THE PARTIES ACTUALLY WANT TO DO IT BEFORE THE EXPENSE OF CLASS

9    CERTIFICATION IS MADE.  SO I WILL NEED YOU TO LET ME KNOW ON

10   THAT.  AND YOU MAY HAVE TO TALK ABOUT THAT.

11        ANYTHING ELSE FROM CASE MANAGEMENT THAT YOU WANT ME TO

12   KNOW ABOUT BEFORE I THEN GO ON TO ASSIGN SOME SCHEDULING DATES

13   FOR YOU?

14        MS. COMITE:  YES, YOUR HONOR.

15        THIS IS MARK TODZO FOR PLAINTIFF.  SO THE JOINT CASE

16   MANAGEMENT STATEMENT WAS PRE-CORONA, AND WE ARE NOW IN THE

17   POST-CORONA, OR IN THE PRESENCE OF CORONA NOW.  AND SO I HAVE

18   BEEN COMMUNICATING WITH DEFENSE COUNSEL, AND WE THINK IT MAKES

19   SENSE TO EXTEND ALL OF THE DEADLINES THAT WE HAD PUT IN THE

20   SECTION 17, THE SCHEDULING PORTION OF THE CMC STATEMENT.

21        AND WE HAD TALKED ABOUT KICKING THOSE ALL 75 DAYS, IF THE

22   COURT IS WILLING TO ACCEPT THOSE EXTENSIONS.

23        THE COURT:  SO THAT WOULD PLACE YOUR FILING OF THE

24   CLASS CERTIFICATION MOTION IN DECEMBER OF THIS YEAR?

25        MS. COMITE:  NO, SO IT WOULD BE JANUARY 14TH, SO

1    75 DAYS.

