Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 19-cv-04286-BLF<br><br>SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Beth L. Freeman<br>Date First Action Filed: July 25, 2019 |

Plaintiffs Asif Kumandan, Melissa Spurr, Melissa Spurr as guardian of B.S., a minor, Lourdes Galvan, and Eleeanna Galvan (collectively "Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against Defendants Alphabet Inc. and Google LLC (collectively, "Google" or "Defendants"), as follows:

## SUMMARY OF ALLEGATIONS

1.      This action arises from Google's unlawful and intentional interception and recording of individuals' confidential communications without their consent and subsequent unauthorized disclosure of those communications to third parties from approximately May 18, 2016, to the present (the "Class Period") in violation federal and state law.  Plaintiffs, on behalf of themselves and similarly situated purchasers of Google Assistant Enabled Devices (defined below) bring this suit under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq.*, Stored Communications Act ("SCA"), 18 U.S.C. §2702, *et seq.*, California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §632, intrusion upon seclusion, invasion of privacy under Art. I, Sec. 1 of the California Constitution, breach of contract, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and for declaratory and other equitable relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

2.      Google Assistant is an artificial intelligence-based virtual assistant developed by Google that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for simple tasks that Google Assistant executes.  Google preloads Google Assistant on devices it manufactures, including Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart displays, Google Nest Hub and Nest Hub Max; and its Pixel smartphones, laptops, and tablets ("Google Manufactured Devices").  Google Assistant also comes pre-installed on, or can be downloaded onto, smartphones, including those running Google's Android operating system (where the Google Assistant is pre-installed), and many other electronics manufactured by third parties (collectively, with Google Manufactured Devices, "Google Assistant Enabled Devices").  In order to use the Google Assistant feature on any Google Assistant Enabled Device, the user of the device must sign up for a Google

Account and agree to Google's Terms of Service ("TOS") and Privacy Policy.  A Google Account is linked to every Google Assistant Enabled Device.  Google Assistant Enabled Devices are sold throughout the United States at national retailers, such as Wal-Mart, Best Buy, Target, and Home Depot, as well as through Google's own online store.

3.      Federal and state privacy laws uniformly recognize individuals' reasonable expectations of privacy in confidential communications, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  Federal privacy laws prohibit unauthorized interception, access, disclosure, and use of the contents of oral and electronic communications.   California specifically recognizes privacy as a fundamental right, and accordingly, California law prohibits, among other things, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.

4.      Well aware of consumers' legitimate and reasonable expectations of privacy, Google assured, and continues to assure, its customers, like Plaintiffs and members of the Class and Subclass (defined below) (respectively, "Class Members" and "Subclass Members"), that Google Assistant Enabled Devices will only listen to, record, and share their conversations with their consent, which can be given only: (i) by uttering an activation command, like "Okay, Google" or "Hey, Google" ("hot word(s)"); or (ii) by manually pressing a button on the device.  Consequently, individuals who have purchased or used Google Assistant Enabled Devices and interacted with Google Assistant, have not consented to Google recording or disclosing conversations where "Okay, Google" or "Hey, Google" has not been uttered and no button on the device has been pressed.

5.      On July 10, 2019, unsuspecting consumers learned that, despite Google's assurances, Google has intercepted, recorded, disclosed, and misused private conversations of thousands of individuals, without consent.[1]   As reported by Belgian news outlet VRT NWS, based on whistleblower's revelations, Google collects audio recordings of Google Assistant users in numerous instances where a hot word never is spoken and uses these recordings for its own

---

[1]      Lente Van Hee, *Google employees are eavesdropping, even in your living room, VRT NWS has discovered*, VRT NWS (Jul. 10, 2019), https://www.vrt.be/vrtnws/en/2019/07/10/google-employees-are-eavesdropping-even-in-flemish-living-rooms/.    Unless otherwise indicated, all websites in this Consolidated Amended Complaint ("Complaint") were last visited on June 5, 2020.

commercial and financial benefit, namely to improve the speech recognition abilities of its Google Assistant Enabled Devices.  Worse, Google discloses these recordings to subcontractors without Google Assistant users' knowledge or consent.  Each such recording and disclosure constitutes an egregious breach of social norms and is a violation of federal and state law.

6.      The whistleblower's account, as reported in VRT NWS, is consistent with Plaintiffs' personal experience using Google Assistant Enabled Devices, which have wrongfully intercepted and recorded their private conversations without authorization and without a hot word being spoken. Examples of recordings made by Plaintiffs' Google Assistant Enabled Devices show that Google Assistant wrongfully intercepted, recorded, and transmitted to Google Plaintiffs' private conversations without authorization and without a hot word being spoken.  Further, the information gleaned from these recordings was wrongly transmitted to third parties for targeted advertising and for other purposes.

7.      To be sure, Google's violations are deliberate and calculated to lead to increased revenues for Google.  Google profits on this invasion of privacy by using the content of conversations Google admits it obtains without consent or authorization to improve the functionality of Google Assistant and to target personalized advertising to the very consumers whose privacy has been invaded.[2]  Improving the functionality of Google Assistant is necessary to allow Google to continue to compete with the increasingly crowded virtual assistant market and to buttress the price of the Google Manufactured Devices.  In short, Google intentionally, willfully, and knowingly violated Plaintiffs' and consumers' privacy rights, including within the sanctity of Plaintiffs' and consumers' own homes where they have the greatest expectation of privacy.

8.      Millions of Google Assistant Enabled Devices were sold to U.S. consumers during the Class Period.  Plaintiffs and Class Members would not have used Google Assistant with their Google Assistant Enabled Devices and would not have bought or would have paid less for the

---

[2]      Alphabet readily admits in its regulatory filings that Alphabet "generate[s] revenues primarily by delivering [advertising]."  *See* Alphabet, Annual Report (Form 10-K) (Feb. 6, 2018), https://www.sec.gov/Archives/edgar/data/1652044/000165204418000007/goog10-kq42017.htm.

Google Manufactured Devices, if they had known Google was intercepting, recording, disclosing, and otherwise misusing their conversations without consent or authorization.[3]

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class Members, and minimal diversity exists because more than two-thirds of putative Class Members are citizens of a state different than Defendants.

10.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 since this suit is brought under the following federal statutes:  Wiretap Act, 18 U.S.C. §2510, *et seq*., SCA, and 18 U.S.C. §2702.  This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claims over which the Court has original jurisdiction.

11.      This Court has general personal jurisdiction over Defendants because their principal place of business is in California.   Additionally, Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' and the Class' claims occurred in this State.

12.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District.  Furthermore, Defendants Alphabet Inc. and Google LLC are headquartered in this District and subject to personal jurisdiction in this District.

13.      **Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted

---

[3]      For convenience, Plaintiffs use variations of the phrase "intercepting, recording, disclosing, and otherwise misusing" throughout the Complaint in an effort to summarize the range of conduct that Plaintiffs allege is unlawful as set forth in the Claims for Relief below.  Use of this phrase, however, is not intended to limit the scope of any required elements set forth in each respective Claim for Relief alleged herein.

4

herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

**PARTIES**

**I.      Plaintiffs**

      **A.      Plaintiffs Spurr and B.S.**

14.     Plaintiff Melissa Spurr ("Plaintiff Spurr") is a natural person and citizen of the State of New Jersey and a resident of Union County.

15.     Plaintiff B.S. ("Plaintiff B.S.") is a minor and brings this suit by and through her legal guardian Plaintiff Spurr.  Plaintiff B.S. is a natural person and citizen of the State of New Jersey and a resident of Union County.

16.     Plaintiff Spurr owned at least three Google Home devices during the Class Period.  These Google Assistant Enabled Devices were placed at various locations within the family's residence.  One device was located in the kitchen, one was located in the living room, and one was located in the family room.  Plaintiffs Spurr and B.S., and their family members have a reasonable expectation of privacy in the areas of their home where these Google Home devices were located and which, absent Plaintiff Spurr's and her family members' consent, were, and continue to be, inaccessible to all other persons.  Plaintiff Spurr and her family, including Plaintiff B.S., frequently carry on private oral communications in the areas of their home where Google Assistant Enabled Devices are located.

17.     As described herein, Google and the Google Assistant Enabled Devices intentionally accessed Plaintiffs' oral communications without authorization and unlawfully recorded Plaintiff Spurr, Plaintiff B.S., and other family members without their consent on multiple occasions, including when they failed to utter a hot word or manually activate the Google Assistant Enabled Devices.  The unlawfully recorded oral communications that Google Assistant Devices recorded include private oral communications and interactions between Plaintiff Spurr, B.S., and their family members.

