1    Bobbie J. Wilson, Bar No. 148317
     BWilson@perkinscoie.com
2    Sunita Bali, Bar No. 274108
     SBali@perkinscoie.com
3    **PERKINS COIE LLP**
     505 Howard Street, Suite 1000
4    San Francisco, CA  94105-3204
     Telephone:  415.344.7000
5    Facsimile:  415.344.7050

6    Attorneys for Defendants

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   IN RE GOOGLE ASSISTANT PRIVACY          Case No. 5:19-cv-04286-BLF
13   LITIGATION
                                             **DEFENDANT'S MOTION TO DISMISS**
14                                           **SECOND AMENDED CONSOLIDATED**
                                             **CLASS ACTION COMPLAINT**
15
                                             Date:        November 5, 2020
16                                           Time:        9:00 a.m.
                                             Dept.:       Courtroom 3, 5th Floor
17                                           Judge:       Hon. Beth Labson Freeman

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   NOTICE OF MOTION ................................................................................................................ 1

4   I.      INTRODUCTION ......................................................................................................... 2

5   II.     STATEMENT OF ISSUES ........................................................................................... 3

6   III.    REQUEST FOR JUDICIAL NOTICE ........................................................................ 3

7   IV.     BACKGROUND ........................................................................................................... 4

8           A.      Google Assistant .............................................................................................. 4

9           B.      Summary of Allegations in Plaintiffs' SAC.................................................... 4

10                  1.      Plaintiffs Spurr and B.S. ..................................................................... 5

11                  2.      Plaintiffs Galvan and E.G. .................................................................. 5

12                  3.      Plaintiff Kumandan ............................................................................. 6

13  V.      ARGUMENT ................................................................................................................ 6

14          A.      Plaintiffs Galvan, E.G., and Kumandan's Wiretap Act, CIPA, intrusion
                    upon seclusion, and invasion of privacy claims all fail because they still
15                  have not alleged that Google intercepted their private communications. .............. 6

16          B.      Plaintiffs again fail to state a claim for unlawful disclosure or use under the
                    Wiretap Act. ..................................................................................................... 11
17
            C.      Plaintiffs have not stated a claim under Section 2702(a)(1) of the SCA
18                  based on targeted advertising. ......................................................................... 13

19          D.      Plaintiffs fail to state a claim for breach of contract. ........................................ 13

20                  1.      Plaintiffs fail to clearly identify the contract that forms the basis of
                            their claim.......................................................................................... 14
21
                    2.      Plaintiffs fail to allege a breach of any contract...................................... 17
22
                    3.      Plaintiffs have not sufficiently alleged damages.................................... 19
23
24          E.      Plaintiffs fail to state a claim under the UCL..................................................... 21

25                  1.      Plaintiffs lack standing under the UCL.................................................. 21

26                  2.      Plaintiffs have not alleged that Google's conduct is "unfair."................. 22

27                  3.      Plaintiffs have not alleged that Google's conduct is "unlawful." ............ 24

28          F.      Plaintiffs' claim for a declaratory judgment should be dismissed. ...................... 24

-i-

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3    VI.    CONCLUSION ............................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. TCAM Core Prop. Fund Operating LP*,
    No. 14-01932, 2015 WL 268872 (C.D. Cal. Jan. 14, 2015) .......................................8

*Beecher v. Google N. Am. Inc.*,
    No. 18-cv-00753-BLF, 2018 WL 4904914 (N.D. Cal. Oct. 9, 2018).......................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................22

*Bilbrey by Bilbrey v. Brown*,
    738 F.2d 1462 (9th Cir. 1984).......................................24, 25

*Capp v. Cty. of San Diego*,
    940 F.3d 1046 (9th Cir. 2019).......................................12

*Cel-Tech Commc'ns, Inc. v. L.A.Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .......................................24

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018), *cert. denied,* 139 S. Ct. 640 (2018).......................................21

*Faulkner v. ADT Sec. Servs., Inc.*,
    706 F.3d 1017 (9th Cir. 2013).......................................8, 10, 11

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014).......................................24

*Hassan v. Facebook, Inc.*,
    No. 19-CV-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23, 2019) .......................................14, 15

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) .......................................7

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) .......................................23

*Huff v. Spaw*,
    794 F.3d 543 (6th Cir. 2015).......................................7

*I.B. by & through Fife v. Facebook, Inc.*,
    No. C 12-1894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013).......................................21

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................20

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

4

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)...................................................................13

5

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) .....................................................22

6

7

*In re Facebook Internet Tracking Litig.*,
   290 F. Supp. 3d 916 (N.D. Cal. 2017), *aff'd in relevant part*, 956 F.3d 589 (9th
   Cir. 2020) ................................................................................................16

8

9

*In re Google, Inc. Privacy Policy Litig.*,
   No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012)........2

10

11

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) .............................................19, 20

12

13

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................9, 11

14

*Kaar v. Wells Fargo Bank, N.A.*,
   No. 16-cv-01290 WHA, 2016 WL 3068396 (N.D. Cal. June 1, 2016) ....14

15

16

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ...............................................................................7

17

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................21

18

19

*Noel v. Hall*,
   568 F.3d 743 (9th Cir. 2009)...................................................................12

20

21

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .....................................................3

22

*Prouty v. Gores Tech. Grp.*,
   121 Cal. App. 4th 1225 (2004)................................................................18

23

24

*Reyes v. Nationstar Mortg. LLC*,
   No. 15-CV-01109-LHK, 2015 WL 4554377 (N.D. Cal. July 28, 2015) ...............25

25

26

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013)..................................................................11

27

*Satchell v. Sonic Notify, Inc.*,
   234 F. Supp. 3d 996 (N.D. Cal. 2017) ....................................................11

28

-iv-

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001)..................................................................................24

4

5

*Svenson v. Google Inc.*,
   65 F. Supp. 3d 717 (N.D. Cal. 2014) ...............................................................19, 22

6

7

*Svenson v. Google Inc.*,
   No. 13-cv-04080 BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015).....................20

8

*Tyson v. Nationstar Mortg. LLC*,
   No. 15-CV-01548-BLF, 2016 WL 39903 (N.D. Cal. Jan. 4, 2016) ........................25

9

10

*United States v. McIntyre*,
   582 F.2d 1221 (9th Cir. 1978).................................................................................7

11

*United States v. Wahchumwah*,
   710 F.3d 862 (9th Cir. 2013)...................................................................................9

12

13

**STATUTES**

14

18 U.S.C. § 2510(2) ..................................................................................................7

15

18 U.S.C. § 2702(a)(1).............................................................................................13

16

Cal. Civ. Proc. Code § 1859.....................................................................................18

17

**RULES**

18

Fed. R. Evid. 201(b)...................................................................................................3

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 5, 2020 at 9:00 a.m. or as soon thereafter as this Motion may be heard in the above-entitled court, located at 280 South First Street, San Jose, California, in Courtroom 3, Fifth Floor, defendants Alphabet Inc. and Google LLC (collectively "Google" or "Defendants"), by and through their counsel of record, will and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) for an order dismissing, with prejudice, the following claims in Plaintiffs' Second Amended Consolidated Class Action Complaint, Dkt. No. 86 ("SAC"):

(1)   Plaintiffs' first claim for violation of the Wiretap Act, 18 U.S.C. § 2510, *et seq.*, as to Plaintiffs Galvan, E.G., and Kumandan;

(2)   Plaintiffs' second claim for violation of the Stored Communications Act, 18 U.S.C. § 2702, *et seq.*, as to all Plaintiffs, to the extent it is based on targeted advertising;

(3)   Plaintiffs' third claim for violation of the California Invasion of Privacy Act, Cal. Penal Code § 632 as to Plaintiffs Galvan, E.G., and Kumandan;

(4)   Plaintiffs' fourth claim for intrusion upon seclusion as to Plaintiffs Galvan, E.G., and Kumandan;

(5)   Plaintiffs' fifth claim for invasion of privacy under Article I, Section 1 of the California Constitution as to Plaintiffs Galvan, E.G., and Kumandan;

(6)   Plaintiffs' sixth claim for breach of contract as to all Plaintiffs;

(7)   Plaintiffs' seventh claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, as to all Plaintiffs;

(8)   Plaintiffs' eighth claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, as to all Plaintiffs.

