Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs Asif Kumandan,*
*Melissa Spurr, Melissa Spurr as guardian of*
*B.S., a minor, Lourdes Galvan, Eleeanna Galvan*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 19-cv-04286-BLF<br><br>THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Beth L. Freeman<br>Date First Action Filed: July 25, 2019 |

Plaintiffs Asif Kumandan, Melissa Spurr, Melissa Spurr as guardian of B.S., a minor, Lourdes Galvan, Eleeanna Galvan, Edward Brekhus, and Jon Hernandez (collectively, "Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against Defendants Alphabet Inc. and Google LLC (collectively, "Google" or "Defendants"), as follows:

## SUMMARY OF ALLEGATIONS

1.      This action arises from Google's: (i) unlawful and intentional interception and recording of individuals' confidential communications without their consent and subsequent unauthorized disclosure of those communications to third parties from approximately May 18, 2016 to the present (the "Class Period") in violation federal and state law; and (ii) false and deceptive representations – *i.e.*, that Google would only record or process their conversations or other audio if they use a specific activation phrase – to purchasers of its Google Home and Google Home Mini products (collectively, "Google Home" products or devices).

2.      Plaintiffs, on behalf of themselves and similarly situated purchasers of Google Assistant Enabled Devices (defined below) and members of their households, and purchasers and installers of Google Home products bring this suit under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §2510, *et seq.*, Stored Communications Act ("SCA"), 18 U.S.C. §2702, *et seq.*, California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §632, intrusion upon seclusion, invasion of privacy under Art. I, Sec. 1 of the California Constitution, breach of contract, and violation of the California Consumers Legal Remedies Act, Cal. Civ. Code, §1750, *et seq.* ("CLRA"), the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, and for declaratory and other equitable relief under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

3.      Google markets and sells a line of products including smart home speakers, Google Home products; smart displays; and its Pixel smartphones, laptops, and tablets (collectively, "Google Manufactured Devices").

4.      Google Home products and Google Manufactured Devices utilize the Google Assistant software platform.  Google Assistant is an artificial intelligence-based virtual assistant

developed by Google that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for simple tasks that Google Assistant executes.  Google Assistant also comes pre-installed on, or can be downloaded onto, smartphones, including those running Google's Android operating system (where the Google Assistant is pre-installed), and many other electronics manufactured by third parties (collectively, with Google Manufactured Devices, "Google Assistant Enabled Devices").  In order to use the Google Assistant feature on any Google Assistant Enabled Device, the user of the device must sign up for a Google Account and agree to Google's Terms of Service ("TOS") and Privacy Policy.  A Google Account is linked to every Google Assistant Enabled Device.  Google Assistant Enabled Devices are sold throughout the United States at national retailers such as Wal-Mart, Best Buy, Target, and Home Depot, as well as through Google's own online store.

5.     Federal and state privacy laws uniformly recognize individuals' reasonable expectations of privacy in confidential communications, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  Federal privacy laws prohibit unauthorized interception, access, disclosure, and use of the contents of oral and electronic communications.   California specifically recognizes privacy as a fundamental right, and accordingly, California law prohibits, among other things, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.

6.     Well aware of consumers' legitimate and reasonable expectations of privacy, Google assured, and continues to assure, its customers, like Plaintiffs and members of the Classes and Subclasses (defined below) (respectively, "Class Members" and "Subclass Members"), that Google Assistant Enabled Devices will only listen to, record, and share their conversations with their consent, which can be given only: (i) by uttering an activation command, like "Okay, Google" or "Hey, Google" ("hot word(s)"); or (ii) by manually pressing a button on the device.  Consequently, individuals who have purchased or used Google Assistant Enabled Devices and interacted with Google Assistant, have not consented to Google recording or disclosing conversations where "Okay, Google" or "Hey, Google" has not been uttered and no button on the device has been pressed.

7.     On July 10, 2019, unsuspecting consumers learned that, despite Google's assurances, Google has intercepted, recorded, disclosed, and misused private conversations of thousands of individuals, without consent.[1]   As reported by Belgian news outlet VRT NWS based on a whistleblower's revelations, Google collects audio recordings of Google Assistant users in numerous instances where a hot word is never spoken and uses these recordings for its own commercial and financial benefit, including to improve the speech recognition abilities of its Google Assistant Enabled Devices.  Worse, Google discloses these recordings to subcontractors without Google Assistant users' knowledge or consent.  Each such recording and disclosure constitutes an egregious breach of social norms and is a violation of federal and state law.

8.     The whistleblower's account, as reported in VRT NWS, is consistent with Plaintiffs' personal experience using Google Assistant Enabled Devices, which have wrongfully intercepted and recorded their private conversations without authorization and without a hot word being spoken. Examples of recordings made by Plaintiffs' Google Assistant Enabled Devices shows that Google Assistant wrongfully intercepted, recorded, and transmitted to Google Plaintiffs' private conversations without authorization and without a hot word being spoken.  Further, the information gleaned from these recordings was wrongly transmitted to third parties for targeted advertising and other purposes.

9.     Furthermore, in approximately late July 2020, one user on a Reddit forum reported that Google had sent the user an alert that their Google Home had detected a smoke alarm going off after burning something in the kitchen.  (*See* https://www.reddit.com/r/googlehome/comments/i0v9bf/google_just_made_my_dumb_smoke_de tectors_smart/ (last visited Nov. 9, 2020)).

10.    To be sure, Google's violations are deliberate and calculated to lead to increased revenues for Google.   Google profits on this invasion of privacy by using the content of

---

[1]     Lente Van Hee, *Google employees are eavesdropping, even in your living room, VRT NWS has discovered*, VRT NWS (July 10, 2019), https://www.vrt.be/vrtnws/en/2019/07/10/google-employees-are-eavesdropping-even-in-flemish-living-rooms/.

conversations Google admits it obtains without consent or authorization to improve the functionality of Google Assistant and to target personalized advertising to the very consumers whose privacy has been invaded.[2]  Google can monetize its platform by using its Google Assistant ecosystem to drive revenue to complementary lines of business such as e-commerce, search, or entertainment. Improving the functionality of Google Assistant is necessary to allow Google to continue to compete with the increasingly crowded virtual assistant market and to buttress the price of the Google Manufactured Devices.  In short, Google intentionally, willfully, and knowingly violated Plaintiffs' and consumers' privacy rights, including within the sanctity of Plaintiffs' and consumers' own homes where they have the greatest expectation of privacy.

11.     Millions of Google Assistant Enabled Devices were sold to U.S. consumers during the Class Period.  Plaintiffs and Class Members would not have used Google Assistant with their Google Assistant Enabled Devices and would not have bought, installed, and/or would have paid less for the Google Home products and Google Manufactured Devices, if they had known Google was intercepting, recording, disclosing, and otherwise misusing their conversations without consent or authorization.[3]

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class Members, and minimal diversity exists because more than two-thirds of putative Class Members are citizens of a state different than Defendants.

---

[2]     Alphabet readily admits in its regulatory filings that Alphabet "generate[s] revenues primarily by delivering [advertising]. *See* Alphabet, Annual Report (Form 10-K) (Feb. 6, 2018), https://www.sec.gov/Archives/edgar/data/1652044/000165204418000007/goog10-kq42017.htm.

[3]     For convenience, Plaintiffs use variations of the phrase "intercepting, recording, disclosing, and otherwise misusing" throughout the Complaint in an effort to summarize the range of conduct that Plaintiffs allege is unlawful as set forth in the Claims for Relief below.  Use of this phrase, however, is not intended to limit the scope of any required elements set forth in each respective Claim for Relief alleged herein.

13.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 since this suit is brought under the following federal statutes:  Wiretap Act, 18 U.S.C. §2510, *et seq*., SCA, and 18 U.S.C. §2702.  This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claims over which the Court has original jurisdiction.

14.     This Court has general personal jurisdiction over Defendants because their principal place of business is in California.  Additionally, the injuries, damages, and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of California.  Google regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California.  Google has engaged, and continues to engage, in substantial and continuous business practices in the State of California.  Moreover, Google's Terms of Service provide that: "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."  Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District.  Furthermore, Defendants Alphabet Inc. and Google LLC are headquartered in this District and subject to personal jurisdiction in this District.

15.     **Intradistrict Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County.  Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

16.     In accordance with California Civil Code Section 1780(d), Plaintiffs Edward Brekhus and Jon Hernandez concurrently file herewith declarations establishing that they each

1    purchased, installed, and used one or more Google Home devices in California.  (*See* Exhibits A

2    and B).

3            17.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

4                          **PARTIES**

5    **I.**     **PLAINTIFFS**

6                    **PLAINTIFFS SPURR AND B.S.**

7            18.     Plaintiff Melissa Spurr ("Plaintiff Spurr") is a natural person and citizen of the State

8    of New Jersey and a resident of Union County.

9            19.     Plaintiff B.S. ("Plaintiff B.S.") is a minor and brings this suit by and through her

10    legal guardian Plaintiff Spurr.  Plaintiff B.S. is a natural person and citizen of the State of New

11    Jersey and a resident of Union County.

12            20.     Plaintiff Spurr owned at least three Google Home devices during the Class Period.

13    These Google Assistant Enabled Devices were placed at various locations within the family's

14    residence.  One device was located in the kitchen, one was located in the living room, and one was

15    located in the family room.  Plaintiffs Spurr and B.S., and their family members have a reasonable

16    expectation of privacy in the areas of their home where these Google Home devices were located

17    and which, absent Plaintiff Spurr's and her family members' consent, were, and continue to be,

18    inaccessible to all other persons.  Plaintiff Spurr and her family, including Plaintiff B.S., frequently

19    carry on private oral communications in the areas of their home where Google Assistant devices are

20    located.

21            21.     As described herein, Google and the Google Assistant Enabled Devices intentionally

22    accessed Plaintiffs' oral communications without authorization and unlawfully recorded Plaintiff

23    Spurr, Plaintiff B.S., and other family members without their consent on multiple occasions,

24    including when they failed to utter a hot word or manually activate the Google Assistant Enabled

25    Devices.  The unlawfully recorded oral communications that Google Assistant Devices recorded

26    include private oral communications and interactions between Plaintiff Spurr, B.S., and their family

27    members.

28

22.    One such example of a confidential communication that was recorded by Google without authorization took place on June 13, 2018.  On that date Google recorded a private oral communication and interaction between Plaintiff Spurr and her minor daughter Plaintiff B.S., during which the two played a game while located in the kitchen – an area of the family's home where they have a reasonable expectation of privacy and where Plaintiff Spurr frequently interacts with Plaintiff B.S.  The recording of this private oral communication between Plaintiffs Spurr and B.S. took place without their knowledge or consent, and without Plaintiff Spurr or B.S. uttering a hot word or otherwise manually activating the listening mode of the Google Assistant Enabled Devices.

23.    Google's observation of Plaintiffs Spurr's and B.S.'s personal activities which were taking place in their home to the exclusion of all others were highly offensive to Plaintiffs Spurr and B.S. and other Class Members because it captured intimate moments between a mother and her infant child, including gestures and words of affection being communicated between them.

24.    Another example of such private oral communication which was recorded by Google without authorization took place on October 19, 2018.  On this instance, Google recorded a private phone conversation between Plaintiff Spurr with a family member.  This private oral communication and interaction between Plaintiff Spurr and a family member took place at Plaintiff Spurr's home where Plaintiffs Spurr, B.S., and their family members have a reasonable expectation of privacy and was recorded without her knowledge or consent, and without the utterance of a hot word or other manual activation of the Google Assistant Enabled Devices located in Plaintiffs Spurr's and B.S.'s home.

25.    Google Assistant's surreptitious observation of Plaintiffs Spurr's personal activities, which were taking place in her home to the exclusion of all others, were highly offensive to Plaintiff Spurr because it captured private moments between her and a family member, including when gestures and words of affection were being communicated.

26.    Multiple other nonconsensual recordings were made by Google and Google Assistant Enabled Devices in Plaintiff Spurr and B.S.'s home without the utterance of a hot word or manual activation of the listening mode of Google Assistant Enabled Devices.  For example, audio

7

1  recordings demonstrate that Google Assistant misinterpreted a wide range of commonly used words
2  or phrases, such as "peek-a-boo," "go-go," "boo-boo," and others, as the words "Ok, Google,"
3  recording Plaintiffs Spurr and/or B.S. in private moments without their consent.  As a result of these
4  spontaneous triggers of Google Assistant's listening mode, Plaintiff Spurr is forced to monitor the
5  Google Assistant Enabled Devices' activity and spend unnecessary time and effort to protect her
6  privacy and the privacy of her family members.

