Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA  94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com
esomers@lexlawgroup.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION <br><br> This Document Relates to: <br><br> ALL ACTIONS | Master Docket No.: 19-cv-04286-BLF <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> Judge:  Beth Labson Freeman <br> Date:   May 6, 2021 <br> Time:  9:00 a.m. <br> Dept.:  Courtroom 3 – 5th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ISSUES TO BE DECIDED ................................................................................. 2

III.    FACTUAL BACKGROUND .............................................................................. 3

     A.    Background on Google Assistant ............................................................... 3

     B.    Google Intercepts, Records, Discloses, and Otherwise Misuses Individuals'
        Private and Confidential Communications Without Consent ...................... 3

     C.    Plaintiffs and the Class Have a Reasonable Expectation of Privacy in  Their
        Confidential Communications ..................................................................... 4

IV.    ARGUMENT ...................................................................................................... 4

     A.    Plaintiffs State a Claim for Violation of the State and Federal Privacy Laws .......... 5

        1.    Plaintiffs Sufficiently Allege Interception of Oral Communication for
            Purposes of Their Privacy Claims .............................................. 5

        2.    Plaintiffs Sufficiently Alleged that False Accepts Routinely Occur ............ 8

        3.    Plaintiff Galvan and E.G. State a Claim for Unlawful Use and
            Disclosure under the Wiretap Act .............................................. 9

     B.    Plaintiffs State a Claim under Section 2702(a)(1) of the SCA Based on
        Targeted Advertising ................................................................................ 11

     C.    Plaintiffs Adequately Allege That Google Breached its Contracts with
        Plaintiffs and the Class .............................................................................. 11

        1.    Plaintiffs' Contract Claim Is Based on Defendant's TOS and Privacy
            Policy, Not Defendants' Website ............................................... 12

        2.    Plaintiffs Properly Allege that Google Breached the Terms of Its
            Contract ...................................................................................... 13

            a.    Google Breached Its Promise Not to Collect Users' Information
               While Not Using Audio Features ................................. 13

            b.    Plaintiffs Properly Allege that by Disclosing Recordings of
                Private Conversations to Third Parties, Google Breached the
               Contract ...................................................................... 14

        3.    Plaintiffs Sufficiently Allege a Breach Based on Google's Unilateral
            Changes to Its Collection and Use of Information ...................... 16

        4.    Plaintiffs Sufficiently Allege Contractual Damages .................. 17

     D.    Plaintiffs State a Claim Under California's Unfair Competition Law .................. 18

        1.    Plaintiffs Have Standing Under the UCL .................................. 18

        2.    Plaintiffs' Allegations Satisfy the UCL's Unlawful Prong ....................... 20

        3.    Plaintiffs' Allegations Satisfy the UCL's Unfair Prong ............................ 20

     E.    Plaintiffs Adequately Allege Claims Pursuant to the CLRA and Common Law
        Fraud/Deception ....................................................................................... 21

        2.    Plaintiffs Have Standing to Pursue Their CLRA Claims ........................... 23

        4.    Plaintiffs State a Claim Pursuant to the Declaratory Judgment Act............ 25

V.     CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...............................................................................18, 25

*Anderson v. TCAM Core Prop. Fund Operating LP*,
   No. 14-cv-01932, 2015 WL 268872 (C.D. Cal. Jan. 14, 2015) ..............................................6, 7

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ...............................................................................18, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................5

*Avedisian v. Mercedes-Benz USA, LLC*,
   No. 12-cv-00936, 2013 WL 2285237 (C.D. Cal. May 22, 2013) ..............................................24

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) .......................................................................................10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999)...............................................................................................................20

*Chose v. Accor Hotels & Resorts (Md.) LLC*,
   No. 19-cv-06174-HSG, 2020 WL 759365 (N.D. Cal. Feb. 14, 2020) ......................................17

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) ........................20

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)...............................................................................................17, 22, 23

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012)...................................................................................................20

*In re Facebook Privacy Litigation*,
   572 Fed. Appx. 494 (9th Cir. 2014) .........................................................................................17

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................................................24

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F. 3d 589 (9th Cir. 2020)..............................................................................................11, 19

*Faulkner v. ADT Sec. Servs., Inc.*,
   706 F.3d 1017 (9th Cir. 2013)....................................................................................................7

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002).............................................................................................5

*Foad Consulting Group, Inc. v. Azzalino*,
    270 F.3d 821 (9th Cir. 2001)...............................................................................16

*In re Google Referrer Header Privacy Litig.*,
    465 F. Supp. 3d 999 (N.D. Cal. 2020) ................................................................17

*Graham v. Scissor-Tail*,
    28 Cal. 3d 807 (Cal. 1981) ..................................................................................14

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..............................................................24

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ..............................................................20

*Hoffa v. United States*,
    385 U.S. 293 .........................................................................................................7

*Huff v. Spaw*,
    794 F.3d 543 (6th Cir. 2015) ................................................................................8

*Katz v. United States*,
    389 U.S. 347 (1967) .............................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ......................................................................................19

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011).....................................................................................18, 19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ...........................................................................................25

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012)................................................................2

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................................23

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009)................................................................................9

*In re Packaged Seafood Prods. Antitrust Litig.*,
    277 F. Supp. 3d 1167 (S.D. Cal. 2017) ...........................................................18, 19

*Rojas v. HSBC Card Servs. Inc.*,
    20 Cal. App. 5th 427 (2018)................................................................................9

iii

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ...........................................................................14

*Sachell v. Sonic Notify, Inc*.,
    234 F. Supp. 3d 996 (2017) ..............................................................................7

*Schauer v. Mandarin Gems of Cal., Inc.*
    125 Cal. App. 4th 949 (2005) ..........................................................................24

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    Case No. 3:19-cv-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020) .........................18

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ..............................................................25

*U.S. v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) ...........................................................................18

*United States v. McIntyre*,
    582 F.2d 1221 (9th Cir. 1978) ....................................................................5, 6, 8

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .........................................................................22

*United States v. Wahchumwah*,
    710 F.3d 862 (9th Cir. 2013) ............................................................................7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .........................................................................22

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................................2, 3, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-2752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...........................20

**Statutes, Rules & Regulations**

18 U.S.C. §§2510 .....................................................................................................1

18 U.S.C. §2510(2) ...................................................................................................5

18 U.S.C. §§2511(1)(c) .....................................................................................5, 9, 10

18 U.S.C. §§2511(1)(d) .....................................................................................5, 9, 10

18 U.S.C. §§2702 .....................................................................................................1

18 U.S.C. §2702(a) ........................................................................................1, 11, 20

CIPA §632 ..........................................................................................1, 5, 20, 21

Fed. R. Civ. P. 9(b)........................................................................................21, 22

Fed. R. Civ. P. 12(g)(2)........................................................................................18

Fed. R. Civ. P. 57.................................................................................................25

Cal. Bus. & Prof. Code §17204..............................................................................18

Cal. Civ. Code §1750............................................................................................1

Cal. Civ. Code §1761(d)...................................................................................23, 24

Cal. Civ. Code §1761(e)...................................................................................23, 24

Cal. Civ. Code §1770(a)........................................................................................23

Cal. Civ. Code §1780(a)........................................................................................23

Cal. Bus. & Prof. Code §17200.............................................................................1

## I.    INTRODUCTION

In the Third Amended Consolidated Complaint ("TAC"), Plaintiffs allege that Google illegally listens to Plaintiffs' and Class members' confidential communications, including those which occur within the sanctity of their homes.  ECF No. 118, filed Nov. 9, 2020.  Google records conversations and transmits them to third parties without Plaintiffs' and Class members' knowledge or authorization despite Google's assurances that it would not listen to, record, disclose, and/or use users' private communications without Plaintiffs' and the Class members' prior consent.  Google also changed the conditions under which Plaintiffs' Google devices would transmit recordings without notice or consent of consumers.  Google does so for its financial benefit, namely to improve the functionality of its technology, to target users with personalized advertisements, and to benefit from partnerships with third parties.  Google's conduct invades Plaintiffs' and the Class members' constitutional, statutory, and common law privacy rights and thereby violates federal and California laws, including the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. §§2510, *et seq.,* Stored Communications Act ("SCA"), 18 U.S.C. §§2702, *et seq.*, California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, the Consumer Legal Remedies Act ("CLRA"), California Civil Code §1750, and constitutes a breach of contract between Google and Plaintiffs and the Class.

