# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| ASIF KUMANDAN, et al., | Case No.  19-cv-04286-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS COUNTS 8 AND 9 OF THE FOURTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| GOOGLE LLC, et al., | |
| Defendants. | [Re:  ECF No. 144] |

Before the Court is Defendants Alphabet Inc. and Google LLC's ("Google") Motion to Dismiss Counts 8 and 9 of Plaintiffs' Fourth Amended Consolidated Class Action Complaint. Claim 8 is for violation of California's Consumer Legal Remedies Act ("CLRA") and Claim 9 is for common law fraud brought by Plaintiffs Edward Brekhus ("Brekhus") and Jon Hernandez ("Hernandez") based on Google's alleged reconfiguring of Google Assistant-enabled devices in 2020 to activate based on certain "alarm events" like the sound of breaking glass or a smoke alarm. Brekhus and Hernandez allege that this reconfiguration was contrary to Google's representations that these devices only activated in response to voice commands or other forms of user control. Google moves to dismiss Brekhus and Hernandez's CLRA and common law fraud claims, arguing that Plaintiffs' allegations fail to meet the Rule 9(b) standard for pleading fraud claims "with particularity," including because Google's reconfiguration of Google Home devices was due to a software bug, and Google rolled back the feature shortly after its introduction.  Plaintiffs argue that they have alleged sufficient facts to support the CLRA and common law fraud claims.

Based on the below reasoning, the Court GRANTS Google's Motion to Dismiss WITHOUT LEAVE TO AMEND.

## I.   BACKGROUND

The seven Named Plaintiffs are residents of New York and California who allege they owned Google Assistant-enabled devices during the Class Period.  *See* Fourth Amended Complaint ("4AC"), ECF No. 141 ¶¶ 18–75.  Brekhus and Hernandez are residents of California.  *See id.* ¶¶ 45, 61.  Defendants are Delaware companies with their principal place of business in California, who manufacture and sell hardware and software products.  *See id.* ¶¶ 4, 76–77.

Plaintiffs' claims pertain to Google's alleged privacy violations related to its hardware devices capable of running the Google Assistant software ("Google Assistant-enabled devices" or "GAEDs"), including the Google Home devices owned by Brekhus and Hernandez.  Google Assistant allows users to activate and interact with these devices using voice commands or other forms of manual activation, like pressing a button. *See id.* ¶ 4.  To use a GAED, a user must sign up for a Google Account and agree to Google's Terms of Service and Privacy Policy.  *Id.*  Plaintiffs allege that based on Google's public representations, Terms of Service, and Plaintiffs' reasonable expectation of privacy, GAEDs were only able to record, transmit, and process sound after being activated based on voice commands or manual activation.  However, Plaintiffs allege that in fact, GAEDs could activate in other circumstances, including to collect data to improve the speech recognition abilities of GAEDs and based on "alarm events" like the sound of breaking glass or a smoke alarm.  *See, e.g., id.* ¶¶ 7, 9, 117.  Plaintiffs allege that GAEDs improperly transmit sound files recorded without users' consent, including to unauthorized third-party contractors.  *See, e.g., id.* ¶¶ 8, 101.

At issue in the Motion are Brekhus and Hernandez's claims based on Google's alleged misrepresentations regarding its devices' ability to activate in response to "alarm events" based on (1) violation of the CLRA (claim 8) and (2) common law fraud, deceit, and/or misrepresentation (claim 9).  *Id.* ¶¶ 271–295.

Plaintiffs allege that Hernandez acquired a Google Home Mini device—a type of GAED—in December 2018, and Brekhus acquired one in October 2019.  *See id.* ¶¶ 46, 62.  Before acquiring the devices, Plaintiffs allege that Brekhus and Hernandez saw representations that the devices were to be activated by saying the phrase, "Ok Google" or "Hey Google."  *See id.* ¶¶ 49, 63.  Plaintiffs

United States District Court
Northern District of California

further allege that Brekhus and Hernandez reasonably relied on these representations in acquiring the devices.  *See id.* ¶¶ 50, 55, 59–60, 65–66, 74–75.  Brekhus points to representations on the Google Home Mini webpage regarding the function of a Google Home device, including "Control your smart home products using your voice," "Get real-time answers to questions with Google," and "Simply say 'OK Google.'"  *See id.* ¶ 47.  Hernandez alleges that he had seen representations on Google's website that GAEDs would not transmit recordings to Google without the activation phrase or manual activation.  *See id.* ¶ 63.  The Fourth Amended Complaint also identifies the following representations made by Google that GAEDs were voice activated:

- On a Frequently Asked Questions page of its website regarding its Privacy Policy, Google answered the question, "Is Google Home recording all of my conversations?" with the following:

> "No. Google Home listens in short (a few seconds) snippets for the hotword. Those snippets are deleted if the hotword is not detected, and none of that information leaves your device until the hotword is heard. When Google Home detects that you've said "Ok Google" or "Hey Google," or that you've physically long pressed the top of your Google Home device, the LEDs on top of the device light up to tell you that recording is happening, Google Home records what you say, and sends that recording (including the few-second hotword recording) to Google in order to fulfill your request. You can delete these recordings through My Activity anytime."

*Id.* ¶ 90.

- Google's polices state that GAED audio recordings will not be shared with third parties without explicit consent.  *See id.* ¶ 91.

- Google included the following statement on its website on the privacy page for GAEDs:

> The Google Assistant is designed to wait in standby mode until it is activated, like when you say "Hey Google." The Assistant starts in standby mode, waiting to be activated. In standby mode, it processes short snippets of audio (a few seconds) to detect an activation (such as "Ok Google"). If no activation is detected, then those audio snippets won't be sent or saved to Google. When an activation is detected, the Assistant comes out of standby mode to fulfill your request.

*Id.* ¶ 92.

United States District Court
Northern District of California

3

- Google published videos regarding GAEDs, including one titled "Privacy On Google Assistant" that featured voiceover stating the following:

> The Google Assistant is built to keep your information private, safe, and secure. This is a speaker with a Google Assistant. It's built to wait in standby mode until it is activated, like when you say "Hey Google." And when it's in standby mode, Assistant won't send what you were saying, to Google or anyone else.

*Id.* ¶ 93. The voiceover also states: "Occasionally, the assistant may activate when you didn't intend it to, because it incorrectly detected that you wanted its help. We have a number of protections designed to prevent this from occurring." *Id.* ¶ 97.

- The Google Home packaging states: "Just start with, 'Ok Google.'" *Id.* ¶ 94.

