```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4
     IN RE GOOGLE ASSISTANT PRIVACY   )   CV-19-4286-BLF
 5   LITIGATION                       )
                                      )   SAN JOSE, CALIFORNIA
 6                                    )
                                      )   JANUARY 6, 2022
 7                                    )
                                      )   PAGES 1-17
 8                                    )
                                      )
 9                                    )
     _____)
10
                        TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE BETH LABSON FREEMAN
                     UNITED STATES DISTRICT JUDGE
12
                           A P P E A R A N C E S
13

14   FOR THE PLAINTIFF:          BY:  HAYLEY A. REYNOLDS
     BREKHUS                     GUTRIDE SAFIER LLP
15                               100 PINE STREET, SUITE 1250
                                 SAN FRANCISCO, CA 94111
16

17

18   FOR THE DEFENDANT:          BY:  SUNITA BALI
                                 PERKINS COIE LLP
19                               505 HOWARD STREET, SUITE 1000
                                 SAN FRANCISCO, CA 94105
20

21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1          APPEARANCES CONTINUED:

 2   FOR THE PLAINTIFF:        BY:  ANDREA FARAH
                               LOWEY DANNENBERG, P.C.
 3                             44 SOUTH BROADWAY, SUITE 1100
                               WHITE PLAINS, NY 10601
 4

 5   FOR THE PLAINTIFF:        BY:  JOHN T. JASNOCH
                               SCOTTSCOTT ATTORNEYS AT LAW LLP
 6                             600 WEST BROADWAY, SUITE 3300
                               SAN DIEGO, CA 92101
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1         SAN JOSE, CALIFORNIA                    JANUARY 6, 2022
 2                      P R O C E E D I N G S
 3         (COURT CONVENED AT 10:07 A.M.)
 4             THE CLERK:  CALLING CASE 19-CV-4286.  IN RE GOOGLE
 5     ASSISTANT PRIVACY LITIGATION.
 6         COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES.
 7             MS. REYNOLDS:  GOOD MORNING, YOUR HONOR.
 8         HAYLEY REYNOLDS FROM GUTRIDE SAFIER ON BEHALF OF
 9     PLAINTIFF.
10             THE COURT:  GOOD MORNING.
11             MS. FARAH:  GOOD MORNING, YOUR HONOR.
12         ANDREA FARAH FROM LOWEY DANNENBERG ON BEHALF OF
13     PLAINTIFFS.
14             THE COURT:  GOOD MORNING.
15             MR. JASNOCH:  GOOD MORNING, YOUR HONOR.
16         JOHN JASNOCH WITH THE FIRM SCOTT & SCOTT ON BEHALF OF
17     PLAINTIFFS.
18             THE COURT:  GOOD MORNING.
19             MS. BALI:  GOOD MORNING, YOUR HONOR.
20         SUNITA BALI FROM PERKINS COIE FOR DEFENDANTS.
21             THE COURT:  GOOD MORNING, MS. BALI.
22             MS. BALI:  GOOD MORNING.
23             THE COURT:  THREE AGAINST ONE.  THAT'S THE WAY IT
24     GOES SOMETIMES.  I KNOW YOU'RE UP TO IT.  PUT ON YOUR BOXING
25     GLOVES THIS MORNING AND WE ARE READY TO GO.
```

