Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Attorney for Plaintiffs*

[Additional counsel on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.: 5:19-cv-04286-BLF<br><br>**PLAINTIFFS' ADMINISTRATIVE MOTION FOR RELIEF FROM CASE MANAGEMENT SCHEDULE (L.R. 7-11, 16-2(d))**<br><br>Judge: Hon. Beth L. Freeman |

**PLEASE TAKE NOTICE** that plaintiffs Asif Kumandan, Melissa Spurr, and Melissa Spurr as guardian of B.S., a minor, Lourdes Galvan, Eleeanna Galvan, Edward Brekhus, and Jon Hernandez ("Plaintiffs"), pursuant to Civil L.R. 7-11 and 16-2(d), hereby submit the following Administrative Motion for Relief from Case Management Schedule ("Administrative Motion"). This Administrative Motion is submitted in conjunction with the Declaration of Andrea Farah, and all pleadings, exhibits, and papers on file, and any other matter properly before this Court.

Plaintiffs bring this Administrative Motion in connection with a scheduling dispute which arose after Google produced approximately 2.7 million pages of documents on March 29, 2022 ("March 29 Production")—one day after the Court entered the Parties' March 28, 2022 stipulation to modify the case schedule, ECF No. 161—and approximately 28,000 pages of documents on April 5, 2022 ("April 5 Production") as set forth in detail below.

I.  **PROCEDURAL HISTORY**

This Action has a long procedural history, including four amended complaints, consolidation with later-filed related actions, and three rounds of motions to dismiss. During the pendency of Defendants' first Motion to Dismiss, on May 4, 2020, Plaintiffs served their First Set of Requests for Documents ("Requests"), seeking 35 categories of documents. The Parties met and conferred repeatedly to discuss the parameters of Google's search for and production of responsive documents. Google represented repeatedly during several meet and confers that, with the exception of a few categories of documents not pertinent to this Administrative Motion, Google was not withholding documents responsive to *any* of Plaintiffs' Requests. Despite this representation, Google produced a total of just 774 documents over the course of 11 months.

While negotiating search terms with Plaintiffs, Google raised objections of burden and proportionality. Attempting to address these concerns, Plaintiffs repeatedly requested that Google provide a hit count report, indicating the volume of documents responsive to Plaintiffs' proposed search terms. Google flatly refused to provide a hit count report or other specifics substantiating the burden it claimed. Instead, Google insisted it would only accept search terms that did not hit on more than 50,000 unique documents. And while Google refused to make a counter-proposal to Plaintiffs' search terms, Plaintiffs made three additional proposals to Google, each designed to reduce the number of responsive search hits to under 50,000. Once the Parties finalized their search terms, Google informed Plaintiffs, during the Parties' meet and confer on March 17, 2022, that the remainder of the documents to be produced by Google was not "many more" and "not massive." Google made this representation despite knowing that Google was about to produce 2.7 million pages of documents to Plaintiffs seven business days later, on March 29, 2022.

Based on Google's representation during the Parties' meet and confers, Plaintiffs agreed, and jointly with Google, submitted a Stipulation to Adjust the Case Schedule on March 28, 2022 (the "Stipulation") (ECF No. 160). The Stipulation adjusted the case schedule by approximately 7 weeks, which Plaintiffs estimated would be sufficient to review the "not many more" documents to come from Google. The next day, March 29, 2022, the Court entered the Stipulation (ECF No. 161), setting the deadline for Plaintiffs' class certification motion to May 18, 2022 and setting the close of fact discovery on July 8, 2022 - 67 days from today.

## II.   CIRCUMSTANCES SUPPORTING REQUESTED RELIEF

**The Timing of Google's Production**: The day after the Stipulation was entered by the Court, on March 29, 2022, Google made a production on an external hard drive to Plaintiffs' counsel's offices in New York. The hard drive contained 105 GB of data in zip format—more than 157 GB when expanded—a quantity of data so huge that it took Plaintiffs almost 7 days just to unzip and load its contents onto a review platform. The March 29 Production consisted of 6,105 documents totaling 2.7 million pages, of which well over half (3,261) consisted of data analyses and reports ranging in length between approximately 800 and 1,200 pages each. These reports reflect Google's systematic and persistent testing of the frequency of false accepts by Google Assistant — a theme critical to Plaintiffs' claims. Google's April 5, 2022 production contained an additional 28,000 pages of similar documents. These 2.7 million-plus pages are squarely responsive to several Requests[1] served on Google *nearly two years ago*, which Google represented

---

[1] *See* RFP No. 3 (seeking "[a]ll statistical analysis, reports, data compilations, and/or data sets showing the error rate of the speech recognition software utilized by Google Assistant for the dictations and listening functionalities."); RFP No. 6 ( seeking "[d]ocuments sufficient to show the process by which Google Assistant or Google analyzes, identifies and/or recognizes False Accepts."); RFP No. 16 (seeking "[d]ocuments sufficient to show the rate of error and frequency of when Google Assistant incorrectly identifies surrounding audio as a hot word (i.e., 'False Accept')."