2              THE COURT:  I'M SORRY.

3              MS. COMITE:  I CAN WALK THROUGH EACH OF THE DATES.

4         SO FOR CLASS CERT, IT WOULD BE JANUARY 14TH, 2021.  FOR

5    THE CLASS CERT MOTION, WOULD BE MARCH 8TH.  THE REPLY THEN

6    WOULD BE APRIL 12TH.  CLOSE OF FACT DISCOVERY, JULY 14TH.

7    EXPERT DISCLOSURES, AUGUST 16TH.  AND EXPERT DISCOVERY, JULY --

8    I'M SORRY, OCTOBER 13TH.

9              THE COURT:  2021?

10             MS. COMITE:  YES.  ALL OF THOSE DATES WOULD BE 2021.

11             THE COURT:  WELL, YOU KNOW, I RECOGNIZE THAT YOU

12   FILED THIS STATEMENT AND THEN WE POSTPONED THE CASE MANAGEMENT.

13   SO CERTAINLY THINGS HAVE CHANGED, WE ARE ALL STRUGGLING WITH

14   IT.

15        I HAD SPENT A LONG TIME ON DATES, AND I'M NOT INCLINED TO

16   KEEP AN ENTIRE VIRTUAL COURTROOM WAITING FOR ME TO GO BACK

17   THROUGH MY CALENDAR.  I BASICALLY SCHEDULED TRIALS

18   THROUGH 2022.  I'M TRYING TO IN-FILL.

19        WHAT I'M INCLINED -- I'M NOT SURE IF I'M WILLING TO --

20   HERE'S WHAT I WAS LOOKING AT, LET ME JUST SAY IT THIS WAY.  I

21   DON'T RESERVE DATES FOR YOUR CLASS CERTIFICATION MOTION.

22   WITHIN 14 DAYS OF FILING, YOU CAN RESERVE A DATE, AND THE FIRST

23   WEEK IN JANUARY OF 2021, YOU CAN RESERVE A DATE.  YOU WILL

24   PROBABLY GET A HEARING IN APRIL.  I WILL PROBABLY HAVE A RULING

25   FOR YOU IN JUNE.

1           AND HERE'S WHAT I -- BUT THIS IS WHERE THE CRUNCH IS GOING

2     TO COME IN, AND I THINK I'M NOT WILLING TO -- I DON'T THINK I

3     NEED TO MODIFY IT.

4           ASSUMING THOSE DATES, MR. TODZO, THAT MODIFICATION

5     STARTING WITH THE FILING OF YOUR CLASS CERTIFICATION BRIEF ON

6     JANUARY 14TH OF 2021, AND ALL THE OTHER DATES TO FLOW, WHAT I

7     DO IS I ACTUALLY SET THE HEARING DATE FOR THE LAST DAY I WILL

8     HEAR DISPOSITIVE MOTIONS, AND I WOULD SET THAT ON DECEMBER 16TH

9     OF 2021.

10          THOSE BRIEFS WOULDN'T BE DUE UNTIL THE FIRST WEEK OF

11    NOVEMBER, AND I THINK THAT WOULD BE MORE THAN ENOUGH TIME AFTER

12    YOU FILE THE CLOSING BRIEF IN APRIL, ON CLASS CERT, TO CONCLUDE

13    YOUR DISCOVERY.  I DON'T BIFURCATE DISCOVERY.

14          I RESERVE THAT HEARING DATE FOR YOU, SO YOU DON'T NEED TO

15    WORRY ABOUT MY CALENDAR BEING FULL, BUT THAT IS THE LAST DAY

16    THAT I WOULD HEAR DISPOSITIVE MOTIONS.

17          I ONLY ALLOW ONE SUMMARY JUDGEMENT IN THE LIFE OF THE CASE

18    PER SIDE.  I WOULD THEN SET YOUR TRIAL ON APRIL 11TH OF 2022.

19    I THINK THAT TWO YEARS FROM NOW IS ADEQUATE.

20          I WOULD SET YOUR FINAL PRETRIAL CONFERENCE ON MARCH 17TH

21    OF 2022 AT 1:30 IN THE AFTERNOON.

22          MR. TODZO, HOW DO THOSE DATES SOUND TO YOU?

23              MS. COMITE:  WELL, YOUR HONOR, I THINK WE CAN WORK

24     WITH THOSE.

25              THE COURT:  THANK YOU.  I REALLY APPRECIATE THAT.

1          IF YOU NEED TO MODIFY YOUR DISCOVERY CUTOFF DATES TO ALLOW

2     THAT SUMMARY JUDGEMENT BRIEFING, YOU SHOULD TAKE A LOOK AT IT.

3          AND SO MS. BALI, HOW DO YOU FEEL ABOUT THOSE DATES?

4          MS. BALI:  I THINK THAT'S WORKABLE AS WELL,

5     YOUR HONOR.

6          THE COURT:  OKAY.  THAT'S GREAT.

7     THAT'S GREAT.

8     YOU KNOW, I KIND OF -- SO MUCH HAS CHANGED SINCE YOU FILED

9     THE INITIAL CASE MANAGEMENT STATEMENT, SO I CERTAINLY RECOGNIZE

10    WE ARE ALL GROPING IN THE DARK HERE.  MR. TODZO, I APPRECIATE

11    YOU HAD WORKED OUT SOME ADDITIONAL DATES.

12    HERE'S WHAT I WOULD LIKE TO DO, MR. TODZO, I THINK WHAT

13    MAKES SENSE FOR ME IS TO ISSUE MY USUAL CASE MANAGEMENT ORDER,

14    WHICH WOULD ONLY CAPTURE THE FILING DATE FOR YOUR CLASS

15    CERTIFICATION MOTION, WHICH WOULD BE JANUARY 14TH OF 2021, AND

16    THEN THE SUMMARY JUDGEMENT DATE, THAT'S THE HEARING DATE, NOT

17    THE FILING DATE, THE PRETRIAL CONFERENCE AND TRIAL DATE, AND

18    ASK YOU TO SUBMIT A STIP AND ORDER WITH THE REMAINDER OF THE

19    DISCOVERY CUTOFF DATES, THAT WAY YOU CAN GO BACK THROUGH AND

20    MAKE SURE THAT THE REST OF THOSE DATES ARE THE WAY YOU WANT

21    THEM.

22    AND YOU CAN JUST SUBMIT A STIP AND PROPOSED ORDER TO ME.

23    AND IF YOU COULD GET THAT TO ME BY APRIL 24TH, I WOULD

24    APPRECIATE THAT.

25          MS. COMITE:  NO PROBLEM, YOUR HONOR.

1          THANK YOU VERY MUCH.

2              THE COURT:  OKAY.  WE WILL WORK TOGETHER ON THIS.

3          JUST SO YOU KNOW, I DO SEND ALL DISCOVERY DISPUTES TO THE

4     MAGISTRATE JUDGE ASSIGNED TO THE CASE.  AND IF YOU WERE TO --

5     IF YOU GET TO THE POINT WHERE YOU THINK A MAGISTRATE JUDGE

6     SETTLEMENT CONFERENCE WOULD BE USEFUL, THEN PLEASE LET ME KNOW

7     AND I WILL ASSIGN IT TO A MAGISTRATE JUDGE FOR SETTLEMENT

8     CONFERENCE.

9          IF BOTH SIDES AGREE ON A PARTICULAR MAGISTRATE JUDGE,

10    ANYWHERE IN THE DISTRICT, PLEASE LET ME KNOW, I WILL HONOR

11    THAT.  OTHERWISE I WILL ASSIGN IT, USUALLY TO THE MAGISTRATE

12    JUDGE ALREADY FAMILIAR WITH THE CASE.

13         I THINK THAT TAKES CARE OF EVERYTHING.  I WOULD ACTUALLY

14    EXPECT THAT I WILL ASK FOR SOME AMENDMENT TO THE COMPLAINT AND

15    THAT WE MAY HAVE ANOTHER ROUND OF MOTION TO DISMISS.  HOPEFULLY

16    YOU WILL BE ABLE TO BE IN MY COURTROOM TO DO THAT, BUT HARD TO

17    KNOW.

18         SO IF THERE'S NOTHING ELSE ON CASE MANAGEMENT, I THINK WE

19    ARE DONE FOR TODAY.  AND THANK YOU FOR BEING SO FLEXIBLE DOING

20    THIS ON THE PHONE, IT'S A BIG HELP TO ME.

21             MS. FARAH:  THANK YOU, YOUR HONOR.

22             MS. COMITE:  THANK YOU, YOUR HONOR.

23             MS. BALI:  THANK YOU, YOUR HONOR.

24         (THE PROCEEDINGS WERE CONCLUDED AT 10:05 A.M.)

25

1

2

3

4                   **CERTIFICATE OF REPORTER**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185            DATED: 5/17/20