5

18.     One such example of a confidential communication that was recorded by Google without authorization took place on June 13, 2018.  On that date Google recorded a private oral communication and interaction between Plaintiff Spurr and her minor daughter Plaintiff B.S., during which the two played a game while located in the kitchen – an area of the family's home where they have a reasonable expectation of privacy and where Plaintiff Spurr frequently interacts with Plaintiff B.S.  The recording of this private oral communication between Plaintiffs Spurr and B.S. took place without their knowledge or consent, and without Plaintiffs Spurr or B.S. uttering a hot word or otherwise manually activating the listening mode of the Google Assistant Enabled Devices.

19.     Google's observation of Plaintiffs Spurr's and B.S.'s personal activities which were taking place in their home to the exclusion of all others were highly offensive to Plaintiffs Spurr and B.S. and other Class Members because it captured intimate moments between a mother and her infant child, including gestures and words of affection being communicated between them.

20.     Another example of such private oral communication which was recorded by Google without authorization took place on October 19, 2018.  On this instance, Google recorded a private phone conversation between Plaintiff Spurr with a family member.  This private oral communication and interaction between Plaintiff Spurr and a family member took place at Plaintiff Spurr's home where Plaintiffs Spurr, B.S., and their family members have a reasonable expectation of privacy and was recorded without her knowledge or consent, and without the utterance of a hot word or other manual activation of the Google Assistant Enabled Devices located in Plaintiffs Spurr's and B.S.'s home.

21.     Google Assistant's surreptitious observation of Plaintiff Spurr's personal activities, which were taking place in her home to the exclusion of all others, were highly offensive to Plaintiff Spurr because it captured private moments between her and a family member, including when gestures and words of affection were being communicated.

22.     Multiple other nonconsensual recordings were made by Google and Google Assistant Enabled Devices in Plaintiff Spurr and B.S.'s home without the utterance of a hot word or manual activation of the listening mode of Google Assistant Enabled Devices.  For example, audio

recordings demonstrate that Google Assistant misinterpreted a wide range of commonly used words or phrases, such as "peek-a-boo," "go-go," "boo-boo," and others, as the words "Ok, Google," recording Plaintiffs Spurr and/or B.S. in private moments without their consent.  As a result of these spontaneous triggers of Google Assistant's listening mode, Plaintiff Spurr is forced to monitor the Google Assistant Enabled Devices' activity and spend unnecessary time and effort to protect her privacy and the privacy of her family members.

**B.**   **Plaintiffs Galvan and E.G.**

23.    Plaintiff Lourdes Galvan ("Plaintiff Galvin") is a natural person and citizen of the State of California and a resident of Los Angeles County.

24.    Plaintiff Eleeanna Galvan ("Plaintiff E.G.") was a minor during a portion of the Class Period and brings this suit on her own.  Plaintiff E.G. is a natural person and citizen of the State of California and a resident of Los Angeles County.

25.    Plaintiff Galvan and Plaintiff E.G., who is a member of Plaintiff Galvan's household, owned a Samsung smart phone and a Galaxy Tab device during the Class Period.  Plaintiff Galvan's and Plaintiff E.G's devices contained the Google Assistant, which was activated upon purchase of the devices.  Plaintiff Galvan and Plaintiff E.G. interacted with the Google Assistant Enabled Devices in the State of California repeatedly during the Class Period.  As described above, Google and the Google Assistant Enabled Devices intentionally accessed Plaintiffs' communications without authorization and unlawfully recorded Plaintiff Galvan and Plaintiff E.G. without their consent on multiple occasions, including when they neither uttered a hot word or manually activated the Google Assistant Enabled Devices.

26.    As to Plaintiff Galvan and E.G., their Google Assistant Enabled Devices have recorded their and their family's private conversations when no hot word was spoken or even words that reasonably sounded like hot words were spoken.  In fact, Plaintiff Galvan never intentionally used the Google Assistant by uttering a hot word but was nevertheless recorded without her knowledge or consent numerous times.

27.    These conversations occurred in their home, bedroom, and car, as well as other places where she had a reasonable expectation of privacy.  Plaintiffs Galvan and E.G. charge the Google

7

Assistant Enabled Devices in the living room or dining room during the day and in the bedroom at night.

28.     One example of a confidential conversation that was surreptitiously recorded by Google was a September 17, 2018 private disciplinary conversation amongst the Galvan family concerning personal responsibility.  This confidential conversation was recorded without a hot word being uttered and without anything remotely sounding like a hot word being uttered.

29.     Several times, topics of Plaintiff Galvan's and Plaintiff E.G.'s private conversations were used to target advertisements to them.  In one such instance, Plaintiff E.G. was doing research on Los Angeles gangs and was having a conversation regarding these gangs during her parents' childhood (who both grew up in the inner city).  Following this conversation, Plaintiff E.G. received targeted advertising in the form of suggested videos by YouTube, a Google-owned company.  The video concerned an individual whose name was specifically mentioned in the conversation.  Plaintiffs Galvan and E.G. have recognized that other ads have been targeted to them following their private conversations in their home.

30.     Google Assistant's surreptitious observation of Plaintiff Galvan's and Plaintiff E.G.'s personal activities which were taking place in their home to the exclusion of all others were highly offensive to Plaintiff Galvan because it captured private moments between family and/or friends.

31.     A number of other nonconsensual recordings were made by Google and Google Assistant Enabled Devices without the utterance of a hot word or manual activation of the listening mode of Google Assistant Enabled Devices.

32.     Of the 11 recorded conversations reflected in the Google account connected to Plaintiff Galvan's smart phone, all eleven were non-consensually recorded by Google and the Google Assistant Enabled Device.

33.     After these occurrences, and others like them, Plaintiff Galvan will often completely turn off her phone prior to having certain private conversations.  Plaintiff E.G. will often leave her device at home because she does not like the idea of being tracked and listened to.  Plaintiffs Galvan

and E.G. are therefore no longer able to receive the full value of their Google Assistant Enabled Devices.

**C.** **Plaintiff Kumandan**

34.     Plaintiff Asif Kumandan ("Plaintiff Kumandan") is a natural person and citizen of the State of New York and a resident of Kings County.

35.     Plaintiff Kumandan owned a Google Pixel smartphone with Google Assistant installed during the Class Period.  Plaintiff Kumandan frequently carried his Google Pixel smartphone on his person, including to areas within his home where he has a reasonable expectation of privacy and which, absent his consent, are inaccessible to all other persons.  Plaintiff Kumandan frequently carries on private oral communications nearby his Google Pixel smartphone, such that his private oral communications can be eavesdropped and recorded by Google Assistant installed on his Google Pixel smartphone.

36.     As described herein, Google and this Google Assistant Enabled Device intentionally accessed Plaintiff Kumandan's private oral communications without authorization and unlawfully recorded Plaintiff Kumandan without his consent on multiple occasions, including when he failed to utter a hot word or manually activate the Google Assistant Enabled Device.  As described in detail below, the unlawfully recorded oral communications that the Google Assistant Device recorded included private oral communications and interactions between Plaintiff Kumandan and his family members and/or friends.

37.     One such example of a confidential private oral communication that was surreptitiously recorded by Google took place on July 6, 2019.  On that date Google recorded Plaintiff Kumandan's interaction with his family member and/or a friend which took place in privacy and to the exclusion of all other persons where Plaintiff Kumandan had a reasonable expectation of privacy.  This oral communication and interaction between Plaintiff Kumandan and his family member and/or a friend took place without their knowledge or consent, and without the utterance of a hot word or other manual activation of the listening mode of the Google Assistant Enabled Device.

38.     Another example of such confidential private oral communication that was surreptitiously recorded by Google took place on September 21, 2019.  On that date, Google recorded Plaintiff Kumandan's interaction with another person in a setting in which Plaintiff Kumandan had a reasonable expectation of privacy.  This confidential interaction between Plaintiff Kumandan and another person took place without Plaintiff Kumandan's knowledge or consent, and without the utterance of a hot word or other manual activation of the listening mode of the Google Assistant Enabled Device.

39.     Of the seven recorded conversations that Plaintiff Kumandan's Google account currently reflects, five, or **71%**, were non-consensually recorded by Google and Google Assistant Enabled Device.

**II.     Defendants**

40.     Defendant Alphabet Inc. ("Alphabet") is a Delaware corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351.  Alphabet is the successor issuer to, and parent holding company of, Google LLC.  Alphabet owns all the equity interests in Google LLC.[4]

41.     Defendant Google LLC ("Google LLC") is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**<u>SUBSTANTIVE ALLEGATIONS</u>**

**I.     Background Information On Google and Google Assistant**

42.     Google's unofficial motto always has been "don't be evil."  Google was founded in 1998 by Larry Page and Sergey Brin as a search engine website.  Today, Google achieves a

---

[4]     During the 2015 reorganization, certain of Google LLC's business segments were spun off and separated into independent entities under the ownership of Alphabet.  At various times during the Class Period, certain of the business segments re-merged with Google LLC under one corporate structure.  Accordingly, Alphabet and Google LLC both have been named as defendants in order to ensure all corporate entities who may be found liable for any portion of the alleged wrongdoing are part of this lawsuit.