This Motion is based on this Notice, the Memorandum of Points and Authorities herein, the Request for Judicial Notice herein, the concurrently filed Declaration of Sunita Bali, the pleadings and papers on file in this action, any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

1    **I.    INTRODUCTION**

2          In the Court's order on Defendants' last motion to dismiss, the Court's directive was clear:

3    For Plaintiffs' privacy claims to proceed past the pleading stage, they must show that "[their] own

4    oral communications were intercepted," and they must allege facts "regarding the particular

5    circumstances under which [they] use[] their Google Assistant Enabled Devices," so that the

6    Court can assess whether they had a reasonable expectation of privacy in those communications.

7    Order Re Defendants' Motion to Dismiss, Dkt. No. 80 ("Order") at 11-12. Most of the Plaintiffs

8    have not come close to alleging the requisite facts. Instead, they continue to rely on allegations

9    that their conversations were "private" or "confidential," which this Court, as well as many other

10   courts in and outside of this District, have found fatally conclusory. Even the facts they do allege

11   raise more questions than answers, as Plaintiffs often leave out critical facts about the participants

12   in the conversations, the locations of the conversations, and the content of the conversations. *See*

13   Order at 12. Plaintiffs' privacy claims should be dismissed where those critical facts are not

14   alleged.

15         Plaintiffs' breach of contract claim should also be dismissed. First, Plaintiffs fail to specify

16   the contract that they contend was breached by Google. The SAC references multiple versions of

17   the Terms of Service and Privacy Policy, as well as various websites, but Plaintiffs fail to show

18   how they combine to make a contract between Plaintiffs and Google. Second, even giving

19   Plaintiffs the benefit of the doubt, they have not cited any promise that Google breached. Google

20   made no promise that the Assistant would never experience an error in hotword detection or that

21   Google would not use Assistant queries to improve the Assistant's speech recognition technology

22   (which is, ironically, the same technology that Plaintiffs claim needs improvement). Third, most

23   Plaintiffs still fail to allege a viable damages model.

24         Finally, none of the Plaintiffs have articulated any form of economic loss that would give

25   them standing to sue under the UCL, and for that reason, they have all failed to state a claim

26   under that theory. Further, Plaintiffs' UCL claim, under both their unfair and unlawful theories of

27   liability, rises and falls with the sufficiency of their allegations that the Google Assistant recorded

28   their private conversations without consent, and so is deficient as to Plaintiffs Galvan, E.G., and

-2-

Kumandan. And because their claim for relief under the Declaratory Judgment Act adds nothing to the Complaint, as it is duplicative of Plaintiffs' other claims, it should be dismissed.

Plaintiffs have had multiple opportunities to plead their claims. Where they have still failed to do so, their claims should be dismissed with prejudice.

## II.   STATEMENT OF ISSUES

1.    Have Plaintiffs stated a claim under any theory based on their allegations that the Assistant misinterpreted other words or sounds as a hotword and thus recorded Plaintiffs' communications when no hotword was spoken?

2.    Have Plaintiffs stated a claim under any theory based on their allegations that their non-consensual voice recordings were provided by Google to subcontractors to improve Google's speech recognition technology?

3.    Have Plaintiffs stated a claim under any theory based on their allegations that Google used Plaintiffs' non-consensual voice recordings to target advertisements?

## III.   REQUEST FOR JUDICIAL NOTICE

Google requests that, in deciding this Motion, the Court consider the exhibits attached to the Declaration of Sunita Bali in Support of Defendants' Motion to Dismiss Second Amended Consolidated Class Action Complaint ("Bali Decl."), filed concurrently. In considering a motion to dismiss, courts can look to materials incorporated into the complaint by reference and matters of which the court may take judicial notice. Order at 5-6; *see also In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *3 (N.D. Cal. Dec. 28, 2012). Exhibits A, B, and C are all properly considered under the incorporation by reference doctrine, as they are cited and discussed in the SAC, central to Plaintiffs' claims, and their authenticity cannot be reasonably questioned. *Id.* at *4. They are also subject to judicial notice as they appear on publicly accessible websites and are thus "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204-06 (N.D. Cal. 2014) (publicly accessible websites are proper subjects of judicial notice when ruling on a motion to dismiss). Indeed, the Court previously found Exhibit C incorporated by reference. *See* Order at 7.

1

## IV.   BACKGROUND

2

### A.   Google Assistant

3   The Google Assistant ("Assistant") is a virtual personal assistant that can help users with a

4   variety of tasks, including setting reminders, making telephone calls, answering questions,

5   looking up the weather, playing music, and getting driving directions, among other things. *See*

6   SAC ¶¶ 44, 46. It is available on a wide range of Google and third-party Google Assistant

7   Enabled Devices ("GAEDs"), including the Google Home smart speaker and the Google Pixel

8   smartphone. *See id.* ¶ 48. Users can activate the Assistant by saying a hotword ("OK Google" or

9   "Hey Google") or physically activating the device. *Id.* ¶¶ 4, 46. Once the Assistant is activated,

10   the Assistant begins recording so that it can process the user's command, and a visual cue is

11   displayed to indicate that recording is in process. *Id.* ¶ 46.

12

### B.   Summary of Allegations in Plaintiffs' SAC

13   Plaintiffs' SAC again alleges that the Assistant misidentifies other words or noises as a

14   hotword and records users' communications even when they do not utter a hotword or physically

15   activate their device. *See* SAC ¶¶ 1, 4-6. Plaintiffs further allege that Google subcontractors listen

16   to these audio recordings to improve the Assistant's speech recognition functionality and that

17   Google uses the audio recordings to target personalized advertising to users. *See id.* ¶¶ 5-6, 62.

18   Although the SAC eliminates some of the claims previously asserted in their Consolidated

19   Amended Class Action Complaint, Dkt. No. 48 ("FAC"), Plaintiffs continue to allege the

20   following claims against Google: (1) violation of the Wiretap Act, 18 U.S.C. § 2510, *et seq.*;

21   (2) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2702, *et seq.*; (3) violation

22   of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 632; (4) intrusion upon

23   seclusion under California law; (5) Invasion of Privacy under Article I, Section 1 of the California

24   Constitution; (6) breach of contract; (7) violation of the California Unfair Competition Law

25   ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (8) a request for relief under the

26   Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

27   Plaintiffs seek to represent a single class of "purchasers of a Google Assistant Enabled

28   Device . . . and members of their households, whose conversations were obtained by Google

-4-

1 without their consent or authorization and/or were shared with third parties without their consent

2 from . . . May 18, 2016 to the present . . . ." SAC ¶ 80. Plaintiffs also identify a subclass of

3 "individual purchasers of a Google Manufactured Device . . . and members of their households,

4 whose conversations were obtained by Google without their consent or authorization and/or were

5 shared with third parties without their consent during the Class Period." *Id.* They no longer

6 identify a subclass of "minor children" who were allegedly "recorded by a Google Assistant

7 Enabled Device during the Class Period." *Compare* FAC ¶ 60 *with* SAC ¶ 80.

8        Plaintiffs allege the following regarding their experiences with the Google Assistant:

9           **1.**      **Plaintiffs Spurr and B.S.**

10        Plaintiff Melissa Spurr alleges that she owned at least three Google Home devices during

11 the class period. SAC ¶ 16. Those devices were allegedly located in the kitchen, living room, and

12 family room in her family's residence. *Id.* Spurr and her family, including her minor child,

13 Plaintiff B.S., allegedly frequently carry on private conversations in the areas of their home where

14 their Home devices are located, some of which they contend were unlawfully recorded by the