7  **PLAINTIFFS GALVAN AND E.G.**

8       27.     Plaintiff Lourdes Galvan ("Plaintiff Galvan") is a natural person and citizen of the
9  State of California and a resident of Los Angeles County.

10      28.     Plaintiff Eleeanna Galvan ("Plaintiff E.G.") was a minor during a portion of the Class
11  Period and brings this suit on her own.  Plaintiff E.G. is a natural person and citizen of the State of
12  California and a resident of Los Angeles County.

13      29.     Plaintiff Galvan and Plaintiff E.G., who is a member of Plaintiff Galvan's household,
14  owned a Samsung smart phone and a Galaxy Tab device during the Class Period.  Plaintiff Galvan's
15  and Plaintiff E.G.'s devices contained the Google Assistant, which was activated upon purchase of
16  the devices.  Plaintiff Galvan and Plaintiff E.G. interacted with the Google Assistant Enabled
17  Devices in the State of California repeatedly during the Class Period.  As described above, Google
18  and the Google Assistant Enabled Devices intentionally accessed Plaintiffs' communications
19  without authorization and unlawfully recorded Plaintiff Galvan and Plaintiff E.G. without their
20  consent on multiple occasions, including when they neither uttered a hot word or manually activated
21  the Google Assistant Enabled Devices.

22      30.     As to Plaintiffs Galvan and E.G., their Google Assistant Enabled Devices have
23  recorded their and their family's private conversations when no hot word was spoken or even words
24  that reasonably sounded like hot words were spoken.  In fact, Plaintiff Galvan never intentionally
25  used the Google Assistant by uttering a hot word but was nevertheless recorded without her
26  knowledge or consent numerous times.

27

28

31.     These conversations occurred in their home, bedroom, and car, as well as other places where she had a reasonable expectation of privacy.  Plaintiffs Galvan and E.G. charge the Google Assistant Enabled Devices in the living room or dining room during the day and in the bedroom at night.

32.     One example of a confidential conversation that was surreptitiously recorded by Google was a September 17, 2018 private disciplinary conversation amongst the Galvan family concerning personal responsibility.  This confidential conversation was recorded without a hot word being uttered and without anything remotely sounding like a hot word being uttered.

33.     Several times, topics of Plaintiff Galvan's and Plaintiff E.G.'s private conversations were used to target advertisements to them.  In one such instance, Plaintiff E.G. was doing research on Los Angeles gangs and was having a conversation regarding these gangs during her parents' childhood (who both grew up in the inner city).  Following this conversation, Plaintiff E.G. received targeted advertising in the form of suggested videos by YouTube, a Google-owned company.  The video concerned an individual whose name was specifically mentioned in the conversation. Plaintiffs Galvan and E.G. have recognized that other ads have been targeted to them following their private conversations in their home.

34.     Google Assistant's surreptitious observation of Plaintiff Galvan's and Plaintiff E.G.'s personal activities which were taking place in their home to the exclusion of all others were highly offensive to Plaintiff Galvan because it captured private moments between family and/or friends.

35.     A number of other nonconsensual recordings were made by Google and Google Assistant Enabled Devices without the utterance of a hot word or manual activation of the listening mode of Google Assistant Enabled Devices.

36.     Of the 11 recorded conversations reflected in the Google account connected to Plaintiff Galvan's smart phone, all 11 were non-consensually recorded by Google and the Google Assistant Enabled Device.

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-04286-BLF

37.     After these occurrences, and others like them, Plaintiff Galvan will often completely turn off her phone prior to having certain private conversations.  Plaintiff E.G. will often leave her device at home because she does not like the idea of being tracked and listened to.  Plaintiffs Galvan and E.G. are therefore no longer able to receive the full value of their Google Assistant Enabled Devices.

## PLAINTIFF KUMANDAN

38.     Plaintiff Asif Kumandan ("Plaintiff Kumandan") is a natural person and citizen of the State of New York and a resident of Kings County.

39.     Plaintiff Kumandan owned a Google Pixel smartphone with Google Assistant installed during the Class Period.  Plaintiff Kumandan frequently carried his Google Pixel smartphone on his person, including to areas within his home where he has a reasonable expectation of privacy and which, absent his consent, are inaccessible to all other persons.  Plaintiff Kumandan frequently carries on private oral communications nearby his Google Pixel smartphone, such that his private oral communications can be eavesdropped and recorded by Google Assistant installed on his Google Pixel smartphone.

40.     On at least one occasion, the subject matter of a conversation between Plaintiff Kumandan and his wife were used to target advertisements to Plaintiff Kumandan.  In one such instance, Plaintiff Kumandan was speaking to his wife about BBQ sauces.  Plaintiff Kumandan did not search for or otherwise interact with Google regarding the same subject matter.  Following this conversation, Plaintiff Kumandan received targeted advertisement where an ad for a BBQ sauce was displayed on Plaintiff Kumandan's Instagram page.  This conversation took place in Plaintiff and his spouse's joint residence where they have expectation of privacy.

41.     As described herein, Google and this Google Assistant Enabled Device intentionally accessed Plaintiff Kumandan's private oral communications without authorization and unlawfully recorded Plaintiff Kumandan without his consent on multiple occasions, including when he failed to utter a hot word or manually activate the Google Assistant Enabled Device.  As described in detail below, the unlawfully recorded oral communications that the Google Assistant Device recorded

included private oral communications and interactions between Plaintiff Kumandan and his family members and/or friends.

42.    One such example of a confidential private oral communication that was surreptitiously recorded by Google took place on July 6, 2019.  On that date, Google recorded Plaintiff Kumandan's interaction with his family member and/or a friend which took place in privacy and to the exclusion of all other persons where Plaintiff Kumandan had a reasonable expectation of privacy.  This oral communication and interaction between Plaintiff Kumandan and his family member and/or a friend took place without their knowledge or consent, and without the utterance of a hot word or other manual activation of the listening mode of the Google Assistant Enabled Device.

43.    Another example of such confidential private oral communication that was surreptitiously recorded by Google took place on September 21, 2019.  On that date, Google recorded Plaintiff Kumandan's interaction with another person in a setting in which Plaintiff Kumandan had a reasonable expectation of privacy.  This confidential interaction between Plaintiff Kumandan and another person took place without Plaintiff Kumandan's knowledge or consent, and without the utterance of a hot word or other manual activation of the listening mode of the Google Assistant Enabled Device.

44.    Of the seven recorded conversations that Plaintiff Kumandan's Google account currently reflects, five, or *71%*, were non-consensually recorded by Google and Google Assistant Enabled Device.

## PLAINTIFF EDWARD BREKHUS

45.    Plaintiff Edward Brekhus ("Plaintiff Brekhus") is a natural person and citizen of the State of California and resident of Marin County.

46.    In October 2019, Mr. Brekhus saw that Spotify was running a promotion whereby Spotify users could obtain a "free" Google Home Mini device.  But the device was not actually free; rather, it was made available only to Spotify users with a paid subscription, which he purchased, in part, to obtain the Google Home Mini device.

47.     After signing up for Spotify, he ordered his Google Home Mini from Google directly. He followed a link sent by Spotify to the Google Home Mini page that contained representations regarding the function of a Google Home device, including "Control your smart home products using your voice"; "Get real-time answers to questions with Google"; and "Simply say 'OK Google…'".

48.     In order to receive the Google Home Mini device, he entered into a purchase transaction with Google directly and used a promotion code obtained with the purchase of his Spotify subscription.

49.     Before obtaining the device, Mr. Brekhus saw Google's representations that the device was to be activated by saying the phrase, "Ok Google" and/or "Hey Google."  In particular, Mr. Brekhus had already seen the packaging indicating that the device is to be activated by saying the activation phrase, "Ok Google" and/or "Hey Google."  He also had seen the representations on Google's website that the device would not transmit recordings to Google without an activation phrase.  Further, he saw representations from Spotify that the device would be activated by saying the activation phrase.

50.     Based on his reasonable reliance on these representations, Mr. Brekhus paid for Spotify and ordered the Google Home device.

51.     Shortly after ordering the device, Mr. Brekhus received and set up his device, and since that time has been using it in his home, next to his bed.

52.     Mr. Brekhus frequently had conversations in his bedroom with roommates, including his partner, and other friends near his Google Home device about topics including personal decisions and opinions, and other sensitive topics.  Mr. Brekhus reasonably expected that oral communications in his bedroom would remain private.

53.     As described herein, Google and the Google Assistant Enabled Devices intentionally accessed Plaintiffs' oral communications without authorization and unlawfully recorded Plaintiff Brekhus and other members of his household without their consent on multiple occasions, including when they failed to utter a hot word or manually activate the Google Assistant Enabled Devices.

The unlawfully recorded oral communications that Google Assistant Devices recorded include private oral communications and interactions between Plaintiff Brekhus and other members of the household.

54.     For example, on one occasion in early 2020, Google recorded a conversation between Mr. Brekhus and a friend in which they discussed the friend's fiancé and their plans for marriage. Mr. Brekhus reasonably expected these oral communications to be private and to the exclusion of others.

55.     Mr. Brekhus would not have paid for Spotify or ordered the Google Home device, nor would he have set it up and used it, had he known that any of Google's representations were false.

56.     Mr. Brekhus is a reasonably diligent consumer.  At no time prior to August 6, 2020, did Mr. Brekhus realize that Google had configured its Google Home devices to activate audio recording even when "Ok Google" or other spoken activation command was not used, nor when a sound that sounded like the activation command was made, and the device was not manually activated.

57.     At no time prior to August 6, 2020, did Mr. Brekhus realize that Google had configured its Google Home devices to send audio data back to Google even when "Ok Google" or other spoken activation command was not used, nor when a sound that sounded like the activation command was made, and the device was not manually activated.

58.     At no time prior to August 6, 2020, did Mr. Brekhus realize that Google was processing audio data from its Google Home devices, even when "Ok Google" or other spoken activation command was not used, nor when a sound that sounded like the activation command was made, and the device was not manually activated.

59.     Had Mr. Brekhus realized that Google would enable the Google Home devices to record, transmit, or process audio even when he did not use the activation command he set up or manually activate the device, he would not have ordered, set up, or used the device.  Nor would he have paid for Spotify at that time.

60.     Had Google informed Mr. Brekhus, after he ordered the Google Home device, that it would enable the device to record, transmit, or process audio even when he did not use a spoken activation command like "Ok Google" or "Hey Google," he would have stopped using it or, at the very least, would have taken measures to prevent it from hearing unwanted audio (like unplugging it or muting it at appropriate times).

## PLAINTIFF JON HERNANDEZ

61.     Plaintiff Jon Hernandez ("Plaintiff Hernandez") is a natural person and citizen of the State of California and resident of Los Angeles County.

62.     On or about December 11, 2018, Mr. Hernandez purchased a Google Home Mini device from a Best Buy store located in Long Beach, California.

63.     Before obtaining the device, Mr. Hernandez saw Google's representations that the device was to be activated by saying the phrase, "Ok Google" and/or "Hey Google."  In particular, Mr. Hernandez saw the packaging indicating that the device is to be activated by saying the activation phrase, "Ok Google" and/or "Hey Google."  He also had seen the representations on Google's website that the device would not transmit recordings to Google without the activation phrase or manual activation.

64.     Mr. Hernandez understood these representations to mean that the user controlled the activation of the device by using an activation phrase, or by manually activating the device.  Mr. Hernandez also understood that these settings were within his control and could be changed by him by adjusting his privacy settings.  He did not understand that Google could unilaterally change the software setting to activate the device without his knowledge.

65.     Based on his reasonable reliance on these representations, Mr. Hernandez purchased the device.  Shortly after ordering the device, Mr. Hernandez set it up, and since that time has been using it in his home.

66.     Mr. Hernandez would not have purchased the Google Home device, nor would he have set it up or used it, had he known that any of Google's representations were false.

67.     Mr. Hernandez also has two other Google Home devices in his home.  He has been continuously using both of those devices for at least the last several months.  He would not have set up those devices or used them, had he known that any of Google's representations were false.

68.     Mr. Hernandez frequently has conversations in his home with his partner and business associates near his Google Home device.  These conversations frequently include sensitive topics such as personal decisions, financial information, and sensitive employment information.  Mr. Hernandez reasonably expects that oral communications in his home would remain private.

69.     As described herein, Google and the Google Assistant Enabled Devices intentionally accessed Plaintiffs' oral communications without authorization and unlawfully recorded Plaintiff Hernandez and other members of his household without their consent on multiple occasions, including when they failed to utter a hot word or manually activate the Google Assistant Enabled Devices.  The unlawfully recorded oral communications that Google Assistant Devices recorded include private oral communications and interactions between Plaintiff Hernandez and other members of the household.