In its Order re Defendants' Motion to Dismiss, dated May 6, 2020 (ECF No. 80) ("MTD Order"), the Court found that Plaintiffs adequately stated a claim for unlawful disclosure under §2702(a) of the SCA based on Plaintiffs' allegations that Google discloses the recordings to subcontractors for review and analysis (MTD Order at 20-21), and also stated a claim brought pursuant to the "unlawful" prong of the UCL. *Id*. at 47-48.  Additionally, the Court found that Plaintiffs failed to adequately allege interception of "oral communications" that were subject to a reasonable expectation of privacy, which is an element of Plaintiffs' claims for violation of the Wiretap, CIPA §632, intrusion upon seclusion, and invasion of privacy under California law. *Id*. at 11-12, 27-28, 31-33.  To cure the deficiencies, Plaintiffs made additional allegations of "oral communications," including particularized details concerning "the participants of the conversations, the location of the conversations, and examples of content from the conversations." *Id*. at 12.

In its renewed motion to dismiss ("MTD"), Google argues three main points, all of which

1

fail: first, Google repeats its mantra that Plaintiffs' allegations of oral communications are insufficient to establish a reasonable expectation of privacy.  MTD at 7-10.  Google simply ignores the plethora of detailed allegations Plaintiffs added.  Indeed, details that Plaintiffs added squarely addresses this Court's guidance (MTD Order at 11-12), and goes beyond what other courts within this circuit require.  *See, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.,* 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012).  Indeed, the TAC includes allegations of private conversations between parent and child that were recorded in Plaintiffs' homes without the utterance of a hot word or manual activation of the Google Assistant Enabled Devices ("GAEDs").  ¶¶22, 32.[1]  Second, Google argues that Plaintiffs failed to allege unlawful use or disclosure by virtue of being targets of personalized advertisement.  MTD at 12-13.  Google, however, admits to the practice of sharing users' information for advertising purposes and to the display of personalized ads on users' devices in its own Privacy Policy.  Bali Decl., Exh. B;[2] *see, e.g., In re Yahoo Mail Litig.,* 7 F. Supp. 3d 1016, 1034 (N.D. Cal. 2014).  Third, Google claims that the recordings either resulted from a mistaken detection of hot words or that the change in conditions for transmitting audio are disclaimed, and therefore, Google escapes liability altogether.  MTD at 7-10.  But Google's "oops, sorry" defense is insufficient to sanitize its widespread nonconsensual recording of its users' confidential conversations and failure to address the problem or its express contractual promise that it will not record their confidential communications when they do not activate the GAEDs.

In sum, Google cannot explain away its persistent and known practice of recording users' private communications without their consent and authorization, Google's change in circumstances under which recordings would be transmitted, and Google's subsequent misuse of the users' private information for its own financial benefit and for the benefit of its affiliates and partners for marketing purposes.  Google's motion to dismiss should be denied in its entirety.

## II.    ISSUES TO BE DECIDED

Whether Plaintiffs plead sufficient facts, taken as true, to state claims for relief in the TAC.

[1]    All references to "¶" and "¶¶__" are to the TAC.

[2]    Declaration of Sunita Bali in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Consolidated Class Action Complaint, ECF No. 121, filed Dec. 18, 2020 ("Bali Decl.").

III.     **FACTUAL BACKGROUND**

A.      **Background on Google Assistant**

Google develops and manufactures Google Assistant, a computer program that provides its users with access to information available on the internet and/or control over other internet-connected devices using their voice.  ¶¶80-81.  Google Assistant is pre-installed on devices manufactured by Google, such as Google Home, Home Mini, and Home Max, or can be downloaded onto smartphones and other devices manufactured by third parties, referred to as GAEDs.  ¶¶4, 79.  Google Assistant can be placed into "active listening" mode by uttering a "hot word" or by pressing a button on the device on which it is installed.  ¶82.  Being placed in an "active listening" mode allows GAEDs to respond to the user's commands issued after a hot word or manual activation.  *Id.*

B.      **Google Intercepts, Records, Discloses, and Otherwise Misuses Individuals' Private and Confidential Communications Without Consent**

Unbeknownst to Plaintiffs and the Class members – and contrary to Google's representations and assurances – Google has been recording Plaintiffs' and Class members' private conversations without their knowledge or consent.  For years, Google recorded Plaintiffs' and Class members' oral communications in the absence of a hot word or activation, including in instances where nothing remotely resembling a hot word was being spoken.  As set forth in Plaintiffs' TAC, each Plaintiff had private communications recorded by Google without their knowledge or consent.  These recordings were highly offensive to Plaintiffs because they captured private moments between Plaintiffs and their family and friends.  ¶¶23, 25, 34, 41, 51-54, 68.  The detailed allegations of Google's nonconsensual recordings are those Plaintiffs were able to access without discovery.

To make things worse, on July 10, 2019, Plaintiffs and Class members learned that "thousands" of Google's subcontractors are systematically listening to audio files recorded by Google Home smart speakers and the Google Assistant smartphone app from devices around the world, including audio not preceded by a hot word.  ¶102.  In fact, more than a thousand audio recordings were leaked to a Belgian news outlet for their review, which concluded that at least 153 conversations "should never have been recorded [because] the command 'Okay Google' was clearly not given."  ¶104.  Following the release of these reports, Google admitted that it uses human language reviewers to listen to recorded conversations even when no hot word is uttered.  ¶103.

In 2020, Google continued to invade the privacy of users by recording and transmitting other types of audio captured inside user's homes without the notice or consent of users.  Specifically, Google executed a backend software change that made it so certain GAEDs recorded and transmitted audio when certain "alarm events" were detected by the devices.  ¶¶ 108-114.

### C.   Plaintiffs and the Class Have a Reasonable Expectation of Privacy in Their Confidential Communications

Plaintiffs and the Class have a reasonable expectation of privacy in their confidential and private communications.  ¶¶87-89.  California specifically recognizes privacy as a fundamental right, and accordingly, the California Constitution, as well as California privacy laws prohibit, *inter alia*, eavesdropping, recording, and sharing of confidential communications without the consent of all parties to the communication.  ¶85.  Google expressly and impliedly assures Plaintiffs and the Class that GAEDs will ***only*** listen to and record their private confidential communications if users speak a hot word or otherwise manually activate "active listening" mode.  ¶90.  To that effect, Google provides the following assurance:

> **Is Google Home recording all of my conversations?**
>
> ***No. Google Home listens in short (a few seconds) snippets for the hot word. Those snippets are deleted if the hot word is not detected, and none of that information leaves your device until the hot word is heard.*** When Google Home detects that you've said "Ok Google" or "Hey Google", or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hot word recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime.

*Id.*[3]  Google's Privacy Policy also warranted that recordings from GAEDs will not be shared with third parties.  *Id.*  Thus, Google assured Plaintiffs that their confidential conversations would not be listened to, let alone recorded and disseminated to third parties absent their authorization.  *Id.*

Plaintiffs specifically allege that they interacted with their GAEDs in places where they had a reasonable expectation of privacy, including in their homes and other places where they have a reasonable expectation of privacy.  *See* ¶¶20, 31, 39.

### IV.   ARGUMENT

A motion to dismiss should be denied where the complaint "'state[s] a claim to relief that is

---

[3]      Unless otherwise indicated, emphasis is added and citations are omitted.