- A support page on Google's website states: "Google Nest and Google Home speakers or displays make life easier by helping you do things like access media, manage your tasks, and plan your day using only your voice." *Id.* ¶ 95.

- A Google webpage states, "You can activate your assistant in many ways," in response to the Frequently Asked Question, "What are some types of activation methods?" *Id.* ¶ 96.

- The privacy page on Google's website features the questions, "Can Google Assistant unintentionally collect my voice data? What happens if it does and what are my choices?" Google's answer is the following: "Occasionally, the Assistant will activate when you didn't intend it to, because it incorrectly detected that you wanted its help (like by a noise that sounds like 'Hey Google'). If that happens, just say 'Hey Google, that wasn't for you,' and the Assistant will delete the last thing it sent to Google." *Id.* ¶ 98. Google states that this happens "[o]n rare occasions." *Id.* ¶ 98.

- Google's online community forum states that Google Home can "accidentally activate when it hears something similar to 'Hey Google.'" *Id.* ¶ 99. The forum describes how users can adjust the responsiveness of their devices. *Id.*

Plaintiffs allege that in 2020, Google automatically configured GAEDs to record and transmit audio when the devices detected certain "alarm events" like the sound of a smoke alarm or of breaking glass. *See id.* ¶¶ 9, 117–22, 124, 261, 277–78, 289. Plaintiffs allege that Google claimed

4

1   this was an accident based on a software update, and only GAEDs belonging to users of Google's
2   security-related subscription service were supposed to activate in response to alarm events, so
3   Google rolled back the feature. *See id.* ¶ 118 (citing article at Bali Decl., ECF No. 144-1, Ex. A).
4   But Plaintiffs allege that Google's reconfiguration of GAEDs was part of a deliberate effort to get
5   GAEDs into users' homes with the promise of privacy before expanding into home security and
6   changing the function of the devices. *See id.* ¶¶ 278, 289.  Plaintiffs allege that Google developed
7   its plan to engage in this deception of its users as early as 2016 or 2017, when it submitted various
8   patent filings pertaining to the configuration of GAEDs to detect alarm events like the sound of
9   shattered glass. *See id.* ¶¶ 108–12.  Plaintiffs further point to Google's partnership with the security
10  company ADT, which began as early as January 2018, which Google allegedly entered into in order
11  to compete with Amazon in the home security space. *See id.* ¶¶ 113–15.

12      As a result of Google's reconfiguration of the GAED devices in 2020, Plaintiffs allege that
13  users unexpectedly received notifications regarding "alarm events" from their GAEDs. *See id.* ¶¶
14  9, 116–17.  Plaintiffs allege that Brekhus and Hernandez set up their GAEDs in their homes and
15  Google recorded their personal conversations without their consent. *See id.* ¶¶ 53–54, 67–68, 70.
16  However, Plaintiffs do not allege that Brekhus and Hernandez's GAEDs made these recordings
17  based on alarm events. *See id.*  In fact, at the January 6, 2022 hearing, Plaintiffs stated that neither
18  Brekhus nor Hernandez's GAEDs activated based on an alarm event.

19      Plaintiffs allege that had Brekhus and Hernandez known their GAEDs could be reconfigured
20  to record, transmit, or process audio even when they were not activated by a voice command or via
21  manual activation, Brekhus and Hernandez would not have acquired, set up, or used the devices.
22  *See id.* ¶¶ 50, 55, 59–60, 65–66, 74–75.  Further, Plaintiffs allege that Brekhus and Hernandez would
23  have paid less for the devices or taken measures to prevent the devices from hearing unwanted audio,
24  including by unplugging them. *See id.* ¶¶ 60, 75, 134, 291.

25      Brekhus and Hernandez assert claims against Google based on (1) its violation of the
26  California Consumer Legal Remedies Act ("CLRA") and (2) for common law fraud, deceit, and/or
27  misrepresentation. *See id.* ¶¶ 271–95.  In support of both claims, Plaintiffs allege that Google made
28  intentional misrepresentations that GAEDs were activated only based on voice inputs or manual

United States District Court
Northern District of California

United States District Court
Northern District of California

activation, which Plaintiffs allege Brekhus and Hernandez relied on. *Id.* Further, Plaintiffs allege that Google made these misrepresentations knowing that its devices could be reconfigured to activate in response to other sounds like alarm events. *Id.* Brekhus and Hernandez seek damages, including the amount they paid to obtain the GAEDs, based on their common law fraud claim. *See id.* ¶¶ 293–94. Further, under the CLRA, Brekhus and Hernandez seek an injunction preventing Google from continuing to employ the alleged unlawful methods, acts, and practices in the future. *See id.* ¶ 281. Brekhus and Hernandez further seek compensatory damages, punitive damages, and restitution of Google's ill-gotten gains under the CLRA based on Google's failure to correct, repair, replace, or otherwise rectify the alleged unlawful, unfair, false, and/or deceptive practices. *See id.* ¶ 282.

The Court previously dismissed Brekhus and Hernandez's CLRA and common law fraud claims because they failed to plead these claims "with particularity" under Rule 9(b).[1] *See* Order on Motion to Dismiss Third Amended Complaint ("3AC Order"), ECF No. 138 at 25–27. The Court found Plaintiffs' pleadings "exceedingly thin." *Id.* at 25. In the Third Amended Complaint, Plaintiffs based their fraud claim in part on Google's representations about "adequate security measures" that prevented GAED's from misusing users' personal information. 3AC, ECF No. 118 ¶ 272. The Court found these allegations "vague to the point of meaninglessness." 3AC Order, ECF No. 138 at 26. For Plaintiffs' fraud theory based on Google reconfiguring GAEDs to activate in response to alarm events, the Court found that Plaintiffs' allegations "[fell] far short of Rule 9's requirements." *Id.* at 26. The Court found that Plaintiffs (1) failed to plead a "unified theory of fraud," instead peppering their allegations throughout the Third Amended Complaint; (2) failed to plead facts suggesting justifiable and detrimental reliance on Google's alleged misrepresentations; and (3) failed to plead that Google had the intent to mislead or omit material information about the future circumstances under which the GAEDs would record audio *at the time of the alleged*

---

[1] Rule 9(b) applies to Brekhus and Hernandez's CLRA claim because it sounds in fraud. *See* Order on Motion to Dismiss Third Amended Complaint, ECF No. 138 at 25 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

*misrepresentations*.  *Id.* at 26–27.  Accordingly, the Court dismissed Brekhus and Hernandez's CLRA and common law fraud claims as alleged in the Third Amended Complaint with leave to amend.