1           MS. BALI:  YES, YOUR HONOR.

2           THE COURT:  ALL RIGHT.

3      WELL, WE HAVE BEEN DISCUSSING THIS CASE FOR QUITE A WHILE

4  AT THIS POINT, A COUPLE OF YEARS NOW, I'M SORRY TO SAY, BUT WE

5  ARE DOWN TO -- WHETHER THE CLRA AND FRAUD CLAIMS CAN GO FORWARD

6  IN THE EIGHTH AND NINTH CLAIMS IN THE FOURTH AMENDED COMPLAINT.

7      NEEDLESS TO SAY, IT'S GOING TO BE IN OR OUT, BASED ON THIS

8  MOTION, I THINK EVERYONE IS PROBABLY READY TO DROP FROM

9  EXHAUSTION ON THE PLEADINGS.

10      I DON'T THINK THAT THERE'S ENOUGH ALLEGED UNDER THE THEORY

11  FOR CLRA AND FRAUD HERE.  I'M TRYING TO ACTUALLY GLEAN FROM THE

12  FOURTH AMENDED COMPLAINT, THE ACTUAL INJURY.

13      AND MS. REYNOLDS, ARE YOU ALLEGING THAT THE LISTENING FOR

14  THE SOUNDS WAS ACTIVATED ON EVERY DEVICE AND ONLY SENT ALERTS

15  WHEN THE SOUNDS WERE HEARD?  BECAUSE YOU DON'T ACTUALLY SAY

16  THAT.  I WAS TRYING TO -- AND SO I WAS -- OR MAYBE I MISSED IT,

17  BUT I DIDN'T ACTUALLY SEE THAT ALLEGATION THAT IT WAS

18  LISTENING, IT JUST DIDN'T HEAR ANYTHING, THAT WAS CONFUSED BY

19  THAT.

20           MS. REYNOLDS:  I UNDERSTAND, YOUR HONOR.

21      AND APOLOGIES IF THE ALLEGATIONS ARE NOT CLEAR.  IT IS OUR

22  ALLEGATION AND OUR POSITION THAT THE SOFTWARE CHANGE HAPPENED

23  ON ALL GOOGLE HOME DEVICES AND THAT PLAINTIFF SIMPLY DID NOT

24  HAVE AN ACTIVATION BECAUSE THERE WAS NOT A SOUND THAT TRIGGERED

25  THAT UPDATE.

1   THE COURT: OKAY. SO THE PLAINTIFFS, BY HAVING THE
2   DEVICE, WANTED THE CAPABILITY OF ACTIVATION FOR ONE OF THE HOT
3   WORDS, CORRECT?
4   MS. REYNOLDS: THAT'S CORRECT, YOUR HONOR.
5   THE COURT: OKAY. AND THOSE HOT WORDS WERE DEFINED
6   AS, HEY GOOGLE, OR WHATEVER THEY ARE.
7    AND SO CLEARLY GLASS BREAKING IS NOT ONE OF THE HOT WORDS
8   THEY WERE AWARE OF, I'M CERTAINLY UNDERSTANDING OF THAT. BUT
9   IN FACT, IT SEEMS TO ME, BASED ON YOUR FACTUAL ALLEGATIONS,
10  THAT THIS CHANGE IN THE SOFTWARE CREATING NEW TRIGGERS, DOESN'T
11  INTRUDE MORE INTO, WE'LL CALL IT A HOME, BUT INTO A USER'S
12  EXPERIENCE UNLESS IT'S TRIGGERED. SO THESE PLAINTIFFS
13  CERTAINLY BOUGHT INTO ACTIVATION WHEN THEY CONSCIOUSLY SAID,
14  HEY GOOGLE, CORRECT?
15  MS. REYNOLDS: CORRECT.
16  THE COURT: AND DURING ALL THE TIMES THAT THEY DIDN'T
17  SAY, HEY GOOGLE, THEY EXPECTED THAT THE SOFTWARE WOULD BE READY
18  TO BE TRIGGERED, BUT HADN'T BEEN, CORRECT?
19  MS. REYNOLDS: YES, YOUR HONOR.
20  THE COURT: SO IN THESE ALLEGATIONS THAT ARE
21  REGARDING THE -- WHAT I THINK YOU ACKNOWLEDGE AS WELL, WAS
22  GOING TO BE A PAID SUBSCRIPTION FOR A SECURITY FEATURE, THAT
23  THE SAME THING WAS GOING ON, THE DEVICE WAS READY TO BE
24  ACTIVATED, AND IT'S ALWAYS BEEN READY TO BE ACTIVATED, THERE
25  ARE JUST NEW TRIGGERS THAT THE DIDN'T HAPPEN FOR THE NAMED