1  were not being withheld on the basis of any of its objections. Indeed, Google produced a much
2  smaller volume (approximately 280) of similar reports in November 2021, creating the impression
3  that Google had completed its production of documents reflecting relevant testing data.

4  **The Substance of Google's Delayed Production:** On March 31, 2022, as soon as
5  Plaintiffs were able to unzip and view Google's massive production, Plaintiffs promptly scheduled
6  a telephonic meet and confer with Google to inquire about the nature and source of these
7  documents. Google attempted to downplay these reports as irrelevant "machine generated" content
8  that Plaintiffs could just "batch code" without taking the time to actually review. Even without
9  knowing a thing about what the documents contain, the proposal is absurd on its face. Clearly
10 Google considered the documents responsive to Plaintiffs' Requests and not subject to a valid
11 relevance objection (or it would not have produced them).

12 But more than that, the substance of these reports bears directly on the conduct at the heart
13 of this case: Google's recording, and subsequent use, of audio without users' consent via false
14 accepts. The reports reflect █████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████. Beaufays Dep. Vol. 1, 31:13-22, Apr. 12,
17 2022; Ex. 1, Beaufays Dep. Vol. 1, at 00257461 ████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████████████████
19 ██████████████████████████████████ As this Court explained in its order on Google's
20 motion to dismiss, one factor that may evidence the intentionality of Google's conduct is Google's
21 failure to destroy audio recordings that it knows were produced by false accepts, as well as
22 Google's "persistence in using the recordings for personalized advertising or to improve the
23 functionality of the Google Assistant even after they become aware of their provenance." ECF No.
24 80 at 10. These reports provide precisely that type of evidence. Just one potential use to which
25 Plaintiffs could put these documents is to ██████████████████████████████████████████
26 ████████████████████████████████████████████████████████████████████████. In this
27 way, Plaintiffs could identify the specific utterances that were both: (i) collected non-consensually

1  from users; and (ii) ██████████████████; and/or (iii) ██████
2  █████████████████████. Beaufays Dep. Vol. 2, 287:10-20, Apr. 22, 2022
3  ███████████████████████████████████████████████████████
4  *id.* at 284:7-25 ████████████████████████████████████████
5  ███████████████████████. Identifying the utterances that were impermissibly
6  used for Google's own benefit and/or reviewed by human vendors goes to the heart of Plaintiffs'
7  claims as well as issues of ascertainability on class certification.

8  **The Prejudice to Plaintiffs Absent Additional Time to Review the 2.7 Million-Plus**
9  **Page Production**: As a result of Google's gamesmanship, and despite their own diligence in
10  negotiating and following up with Google, Plaintiffs have less than 5 weeks to review and process
11  over 2.7 million pages of dense technical content that bears directly on the subject matter of their
12  claims, while simultaneously deposing Google's witnesses in preparation for class certification.
13  Notably, Plaintiffs still do not have a complete understanding of each of the fields in the reports.
14  Upon receiving the massive production, Plaintiffs immediately deposed Francoise Beaufays, the
15  individual from whose custodial files many of the reports were produced (also Google's 30(b)(6)
16  designee for a variety of highly technical topics), to learn more. Ms. Beaufays confirmed that the
17  production reflected ████████████████████████████████████
18  (Beaufays Dep. Vol. 1 at 18:10-18). However, Ms. Beaufays ████████████
19  ████████████████████████████████████████████████
20  ████████ *Id.* at 45:16-46:2, 49:3-16. Mr. Gruenstein, curiously, was not a custodian for these reports.
21  When Plaintiffs had previously requested that Google search Mr. Gruenstein's files, Google
22  represented that it was unnecessary because his documents and knowledge would overlap with
23  Ms. Beaufays'. Clearly, this was incorrect, as Google has effectively acknowledged by now
24  consenting to produce Mr. Gruenstein for deposition. This strategic impeding Plaintiffs' access to
25  the right person to explain the contents of the reports only further compounds the prejudice to
26  Plaintiffs from Google's untimely production.
27
28

## CONCLUSION

Accordingly, the Court should adjust the pre-trial schedule by 3 months to accommodate for the review of the voluminous March 29 and April 5 Productions, as set forth in detail in the Proposed Order filed herewith.

Dated: May 2, 2022

/s/ Andrea Farah
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com


Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com.

Joseph P. Guglielmo (pro hac vice)
Erin Green Comite (pro hac vice)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101

PLAINTIFFS' MOTION for RELIEF FROM CASE MANAGEMENT SCHEDULE
CASE NO. 5:19-cv-04286-BLF
5

Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

*Attorneys for Plaintiffs*