1   significant portion of its profits through advertising.  To support its advertising platform, Google

2   has launched numerous products that enable Google to target personalized advertising to users.

3       43.     One of these products is Google Assistant.  Google Assistant is a computer program

4   developed by Google that is pre-installed on or can be downloaded onto Google Assistant Enabled

5   Devices.  Google Assistant is a valuable commodity which allows Google to compete with other

6   virtual assistants such as Siri (Apple) and Alexa (Amazon).  Its value is apparent in the cost of

7   Google Home products.  The sole purpose of Google Home products is to serve as a platform for

8   Google Assistant and consist of an inexpensive piece of hardware loaded with Google Assistant.

9   The value of Google Assistant may be measured by subtracting the cost of the hardware from the

10  cost of the Google Home products.

11      44.     Google Assistant is intended to provide its users with easy access to information

12  available on the internet and/or control over other internet-connected devices using their voice.  To

13  facilitate this process, Google Assistant listens for two sets of "hot words" – "Hey Google" and

14  "Okay Google."  These phrases indicate the start of a user command.

15      45.     Google Assistant Enabled Devices listen for these hot words by recording and

16  analyzing short snippets of audio from their surroundings.  This audio is stored locally in the Google

17  Assistant Enabled Device's random-access memory ("RAM").  Audio stored in a Google Assistant

18  Enabled Device's RAM is continuously overwritten as new audio is recorded and analyzed until a

19  hot word is uttered or the device is manually activated.

20      46.     When a hot word is spoken to a Google Assistant Enabled Device or is manually

21  activated by pressing a button on the device, it switches into "active listening" mode.  At this point,

22  the Google Assistant Enabled Device begins recording and transmitting audio to Google for

23  analysis.  One purpose of this analysis is to allow the Google Assistant Enabled Device to respond

24  to the user commands issued after a hot word or manual activation.  For example, if a user asks

25  Google Assistant, "Hey Google, what is the weather in Los Angeles?" the Google Assistant Enabled

26  Device will transmit that audio to Google for analysis and to provide a response.  Users can also ask

27  Google Assistant to, among other things, provide reminders ("Remind me to pick up groceries at 5

28

P.M."), set timers ("Set a timer for 20 minutes"), or control other internet-connected "smart devices" such as a thermostat, television, or music player.

47.     Google also analyzes recorded audio to improve the functionality of Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled Devices. This includes audio that is captured without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  Google therefore profits by using the content of conversations obtained without authorization or consent.

48.     There are approximately 2.3 billion Google Assistant Enabled Devices in the world. It is estimated that as of the end of 2018, Google had sold approximately 43 million Google Home devices in the United States.[5]  That number is projected to rise to 60 million in 2019.[6]  Google Pixel smartphone adoption also is on the rise with an estimated 5.3 million Pixels projected to be in use by the end of 2019.[7]  Although Google does not report its earnings by Google-manufactured hardware segment, one analyst recently estimated that Google's Pixel, Home, and Nest products would generate in 2019 approximately $12.2 billion in revenue and $4.2 billion in gross profits.[8] Google Manufactured Devices also provide Google with increased personalized advertising monetization opportunities.[9]

## II.     Users of Google Assistant Enabled Devices Reasonably Expected that Their Private Conversations Would Not Be Intercepted, Recorded, Disclosed, or Otherwise Misused

49.     Plaintiffs' and Class Members' expectation of privacy in their confidential and private communications, which Google intercepted, recorded, disclosed, or otherwise misused, is deeply enshrined in California's Constitution.  Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these

---

[5]     Bret Kinsella, *RBC Analyst Says 52 Million Google Home Devices Sold to Date and Generating $3.4 Billion in 2018 Revenue*, VOICEBOT.AI (Dec. 24, 2018), https://voicebot.ai/2018/12/24/rbc-analyst-says-52-million-google-home-devices-sold-to-date-and-generating-3-4-billion-in-2018-revenue/; Mark S.F. Mahaney, *Alphabet Inc.*, RBC CAPITAL MARKETS, at 15 (Dec. 20, 2018) ("RBC Report").

[6]     RBC Report at 15.

[7]     *Id.* at 8.

[8]     *Id.* at 4.

[9]     *Id.* at 1, 3.

are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*."  Art. I., Sec. 1, Cal. Const.  [Emphasis added].

50.     The phrase "*and privacy*" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> *The right of privacy is the right to be left alone.* It is a fundamental and compelling interest. It protects *our homes*, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose. *It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.*

> *Fundamental to our privacy is the ability to control circulation of personal information.* This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[10]

[Emphasis added].

51.     Consistent with the language of Proposition 11, a number of studies examining the collection of consumers' personal data confirms that the surreptitious taking of personal, confidential, and private information from hundreds of thousands of individuals, as Google has done here, violates expectations of privacy that have been established as general social norms.  Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.  Indeed, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of

---

[10]     Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

the data that has been collected about them.[11]  Similarly, a study published in the *Harvard Business Review* shows that consumers are largely unaware of how their personal information is used by businesses, with fewer than 20% of consumers realizing that they share their communication history, IP addresses, and web-surfing history when using a standard web browser.[12]  A recent article published by the *USA Today*, revealed that 93% of parents who use voice-activated devices say "it is important to know when their family's voices are being recorded [and an] equal number said it's important to control whatever information is collected about them."[13]  It also is simply common sense that voice-activated software like Google Assistant should only become activated when a hot word is spoken or the device is manually triggered.  Google purports to act consistently with consumer expectations by promising to obtain consent prior to recording and sharing private conversations.

52.     The expectation of privacy is heightened in one's own home, which historically is a legally protected zone of privacy.  Indeed, the passage of California's Proposition 11 evidences that voters sought to definitively ensure that a right of privacy was recognized in one's own home.  It is undeniable that Google Assistant Enabled Devices are used in the home, and some can ***only*** be used in the home.  In fact, the private communications of Plaintiffs, including Plaintiffs Spurr, Galvan, and E.G. and their families, occurred in the privacy of their homes where their Google Assistant Enabled Devices were located and where Plaintiffs had a reasonable expectation of privacy.

53.     As the name implies, Google Home devices, as well as other Google Assistant enabled smart speaker devices, necessarily are located in the home.  And, market research indicates that one-quarter of smart speakers are located in the bedroom, where there is an even greater

---

[11]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[12]     Timothy Morey, Theodore Forbath, and Allison Shoop, *Customer Data: Designing for Transparency and Trust*, HARVARD BUSINESS REVIEW (May 2015), https://hbr.org/2015/05/customer-data-designing-for-transparency-and-trust.

[13]     Edward C. Baig, *Hey, Google and Alexa: Parents worry voice assistants can listen in on kids, survey finds*, USA TODAY (Mar. 28, 2019), https://www.usatoday.com/story/tech/talkingtech/2019/03/28/parents-dont-want-smart-speakers-to-secretly-record-kids-survey/3288806002/.

expectation of privacy.[14]  Google Nest devices, which operate as a hub to control, including with Google Assistant, various household devices such as thermostats, security cameras, and door locks, also are exclusively located in the home.

54.     However, *regardless* of where a Google Assistant Enabled Device is used, Google *itself* expressly and impliedly assures Plaintiffs and Class Members that Google Assistant Enabled Devices will *only* listen to and record their private confidential communications and transmit the recordings thereof to Google if users speak a hot word or otherwise manually activate "active listening" mode.  Accordingly, in its official Privacy Policy,[15] Google denies recording users' conversations absent the utterance of a hot word.  In describing its Privacy Policy, Google provides the following answer to a Frequently Asked Question:

> **Is Google Home recording all of my conversations?**
>
> No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard. When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime. [16]

55.     Google's policies also state that the audio of recordings from Google Assistant Enabled Devices will not be shared with third parties without explicit consent.  *Id.*

56.     These assurances confirm the reasonableness of Plaintiffs' and Class Members' expectation of privacy in the context of their homes and in the presence of Google Assistant Enabled Devices *in any location*.  Based on Google's representations, Plaintiffs and Class Members did not expect that their private and confidential information would be intercepted, recorded, disclosed, or

---

[14]     Dave Chaffey, *Consumer use of voice-controlled digital assistants / smart speakers*, SMART INSIGHTS (Jan. 15, 2018), https://www.smartinsights.com/digital-marketing-strategy/consumer-use-of-voice-controlled-digital-assistants-smart-speakers/.