15 Assistant. *Id.* ¶¶16-17. They allege, as an example, that on June 13, 2018, the Assistant recorded

16 Spurr playing a game with her infant child, B.S., in their kitchen, when neither had uttered a hot

17 word or manually activated the device. *Id.* ¶¶ 18-19. As a second example, they allege that on

18 October 19, 2018, Google recorded a private phone conversation between Plaintiff Spurr and a

19 family member, which took place in Plaintiff Spurr's home. *Id.* ¶ 20. They allege that the

20 recording happened without the utterance of a hotword or manual activation of the Home devices

21 located in Spurr's home. *Id.*

22           **2.**      **Plaintiffs Galvan and E.G.**

23        Plaintiffs Galvan and E.G. allege that they owned two mobile devices—a Samsung

24 smartphone and a Galaxy Tab—both of which included the Assistant. *Id.* ¶ 25. They allege that

25 their GAEDs recorded their private conversations when no hotword was spoken, but they do not

26 allege whether they manually activated their GAEDs in those instances (intentionally or

27 unintentionally). *See id.* ¶ 26. They further allege that these private conversations occurred in their

28 "home, bedroom, and car, as well as other places." *Id.* ¶ 27. In Plaintiffs' Galvan and E.G.'s only

1     example, they allege that on September 17, 2018, a "private disciplinary conversation amongst

2     the Galvan family concerning personal responsibility" was recorded by Google when no hotword

3     was uttered. *Id.* ¶ 28. They do not allege any facts regarding where the conversation took place,

4     the specific person(s) who participated in the conversation (Plaintiff Galvan, E.G., both, or

5     neither), or the specific person(s) whose voice was recorded. *See id*. In addition to this example,

6     Plaintiff Galvan alleges that of the 11 recorded conversations reflected in the Google account

7     associated with her smartphone, all were recorded without her consent. *Id*. ¶ 32. Finally, they

8     allege that Google used their private conversations to target advertisements to them. *Id*. ¶ 29.

9                         **3.**      **Plaintiff Kumandan**

10          Plaintiff Kumandan alleges that he owned a Google Pixel smartphone, with Google

11     Assistant installed. *Id.* ¶ 35. He asserts that he often carried his smartphone on his person and

12     brought it into areas of his home that are inaccessible to others absent his consent. *Id.* Plaintiff

13     Kumandan contends that he frequently carries on private oral communications near his

14     smartphone, and that on multiple occasions, his smartphone recorded his private communications

15     when he failed to utter a hotword or manually activate the device. *Id.* ¶ 36. As an example, he

16     alleges that on July 6, 2019, Google recorded his interaction with his "family member and/or

17     friend which took place in privacy." *Id.* ¶ 37. Plaintiff Kumandan does not allege any further

18     facts, including where the conversation took place or what the conversation was about. *Id.* He

19     alleges even less in his second example. He claims that on September 21, 2019, Google recorded

20     his "interaction with another person in a setting in which [he] had a reasonable expectation of

21     privacy." *Id.* ¶ 38. Again, he does not allege any facts regarding where the conversation took

22     place, what the conversation was about, or even who the conversation was with. *Id*. Finally,

23     Plaintiff Kumandan contends that of the seven recorded conversations in his Google account, five

24     were recorded without his consent. *Id*. ¶ 39.

25   **V.**      **ARGUMENT**

26            **A.**      **Plaintiffs Galvan, E.G., and Kumandan's Wiretap Act, CIPA, intrusion upon**

27                    **seclusion, and invasion of privacy claims all fail because they still have not alleged that Google intercepted their private communications.**

28          As the Court noted in its Order, for the alleged interception of "oral communication[s]" to

-6-

be actionable under the Wiretap Act, Plaintiffs must allege a "reasonable expectation of privacy" in those communications. Order at 11 (quoting *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978)); *see also* 18 U.S.C. § 2510(2) (defining "oral communications"). Similarly, to state a claim under CIPA Section 632, Plaintiffs must allege "confidential communications," which requires the same "reasonable expectation of privacy." Order at 28; *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117, n.7 (2006). And to state claims for intrusion upon seclusion and invasion of privacy under California law, the intrusion must likewise have occurred "under circumstances that would give rise to a reasonable expectation of privacy." Order at 31; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285, 288 (2009). Thus, to state a claim under any of these four theories, Plaintiffs must allege facts showing that they had a reasonable expectation of privacy in the in-person oral communications that their GAEDs allegedly recorded without their consent. This means that the Plaintiffs must plead facts showing that they had (1) a subjective expectation of privacy, and (2) that such expectation was objectively reasonable. *McIntyre*, 582 F.3d at 1223. The Court previously found that Plaintiffs failed to plead the necessary facts in the FAC, and dismissed Plaintiffs' Wiretap Act, CIPA, intrusion upon seclusion, and invasion of privacy claims with leave to amend. *See* Order at 12-13, 28, 31. Although Plaintiffs allege some additional facts in the SAC, Plaintiffs Galvan, E.G., and Kumandan's new allegations are woefully vague and conclusory, and still do not suffice to state a claim under any of these theories.[1]

---

[1] In this Motion, Google is not challenging the sufficiency of Plaintiffs Spurr's and B.S.'s allegations regarding the interception of their private communications. But Google expressly reserves the right to make such argument later when the record is more fully developed, as it is unreasonable for Plaintiffs to expect that a speech activated device will never activate in error. *See, e.g., Huff v. Spaw*, 794 F.3d 543, 551 (6th Cir. 2015) ("The principle that a person does not exhibit a reasonable expectation of privacy when he knew or should have known that the operation of a device might grant others access to his statements or activities is applicable in [Wiretap Act] context as well."). Moreover, Plaintiffs' own allegations belie any claim that

-7-

1    As the Court recognized in its Order, Plaintiffs must allege facts "regarding the particular

2    circumstances under which Plaintiffs used their Google Assistant Enabled Devices," such as

3    "facts regarding the participants in the conversations, the locations of the conversations, or

4    examples of content from the conversations." Order at 12. Plaintiffs have not done this. Instead,

5    they baldly assert that they had a "reasonable expectation of privacy" and that their

6    communications were "private" and "confidential." *See, e.g.*, SAC ¶¶ 16-17, 18-20, 22, 26, 27-30,

7    35-37, 38. As the Court has already found, such allegations are insufficient. Order at 12; *see also*

8    *Anderson v. TCAM Core Prop. Fund Operating LP*, No. 14-cv-01932, 2015 WL 268872, at *3

9    (C.D. Cal. Jan. 14, 2015) (dismissing invasion of privacy claim because merely alleging that the

10   defendant intruded upon a "reasonable expectation of privacy. . .amounts to a 'threadbare recital

11   of the elements of a cause of action'" (citation omitted)).

12       Even Plaintiffs' "examples" of specific "private" communications that were recorded

13   without their consent only highlight that Plaintiffs have failed to allege a reasonable expectation

14   of privacy in those communications.

15       Plaintiffs Galvan and E.G. allege that they owned two mobile GAEDs during the class

16   period—a Samsung smartphone and a Galaxy Tab tablet—both of which were equipped with the

17   Google Assistant. SAC ¶ 25. They further allege that their GAEDs "recorded their and their

18   family's private conversations when no hot word was spoken," and that such conversations

19   occurred "in their home, bedroom, and car, as well as other places." *Id.* ¶¶ 26-27. Simply referring

20   to these conversations as "private" does not suffice, and Plaintiffs' allegations fail to provide the

21   "particular circumstances" necessary to support a plausible inference that their conversations were

22   private. *See* Order at 12; *see also, e.g.*, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020

23   (9th Cir. 2013) (dismissing CIPA claim where "too little is asserted in the complaint about the

24   particular relationship between the parties, and the particular circumstances of the

25   [communication]" to infer a "reasonable expectation of confidentiality" in such communication).