70.     For example, on one occasion Google recorded a conversation between Mr. Hernandez and his partner in which they were having a disagreement over a personal matter in their shared home.  Mr. Hernandez reasonably expected these oral communications to be private and to the exclusion of others.

71.     Mr. Hernandez is a reasonably diligent consumer.  At no time prior to August 6, 2020, did Mr. Hernandez realize that Google had configured its Google Home devices to activate audio recording even when "Ok Google" or another spoken activation command was not used.

72.     At no time prior to August 6, 2020, did Mr. Hernandez realize that Google had reconfigured its Google Home devices to transmit audio to Google even if no spoken activation phrase was used, no manual activation had occurred, and no sound that resembled an activation phrase occurred.

73.     At no time prior to August 6, 2020, did Mr. Hernandez realize that Google had reconfigured Google Home devices such that the devices were processing audio data, even when

1    activation phrases had not been used, no manual activation occurred, nor had any sound that sounded

2    like an activation phrase been used.

3       74.    Had Mr. Hernandez realized that Google could and would enable the Google Home

4    devices to record, transmit, or process audio even when he did not use his spoken activation

5    command, making his privacy setting futile, he would not have purchased, set up, or used any of the

6    devices.

7       75.    Had Google informed Mr. Hernandez, after he purchased and/or received the Google

8    Home devices, that Google would enable the devices to record, transmit, or process audio even when

9    he did not use the spoken activation command he set, he would have stopped using them or, at the

10   very least, would have taken measures to prevent them from hearing unwanted audio (like

11   unplugging or muting them at appropriate times).

12   **II. DEFENDANTS**

13      76.    Defendant Alphabet Inc. ("Alphabet") is a Delaware corporation, organized and

14   existing under the laws of the State of Delaware, with its principal place of business at 1600

15   Amphitheatre Parkway, Mountain View, California 94043.  Alphabet is the successor issuer to, and

16   parent holding company of, Google LLC.  Alphabet owns all the equity interests in Google LLC.[4]

17      77.    Defendant Google LLC ("Google LLC") is a limited liability company existing

18   under the laws of the State of Delaware, with its principal place of business located at 1600

19   Amphitheatre Parkway, Mountain View, California 94043.

20

21

22

23   _____

24   [4]    During the 2015 reorganization, certain of Google LLC's business segments were spun off
     and separated into independent entities under the ownership of Alphabet.  At various times during

25   the Class Period, certain of the business segments re-merged with Google LLC under one corporate

26   structure.  Accordingly, Alphabet and Google LLC both have been named as defendants in order to

27   ensure all corporate entities who may be found liable for any portion of the alleged wrongdoing are

28   part of this lawsuit.

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1

**SUBSTANTIVE ALLEGATIONS**

2    **I.    BACKGROUND INFORMATION ON GOOGLE AND GOOGLE ASSISTANT**

3           78.    Google's unofficial motto always has been "don't be evil."  Google was founded in

4    1998 by Larry Page and Sergey Brin as a search-engine website.  Today, Google achieves a

5    significant portion of its profits by collecting as much information about consumers as possible,

6    with the aim of supplying the consumers with targeted advertising.  To support its advertising

7    platform, Google has launched numerous products that enable Google to target personalized

8    advertising to users.

9           79.    One of these products is Google Assistant.  Google Assistant is a computer program

10   developed by Google that is pre-installed on or can be downloaded onto Google Assistant Enabled

11   Devices.  Google Assistant is a valuable commodity which allows Google to compete with other

12   virtual assistants such as Siri (Apple) and Alexa (Amazon).  Its value is apparent in the cost of

13   Google Home products.  The sole purpose of Google Home products is to serve as a platform for

14   Google Assistant and consist of an inexpensive piece of hardware loaded with Google Assistant.

15   The value of Google Assistant may be measured by subtracting the cost of the hardware from the

16   cost of the Google Home products.

17          80.    Google Assistant is intended to provide users with easy access to information

18   available on the internet and/or control over other internet-connected devices using their voice.

19   Accordingly, Google Assistant Enabled Devices are equipped with sensitive microphones that can

20   pick up sound through much of a user's home.  To facilitate the interaction between Google

21   Assistant and users, Google Assistant listens for two sets of "hot words" – "Hey Google" and "Ok

22   Google."  These phrases indicate the start of a user command.

23          81.    Google Assistant Enabled Devices listen for these hot words by recording and

24   analyzing short snippets of audio from their surroundings.  This audio is stored locally in the Google

25   Assistant Enabled Device's random-access memory ("RAM").  Audio stored in a Google Assistant

26   Enabled Device's RAM is continuously overwritten as new audio is recorded and analyzed until a

27   hot word is uttered or the device is manually activated.

28

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-04286-BLF

82.     When a hot word is spoken to a Google Assistant Enabled Device or is manually activated by pressing a button on the device, it switches into "active listening" mode.  At this point, the Google Assistant Enabled Device begins recording and transmitting audio to Google for analysis.  One purpose of this analysis is to allow the Google Assistant Enabled Device to respond to the user commands issued after a hot word or manual activation.  For example, if a user asks Google Assistant, "Hey Google, what is the weather in Los Angeles?" the Google Assistant Enabled Device will transmit that audio to Google for analysis and to provide a response.  Users can also ask Google Assistant to, among other things, provide reminders ("Remind me to pick up groceries at 5 P.M."), set timers ("Set a timer for 20 minutes"), or control other internet-connected "smart devices" such as a thermostat, television, or music player.

83.     Google also analyzes recorded audio to improve the functionality of Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled Devices. This includes audio that is captured without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  Google therefore profits by using the content of conversations obtained without authorization or consent.

84.     There are approximately 2.3 billion Google Assistant Enabled Devices in the world. It is estimated that as of the end of 2018, Google had sold approximately 43 million Google Home devices in the United States.[5]  That number is projected to rise to 60 million in 2019.[6]  Google Pixel smartphone adoption also is on the rise with an estimated 5.3 million Pixels projected to be in use by the end of 2019.[7]  Although Google does not report its earnings by Google-manufactured hardware segment, one analyst recently estimated that Google's Pixel, Home, and Nest products

---

[5]     Bret Kinsella, *RBC Analyst Says 52 Million Google Home Devices Sold to Date and Generating $3.4 Billion in 2018 Revenue*, VOICEBOT.AI (Dec. 24, 2018), https://voicebot.ai/2018/12/24/rbc-analyst-says-52-million-google-home-devices-sold-to-date-and-generating-3-4-billion-in-2018-revenue/; Mark S.F. Mahaney, *Alphabet Inc.*, RBC CAPITAL MARKETS, at 15 (Dec. 20, 2018) ("RBC Report").

[6]     RBC Report at 15.

[7]     *Id.* at 8.

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-04286-BLF

would generate in 2019 approximately $12.2 billion in revenue and $4.2 billion in gross profits.[8]

Google Manufactured Devices also provide Google with increased personalized advertising

monetization opportunities.[9]

## II.   USERS OF GOOGLE ASSISTANT ENABLED DEVICES REASONABLY EXPECTED THAT THEIR PRIVATE CONVERSATIONS WOULD NOT BE INTERCEPTED, RECORDED, DISCLOSED, OR OTHERWISE MISUSED

85.     Plaintiffs' and Class Members' expectation of privacy in their confidential and

private communications, which Google intercepted, recorded, disclosed, or otherwise misused, is

deeply enshrined in California's Constitution.  Article I, section 1 of the California Constitution

provides: "All people are by nature free and independent and have inalienable rights.  Among these

are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and

pursuing and obtaining safety, happiness, *and privacy*."  Art. I., Sec. 1, Cal. Const.  [Emphasis

added.]

86.     The phrase "*and privacy*" was added in 1972 after voters approved a proposed

legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor

of Proposition 11 reveals that the legislative intent was to curb businesses' control over the

unauthorized collection and use of consumers' personal information, stating in relevant part:

> *The right of privacy is the right to be left alone*.  It is a fundamental and compelling interest.  It protects *our homes*, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion, and our freedom to associate with the people we choose.  *It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us*.
>
> *Fundamental to our privacy is the ability to control circulation of personal information*.  This is essential to social relationships and personal freedom.  The proliferation of government and business records over which we have no control limits our ability to control our personal lives.  Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[10]

---

[8]      *Id.* at 4.

[9]      *Id.* at 1, 3.

[10]     Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec., at 27 (Nov. 7, 1972).

[Emphasis added].

87.     Consistent with the language of Proposition 11, a number of studies examining the collection of consumers' personal data confirms that the surreptitious taking of personal, confidential, and private information from hundreds of thousands of individuals, as Google has done here, violates expectations of privacy that have been established as general social norms.  Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.  Indeed, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[11]  Similarly, a study published in the *Harvard Business Review* shows that consumers are largely unaware of how their personal information is used by businesses, with fewer than 20% of consumers realizing that they share their communication history, IP addresses, and web-surfing history when using a standard web browser.[12]  A recent article published by the *USA Today*, revealed that 93% of parents who use voice-activated devices say "it is important to know when their family's voices are being recorded [and an] equal number said it's important to control whatever information is collected about them."[13]  It also is simply common sense that voice-activated software like Google Assistant should only become activated when a hot

---

[11]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[12]     Timothy Morey, Theodore Forbath, and Allison Shoop, *Customer Data: Designing for Transparency and Trust*, HARVARD BUSINESS REVIEW (May 2015), https://hbr.org/2015/05/customer-data-designing-for-transparency-and-trust.

[13]     Edward C. Baig, *Hey, Google and Alexa: Parents worry voice assistants can listen in on kids, survey finds*, USA TODAY (Mar. 28, 2019), https://www.usatoday.com/story/tech/talkingtech/2019/03/28/parents-dont-want-smart-speakers-to-secretly-record-kids-survey/3288806002/.

word is spoken or the device is manually triggered.  Google purports to act consistently with consumer expectations by promising to obtain consent prior to recording and sharing private conversations.

88.     The expectation of privacy is heightened in one's own home, which historically is a legally protected zone of privacy.  Indeed, the passage of California's Proposition 11 evidences that voters sought to definitively ensure that a right of privacy was recognized in one's own home.  It is undeniable that Google Assistant Enabled Devices are used in the home, and some can *only* be used in the home.  In fact, the private communications of Plaintiffs, including Plaintiffs Spurr, Galvan, and E.G. and their families, occurred in the privacy of their homes where their Google Assistant Enabled Devices were located and where Plaintiffs had a reasonable expectation of privacy.

89.     As the name implies, Google Home devices, as well as other Google Assistant enabled smart speaker devices, necessarily are located in the home.  And, market research indicates that one-quarter of smart speakers are located in the bedroom, where there is an even greater expectation of privacy.[14]

90.     However, *regardless* of where a Google Assistant Enabled Device is used, Google *itself* expressly and impliedly assures Plaintiffs and Class Members that Google Assistant Enabled Devices will *only* listen to and record their private confidential communications and transmit the recordings thereof to Google if users speak a hot word or otherwise manually activate "active listening" mode.  Accordingly, in its official Privacy Policy,[15] Google denies recording users' conversations absent the utterance of a hot word.  In describing its Privacy Policy, Google provides the following answer to a Frequently Asked Question:

**Is Google Home recording all of my conversations?**

---

[14]     Dave Chaffey, *Consumer use of voice-controlled digital assistants / smart speakers*, SMART INSIGHTS (Jan. 15, 2018), https://www.smartinsights.com/digital-marketing-strategy/consumer-use-of-voice-controlled-digital-assistants-smart-speakers/.

[15]     GOOGLE   PRIVACY   &   TERMS,   Information   Google   collects. https://policies.google.com/privacy?hl=en-US..

No.  Google Home listens in short (a few seconds) snippets for the hotword.  Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.  When Google Home detects that you've said "Ok Google" or "Hey Google," or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request.  You can delete these recordings through My Activity anytime.[16]

91.      Google's policies also state that the audio of recordings from Google Assistant Enabled Devices will not be shared with third parties without explicit consent.  *Id.*

92.      Further, Google makes the following statement on their privacy page for Google Assistant devices (like the Google Home):

The Google Assistant is designed to wait in standby mode until it is activated, like when you say "Hey Google."  The Assistant starts in standby mode, waiting to be activated.  In standby mode, it processes short snippets of audio (a few seconds) to detect an activation (such as "Ok Google").  If no activation is detected, then those audio snippets won't be sent or saved to Google.  When an activation is detected, the Assistant comes out of standby mode to fulfill your request.