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### A. Plaintiffs State a Claim for Violation of the State and Federal Privacy Laws

In the MTD Order, the Court considered Plaintiffs' claims relating to the Wiretap Act (*id*. at 8-16), CIPA §632 (*id*. at 27-29), intrusion upon seclusion, and invasion of privacy under the California Constitution (*id*. at 29-32).  The Court found that Plaintiffs failed to sufficiently plead that their expectation of privacy was objectively reasonable, which is an element of each of Plaintiffs' state and federal privacy claims and the sole grounds on which the claims were dismissed.  *See generally* MTD Order.  In addition to the assertions regarding expectation of privacy, Plaintiffs added new allegations regarding Google's practice of sharing users' information for purposes of supplanting users' devices with personalized advertisements.  ¶33.  These allegations are the predicate acts for claims for unlawful disclosure under the federal Wiretap Act, §§2511(1)(c)-(d).

Accordingly, while Sections IV.A.1-2 focuses on the sufficiency of Plaintiffs' allegations of their "objectively reasonable" expectation of privacy as it relates to the state and federal privacy claims, Section IV.A.3 addresses Plaintiffs' allegations regarding targeted advertising as the predicate act for unlawful "use" and "disclosure" under §§2511(1)(c)-(d) of the federal Wiretap Act.

### 1. Plaintiffs Sufficiently Allege Interception of Oral Communication for Purposes of Their Privacy Claims

To state a claim under the Wiretap Act, CIPA §632, intrusion upon seclusion and invasion of privacy under California Constitution, plaintiffs must allege a "reasonable expectation of privacy" in the communications.  18 U.S.C. §2510(2); *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978).  Thus, plaintiffs must plead facts showing that they had: (i) subjective expectation of privacy, and that (ii) the expectation was objectively reasonable.  *Id.* at 1223.  Under CIPA §632, the expectation of privacy is judged "regardless of the content of the conversation."  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002).  As this Court has held, to satisfy the "objectively reasonable" element, Plaintiffs do not need to identify specific communications at the pleading stage.  MTD Order at 11.  Instead, all Plaintiffs are required to do prior to discovery, is:

[T]o show that they frequently have oral communications *near* their respective Google Assistant Enable Devices under circumstances giving rise to a reasonable expectation of privacy.  That, coupled with the allegations that false accepts *routinely occur*, would support an inference that Plaintiffs had private conversations intercepted.

*Id*. at 12.

In their TAC, Plaintiffs have more than satisfied the requisite standard, as articulated by this Court in the MTD Order.  During the Class Period, each Plaintiff[4] routinely carried on conversations near their GAED.  Plaintiff Galvan and E.G. alleged that the oral communications occurred in the proximity of the GAED – particularly in their "home, bedroom, and car, as well as other places" – where Plaintiffs Galvan and E.G. had a reasonable expectation of privacy.  ¶31.  As to Plaintiff Kumandan, his allegations similarly support finding of a reasonable expectation of privacy.  Plaintiff Kumandan alleged that his oral communications occurred near his GAED – in his home – while conversing with a family member or a friend.  ¶¶41-43.  These allegations, including facts regarding the "participants in the conversation, the locations of the conversations, or examples of content from the conversations," is precisely the type of detail that this Court held is "enough for Plaintiffs to show that they frequently have oral communications near their respective [GAEDs] under circumstances giving rise to a reasonable expectation of privacy."  MTD Order at 12.

As such, Plaintiffs' allegations are consistent with those in cases where a reasonable expectation of privacy was found.  In *McIntyre*, the Ninth Circuit ruled that a police officer had a reasonable expectation of privacy in his office, despite that his office door was open and a records clerk worked fifteen feet away in an adjacent room.  *See McIntyre*, 582 F.2d at 1224 ("A business office need not be sealed to offer its occupant a reasonable degree of privacy.").  Defendants' cases do not dictate a different outcome.  *Anderson v. TCAM Core Prop. Fund Operating LP*, No. 14-cv-01932, 2015 WL 268872 (C.D. Cal. Jan. 14, 2015), on which Defendants rely, concerned an

---

[4]      Defendants do not challenge Plaintiffs Spurr's and B.S.'s allegations regarding the interception of their private communications.  *See* MTD at 7.  Defendants still argue, however, that it was unreasonable for Plaintiffs to "expect that a speech activated device will never activate in error."  *See id.*  This argument has been rejected by the Court, which recognized that a party's failure to fix a widespread and persistent defect belies a claim of mere error.  MTD Order at 10.

1   apartment complex's prohibition of certain sports activities in the common areas.  In that case,

2   plaintiffs did not even oppose defendants' motion to dismiss the invasion of privacy claim, did not

3   explain what the privacy interest was at issue, nor how it was invaded.  *Id.*, at \*3.

4        Despite the level of detail provided by Plaintiffs in the TAC, Defendants repeat the mantra

5   that the "particular circumstances" from which private communications can be inferred are missing

6   from Plaintiffs' TAC.  MTD at 8.  Defendants ignore that their demands for allegations of specific

7   communications have already been rejected by this Court.  *See* MTD Order at 11 ("At the outset,

8   the Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that

9   Plaintiffs reasonably believed to be private and that were wrongly recorded.").  Nevertheless,

10   Plaintiffs ***do*** allege the specifics of each of the private intercepted communications. Defendants,

11   however, simply ignore Plaintiffs' allegations regarding the location where the recording and

12   eavesdropping took place (¶¶20, 22-26, 31, 33-34, 52), the participants to the conversation (¶¶20,

13   29, 33, 40, 52), the lack of manual activation prior to recording (¶¶ 9, 32, 42, 53), and allegations

14   that Plaintiffs' own voices were recorded (¶¶22, 24, 32-33, 42-43, 54, 70).

15        To support their arguments, Defendants exclusively cite to cases in which plaintiffs'

16   conversations were carried out in circumstances indicating no expectation of privacy.  For example,

17   in *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013), the plaintiff made "bare bones

18   allegations" that he had an expectation of privacy in a business call he placed to a home security

19   service provider to "dispute a charge." *Id.* at 1020.  Defendants' other case, *United States v.*

20   *Wahchumwah*, 710 F.3d 862 (9th Cir. 2013), is even more unavailing.  There, the plaintiff invited a

21   governmental agent to his home where he voluntarily sold illegal eagle plumes to the agent.  *Id.* at

22   866.  The Ninth Circuit, relying on the Supreme Court precedent in *Hoffa v. United States*, 385 U.S.

23   293, 294(1966), found that no expectation of privacy existed in matters voluntarily revealed to a

24   governmental agent.  *Id.* at 868.  Finally, the plaintiff in *Sachell v. Sonic Notify, Inc*., 234 F. Supp.

25   3d 996 (2017) never alleged the location, the participants to her conversations, nor the content of

26   the conversations, rendering her claims conclusory and insufficient under the Ninth Circuit

27   precedent.  Clearly, *Faulkner, Wahchumwah*, and *Sachell* do not support Google's position as they

28   arise from significantly different factual scenarios.

Defendants' contention that Plaintiffs failed to "explain the frequency with which such [private] communications occurred in the home or bedroom as opposed to 'other places,'" (MTD at 8), is unavailing as the determination of the ratio between home conversations and those at "other places" plays no role in the analysis whether a communication is appropriately considered "private" under federal and California privacy laws. *See, e.g.*, *McIntyre*, 582 F.2d at 1224.  It is the "particular circumstances" relating to the communication from which the Court determines whether a reasonably objective expectation of privacy existed in the communication at issue.  MTD Order at 12 ("[T]he Court believes it would be enough for Plaintiffs to show that they frequently have oral communications near their respective Google Assistant Enabled Devices under circumstances giving rise to a reasonable expectation of privacy.").  Cases cited by Defendants make this point clear.  *See Katz v. United States,* 389 U.S. 347, 359 (1967) ("[C]onsiderations [for privacy] do not vanish when the search in question is transferred from the setting of a home, an office, or a hotel room to that of a telephone booth. Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures."); *Huff v. Spaw*, 794 F.3d 543 (6th Cir. 2015) (Wife had a reasonable expectation of privacy in conversation with her husband in a hotel room, when conversation was recorded by an executive assistant who answered a "pocket dialed" call.).