Plaintiffs amended their allegations in the Fourth Amended Complaint.  *See* 4AC, ECF No. 141.  First, at paragraph 107 of the Fourth Amended Complaint, Plaintiffs added that Google reconfigured its GAEDs "in 2020."  *See* 4AC Redline, ECF No. 141-1 at 27.  Second, Plaintiffs added the allegations related to (1) Google's patent activity between 2016 and 2018 related to "alarm event" activation of GAEDs and (2) Google's partnership with ADT starting in 2018. *See id.* at 29–30.  Third, Plaintiffs added paragraphs 275 through 279 and 285 through 289 to its allegations in support of its CLRA and common law fraud claims, which allege facts related to (1) Brekhus and Hernandez's reliance on Google's representations and (2) Google's intent to get GAEDs into user's homes on promises about privacy before reconfiguring them to offer home security functionality.  *See id.* at 63–66.  Fourth, Plaintiffs removed the allegations in support of their common law fraud claim related to "adequate security measures."  *See id.* at 66.

The question before the Court is whether Plaintiffs' amendments to their allegations in the Fourth Amended Complaint are sufficient to change the Court's prior conclusion that Plaintiffs have not alleged enough facts to meet the Rule 9(b) standard for Brekhus and Hernandez's CLRA and common law fraud claims.  Google argues that Plaintiffs have continued to fail to allege sufficient facts including by failing to plead with particularity (1) a single misrepresentation or actionable omission by Google; (2) Google's knowledge that the alleged misrepresentations were false when made prior to 2018 and 2019; (3) Google's duty to disclose facts in support of Plaintiffs' fraud by omission theory; (4) Google's intent to defraud Plaintiffs; (5) Brekhus and Hernandez's justifiable and detrimental reliance on the alleged misrepresentations; or (6) Brekhus and Hernandez's injury from the alleged fraud.  *See* Motion, ECF No. 144 at 3–5.  In response, Plaintiffs argue that they have adequately alleged each of the elements required for their fraud claims.  *See* Opposition, ECF No. 145 at 2–5.

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

1    claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force*

2    *v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732

3    (9th Cir. 2001)).  When determining whether a plaintiff has stated a claim, the Court accepts as true

4    all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese*

5    *v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not

6    "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations

7    that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

8    *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations

9    omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient

10   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

11   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

12   claim is facially plausible when it "allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is

14   limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v.*

15   *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581

16   (9th Cir. 1983).

17         In deciding whether to grant leave to amend, the Court must consider the factors set forth by

18   the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth

19   Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district court

20   ordinarily must grant leave to amend unless one or more of the *Foman* factors is present:  (1) undue

21   delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4)

22   undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence Capital*,

23   316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries the

24   greatest weight."  *Id.*  However, a strong showing with respect to one of the other factors may

25   warrant denial of leave to amend.  *Id.*

## III.    DISCUSSION

### A.    Request for Judicial Notice

28         Google requests that the Court take judicial notice of two exhibits.  *See* Motion, ECF No. 144

8

at 1.  Plaintiffs do not oppose Google's request.  *See* Opposition, ECF No. 145.

There are two doctrines that permit district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment:  judicial notice under Federal Rule of Evidence 201 and incorporation by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).  The judicial notice doctrine permits a court to take judicial notice of matters that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.  For instance, though public records are generally subject to judicial notice, a court may not take judicial notice of disputed facts within public records.  *See id.*

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Khoja*, 899 F.3d at 1002.  This doctrine permits a court to consider a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A court generally "may assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Khoja*, 899 F.3d at 1003 (internal quotations omitted).  Because all inferences must still be drawn in the nonmoving party's favor, however, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Id.*

First, Google requests that the Court take judicial notice of Exhibit A—an article regarding the 2020 introduction and rollback of "alarm event" detection capabilities in GAEDs that Plaintiffs cite in the Fourth Amended Complaint.  *See* Bali Decl., ECF No. 144-1, Ex. A; Motion, ECF No. 144 at 1; 4AC, ECF No. 141 ¶¶ 118–20, 281.  Since Plaintiffs repeatedly cite to the article and Plaintiffs rely on it for a significant part of their alleged facts in support of the theory based on GAED's reconfiguration to detect "alarm events," the Court GRANTS Google's request for judicial

United States District Court
Northern District of California

notice of Exhibit A.  *See* Bali Decl., ECF No. 144-1, Ex. A.

Second, Google requests that the Court take judicial notice of Exhibit B—a publicly available blogpost on Google's website published on October 15, 2019 regarding Google's Nest Aware subscription service, including details about the ability of Google Home devices to listen for "critical sounds, like smoke or carbon monoxide alarms" through the service.  *See* Bali Decl., ECF No. 144-1, Ex. B; Motion, ECF No. 144 at 1.  While this document is not incorporated by reference in the complaint, its existence is a judicially noticeable fact and Plaintiffs do not dispute its contents, so the Court GRANTS Google's request for judicial notice of Exhibit B.  *See* Bali Decl., ECF No. 144-1, Ex. B; *Perkins v. LinkedIn Corp.*, No. 13–CV–04303–LHK, 53 F.Supp.3d 1190, 1204 (N.D. Cal. June 12, 2014).

### B.    Claims 8 and 9

Google moves to dismiss Brekhus and Hernandez's CLRA and common law fraud claims. Fraud allegations must be pled "with particularity."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and citations omitted).  Rule 9(b)'s heightened pleading standard extends to Brekhus and Hernandez's CLRA claim as it sounds in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  "[I]ndispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

#### 1.   Actionable Omission

Plaintiffs allege that Google misrepresented GAEDs by repeatedly publicly disclosing that GAEDs are activated by a user's voice or manual inputs like button presses, when in fact the GAEDs could be reconfigured to be activated based on other types of sound inputs, like "alarm events."  *See* 4AC, ECF No. 141 ¶¶ 275, 277, 288–89.  Google argues that Plaintiffs have failed to allege a misrepresentation or actionable omission.  *See* Motion, ECF No. 144 at 3.  Google argues that Plaintiffs' theory hinges on Google concealing its capability to reprogram its devices to detect alarm

events, but Google's Terms of Service notified Plaintiffs that Google could automatically update software.  *See id*.  Plaintiffs argue that their consent in the Terms of Service to automatic software updates was limited by the bounds of the representations they relied on at the time of purchase.  *See* Opposition, ECF No. 145 at 3.

Plaintiffs' Opposition makes clear that they are alleging omission claims under their CLRA and common law fraud claims.  Opposition, ECF No. 145 at 2 ("Plaintiffs have alleged they relied on Defendants' misrepresentations that were misleading by omission.").  An actionable fraudulent omission is either an omission that is "[1] contrary to a representation actually made by the defendant, or [2] an omission of a fact the defendant was obliged to disclose."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006).