1          PLAINTIFF.

2              SO I'M NOT SEEING -- YOU KNOW, IN THE MAIN CASE, YOU ARGUE

3     THAT THE SOFTWARE WAS DEFICIENT BECAUSE IT TRIGGERED FOR

4     COMMANDS THAT WERE NOT LISTED COMMANDS.  AND WE WENT THROUGH A

5     COUPLE ROUNDS ON THAT, AND YOUR CLIENTS ACTUALLY WERE ABLE TO

6     ALLEGE THEIR OWN CONSUMER EXPERIENCE WHEN IT WAS TRIGGERED.

7              AND HERE, I DON'T HAVE THAT, SO WE ARE KIND OF RIGHT BACK

8     TO WHERE WE WERE A WHILE AGO ON THIS.  AND TO ME, THAT'S REALLY

9     A THRESHOLD ISSUE, IS THAT THERE'S NO EVIDENCE THAT THERE WAS

10    AN UNDISCLOSED TRIGGER.  I DON'T KNOW WHAT TO CALL IT.  I MEAN,

11    GOOGLE DOESN'T DISAGREE THAT YOUR CLIENTS DIDN'T SUBSCRIBE TO

12    THE SECURITY.  BUT YOU DON'T ALLEGE THAT THEY GOT ONE OF THESE

13    ALERTS, YOU ALLEGE OTHER PEOPLE DID.  BUT I HAVE TO FOCUS ON

14    YOUR CLIENT'S EXPERIENCE AT THIS TIME.

15             I ALSO AM STRUGGLING WITH THE ISSUE OF CONCEALMENT OR

16    OMISSION, WHICH I THINK YOU CLARIFIED, REALLY THIS IS AN

17    OMISSION THEORY.  I DON'T KNOW HOW THERE'S A DUTY TO DISCLOSE

18    SOMETHING YOU DON'T INTEND TO DO.  AND I DON'T THINK THAT,

19    ALTHOUGH YOU CERTAINLY ALLEGE THAT GOOGLE INTENDED TO DEVELOP A

20    DEVICE THAT COULD BE USED FOR SECURITY ON A SUBSCRIPTION BASIS,

21    YOU DON'T ALLEGE THAT GOOGLE KNEW THAT THE ACTIVATION WOULD

22    OCCUR WITHOUT A SUBSCRIPTION AND A -- THAT THE TRIGGER WOULD

23    OCCUR WITHOUT THE CONTRACT BETWEEN GOOGLE AND THE CONSUMER TO

24    ACTUALLY PAY FOR THAT SERVICE.

25             SO I'M REALLY STRUGGLING ON THE ALLEGATIONS OF DUTY,

1      BECAUSE YOU DO ALLEGE IN THE COMPLAINT, OR THE FOURTH AMENDED
2      COMPLAINT, THAT GOOGLE DID PULL BACK THIS ROLLOUT.
3          SO I MEAN, THE ONLY PLAUSIBLE INFERENCE IS ONCE THEY
4      LEARNED THIS WAS HAPPENING THEY SAID OH, THAT'S A MISTAKE AND
5      THEY CHANGED IT.  ANYWAY, THOSE ARE THE PROBLEMS I HAVE, I AM
6      NOT SEEING THAT THAT CAN GO FORWARD.
7          SO I'M GOING TO -- I'M GOING TO SWITCH GEARS TO MS. BALI,
8      IT IS HER MOTION.  AND I KNOW I'VE LEFT OUT A LOT OF OTHER
9      BRIEFING IN IT, ALTHOUGH IT WAS MERCIFULLY SHORT SINCE I HAD
10     LIMITED YOU.
11         SO MS. BALI, LET ME HEAR FROM YOU.
12             MS. BALI:  THANK YOU, YOUR HONOR.
13        WELL, NEEDLESS TO SAY, I AGREE WITH ALL OF THE POINTS THAT
14     YOUR HONOR MADE.  WHAT WE HAVE HERE IS TWO PLAINTIFFS
15     ATTEMPTING TO ALLEGE FRAUD AND VIOLATIONS OF THE CLRA THAT
16     SOUND IN FRAUD BASED ON A SOFTWARE UPDATE THAT RESULTED IN A
17     BUG THAT CAUSED SOME HOME USERS TO HAVE ACCESS TO THE SOUND
18     SENSING FEATURE OF NEST AWARE, FOR A VERY SHORT PERIOD OF TIME,
19     BEFORE IT WAS CAUGHT AND ROLLED BACK BY GOOGLE.
20         THIS WAS A BUG, IT WAS CAUGHT, IT WAS FIXED, AND THAT JUST
21     DOESN'T AMOUNT TO FRAUD.  PLAINTIFFS DON'T POINT TO A SINGLE
22     MISREPRESENTATION BY GOOGLE.
23         I THINK I AGREE WITH YOUR HONOR THAT THEY CLARIFY THIS IS
24     A FRAUD BY OMISSION THEORY, BUT IT'S NOT CLEAR FROM THE
25     PLEADINGS WHETHER THEY INTEND TO ALLEGE FRAUD BY