[15]     GOOGLE PRIVACY & TERMS, Information Google collects, https://policies.google.com/privacy#infocollect.

[16]     GOOGLE, Google Nest Help, Help Center, Your Privacy, *More about data security and privacy on devices that work with Assistant*, https://support.google.com/googlenest/answer/7072285?hl=en.

otherwise misused, including by being listened to by unauthorized third parties.  Despite Google's assurances, Google intercepted, recorded, disclosed, and otherwise misused intimate conversations, including, *inter alia*, talks between parents and children and/or confidential business phone calls, for Google's own business purposes.

**III.    Google Intentionally Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent or Authorization**

57.    On July 10, 2019, a Belgian news media outlet publicized reports made by a whistleblower – a former Google subcontractor – who revealed that "thousands of [Google's subcontractors]" are systematically listening to audio files recorded by Google Home smart speakers and the Google Assistant smartphone app from devices around the world, including audio that does not contain a hot word.[17]

58.    Based on information and belief – which Google does not dispute – when an individual interacts with Google Assistant's speech recognition feature, the software automatically generates a script of the conversation which is then stored along with the audio recording.  Google subcontractors are then tasked with analyzing whether Google Assistant has accurately interpreted the individual's speech.  To do so, Google's subcontractors log into the online tool and are presented with a list of audio files and corresponding transcripts to analyze.  According to the whistleblower, the reviewers double check that "every cough and every audible comma" is reflected in the transcript.  Based on information and belief, three independent sources confirmed this is the way Google works.[18]

59.    The whistleblower was provided with access to "more than a thousand" audio recordings which contained 153 conversations "that should never have been recorded and during which the command 'Okay Google' was clearly not given."  These recordings include "bedroom conversations, conversations between parents and their children" as well as "professional phone calls containing lots of private information."[19]  As described in detail herein, the whistleblower's

---

[17]    Van Hee, *supra* n.1

[18]    *Id*.

[19]    *Id*.

allegations are consistent with the experiences of Plaintiffs whose private communications were recorded while they took place in the privacy of their homes to the exclusion of all other persons and without the utterance of a hot word or other manual activation of the Google Assistant Enabled Devices.

60.     VRT NWS's report reveals that instead of only recording what an individual says after uttering a hot word, Google Assistant Enabled Devices record anything said that is preceded by anything that *remotely* sounds like a hot word, and that even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording.[20]  As described in detail herein, these allegations are consistent with the experiences of Plaintiffs, whose private communications were recorded after the utterance of a wide range of commonly used phrases, such as "peek-a-boo," "go go," "boo-boo," and many others that carry even lesser resemblance to any hot word.  Notably, segments of private conversations, several seconds long, are frequently recorded without the utterance of a hot word or any other random phrase that Google Assistant Enabled Devices misinterpreted for a hot word.

61.     Following these news reports, on August 1, 2019, German regulators prohibited Google from listening to any conversations utilizing the Google Assistant Software in Europe.[21] Specifically, the Hamburg Commissioner for Data Protection and Freedom of Information stated that in banning Google from listening to conversations that "those recordings could include sensitive and private information, not only from people using the device, but also from others in the same household."[22]

62.     As with the recordings Google obtains with consent, Google analyzes the recordings it obtains where no hot word has been uttered or button pushed to improve the functionality of Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled

---

[20]     *Id.*

[21]     Richard Neiva, *Google temporarily banned from listening to voice recordings in the EU*, CNET (Aug. 1, 2019), https://www.cnet.com/news/google-temporarily-banned-from-listening-to-voice-recordings-in-the-eu/.

[22]     *Id.*

Devices.  By analyzing consumers' conversations without their authorization or consent, Google is profiting from its invasion of such consumers' privacy.

63.     As described in detail herein, the allegations concerning targeted personalized advertising are consistent with the experiences of Plaintiffs, who were sent targeted advertisements following their private oral communications relating to the exact same subject matter of the advertisement, evidencing Google's conduct of disseminating Plaintiffs' private oral communications to third parties for undisclosed and unconsented purposes.

64.     Google's non-consensual recording of users' private communications is far too widespread and persistent to be dismissed as a mere error.  As described above, a significant percentage of users' private and confidential communications were and continue to be recorded in the absence of any hotword being communicated or manual activation of the Google Assistant Enabled Devices.  Indeed, 70% of Plaintiff Kumandan's conversations and 100% of Plaintiff Galvan's conversations that were recorded and stored by Google were made without their knowledge or consent.  Google has been aware of the widespread non-consensual recordings made by Google Assistant since the product was first introduced and has yet failed to do anything about it.  Google's non-consensual recordings are therefore intentional.  There is no legitimate dispute that Google's dissemination of the non-consensual recordings to its third-party contractors is intentional, as Google purposefully provides these recordings to such third-parties for analysis to improve the functionality of Google Assistant, and thereby increase the value thereof.

65.     Google therefore engaged in several unlawful actions by capturing Plaintiffs' and Class Members' communications without the utterance of a hot word or manual activation of the Google Assistant Enabled Device, and subsequently disclosing those communications without authorization.  As set forth with specificity in the Claims for Relief, Google:  (1) intentionally intercepted oral communications without consent, and subsequently disclosed to third parties and used those communications, in violation of the Wiretap Act, 28 U.S.C. §2511(1)(a), (c), (d); (2) intentionally made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers recordings of Plaintiffs' and Class Members'

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 5:19-cv-04286-BLF

communications and then knowingly divulged those communications to third parties in violation of the SCA, 18 U.S.C. §2702(a)(1); (3) intentionally recorded Plaintiffs' and Class Members' confidential communications without consent in violation of CIPA, Cal. Penal Code §632; (4) intentionally intruded into Plaintiffs' and Class Members' private conversations in violation of their privacy rights under California common law and the California Constitution; (5) breached material terms of its contract with Plaintiffs and Class Members; and (6) engaged in unfair and unlawful acts in violation of the UCL.

66.     Given the concealed and secretive nature of Google's conduct, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

**IV.     Google Has Unlawfully Violated Users' Privacy Rights for Decades**

67.     Contrary to its unofficial motto, Google *is* evil.  Google's recidivist track record as a violator of privacy rights evidences that Google is well aware that its conduct encroaches on its customers' privacy.  In recent years, Google has been investigated by dozens of countries and has paid tens of millions of dollars to U.S. federal and state regulators in penalties and settlements.

68.     For example, beginning in 2010, nine countries found Google had violated their privacy laws in connection with Google's deployment of the Street View program,[23] during which Google unlawfully collected people's email, passwords, and other personal data.  U.S. regulators also investigated Google's conduct in connection with its use of Street View.  Ultimately, 38 state attorneys general fined Google $7 million for its illegal and deceptive collection of consumers' WiFi data, while the Federal Communications Commission ("FCC") fined Google $25,000 for obstructing its investigation.

69.     Shortly thereafter, in 2011, the Federal Trade Commission ("FTC") initiated an investigation into Google's violations of its own privacy promises to consumers when it launched

---

[23]     Street View is the name for Google's web-based geographic photography program that captured 360-degree images of roads, homes, and individuals.

its social network, Google Buzz, in 2010.[24]  As part of the settlement with the FTC in 2011, Google was barred from misrepresenting the extent to which consumers could exercise control over the collection of their information.  Google, however, violated the terms of the settlement, for which it was fined $22.5 million in August 2012, representing one of the largest civil penalties the FTC has imposed for a violation of an FTC order.[25]   The very next year, Google paid $17 million to 37 U.S. states and the District of Columbia as compensation for circumventing the privacy settings of millions of users of Apple's Safari web browser between 2011 and 2012.[26]

70.    On January 21, 2019, the French administrative regulatory body, *Commission nationale de l'informatique et des libertés* ("CNIL") fined Google $57 million for, *inter alia*, lack of transparency and the lack of valid basis to process the personal data of the users of its services.[27] During its investigation, which the CNIL conducted beginning in June 2018, CNIL observed that Google failed to validly obtain consent from its users because the users' consent was not "sufficiently informed" and was not "specific" nor "unambiguous" as required pursuant to the General Data Protection Regulation, Europe's regulatory framework for data protection and privacy.[28]

71.    Most recently, on May 27, 2020, following an extensive investigation, Google was sued by the State of Arizona for deceptive and unfair business practices with respect to how it obtains location data of its users, which it then exploits to power its advertising business.  *See State*

---

[24]    *FTC Charges Deceptive Privacy Practices in Googles Rollout of Its Buzz Social Network*, FEDERAL TRADE COMMISSION (Mar. 30, 2011), https://www.ftc.gov/news-events/press-releases/2011/03/ftc-charges-deceptive-privacy-practices-googles-rollout-its-buzz.