26   _____

27   Google's recording was surreptitious, as GAEDs display a visual cue when recording is in

28   progress. *See* SAC ¶ 54

-8-

1    For example, their allegation that their GAEDs "recorded their and their family's private

2    conversations," SAC ¶ 26, does not make clear whether the recorded communications were

3    between Galvan, E.G. and their family members, or whether they were conversations that Galvan,

4    E.G., and other family members had with unknown third parties. And even though they allege that

5    conversations took place in their "home, bedroom, and car, as well as other places," that does not

6    conclusively establish a reasonable expectation of privacy, as the "expectation of privacy does not

7    extend to '[w]hat a person knowingly exposes to the public, even in his own home or office.'"

8    *United States v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013) (citing *Katz v. United States*,

9    389 U.S. 347, 351 (1967)). Indeed, they do not even allege whether they manually activated their

10   GAEDs—they merely claim that their communications were recorded when no hot word was

11   spoken. *See* SAC ¶¶ 26, 29, 32.

12        Plaintiffs Galvan and E.G. offer one example of an alleged "confidential conversation"

13   that was recorded by Google without their consent, but even that lacks sufficient detail. They

14   describe it as a "private disciplinary conversation amongst the Galvan family concerning personal

15   responsibility." *Id.* ¶ 28. But they fail to allege *where* the conversation took place, which could be

16   anywhere given that their GAEDs are mobile devices. *See id.* ¶ 25; *see also* Order at 12 (finding

17   the lack of detailed allegations particularly problematic for Plaintiffs Kumandan, Galvan, and

18   E.G., who allegedly interacted with smartphones because "[a]fter all, smartphones are by their

19   nature mobile and are frequently used in public places"). Plaintiffs Galvan and E.G. don't even

20   allege that they were parties to the conversation, or that their voices were recorded. *See* SAC ¶ 28;

21   *see also* Order at 11 (Plaintiffs must show that their "own oral communications were

22   intercepted") (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Nor does it move the needle

23   towards plausibility that they allege that all 11 of the conversations recorded in the Google

24   Account connected to Galvan's smartphone were "non-consensually recorded." SAC ¶ 32. Simply

25   alleging lack of consent does not suffice to state a privacy claim; "what matters more is the nature

26   of the information in which he or she alleges a privacy interest." *In re Yahoo Mail Litig.*, 7 F.

27   Supp. 3d at 1041 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal.

28   2012)). Moreover, a total of 11 non-consensual recordings hardly shows that "false accepts

-9-

1   routinely occur" (Order at 12), considering that the class period dates back to May 2016 (SAC

2   ¶ 80), and Plaintiff Galvan has likely had countless conversations in the presence of her

3   smartphone, the vast majority of which did not result in a false accept.

4        Plaintiff Kumandan fares no better. He alleges that he owned a Google Pixel smartphone

5   with the Assistant installed, and frequently carried his phone on his person, including to areas

6   within his home where he has a reasonable expectation of privacy. SAC ¶ 35. He also alleges that

7   he "frequently carries on private oral communications" near his phone. *Id.* But he does not

8   connect those allegations. In other words, he does not allege that he carried on private oral

9   communications near his phone, *while his phone was located in private areas. See id.* Thus, he

10  has failed to allege that any such oral communication occurred "under circumstances giving rise

11  to a reasonable expectation of privacy." Order at 12. And even if he had connected these

12  allegations, they would still lack sufficient factual detail to state a claim, as he does not allege

13  who those conversations were with, what they were about, or whether they occurred in the

14  presence of third parties. *See Faulkner*, 706 F.3d at 1020 (dismissing CIPA claim because "too

15  little is asserted in the complaint about the particular relationship between the parties, and the

16  particular circumstances of the call, to lead to the plausible conclusion that an objectively

17  reasonable expectation of confidentiality would have attended such a communication"). Finally,

18  Kumandan—like Galvan and E.G.—asserts that five of the seven conversations currently

19  reflected in his Google account were "non-consensually recorded." SAC ¶ 39. But again, this

20  allegation says nothing about whether any of these communications were subject to a reasonable

21  expectation of privacy. Nor does it establish that "false accepts routinely occur" (Order at 12),

22  given the innumerable conversations that Kumandan has likely had in the presence of his

23  smartphone over the class period.

24       The two examples that Kumandan offers of private communications that were allegedly

25  recorded without consent do not save his claims. He alleges that on July 6, 2019, Google recorded

26  a "private oral communication" between him and "his family member and/or a friend" which

27  "took place in privacy." SAC ¶ 37. Plaintiff Kumandan's second example is even less detailed.

28  He merely alleges that on September 21, 2019, Google recorded his "interaction with another

-10-

1   person in a setting in which Plaintiff Kumandan had a reasonable expectation of privacy." SAC ¶

2   38. Both examples are simply a bare recitation of the elements of a claim, and do not come close

3   to including sufficient detail regarding the circumstances of the conversation to plead a reasonable

4   expectation of privacy. *See* Order at 12; *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041

5   (finding allegations that plaintiffs' emails were "private" a "bare recitation of the elements of a

6   privacy claim"); *Faulkner*, 706 F.3d at 1020 (affirming grant of motion to dismiss because

7   allegation that "conversation was confidential because it was 'carried on in circumstances as may

8   reasonably indicate that any party to the communication desires it to be confidential'" was "no

9   more than a '[t]hreadbare recital[]' of the language of Section 632, precisely the kind that *Iqbal*

10  prohibits").

11        *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996 (2017), is directly on point and shows

12  that Plaintiffs allegations are insufficient. Like here, the plaintiff in *Satchell* sued defendants

13  under the Wiretap Act for intercepting her "oral communications." *Id*. at 1008. She alleged that:

14        [F]rom April 2016 until July 11, 2016, [she] carried her smartphone on her person.
          She would take her smartphone to places where she would not invite other people,
15        and to places where she would have private conversations. That is, her phone was
          present in locations and personal and private situations not generally accessible to
16        the public where the expectation was that her conversations were to remain private.

17  *Id*. The Court found that "these allegations are the types of legal conclusions couched as fact that

18  are not sufficient under *Twombly* and *Iqbal*," and dismissed the plaintiff's Wiretap Act

19  claim. *Id*. Plaintiffs Galvan, E.G., and Kumandan's allegations warrant the same result here. And

20  this time, dismissal should be with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124,

21  1133 (9th Cir. 2013) (affirming dismissal with prejudice where the court had provided specific

22  instructions to the plaintiffs on how to amend the complaint and the plaintiffs did not comply).

23        **B.      Plaintiffs again fail to state a claim for unlawful disclosure or use under the
                    Wiretap Act.**
24

25        Plaintiffs' theory that Google is liable under the Wiretap Act for disclosing and using their

26  unlawfully intercepted "oral communications" to improve the functionality of the Google

27  Assistant and target personalized advertising to users also fails. *See* SAC ¶¶ 111-14.

28        First, to hold Google liable for such disclosure or use, the original interception must have

-11-

1   been unlawful. *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009). As explained above, Plaintiffs

2   Galvan, E.G., and Kumandan still fail to allege facts sufficient to show that the original

3   interception was unlawful, and thus, as to those Plaintiffs, this claim fails as well.

4         Second, even if the Court finds that Plaintiffs have alleged an unlawful interception,

5   Plaintiffs fail to allege sufficient facts to support their allegation that Google disclosed and/or

6   used their unlawfully intercepted communications to target personalized advertising to them. *See,*

7   *e.g.*, SAC ¶¶ 6, 63, 111-114, 117. Again, Plaintiffs have not alleged any facts in the SAC showing

8   that Defendants *disclosed* Plaintiffs' communications to third parties for the purpose of targeting

9   personalized ads to them. Order at 20. Thus, to the extent Plaintiffs attempt to base their claim on

10  this theory, it should again be dismissed.