(https://support.google.com/googlenest/answer/7072285?hl=en (last visited Nov. 6, 2020))

93.      Likewise, Google created a number of videos regarding how to activate the Google Home, including video, in January 7, 2020, entitled "Privacy On Google Assistant."  The voiceover of the video states:

The Google Assistant is built to keep your information private, safe, and secure.  This is a speaker with a Google Assistant.  It's built to wait in standby mode until it is activated, like when you say "Hey Google."  And when it's in standby mode, Assistant won't send what you were saying, to Google or anyone else.

(https://www.youtube.com/watch?v=ZaqZcDOoi-8 (last visited Nov. 6, 2020)).

---

[16]      GOOGLE, Google Nest Help, Help Center, Your Privacy, *More about data security and privacy on devices that work with Assistant*.  This was previously available at https://support.google.com/googlenest/  answer/7072285?hl=en but was removed following the filing of this case.

94. Google tries to make consumers think that *they* control when the Google Home is activated. The Google Home packaging itself states that users are to activate the device by saying "Ok Google":



95. Device packaging includes a link such as "g.co/mini/explore" as shown above. Following this link brings up a Google search results page with links to thousands of results, including the first web search result, a Google support page that states: "Google Nest and Google Home speakers or displays make life easier by helping you do things like access media, manage your tasks, and plan your day using only your voice." (https://support.google.com/googlenest/answer/7130274?hl=en (last visited Nov. 3, 2020)).

96. On another device page, in response to the frequently asked question, "What are some types of activation methods," Google reassures consumers that "*You* can activate your assistant in many ways." (https://support.google.com/googlenest/answer/7072285?hl=en (last visited Nov. 6, 2020)).

97. Similarly, the Google privacy video referred to above states: "Occasionally, the assistant may activate when *you* didn't intend it to, because it incorrectly detected that *you* wanted

1    its help.   We have a number of protections designed to prevent this from occurring."

2    (https://www.youtube.com/watch?v=ZaqZcDOoi-8 (last visited Nov. 9, 2020)).

3        98.    On its privacy page, Google tells consumers that the Google Home might activate

4    when consumers do not intend it to, but only if it hears a noise that sounds like "Hey, Google":

5    Can Google **Assistant** unintentionally collect my voice data?  What happens if it does and
     what are my choices?                                                                          ⌃

6

7    Occasionally, the Assistant will activate when you didn't intend it to, because it incorrectly detected that
     you wanted its help (like by a noise that sounds like "Hey, Google").

8    If that happens, just say "Hey Google, that wasn't for you," and the Assistant will delete the last thing it
     sent to Google. Learn about how to manage your audio recordings.

9

10   (https://support.google.com/googlenest/answer/7072285?hl=en (last visited Nov. 6, 2020)).

11   Google reassures consumers that this happens only "[o]n rare occasions."  *Id.*

12       99.    Google's online community forum also informs consumers that the Google Home

13   can accidentally activate "when it hears something similar to 'Hey Google.'"  Google informs users

14   that they can guard against this by adjusting the device's sensitivity:

15   M    Google Employee                                                              5/4/20   ⋮
          Matt B - Google Assistant Community Manager

16

     "Hey Google" sensitivity can now be configured    📌  🔒  0 Replies

17

18   Different factors, like how noisy an environment is, may affect Google Assistant's responsiveness to the hotword
     or cause it to accidentally activate when it hears something similar to "Hey Google."

19   To better tailor Google Assistant to your environment and desired responsiveness, we're rolling out a new feature
     that allows you to adjust how sensitive smart speakers and smart displays are to the hotword. You can make
20   Google Assistant more sensitive if you want it to respond more often, or less sensitive to reduce unintentional
     activations.

21   You can now adjust how sensitive Google Assistant is in your settings through the Google Home app for smart
     speakers and smart displays. These settings can be changed at any time and you can fine tune your preferences
22   for each device if, for example, one is in a busy area like the kitchen while the other is on the bedroom nightstand.
     This feature will be supported in English with more languages to follow.

23

24   (https://support.google.com/assistant/thread/44421919?hl=en (last visited Nov. 6, 2020)).

25       100.   Despite its myriad efforts to persuade consumers that the Google Home guards their

26   privacy, Google has never informed users that the Google Home can be activated, record and/or

27   transmit everything in a user's home even when the user does not manually activate the device or

28

1  use an activation phrase, and even when there were no sounds in the house that sounded anything

2  remotely like the activation phrase.

3       101.    These assurances confirm the reasonableness of Plaintiffs' and Class Members'

4  expectation of privacy in the context of their homes and in the presence of Google Assistant Enabled

5  Devices **in any location** absent the utterance of a hot word or manual activation, and/or any other

6  sounds similar to the hot word.  Based on Google's representations, Plaintiffs and Class Members

7  did not expect that their private and confidential information would be intercepted, recorded,

8  disclosed, or otherwise misused, including by being listened to by unauthorized third parties.

9  Despite Google's assurances, Google intercepted, recorded, disclosed, and otherwise misused

10  intimate conversations, including, *inter alia*, talks between parents and children and/or confidential

11  business phone calls, for Google's own business purposes.

12  **III.  GOOGLE INTENTIONALLY INTERCEPTS, RECORDS, DISCLOSES, AND**

13  **OTHERWISE MISUSES INDIVIDUALS' PRIVATE AND CONFIDENTIAL**
    **COMMUNICATIONS WITHOUT CONSENT OR AUTHORIZATION**

14       102.    On July 10, 2019, a Belgian news media outlet publicized reports made by a

15  whistleblower – a former Google subcontractor – who revealed that "thousands of [Google's

16  subcontractors]" are systematically listening to audio files recorded by Google Home smart speakers

17  and the Google Assistant smartphone app from devices around the world, including audio that does

18  not contain a hot word.[17]

19       103.    Based on information and belief – which Google does not dispute – when an

20  individual interacts with Google Assistant's speech recognition feature, the software automatically

21  generates a script of the conversation which is then stored along with the audio recording.  Google

22  subcontractors are then tasked with analyzing whether Google Assistant has accurately interpreted

23  the individual's speech.  To do so, Google's subcontractors log into the online tool and are presented

24  with a list of audio files and corresponding transcripts to analyze.  According to the whistleblower,

25  the reviewers double check that "every cough and every audible comma" is reflected in the

26

27

28  [17]    Van Hee, *supra* n.1

transcript.  Based on information and belief, three independent sources confirmed this is the way Google works.[18]

104.    The whistleblower was provided with access to "more than a thousand" audio recordings which contained 153 conversations "that should never have been recorded and during which the command 'Okay Google' was clearly not given."  These recordings include "bedroom conversations, conversations between parents and their children" as well as "professional phone calls containing lots of private information."[19]  As described in detail herein, the whistleblower's allegations are consistent with the experiences of Plaintiffs whose private communications were recorded while they took place in the privacy of their homes to the exclusion of all other persons and without the utterance of a hot word or other manual activation of the Google Assistant Enabled Devices.

105.    VRT NWS's report reveals that instead of only recording what an individual says after uttering a hot word, Google Assistant Enabled Devices record anything said that is preceded by anything that *remotely* sounds like a hot word, and that even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording.[20]  As described in detail herein, these allegations are consistent with the experiences of Plaintiffs, whose private communications were recorded after the utterance of a wide range of commonly used phrases, such as "peek-a-boo," "go," "boo-boo," and many others that carry even less resemblance to any hot word.  Notably, segments of private conversations, several seconds long, are frequently recorded without the utterance of a hot word or any other random phrase that Google Assistant Enabled Devices misinterpreted for a hot word.

---

[18]    *Id.*

[19]    *Id.*

[20]    *Id.*

106.     Following these news reports, on August 1, 2019, German regulators prohibited Google from listening to any conversations utilizing the Google Assistant Software in Europe.[21] Specifically, the Hamburg Commissioner for Data Protection and Freedom of Information stated that in banning Google from listening to conversations that "those recordings could include sensitive and private information, not only from people using the device, but also from others in the same household."[22]

107.     Contrary to its representations (and promises) to consumers, and without giving consumers any notice, Google also configured the Google Home to record audio from users' homes, and to transmit that data to Google for processing, all without any activation command being spoken.

108.     In approximately late July 2020, one user on a Reddit forum reported that they had received an alert from their Google Home that the smoke detector in their kitchen had gone off after they had burned something in the kitchen.   (*See*  https://www.reddit.com/r/googlehome/ comments/i0v9bf/google_just_made_my_dumb_smoke_detectors_smart/  (last visited Nov. 9, 2020)).   The user posted the following screenshot of the phone notification:



---

[21]     Richard Neiva, *Google temporarily banned from listening to voice recordings in the EU*, CNET (Aug. 1, 2019), https://www.cnet.com/news/google-temporarily-banned-from-listening-to-voice-recordings-in-the-eu/.

[22]     *Id.*

1   (https://imgur.com/gallery/wjRUqmo (last visited Nov. 9, 2020)).

2        109.    Another user on the same Reddit forum reported that the Google Home had picked

3   up the sound of breaking glass and had sent the user a notification of that event.  (*See*

4   https://www.reddit.com/r/googlehome/comments/i0v9bf/google_just_made_my_dumb_smoke_de

5   tectors_smart/ (last visited Nov. 9, 2020)).

6        110.    After the issue was reported by various media outlets, Google admitted to the online

7   publication, *Protocol*, that the Google Home devices were listening to users and transmitting the

8   data to Google, even when they had not used the activation command.  (*See*

9   https://www.protocol.com/google-smart-speaker-alarm-adt (last visited Nov. 9, 2020)).   Google

10  claimed that the incident was an accident that occurred through a software update.  (*Id.*).   Google

11  further claimed that the software update was "rolled back."  (*Id.*).

12       111.    Google, however, never informed users that it would begin recording them based on

13  sounds, like breaking glass or smoke alarms, without the use of an activation phrase or manual

14  activation, contrary to the representations it makes on its packaging, in its privacy policy, and

15  throughout its support forums.  Nor did Google identify when it started recording users after

16  detecting these sounds or would trigger recording.  According to *Protocol*, Google declined to state

17  whether it planned to reengage the same "rollbacked" update in the future.  (*Id.*).

18       112.    The *Protocol* article correctly observed that Google's behavior is a glaring privacy

19  concern, especially given Google's failure to inform consumers that sounds other than "Hey

20  Google" could activate the recording:

21                 On the one hand, there is some potential for a privacy backlash. Google has long told users

22                 that its speakers only actively monitor ambient audio for utterances of the "Hey Google"
                   wake phrase. Any use of far-field microphones for other purposes, especially for users who

23                 didn't sign up for advanced monitoring, could result in some consumers rejecting the device

                   category altogether.

24  (*Id.*).

25       113.    As with the recordings Google obtains with consent, Google analyzes the recordings

26  it obtains where no hot word has been uttered or button pushed to improve the functionality of

27  Google Assistant as well as to target personalized advertising to users of Google Assistant Enabled

28

Devices.  By analyzing consumers' conversations without their authorization or consent, Google is profiting from its invasion of such consumers' privacy.

114.    The backend change to the functionality of the Google Home devices also reveals that Google will change the functionality of the devices in order to increase its profits.  The change to record alarm events aligned with the creation of a business relationship with ADT, a company that provides home security services.

115.    As described in detail herein, the allegations concerning targeted personalized advertising are consistent with the experiences of Plaintiffs, who were sent targeted advertisements following their private oral communications relating to the exact same subject matter of the advertisement, evidencing Google's conduct of disseminating Plaintiffs' private oral communications to third parties for undisclosed and unconsented purposes.

116.    Google's non-consensual recording of users' private communications is far too widespread and persistent to be dismissed as a mere error.  As described above, a significant percentage of users' private and confidential communications were and continue to be recorded in the absence of any hot word being communicated or manual activation of the Google Assistant Enabled Devices.  Indeed, 70% of Plaintiff Kumandan's conversations and 100% of Plaintiff Galvan's conversations that were recorded and stored by Google were made without their knowledge or consent.  Google has been aware of the widespread non-consensual recordings made by Google Assistant since the product was first introduced and has yet failed to do anything about it.  Google's non-consensual recordings are therefore intentional.  There is no legitimate dispute that Google's dissemination of the non-consensual recordings to its third-party contractors is intentional, as Google purposefully provides these recordings to such third parties for analysis to improve the functionality of Google Assistant and thereby increase the value thereof.  Google therefore engaged in several unlawful actions by capturing Plaintiffs' and Class Members' communications without the utterance of a hot word or manual activation of the Google Assistant Enabled Device, and subsequently disclosing those communications without authorization.  As set forth with specificity in the Claims for Relief, Google:  (1) intentionally intercepted oral communications without consent,

and subsequently disclosed to third parties and used those communications, in violation of the Wiretap Act, 28 U.S.C. §2511(1)(a), (c), (d); (2) intentionally made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers recordings of Plaintiffs' and Class Members' communications and then knowingly divulged those communications to third parties in violation of the SCA, 18 U.S.C. §2702(a)(1); (3) intentionally recorded Plaintiffs' and Class Members' confidential communications without consent in violation of CIPA, Cal. Penal Code §632; (4) intentionally intruded into Plaintiffs' and Class Members' private conversations in violation of their privacy rights under California common law and the California Constitution; (5) breached material terms of its contract with Plaintiffs and Class Members; and (6) engaged in unfair and unlawful acts in violation of the UCL.