**2.      Plaintiffs Sufficiently Alleged that False Accepts Routinely Occur**

Defendants next argue that Plaintiffs failed to show that "false accepts routinely occur" because Plaintiffs purportedly only allege the number of false accepts, and not the frequency of it. MTD at 10.  This argument was rejected by the Court as inappropriate for resolution on a motion to dismiss.  *See* MTD Order at 10 ("[T]he degree of error will likely be material to the ultimate factual determination of whether Defendants' conduct was intentional.  At the motion to dismiss stage, however—construing the allegations in Plaintiffs' favor—the Court will not assume that the rate of false accepts is *de minimis.*").  This is particularly so, in light of Defendants' newest speculation that the number of false accepts "can [be] delete[d]" and it is therefore "far from clear that these numbers are reliable."  MTD at 10.

In any event, at issue in this case is not how many times GAEDs trigger into active listening mode in the presence of all of users' conversations, but rather, how many of the recorded

conversations were made without users' consent.  Of the 11 recorded conversations on Plaintiff Galvan's device, each and every one was recorded by the GAED without Plaintiff Galvan's knowledge and consent, representing a rate of 100% false accepts – a far cry from being *de minimis*. ¶36, 116.   As to Plaintiff Kumandan, the comparison of the non-consensually recorded conversations with all of the recorded conversations is equally alarming.  Of the seven recorded conversations, five, or 75%, were recorded without Plaintiff Kumandan's knowledge or consent. ¶¶44, 116.  These figures easily establish that false accepts occur significantly more frequently than "routinely" or "*de minimis*."  *See Rojas v. HSBC Card Servs. Inc.,* 20 Cal. App. 5th 427 (2018) (recording of 317 conversations was neither by "chance" nor "innocently" done).

### 3. Plaintiff Galvan and E.G. State a Claim for Unlawful Use and Disclosure under the Wiretap Act

In addition to prohibiting the interception of oral communications, the federal Wiretap Act also prohibits the "use" and "disclosure" of the intercepted communication.  *See* 18 U.S.C. §§2511(1)(c)-(d).  To state a claim for "using" and "disclosing" the contents of communications, plaintiffs must allege that the interception was unlawful in the first place, *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009), and that defendant acted with the knowledge that the information was intercepted in violation of the Wiretap Act.  18 U.S.C. §§2511(1)(c)-(d).  While the "unlawfulness" of Google's interception hinges on the Court's determination of "oral communications" (*see* §IV.A.1, *supra*), the question of knowledge was already decided.  *See* MTD Order at 16 (finding that Google's retention and analysis of the unlawfully recorded conversations establish that Google knew the recordings were a result of unlawful interception).  Thus, the only issue before the Court arises with allegations that, in addition to retaining and analyzing the intercepted recordings, Google also used the contents thereof to supply Plaintiffs Galvan and E.G. with targeted advertising.  ¶33.

Plaintiff E.G. was subject of a targeted advertisement in an instance when she carried on a conversation with her family at their common residence and in the proximity of one of the GAEDs. ¶33.  During that time, Plaintiff E.G. discussed her parents' experiences during their childhood, which included a discussion of Los Angeles gangs.  *Id.*  Subsequent to this conversation, which was recorded by Google without Plaintiff Galvan's knowledge or consent, Plaintiff E.G.  received

targeted advertising on YouTube, suggesting that she view videos containing the exact names of an individual as those discussed during the conversation in the proximity of her GAED. *Id.* These allegations establish that Google uses and discloses Plaintiffs' oral communications in violation of the Wiretap Act. *See* 18 U.S.C. §§2511(1)(c)-(d); *Campbell v. Facebook Inc*., 77 F. Supp. 3d 836, 846 (N.D. Cal. 2014) (Facebook unlawfully used individuals' data in violation of Wiretap Act by scanning the contents of users' emails to facilitate targeted advertising).

In response, Google offers three equally unavailing arguments. *First*, Google suggests that Plaintiffs failed to allege disclosure to third parties, as opposed to utilization of the content by Google itself for its own purposes, including, targeted advertising. MTD at 12. However, in the example provided by Plaintiff E.G., the personalized ad was displayed on YouTube, which is a third-party entity. *See* MTD Order at 23 ("After all, whether an entity is a 'third party' within the meaning of the statute is a factual question, interrogating the relationship between the entity and the provider."). *Second*, in arguing that Plaintiffs' allegations are purportedly "insufficient," Google misconstrues these allegations to state that Plaintiff E.G. "nowhere" alleged that "her conversation was intercepted by the Assistant, or that it even occurred in the presence of a GAED." MTD at 12. Contrary to Google's reading of the TAC, Plaintiff E.G. unequivocally referred to this conversation as a "private conversation" and otherwise pled that the devices are kept in places where the family has a reasonable expectation of privacy. ¶¶30-31, 34. *Third*, Google argues that the disclosure for purposes of personalized advertising was disclosed in its Privacy Policy and was therefore consented to by Plaintiffs. MTD at 12. Google's argument fails because Google's Privacy Policy does not sufficiently apprise the users of Google's recording and sharing of information in instances where no hot word or manual activation occurred. As such, it cannot serve as a valid consent. MTD Order at 21. In any event, the portion of its Privacy Policy that Google points to only apprises Plaintiffs and Class members of Google's own use, and never discloses the sharing of users' information with other third parties. *See* Bali Decl. at 25 (Ex. B) ("*[w]e use* the information we collect to customize our services to you" and "[d]epending on your settings, *we may* also show you personalized ads based on your interests")). Consequently, Google's Privacy Policy hardly secures valid consent to use and disclose users' information with third parties.

**B.     Plaintiffs State a Claim under Section 2702(a)(1) of the SCA Based on Targeted Advertising**

Section 2702(a) of the SCA forbids electronic communication service provider from knowingly divulging to any person or entity the contents of a communication while in electronic storage.  18 U.S.C. §2702(a).  The only allegations disputed by Google are those relating to the targeted advertising Plaintiff E.G. was displayed while using the YouTube application on her GAED.  ¶33.  As detailed above and in the TAC, the Galvan family carried on a private conversation while in the proximity of the GAED.  *Id.*  Shortly thereafter, Plaintiff E.G. was displayed a targeted advertisement while using YouTube, which contained the name of an individual that was mentioned during the family conversation.  *Id.*  These allegations go well beyond what is necessary to state a claim under §2702(a) of the SCA.  *See Yahoo Mail Litig.*, 7 F. Supp. 3d at 1034  (noting that plaintiff is not required to allege the "specific information in the content that was shared or the identity of the third party in order to state a claim for a violation of § 2702(a)(1)").

As set forth in detail in §IV.C. *infra,* Google does not – and cannot – dispute that it shares certain sensitive personal information with third parties when a user explicitly consents to such disclosure, or for "external processing" based on users' instruction.  To that effect, Google's Privacy Policy expressly provides that "[Google] [wi]ll ask for your explicit consent to share any sensitive personal information."  ¶¶55, 192-3.  Under circumstances where a company's own policy admits to the use and disclosure, courts readily find a violation of §2702(a) without the need for additional allegations.  For example, in *Yahoo Mail*, 7 F. Supp. 3d at 1034, Yahoo's policy stated that "Yahoo may anonymously share specific objects from a message with a 3rd party to provide a more relevant experience within your mail."  *Id.* at 1034.  This language alone was sufficient to establish disclosure under §2702(a)(1) without the need for plaintiff to allege the specific content of what was shared.  *Id.*  The same outcome is warranted under the circumstances of this case.

**C.     Plaintiffs Adequately Allege That Google Breached its Contracts with Plaintiffs and the Class**

In order to plead a claim for breach of contract, Plaintiffs must allege: (1) the existence of a contract with Defendants, (2) their performance under that contract, (3) Defendants breached that contract, and (4) they suffered damages. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F. 3d

589, 610 (9th Cir. 2020).  The TAC satisfies each of these elements.