While it appears that Plaintiffs only allege omissions based on Google's duty to disclose, to the extent Plaintiffs are alleging any omissions "contrary to a representation actually made by the defendant," the Court first considers whether Plaintiffs have adequately alleged any such omissions. *Id.*; *see* Opposition, ECF No. 145 at 2–3.

The Court finds that Plaintiffs have not adequately alleged Google's ability to reconfigure GAEDs to listen for sounds other than voice commands was contrary to any of Google's alleged misrepresentations.   Most of the alleged misrepresentations Plaintiffs identify merely show that Google disclosed that GAEDs could be activated by voice or a button press *among other forms of activation*.  *See* 4AC, ECF No. 141 ¶¶ 92 ("an activation (such as 'Ok Google')"); *id.* ¶ 93 (Google Assistant is "built to wait in standby mode until it is activated, like when you say 'Hey Google.'"); *id.* ¶ 94 (packaging states "[j]ust start with, 'Ok Google,'" but also indicates "more things you can do with Google Home Mini" with link); *see also id.* ¶¶ 95–99.  The Court does not find it plausible that these representations, which explicitly identify *examples* of ways to activate GAEDs, were contrary to the alleged fact that Google could reprogram GAEDs to detect events other than voice commands or manual activation.

The closest Plaintiffs come to pleading a representation contrary to the alleged omitted facts is Google's disclosure cited in paragraph 90 of the Fourth Amended Complaint:  "Google Home listens in short (a few seconds) snippets for the hotword.  Those snippets are deleted if the hotword

is not detected, and none of that information leaves your device until the hotword is heard." 4AC ¶ 90. However, the Court finds that this allegation is still not sufficient to show that Google made representations contrary to the alleged facts. At no point does this representation state that it describes the *only* form of processing that GAEDs do of sound information. Rather, this excerpt explicitly describes a GAED's process for recognizing "a hotword," and it appears in a Frequently Asked Questions section in response to the query, "Is Google Home recording all of my *conversations*?" *Id.* (emphasis added). Accordingly, it is not plausible that this is a representation about the *only* activation events a GAED can respond to—it applies specifically to the activation events a GAED can respond to in the context of human speech. Further, this excerpt makes no claim about the *capability* of GAEDs—it does not state that GAEDs cannot be reconfigured to listen for other kinds of activation events that are not specific hotwords. Accordingly, the Court finds that this representation is not plausibly contrary to the alleged omitted facts, particularly in light of the variety of other representations Plaintiffs allege that list voice activation and manual activation as merely example events that could lead to GAED activation. *See id.* ¶¶ 92–99.

Accordingly, the Court finds that Plaintiffs failed to adequately allege omissions based on the theory that Google omitted information about "alarm event" detection "contrary to a representation actually made by" Google. To determine if Plaintiffs have adequately alleged that Google engaged in omissions based on information it was "obliged to disclose," the Court must determine if Google had a duty to disclose any information related to the "alarm event" detection feature. *Daugherty*, 144 Cal.App.4th at 835. The Court turns to that issue below.

### 2. Duty to Disclose

A plaintiff can also plead an actionable omission by alleging that a defendant had a duty to disclose the information allegedly omitted from his or her representations. *Daugherty*, 144 Cal.App.4th at 835. Plaintiffs argue that Google had a duty to disclose the fact that "the software in the Google Home devices was designed to allow the devices to be activated outside the user's control." *See* Opposition, ECF No. 145 at 3.

"California courts have generally rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). There are four circumstances in which

a duty to disclose may arise under California law:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Rasmussen v. Apple Inc.*, 27 F.Supp.3d 1027, 1033 (N.D. Cal. 2014) (citing *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 255 (2011) and *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997)). These are referred to as the *LiMandri* factors. *See Beyer v. Symantec Corp.*, 333 F.Supp.3d 966, 979 (N.D. Cal. 2018).

Plaintiffs plead that Google is liable for failing to disclose that it had the capability to reprogram Google Home devices to record based on alarm events rather than voice activation. *See* 4AC, ECF No. 141 ¶¶ 275–79, 285–89. Google argues that Plaintiffs have failed to show that Google had a duty to disclose under any of the *LiMandri* factors. Motion, ECF No. 144 at 4. In response, Plaintiffs argue that they have pled sufficient facts to show (1) exclusive knowledge, (2) active concealment, and (3) partial misrepresentation. Opposition, ECF No. 145 at 3–4. On reply, Google argues that Plaintiffs have not pled sufficient facts to show that any of these factors apply. Reply, ECF No. 146 at 1–2. The Court considers each of the *LiMandri* factors in turn—excluding the fiduciary duty factor, which Plaintiffs concede does not apply. *See* Opposition, ECF No. 145 at 3.

   a. *LiMandri* Factor #2: Exclusive Knowledge of Material Facts not Known or Reasonably Accessible to Plaintiffs

Under the second *LiMandri* factor, the Court considers whether Google had exclusive knowledge of material facts not known or reasonably accessible to Brekhus and Hernandez at the time they obtained their Google Home devices. *Rasmussen*, 27 F.Supp.3d at 1033.

Plaintiffs argue that they have sufficiently pled that Google had exclusive knowledge giving rise to a duty to disclose. Opposition, ECF No. 145 at 3. Plaintiffs point to their allegations regarding patent applications and Google's competition with Amazon in home security as support of Google's exclusive knowledge as early as 2016. *Id.* Plaintiffs also argue that they had no reason

United States District Court
Northern District of California

United States District Court
Northern District of California

to know of these facts. *Id.* In response, Google argues that Plaintiffs have not alleged sufficient facts to show exclusive knowledge because (1) Google's Terms of Service disclosed that it could automatically update software and (2) it did not know in 2018 and 2019 that its 2020 software would have a bug. Reply, ECF No. 146 at 1.