1  MISREPRESENTATION OR FRAUD BY OMISSION.  AND THEY DO CITE SOME
2  STATEMENTS BY GOOGLE THAT HOME DEVICES ARE VOICE ACTIVATED, BUT
3  THAT'S TRUE, THEY ARE VOICE ACTIVATED AND THEY ACKNOWLEDGE
4  THAT.
5      AND YOU KNOW, GOOGLE -- THEY SAY THAT GOOGLE MADE SOME
6  REPRESENTATIONS THAT VOICE ACTIVATED SPEAKERS WOULD BE
7  ACTIVATED ONLY BY THE PHRASE "OKAY GOOGLE."  BUT THE PARAGRAPHS
8  THEY CITE TO IN THE COMPLAINT DON'T ALLEGE THAT, AND NOWHERE
9  DOES GOOGLE SAY THAT HOME DEVICES ARE ONLY ACTIVATED BY HOT
10 WORDS SUCH AS "OKAY GOOGLE."  AND EVEN PLAINTIFFS ACKNOWLEDGE
11 THAT THERE'S OTHER WAYS TO ACTIVATE THE DEVICE, INCLUDING
12 MANUAL ACTIVATION.
13     AND EVEN ON A THEORY BY FRAUD OMISSION, THEY DON'T ALLEGE
14 THE CONCEALMENT OR SUPPRESSION OF A MATERIAL FACT.  THEY
15 CONTEND THAT THE FACT THAT GOOGLE WAS DEVELOPING THE SOUND
16 SENSING TECHNOLOGY OR HAD THE ABILITY TO ROLL OUT THE
17 TECHNOLOGY, IS A MATERIAL FACT THAT IT HAD A DUTY TO DISCLOSE.
18     BUT THE MERE DEVELOPMENT OF A TECHNOLOGY THAT IT NEVER
19 INTENDED TO RELEASE TO HOME USERS WHO DID NOT EXPRESSLY PAY FOR
20 THE NEST AWARE FEATURE AND OPT INTO THE SOUND SENSING FUTURE,
21 SIMPLY IS NOT A MATERIAL FACT THAT GOOGLE HAS ANY OBLIGATION TO
22 DISCLOSE TO AN ORDINARY HOME PURCHASER.
23     AND OF COURSE PLAINTIFFS DON'T COME CLOSE TO PLEADING
24 INTENT TO DEFRAUD ON THE PART OF GOOGLE, THEY CAN'T SHOW THAT
25 AT THE TIME THEY OBTAINED THEIR DEVICES IN 2018 OR '19, YOU