[25]    *Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser*, FEDERAL TRADE COMMISSION (Aug. 9, 2012), https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented.

[26]    Brian Fung, *Why States are the Big Winner in the $17 Million Google-Safari Settlement*, THE WASHINGTON POST (Nov. 19, 2013), https://www.washingtonpost.com/news/the-switch/wp/2013/11/19/why-states-are-the-big-winner-in-the-17-million-google-safari-settlement/.

[27]    *The CNIL's restricted committee imposes a financial penalty of 50 Million euros against GOOGLE LLC*, CNIL (Jan. 21, 2019), https://www.cnil.fr/en/cnils-restricted-committee-imposes-financial-penalty-50-million-euros-against-google-llc.

[28]    *Id.*

*of Arizona ex rel Mark Brnovich, Attorney General v. Google LLC,* Case No. CV2020-006219 (Arizona Super. Ct. Cty. of Maricopa).

72.     Google did not spare minors from its privacy intrusions either.  For years, Google indiscriminately collected personal information from children under the age of 13 through YouTube channels directed at children without first notifying parents and getting their consent in violation of the Children's Online Privacy Protection Act ("COPPA").[29]  For this violation, Google and its subsidiary YouTube paid a record $170 million to the FTC and the N.Y. Attorney General in September 2019.[30]

## V.     Google's Unlawful Actions Have Personally Harmed Plaintiffs Who Did Not Consent to Google's Surreptitious Interception, Recording, Disclosure or Other Use

73.     Plaintiffs each owned a Google Assistant Enabled Device during the Class Period and their conversations were intercepted, recorded, disclosed, or otherwise misused by Google.

74.     At no point did any of the Plaintiffs consent to or authorize Google to intercept, record, disclose, or otherwise misuse their and their children's conversations when no hot word was spoken or button pushed.  Google does not disclose that it intercepts, records, and otherwise misuses conversations that are not preceded by a hot word or in instances where the Google Assistant Enabled Device is not manually activated.  Plaintiffs relied on Google's assurances and freely conversed and interacted with their family members and/or friends in the vicinity of Google Assistant Enabled Devices and carried on private conversations which they would not have had had they known that such conversations were being recorded by Google.  Plaintiffs, therefore, did not agree to having Google intercept, record, disclose, or otherwise misuse their conversations through their respective Google Assistant Enabled Devices.  Plaintiffs would not have purchased, or would have paid less for their Google Assistant Enabled Devices had they known that Google engaged in the unlawful actions described herein.

---

[29]     *See Federal Trade Commission et al. v. Google LLC et al.*, No. 1:19-cv-02642 (D.C.).

[30]     *Google and YouTube Will Pay Record $170 Million for Alleged Violations of Children's Privacy Law*, FEDERAL TRADE COMMISSION (Sept. 4, 2019), https://www.ftc.gov/news-events/press-releases/2019/09/google-youtube-will-pay-record-170-million-alleged-violations.

75.     Each of the Plaintiffs would like to continue to use Google Assistant Enabled Devices in the future, but will be uncertain as to whether Google has ceased its unlawful practices and violation of their privacy rights without the equitable relief requested herein, specifically an injunction prohibiting Google from engaging in the unlawful practices alleged herein.  This is particularly the case given the surreptitious nature of Google's misconduct.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

76.     The applicable statutes of limitations have been tolled by Google's knowing and active concealment and denial of the facts alleged herein, namely its practice of intercepting, recording, disclosing, and misusing users' private and confidential communications.  Plaintiffs and Class Members could not have reasonably discovered the truth about Google's practices until shortly before this class action litigation was commenced.

77.     As alleged in detail herein, Google expressly and impliedly assured consumers that Google Assistant Enabled Devices will ***only*** listen to and record their voice with the consumers' consent, by uttering a hot word or by manually pressing a button on the device to enable "active listening," and that it will not share personal information with third parties without consent. Accordingly, Google denies listening to and recording users' conversations absent the utterance of a hot word or manual activation.  Google policies likewise deny that audio recordings from Google Assistant Enabled Devices will be shared with third parties.

78.     Furthermore, Plaintiffs and Class Members also have a reasonable expectation of privacy in oral and electronic communication regardless of Google's express assurances.  This expectation is particularly heightened where, as here, such communication occurs within one's home, which is a zone of privacy uniformly recognized by state and federal privacy laws.

79.     Thus, based on Google's representations and Plaintiffs' and Class Members' expectations of privacy, Plaintiffs and Class Members would not have been able to uncover the facts underlying their claims prior to the publication of the July 10, 2019 VRT NWS article, which exposed Google's practices of intercepting, recording, and sharing with unauthorized third parties

users' private and confidential information.  This is because all relevant facts were in the possession of Google who actively concealed their existence.

### **CLASS ACTION ALLEGATIONS**

80.      Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individual purchasers of a Google Assistant Enabled Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent from at least as early as May 18, 2016 to the present, or during the applicable statute of limitations period (the "Class Period").[31]  Also within the Class is a Subclass of individual purchasers of a Google Manufactured Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent during the Class Period ("Google Manufactured Device Subclass").

81.      Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

82.      **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records, including the Google Accounts associated with each Google Assistant Enabled Device.

83.      **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.  The Class likely consists of hundreds of thousands of individuals, if not millions of individuals, and Class Members can be identified through Defendants' records.

---

[31]      Minors are members of the Class to the same extent that adult purchasers of Google Assistant Enabled Devices are, as defined herein, except minors do not constituted a distinct Subclass within the Class.  Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

84.     **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members.  Common questions for the Class include, but are not limited to, the following:

a.     Whether Google Assistant Enabled Devices intercept or record individuals' conversations absent that user uttering a hot word or otherwise activating the device;

b.     Whether individuals who use Google Assistant Enabled Devices have a reasonable expectation of privacy under federal and California law;

c.     Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information violated state and federal privacy laws;

d.     Whether Google's business practices of intercepting, accessing, listening to, recording, sharing, storing, and otherwise misusing users' private and confidential information and other personal information constitute a breach of the contract that exists with Plaintiffs and Class Members;

e.     Whether Plaintiffs and Class Members are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

f.     Whether Plaintiffs and Class Members have sustained damages as a result of Google's conduct, and, if so, what is the appropriate measure of damages or restitution.

85.     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Class.  Plaintiffs and Class Members suffered an invasion of privacy as a result of Defendants' wrongful conduct that is uniform across the Class.

86.     **Adequate Representation:** Plaintiffs have fairly and adequately represented and protected the interests of the Class and will continue to do so.  They have retained counsel competent and experienced in complex litigation and class actions, including privacy violations.  Plaintiffs have no interests that are antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf

1   of the members of the Class, and they have the resources to do so.  Neither Plaintiffs nor their

2   counsel have any interests adverse to those of the other members of the Class.

3        87.   **Substantial Benefits:** This class action is appropriate for certification because class

4   proceedings are superior to other available methods for the fair and efficient adjudication of this

5   controversy and joinder of all members of the Class is impracticable.  This proposed class action

6   presents fewer management difficulties than individual litigation, and provides the benefits of single

7   adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment

8   will create economies of time, effort, and expense and promote uniform decision-making.

9        88.   Plaintiffs reserve the right to revise the foregoing class allegations and definitions

10  based on facts learned and legal developments following additional investigation, discovery, or

11  otherwise.

12                   **CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS**

13       89.   California's substantive laws apply to every member of the Class, regardless of

14  where in the United States the Class Member resides.  Defendants' TOS states: "By using our

15  Services, you are agreeing to these terms.  Please read them carefully."

16       90.   Specifically, Defendants' TOS states under the subheading "About These Terms"

17  that: "The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any

18  disputes arising out of or relating to these terms or the Services.  All claims arising out of or relating

19  to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara

20  County, California, USA, and you and Google consent to personal jurisdiction in those courts."[32]

21       91.   By choosing California law for the resolution of disputes in the agreement, Google

22  concedes that it is appropriate for this Court to apply California law to the instant dispute.

23       92.   Further, California's substantive laws may be constitutionally applied to the claims

24  of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and

25  Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant

26

27  _____

[32]    *See* GOOGLE PRIVACY & TERMS, About these Terms,
28  https://policies.google.com/terms?hl=en-US#toc-about.

aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

93.     Defendants' U.S. headquarters and principal place of business is located in California.  Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws.  Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

94.     California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class Members.

95.     The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Wiretap Act**
**Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. §2510, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

96.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

97.     The Wiretap Act prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

98.     "Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]"  18 U.S.C. §2510(2).

99.     "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

100.     "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. §2510(8).