11        Third, the only specific allegations with respect to targeting advertising at all pertain to

12  Plaintiffs Galvan and E.G.; Plaintiffs do not even attempt to allege specific facts to support this

13  theory as to Plaintiffs Spurr, B.S., and Kumandan. *See id.* ¶¶14-39. Thus, at a minimum, Plaintiffs

14  Spurr, B.S., and Kumandan's claims should be dismissed. Even as to Plaintiffs Galvan and E.G.,

15  they only plead one example that only regards Plaintiff E.G. They allege that Plaintiff E.G. "was

16  doing research on Los Angeles gangs and was having a conversation regarding these gangs," and

17  "[f]ollowing this conversation, Plaintiff E.G. received targeted advertising in the form of

18  suggested videos by YouTube" which "concerned an individual whose name was specifically

19  mentioned in the conversation." *Id.* ¶ 29. These allegations are insufficient. Nowhere do they

20  allege that this conversation was intercepted by the Assistant, or that it even occurred in the

21  presence of a GAED, or that it occurred under circumstances giving rise to a reasonable

22  expectation of privacy. Moreover, Google's use of Assistant audio data to target personalized ads

23  to users is expressly permitted under Google's Privacy Policy. *See* Bali Decl. at 25 (Ex. B)

24  (stating, "[w]e use the information we collect to customize our services to you" and "[d]epending

25  on your settings, we may also show you personalized ads based on your interests"). Finally,

26  Plaintiffs allege that Plaintiff E.G. was "doing research on Los Angeles gangs," which may

27  provide an alternative explanation for the alleged targeted advertising. *See Capp v. Cty. of San*

28  *Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) ("an allegation is not plausible where there is an

-12-

1  'obvious alternative explanation'") (citation omitted). Thus, Plaintiffs' claim based on the

2  unlawful use or disclosure of the content of Plaintiffs' oral communications to target ads in

3  violation of Section 2511(c) and (d) must be dismissed.

4      **C.**    **Plaintiffs have not stated a claim under Section 2702(a)(1) of the SCA based**
                 **on targeted advertising.**

5

6        Again, to the extent this claim is based on the disclosure of Plaintiffs' private

7  communications to third parties to target personalized advertising to them, it must be dismissed.

8  As with the FAC, there are no factual allegations in the SAC showing that Google *disclosed* any

9  such information to third parties for this purpose, and Google's own use of Plaintiffs' data for this

10 purpose does not constitute an unlawful disclosure. Order at 20; *see also* 18 U.S.C. § 2702(a)(1),

11 (2) (prohibiting a provider from "divulg[ing] to any person or entity the contents of a

12 communication").

13       Despite being given the opportunity to allege more facts, Plaintiffs have not added any

14 allegations in the SAC that warrant allowing this claim to proceed on the basis of targeted ads.

15 *Compare* SAC ¶¶ 6, 63 *with* FAC ¶¶ 41, 122 (adding conclusory allegations similar to those

16 already found insufficient). As discussed above with respect to the Wiretap Act, the only factual

17 allegations related to targeted advertising concern Plaintiffs Galvan and E.G., and even those

18 allegations do not plausibly allege that Google *disclosed* any of their communications to third

19 parties for this purpose. *See* SAC ¶ 29. The other new allegations related to disclosure for

20 advertising purposes are conclusory, and speculative. *See Id.* ¶¶ 6, 63. Because Plaintiffs have not

21 remedied the flaws identified in the Order, the Court should once again dismiss this claim to the

22 extent it is based on targeted advertising, this time without leave to amend.

23     **D.**    **Plaintiffs fail to state a claim for breach of contract.**

24       To state a claim for breach of contract, Plaintiffs must allege (1) the existence of a contract

25 with Google, (2) their performance under that contract, (3) that Google breached that contract,

26 and (4) that they suffered damages. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d 589,

27 610 (9th Cir. 2020) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

28       Despite having been given the opportunity to amend their breach of contract claim to

1   address the problems identified by the Court in its Order, Plaintiffs' claim still fails for the same

2   three reasons. First, Plaintiffs fail to identify the specific contract that they contend Google has

3   breached. Second, Plaintiffs fail to plead any conduct that is in breach of any contractual terms.

4   And third, Plaintiffs fail to adequately allege that they have suffered any damages. Because

5   Plaintiffs have already tried and failed to amend their claim to allege sufficient facts, this claim

6   should be dismissed with prejudice.

7        **1.    Plaintiffs fail to clearly identify the contract that forms the basis of
              their claim.**

8

9        Plaintiffs attempt to base their breach of contract claim on the Google Terms of Service

10  ("TOS"), the Google Privacy Policy, and various websites, but have failed to "identify with

11  specificity the contractual obligations allegedly breached by the defendant." *Kaar v. Wells Fargo

12  Bank, N.A.*, No. 16-cv-01290-WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016); *accord*

13  Order at 33 (concluding specific contractual obligations must be identified). This alone is grounds

14  to dismiss this claim. *Hassan v. Facebook, Inc.*, No. 19-cv-01003-JST, 2019 WL 3302721, at *3

15  (N.D. Cal. July 23, 2019) ("Without identifying, in the complaint, the specific contractual

16  provisions alleged to have been breached, Plaintiffs have not adequately pleaded the contract.").

17       With respect to the TOS, Plaintiffs fail to clearly allege the version of the TOS they claim

18  Google has breached. Google updated its TOS effective March 31, 2020, and Plaintiffs cite this

19  version in the SAC. SAC ¶ 187, n.33; *see also id.* ¶ 90, n.32. But the language quoted by

20  Plaintiffs in the SAC is taken from the prior version of the TOS, last modified on October 25,

21  2017. *Id.* ¶¶ 186-187. Due to this inconsistency, it is unclear from the face of the SAC which

22  version of the TOS forms the basis of each Plaintiffs' claim. And this matters because the

23  provisions Plaintiffs rely on are materially different in each. Specifically, the language that

24  Plaintiffs quote to support their allegation that "[t]he TOS expressly adopt[s] additional terms

25  relevant to specific services" does not appear in the current version of the TOS. *Compare* SAC ¶

26  186 *with* Bali Decl., Ex. A. The same goes for the language that Plaintiffs quote to argue that the

27  Privacy Policy is incorporated in the TOS. *Compare* SAC ¶ 187 *with* Bali Decl., Ex. A. Plaintiffs'

28  allegations describing when Plaintiffs used Google's services offer no insight into which version

-14-

1   should apply. *See, e.g.*, SAC ¶¶ 17, 25 (alleging conversations were recorded "repeatedly during

2   the Class Period" and "on multiple occasions"). This lack of specificity is reason enough to

3   dismiss Plaintiffs' claim. *Hassan*, 2019 WL 3302721, at *3.

4         Assuming that Plaintiffs intend to plead a breach of the October 25, 2017 TOS, which

5   expressly incorporates the Privacy Policy, Plaintiffs also have not identified which version(s) of

6   the Privacy Policy underlies each Plaintiffs' claim.[2] The Privacy Policy has been revised several

7   times during the class period, and over the course of those revisions, the provisions about the

8   collection of information when users "use audio features" has evolved. Indeed, the policy did not

9   contain any specific reference to "audio information" or "use [of] audio features" until May

10   2018—two years after the start of the class period.[3] Yet the SAC treats it as a static document.

11   SAC ¶ 54 (discussing "official Privacy Policy"). Plaintiffs must clearly identify the version(s) on

12   which their claim is based, and the specific provisions therein that they claim were breached by

13   Google, to state a claim. *Hassan*, 2019 WL 3302721, at *3.

14         Plaintiffs also make a last-ditch effort to expand the scope of the parties' contract by

15   arguing that various websites are incorporated into the TOS, and that those websites contain

16   binding promises regarding how the Assistant will operate. As in the FAC, Plaintiffs contend that

17   Google's conduct is contrary to statements on two websites: (1) an FAQ on the Nest Help Center

18   ("Nest FAQ"), and (2) a blogpost entitled "Commitment to Privacy in the Home." *See* SAC ¶¶

19   191, 193. But the SAC, like the FAC, again fails to show that these websites are part of any

20   contract between the parties.

21         With regard to the Nest FAQ, Plaintiffs again allege that it is "part of the terms that are

22   _____

23   [2] Plaintiffs allege that the Privacy Policy is incorporated by reference and so forms part of the

24   TOS to which they agreed. SAC ¶¶ 185, 187. Although Google takes seriously its representations

25   in the Privacy Policy regarding how Google treats user data, there is no "exchange for a promise"

26   and thus it cannot provide the basis for a breach of contract claim under California law. *See In re*

27   *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610-11.