117.    Given the concealed and secretive nature of Google's conduct, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

## IV.    GOOGLE HAS UNLAWFULLY VIOLATED USERS' PRIVACY RIGHTS FOR DECADES

118.    Contrary to its unofficial motto, Google *is* evil.  Google's recidivist track record as a violator of privacy rights evidences that Google is well aware that its conduct encroaches on its customers' privacy.  In recent years, Google has been investigated by dozens of countries and has paid tens of millions of dollars to U.S. federal and state regulators in penalties and settlements.

119.    For example, beginning in 2010, nine countries found Google had violated their privacy laws in connection with Google's deployment of the Street View program,[23] during which Google unlawfully collected people's email, passwords, and other personal data.  U.S. regulators also investigated Google's conduct in connection with its use of Street View.  Ultimately, 38 state attorneys general fined Google $7 million for its illegal and deceptive collection of consumers' WiFi data, while the Federal Communications Commission ("FCC") fined Google $25,000 for obstructing its investigation.

---

[23]    Street View is the name for Google's web-based geographic photography program that captured 360-degree images of roads, homes, and individuals.

120.     Shortly thereafter, in 2011, the Federal Trade Commission ("FTC") initiated an investigation into Google's violations of its own privacy promises to consumers when it launched its social network, Google Buzz, in 2010.[24]  As part of the settlement with the FTC in 2011, Google was barred from misrepresenting the extent to which consumers could exercise control over the collection of their information.  Google, however, violated the terms of the settlement, for which it was fined $22.5 million in August 2012, representing one of the largest civil penalties the FTC has imposed for a violation of an FTC order.[25]  The very next year, Google paid $17 million to 37 U.S. states and the District of Columbia as compensation for circumventing the privacy settings of millions of users of Apple's Safari web browser between 2011 and 2012.[26]

121.     On January 21, 2019, the French administrative regulatory body, Commission nationale de l'informatique et des libertés ("CNIL") fined Google $57 million for, *inter alia*, lack of transparency and the lack of valid basis to process the personal data of the users of its services.[27] During its investigation, which the CNIL conducted beginning in June 2018, CNIL observed that Google failed to validly obtain consent from its users because the users' consent was not "sufficiently informed" and was not "specific" nor "unambiguous" as required pursuant to the

---

[24]     *FTC Charges Deceptive Privacy Practices in Googles Rollout of Its Buzz Social Network,* FEDERAL TRADE COMMISSION (Mar. 30, 2011), https://www.ftc.gov/news-events/press-releases/2011/03/ftc-charges-deceptive-privacy-practices-googles-rollout-its-buzz.

[25]     *Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser*, FEDERAL TRADE COMMISSION (Aug. 9, 2012), https://www.ftc.gov/news-events/press-releases/2012/08/google-will-pay-225-million-settle-ftc-charges-it-misrepresented.

[26]     Brian Fung, *Why States are the Big Winner in the $17 Million Google-Safari Settlement*, THE WASHINGTON POST (Nov. 19, 2013), https://www.washingtonpost.com/news/the-switch/wp/2013/11/19/why-states-are-the-big-winner-in-the-17-million-google-safari-settlement/.

[27]     *The CNIL's restricted committee imposes a financial penalty of 50 Million euros against GOOGLE LLC,* CNIL (Jan. 21, 2019), https://www.cnil.fr/en/cnils-restricted-committee-imposes-financial-penalty-50-million-euros-against-google-llc.

31

General Data Protection Regulation, Europe's regulatory framework for data protection and privacy.[28]

122.    On May 27, 2020, following an extensive investigation, Google was sued by the State of Arizona for deceptive and unfair business practices with respect to how it obtains location data of its users, which it then exploits to power its advertising business.  *See State of Arizona ex rel Mark Brnovich, Attorney General v. Google LLC*, Case No. CV2020-006219 (Arizona Super. Ct. Cty. of Maricopa).

123.    Most recently, on October 6, 2020, the United States House of Representatives Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary released a report entitled "Investigation of Competition in Digital Markets" (the "House Report") which outlined competition and privacy abuses by dominant big tech firms.  The House Report found that as competition has been reduced online, consumers have been subject to privacy abuses by Google, including through the use of the voice assistant, Google Assistant.  The House Report further found that there is a significant potential for misuse of data collected by voice assistants to harm competition or consumers.

124.    Google did not spare minors from its privacy intrusions either.  For years, Google indiscriminately collected personal information from children under the age of 13 through YouTube channels directed at children without first notifying parents and getting their consent in violation of the Children's Online Privacy Protection Act ("COPPA").[29]  For this violation, Google and its subsidiary, YouTube, paid a record $170 million to the FTC and the N.Y. Attorney General in September 2019.[30]

---

[28]    *Id.*

[29]    *See Federal Trade Commission v. Google LLC*, No. 1:19-cv-02642 (D.D.C.).

[30]    *Google and YouTube Will Pay Record $170 Million for Alleged Violations of Children's Privacy Law*, FEDERAL TRADE COMMISSION (Sept. 4, 2019), https://www.ftc.gov/news-events/press-releases/2019/09/google-youtube-will-pay-record-170-million-alleged-violations.

32

## V.   GOOGLE'S UNLAWFUL ACTIONS HAVE PERSONALLY HARMED PLAINTIFFS, WHO DID NOT CONSENT TO GOOGLE'S SURREPTITIOUS INTERCEPTION, RECORDING, DISCLOSURE, OR OTHER USE

125.   Plaintiffs each owned a Google Assistant Enabled Device during the Class Period and their conversations were intercepted, recorded, disclosed, or otherwise misused by Google.

126.   At no point did any of the Plaintiffs consent to or authorize Google to intercept, record, disclose, or otherwise misuse their and their children's conversations when no hot word was spoken or button pushed.  Google does not disclose that it intercepts, records, and otherwise misuses conversations that are not preceded by a hot word or in instances where the Google Assistant Enabled Device is not manually activated.  Plaintiffs relied on Google's assurances and freely conversed and interacted with their family members and/or friends in the vicinity of Google Assistant Enabled Devices and carried on private conversations which they would not have had had they known that such conversations were being recorded by Google.  Plaintiffs, therefore, did not agree to having Google intercept, record, disclose, or otherwise misuse their conversations through their respective Google Assistant Enabled Devices.  Plaintiffs would not have purchased, would have paid less for their Google Assistant Enabled Devices, or would have disabled Google Assistant and/or not had private conversations in the presence of the devices had they known that Google engaged in the unlawful actions described herein.

127.   Each of the Plaintiffs would like to continue to use Google Assistant Enabled Devices in the future, but will be uncertain as to whether Google has ceased its unlawful practices and violation of their privacy rights without the equitable relief requested herein, specifically an injunction prohibiting Google from engaging in the unlawful practices alleged herein.  This is particularly the case given the surreptitious nature of Google's misconduct.

## TOLLING OF THE STATUTE OF LIMITATIONS

128.   The applicable statutes of limitations have been tolled by Google's knowing and active concealment and denial of the facts alleged herein, namely its practice of intercepting, recording, disclosing, and misusing users' private and confidential communications.  Plaintiffs and Class Members could not have reasonably discovered the truth about Google's practices until shortly before this class action litigation was commenced.

129.    As alleged in detail herein, Google expressly and impliedly assured consumers that Google Assistant Enabled Devices will **only** listen to and record their voice with the consumers' consent, by uttering a hot word or by manually pressing a button on the device to enable "active listening," and that it will not share personal information with third parties without consent. Accordingly, Google denies listening to and recording users' conversations absent the utterance of a hot word or manual activation.  Google policies likewise deny that audio recordings from Google Assistant Enabled Devices will be shared with third parties.

130.    Furthermore, Plaintiffs and Class Members also have a reasonable expectation of privacy in oral and electronic communication regardless of Google's express assurances.  This expectation is particularly heightened where, as here, such communication occurs within one's home, which is a zone of privacy uniformly recognized by state and federal privacy laws.

131.    Thus, based on Google's representations and Plaintiffs' and Class Members' expectations of privacy, Plaintiffs and Class Members would not have been able to uncover the facts underlying their claims prior to the publication of the July 10, 2019 VRT NWS article, which exposed Google's practices of intercepting, recording, and sharing with unauthorized third-party users' private and confidential information.  This is because all relevant facts were in the possession of Google who actively concealed their existence.

## CLASS ACTION ALLEGATIONS

132.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individual purchasers of a Google Assistant Enabled Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent from at least as early as May 18, 2016 to the present, or during the applicable statute of limitations period[31]

---

[31]    May 18, 2016 to the present, or during the applicable statute of limitations period shall be referred to as the "Class Period."

(the "Class").[32]  Also within the Class is a Subclass of individual purchasers of a Google Manufactured Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent during the Class Period ("Google Manufactured Device Subclass").

The Purchaser Class: All natural persons who purchased any Google Home device in the United States from August 7, 2016 through the present.

133.    Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; (6) Google Home device purchasers whose purchases were for purpose or resale or who purchased a used Google Home device; and (7) the legal representatives, successors, and assigns of any such excluded persons.

134.    **Ascertainability:** Membership of the Classes/Subclasses is defined based on objective criteria, and individual members will be identifiable from Defendants' records, including the Google Accounts associated with each Google Assistant Enabled Device.

135.    **Numerosity:** The exact number of members of the Class(es) is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable.  The Classes likely consist of hundreds of thousands of individuals, if not millions, of individuals and Class Members can be identified through Defendants' records.

136.    **Predominant Common Questions:** The Classes' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members.  Common questions for the Classes include, but are not limited to, the following:

---

[32]    Minors are members of the Class to the same extent that adult purchasers of Google Assistant Enabled Devices are, as defined herein, except minors do not constituted a distinct Subclass within the Class.  Plaintiffs have defined the Class based on currently available information and hereby reserve the right to amend the definition of the Class, including, without limitation, the Class Period.

a.      whether Google Assistant Enabled Devices intercept or record individuals'

conversations absent that user uttering a hot word or otherwise activating the device;

b.      whether individuals who use Google Assistant Enabled Devices have a

reasonable expectation of privacy under federal and California law;

c.      whether Google's business practices of intercepting, accessing, listening to,

recording, sharing, storing, and otherwise misusing users' private and confidential

information and other personal information violated state and federal privacy laws;

d.      whether Google's business practices of intercepting, accessing, listening to,

recording, sharing, storing, and otherwise misusing users' private and confidential

information and other personal information constitute a breach of the contract that exists

with Plaintiffs and Class Members;

e.      whether the packaging, marketing, advertising, and other promotional

materials for the products are deceptive and/or unlawful because of misrepresentations and

omissions;

f.      whether Defendants' marketing, advertising, and other promotional materials

for the products was likely to deceive reasonable consumers;

g.      whether Defendants' representations and omissions are material to

reasonable consumers;

h.      whether Plaintiffs and Class Members are entitled to declaratory and/or

injunctive relief to enjoin the unlawful conduct alleged herein; and

i.      whether Plaintiffs and Class Members have sustained damages or lost money

or property as a result of Google's conduct, and, if so, what is the appropriate measure of

damages or restitution.

137.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the

proposed Classes/Subclasses.  Plaintiffs and Class Members suffered an invasion of privacy as a

result of Defendants' wrongful conduct that is uniform across the Classes/Subclasses.

138.   **Adequate Representation:** Plaintiffs have fairly and adequately represented and protected the interests of the Classes/Subclasses and will continue to do so.  They have retained counsel competent and experienced in complex litigation and class actions, including privacy violations.  Plaintiffs have no interests that are antagonistic to those of the Classes/Subclasses, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes/Subclasses, and they have the resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.

139.   **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes/Subclasses is impracticable.  This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

140.   Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

### CALIFORNIA LAW APPLIES TO THE CLASSES

141.   California's substantive laws apply to every member of the Classes, regardless of where in the United States the Class Member resides.  Defendants' TOS states: "By using our Services, you are agreeing to these terms.  Please read them carefully."