Google promises that: (1) the GAEDs will only record communications when the device is in use, *i.e.*, when a hot word has been spoken; and (2) that recordings made from such Devices will not be shared with third parties without consent.  ¶¶236, 242, 245.  These promises are made in Google's Privacy Policy, which is expressly incorporated into Google's Terms of Service ("TOS") and therefore part of the contract between Google and Plaintiffs and the Class.  ¶¶240-241.  Google breached its promise regarding the collection of audio recordings because the GAEDs record private and confidential conversations when the devices are not in use, *i.e.*, when no hot word has been spoken.  ¶¶242-244.  Google breached its promise regarding disclosure of the recordings by sharing these and other conversations with third parties without Plaintiffs' consent.  ¶¶245-251.  As a result of these breaches, Plaintiffs have paid inflated prices for the Google-manufactured GAEDs, suffered damage to their privacy interests, and have contributed to Google's substantial profits resulting from its contractual violations that should rightfully be disgorged for the benefit of Plaintiffs and the Class.  ¶¶254-256.  Plaintiffs have thus adequately alleged their claim for breach of contract.

Google argues that Plaintiffs: (1) cannot premise a breach of contract claim on a provision of its website; (2) fail to allege a breach of any provision of its contract; and (3) fail to allege damages.  MTD at 13.  Google is wrong on each point.

### 1.    Plaintiffs' Contract Claim Is Based on Defendant's TOS and Privacy Policy, Not Defendants' Website

Google's argument that Plaintiffs cannot premise their contract claim on  Google's websites is a red herring.  The two provisions of the contract that comprise the breach of contract claim are directly quoted from the Privacy Policy verbatim in the TAC.  ¶¶242 (improper collection), 249 (improper disclosure).  The Court previously determined that Plaintiffs "alleged with particularity, as required to state a claim for breach of contract" the second of the two contractual promises allegedly breached by Defendants.  MTD Order at 34.  In its MTD Order, the Court declined to consider the first provision on the ground that it was not referenced in the FAC, a defect that has now been cured.  *Compare* MTD Order at 34 *with* ¶242.  Accordingly, the provisions of the Privacy Policy, which are expressly incorporated into the Privacy Policy are adequately alleged.

Contrary to Google's argument, the allegations regarding Google's breach are not premised on the FAQs referenced in the TAC. Rather, the citation to the FAQs is simply included to aid the interpretation of the potentially ambiguous term "use audio features" in the context of GAEDs.

### 2. Plaintiffs Properly Allege that Google Breached the Terms of Its Contract

The Privacy Policy defines the type of information that Google can collect from its users and to whom it may disclose the information it collects. Google has breached both the collection and disclosure provisions of its contract.

### a. Google Breached Its Promise Not to Collect Users' Information While Not Using Audio Features

Google promises that it may collect "voice and audio information when you use audio features." ¶242. Yet, Google has collected scores of Plaintiffs' recordings when they were not using audio features. ¶¶22-26, 29-37, 40-44, 53, 70. Google has thus breached its contract.

Google circularly argues that because the audio features "are being used" when the GAEDs surreptitiously record Plaintiffs, there was no breach of its promise that audio information will be recorded when "you use" audio features. MTD at 15. Yet, the promise that recordings will be collected "when you use audio features" is very different than saying "when audio features are being used" or "accidentally become activated." The phrase "you use" means that the user, *i.e.*, Plaintiffs and the class, must engage in some active, intentional conduct in using the device. With regard to GAEDs, the only such conduct is speaking a hot word or manually activating the device. Because the devices record users in the absence of such conduct, Google breached its contract.

Google next argues that because the TOS states that Google's services are offered "as is," this somehow defeats its systematic non-consensual recording of Plaintiffs and the Class. MTD at 15. This contention has no merit. Here, Google provides the Google Assistant service in accordance with the promises specific to that service – *i.e.*, it will only record users' conversations when they use that service. *See*, *e.g.*, Bali Decl., Exh B. at 21. If "as is" means that the GAEDs will surreptitiously record users' conversations when they do not use the audio features as Google contends, this term would directly conflict with the provision in the Privacy Policy. Because the promise to collect audio information only when audio features are in use in the Privacy Policy is

13

specific to the audio features, it controls over a contradictory interpretation of the "as is" provisions of the TOS.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003) ("A standard rule of contract interpretation is that when provisions are inconsistent, specific terms control over general ones.").  It is also worth noting that to the extent there are any inconsistencies or ambiguities in the contract, these must be interpreted against Google, the drafter of its adhesive, one-sided contract, and in a manner that is consistent with the reasonable expectations of the user.  *See, e.g., Graham v. Scissor-Tail,* 28 Cal. 3d 807, 820 (Cal. 1981).  While Google argues that its interpretation of the "as is" provision as allowing for the collection of recordings of users when they do not use the GAEDs does not conflict with the promise that such recordings will only be collected when users use the GAEDs, it fails to provide any harmonious construction.

Google argues that the statement on its website that it collects audio data only when the GAED "detects" a hot word somehow harmonizes these conflicting terms.  MTD at 18:20-22.  Not so.  "Detect" is commonly defined as "to discover the true character of," (*see,* Merriam-Webster online, https://www.merriam-webster.com/dictionary/detect), which hardly informs users that the GAEDs are likely to record users' private conversations when the GAEDs are not in use, whether erroneously or otherwise.  It certainly does not inform users that the GAEDs will even record users' private conversations when nothing even close to a hotword is spoken.  ¶243.  Moreover, according to Google, the quote containing the word "detect" is not part of the contract.  MTD at 13.  If so, it's only relevance is to interpret an otherwise ambiguous term.  However, as discussed above, to the extent there is any ambiguity, it must be interpreted against Google.

      **b.**    **Plaintiffs Properly Allege that by Disclosing Recordings of Private Conversations to Third Parties, Google Breached the Contract**

Google provides private and confidential recordings to third parties without Plaintiffs' and other users' consent, which violates the terms of its promise not to do so.  ¶251.  Google argues that there is no breach because Google is allowed to disseminate users' recordings for external processing without consent under the terms of the contract.  MTD at 19.  Google is wrong.

The Privacy Policy lists four circumstances giving Google the ability to share information it collects from its users.  It provides: "We do not share your personal information with companies,

organizations, or individuals outside of Google except in the following cases: [with consent, for external processing, with domain administrators, for legal reasons]."   ¶245.   While the Policy provides that it will share personal information both with consent and for external processing, it fails to state how these circumstances relate to one another.  A careful reading of the provision indicates that sharing personal and sensitive personal information with individuals and businesses outside of Google requires consent.

Consent is listed first, which suggests that sharing for external processing is subject to that provision and no exception is set forth in the consent section regarding external processing.  Rather, it states simply that Google will "share personal information outside of Google when we have your consent" and that it will "ask for your explicit consent to share any sensitive personal information." ¶249.  Thus, there are two different types of consent – explicit for sensitive personal information and some other type of consent for all other personal information.  With regard to external processing, the Privacy Policy states that Google will provide only "personal information" for such purposes and will do so "in compliance with our Privacy Policy and any other appropriate confidentiality and security measures."   *Id*.   "Personal information" is defined as personally identifying information such as a name, email address, or billing information.  ¶250.  It does not include audio recordings.  Thus, Google's claim that the Privacy Policy allows it to share recordings of Plaintiffs with third parties for external processing is wrong.  *See* MTD Order at 21 (citing *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)).

The Policy sets two different levels of consent, one for information such as one's address; and one for more sensitive information.  It is undisputed that the last sentence of the consent requirement, requiring Google to obtain explicit consent, applies where "sensitive personal information" is provided to third parties, including those involved in external processing. However, there is no material difference between the requirement that Google obtain ordinary consent, *i.e*., "We'll share personal information outside of Google when we have your consent" and that regarding explicit consent, *i.e*., "We'll ask for your explicit consent to share any sensitive personal information."  If Google must obtain explicit consent prior to disseminating sensitive personal information for external processing, then it must obtain implicit or some other type of

15

consent prior to disseminating other personal information for external processing.  However, Google disseminated all types of personal information to third parties for processing without obtaining either *implicit* or *explicit* consent.  ¶251. Where, as here, a contractual term is capable of more than one interpretation, it is appropriate to look to other statements by the drafter to interpret the term.  *Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) (extrinsic evidence allowed to explain the meaning to which the language of the instrument is reasonably susceptible).