The Court agrees with Google. Google's Terms of Service disclosed that it could automatically update software. *See* Declaration of Sunita Bali, ECF No. 121, Ex. D at 3. Further, many of the materials Plaintiffs point to regarding Google's patent activity and entry into the home security space were publicly available prior to Plaintiffs acquiring their Google Home devices. *See* 4AC, ECF No. 141 ¶¶ 46–48 (alleging that Plaintiff Brekhus acquired his Google Home device in October 2019 or later); *id.* ¶ 62 (alleging that Plaintiff Hernandez acquired his Google Home device "on or about December 11, 2018"); *id.* at 29 n.23 (citing U.S. Patent No. 9,672,427 (published June 6, 2017); U.S. Publication No. 2017/0328997 (published November 16, 2017); U.S. Publication No. 2018/0012460 (published January 11, 2018); U.S. Publication No. 2018/0012463 (same); U.S. Publication No. 2018/0012462 (same)); *id.* ¶ 109 (citing U.S. Publication No. 2018/0330589 (published November 15, 2018); *id.* at 29 n.24 (citing Marcia Heroux Pounds, *Your Home Will Hear You*, SOUTH FLORIDA SUN-SENTINEL, Jan. 13, 2018, at B7). The public availability of this information undermines Plaintiffs' arguments that (1) their allegations regarding Google's patent and home security activity are sufficient to support Google's exclusive knowledge and (2) Plaintiffs had no reason to know of these facts. *See* Opposition, ECF No. 145 at 3.

Accordingly, the Court finds that Plaintiffs have failed to plausibly plead that Google had exclusive knowledge giving rise to a relevant duty to disclose.

### b. *LiMandri* Factor #3: Active Concealment

Under the third *LiMandri* factor, the Court considers whether Google actively concealed a material fact from Brekhus and Hernandez. *Rasmussen*, 27 F.Supp.3d at 1033.

Plaintiffs argue that they have pled sufficient facts to show that Google actively concealed its intent to reprogram the Google Home devices for home security by repeatedly assuring consumers that they control when the devices are activated. Opposition, ECF No. 145 at 4–5. In response, Google argues that Plaintiffs have not adequately alleged active concealment because they

United States District Court
Northern District of California

1   fail to allege any affirmative acts of concealment, like affirmative denials.  Reply, ECF No. 146 at 2.

2       The Court agrees with Google.  Mere nondisclosure is not enough to show active

3   concealment.  *See Ahern v. Apple Inc.*, 411 F.Supp.3d 541, 576 n.5 (N.D. Cal. 2019) (citing *Herron*

4   *v. Best Buy Co. Inc.*, 924 F.Supp.2d 1161, 1176 (E.D. Cal. 2013)).  Plaintiffs have pointed to no

5   caselaw indicating that allegations regarding repeated instances of nondisclosure are sufficient.

6   Further, Plaintiffs' allegations regarding public patent filings and other materials regarding Google's

7   security-related technology further undermine that they have plausibly alleged active concealment.

8   *See, e.g.*, 4AC, ECF No. 141 at 29 n.23 (citing, *inter alia*, U.S. Patent No. 9,672,427 (published

9   June 6, 2017); U.S. Publication No. 2017/0328997 (published November 16, 2017)).

10       Accordingly, the Court finds that Plaintiffs have inadequately pled that Google had a duty

11   to disclose based on active concealment.

12                    c.   *LiMandri* Factor #4:  Partial Misrepresentation

13       Under the fourth *LiMandri* factor, the Court considers whether Google made partial

14   representations that are misleading because some other material fact had not been disclosed.  *See*

15   *Rasmussen*, 27 F.Supp.3d at 1033.  "A partial representation claim may arise when 'the defendant

16   makes representations but does not disclose facts which materially qualify the facts disclosed, or

17   which render his disclosure likely to mislead.'"  *Herron*, 924 F.Supp.2d at 1177 (E.D. Cal. 2013)

18   (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970)).  "Thus a defendant

19   may not 'suppress or conceal any facts within his knowledge which materially qualify those stated.'"

20   *Id.* (citations omitted).

21       Plaintiffs argue that they have pled sufficient facts to show that Google made partial

22   misrepresentations.  *See* Opposition, ECF No. 145 at 4.  Plaintiffs argue they have alleged that

23   Google advertises that users are in control by voice command of the Google Home devices while

24   failing to provide a disclaimer that Google could change the device to be activated without voice

25   commands.  *See id.*  In response, Google argues that the existence of its sound sensing technology

26   does not materially qualify or make its marketing about voice activation misleading.  *See* Reply,

27   ECF No. 146 at 1–2.

28       As to this element, the Court agrees with Google.  As outlined above, the representations

                                                15

United States District Court
Northern District of California

Plaintiffs point to that allegedly omit information about the "alarm event" detection feature contain disclaimers that voice and manual activation are not the only types of inputs that can cause GAEDs to activate.   Google describes forms of activation inputs "*such as* 'Ok Google[.]'"   4AC, ECF No. 141 ¶¶ 92 (emphasis added).   Google indicates that a GAED is "built to wait in standby mode until it is activated, *like* when you say 'Hey Google.'"   *Id.* ¶ 93.   Further, Google states that "[y]ou can activate your assistant in *many ways*."   *Id.* ¶ 96 (emphasis added).   Even closer calls like Google's representation that GAEDs can "help[] you do things like access media, manage your tasks, and plan your day using only your voice" and its representation that no information about user conversations "leaves your device until the hotword is heard" have qualifying language that indicates that these representations pertain to GAED voice processing only—not *every* type of sound processing that a GAED can do.   *Id.* ¶¶ 90, 95.   Plaintiffs have failed to allege sufficient facts to support that Google's alleged representations are "materially qualified" or rendered misleading based on the existence of other, unlisted forms of GAED activation inputs.   Rather, Google's alleged representations appear to be open-ended statements that already contain qualifiers indicating that GAEDs can activate in response to an assortment of input types.

Further, based on Plaintiffs' allegations and judicially noticed documents, the introduction of the "alarm event" detection feature into non-subscriber GAEDs resulted from a bug in a software update that Google rolled back shortly after its distribution.   *See* 4AC, ECF No. 141 ¶¶ 9, 116–120; Bali Decl., ECF No. 144-1, Exs. A–B.   Accordingly, in asserting that it was a partial misrepresentation for Google not to disclose that GAEDs could be reconfigured to record in response to "alarm events," Plaintiffs are effectively arguing that Google needed to include in its representations about GAEDs that they are voice activated *unless Google makes a mistake*.   The Court does not consider this to be sufficient to render Google's statements about GAEDs voice activation capabilities partial misrepresentations.   Finding any representation about a product misleading if its manufacturer later makes a mistake that allegedly qualifies that representation would be an absurd result.

Finally, to the extent that Plaintiffs are arguing that the mere existence of the "alarm event" detection technology is sufficient to materially qualify or render misleading Google's

United States District Court
Northern District of California

representations about GAEDs being voice activated, the Court does not agree.  Software and hardware companies develop new technologies all the time that may add features or change aspects of their products.  While there may be disclosure obligations that companies have when they introduce those features into users' devices through a software update, the Court is not convinced that merely *developing* a technology that could *someday* lead to changes in a product renders conflicting representations about that product misleading.  Accordingly, the Court finds that Plaintiffs have not alleged facts sufficient to support that Google's development of its "alarm event" detection technology—as evidenced through patent filings, for example—materially qualified or rendered misleading its representations about GAEDs being voice activated.