1    KNOW, A YEAR OR TWO BEFORE THE BUG EVEN OCCURRED, THAT GOOGLE
2    KNEW THAT IT WOULD ROLL OUT A SOFTWARE UPDATE TWO YEARS LATER
3    THAT WOULD RESULT IN A BUG.
4         AND YOU KNOW, PLAINTIFF'S ALLEGATIONS ABOUT A PATENT
5    APPLICATION FROM 2016 AND A DEAL THAT GOOGLE HAD WITH ADT, DO
6    NOT CREATE AN INFERENCE OF INTENT TO DEFRAUD.
7         THE FACT THAT GOOGLE ROLLED BACK THE UPDATE WITHIN DAYS,
8    SHOWED THAT THE FEATURE WAS NEVER INTENDED TO REACH ORDINARY
9    HOME USERS WHO DIDN'T OPT INTO THE FEATURE.  SO PLAINTIFF'S
10   THEORY OF INTENT IS JUST IMPLAUSIBLE.
11        THERE'S ALSO NO JUSTIFIABLE RELIANCE.  THE STATEMENTS
12   GOOGLE MADE THAT HOME DEVICES WERE ACTIVATED WERE TRUE, AND
13   IT'S IMPLAUSIBLE THAT PLAINTIFFS WOULD HAVE BEHAVED DIFFERENTLY
14   HAD THEY KNOWN THAT GOOGLE WAS DEVELOPING SOUND SENSING
15   TECHNOLOGY THAT IT NEVER INTENDED TO RELEASE TO HOME USERS.
16        AND THEN OF COURSE, YOU KNOW, I AGREE WITH YOUR POINTS ON
17   DAMAGE.  THEY DON'T ALLEGE THAT THEY EVER EXPERIENCED THE BUG,
18   THEY DON'T ALLEGE THAT THEY GOT A NOTICE ON THEIR PHONE, THEY
19   DON'T ALLEGE THAT THEIR DEVICE WAS TRIGGERED BY THE SOUND OF
20   BREAKING GLASS OR A SMOKE ALARM OR ANY OTHER FACTS THAT SUGGEST
21   THAT THEY WERE IMPACTED BY THIS BUG.
22        AND OF COURSE TO USE THE WORDS OF THE NINTH CIRCUIT IN
23   ECLECTIC PROPERTIES EAST CASE, THERE'S AN OBVIOUS ALTERNATIVE
24   EXPLANATION FOR WHAT HAPPENED HERE, AND THAT'S THAT THERE WAS A
25   SOFTWARE BUG THAT RESULTED IN AN OPTIONAL PAID FEATURE BEING

1    ROLLED OUT TO HOME USERS WHO DIDN'T OPT INTO THE FEATURE.
2    GOOGLE CAUGHT THE PROBLEM AND THEY ROLLED IT BACK.  THAT'S JUST
3    NOT FRAUD.
4         AND THEN THE ONLY OTHER POINT I WILL MAKE WITH RESPECT TO
5    THE CLRA CLAIM IS THAT WE STILL HAVE THE ISSUE THAT PLAINTIFF
6    BREKHUS DID NOT PURCHASE THE DEVICE, BUT GOT IT FOR FREE WITH A
7    SPOTIFY SUBSCRIPTION.  AND THAT JUST DOESN'T MAKE HIM A
8    CONSUMER AS THAT TERM IS DEFINED UNDER THE CLRA.
9         AND I WILL LEAVE IT AT THAT.  THANK YOU, YOUR HONOR.
10              THE COURT:  THANK YOU.
11         MS. REYNOLDS?
12              MS. REYNOLDS:  THANK YOU, YOUR HONOR.
13         YOU KNOW, I UNDERSTAND YOUR POSITION.  I WOULD START BY
14   SAYING THAT KIND OF THE TWO -- THERE ARE TWO BIG FACTS THAT ARE
15   BEING TOSSED AROUND HERE THAT ARE OUTSIDE OF THE PLEADINGS.
16         ONE, THAT THIS WAS A BUG.  AND TWO, THAT THIS WAS IN PLACE
17   FOR ANY SHORT AMOUNT OF TIME.  AND THREE, THAT GOOGLE NEVER
18   INTEND TO ROLL THIS OUT TO ALL ITS HOME USERS.
19         ALL OF THOSE FACTS ARE SIMPLY ARGUMENTS THAT WE GET FROM
20   DEFENDANT'S MOTIONS.  THERE'S NO FACTS ALLEGED THAT THIS WAS A
21   BUG, THAT THIS WAS ONLY IN PLACE FOR A FEW DAYS.  WE DON'T HAVE
22   THOSE FACTS.
23         AND THE FINAL PIECE IS THAT THERE ARE NO FACTS THAT
24   GOOGLE -- THAT SUPPORTS THE INFERENCE THAT GOOGLE NEVER
25   INTENDED TO ENABLE THIS FEATURE FOR HOME USERS.  INSTEAD,