101.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]"  18 U.S.C. §2510(6).

102.     Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

103.     Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

104.     Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

105.     Google Assistant is a device for purposes of the Wiretap Act because it is a software program used to intercept oral communications.

106.     Plaintiffs' and Class Members' private and confidential oral communications that were intercepted in real time by Google Assistant when a hot word was not uttered or in instances where the Google Assistant Enabled Device was not manually activated are "oral communications" within the meaning of 18 U.S.C. §2510(2).

107.     Plaintiffs and Class Members reasonably expected that Google was not intercepting, recording, disclosing, or using their oral communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device based on: (i) the context in which these private oral communications occurred, namely Plaintiffs' homes and other private areas, to which access of all other persons is prohibited absent Plaintiffs' consent; (ii) a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances; (iii) Google's status as a party who was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential oral communications.

108.   Pursuant to 18 U.S.C. §2511(1)(a), Google, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with Google Assistant and Google Assistant Enabled Devices, intentionally intercepted, intercepts, or endeavored to intercept, the content of oral communications made by Plaintiffs and Class Members without obtaining actual consent from any authorized party to the oral communication.

109.   Interception of Plaintiffs' and Class Members' private and confidential oral communications without their consent occurs when the Google Assistant switches to active listening mode without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  This interception occurred during transmission, as Google Assistant operates in real time to acquire the content of Plaintiffs' and Class Members' oral communications.  The contents of the oral communications intercepted are the verbatim utterances of Plaintiffs and Class Members.

110.   Plaintiffs and Class Members could not have, and did not, provide consent to interception of their oral communications because such consent could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

111.   Pursuant to 18 U.S.C. §2511(1)(c), Google intentionally disclosed, discloses, or endeavored to disclose to third parties the contents of Plaintiffs' and Class Members' oral communications while knowing or having reason to know that the information was obtained through the interception of the oral communications in violation of 18 U.S.C. §2511(1)(a).

112.   After Google intentionally intercepts the contents of Plaintiffs' and Class Members' oral communications without their consent, the Google Assistant records and transmits the intercepted communications over the internet to Google's servers for analysis and storage.  Google then intentionally discloses these recordings of the contents of Plaintiffs' and Class Members' intercepted communications or transcripts of these recordings to third parties in order to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

113.    Pursuant to 18 U.S.C. §2511(1)(d), Google intentionally used, uses, or endeavors to use the contents of Plaintiffs' and Class Members' oral communications knowing or having reason to know that the oral communication was obtained through interception in violation of 18 U.S.C. §2511(1)(a).

114.    Google intentionally uses the contents of Plaintiffs' and Class Members' intercepted communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

115.    The practices complained of in this Count fall outside of the scope of Google's ordinary course of business because they violate Google's own policies and are in contradiction to the generally understood manner in which voice recognition software like Google Assistant is supposed to function.   As such, the surreptitious listening and recording of Plaintiffs' oral communications does not facilitate the transmission of the oral communication at issue nor is incidental to such transmission of such communication.

116.    Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

117.    Google intercepted, disclosed, and used the contents of Plaintiffs' and Class Members' oral communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Google Assistant and targeted personalized advertising to users.

118.    As a result, Plaintiffs and Class Members have suffered harm and injury due to the interception, disclosure, and/or use of private and personal, confidential, and sensitive communications.

119.    Pursuant to 18 U.S.C. §2520, Plaintiffs and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and

are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Google as a result of the violation or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**SECOND CLAIM FOR RELIEF**
**Violation of the SCA**
**Title II of the ECPA (18 U.S.C. §2702, *et seq.*)**
**(On Behalf of Plaintiffs and the Class)**

120.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

121.    Although Plaintiffs believe that they have independent claims under both the Wiretap Act and the SCA, in the event that the Court determines any of the allegations are contradictory, Plaintiffs plead in the alternative.

122.    The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]"  18 U.S.C. §2702(a)(1).

123.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]"  18 U.S.C. §2510(12).

124.    "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]"  18 U.S.C. §2510(17)(A)-(B).

125.    "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]"   18 U.S.C. §2510(15).

126.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. §2510(6).

127.    Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

128.    Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

129.    Google's subcontractors, vendors and/or third party affiliates are persons as defined under 18 U.S.C. § 2510(6).

130.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

131.    Google Assistant is a service that provides Plaintiffs and Class Members the ability to send and receive electronic communications to and from Google's servers over the internet and thus, is an "electronic communication service" within the meaning of the SCA.  Google provides an electronic communication service "to the public" because the Google Assistant is a software program that anyone within a certain proximity to a Google Assistant Enabled Device can use and because Google Assistant Enabled Devices are available for purchase and use by anyone.

132.    Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not accessing, recording, or disclosing their communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential communications.

133.    Google made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers recordings of communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated.

134.    Plaintiffs and Class Members could not have provided consent or authorization to Google to access their electronic communications because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

135.    Google's servers store Plaintiffs' and Class Members' recorded audio for a number of purposes, including for back-up purposes.  According to Google, Plaintiffs and Class Members can access this back-up audio to view it or delete it.

136.    Pursuant to 18 U.S.C. §2702(a)(1), Google knowingly divulged the contents of Plaintiffs' and Class Members' communications while they were in electronic storage when it transmitted the recorded audio and/or transcripts to third parties for analysis or other purposes, including improving the functionality of Google Assistant for Google's own financial benefit and targeting personalized advertising to users.

137.    Google knowingly divulged Plaintiffs' and Class Members' communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Google Assistant and the targeting of personalized advertising to users.

138.    Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

139.    As a result of Google's violations of the SCA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights, due to the unauthorized disclosure of private and personal, confidential, and sensitive communications.

140.    Pursuant to 18 U.S.C. §2707, Plaintiffs and Class Members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiffs and the Class and any profits made

32

by Google as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

### THIRD CLAIM FOR RELIEF
**Violation of the CIPA**
**Cal. Penal Code §632**
**(On Behalf of Plaintiffs and the Class)**

141.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

142.    Cal. Penal Code §632 prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one another or by means of a telephone, telegraph or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication.

143.    Pursuant to Cal. Penal Code §7 and §632(b), Google, as a corporation, is a "person."

144.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

145.    Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not recording them unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' confidential communications.  Google's actions would be highly offensive to a reasonable person.

146.    Google Assistant and Google Assistant Enabled Devices created recordings that were transmitted to Google of Plaintiffs' and Class Members' confidential communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated during the Class Period.  These recordings were made without Plaintiffs' consent.

147.    Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

148.    Google has publicly acknowledged that such unauthorized recording occurred during the Class Period.

149.    By recording Plaintiffs and Class Members without consent when a hot word was not uttered or the Google Assistant Enabled Device was not manually activated, Google "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to . . . record the confidential communication" in violation of California law.  Cal. Penal Code §632.

150.    Google engaged in the acts and practices complained of herein for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

151.    Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.  Google's actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

152.    As a result of Google's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

153.    Google is able, and the Court should require it, to destroy the unauthorized recordings of Plaintiffs' and the Class Members' interactions with Google Assistant Enabled Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

154.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed

consent; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code §1021.5.

**FOURTH CLAIM FOR RELIEF**
**Intrusion Upon Seclusion**
**(on Behalf of Plaintiffs and the Class)**

155.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

156.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

157.    Google's business practice of intercepting, recording, transmitting, and disclosing Plaintiffs' and Class Members' communications on the Google Assistant Enabled Devices without their consent constituted an intentional intrusion upon the Plaintiffs' and Class Members' solitude or seclusion in that Google effectively placed itself in the middle of a conversation to which it was not invited, welcomed, or authorized.

158.    Plaintiffs and Class Members did not consent to, authorize, or know about Google's intrusion at the time it occurred.  Plaintiffs and Class Members never agreed that Google Assistant would record their conversations without the utterance of a hot word or it being manually activated, whether it be via consent provided through Plaintiffs' and Class Members' Google accounts, internet service providers, or web-browsers, and never agreed that Google would disclose those recorded conversations to third parties.

159.    Google's intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.  Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not listening to, recording, disclosing, or misusing their oral communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.

35

160.    Google's intentional intrusion into Plaintiffs' and Class Members' private conversations was highly offensive to a reasonable person in that it violated federal and state criminal and civil laws designed to protect individual privacy.

161.    The surreptitious taking and disclosure of personal, confidential, and private information from hundreds of thousands of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms.  Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is harvested or shared.

162.    Google intentionally engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

163.    As a result of Google's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

164.    Unwanted access to data by electronic or other covert means, in violation of the law or social norms is actionable under California law.

165.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

166.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

**FIFTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**Art. I, Sec. 1 of the California Constitution**
**(On Behalf of Plaintiffs and the Class)**

167.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

168.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Art. I., Sec. 1, Cal. Const.