28   [3] *See* https://policies.google.com/privacy/archive

-15-

specific to the Google Assistant Enabled Devices as referenced in the TOS." *Id.* ¶ 191. But, this

Court already found this allegation is insufficient. Order at 34-35. This Court rejected Plaintiffs'

contention that various websites were "incorporated" into Google's TOS simply because the TOS

states that "sometimes additional terms or product requirements . . . may apply" and if so, the

"terms will be available with the relevant Services, and those additional terms become part of

your agreement with [Google] if you use those Services." *See id.* at 34. The Court concluded that

"this vague statement is hardly sufficient to establish that the particular websites cited by

Plaintiffs are part of the TOS or otherwise binding upon the parties." *Id.* at 34-35. Plaintiffs allege

no new facts regarding how the Nest FAQ is incorporated into the TOS and so fail to cure this

deficiency. *See In re Facebook Internet Tracking Litig.*, 290 F. Supp. 3d 916, 921 (N.D. Cal.

2017), *aff'd in relevant part*, 956 F.3d 589 (9th Cir. 2020) (Help Center webpages not

incorporated into contract that did "not link to them, mention them, or otherwise reference them

directly"); *Beecher v. Google N. Am. Inc.*, No. 18-cv-00753-BLF, 2018 WL 4904914, at *2 (N.D.

Cal. Oct. 9, 2018) (dismissing breach of contract claim where "the crux of the allegations turns on

alleged misrepresentations contained on Google's website, not in the Terms of Service" and

plaintiff failed to allege how the websites were incorporated into the Terms of Service). On the

contrary, the muddled allegations of the SAC further obscure Plaintiffs' claim. The language

about product-specific terms that Plaintiffs rely on in the SAC to allege the Nest FAQ is

incorporated by reference is not even in the March 31, 2020 TOS cited by Plaintiffs. SAC ¶ 187,

n.33; Bali Decl., Ex. A. Thus, Plaintiffs have not met their burden of specifically identifying

contractual provisions that were allegedly breached.

      Lacking any facts to support their contention that various websites are incorporated by

reference into the TOS, Plaintiffs now contend that the Privacy Policy is "unclear and

ambiguous." SAC ¶ 193. Plaintiffs maintain that whether a user's consent is required to share user

information in all four of the circumstances enumerated in the Privacy Policy is unclear. *Id.* As a

result, Plaintiffs contend that reference to a blogpost entitled "Commitment to Privacy in the

Home" is needed to "clarif[y] this ambiguity." *Id.* But, the Court already concluded that the

Privacy Policy explains that "with your consent" is only one of four different circumstances in

1    which Google shares user information. Order at 35 ("To establish a breach, . . . Plaintiffs must not

2    only plead that Defendants lacked consent, *but also that their conduct does not fall within the*

3    *other three circumstances*.") (emphasis added). Plaintiffs cannot manufacture ambiguity where

4    there is none. And to the extent there is any confusion as to when "explicit consent" is required, it

5    has been created by Plaintiffs, who in paraphrasing certain terms have once again "altered" them.

6    *See id.* Plaintiffs claim the phrase "explicit consent" applies to "personal information" and "audio

7    recordings," when the Privacy Policy states that Google will seek "explicit consent" only with

8    respect to "sensitive personal information." *Compare* SAC ¶ 193 *with id.* ¶ 192. "Sensitive

9    personal information" is a defined term, that includes "personal information relating to topics

10   such as confidential medical facts, racial or ethnic origins, political or religious beliefs, or

11   sexuality." Bali Decl. at 48 (Ex. B). Plaintiffs do not allege that Google improperly disclosed any

12   "sensitive personal information." SAC ¶¶ 191-196. In sum, Plaintiffs have not cured the

13   deficiency identified by the Court, and the SAC, like the FAC, fails to allege how the

14   "Commitment to Privacy in the Home" creates a contractual obligation on either party.

15            Because Plaintiffs have again failed to identify the specific contract terms they allege

16   Google breached, Plaintiffs' breach of contract claim should be dismissed with prejudice.

17                    **2.       Plaintiffs fail to allege a breach of any contract.**

18            In addition to failing to plausibly identify the contract, Plaintiffs also fail to plead a

19   breach. Plaintiffs attempt, in the SAC, to allege that Google breached "a valid contract" by (1)

20   "recording Plaintiffs' private conversations when they are not using their [GAEDs]," and (2)

21   "disclosing to third parties Plaintiffs' private conversations without their consent." *Id.* ¶ 182.

22   However, both theories are implausible based on the face of the TOS.

23            First, Plaintiffs fail to plausibly allege that a false accept is a breach of the TOS. Plaintiffs

24   contend that, under the Privacy Policy (which Plaintiffs allege is incorporated by reference into

25   the TOS via hyperlink), Google may only collect "[v]oice and audio information" from users

26   when they "use audio features," and this provision controls the analysis of Google's alleged

27

28

1   conduct because it is "specific" to the treatment of audio recordings.[4] SAC ¶¶ 187-89. For the

2   purpose of evaluating this contention, Google assumes that Plaintiffs are trying to plead a breach

3   of the October 25, 2017 TOS, since the operative version disclaims any such incorporation and

4   because the examples of false accepts pleaded by Plaintiffs allegedly occurred in 2018 and 2019,

5   when that version was in effect. *See* Bali Decl., Ex. A; SAC ¶¶ 18, 20, 28, 37-38. Even if the

6   Privacy Policy (and the version Plaintiffs cite, specifically) is properly identified and

7   incorporated, in order for a specific term to control over a general term, there must be a conflict

8   between the two. Cal. Civ. Proc. Code § 1859; *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th

9   1225, 1234-35 (2004) (specific terms control where general and specific provisions "conflict" and

10  "cannot be harmonized"). Plaintiffs have not shown a conflict between this language in the

11  Privacy Policy and any other provision of the Privacy Policy or TOS. The TOS governs the "use"

12  of Google's services, including the "use [of] audio features" referenced in the Privacy Policy.

13  SAC ¶ 186 ("by using our Services, you are agreeing to these terms"); Bali Decl., Ex. A (same).

14  And the TOS makes clear that Google's Services are provided "as is." Bali Decl. at 54 (Ex. C);

15  *see also id.* at 13 (Ex. A) (disclaiming any warranty regarding "the specific functions of

16  [Google's] services, or their reliability, availability, or ability to meet [users'] needs"). Plaintiffs

17  point to no language in the TOS or the Privacy Policy that states that the phrase "use [of] audio

18  features" is somehow a promise that the device will work perfectly every time. Indeed, the extra-

19  contractual language Plaintiffs rely on to bolster this contention shows that the Google Home

20  records when the Assistant "detects" a hotword, not when a hotword is spoken. *See* SAC ¶¶ 54,

21  191. So contrary to Plaintiffs' contention, Google did not promise that the Assistant will never

22  collect voice and audio information as a result of an error in hotword detection. Thus, there can be

23  no breach claim based on this theory.

24        Second, Plaintiffs fail to allege a disclosure that violates the term of any contract.

25  Plaintiffs' theory of breach based on disclosure rests on their contention that "Google must obtain

26  _____

27  [4] Google assumes for the purposes of evaluating this argument that Plaintiffs are trying to allege

28  that the December 19, 2019 version of the Privacy Policy applies. Bali Decl. at 23 (Ex. B).

-18-

explicit consent whenever it seeks to share audio recordings from [GAEDs], even when sharing them for external processing" or "to improve the functionality of the [GAEDs]." SAC ¶ 193. However, as the Court already found, a disclosure "for external processing" without consent *is allowed* under the terms alleged by Plaintiffs. Order at 35 (noting that, under the Privacy Policy, "external processing" and "consent" are separate circumstances under which Google may share users' personal information).