142.   Specifically, Defendants' TOS states under the subheading "About These Terms" that: "The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services.  All claims arising out of or relating

to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."[33]

143.    By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

144.    Further, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend. §1, and the Full Faith and Credit Clause, Art. IV §1 of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class Members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

145.    Defendants' U.S. headquarters and principal place of business is located in California.  Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws.  Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

146.    California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiffs and all other Class Members.

147.    The application of California laws to the Classes is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

---

[33]    *See* GOOGLE PRIVACY & TERMS, About these Terms, https://policies.google.com/terms?hl=en-US#toc-about.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
### Violation of the Wiretap Act
### Title 1 of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. §2510, *et seq.*)
### (on Behalf of Plaintiffs and the Classes and Subclasses)

148.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

149.    The Wiretap Act prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

150.    "Oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]"  18 U.S.C. §2510(2).

151.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. §2510(4).

152.    "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]"  18 U.S.C. §2510(8).

153.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]"  18 U.S.C. §2510(6).

154.    Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

155.    Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

156.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

157.    Google Assistant is a device for purposes of the Wiretap Act because it is a software program used to intercept oral communications.

158.    Plaintiffs' and Class Members' private and confidential oral communications that were intercepted in real time by Google Assistant when a hot word was not uttered or in instances where the Google Assistant Enabled Device was not manually activated are "oral communications" within the meaning of 18 U.S.C. §2510(2).

159.    Plaintiffs and Class Members reasonably expected that Google was not intercepting, recording, disclosing, or using their oral communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device based on:  (i) the context in which these private oral communications occurred, namely Plaintiffs' homes and other private areas, to which access of all other persons is prohibited absent Plaintiffs' consent; (ii) a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances; and (iii) Google's status as a party who was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential oral communications.

160.    Pursuant to 18 U.S.C. §2511(1)(a), Google, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with Google Assistant and Google Assistant Enabled Devices, intentionally intercepted, intercepts, or endeavored to intercept, the content of oral communications made by Plaintiffs and Class Members without obtaining actual consent from any authorized party to the oral communication.

161.    Interception of Plaintiffs' and Class Members' private and confidential oral communications without their consent occurs when the Google Assistant switches to active listening mode without the utterance of a hot word or manual activation of the Google Assistant Enabled Device.  This interception occurred during transmission, as Google Assistant operates in real time to acquire the content of Plaintiffs' and Class Members' oral communications.  The contents of the oral communications intercepted are the verbatim utterances of Plaintiffs and Class Members.

162.    Plaintiffs and Class Members could not have, and did not, provide consent to interception of their oral communications because such consent could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

163.   Pursuant to 18 U.S.C. §2511(1)(c), Google intentionally disclosed, discloses, or endeavored to disclose to third parties the contents of Plaintiffs' and Class Members' oral communications while knowing or having reason to know that the information was obtained through the interception of the oral communications in violation of 18 U.S.C. §2511(1)(a).

164.   After Google intentionally intercepts the contents of Plaintiffs' and Class Members' oral communications without their consent, the Google Assistant records and transmits the intercepted communications over the internet to Google's servers for analysis and storage.  Google then intentionally discloses these recordings of the contents of Plaintiffs' and Class Members' intercepted communications or transcripts of these recordings to third parties in order to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

165.   Although Google is aware that the contents of Plaintiffs' and Class Members oral communications were recorded without their consent when a hot word was not uttered and the Google Assistant Enabled Device was not manually activated, Google has retained and did not destroy the unauthorized audio recordings.

166.   Pursuant to 18 U.S.C. §2511(1)(d), Google intentionally used, uses, or endeavors to use the contents of Plaintiffs' and Class Members' oral communications knowing or having reason to know that the oral communication was obtained through interception in violation of 18 U.S.C. §2511(1)(a).

167.   Google intentionally uses the contents of Plaintiffs' and Class Members' intercepted communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

168.   The practices complained of in this Count fall outside of the scope of Google's ordinary course of business because they violate Google's own policies and are in contradiction to the generally understood manner in which voice recognition software like Google Assistant is supposed to function.   As such, the surreptitious listening and recording of Plaintiffs' oral

communications does not facilitate the transmission of the oral communication at issue nor is incidental to such transmission of such communication.

169.    Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

170.    Google intercepted, disclosed, and used the contents of Plaintiffs' and Class Members' oral communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved functionality of Google Assistant and targeted personalized advertising to users.

171.    As a result, Plaintiffs and Class Members have suffered harm and injury due to the interception, disclosure, and/or use of private and personal, confidential, and sensitive communications.

172.    Pursuant to 18 U.S.C. §2520, Plaintiffs and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Google as a result of the violation or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**SECOND CLAIM FOR RELIEF**
**Violation of the SCA**
**Title II of the ECPA (18 U.S.C. §2702, *et seq.*)**
**(on Behalf of Plaintiffs and the Classes and Subclasses)**

173.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

174.    Although Plaintiffs believe that they have independent claims under both the Wiretap Act and the SCA, in the event that the Court determines any of the allegations are contradictory, Plaintiffs plead in the alternative.

175.    The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]"  18 U.S.C. §2702(a)(1).

176.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]"  18 U.S.C. §2510(12).

177.    "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]"  18 U.S.C. §2510(17)(A)-(B).

178.    "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]"   18 U.S.C. §2510(15).

179.    "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."  18 U.S.C. §2510(6).

180.    Google, as a corporation, is a person as defined under 18 U.S.C. §2510(6).

181.    Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

182.    Google's subcontractors, vendors and/or third party affiliates are persons as defined under 18 U.S.C. §2510(6).

183.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

184.   Google Assistant is a service that provides Plaintiffs and Class Members the ability to send and receive electronic communications to and from Google's servers over the internet and thus, is an "electronic communication service" within the meaning of the SCA.  Google provides an electronic communication service "to the public" because the Google Assistant is a software program that anyone within a certain proximity to a Google Assistant Enabled Device can use and because Google Assistant Enabled Devices are available for purchase and use by anyone.

185.   Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not accessing, recording, or disclosing their communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential communications.

186.   Google made unauthorized connections with Plaintiffs' and Class Members' Google Assistant Enabled Devices and transmitted to Google's servers, recordings of communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated.

187.   Plaintiffs and Class Members could not have provided consent or authorization to Google to access their electronic communications because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

188.   Google's servers store Plaintiffs' and Class Members' recorded audio for a number of purposes, including for back-up purposes.  According to Google, Plaintiffs and Class Members can access this back-up audio to view it or delete it.

189.   Pursuant to 18 U.S.C. §2702(a)(1), Google knowingly divulged the contents of Plaintiffs' and Class Members' communications while they were in electronic storage when it transmitted the recorded audio and/or transcripts to third parties for analysis or other purposes,

44

1    including improving the functionality of Google Assistant for Google's own financial benefit and

2    targeting personalized advertising to users.

3        190.    Google knowingly divulged Plaintiffs' and Class Members' communications in

4    reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit

5    to profit from the improved functionality of Google Assistant and the targeting of personalized

6    advertising to users.

7        191.    Google's actions were at all relevant times knowing, willful, and intentional as

8    evidenced by Google's admission that a portion of the recordings it shares with its contractors are

9    made without use of a hot word and its use of the information to, among other things, improve the

10    functionality of Google Assistant for Google's own financial benefit, to target personalized

11    advertising to users, and to generate significant profits.

12        192.    As a result of Google's violations of the SCA, Plaintiffs and Class Members have

13    suffered harm and injury, including but not limited to the invasion of their privacy rights, due to the

14    unauthorized disclosure of private and personal, confidential, and sensitive communications.

15        193.    Pursuant to 18 U.S.C. §2707, Plaintiffs and Class Members are entitled to:

16    (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial,

17    assessed as the sum of the actual damages suffered by Plaintiffs and the Class and any profits made

18    by Google as a result of the violation, but in no case less than the minimum statutory damages of

19    $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

20                        **THIRD CLAIM FOR RELIEF**
                          **Violation of the CIPA**
21                        **Cal. Penal Code §632**
                 **(on Behalf of Plaintiffs and the Classes and Subclasses)**

22        194.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with

23    the same force and effect as if fully restated herein.

24        195.    Cal. Penal Code §632 prohibits eavesdropping upon or recording of any confidential

25    communication, including those occurring among the parties in the presence of one another or by

26    means of a telephone, telegraph or other device, through the use of an electronic amplifying or

27    recording device without the consent of all parties to the communication.

28

                                    45

196.    Pursuant to Cal. Penal Code §7 and §632(b), Google, as a corporation, is a "person."

197.    Plaintiffs and Class Members owned or interacted with Google Assistant through Google Assistant Enabled Devices during the Class Period.

198.    Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not recording them unless they uttered a hot word or manually activated the Google Assistant Enabled Device.  Google was not an intended party to or recipient of Plaintiffs' and Class Members' confidential communications.  Google's actions would be highly offensive to a reasonable person.

199.    Google Assistant and Google Assistant Enabled Devices created recordings that were transmitted to Google of Plaintiffs' and Class Members' confidential communications not preceded by the utterance of a hot word or where the Google Assistant Enabled Device was not manually activated during the Class Period.  These recordings were made without Plaintiffs' consent.

200.    Plaintiffs and Class Members could not have provided consent or authorization because such consent or authorization could only apply to instances when a hot word was uttered or the Google Assistant Enabled Device was manually activated, and not otherwise.

201.    Google has publicly acknowledged that such unauthorized recording occurred during the Class Period.

202.    By recording Plaintiffs and Class Members without consent when a hot word was not uttered or the Google Assistant Enabled Device was not manually activated, Google "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to . . . record the confidential communication" in violation of California law.  Cal. Penal Code §632.

203.    Google engaged in the acts and practices complained of herein for purposes of acquiring and using the content of Plaintiffs' and Class Members' communications to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits.

204. Google's actions were at all relevant times knowing, willful, and intentional as evidenced by Google's admission that a significant portion of the recordings it shares with its contractors are made without use of a hot word and its use of the information to, among other things, improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate significant profits. Google's actions were done in reckless disregard for Plaintiffs' and Class Members' privacy rights.

205. Although Google is aware that the contents of Plaintiffs' and Class Members oral communications were recorded without their consent when a hot word was not uttered and the Google Assistant Enabled Device was not manually activated, Google has retained and did not destroy the unauthorized audio recordings.

206. As a result of Google's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

207. Google is able, and the Court should require it, to destroy the unauthorized recordings of Plaintiffs' and the Class Members' interactions with Google Assistant Enabled Devices, and to implement functionality sufficient to prevent unauthorized recordings in the future.

208. Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, and to implement functionality sufficient to prevent unauthorized recordings in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; (2) damages of $5,000 per violation under Cal. Penal Code §637.2; and (3) costs and reasonable attorneys' fees under Cal. Civ. Proc. Code §1021.5.

**FOURTH CLAIM FOR RELIEF**
**Intrusion Upon Seclusion**
**(on Behalf of Plaintiffs and the Classes and Subclasses)**

209. Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

210.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

211.    Google's business practice of intercepting, recording, transmitting, and disclosing Plaintiffs' and Class Members' communications on the Google Assistant Enabled Devices without their consent constituted an intentional intrusion upon the Plaintiffs' and Class Members' solitude or seclusion in that Google effectively placed itself in the middle of a conversation to which it was not invited, welcomed, or authorized.

212.    Plaintiffs and Class Members did not consent to, authorize, or know about Google's intrusion at the time it occurred.  Plaintiffs and Class Members never agreed that Google Assistant would record their conversations without the utterance of a hot word or it being manually activated, whether it be via consent provided through Plaintiffs' and Class Members' Google accounts, internet service providers, or web-browsers, and never agreed that Google would disclose those recorded conversations to third parties.

213.    Google's intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.  Plaintiffs and Class Members reasonably expected, based on a general understanding of how voice recognition software like Google Assistant is supposed to function and based on Google's own assurances, that Google was not listening to, recording, disclosing, or misusing their oral communications unless they uttered a hot word or manually activated the Google Assistant Enabled Device.

214.    Google's intentional intrusion into Plaintiffs' and Class Members' private conversations was highly offensive to a reasonable person in that it violated federal and state criminal and civil laws designed to protect individual privacy.

215.    The surreptitious taking and disclosure of personal, confidential, and private information from hundreds of thousands of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms.  Privacy polls and

studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is harvested or shared.

216.    Google intentionally engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

217.    As a result of Google's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

218.    Unwanted access to data by electronic or other covert means, in violation of the law or social norms is actionable under California law.