Here, Google's statement regarding its transmission of audio recordings resolves the ambiguity, clarifying that explicit consent is required before Google may share such recordings with its third-party partners.  Google's "Commitment to Privacy in the Home" describes how Google's Privacy Policy is implemented in the context of Google devices, such as Google Assistant, which are used in users' private residences clarifies this ambiguity stating:

> We will only share audio recordings from your devices with third-party apps and services that work with our devices if you or a member of your home explicitly gives us permission, and we'll only ask for this permission in order to provide a helpful experience from an approved partner (such as a home security service provider).

Thus, Google must obtain explicit consent to share recordings from GAEDs, even when sharing them for external processing.  Here, Google shares the non-consensual recordings with third parties to improve the functionality of the GAEDs.  ¶¶83, 251, 256.  Google's failure to obtain consent thus violates the terms of its Privacy Policy and its contract with Plaintiffs and the Class.

### 3.   Plaintiffs Sufficiently Allege a Breach Based on Google's Unilateral Changes to Its Collection and Use of Information

In the privacy policy, Google promised that "[t]he information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls."  ¶252.  Plaintiffs allege that Google breached this provision when it unilaterally changed certain privacy settings to collect and use "alarm event" information, despite no change by the user in their use of services or change in privacy controls.  ¶253.  Thus, Plaintiffs have sufficiently identified the contractual provision that prohibits Google from making the software change.

Google argues that Plaintiffs have not sufficiently alleged that this software update affected them personally because the complaint references Reddit users.  MTD at 16.  Not so.  Google reconfigured its Google Home devices through a software update based on "alarm events," as

1  supported by the allegations regarding the Reddit users.  ¶¶57, 73.  Plaintiffs use those same Google

2  Home devices as the Reddit users.  ¶¶9, 47, 62.  The logical conclusion (and reasonable inference)

3  therefore, is that Plaintiffs' devices were also affected by the software update.

4      Moreover, Plaintiffs do not have access to the specific software that runs their devices,

5  making it a matter "peculiarly" within the Defendants' knowledge, and thus one that it is appropriate

6  for Plaintiffs to allege generally, as they have done.  *Chose v. Accor Hotels & Resorts (Md.) LLC*,

7  No. 19-cv-06174-HSG, 2020 WL 759365, at *3 (N.D. Cal. Feb. 14, 2020).  It does not matter that

8  Plaintiffs did not personally experience an alarm event highlighting the software change.  They were

9  subject to the software update, which was a breach of contract, and have standing to sue.  *See In re*

10  *Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010-11 (N.D. Cal. 2020) ("[t]he

11  failure to perform a duty required by contract is a legal wrong, independently of actual damage

12  sustained by the party whom performance is due"); *see also Davidson v. Kimberly-Clark Corp.*, 889

13  F.3d 956, 964-65 (9th Cir. 2018) (the plaintiff could challenge whether products were "flushable"

14  even though she never personally experienced them clogging her own plumbing).

15          **4.    Plaintiffs Sufficiently Allege Contractual Damages**

16      The TAC alleges three separate and independent types of damages for the breach of contract

17  claim, damages for injuries to Plaintiffs' privacy interests, benefit of the bargain damages, and

18  disgorgement of profits.  The damages for harm to their privacy interests is plead on behalf of all

19  Class members, while the remaining two theories are pled only on behalf of those Class members

20  who purchased Google-manufactured GAEDs.  ¶¶254-256.  In order for the breach of contract claim

21  to survive the motion to dismiss, Plaintiffs need only demonstrate that a single damages theory is

22  viable.  *In re Facebook Privacy Litigation*, 572 Fed. Appx. 494, 494 (9th Cir. 2014) (allegations

23  that information disclosed by defendant could be used to obtain personal information about plaintiffs

24  and that they were harmed by the dissemination of their personal information and the sales value of

25  that information were sufficient to plead damages for breach of contract claims.)  Here, Google

26  concedes that Plaintiffs Spurr, B.S., Brekhus, and Hernandez have properly alleged damages to their

27  privacy interests.  MTD at 18 (arguing that this damages theory fails only as to plaintiffs Galvan,

28  E.G., and Kumandan).  Accordingly, Plaintiffs have sufficiently alleged damages at this stage.

As to the benefit of the bargain and disgorgement of profits theories, those are both properly pled and viable as well. *See, e.g.*, MTD Order at 36-37; ¶254 (alleging that Plaintiffs Kumandan and Spurr paid money to Google for the GAEDs and received less than what they bargained for), ¶256 (alleging Google profits from its non-consensual recordings and dissemination of those recordings). Indeed, Google conceded the propriety of Plaintiffs' damage to privacy interests.

**D.    Plaintiffs State a Claim Under California's Unfair Competition Law**

**1.    Plaintiffs Have Standing Under the UCL**

The coverage of California's UCL "is sweeping, and its standard for wrongful business conduct intentionally broad." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016). The UCL confers standing on anyone who has "suffered injury in fact and has lost money or property" as a result of the alleged violation. Cal. Bus. & Prof. Code §17204.

Plaintiffs purchased one or more GAEDs, and allege that had they known their private communications would be intercepted, recorded, disclosed, and misused, they would not have made their purchase, or would have paid less for them. ¶¶11, 126, 254, 261. This is sufficient to confer standing. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 323 (2011) (Economic injury can be shown where plaintiff "surrender[s] in a transaction more, or acquire[s] less, than he or she otherwise would have[.]"); *see also In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, Case No. 3:19-cv-2284-H-KSC, 2020 WL 2214152, at *9, (S.D. Cal. May 7, 2020) (allegations that Plaintiffs acquired less in their transactions with Solara than they would have if Solara had sufficiently protected their personal information sufficient to establish UCL standing.); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014).

The Court has already found that Plaintiffs Spurr and Kumandan have sufficiently alleged overpayment and have standing under the UCL. *See* MTD Order at 45. This is the law of the case. *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Further, Google raises the argument for the first time that Plaintiffs Kumandan and Spurr fail to plausibly allege that they overpaid for their devices. *Compare* MTD at 22 *with* MTD Order at 45. Because Google could have raised an objection to Kumandan's and Spurr's overpayment theory in its first motion to dismiss, Google has waived the argument for the purposes of this motion. *See* Fed. R. Civ. P. 12(g)(2); *see also In re*

18

1     *Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1174-75 (S.D. Cal. 2017).

2        Plaintiffs further allege that Google's surreptitious recording of their private conversations

3 diminished the value of their GAEDs.    Plaintiff Spurr is forced to monitor the GAEDs activity and

4 spend unnecessary time and effort to protect her and her family's privacy.  ¶26.  Plaintiffs Galvan

5 and E.G. allege they are no longer able to receive the full value of their GAED devices.   ¶37.

6 Plaintiff Galvan will often completely turn off her phone prior to having private conversations, and

7 Plaintiff E.G. will often leave her device at home to avoid being tracked and listened to.  *Id.*  Thus,

8 Google's conduct diminished the value of Plaintiffs' GAEDs by depriving Plaintiffs of the use of

9 their GAEDs, which is sufficient to confer UCL standing.  *Kwikset,* 51 Cal. 4th at 322 (Economic

10 injury can be shown when a plaintiff has a "present or future property interest diminished.")

11        Plaintiffs also allege that they have a property interest in any recordings of their

12 communications, and that Google has taken that property without providing compensation.  ¶261.

13 Google profited from the use of Plaintiffs' unauthorized recordings by using them to improve the

14 functionality of Google Assistant and for targeted advertising.  ¶¶7, 10, 83, 113, 116, 164, 167, 169-

15 70, 189-191, 203-204, 216, 232, 251, and 256.  Google argues that Plaintiffs have failed to allege

16 that their voice recordings have value, that they lost the opportunity to sell their personal

17 information, or that the value of that information was somehow diminished.  MTD at 20.  The value

18 of Plaintiffs' voice recordings can be inferred by the fact that Google uses them to improve the

19 functionality of Google Assistant and to target advertising.  *See, e.g.,* ¶78.  Plaintiffs have a vested

20 interest in the profits that Google has unjustly received from using their unauthorized recorded

21 conversations regardless of whether they planned to sell them or whether Google's use made them

22 less valuable.  *See Facebook, Inc. Internet Tracking,* 956 F.3d at 600-01.  Therefore, Plaintiffs have

23 UCL standing.  *See Kwikset,* 51 Cal. 4th at 323 (Economic injury can be shown where plaintiff has

24 been "deprived of money or property to which he or she has a cognizable claim[.]").