* * *

Accordingly, the Court finds that Plaintiffs have failed to adequately allege that Google had a duty to disclose under any of the *LiMandri* factors.

### 3.  Knowledge of Falsity

Google argues that Plaintiffs do not adequately allege that Google knew the alleged misrepresentations were false when made because it did not have knowledge in 2018 and 2019 that a software bug would occur in 2020.  *See* Motion, ECF No. 144 at 3.  Plaintiffs argue that they allege facts indicating that Google had knowledge as early as 2016 that its Google Home devices could be reprogrammed so that they were not exclusively voice-activated, including facts related to Google's patent applications and its competition with Amazon in home security.  *See* Opposition, ECF No. 145 at 3 (citing 4AC ¶¶ 108–14).

The Court agrees with Google.  Since Plaintiffs have failed to adequately allege an actionable omission stemming from Google's representations about GAEDs being voice activated, the Court finds that Plaintiffs have also failed to adequately plead that Google had knowledge of the falsity of those representations.  As outlined above, it is not plausible that Google could have anticipated a software bug or future successful development of new software features at the time of the alleged disclosures in 2018 and 2019.  The same reasoning applies to knowledge of falsity—Google's mere knowledge of a possibility of mistakes or a developing technology did not constitute knowledge of falsity of its alleged representations about GAEDs.

1    Accordingly, the Court finds that Plaintiffs have failed to adequately plead knowledge of

2    falsity.

3        **4.  Intent to Defraud**

4        Google argues that Plaintiffs have failed to adequately allege intent to defraud at the time of

5    the alleged misrepresentations in 2018 and 2019.  *See* Motion, ECF No. 144 at 4–5.  Pleading

6    scienter, including intent to defraud, requires more than "conclusory . . . allegations" and "bare

7    assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements.'"  *Iqbal*,

8    556 U.S. at 680–81 (quoting *Twombly*, 550 U.S. at 555); *see also Nalbandyan v. Citibank, NA*, 777

9    Fed.Appx. 189, 191 (9th Cir. 2019).

10       Google argues that Plaintiffs fail to plausibly plead that Google intended to activate the alarm

11   event feature on Brekhus and Hernandez's devices, rather than on Nest Aware subscribers' devices.

12   *Id.* at 4–5.  In response, Plaintiffs argue that they adequately allege that Google "intended consumers

13   rely on the misrepresentation" to get their devices "in as many homes as possible before expanding

14   into home security and changing the function of the devices."  Opposition, ECF No. 145 at 5 (citing

15   *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) ("[P]laintiffs may aver scienter

16   . . . simply by saying that scienter existed.")).  Plaintiffs argue their allegations are further supported

17   by "circumstantial allegations" of Google's relationship with ADT and its competition with

18   Amazon, which was active in the home security space.  *Id.* (citing 4AC ¶¶ 113–16).  On reply,

19   Google argues that Plaintiffs' circumstantial evidence is insufficient to plausibly plead intent to

20   defraud, particularly (1) under the pleading standard after *Ashcroft v. Iqbal* and (2) in light of the

21   "obvious alternative explanation" of a software bug that Google has provided.  *See* Reply, ECF No.

22   146 at 2–3 (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir.

23   2014)); *Iqbal*, 556 U.S. at 686-87.

24       The Court previously dismissed Brekhus and Hernandez's CLRA and common law fraud

25   claims in part because they failed to adequately allege that "Google, *at the time of the alleged*

26   *misrepresentations*, had the intent to mislead or omit material information about the future

27   circumstances under which the GAEDs would record audio."  3AC Order, ECF No. 138 at 27

28   (emphasis in original).  In response, Plaintiffs amended their allegations as follows:  (1) they added

1    allegations regarding Google's patent filings between 2016 and 2018 and its partnership with ADT

2    starting in 2018 and (2) they added allegations that Google intended to "get their devices in as many

3    homes as possible before expanding into home security and changing the function of the devices."

4    *See* 4AC Redline, ECF No. 141-1 at 28–30, 64–66.

5         The Court agrees with Google that Plaintiffs still fail to allege facts showing Google's intent

6    to defraud at the time of the alleged misrepresentations.   The main problem with Plaintiffs'

7    allegations is the time gap between Brekhus and Hernandez obtaining their devices in alleged

8    reliance on Google's representations and Google allegedly rolling out the "alarm event" detection

9    feature in GAEDs.   Nearly a year passed between Brekhus obtaining his Google Home device in

10   October 2019 and Google rolling out the "alarm event" detection feature around July 2020—longer

11   for Hernandez, who acquired his device in 2018.  *See* 4AC, ECF No. 141 ¶¶ 9, 46, 62, 116–120; *see*

12   *also* Bali Decl., Ex. A.  For the Court to find that Plaintiffs have adequately alleged Google's intent

13   to defraud, the Court must infer that Google had the intent to roll out the "alarm event" detection

14   feature in the way that it did—automatically reconfiguring non-subscribing users' devices via a

15   software update without their knowledge or consent—nearly a year or more prior to when it

16   executed that alleged plan.  The Court finds that this inference is a bridge too far, particularly given

17   that Plaintiffs can only support this inference with facts from 2016 through early 2018—years before

18   Google allegedly introduced the "alarm event" detection feature.  *See* 4AC, ECF No. 141 ¶¶ 108–15;

19   *Iqbal*, 556 U.S. at 678.  At the time Brekhus and Hernandez obtained their devices, Google's alleged

20   plan to move into the security space may have been nothing more than an aspiration.   Further,

21   Plaintiffs' intent to defraud allegations are not aided by the fact that they are based on *public* patent

22   filings, and a Google-ADT partnership that is not alleged to have been secret at the time Plaintiffs

23   acquired their devices.  *See* 4AC, ECF No. 141 ¶¶ 108–15.

24        Additionally, Plaintiffs' allegations about Google's rollback of the "alarm event" detection

25   feature further undermine the inference that Google had the intent to defraud at the time of the

26   alleged misrepresentations.  Plaintiffs allege that Google claims the "alarm event" detection feature

27   being added to GAEDs was the result of an "accident that occurred through a software update,"

28   which Google "rolled back."  4AC, ECF No. 141 ¶ 118.  Plaintiffs' allegations could thus support

United States District Court
Northern District of California

United States District Court
Northern District of California

the alternative explanation that Google introduced the "alarm event" detection feature to non-subscriber GAEDs as an accident, so it subsequently removed the feature. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.") (citations omitted); *Eclectic Props.*, 751 F.3d at 996; *see also Harry v. KCG Americas LLC*, No. 17–cv–02385–HSG, 2018 WL 4075885, at *7 (N.D. Cal. Aug. 27, 2018) (finding contradictory allegations implausible "especially given the heightened pleading requirement under Federal Rule of Civil Procedure 9(b).").