1    PLAINTIFFS DO ALLEGE IN PARAGRAPH 278, THAT GOOGLE INTENDED TO
2    GET THE GOOGLE HOME DEVICE INTO AS MANY HOMES AS POSSIBLE IN
3    ORDER TO THEN LATER ROLL OUT THIS SECURITY FEATURE AFTER ITS
4    PARTNERSHIP WITH ADT.
5         YOU KNOW, WE ARE RELYING ON REASONABLE INFERENCES HERE,
6    BASED ON THE PATENT APPLICATION, THAT SHOW THE TECHNICAL
7    ABILITY OF THE GOOGLE ASSISTANT SOFTWARE PRESENT IN THE HOME
8    DEVICES, WE ARE RELYING ON THE FACT THAT GOOGLE HAD THIS
9    PARTNERSHIP WITH ADT, TO INFER THAT THERE WAS AN INTENT TO ROLL
10   OUT A SOFTWARE CHANGE.  AND --
11             THE COURT:  YOU KNOW, I CERTAINLY AGREE YOU'VE GOT
12   THOSE ALLEGATIONS, BUT THERE'S NOTHING WRONG WITH THIS SOFTWARE
13   CHANGE THAT COULD -- LET'S ASSUME IT HAD WORKED AS GOOGLE
14   CLAIMS IT INTENDED, AND MAYBE WE CAN'T GET THERE ON THAT YET,
15   BUT IF THERE WAS A SUBSCRIPTION SERVICE AND A CUSTOMER COULD
16   PAY FOR IT, YOU ARE NOT ALLEGING IT WOULD STILL BE UNLAWFUL,
17   ARE YOU?
18             MS. REYNOLDS:  NO, YOUR HONOR, BECAUSE THERE WOULD BE
19   OBVIOUS CONSENT AT THAT POINT.
20             THE COURT:  RIGHT.
21        SO DEVELOPING THE CAPABILITY AND HAVING IT INSTALLED ON
22   DEVICES THROUGH SOFTWARE CHANGE IS NOT WHAT'S UNLAWFUL HERE,
23   WHAT'S UNLAWFUL IS THE PROBLEM OF IT ACTIVATING WITHOUT
24   AUTHORIZATION, CORRECT?
25             MS. REYNOLDS:  CORRECT, YOUR HONOR.