169.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

170.    The right to privacy in California's constitution creates a right of action against private and government entities.

171.    Google has intruded upon Plaintiffs' and Class Members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive and confidential information ("informational privacy"); (ii) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy"); (iii) the Wiretap Act as alleged herein; (iv) the SCA as alleged herein; (v) CIPA; and (vi) the Google TOS and Privacy Policy and other public assurances that Google does not intercept, record, disclose, and/or use people's conversations without their consent and/or without Plaintiffs' and Class Members' speaking the hot words that switch Google Assistant Enabled Devices into active listening mode.

172.    The confidential and sensitive information, which Google intercepted, recorded, transmitted, and disclosed without Plaintiffs' and Class Members' authorization and/or consent included, *inter alia*, Plaintiffs' and Class Members' bedroom conversations between parents and their children and professional phone calls.  Plaintiffs and Class Members had a legally protected informational privacy interest in the confidential and sensitive information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

173.   Plaintiffs and Class Members had a reasonable expectation of privacy in the circumstances in that:  (i) Defendants' invasion of privacy occurred during private and confidential conversations that Plaintiffs and Class Members had to the exclusion of everyone else; (ii) Plaintiffs and Class Members did not consent or otherwise authorize Google to intercept, record, disclose, or use their private information; (iii) Plaintiffs and Class Members could not reasonably expect Google would commit acts in violation of federal and state civil and criminal laws protecting privacy; (iv) Google affirmatively assured Plaintiffs and Class Members it would not listen to, record, disclose, and/or use their private communications without their consent or authorization by speaking a hot word or manually activating the Google Assistant Enabled Device into active listening mode.

174.   Google's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that:  (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for one purpose in order to serve other purposes; (ii) the invasion deprived Plaintiffs and Class Members of the ability to control circulation of personal information, which is considered fundamental to the right to privacy; and (iii) the invasion violated several federal and state criminal laws, including, *inter alia*, the Wiretap Act, the SCA, and CIPA.

175.   Google's invasion violated the privacy rights of ***at least*** hundreds of thousands of Class Members, including Plaintiffs, without their authorization or consent.  Committing criminal acts against ***at least*** hundreds of thousands of Class Members, including Plaintiffs, constituted an egregious breach of social norms.

176.   The surreptitious and unauthorized interception, recording, disclosure, and misuse of hundreds of thousands of Class Members', including Plaintiffs', personal confidential information constituted an egregious breach of social norms.

177.   Google lacked any compelling or legitimate business interest in listening to, recording, disclosing, and misusing the personal private and confidential information of ***at least***

hundreds of thousands of Class Members, including Plaintiffs, who did not consent or authorize Google's behavior.

178.    Google intentionally engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

179.    As a result of Google's actions, Plaintiffs and Class Members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

180.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

**SIXTH CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

181.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

182.    As detailed below, Plaintiffs entered into a valid contract with Google, a contract which Google breached two separate and distinct ways: (1) by recording Plaintiffs' private conversations when they are not using their Google Assistant Enabled Devices; and (2) by disclosing to third parties Plaintiffs' private conversations without their consent.

183.    Plaintiffs purchased one or more Google Assistant Enabled Devices.  Google Assistant is a computer program developed by Google that is pre-installed on numerous electronic devices, including phones, speakers, displays, cars, televisions, laptops, and tablets, manufactured by Google and other companies.  In order to use Google Assistant on any Google Assistant Enabled Device, the user must create a Google Account and agree to Google's Terms of Service ("TOS").

184.    Plaintiffs Spurr, B.S., and Kumandan and the Google Manufactured Device Subclass purchased Google Manufactured Devices.  Google Assistant is a significant, material, and important

1   component of these devices.  For example, absent Google Assistant, the Google Home purchased

2   by Plaintiff Spurr has little to no value.  The value of the Google Assistant can be measured by

3   subtracting the cost of the Google Home hardware from the cost of the Google Home device.

4       185.    By agreeing to the TOS, Plaintiffs entered into a contract with Google.  Plaintiffs

5   have fully complied with their obligations under the TOS with regard to their use of Google's

6   services.

7       186.    The TOS state that "by using our Services, you are agreeing to these terms."  The

8   TOS expressly adopt additional terms relevant to specific services as follows:

> Our Services are very diverse, so sometimes additional terms or product
> requirements (including age requirements) may apply.  Additional terms
> will be available with the relevant Services, and those additional terms
> become part of your agreement with us if you use those Services.

12      187.    Google Assistant Enabled Devices are subject to the Google Privacy Policy, which

13  is incorporated in the TOS.  The TOS incorporates and expressly refers to additional websites and

14  policies by stating:

> Google's privacy policies explain how we treat your personal data and protect
> your privacy when you use our Services. By using our Services, you agree
> that Google can use such data in accordance with our privacy policies.[33]

17      188.    Google provides a hyperlink to the Privacy Policy in its TOS.  Thus, the Privacy

18  Policy, the TOS, and the websites reference therein are all part of the contract between Plaintiffs

19  and Google.

20      189.    The Google Privacy Policy states that Google will only collect voice and audio

21  information from users when they "use audio features."  Specifically, under the "Your Activity"

22  heading of the Privacy Policy, it states that "We collect information about your activity in our

23  services, which we use to do things like recommend a YouTube video you might like.  The activity

24  information we collect may include: . . . Voice and audio information when you use audio features."

25  This promise – that Google will only collect voice and audio information when users use the audio

26  features, is the most specific promise in the Privacy Policy applicable to the voice recordings at

27  issue in this litigation and thus governs over more general terms.

28  ---

[33]      https://policies.google.com/terms?hl=en-US (last visited May 27, 2020).

190.    Google breaches this promise by collecting voice and audio information when Plaintiffs and the class are not using their Google Assistant Enabled Devices.  As set forth above, a significant number of Plaintiffs' private and confidential communications were recorded by Google when Plaintiffs were not using their Google Assistant Enabled Devices, *i.e.*, when they did not utter a hot word or manually activate the devices.  Defendants collect hundreds of thousands, if not millions, of voice and audio information without consent.  These non-consensual recordings are not the result of unavoidable errors each and every time.  Rather, they represent a substantial percentage of the overall recordings obtained by Google.

191.    Google's promise to record only when audio features are in use is bolstered and repeated in its Frequently Asked Questions applicable to the Google Assistant Enabled Devices (the "FAQs").  The FAQs are part of the terms that are specific to the Google Assistant Enabled Devices as referenced in the TOS and thus incorporated into the contract.  The FAQ that is specific to the provision in Google's Privacy Policy regarding recording audio only when audio features are in use states:

> **Is Google Home recording all of my conversations?**
> No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.  When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening. Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request.  You can delete these recordings through My Activity anytime.[34]

As described above, Google breached this promise by recording conversations by Plaintiffs and the class when no hotword is spoken and the devices are not manually activated.  Google admits that Google Assistant Enabled Devices experience "false accepts," where the device automatically begins recording conversations despite the user not using a "hotword."  Google's use of the terminology "false accept" to frame its conduct as mere errors, does not comport with its persistent non-consensual recordings of thousands if not millions of private conversations and its failure to

---

[34]    GOOGLE, *supra* n.16

1  rectify the issue.  As a result, Google Assistant Enabled Devices record users' private conversations

2  without any consent, including those of Plaintiffs, and then shares them with third parties.

3          192.    The  Google  Privacy  Policy  also  states  that  Google  does  not  share  personal

4  information with companies, organizations, or individuals outside of Google except in the following

5  cases: (1) with consent; (2) with domain administrators; (3) for external processing; and (4) for legal

6  reasons.[35]  Under the "consent" prong of the Privacy Policy, Google states:

> We'll share personal information outside of Google when we have your
> consent. For example, if you use Google Home to make a reservation through
> a booking service, we'll get your permission before sharing your name or
> phone number with the restaurant. *We'll ask for your explicit consent to share
> any sensitive personal information.*[36]

10  [Emphasis added].

11          193.    The Privacy Policy is unclear and ambiguous regarding whether explicit consent is

12  required in order for Google to share personal information obtained from its users for one of the

13  other three situations identified such as when shared for external processing.  However, Google's

14  "Commitment  to  Privacy  in  the  Home,"  which  describes  how  Google's  Privacy  Policy  is

15  implemented in the context of Google devices such as Google Assistant which are used in users'

16  private residences clarifies this ambiguity stating:

> We will only share audio recordings from your devices with third-party apps
> and services that work with our devices if you or a member of your home
> explicitly gives us permission, and we'll only ask for this permission in order
> to provide a helpful experience from an approved partner (such as a home
> security service provider).[37]

20  Therefore, Google must obtain explicit consent whenever it seeks to share audio recordings from

21  Google Assistant Enabled Devices, even when sharing them for external processing.  Here, Google

22  shares the non-consensual recordings with third-parties to improve the functionality of the Google

23  Assistant Enabled Devices.  Google's failure to obtain explicit consent thus violates the terms of its

24  Privacy Policy and contract.

25

---

26  [35]    GOOGLE PRIVACY POLICY, https://policies.google.com/privacy (October 21, 2019).