Because Plaintiffs have not pleaded facts that make their amended breach of contract claim plausible, this claim should be dismissed with prejudice.

### 3.    Plaintiffs have not sufficiently alleged damages.

Once again, Plaintiffs proffer three damages theories: (1) benefit of the bargain, (2) "harm to [Plaintiffs'] privacy interests," and (3) "disgorgement of the profits Google has obtained" as a result the breach of contract. *See* SAC ¶¶ 194-196. None of these theories is plausibly alleged.

First, Plaintiffs fail to allege that they did not receive the benefit of their bargain. Plaintiffs B.S., Galvan, and E.G. do not allege that they paid Google for anything. *See id.* ¶¶ 15-22, 24-33. Plaintiff Galvan alleges that she and Plaintiff E.G. "owned" Samsung mobile devices that contained the Google Assistant, "which was activated upon purchase of the devices," but they do not allege that they purchased the devices from or paid anything to Google. *Id.* ¶ 25. Even if Galvan and E.G. had alleged that they paid for their devices, it would not save their damages claim. The thrust of Galvan's and E.G.'s complaint is that the Google Assistant, which is a free service, malfunctions and so records and discloses their private communications, *not* that their devices have defective speakers or microphones, for example, and so fail to accurately detect their speech. *See* Order at 37 (recognizing that "the Google Assistant is available free of charge for use on [GAEDs]"); SAC ¶¶ 25-33. And Galvan and E.G. have not alleged (nor can they) that the price they paid for their Samsung GAEDs somehow included a payment to Google for the Assistant or any specific privacy features. *See* Order at 37; *see also In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting plaintiffs' benefit of the bargain theory because "the FAC fails to sufficiently allege that Plaintiffs actually provided consideration for the security services which they claim were not provided"); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724

1   (N.D. Cal. 2014) ("*Svenson I*") (finding benefit of the bargain theory insufficiently pleaded where

2   plaintiff failed to allege that any money was paid to Google for the alleged privacy protections

3   and that what was received was worth less than what was bargained for, as the services were

4   free). Likewise, Plaintiffs Kumandan and Spurr allege that they "purchased Google Manufactured

5   Devices," but fail to allege any factual detail to make the inference that they paid more for a

6   certain level of privacy protection, that they allegedly did not receive, plausible. SAC ¶ 184; *cf.*

7   *Svenson v. Google Inc.*, No. 13-cv-04080 BLF, 2015 WL 1503429, at * 4 (N.D. Cal. Apr. 1,

8   2015) ("*Svenson II*") (benefit of the bargain sufficiently pleaded where plaintiff alleged she

9   contracted to receive a payment processing app with specific privacy protections, defendant

10  received a percentage of the price of the app, but plaintiff did not receive the protections). Even

11  Plaintiff Spurr, who contends that her three Google Home devices have "little to no value"

12  "absent Google Assistant," still has not alleged that she paid for any specific privacy protective

13  features that she did not receive. *See* SAC ¶ 184; *In re LinkedIn User Privacy Litig.*, 932 F. Supp.

14  2d at 1093. What her allegations amount to is that the Assistant did not function error free; but

15  that was not the benefit that Google promised. Bali Decl., Exs. A & C.

16         Plaintiffs' second theory—harm to their privacy interests—fails because Plaintiffs Galvan,

17  E.G., and Kumandan have not adequately alleged any invasion of privacy. *See* Part V.A. *supra*;

18  *see also* Order at 12. The Court identified this deficiency in the FAC, and as discussed in detail

19  above, Plaintiffs Kumandan, Galvan, and E.G. did not add sufficient facts in the SAC to cure it.[5]

20  *See* Order at 37; *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767,

21  786 (N.D. Cal. 2019) ("Of course, a plaintiff cannot get into court by simply intoning that she

22  suffered an intangible privacy injury.").

23         Third, Plaintiffs' claim that they are entitled to disgorgement fails because they have not

24  _____

25  [5] Because, for purposes of this Motion, Google does not challenge the sufficiency of Spurr's and

26  B.S.'s allegations regarding their expectation of privacy in the communications allegedly

27  recorded, Google also does not challenge the sufficiency of their allegations regarding this theory

28  of damages. *See* Order at 37

-20-

1    alleged that their unspecified "personal information" generated any profits. The Court identified

2    this deficiency in the FAC, and Plaintiffs failed to cure it in the SAC. *See* Order at 38.

3         Because Plaintiffs' amendments still fall short of establishing how they were allegedly

4    damaged, Plaintiffs' breach of contract claim should be dismissed with prejudice.

5         **E.    Plaintiffs fail to state a claim under the UCL.**

6              **1.    Plaintiffs lack standing under the UCL.**

7         To establish the requisite economic injury to support standing under the UCL, Plaintiffs

8    first attempt to plead an "overpayment" theory of economic loss. *See Kwikset Corp. v. Super. Ct.*,

9    51 Cal. 4th 310, 323 (2011) (UCL standing requires the plaintiff to have lost money or property).

10   But Plaintiffs fail to show that they have overpaid.

11        First, Plaintiffs have not (and cannot) allege that they paid any money for the Assistant.

12   *See* Order at 37 (recognizing that "the Google Assistant is available free of charge for use on

13   [GAEDs]"). Nor have Plaintiffs alleged that they paid a premium for an Assistant that would

14   never experience an error, since Google made no commitment about the reliability of the

15   Assistant and instead provided it "as is." Bali Decl. at 54 (Ex. C). To the extent Plaintiffs' theory

16   is premised on purported representations that the Assistant would operate error free, it fails: there

17   are no such representations, which explains why they have not even attempted to assert a claim

18   under the fraudulent prong of the UCL. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965

19   (9th Cir. 2018) (UCL claims based on fraud must allege representation and reliance with

20   specificity), *cert. denied,* 139 S. Ct. 640 (2018); *see also* Order at 49.

21        Second, Plaintiffs have not sufficiently alleged that they overpaid for a GAED. Plaintiffs

22   B.S., Galvan, and E.G. are not alleged to have made any purchase, only to have interacted with

23   various devices. *See* Order at 45; *see also I.B. by & through Fife v. Facebook, Inc.*, No. C 12-

24   1894 CW, 2013 WL 6734239, at *6 (N.D. Cal. Dec. 20, 2013). Plaintiffs Galvan and E.G. allege

25   that they "owned" two Samsung devices which "contained" the Assistant but do not state that

26   they paid anything to Google for the device, let alone a premium for the device because of the

27   Assistant or any privacy features therein. *See* SAC ¶¶ 25, 201; *see also* Order at 45. Plaintiffs

28   contend generally that they "would not have purchased a Google Assistant Enabled Device, or

-21-

1   would have paid less" if they had known about Google's alleged conduct (SAC ¶ 201), but absent

2   any further factual detail explaining how Plaintiffs suffered an economic loss from a service they

3   paid nothing for, this is nothing more than an inadequate legal conclusion. *Bell Atl. Corp. v.*

4   *Twombly*, 550 U.S. 544, 555 (2007). At most, Plaintiffs Kumandan and Spurr allege that they

5   "purchased" a GAED, but they fail to plausibly allege that they *over*paid for their devices. Neither

6   Kumandan nor Spurr allege, for example, that they paid a premium to Google for these devices in

7   order for the Assistant to function at a certain rate of reliability or with certain privacy protective

8   features. *See Svenson I*, 65 F. Supp. 3d at 730, 724 (allegations of economic injury in UCL claim

9   were "insufficient because they do not show that Plaintiff paid anything for the asserted privacy

10  protections"). And so, like the FAC, the SAC fails to establish that Plaintiffs suffered the

11  economic loss necessary to bring a claim under the UCL. *See* Order at 45.

12      Plaintiffs proffer another theory of economic loss: that they have a "property interest in

13  any recordings of their communications," that Google has not provided them with compensation

14  for allegedly recording or disclosing these communications, and that they are therefore entitled to

15  restitution. SAC ¶¶ 201-02. However, this too is insufficiently pleaded. Plaintiffs have failed to

16  allege that their voice recordings have any value, and even if they do, Plaintiffs have failed to

17  "connect this value to a realistic economic harm or loss that is attributable to [Google's] alleged

18  conduct." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 931 (N.D. Cal. 2015).