219.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

220.    Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

## FIFTH CLAIM FOR RELIEF
### Invasion of Privacy
### Art. I, Sec. 1 of the California Constitution
### (on Behalf of Plaintiffs and the Classes and Subclasses)

221.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

222.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Art. I., Sec. 1, Cal. Const.

223.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and

1   (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an

2   egregious breach of the social norms.

3       224.    The right to privacy in California's constitution creates a right of action against

4   private and government entities.

5       225.    Google has intruded upon Plaintiffs' and Class Members' legally protected privacy

6   interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of sensitive

7   and confidential information ("informational privacy"); (ii) interests in making intimate personal

8   decisions or conducting personal activities without observation, intrusion, or interference

9   ("autonomy privacy"); (iii) the Wiretap Act as alleged herein; (iv) the SCA as alleged herein;

10  (v) CIPA; and (vi) the Google TOS and Privacy Policy and other public assurances that Google does

11  not intercept, record, disclose, and/or use people's conversations without their consent and/or

12  without Plaintiffs' and Class Members' speaking the hot words that switch Google Assistant

13  Enabled Devices into active listening mode.

14      226.    The confidential and sensitive information, which Google intercepted, recorded,

15  transmitted, and disclosed without Plaintiffs' and Class Members' authorization and/or consent

16  included, *inter alia*, Plaintiffs' and Class Members' bedroom conversations between parents and

17  their children and professional phone calls.  Plaintiffs and Class Members had a legally protected

18  informational privacy interest in the confidential and sensitive information as well as an autonomy

19  privacy interest in conducting their personal activities without observation, intrusion, or

20  interference.

21      227.    Plaintiffs and Class Members had a reasonable expectation of privacy in the

22  circumstances in that: (i) Defendants' invasion of privacy occurred during private and confidential

23  conversations that Plaintiffs and Class Members had to the exclusion of everyone else; (ii) Plaintiffs

24  and Class Members did not consent or otherwise authorize Google to intercept, record, disclose, or

25  use their private information; (iii) Plaintiffs and Class Members could not reasonably expect Google

26  would commit acts in violation of federal and state civil and criminal laws protecting privacy;

27  (iv) Google affirmatively assured Plaintiffs and Class Members it would not listen to, record,

28

disclose, and/or use their private communications without their consent or authorization by speaking a hot word or manually activating the Google Assistant Enabled Device into active listening mode.

228.    Google's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely, the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for one purpose in order to serve other purposes; (ii) the invasion deprived Plaintiffs and Class Members of the ability to control circulation of personal information, which is considered fundamental to the right to privacy; and (iii) the invasion violated several federal and state criminal laws, including, *inter alia*, the Wiretap Act, the SCA, and CIPA.

229.    Google's invasion violated the privacy rights of *at least* hundreds of thousands of Class Members, including Plaintiffs, without their authorization or consent.  Committing criminal acts against *at least* hundreds of thousands of Class Members, including Plaintiffs, constituted an egregious breach of social norms.

230.    The surreptitious and unauthorized interception, recording, disclosure, and misuse of hundreds of thousands of Class Members', including Plaintiffs', personal confidential information constituted an egregious breach of social norms.

231.    Google lacked any compelling or legitimate business interest in listening to, recording, disclosing, and misusing the personal private and confidential information of *at least* hundreds of thousands of Class Members, including Plaintiffs, who did not consent or authorize Google's behavior.

232.    Google intentionally engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and to generate substantial profit.

233.    As a result of Google's actions, Plaintiffs and Class Members have been damaged as a direct and proximate result of Google's invasion of their privacy and are entitled to just compensation.

234.   Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by Google as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

**SIXTH CLAIM FOR RELIEF**
**Breach of Contract**
**(on Behalf of Plaintiffs and the Classes and Subclasses)**

235.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

236.   As detailed below, Plaintiffs entered into a valid contract with Google, a contract which Google breached in three separate and distinct ways: (1) by recording Plaintiffs' private conversations when they are not using their Google Assistant Enabled Devices; (2) by disclosing to third parties Plaintiffs' private conversations without their consent; and (3) by changing the way Defendants collected and used information without Plaintiffs' knowledge or consent.

237.   Plaintiffs purchased and/or owned and used one or more Google Assistant Enabled Devices.  Google Assistant is a computer program developed by Google that is pre-installed on numerous electronic devices, including phones, speakers, displays, cars, televisions, laptops, and tablets, manufactured by Google and other companies.  In order to use Google Assistant on any Google Assistant Enabled Device, the user must create a Google Account and agree to Google's Terms of Service ("TOS").  Google unilaterally changes its TOS from time to time.  The TOS at issue herein are the April 14, 2014, October 25, 2017, and March 31, 2020 versions, which were operative from April 14, 2014 to present.

238.   Plaintiffs Spurr, B.S., Kumandan, Hernandez, and the Google Manufactured Device Subclass purchased Google Manufactured Devices.  Google Assistant is a significant, material, and important component of these devices.  For example, absent Google Assistant, the Google Home purchased by Plaintiff Spurr has little to no value.  The value of the Google Assistant can be measured by the subtracting the cost of the Google Home hardware from the cost of the Google Home device.

239.   By agreeing to the TOS, Plaintiffs entered into a contract with Google.  Plaintiffs have fully complied with their obligations under the TOS with regard to their use of Google's services.

240.   Google Assistant Enabled Devices are subject to the Google Privacy Policy[34], which is incorporated in the TOS.  Up until March 31, 2020, the TOS expressly incorporated and expressly referred to additional websites and policies by stating:

> Google's privacy policies explain how we treat your personal data and protect your privacy when you use our Services.  By using our Services, you agree that Google can use such data in accordance with our privacy policies.

241.   Google provides a hyperlink to the Privacy Policy in its TOS.  Thus, the Privacy Policy, the TOS, and the websites referenced therein are all part of the contract between Plaintiffs and Google.[35]

242.   Google unilaterally changes its privacy policy from time to time.  The Privacy Policies at issue here are those from May 25, 2018, January 22, 2019, October 15, 2019, December 19, 2019, March 31, 2020, July 1, 2020, and September 30, 2020, which all make the identical promises that Google has breached.  The Google Privacy Policy states that Google will only collect voice and audio information from users when they "use audio features."  Specifically, under the "Your Activity" heading of the Privacy Policy, it states that "We collect information about your activity in our services, which we use to do things like recommend a YouTube video you might like. The activity information we collect may include: . . .  Voice and audio information when you use audio features."  This promise – that Google will only collect voice and audio information when users use the audio features, is the most specific promise in the Privacy Policy applicable to the voice recordings at issue in this litigation and thus governs over more general terms.

---

[34]   The Google Privacy Policies effective from May 25, 2018 to the present include identical language relating to: (1) the activity information Google collects, (2) when Google shares a user's personal information outside of Google, and (3) Google's policy on external processing.

[35]   Even after Google deleted the express incorporation of the Privacy Policy into the TOS, the Privacy policy remains independently enforceable pursuant to Cal. Bus. & Prof. Code §22576.

243.     Google breaches this promise by collecting voice and audio information when Plaintiffs and the class are not using their Google Assistant Enabled Devices.  As set forth above, a significant number of Plaintiffs' private and confidential communications were recorded by Google when Plaintiffs were not using their Google Assistant Enabled Devices, *i.e.*, when they did not utter a hot word or manually activate the devices.  Defendants collect hundreds of thousands, if not millions, of voice and audio information without consent.  These non-consensual recordings are not the result of unavoidable errors each and every time.  Rather, they represent a substantial percentage of the overall recordings obtained by Google.

244.     Google's promise to record only when audio features are in use is bolstered and repeated in its Frequently Asked Questions applicable to the Google Assistant Enabled Devices (the "FAQs").  The FAQs are part of the terms that are specific to the Google Assistant Enabled Devices as referenced in the TOS and thus incorporated into the contract.  The FAQ that is specific to the provision in Google's Privacy Policy regarding recording audio only when audio features are in use states:

> **Is Google Home recording all of my conversations?**
> No. Google Home listens in short (a few seconds) snippets for the hotword.  Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard.  When Google Home detects that you've said "Ok Google" or "Hey Google," or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request.   You can delete these recordings through My Activity anytime.[36]

Google now admits that Google Assistant Enabled Devices experience "false accepts," where the device automatically begins recording conversations despite the user not using a "hotword," but states that this occurs "on rare occasions."[37]  Google's use of the terminology "false accept" to frame its conduct as mere errors, does not comport with its persistent non-consensual recordings of

---

[36]     Previously available at: GOOGLE, Google Nest Help, Help Center, Your Privacy, *More about data security and privacy on devices that work with Assistant*, https://support.google.com/googlenest/answer/7072285?hl=en.  Google removed this promise from its website following the hearing on its initial motion to dismiss filed in this case.

[37]     https://support.google.com/googlenest/answer/7072285?hl=en (last visited 9/20/20).

54

thousands, if not millions, of private conversations and its failure to rectify the issue. As a result, Google Assistant Enabled Devices record users' private conversations without any consent, including those of Plaintiffs, and then shares them with third parties.

245.    The Google Privacy Policy also states that Google does not share personal information with companies, organizations, or individuals outside of Google except in the following cases: (1) with consent; (2) with domain administrators; (3) for external processing; and (4) for legal reasons.[38]

246.    Google's sharing of Plaintiffs' recordings was not with domain administrators. In fact, none of the Plaintiffs' accounts are managed by domain administrators.

247.    Nor were the recordings shared for the purposes of "external processing." The section of the Google Privacy Policy entitled "For external processing" makes clear that Google will provide only "personal information" for external processing, and that it will do so "in compliance with our Privacy Policy and any other appropriate confidentiality and security measures." "Personal Information" is defined as "information that you provide to us which personally identifies you, such as your name, email address, or billing information, or other data that can be reasonably linked to such information by Google, such as information we associate with your Google Account." The non-consensual audio recordings of Plaintiffs are well outside the scope of the Privacy Policy's definition of "personal information," so Google was not authorized to share these recording for external processing.

248.    Nor was Google's sharing of Plaintiffs' recordings done "for legal reasons." Rather, the sharing that is the subject of this litigation was done for non-legal business purposes, such as to increase Google's advertising revenues.

249.    The sharing of private audio recordings is therefore subject to the "consent" prong of the Privacy Policy, which states:

> We'll share personal information outside of Google when we have your consent. For example, if you use Google Home to make a reservation through a booking service, we'll get your permission before sharing your name or phone number with the

---

[38]    GOOGLE PRIVACY POLICY, https://policies.google.com/privacy (last visited 11/9/20).

restaurant.  ***We'll ask for your explicit consent to share any sensitive personal information***.[39]

[Emphasis added.]

250.    "Sensitive Personal Information" is defined in the Privacy Policy as "information relating to topics ***such as*** confidential medical facts, racial or ethnic origins, political or religious beliefs, or sexuality."  (Emphasis added.)  This contrasts with "Personal Information" which is defined as personally identifying information such as a name, email address or billing information.

251.    To the extent the Privacy Policy is unclear and ambiguous regarding whether explicit consent is required in order for Google to share personal information obtained from its users for one of the other three situations identified such as when shared for external processing, Google's other statements on the subject make it clear that it must obtain users' consent prior to sharing any audio recordings.   Google's "Commitment to Privacy in the Home," which describes how Google's Privacy Policy is implemented in the context of Google devices such as Google Assistant which are used in users' private residences clarifies this ambiguity stating:

> We will only share audio recordings from your devices with third-party apps and services that work with our devices if you or a member of your home explicitly gives us permission, and we'll only ask for this permission in order to provide a helpful experience from an approved partner (such as a home security service provider).[40]

Therefore, Google must obtain explicit consent whenever it seeks to share audio recordings from Google Assistant Enabled Devices, even when sharing them for external processing.  Here, Google shares the non-consensual recordings with third parties to improve the functionality of the Google Assistant Enabled Devices.  Google's failure to obtain explicit consent thus violates the terms of its Privacy Policy and contract.

252.    Google's Privacy Policy also states that "[t]he information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls."

---

[39]    *Id.*

[40]    This was previously available at: https://support.google.com/googlenest/answer/7072285?hl=en, but was removed following the hearing on Google's initial motion to dismiss in this case.

253.    Google breached this provision of the contract with Plaintiffs Hernandez and Brekhus and the Purchaser Class and Subclass because it changed the method that Google collected information and changed the way the information was used without regard to how Plaintiffs and the Purchaser Subclass used the services or managed their privacy controls, without notice to or consent by Plaintiffs.  As alleged herein, Google changed the method of collecting information from being based on actions by the user, such as manual activation or using "hot words," to being based on sounds not made by the user necessarily, but by other items in the home such as smoke alarms, glass breaking, or other noises.  That information was then used not to respond to a request from the user, but instead to alert user to the sound.