25        Plaintiffs' claims of overpayment and unjust enrichment entitle them to restitution.  *Korea*

26 *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (Restitution is the proper

27 remedy to restore the status quo by returning to the plaintiff "benefits in which the plaintiff has an

28 ownership interest.").  Plaintiffs are also entitled to an injunction.  *See Kwikset,* 51 Cal. 4th at 336

1   (A plaintiff who lost money or property without any gain to Defendants would be entitled to seek

2   an injunction under the UCL.).  Google has failed to discontinue its unlawful conduct and Plaintiffs

3   cannot continue using their GAEDs without uncertainty that Google has ceased its unlawful conduct

4   in the future.  ¶¶33, 262.  Such allegations are sufficient.  *See, Colgan v. Leatherman Tool Grp.,*

5   *Inc.*, 135 Cal. App. 4th 663, 701 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (To grant

6   injunctive relief under the UCL, there "must be a threat that the wrongful conduct will continue.")

7   **2.      Plaintiffs' Allegations Satisfy the UCL's Unlawful Prong**

8       To be "unlawful" under the UCL, Plaintiffs must allege that Google violated a state, federal,

9   or local law.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  Plaintiffs

10  allege that Google violated (1) the Wiretap Act, (2) the SCA, (3) the CIPA §632, (4) the common

11  law prohibition of intrusion upon seclusion, (5) the California Constitution, (6) the CLRA, and (7)

12  breached their contract with Plaintiffs.  Because Plaintiffs have adequately alleged Google violated

13  these laws, Plaintiffs have adequately alleged claims under the UCL.  MTD Order at 40 (upholding

14  Plaintiffs' claim under the UCL's unlawful prong based on violation of §2702(a) of the SCA); s*ee*

15  *also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-2752, 2017 WL 3727318, at

16  *23 (N.D. Cal. Aug. 30, 2017) ("To the extent that Plaintiffs have sufficiently alleged these stand-

17  alone causes of action, Plaintiffs have also alleged violations of the unlawful prong of the UCL.").

18  **3.      Plaintiffs' Allegations Satisfy the UCL's Unfair Prong**

19      The "unfair" prong of the UCL creates a cause of action for a practice that is unfair "even if

20  not specifically proscribed by some other law."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*

21  *Tel. Co*., 20 Cal. 4th 163, 180 (1999).  The UCL does not define the term "unfair" and the "proper

22  definition of 'unfair' conduct is 'currently influx' among California courts." *HSBC Bank Nevada,*

23  *N.A.*, 691 F.3d at 1169.  Plaintiffs meet both tests for unfairness articulated by Google (MTD at 23-

24  24): (1) the "tethering test," which requires the public policy violation alleged to be unfair to be

25  tethered to a constitution, statutory, or regulatory provision; and (2) the "balancing test," which

26  examines whether the conduct is "'immoral, unethical, oppressive, unscrupulous or substantially

27  injurious to consumers and whether the gravity of harm to the victim outweighs any utility of the

28  Defendants' conduct.'"  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145-46 (N.D. Cal. 2013).

20

Google argues that Plaintiffs Kumandan, Galvan, and E.G. do not allege that Google's conduct violated a public policy that is "tethered to specific constitutional, regulatory or statutory provisions" because their constitutional and statutory claims fail.  MTD at 23.  Google's actions, however, have violated California's strong public policy of protecting privacy.  Google's conduct of intercepting, recording, disclosing, and otherwise misusing Plaintiffs' and Class members' private conversations violated the Wiretap Act, SCA, CIPA §632, California common law, the California constitution, and breached its contract with Plaintiffs.  *See* §§IV.A-C *supra*; ¶260.

Google argues that under the "balancing test," Plaintiffs Kumandan, Galvan, and E.G., have not adequately alleged "harm to the victim" because they have not alleged that they had an expectation of privacy in their recorded communications.  MTD at 24.  Google further argues that the Assistant provides a substantial benefit to consumers.  *Id*.  Plaintiffs allege, however, that Google's conduct of secretly intercepting, recording, disclosing, and misusing their communications harmed them by invading their privacy and there is no corresponding benefit to consumers.  ¶260. Plaintiffs plead details regarding how each Plaintiff used their GAEDs and had a reasonable expectation of privacy, and plead that their own conversations were intercepted without authorization, including the participants in the conversations, the locations of the conversations, and examples of content from the conversations.  *See* ¶¶20-26; 29-35; 39-43; 52-54; 68-70; *see also*, §III.B-C *supra*.  These unauthorized interceptions were not occasional.  ¶¶36, 44, 116.

Google's actions have violated strong public policy protecting privacy, significantly harming Plaintiffs.   Such allegations satisfy the unfairness prong of the UCL.  *See Anthem, Inc. Data Breach*, 2016 WL 589760, at *22 (denying motion to dismiss plaintiffs' UCL claim under the unfair prong and noting that defendants' actions violated "'California's public policy of protecting consumer data'").  Accordingly, Plaintiffs' UCL claims should be upheld.

### E.   Plaintiffs Adequately Allege Claims Pursuant to the CLRA and Common Law Fraud/Deception

#### 1.   Plaintiffs Allege Their Fraud and CLRA Claims with Particularity

Google argues that Plaintiffs have failed to allege their fraud and CLRA claims with the requisite particularity required under 9(b).  MTD at 26, 30.  Under Federal Rule of Civil Procedure

21

9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  These allegations need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  Rule 9(b) "does not require absolute particularity or a recital of the evidence" and "a complaint need not... describe in detail a single specific transaction."  *Id.*  Plaintiffs Brekhus, Hernandez, and the purchaser class and subclass assert a fraud claim and Plaintiffs Brekhus, Hernandez, and the purchaser subclass assert a CLRA claim ("Purchaser Plaintiffs").  ¶¶271-278: Ninth Claim for Relief.

Purchaser Plaintiffs have sufficiently alleged "the who, what, when, where, and how" of Defendants' fraud.  The "who" are Defendants.  The "when" is prior to the purchase in October 2019 for Brekhus (¶¶46-49) and December 2018 for Hernandez (¶¶2, 63).  The "where" consists of the Google Home mini webpage (¶47), Google's website (¶63), and on the package (¶¶49, 63).  The "what" includes Defendants' representations to Purchaser Plaintiffs that the devices would be activated by saying the phrase "Ok Google" and/or "Hey Google," (¶¶49, 63) and that the devices would not transmit recordings without the activation phrase or manual activation.  ¶¶49, 63.  The "how" is by using those misrepresentations and omissions to sell Google's products at the expense of Purchaser Plaintiffs and others who wanted to both use their Google Home devices and be in control of their privacy.  ¶¶274-275; *see Davidson*, 889 F.3d at 964-65.

Google mischaracterizes Purchaser Plaintiffs' allegations to assert that their claims are based on a representation that "Google promises its devices 'will never activate in error.'"  *See, e.g.*, MTD at 27.  Purchaser Plaintiffs makes no such allegation. Instead, the claims are that Google promised that the Google Home devices would active in only three limited circumstances, when in fact, Google retained the ability to unilaterally add additional circumstances, and it did so in the form of "alarm events."  *See* ¶272.  As Google well knows, consumers such as Purchaser Plaintiffs care about privacy and would have been less likely to purchase a device knowing that Google could

22

1    change the circumstances under which it records their intimate activities.  *See* ¶112.  "Activation

2    error" never figures into the picture.