Google's alternative explanation has further support from the articles the Court judicially notices. Exhibit A to the Bali Declaration further supports Google's alternative explanation, indicating that a spokesperson for Google stated by August 3, 2020, "A recent software update enabled these alerts on some of our speakers that didn't have a subscription, but we've since rolled that back." Bali Decl., ECF No. 144-1, Ex. A. Plaintiffs' allegations support that the "alarm event" detection feature was introduced to GAEDs around the end of July 2020, so the fact that this quote about the rollback appears in an article on August 3, 2020 supports that the "alarm event" detection feature was short-lived. *See* 4AC, ECF No. 141 ¶¶ 9, 116–120. Further, Exhibit B to the Bali Declaration indicates that as of October 15, 2019, Google had introduced the "alarm event" detection service as a feature of its paid Google Nest subscription service. *Id.*, Ex. B. These judicially noticed articles support the explanation that Google intended to introduce the "alarm event" detection feature only to GAEDs belonging to subscribers to its Google Nest service. *See* Bali Decl., ECF No. 144-1, Exs. A–B. Further, these articles support that Google introduced the feature to other devices because of a software bug, and it rolled back the feature shortly after its activation on non-subscriber GAEDs. *Id.* Accordingly, Plaintiffs' allegations about the rollback and the Court's judicially noticed facts further undermine Plaintiffs' already inadequately supported inference that Google intended to defraud Brekhus and Hernandez in 2018 and 2019.

Plaintiffs argue that it is enough for them to have alleged that Google intended "to get [its] devices in as many homes as possible before expanding into home security and changing the

function of the devices." Opposition, ECF No. 145 at 5. But as Google points out, Plaintiffs appear to base that contention on an outdated standard. *See* Reply, ECF No. 146 at 2. The Court agrees with the courts in Google's cited cases that after *Ashcroft v. Iqbal*, it is not enough to allege scienter "simply by saying that it existed." *Eclectic Props. East LLC v. Marcus and Millichap Co.*, No. C–09–00511 RMW, 2012 WL 713289, at *11 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994)).

Accordingly, the Court finds that Plaintiffs have failed to plead sufficient facts in support of Google's intent to defraud at the time of the alleged misrepresentations.

### 5. Justifiable Reliance

Google argues that Plaintiffs have failed to allege sufficient facts to show justifiable reliance. Google argues that it is implausible that Plaintiffs would have changed their behavior if they had known that Google (1) had the ability to perform software updates or (2) had the ability to enable devices to detect alarm events and intended to offer that feature as part of a paid service. *See* Motion, ECF No. 144 at 5. In response, Plaintiffs argue that they have alleged sufficient facts to support justifiable reliance, including (1) privacy concerns inherent to bringing recording and transmitting devices into one's home and (2) allegations that they would not have purchased Google Home devices had they known a software update "could render their privacy settings futile." *See* Opposition, ECF No. 145 at 2. Further, Plaintiffs argue that Google's arguments go to the weight of the evidence. *Id.* On reply, Google argues that (1) Plaintiffs' allegations only support that they relied on truthful representations that Google Home devices *can* (not can *only*) be activated by hotwords and (2) it is implausible that Plaintiffs would not have purchased their devices had they known a future software update might have the sound sensing bug. *See* Reply, ECF No. 146 at 3.

The Court previously dismissed Plaintiffs' CLRA and common law fraud claims in part because Plaintiffs failed to adequately allege that Brekhus and Hernandez justifiably relied on Google's alleged misrepresentations. The Court found that the Third Amended Complaint was "void of facts that so much as suggest that . . . Brekhus and Hernandez justifiably and detrimentally relied on Defendants' alleged misrepresentations." 3AC Order, ECF No. 138 at 26–27. In the Fourth Amended Complaint, Plaintiffs added allegations to Brekhus and Hernandez's CLRA and

United States District Court
Northern District of California

United States District Court
Northern District of California

1  common law fraud claims stating that they relied on Google's representations about GAEDs being

2  voice activated, which "did not inform consumers that the devices could activate without the use of

3  a hot word or manual activation."  *See* 4AC Redline, ECF No. 141-1 at 63–66.

4       Based on Plaintiffs' additions between the Third and Fourth Amended Complaints, the Court

5  agrees with Plaintiffs.   Plaintiffs have alleged reasonable reliance on Google's alleged

6  misrepresentations in purchasing their GAEDs.  *See* 4AC, ECF No. 141 ¶¶ 49–50, 63–66, 90–99,

7  286–87, 293.  Google's cited case—where the court found allegations of reliance conclusory given

8  that plaintiffs failed to allege that they made purchases based on the allegedly relied-on

9  representations—is distinguishable.   *See Ferrari v. Mercedes Benz USA, LLC*, No.

10  17–CV–00018–YGR, 2019 WL 2103438, at *5 (N.D. Cal. May 14, 2019); Motion, ECF No. 144 at

11  5 (citing *Ferrari*, 2019 WL 2103438, at *4); Reply, ECF No. 146 at 3 (same).  Plaintiffs have

12  adequately alleged Brekhus and Hernandez purchased Google Home devices in reliance on

13  Google's alleged misrepresentations.  *See* 4AC, ECF No. 141 ¶¶ 49–50, 63–66.

14       Accordingly, the Court finds that Plaintiffs have adequately alleged justifiable reliance.

15       **6.  Injury**

16       Google argues that Plaintiffs have not alleged that Brekhus and Hernandez were injured by

17  the alleged fraud because they do not allege that their Google Home devices were activated by alarm

18  events.  *See* Motion, ECF No. 144 at 5.  In response, Plaintiffs argue that their allegations are

19  sufficient to support the inference that Brekhus and Hernandez's devices received the software

20  update.  *See* Opposition, ECF No. 145 at 4–5.  Further, Plaintiffs argue that since the software that

21  runs on Brekhus and Hernandez's devices is peculiarly within Defendants' knowledge, it is

22  appropriate for Plaintiffs to have alleged this generally.  *See id.* at 5.  On Reply, Google argues that

23  (1) Plaintiffs' allegations do not support the inference that Brekhus and Hernandez's devices were

24  activated by alarm events and (2) since an alarm event causes a user-facing notification, whether

25  Brekhus and Hernandez received an alarm event is not peculiarly within Google's knowledge.  *See*

26  Reply, ECF No. 146 at 3.  At the January 6, 2022 hearing, Plaintiffs argued that they had adequately

27  alleged injury to Brekhus and Hernandez because damage under a fraud claim is the economic injury

28  experienced by a plaintiff based on the price premium that the plaintiff paid based on the fraud.