1          THE COURT: OKAY.

2      SO YOU ALLEGE THAT THERE WAS A ROLL BACK, AND I THINK THAT

3  THE PLAUSIBLE INFERENCE FROM THAT IS THERE WAS A MISTAKE WHICH

4  WE COMMONLY CALL A BUG, BUT IT COULD BE -- I MEAN, WE DON'T

5  HAVE TO CALL IT A BUG, BUT YOU DO ALLEGE THE ROLL BACK.

6          MS. REYNOLDS: YES, YOUR HONOR.

7      WE ALLEGE THAT THAT'S WHAT GOOGLE CLAIMS HAPPENED. AND I

8  UNDERSTAND THE INFERENCE BEING DRAWN, I WOULD JUST SUGGEST THAT

9  THE INFERENCES NEED TO BE DRAWN IN FAVOR OF PLAINTIFFS AT THIS

10 STAGE.

11         THE COURT: SURE.

12         MS. REYNOLDS: AND THAT THE INFERENCES THAT WE ARE

13 DRAWING HERE ARE WHAT WE HAVE TO GO ON TO SHOW THAT THERE WAS

14 INTENT, AT THE TIME OF PURCHASE, OF GOOGLE TO BE ABLE TO

15 UNILATERALLY CHANGE THE FUNCTION OF A VOICE ACTIVATED SPEAKER

16 TO NO LONGER BE SIMPLY VOICE ACTIVATED.

17     AND THAT IS THE REPRESENTATION, PARTIAL REPRESENTATION,

18 OMISSION IF YOU WILL, THAT IS THE MATERIAL FACT THAT WAS

19 OMITTED, AND THAT WAS AT THE TIME OF PURCHASE.

20     AS FAR AS THE INJURY, WHILE PLAINTIFFS DID NOT EXPERIENCE

21 AN ALARM EVENT, THANKFULLY, LUCKILY, THAT WOULD HAVE TRIGGERED

22 THIS SOFTWARE UPDATE IN PLACE. THE DAMAGE UNDER THE FRAUD

23 CLAIM IS THE ECONOMIC INJURY, WHAT WAS THE DIFFERENCE -- WHAT

24 WAS THE LOSS THAT -- THE DIFFERENCE IN THE PRICE PREMIUM OF

25 WHAT THE PLAINTIFF PAID AT THE TIME OF PURCHASE, EXCUSE ME.

1    THE COURT: AT THE TIME OF PURCHASE, THIS PARTICULAR
2    SOFTWARE DIDN'T EXIST. SO THEY COULDN'T HAVE PAID MORE FOR
3    SOFTWARE THAT HADN'T BEEN DEVELOPED YET.
4    MS. REYNOLDS: YOUR HONOR, THE POINT OF THE PATENT
5    APPLICATION IS TO SHOW THAT THIS SOFTWARE DID EXIST.
6    THE COURT: NO, NO, THIS SOFTWARE WASN'T ON THE
7    DEVICE. AND TO PRESUME IN THE YEARS THAT YOUR CLIENTS BOUGHT
8    THEIR DEVICES, THAT GOOGLE WAS GOING TO ACTUALLY SUCCESSFULLY
9    HAVE A PRODUCT, IS MORE THAN I CAN -- I MEAN, THIS IS THEIR
10   ASPIRATION. AND THERE ARE A LOT OF PATENTS OUT THERE THAT HAVE
11   NO PRACTICAL USE WHATSOEVER.
12   SO I GRANT YOUR POINT THAT GOOGLE INTENDED AT THAT TIME TO
13   MOVE INTO THE SECURITY FIELD. I DON'T HAVE A PROBLEM WITH
14   THAT. BUT WHEN YOUR CLIENTS BOUGHT THEIR DEVICES, THIS WAS AN
15   ASPIRATION, AND HOW IT WOULD BE ROLLED OUT AND WHETHER IT WOULD
16   BE DONE AS A SOFTWARE UPGRADE TO ALL DEVICES, AS OPPOSED TO
17   SOME OTHER ROLL OUT, THAT'S NOT AN INFERENCE I CAN DRAW.
18   MS. REYNOLDS: YOUR HONOR, THAT'S THE INFERENCE THAT
19   WE BELIEVE CAN BE MADE BASED ON THESE ALLEGATIONS.
20   THE COURT: OKAY. SURE. WE JUST HAVE A TIME GAP
21   PROBLEM HERE.
22   MS. REYNOLDS: YEAH. I UNDERSTAND, YOUR HONOR, THAT
23   DEFENDANTS HAVE PHRASED THIS THAT THE ALLEGATIONS NEED TO SHOW
24   THAT THEY -- GOOGLE INTENDED, IN THE YEAR 2018, THAT IN THE
25   YEAR 2020, THERE WOULD BE A SOFTWARE BUG.