27  [36]    *Id.*

28  [37]    Google Nest Help, Your Privacy, *supra* n.16.

194.    As a result of Google's breach of the TOS and Privacy Policy, Plaintiffs have suffered damages in an amount to be determined at trial.  Specifically, the services Plaintiffs Kumandan, Spurr, B.S., and Google Manufactured Device Subclass Members received in exchange for the purchase price of Google Assistant Enabled Devices were worth less than the services they paid for because Plaintiffs' information was recorded without their consent and divulged to third parties.  Plaintiffs Kumandan and Spurr and Google Manufactured Device Subclass Members would not have purchased, or would not have paid as high a price, for the Google Assistant Enabled Devices if they had known that Google would breach the TOS and Privacy Policy by recording and revealing Plaintiffs private conversations.  Plaintiffs purchased Google Assistant Enabled Devices with privacy protections set forth in the TOS and Privacy Policy and did not receive what they paid for.

195.    In addition, or in the alternative, Plaintiffs and the Class seek damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interest.  By sharing the private audio conversations discussed herein, Google invaded Plaintiffs' privacy interests by disclosing their private conversations to third parties without Plaintiffs' consent.  As a result of Google's breach of the Privacy Policy and TOS, Plaintiffs have suffered damages.

196.    Google engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.  In sharing these unlawfully-obtained private conversations to improve the functionality of its products for its own financial benefit, Google profits from increased sales of its products and services.  Plaintiffs are entitled to disgorgement of the profits Google has obtained as a result of the improved functionality of Google Assistant resulting from its sharing of private conversations in breach of its contract with Plaintiff and Class Members.

### SEVENTH CLAIM FOR RELIEF
**Violation of the California Unfair Competition Law**
**Cal. Business & Professions Code §17200, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

197.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

198.   Google engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Google unlawfully intercepted, recorded, disclosed, and otherwise misused Plaintiffs' and Class Members' interactions without consent in violation of the Wiretap Act, SCA, California common law, California Constitution, CIPA, and Cal. Penal Code §632.  In addition, Google's breach of its privacy policy alleged above constitutes a violation of Cal. Bus. & Prof. Code §22576.   Further, Google's breaches of its contract with Plaintiffs and the Class constitutes unlawful acts under the UCL.

199.   Google also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Google failed to disclose during the Class Period that these Google Assistant Enabled Devices were intercepting, recording, disclosing and otherwise misusing Plaintiffs' and Class Members' speech without their consent.  Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided.  Defendants' conduct is unfair under each of these tests.  Google's conduct alleged is unfair under all of these tests.

200.   As described above, Google's conduct violates the policies of the statutes referenced above.  The gravity of the harm of Google's secret intercepting, recording, disclosure, and other misuse of Plaintiffs' and Class Members' communications is significant and there is no corresponding benefit to consumers of such conduct.  Finally, because Plaintiffs and Class Members were completely unaware of Google's secret recordings and disclosure, they could not have possibly avoided the harm.

201.   Had Plaintiffs known that their communications would be intercepted, recorded, disclosed, and misused, they would not have purchased a Google Assistant Enabled Device, or

would have paid less for them.  Plaintiffs and Class Members have a property interest in any recordings of their communications.  By surreptitiously intercepting, recording, disclosing, or otherwise misusing Plaintiffs' and Class Members' communications, Google has taken property from Plaintiffs and Class Members without providing just or any compensation.

202.   Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, to implement functionality sufficient to prevent unauthorized recordings in the future, to cease disclosing communications of the Class to third parties without prior consent, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; and (2) as to the Google Manufactured Device Subclass, restitution of Plaintiffs Spurr's and Kumandan's and the Google Manufactured Device Subclass Members' money and property lost as a result of Google's acts of in violation of the UCL.

**EIGHTH CLAIM FOR RELIEF**
**Request for Relief under the Declaratory Judgment Act**
**28 U.S.C. §2201,** *et seq.*
**(On Behalf of Plaintiffs and the Class)**

203.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

204.   Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

205.   An actual controversy has arisen in the wake of Defendants' intercepting, recording, disclosure, and misuse of Plaintiffs' and Class members' communications without their consent as alleged herein in violation of Defendants' common law and statutory duties.

206.   Plaintiffs continue to suffer injury and damages as described herein as Defendants continue to intercept, record, disclose, and misuse Plaintiffs' and Class Members' communications.

207.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.   Defendants continue to owe a legal duty to not intercept, record, disclose, and otherwise misuse Plaintiffs' and Class Members' confidential communications under, *inter alia*, the common law, the Wiretap Act, the SCA, CIPA, Cal. Penal Code §632, and Cal. Bus. & Prof. Code §22576;

    b.   Defendants continue to be in breach of their contract with Plaintiffs and members of the Class and Subclass;

    c.   Defendants continue to breach their legal duties and be in breach of their contract with Plaintiffs and Class Members by continuing to intercept, record, disclose, and misuse Plaintiffs' and Class Members' confidential communications; and

    d.   Defendants' ongoing breaches of their legal duty and breach of contract continue to cause Plaintiffs and Class Members harm.

208.    The Court should also issue corresponding injunctive relief, including but not limited to enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

209.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct

210.    Federal and state laws prohibit, among other things, interception, recording, disclosure, and other misuse of confidential communications without consent, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  California specifically recognizes privacy as a fundamental right.  Given that Google admits that it continues to intercept, record, disclose, and misuse confidential communications, the risk of continued

violations of federal and California law is real, immediate, and substantial.  Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

211.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued.  On the other hand, the cost to Defendants of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

212.    Issuance of the requested injunction will serve the public interest by preventing ongoing intercepting, recording, disclosure, and misuse of confidential communications without consent, thus eliminating the injuries that would result to Plaintiffs, the Class and the Subclass, and the potentially hundreds of thousands of consumers who purchased Google Assistant Enabled Devices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class and Subclass respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Class and Subclass defined above, appointing Plaintiffs as representatives of the Class and Subclass, and appointing their counsel as class counsel;

B.    Declaring that Google's actions, as set out above, violate the Wiretap Act cited herein;

C.    Declaring that Google's actions, as set out above, violate the SCA cited herein;

D.    Declaring that Google's actions, as set out above, violate California's privacy laws cited herein;

E.    Declaring that Google's actions, as set out above, constitute breach of contract;

F.    Declaring that Google's actions, as set out above, violate California's Bus. & Prof. Code cited herein;

G.      Requiring Google to delete all recordings of Members of the Class and Subclass, cease further recording, and implement functionality to prevent further recording of the Class and Subclass without prior consent, and to cease disclosing communications of the Class and Subclass to third parties without prior consent;

H.      Requiring Google to undertake measures to cure the harm caused to the Class and Subclass by its wrongdoing, as alleged herein, including, but not limited to improving its privacy disclosures and obtaining adequately informed consent;

I.      Awarding damages, including nominal and statutory damages, and restitution where applicable, to Plaintiffs and the Class and Subclass in an amount to be determined at trial;

J.      Awarding Plaintiffs and the Class and Subclass their costs of suit, including reasonable attorneys' fees and expenses;

K.      Awarding Plaintiffs and the Class and Subclass pre-and post-judgment interest, to the extent allowable;

L.      Enjoining Google from further engaging in the unlawful conduct alleged herein;

M.      Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class and Subclass; and

N.      Awarding such other and further relief as the Court deems reasonable and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  June 5, 2020                            **LEXINGTON LAW GROUP**

                                                */s/ Mark N. Todzo*
                                                Mark N. Todzo (Bar No. 168389)
                                                Eric S. Somers (Bar No. 139050)
                                                503 Divisadero Street
                                                San Francisco, CA  94117
                                                Telephone: (415) 913-7800
                                                Facsimile:  (415) 759-4112
                                                mtodzo@lexlawgroup.com

                                                Vincent Briganti (*pro hac vice*)
                                                Christian Levis (*pro hac vice*)
                                                Andrea Farah (*pro hac vice*)

48

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Stephanie A. Hackett (Bar. No. 238655)
Hal C. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
shackett@scott-scott.com
hcunningham@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone:  (205) 612-0243
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. 5:19-cv-04286-BLF