19  For example, Plaintiffs have not shown that they "personally lost the opportunity to sell their

20  information or that the value of their information was somehow diminished." *Id*. at 931-32.

21  Moreover, Plaintiffs' failure to plead that they are entitled to any money earned from the

22  "property interest in any recordings of their communications" is fatal to the UCL claim pled in the

23  SAC, which, like the claim in the FAC, seeks restitution. *See* Order at 46-47.

24          **2.      Plaintiffs have not alleged that Google's conduct is "unfair."**

25      In the SAC, Plaintiffs again contend that Google has engaged in "unfair" conduct

26  prohibited by the UCL. California courts have developed at least two possible tests for

27  "unfairness": one that "tether[s]" the conduct to "specific constitutional, statutory, or regulatory

28  provisions," and another that balances the benefit of the conduct against the gravity of the alleged

-22-

harm. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013) (citations omitted) (noting that balancing test is articulated different ways); *see also* SAC ¶ 199 (alleging two tests that balance the benefit against the harm); Order at 51. Plaintiffs' amended claims are still inadequate under both tests.[6]

The first test requires Plaintiffs to allege that Google's alleged conduct violated a public policy that is "tethered to specific constitutional, regulatory or statutory provisions." *Herskowitz*, 940 F. Supp. 2d at 1145 (citations omitted). To the extent Plaintiffs Kumandan, Galvan, and E.G. rely on their other failed claims to establish unfairness, their "unfair" claim fails for the reasons discussed above. *See id.* at 1146 (because plaintiffs did not allege violation of underlying statute, "the Court similarly finds that [plaintiff] has not alleged [an unfair claim] that is tethered to any statutory provision").

The second test "examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* at 1145-46 (citations omitted). Plaintiffs admit that the Assistant provides a substantial benefit to consumers. *See* SAC ¶¶ 2, 43, 44, 46. Plaintiffs further concede that they took advantage of these benefits and wish to continue doing so. *Id.* ¶¶ 16, 25, 35, 75. Moreover, as discussed above, Plaintiffs Kumandan, Galvan, and E.G. have not plausibly alleged that they had an expectation of privacy in the conversations they allege were recorded. As such, these Plaintiffs have not adequately pleaded any "harm to the alleged victim" under the balancing test. *Herskowitz*, 940 F. Supp. 2d at 1146 (citations omitted); *accord* Order at 52. Because the SAC suffers from the same deficiencies as the FAC, Plaintiffs Kumandan's, Galvan's, and E.G.'s claims for unfair conduct under the UCL should be dismissed with prejudice.

---

[6] Because, for purposes of this Motion, Google does not challenge the sufficiency of Spurr's and B.S.'s allegations regarding their expectation of privacy in the communications allegedly recorded, Google also does not challenge the sufficiency of their UCL claim for unfair conduct. *See* Order at 51-52.

-23-

1

            **3.**      **Plaintiffs have not alleged that Google's conduct is "unlawful."**

2

       The UCL's unlawful-prong "borrows violations of other laws and treats them as unlawful

3

practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns,*

4

*Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citations omitted). Accordingly, if

5

there is no violation of the predicate law, there can be no actionable claim under the UCL's

6

"unlawful" prong. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). To

7

the extent this claim is premised on any of Plaintiffs Kumandan's, Galvan's, and E.G.'s claims

8

other than an alleged violation of Section 2702(a) of the SCA—which is based only on Google's

9

alleged disclosure of Plaintiffs' false accepts to third parties for the purpose of improving the

10

functionality of the Assistant—all of those claims fail and so their "unlawful" UCL claim

11

predicated on those claims fails as well.[7]

12

      **F.**      **Plaintiffs' claim for a declaratory judgment should be dismissed.**

13

       Plaintiffs seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*[8] But

14

the Declaratory Judgment Act does not establish a theory of recovery; it merely offers an

15

additional remedy to litigants. *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal.

16

2014). Declaratory relief is appropriate when (1) "the judgment will serve a useful purpose in

17

clarifying and settling the legal relations in issue," and (2) "it will terminate and afford relief from

18

the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v.*

19

*Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (citations omitted). Courts in this district have found

20

that these criteria are *not* met when other causes of action will provide adequate relief and

21

               ―――――――――――――――

22

[7] As in the FAC, Plaintiffs contend that Google's alleged breach of its Privacy Policy is also a

23

violation of California Business and Professions Code § 22576. Because Plaintiffs' breach of

24

contract claim fails, Plaintiffs' UCL claim predicated on § 22576 fails as well. *See* Order at 48.

25

[8] In the Order, the Court mistakenly found that Google did not move to dismiss Plaintiffs' Count

26

12 for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*,

27

and thus allowed this claim to proceed. Order at 52. Google, however, did move to dismiss this

28

claim, and now does so again. *See* Motion to Dismiss FAC, Dkt. No. 56 at 25, n.5

-24-

1   resolution. *See, e.g.*, *Tyson v. Nationstar Mortg. LLC*, No. 15-cv-01548-BLF, 2016 WL 39903, at

2   *5 (N.D. Cal. Jan. 4, 2016) (dismissing claim for declaratory relief as unnecessary where

3   "Plaintiffs' declaratory relief claim is duplicative of their TILA rescission claim"); *Reyes v.*

4   *Nationstar Mortg. LLC*, No. 15-cv-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28,

5   2015) ("[D]eclaratory relief is unnecessary where an adequate remedy exists under some other

6   cause of action.") (citations omitted); *see also Flores*, 997 F. Supp. 2d at 1112 ("[D]eclaratory

7   relief does not serve to furnish a litigant with a second cause of action for the determination of

8   identical issues.") (citations omitted).

9          Here, Plaintiffs seek a declaration based on Defendants' "continued" legal duties under

10   common law, the Wiretap Act, CIPA, Penal Code § 632, the SCA, Business and Professions Code

11   § 22576, and "their contract with Plaintiffs." SAC ¶ 207. Plaintiffs contend that Defendants

12   alleged "ongoing breaches of their legal duty and breach of contract continue to cause . . . harm."

13   *Id.* This claim is entirely redundant of Plaintiffs' other claims, and whether Defendants conduct is

14   in fact a "breach [of] their legal duties" or a "breach of their contract with Plaintiffs and Class

15   Members," *id.* ¶ 207, will be resolved by those other claims. *See Tyson*, 2016 WL 39903, at *5.

16   Furthermore, Plaintiffs seek an injunction in connection with their UCL claim, making the

17   injunctive relief that they seek under § 2201 redundant as well. Thus, Plaintiffs' claim under

18   § 2201 is unnecessary and serves no "useful purpose in clarifying and settling the legal relations

19   in issue." *Bilbrey*, 738 F.2d at 1470. It should be dismissed.

20   **VI.    CONCLUSION**

21          For the foregoing reasons, Defendants respectfully request that the Court dismiss with

22   prejudice all claims asserted in the SAC on behalf of Plaintiffs Galvan, E.G., and Kumandan, with

23   the exception of their claim for unlawful disclosure under Section 2702 (which the Court

24   previously found sufficiently pled) and their claim for unlawful conduct under the UCL

25   predicated on a violation of Section 2702. Defendants further request that the Court dismiss with

26   prejudice the breach of contract claim, UCL claim, and request for relief under the Declaratory

27   Judgment Act, asserted by Plaintiffs Spurr and B.S.

28

1

2    DATED:  July 17, 2020                    **PERKINS COIE LLP**

3
                                              By:  */s/ Sunita Bali*
4                                                  Bobbie J. Wilson, Bar No. 148317
                                                   BWilson@perkinscoie.com
5                                                  Sunita Bali, Bar No. 274108
                                                   SBali@perkinscoie.com
6
                                              Attorneys for Defendants
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -26-