254.    As a result of Google's breach of the TOS and Privacy Policy, Plaintiffs have suffered damages in an amount to be determined at trial.  Specifically, the services Plaintiffs Kumandan, Spurr, B.S., Hernandez, and Google Manufactured Device Subclass Members received in exchange for the purchase price of Google Assistant Enabled Devices were worth less than the services they paid for because Plaintiffs' information was recorded without their consent and divulged to third parties.  Plaintiffs Kumandan, Spurr, Hernandez and Google Manufactured Device Subclass Members would not have purchased, or would not have paid as high a price, for the Google Assistant Enabled Devices if they had known that Google would breach the TOS and Privacy Policy by recording and revealing Plaintiffs private conversations.  Plaintiffs purchased and/or owned and used Google Assistant Enabled Devices with privacy protections set forth in the TOS and Privacy Policy and did not receive what they paid for.

255.    In addition, or in the alternative, Plaintiffs and the Class seek damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interest.  By sharing the private audio conversations discussed herein, Google invaded Plaintiffs' privacy interests by disclosing their private conversations to third parties without Plaintiffs' consent.  As a result of Google's breach of the Privacy Policy and TOS, Plaintiffs have suffered damages.

256.    Google engages in the misconduct alleged herein to improve the functionality of Google Assistant for Google's own financial benefit, to target personalized advertising to users, and

to generate substantial profit.  The unlawfully-obtained private conversations have financial value, in that they enabled Google to improve the functionality of the Google Assistant and to better target advertisements to Google users, thereby increasing Google's revenue.  In sharing these unlawfully-obtained private conversations to improve the functionality of its products for its own financial benefit, Google profits from increased sales of its products and services.  Plaintiffs are entitled to disgorgement of the profits Google has obtained as a result of the improved functionality of Google Assistant resulting from its sharing of private conversations in breach of its contract with Plaintiff and Class Members.

**SEVENTH CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law**
**Cal. Business & Professions Code §17200, *et seq*.**
**(on Behalf of Plaintiffs and the Classes and subclasses)**

257.  Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

258.  Google engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Google unlawfully intercepted, recorded, disclosed, and otherwise misused Plaintiffs' and Class Members' interactions without consent in violation of the Wiretap Act, SCA, California common law, California Constitution, CIPA, and Cal. Penal Code §632, the CLRA, and the FAL as described herein.  In addition, Google's breach of its privacy policy alleged above constitutes a violation of Cal. Bus. & Prof. Code §22576.  Further, Google's breaches of its contract with Plaintiffs and the Class constitutes unlawful acts under the UCL.

259.  Google also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Google failed to disclose during the Class Period that these Google Assistant Enabled Devices were intercepting, recording, disclosing and otherwise misusing Plaintiffs' and Class Members' speech without their consent.  Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's

conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided.  Defendants' conduct is unfair under each of these tests.  Google's conduct alleged is unfair under all of these tests.

260.    As described above, Google's conduct violates the policies of the statutes referenced above.  The gravity of the harm of Google's secret intercepting, recording, disclosure, and other misuse of Plaintiffs' and Class Members' communications is significant and there is no corresponding benefit to consumers of such conduct.  Finally, because Plaintiffs and Class Members were completely unaware of Google's secret recordings and disclosure, they could not have possibly avoided the harm.

261.    Had Plaintiffs known that their communications would be intercepted, recorded, disclosed, and misused, they would not have purchased a Google Assistant Enabled Device, would have paid less for them, or would have disabled Google Assistant and/or would not have had private conversations in the presence of the devices.  Plaintiffs and Class Members have a property interest in any recordings of their communications.  By surreptitiously intercepting, recording, disclosing, or otherwise misusing Plaintiffs' and Class Members' communications, Google has taken property from Plaintiffs and Class Members without providing just or any compensation.

262.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete all recordings of Class Members, to cease further recording, to implement functionality sufficient to prevent unauthorized recordings in the future, to cease disclosing communications of the Class to third parties without prior consent, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent; and (2) as to the Google Manufactured Device Subclass, restitution of Plaintiffs Spurr's, Kumandan's, and Hernandez's and the Google Manufactured Device Subclass Members' money and property lost as a result of Google's acts of in violation of the UCL.

**EIGHTH CLAIM FOR RELIEF**

**(Violation of the Consumers Legal Remedies Act (the "CLRA"),
California Civil Code §1750, *et seq.* (on behalf of Plaintiffs Brekhus and Hernandez
and the Purchaser Subclass)**

263.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

264.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

265.    Plaintiffs and other Class Members are "consumers" as that term is defined by the CLRA in California Civil Code §1761(d).

266.    The products that Plaintiffs (and other similarly situated Class Members) purchased or used from Defendants were "goods" within the meaning of California Civil Code §1761(a).

267.    The practices described herein, specifically Defendants' acts and practices described herein were intended to result in the sale and use of the Product to and by the consuming public and have violated, and continue to violate, §1770(a)(5), §1770(a)(7), §1770(a)(8), and §1770(a)(9) of the CLRA.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the Google Home devices have approval, characteristics, uses and/or benefits that they do not have, (*e.g.*, that the Product only saves and sends information to Google with the use of the predetermined activation words such as "Hey Google" or "Okay Google").  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that Google Home devices are of a particular standard, quality, or grade, when they are of another.  Finally, in violation of California Civil Code §1770(a)(9), Defendants have advertised the Google Home devices with intent not to sell them as advertised.

268.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code §1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.  This is particularly true because,

as reported by the publication *Protocol*, Google has declined to state whether it has plans to engage in the same conduct in the future (*see supra*, Paragraph 100).

269.   **CIVIL CODE §1782 NOTICE.**   Plaintiffs Brekhus and Hernandez's original complaint filed on August 7, 2020 provided Defendants with notice and demanded that Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein.   Defendants failed to do so within thirty (30) days of the failing of the Complaint.   Accordingly, Plaintiffs seek, pursuant to California Civil Code §1780(a)(3), on behalf of themselves and those similarly situated Class Members, compensatory damages, punitive damages, and restitution of all ill-gotten gains due to Defendants' acts and practices.

270.   Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code §1780(d).

### NINTH CLAIM FOR RELIEF
**(Common Law Fraud, Deceit, and/or Misrepresentation on behalf of
Plaintiffs Brekhus and Hernandez, the Purchaser Class and the Purchaser Subclass)**

271.   Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

272.   Defendants have fraudulently and deceptively informed Plaintiffs that the Google Home Product had adequate security measures in place and that Defendants would not misuse their personal information.   Further, Defendants failed to disclose that users' private information could be shared with Defendants without the use of the spoken activation phrase, manual activation, or inadvertent recording based on a sound that resembled the activation phrase.

273.   These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made.   Defendants knew that users' private information would be shared with Defendants under circumstances other than those represented by Defendants.   Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to use and/or purchase the Product.   In misleading Plaintiffs and not so informing Plaintiffs,

Defendants breached their duty to them.  Defendants also gained financially from, and as a result of, their breach.

274.    Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase or use the Product; (ii) purchasing or using the Product less frequently; (iii) using the Product differently (such as unplugging it or muting it at appropriate times); and/or (iv) paying less for the Product.

275.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase and/or use the Product.

276.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

277.    As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid to obtain the Product.

278.    Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

### TENTH CLAIM FOR RELIEF
**Request for Relief under the Declaratory Judgment Act**
**28 U.S.C. §2201, *et seq.***
**(on Behalf of Plaintiffs and the Classes and Subclasses)**

279.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

280.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

1   necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are

2   tortious and that violate the terms of the federal and state statutes described in this complaint.

3         281.    An actual controversy has arisen in the wake of Defendants' intercepting, recording,

4   disclosure, and misuse of Plaintiffs' and Class members' communications without their consent as

5   alleged herein in violation of Defendants' common law and statutory duties.

6         282.    Plaintiffs continue to suffer injury and damages as described herein as Defendants

7   continue to intercept, record, disclose, and misuse Plaintiffs' and Class Members' communications.

8         283.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter

9   a judgment declaring, among other things, the following:

10              a.      Defendants continue to owe a legal duty to not intercept, record, disclose, and

11       otherwise misuse Plaintiffs' and Class Members' confidential communications under, *inter*

12       *alia*, the common law, the Wiretap Act, the SCA, CIPA, Cal. Penal Code §632, and Cal.

13       Bus. & Prof. Code §22576;

14              b.      Defendants continue to be in breach of their contract with Plaintiffs and

15       members of the Class and Subclass;

16              c.      Defendants continue to breach their legal duties and be in breach of their

17       contract with Plaintiffs and Class Members by continuing to intercept, record, disclose, and

18       misuse Plaintiffs' and Class Members' confidential communications; and

19              d.      Defendants' ongoing breaches of their legal duty and breach of contract

20       continue to cause Plaintiffs and Class Members harm.

21        284.    The Court should also issue corresponding injunctive relief, including but not limited

22   to enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring

23   Google to delete all recordings of Class Members, to cease further recording, and to implement

24   functionality sufficient to prevent unauthorized recordings in the future, and other appropriate

25   equitable relief, including but not limited to improving its privacy disclosures and obtaining

26   adequately informed consent.

27

28

285.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct

286.    Federal and state laws prohibit, among other things, interception, recording, disclosure, and other misuse of confidential communications without consent, particularly those that take place in the sanctity of one's own home – a historically protected zone of privacy.  California specifically recognizes privacy as a fundamental right.  Given that Google admits that it continues to intercept, record, disclose, and misuse confidential communications, the risk of continued violations of federal and California law is real, immediate, and substantial.  Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

287.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued.  On the other hand, the cost to Defendants of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

288.    Issuance of the requested injunction will serve the public interest by preventing ongoing intercepting, recording, disclosure, and misuse of confidential communications without consent, thus eliminating the injuries that would result to Plaintiffs, the Class and the Subclass, and the potentially hundreds of thousands of consumers who purchased Google Assistant Enabled Devices or resided in a household with a purchaser.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Classes and Subclasses respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Classes and Subclasses defined above, appointing Plaintiffs as representatives of the Classes and Subclasses, and appointing their counsel as class counsel;

1         B.       Declaring that Google's actions, as set out above, violate the Wiretap Act cited

2 herein;

3         C.       Declaring that Google's actions, as set out above, violate the SCA cited herein;

4         D.       Declaring that Google's actions, as set out above, violate California's privacy laws

5 cited herein;

6         E.       Declaring that Google's actions, as set out above, constitute breach of contract;

7         F.       Declaring that Google's actions, as set out above, violate California's Bus. & Prof.

8 Code cited herein;

9         G.       Requiring Google to delete all recordings of Members of the Class and Subclass,

10 cease further recording, and implement functionality to prevent further recording of the Class and

11 Subclass without prior consent, and to cease disclosing communications of the Class and Subclass

12 to third parties without prior consent;

13        H.       Requiring Google to undertake measures to cure the harm caused to the Class and

14 Subclass by its wrongdoing, as alleged herein, including, but not limited to improving its privacy

15 disclosures and obtaining adequately informed consent;

16        I.       Awarding damages, including nominal and statutory damages, and restitution where

17 applicable, to Plaintiffs and the Classes and Subclasses in an amount to be determined at trial;

18        J.       Awarding Plaintiffs and the Classes and Subclass their costs of suit, including

19 reasonable attorneys' fees and expenses;

20        K.       Awarding Plaintiffs and the Classes and Subclass pre-and post-judgment interest, to

21 the extent allowable;

22        L.       Enjoining Google from further engaging in the unlawful conduct alleged herein;

23        M.       Awarding such other further injunctive and declaratory relief as is necessary to

24 protect the interests of Plaintiffs and the Classes and Subclasses; and

25        N.       Awarding such other and further relief as the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

27    Plaintiffs demand a trial by jury for all issues so triable.

Dated:  November 9, 2020

**LEXINGTON LAW GROUP**

_s/ Mark N. Todzo_

Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Stephanie A. Hackett (Bar. No. 238655)
Hal C. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
shackett@scott-scott.com
hcunningham@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone: (205) 612-0243
kirk@woodlawfirmllc.com

Dated: November 9, 2020

**GUTRIDE SAFIER LLP**

*s/ Hayley Reynolds*
Seth A. Safier (Bar No. 197427)
Hayley A. Reynolds (Bar No. 306427)
Tekesha Geel
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-04286-BLF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 9, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Mark N. Todzo*
Mark N. Todzo

THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-04286-BLF