3         For the same reason, Google's repeated reference to its disclosure that "false accepts may

4    occur" is a smoke screen.  *See*, *e.g.*, MTD at 27.  Google's intentional decision to record and transmit

5    audio when an alarm event occurs is not a "false accept" or "activation error."  As Google

6    recognizes, a false accept occurs when the device detects "a noise that sounds like 'Hey Google.'"

7    *Id*.  Neither glass breaking nor smoke alarms sound anything like "Hey Google."  *See* ¶272.

8         Google also argues that the software update cannot be the basis for Purchaser Plaintiffs'

9    CLRA claim because the change occurred after Purchaser Plaintiffs purchased the product.

10   However, Google's deceptive conduct was its failure to disclose that it could unilaterally change the

11   conditions under which the Google Home devices recorded and transmitted audio data.  ¶¶267, 272.

12   The software change is evidence of that ability but is not the deceptive conduct at issue.  *Cf. Moore*

13   *v. Apple, Inc*., 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014) (deceptive conduct was Apple's failure

14   to disclose a software update).

15               **2.    Plaintiffs Have Standing to Pursue Their CLRA Claims**

16        The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices

17   undertaken by any person in a transaction intended to result or which results in the sale or lease of

18   goods or services to any consumer." Cal. Civ. Code §1770(a).  The CLRA defines "consumer" as

19   "an individual who seeks or acquires, by purchase or lease, any goods or services."  Cal. Civ. Code

20   §1761(d).  A "transaction" is "an agreement between a consumer and another person, whether or

21   not the agreement is a contact enforceable by action, and includes the making of, and the

22   performance pursuant to, that agreement."  Cal. Civ. Code §1761(e).  Plaintiffs may bring claims

23   under the CLRA so long as they "suffer[ed] any damage as a result of" a proscribed practice under

24   the CLRA.  Cal. Civ. Code §1780(a).

25        Plaintiffs assert CLRA claims on behalf of Brekhus, Hernandez, and the purchaser subclass,

26   defined as "[a]ll natural persons who purchased any Google Home device in the United States from

27   August 7, 2016 through the present."  ¶¶132, 263-70.  Defendants challenge whether Brekhus

28   qualifies as a consumer under the CLRA.  MTD at 29. The requirements for standing are plain: a

consumer is an individual who seeks or acquires, by purchase or lease, **any** goods or services.  Cal. Civ. Cod §1761(d).  Brekhus paid money to Spotify in order to receive his Google Home device in reliance on representations by Google Home that the device would activate when he used the activation phrase.  ¶¶46, 49-50.  He also entered into a transaction with Google for the Google Home device because he believed the device had adequate security measures that allowed the user to control when audio data was recorded and transmitted to Google.  ¶¶48, 272; Cal. Civ. Code §1761(e); *Avedisian v. Mercedes-Benz USA, LLC*, No. 12-cv-00936, 2013 WL 2285237, at *5-6 (C.D. Cal. May 22, 2013).  Brekhus would not have paid money to Spotify had he known that Google could unilaterally alter how the device would record and transmit data. ¶59. Brekhus suffered an economic injury because of Google's fraudulent conduct, he is a consumer under the CLRA, and has standing to bring his claim.  *Cf. Schauer v. Mandarin Gems of Cal., Inc.* 125 Cal. App. 4th 949, 960 (2005).

Google's reliance on *Facebook Privacy*, 572 F. Appx 494 is misplaced.  There, the Ninth Circuit just affirmed the district court's dismissal of plaintiff's CLRA claim in one sentence stating: "plaintiffs failed to allege that they obtained anything from Facebook 'by purchase,' or by a 'consumer transaction.'"  *Id.*  Google conveniently overlooks the "or by a consumer transaction" portion of that decision.  MTD at 29.  As Google well knows, individuals that received a Google Home device through the Spotify promotion entered into a separate transaction with Google to receive the Google Home device, including Brekhus.  *See* ¶¶47-48.  Therefore, Brekhus and those similarly situated are "consumers" under the CLRA and have standing.

Moreover, Defendants do not dispute that Plaintiffs suffered economic injuries. While Google complains that Plaintiffs' economic injuries did not result in a profit to Google, a profit to the defendant is not a requirement under the UCL or CLRA, and in fact, is contrary to the damages that plaintiffs may recover.  *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1114 (N.D. Cal. 2018) (nonrestitutionary disgorgement not an available remedy for UCL or CLRA claims). Plaintiffs allege that they paid a premium because they would have paid less for their GAEDs had they known the truth about the function of Google Assistant on those devices.  ¶¶11, 126, 238 261. Therefore, Plaintiffs suffered economic injuries as a result of Google's conduct and have standing.

1    Regarding Plaintiffs' requisite affidavit of venue, Plaintiffs Brekhus and Hernandez previously

2    submitted their affidavits with their original complaint in Case No. 20-cv-5488.  Plaintiffs attach the

3    affidavits again here and will be included with an amended complaint if necessary.

4              **4.      Plaintiffs State a Claim Pursuant to the Declaratory Judgment Act**

5              To warrant the issuance of a declaratory judgment, there must be '"a substantial controversy,

6    between parties having adverse legal interests, of sufficient immediacy and reality.'"  *MedImmune,*

7    *Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Plaintiffs have adequately alleged that there is a

8    continuing controversy due to Defendants' unconsented recording and disclosure of Plaintiffs' and

9    Class members' communications in violation of Defendants' common law and statutory duties.

10   Plaintiffs continue to suffer injury and damages as described herein as Defendants continue to

11   intercept, record, disclose, and misuse Plaintiffs' and Class members' communications and are thus

12   entitled to a declaration that Google's practices are improper.  ¶¶283-284.  Such allegations are

13   sufficient at the pleading stage.  *See, e.g., Adobe Sys., Inc.*, 66 F. Supp. 3d at 1221.

14   Google's argument in support of dismissal of the declaration judgment claim is that

15   Plaintiffs' other causes of action provide adequate relief.  MTD at 24-25.  Putting aside the fact that

16   Google also argues that Plaintiffs' other causes of action should be dismissed with prejudice, the

17   "existence of another adequate remedy does not preclude a declaratory judgment that is otherwise

18   appropriate."  Fed. R. Civ. P. 57.  Moreover, through the Declaratory Judgment Act claim, Plaintiffs

19   seek an injunction requiring Google to implement functionality sufficient to prevent unauthorized

20   recordings in the future, which is not explicitly requested through other causes of action in the TAC.

21   ¶284.  *See also In re Sony Gaming Networks and Customer Data Security Breach Litig.*, 996 F.

22   Supp. 2d 942, 995, 999 (S.D. Cal. 2014) (sustaining overlapping injunctive and declaratory relief

23   claims under state consumer protection statutes).

24   **V.      CONCLUSION**

25            For the foregoing reasons, Defendant's motion should be denied in its entirety.  Further,

26   Plaintiffs respectfully ask that their request for leave to amend be granted as to any dismissed claim.

27   Dated:  January 22, 2020              **LEXINGTON LAW GROUP**

28                                                  */s/ Mark N. Todzo*

Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
503 Divisadero Street
San Francisco, CA  94117
Telephone: (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
afarah@lowey.com

Joseph P. Guglielmo (*pro hac vice*)
Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
Stephanie A. Hackett (Bar. No. 238655)
Hal C. Cunningham (Bar No. 243048)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
shackett@scott-scott.com
hcunningham@scott-scott.com

E. Kirk Wood (*pro hac vice* forthcoming)
**WOOD LAW FIRM**
P. O. Box 382434
Birmingham, AL 35238
Telephone:  (205) 612-0243
kirk@woodlawfirmllc.com

26

1

*Attorneys for Plaintiffs*

2

Seth A. Safier, Esq.
Hayley A. Reynolds, Esq.
3
**GUTRIDE SAFIER LLP**
100 Pine Street, Suite 1250
4
San Francisco, CA 94111
Telephone: (415) 789-6390
5
Facsimile: (415) 449-646
seth@gutridesafier.com
6
hayley@gutridesafier.com
7

8
*Attorneys for Plaintiffs Brekhus and Hernandez*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28