The Court agrees with Plaintiffs.  Since Plaintiffs have alleged that Brekhus and Hernandez would not have bought or would have paid less to obtain their Google Home devices if they had known they could record or transmit without voice-based or manual activation, the Court finds that Plaintiffs have adequately alleged economic injury on the part of Brekhus and Hernandez.  *See* 4AC, ECF No. 141 ¶¶ 49–50, 55, 59–60, 63–67, 74–75, 134.  Further, the Court finds it to be a plausible inference that Brekhus and Hernandez's GAEDs received the software update with the "alarm event" detection feature.  The fact that Brekhus and Hernandez did not personally experience their devices activating based on an "alarm event" does not change that Plaintiffs have plausibly alleged economic injury.  It is plausible that even if Brekhus and Hernandez had known there was only a chance that the "alarm event" feature would cause their GAEDs to record their conversations before Google rolled the feature back, Brekhus and Hernandez would have nonetheless chosen to pay less or not to purchase the GAEDs so as to avoid the risk of a sensitive conversation getting recorded. *See, e.g.*, *Koller v. Med Foods, Inc.*, No. 14–cv–02400-RS, 2015 WL 13653887, at **3–4 (N.D. Cal. Jan. 6, 2015) (plaintiff was entitled to receive products that conformed to defendant's representations "by design, not by happenstance").

Accordingly, the Court finds that Plaintiffs have adequately pled injury to Brekhus and Hernandez based on Google's alleged fraud.

\* \* \*

Based on the above reasoning, the Court finds Plaintiffs have failed to adequately plead fraud under Rule 9(b) due to their failure to allege sufficient facts in support of an actionable omission, Google's knowledge of falsity, or Google's intent to defraud Brekhus and Hernandez. Accordingly, the Court GRANTS Google's motion to dismiss Brekhus and Hernandez CLRA and common law fraud claims.

### C.   CLRA Claim

Google argues that Brekhus cannot bring a claim under the CLRA, because he does not meet the statute's definition of a "consumer."  *See* Motion, ECF No. 144 at 5 n.1.  Under the CLRA, a "consumer" is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).

1        Plaintiffs allege that Brekhus obtained his Google Home Mini through a promotion by

2   Spotify whereby individuals with a paid Spotify subscription could obtain a free Google Home Mini.

3   *See* 4AC, ECF No. 141 ¶ 46.  Plaintiffs allege that Brekhus bought a Spotify subscription, then

4   ordered his Google Home Mini from Google directly.  *See id.* ¶ 47.  Plaintiffs allege that in doing

5   so, Brekhus entered into a purchase transaction with Google directly.  *See id.* ¶ 48.  In a footnote,

6   Google argues that since Brekhus obtained his Google Home Mini for free through the Spotify

7   promotion, he is not a "consumer" within the meaning of the CLRA.  *See* Motion, ECF No. 144

8   at 5 n.1.  Based on Google's cited case, Google's argument appears to be in part that since Brekhus's

9   transaction was with Spotify, rather than Google, he was not a "consumer" under the CLRA as to

10   Google, because he did not receive the Google Home device as part of a consumer transaction with

11   Google.  *See id.* (citing *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal.App.4th 949, 960 (2005)

12   (plaintiff was not a "consumer" under the CLRA where "[p]laintiff's ownership . . . was not acquired

13   as a result of her own consumer transaction with defendant")).  Plaintiffs do not respond to Google's

14   argument in their opposition.  *See* Opposition, ECF No. 145.

15        The Court disagrees with Google.  While Brekhus did not pay Google in exchange for a

16   Google Home Mini, Plaintiffs allege that Brekhus paid Spotify and ordered his Google Home Mini

17   directly from Google.  *See* 4AC, ECF No. 141 ¶ 47.  Further, Plaintiffs allege that Brekhus entered

18   into a purchase transaction with Google directly.  *See id.* ¶ 48.  This is distinguishable from Google's

19   cited case, where plaintiff had been given a ring as a gift by her former husband, and since she was

20   not the purchaser and had not been assigned the purchaser's rights, she was not a "consumer" for

21   purposes of the CLRA.  *See Schauer*, 125 Cal.App.4th at 960.  As alleged, Brekhus was a direct

22   purchaser from Google.  *See* 4AC, ECF No. 141 ¶¶ 47–48.  The Court finds that Plaintiffs'

23   allegations are sufficient to state a claim that Brekhus was a "consumer" under the CLRA.

24        Accordingly, the Court will not dismiss Brekhus's CLRA claim on the basis that he was not

25   a "consumer" under the CLRA.

26      **D.    Leave to Amend**

27        As outlined above, the Court has previously dismissed Brekhus and Hernandez's CLRA and

28   common law fraud claims, including for failure to adequately plead Google's intent to defraud.

United States District Court
Northern District of California

United States District Court
Northern District of California

3AC Order, ECF No. 138 at 27.  As the Court outlines above, Plaintiffs' allegations are again insufficient to support the CLRA and common law fraud claims because of the inadequacy of Plaintiffs' intent to defraud allegations.  Accordingly, the Court finds it is appropriate to deny Plaintiffs leave to amend, because Plaintiffs have shown a repeated failure to cure deficiencies in their CLRA and common law fraud claims by amendment.  Further, given that the main deficiency in Plaintiffs' intent to defraud allegations is the significant time gap between Brekhus and Hernandez's purchase of GAEDs and the introduction of the "alarm event" detection feature, it is unclear to the Court how Plaintiffs will be able to avoid this time gap through amendment of their pleadings.  Accordingly, the Court finds that amendment of Brekhus and Hernandez's CLRA and common law fraud claims would be futile.  *Eminence Capital*, 316 F.3d at 1052.

Based on the above reasoning, the Court's dismissal of Brekhus and Hernandez's CLRA and common law fraud claims is WITHOUT LEAVE TO AMEND.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Google's Motion to Dismiss Claims 8 and 9 of the Fourth Amended Complaint is GRANTED WITHOUT LEAVE TO AMEND.

Dated:  January 11, 2022

_____
BETH LABSON FREEMAN
United States District Judge