1                THE COURT:  NO, OR EVEN THIS PARTICULAR SOFTWARE

2     UPGRADE.

3                MS. REYNOLDS:  WELL, AND THE CASE LAW THOUGH, AS

4     DEFENDANTS READILY CITE, IS WHAT EXISTED AT THE TIME OF THE

5     PURCHASE.  AND AT THE TIME OF PURCHASE, WE HAVE INCLUDED THESE

6     PATENT ALLEGATIONS -- THE PATENT APPLICATIONS TO SHOW THAT

7     TECHNOLOGICAL CAPABILITY, THE PARTNERSHIP TO SHOW THE INTENT IN

8     2018 OF GOOGLE, AND THEN THE ALLEGATION IN PARAGRAPH 278 THAT

9     GOOGLE WANTED TO GET THE HOME DEVICES IN AS MANY HOMES AS

10    POSSIBLE, WANTED PEOPLE TO RELY ON THE FACT THAT THE USERS WERE

11    IN CONTROL OF THE PRIVACY SETTINGS, WHETHER IT BE A MANUAL

12    ACTIVATION OR THEIR VOICES, IN ORDER TO BE ABLE TO THEN USE

13    THESE HOME DEVICES ALREADY IN PEOPLE'S HOMES, TO ENACT OTHER

14    UPGRADES IN CONJUNCTION WITH THIS PARTNERSHIP WITH ADT.

15               AND I JUST WANT TO BE CLEAR THAT I KNOW IN OUR PREVIOUS

16    ORAL ARGUMENT THERE WERE CONCERNS ABOUT WHAT DID GOOGLE NEED TO

17    HAVE DONE, AND I DON'T WANT TO SPEAK OUT OF TURN OR SAY THAT

18    THIS WOULD HAVE SOLVED ALL THE PROBLEMS OR NOT, BUT WE ARE NOT

19    ASKING TO MOVE HEAVEN AND EARTH HERE, THERE NEEDED TO BE A

20    DISCLOSURE THAT THERE COULD BE A UNILATERAL CHANGE IN THE BASE

21    FUNCTION FROM A VOICE-ACTIVATED SPEAKER TO A NON

22    VOICE-ACTIVATED SPEAKER.  THAT'S THE DISCLOSURE OR SOMETHING

23    ALONG THOSE LINES THAT WAS MISSING HERE.  THAT'S THE OMISSION.

24               THE COURT:  OKAY.  WELL THAT'S HELPFUL.

25          ALL RIGHT.  MS. BALI, ANY FINAL COMMENTS?

```
 1              MS. BALI:  JUST VERY BRIEFLY.
 2        YOU KNOW, COUNSEL SAID THAT THERE'S NO SUPPORT FOR
 3   GOOGLE'S STATEMENT THAT THIS IS A BUG OR THAT IT WAS ROLLED
 4   BACK QUICKLY, BUT ALL OF THAT IS IN THE COMPLAINT.  IT'S IN THE
 5   PROTOCOL ARTICLE THAT PLAINTIFF RELIES ON, THAT IS DATED IN
 6   AUGUST OF 2020, WHICH IS A MONTH OR LESS AFTER THE SOFTWARE
 7   UPDATE ALLEGEDLY OCCURRED.
 8        SO THERE'S NO WAY UNDER THE PLEADINGS OR THE ARTICLE THAT
 9   PLAINTIFFS RELY ON, THAT THIS WAS LIVE FOR MORE THAN A MONTH.
10   AND YOU KNOW, IN FACT, ALL INFERENCES SUGGEST THAT IT WAS MUCH
11   LESS THAN THAT.  SO THERE'S JUST NO BASIS TO DRAW AN INFERENCE
12   OF INTENT.  A TECHNICAL CAPABILITY IS NOT ENOUGH TO INFER
13   INTENT TO ROLL THAT FEATURE OUT TO PEOPLE THAT DIDN'T SUBSCRIBE
14   TO IT.
15        YOU KNOW, EVEN INFERRING IN FAVOR OF PLAINTIFFS AS I KNOW
16   THE COURT DOES AT THIS STAGE OF THE CASE, THERE STILL HAS TO BE
17   ENOUGH TO SUPPORT AN INFERENCE.  AND THERE'S JUST NOT ENOUGH
18   HERE.
19        AND I WILL LEAVE IT AT THAT.  THANK YOU, YOUR HONOR.
20             THE COURT:  THANK YOU.
21        SO THIS IS -- I MEAN, THIS CASE ALREADY IS MOVING ALONG
22   UNDER THE OTHER CLAIMS, THIS WAS JUST A VERY SMALL PIECE THAT
23   WE WERE TESTING.  I CAN'T PROMISE YOU WHEN I WILL GET AN ORDER
24   OUT, BUT I ASSUME THAT YOU ARE FULL STEAM AHEAD ON THE OTHER
25   CLAIMS.
```

```
 1              AND SO AS I SAY, I ALWAYS TRY TO DO THIS AS QUICKLY AS
 2     POSSIBLE, BUT NOTHING IS MOVING VERY QUICKLY THESE DAYS, I'M
 3     AFRAID.
 4              SO THANK YOU.  I AM STILL LEANING TO NOT LETTING THESE GO
 5     FORWARD, MS. REYNOLDS, BUT I WANT TO LOOK MORE CLOSELY AT THE
 6     FOURTH AMENDED COMPLAINT ON THESE INFERENCES, BECAUSE YOU ARE
 7     ABSOLUTELY RIGHT, I WILL MAKE EVERY REASONABLE INFERENCE IN
 8     FAVOR OF YOUR CLIENTS, AND I'M LOOKING TO SEE WHETHER THESE
 9     CLAIMS ARE PLAUSIBLE.
10              SO THANK YOU ALL.  AND I WILL GET THIS OUT WHEN I CAN.
11     THANK YOU.
12                   MS. REYNOLDS:  THANK YOU, YOUR HONOR.
13                   MS. BALI:  THANK YOU, YOUR HONOR.
14              (THE PROCEEDINGS WERE CONCLUDED AT 10:28 A.M.)
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185            DATED: 2/22/22