June 28, 2022

Honorable Susan van Keulen
United States Magistrate Judge
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South 1st Street, San Jose, CA 95113

   Re: *In re Google Assistant Privacy Litigation,* No. 5:19-cv-04286-BLF (N.D. Cal.)

Dear Judge van Keulen:

  Pursuant to paragraph 8 of Your Honor's Civil and Discovery Referral Matters Standing Order, the Parties hereby jointly submit this Discovery Letter Brief in connection with a discovery dispute they are unable to resolve regarding Plaintiffs' Requests for Production Nos. 24 and 25. Ten days remain until the close of fact discovery on July 8, 2022.

## I. PLAINTIFFS' POSITION

  Plaintiffs have a very simple question: How does Google benefit financially from Google Assistant? The answer is plainly relevant to Plaintiffs' claims, including the theories of damages that the Court found plausibly alleged in its ruling on Google's Motion to Dismiss Plaintiffs' Third Amended Complaint ("MTD Order"). *See* ECF No. 138 at 21, 25, 27-28. In particular:

  •  **Federal Wiretap Act and the Stored Communications Act ("SCA").** The Federal Wiretap Act and the SCA each allow Plaintiffs to recover the "sum of the actual damages suffered by the plaintiff **and any profits made by the violator** as a result of the violation. . ." *See* 18 U.S.C.A. § 2520(c)(2)(A) and 18 U.S.C.A. § 2707(c), respectively (emphasis added). The Court found that Plaintiffs plausibly alleged that "**Google was able to monetize Plaintiffs' unauthorized recordings via targeted advertising and by improving the Google Assistant functionality.**" *See* MTD Order at 25. Any documents evidencing that monetization are thus directly relevant to Plaintiffs' claims.

  •  **Breach of Contract.** The Court found that Plaintiffs plausibly alleged harm to their privacy interests, which entitles Plaintiffs to compensatory and nominal damages (*see* MTD Order at 23). Documents and information regarding the fair market value of the information that Google unlawfully took from Plaintiffs (i.e., the value of private confidential conversations and/or users' data), and/or the value that Google itself places on such recordings, would naturally be relevant to calculation of compensatory damages for this harm. Additionally, the Ninth Circuit has repeatedly held that "under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy.'" *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010) (citing *Ajaxo Inc. v. E*Trade Group, Inc.*, 135 Cal. App 4th 21, 56-57 (2005)).

  •  **California's Unfair Competition Law ("UCL").** Plaintiffs also allege, as part of both their breach of contract and UCL claims, that they suffered economic injury because they would not have bought, or would have paid less for, their Google Assistant Enabled Devices ("GAEDs") had they known Google was intercepting, recording, disclosing, and misusing their confidential communications without their consent. The Court sustained Plaintiffs' claims based on this economic injury theory. *See* ECF No. 80 at 45. Documents reflecting Google's revenues from sales of GAEDs, in combination with the value of the data Plaintiffs did not know they were giving away when they purchased their GAEDs, are accordingly relevant to Plaintiffs' overpayment damages.

Plaintiffs promptly served document requests regarding Google's revenues from sales of GAEDs and targeted advertising generated from audio recordings made through Assistant following the Court's ruling on Defendants' First Motion to Dismiss (ECF No. 80). As part of the parties' ten-month-long meet-and-confer process[1] between the Parties, Plaintiffs explained the relevance of their requests and provided supporting caselaw. Google shifted gears to claim that Google did not understand what documents and information Plaintiffs were seeking. Accordingly, Plaintiffs revised their requests for production to make crystal clear that they were seeking documents evidencing financial benefit that Google derived from Assistant. *See* Exhibit A hereto. Contrary to Google's assertion, Plaintiffs never asked Google to perform any kind of "analysis" or create any new documents. Instead, Plaintiffs bent over backwards to help Google understand what they were looking for, including by providing an illustrative list of documents responsive to the request as revised. Each time Plaintiffs followed up about this list—provided to Google in late February—Google confirmed it was "working" on a response. Now—after ten months of excuses—Google has formulated a new strategy, which is to claim that it has not been properly served with Plaintiffs' request and has not had an opportunity to object to it. This is specious. Plaintiffs provided their revised request via email to Google as part of the meet and confer process and the parties have discussed it for months. Requesting Plaintiffs to present their revised request in any particular form is not warranted by the Rules and is just one more of Google's delay tactics.

The parties' inability to resolve this dispute appears to center on Google's insistence that because Google Assistant is a free service that it does not sell separately from GAEDs, it derives *no benefit* from the technology. Just this past Friday afternoon—while preparing this Joint Letter for filing—Google served a supplemental interrogatory response hoping to short-circuit this process by asserting that " ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But even if true, this response does nothing to alleviate Google's obligation to produce documents responsive to Plaintiffs' requests, which sought information of any financial, economic, commercial, or competitive "benefit" that Google derives from the data it unlawfully obtained. Google cannot possibly claim that no such documents exist, as its statement that ████████████████████████████████████████████ confirms that Google does, in fact, track revenue and costs associated with Google Assistant separate from sales of GAEDs. At a minimum, Google should be compelled to produce those documents so that Plaintiffs may test the accuracy of Google's assertion. As for revenue from sales of GAEDs, for at least some types of GAEDs such as Google Home, the primary reason consumers purchase a GAED is to use the software that the hardware enables, such as the Assistant. That GAEDs include other functionalities, such that Google's revenues from GAED sales are not *solely* attributable to the Assistant, does not make data relating to those sales irrelevant. That data can be incorporated into an econometric model to evaluate damages.

Google also unquestionably derives financial benefit from data it collects from class members without their consent via the Assistant. For example, Google sells licenses to software converting speech-to-text to call center operators that is built on the same technology underlying the Assistant, and is developed and improved using audio recordings collected through the Assistant. *See* Tasca Tr. 35:9-38:5; 37:3-38:5. For example, in a document created by Google's 30(b)(6) designee Nino Tasca,

---

[1] The parties have exchanged at least 13 letters, and had at least 7 telephonic meet and confers, on this topic.



Google's reliance on audio and other data collected by the Assistant to derive economic benefit is further evidenced by its efforts to incentivize customers to use the Assistant more so it can collect more data. *See, e.g.,* GOOG-ASST-00240781. Google's suggestion that it spends tens of millions of dollars, and devotes hundreds of people, to develop and market the Assistant purely for altruistic purposes is simply unbelievable. Google is a publicly traded company the sole purpose of which is to generate value for its shareholders—value in the form of money or other financial, economic, commercial, or competitive "benefit." Google's attempt to redefine the word "benefit" to mean only revenues from sales of the Assistant fails.

Plaintiffs are also entitled to any documents showing the financial benefit that Google reaps from targeted advertising facilitated by Assistant queries. Far from being "proven false," Plaintiffs' targeted advertising allegations have been *confirmed* by Google's witness Bryan Horling and by Google's documents. Mr. Horling explained that  MTD Order at 13-14 (holding that YouTube, as a Google-owned company, is not a third party for purposes of claims based on unlawful disclosure or use of confidential information).

Plaintiffs' Class Certification Motion is due on July 18, 2022 and fact discovery is set to close in ten days. Google has stalled on Plaintiffs' plainly legitimate request for many months, and it cannot do so any longer. Google should be compelled to immediately produce any documents in its possession responsive to Plaintiffs' amended request.

## II.    DEFENDANTS' POSITION

As Google has repeatedly explained to Plaintiffs, including in a verified interrogatory response, Google does not make money from the Google Assistant. To the contrary, Assistant has operated at a loss throughout the relevant time period. Disliking this answer, Plaintiffs have tried to shift the goalposts by sending letters purporting to "revise" their RFPs. To be clear, their propounded RFPs seek "[d]ocuments sufficient to show the total revenue Google generated from the sale of Google Assistant and GAEDs [Google Assistant Enabled Devices] in the United States and globally" (RFP No. 24) and "[d]ocuments sufficient to show the total revenue Google generated from using audio recordings and/or transcripts to target personalized advertising to Plaintiffs and Class Members" (RFP No. 25). Because Google neither sells Google Assistant nor uses audio recordings and/or transcripts from Assistant to target personalized advertising to users, it has no responsive documents reflecting revenue from those activities. And any documents reflecting revenue from the sale of Assistant-enabled devices is neither attributable to Assistant (or any other software), as explained in Google's verified interrogatory response, nor relevant or proportional to Plaintiffs' remaining damages theories.

Plaintiffs' "revisions" to their RFPs actually are an entirely new request seeking documents reflecting some nebulous and undefined "economic value" or "financial benefit" that Google supposedly obtains from Google Assistant, which they have now further expanded to include any "economic, commercial, or competitive 'benefit.'" Google is aware of no authority allowing Plaintiffs to ask Google to conduct a financial *analysis* of the *type and quantum* of benefit that Google purportedly derives from Assistant, and then work backwards to identify documents "sufficient to show" that information. And Google never agreed to respond to Plaintiffs' "revised request" but rather noted that—in addition to other problems—it directly contradicts "the plain language of [Plaintiffs'] requests" in that it does not seek revenue information at all. Google nonetheless agreed to continue meeting and conferring, including considering *specific document categories* Plaintiffs identified. This was not an agreement to accept Plaintiffs' "revised request" as a properly propounded RFP, nor did it waive Google's objections to Plaintiffs' RFP Nos. 24 and 25. Google properly objected to the RFPs and should not be compelled to search for and produce documents (to the extent any exist) in response to an informal request that would be objectionable even if properly served. *See, e.g.*, *Ortiz v. Amazon.com LLC*, No. 17-CV-03820-JSW-MEJ, 2018 WL 2451816, at *1 (N.D. Cal. May 31, 2018) (if a party fails "to even engage in formal discovery . . . , bringing [a] dispute to the Court's attention . . . is premature and wastes Court time and resources"); *Hiramanek v. Clark*, No. 13-CV-00228-RMW, 2016 WL 217255, at *6 (N.D. Cal. Jan. 19, 2016) (finding "no basis on which to compel production" when neither plaintiff "propounded a discovery request").

Plaintiffs also fail to show how aggregated revenue or "financial benefit" is "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Google asked Plaintiffs repeatedly to clarify the relevance of this information to their damages theories, beyond asserting it is relevant to "damages" and citing inapt false advertising cases. Plaintiffs refused to do so during the meet and confer process (including most recently on June 23), until they attempted to do so in a revised draft of this brief sent on Sunday, June 26, after reviewing Google's response to their original draft. Their clarified position still does not stand up to scrutiny.

- **Disgorgement of Profits**. Plaintiffs claim the requested information is relevant to disgorgement. But the Wiretap Act, SCA, and unjust enrichment allow *profits* to be disgorged. *See* 18 U.S.C.A. §§ 2520(c)(2)(A), 2707(c); *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010). Google has not profited from Assistant. Plaintiffs' theory that Google generates revenue by using Assistant queries to target personalized ads to users has been proven false by Google witnesses, including Mr. Horling, whose testimony Plaintiffs mischaracterize, and its Rule 30(b)(6) designee Nino Tasca.  Google earns no revenue from Assistant, so it recoups no profits from improving it. And any projections, models, assessments, or estimates of benefits Plaintiffs speculate Google gains from Assistant are not evidence of *profits* to be disgorged.

- **Data Value.** Plaintiffs argue the "fair market value" of their Assistant data is relevant to their alleged privacy damages and "overpayment." But the Court *rejected* Plaintiffs' damages theory resting on the alleged value of their data as "purely hypothetical," as there were "no facts to suggest that Plaintiffs intended to monetize their individual voice recordings, nor . . . that suggest there is a market in which Plaintiffs could sell such recordings." MTD Order at 30.

- **Benefit of the Bargain**. Plaintiffs' alleged "overpayment" depends on what, if anything, *each Plaintiff* paid to Google for *their* device. *See* Fourth Am. Compl., Dkt. 141 ("4AC") ¶ 46. That information is in Plaintiffs' possession. Moreover, the retail price for devices is and has always been publicly available and varies by time, device, retailer, and selected options. *See, e.g.*, Google Store for Google Made Devices & Accessories. Plaintiffs still have not explained how aggregate revenue or benefit to Google is relevant to how much *they* allegedly overpaid for their devices.

Even if any responsive documents were relevant (and they are not), Plaintiffs' request is not proportional to the needs of the case. Any tangential relevance of documents reflecting aggregated device revenue, zero or negative Assistant revenue, and amorphous "benefits" is far outstripped by the burden Plaintiffs' request would impose. Plaintiffs ask that Google be compelled to "immediately" search records from its Finance and Assistant organizations and all product teams related to Assistant, including the separate applications to which Assistant users might be referred, for any documents describing any "financial, economic, commercial, or competitive 'benefit,'" which may require Google to produce documents likely to contain sensitive financial data about products (such as YouTube or Search) not at issue in this case. Further, "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████," *see also* Google Nest Help, Explore what you can do with Google Nest or Home devices. Plaintiffs' request is particularly disproportionate as Plaintiffs' claims only relate to the subset of voice-activated Assistant queries not intended for Google. *See, e.g.*, 4AC ¶¶ 8, 121, 264. The evidence does not support Plaintiffs' claim that Google derives a financial benefit from such data—the cited materials show Google uses user Assistant data to improve its speech technology with user consent, *and* takes steps to prevent the use of data that may not be intended for Google. In sum, as confirmed in a verified interrogatory response, Assistant generates no revenue and no profit, thus no additional discovery is warranted.[2]

\* \* \*

Plaintiffs may find it difficult to believe that Google invests substantial resources in a product that does not return a financial gain. But the cited documents and deposition testimony show that's what Google does. *See, e.g.*, █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Pursuing technological innovation and user growth may not be "purely for altruistic purposes," but it also is not equivalent to financial gain, much less financial profit. *See id.*

For all these reasons, Google respectfully requests that the Court deny Plaintiffs' request to compel further production by Google.

---

[2] To facilitate a good faith meet and confer, Google conducted a reasonably diligent inquiry and has not to date identified any "financial projections, models, assessments or estimates that incorporate, include data, or use as a factor, the number of Assistant users or the number of GAEDs"; and has confirmed that Google does not use Assistant data to target advertising to users and does not sell, license, or provision to third parties in exchange for income, revenue, or other economic benefit any user data, audio files, or transcripts of audio files generated by the Google Assistant.

# Exhibit A

| Request | Response | Proposed Compromise | Court |
|---|---|---|---|
| **Plaintiffs' Request No. 24:**<br><br>Documents sufficient to show the total revenue Google generated from the sale of Google Assistant and GAEDs [Google Assistant Enabled Devices] in the United States and globally. | Google objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, vague, and ambiguous as written. Specifically, Google objects to the undefined phrase "total revenue" as vague and ambiguous because it is not clear whether Plaintiffs use this term generally to mean income or whether it is net of costs and other expenses. Google's revenue, however calculated or defined, is not relevant to any claim or defense. Google objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and on grounds that it seeks information that is not relevant to any claim or defense because it seeks information about revenue earned by Google from sales of GAEDs that occurred outside of the United States. Google further objects to this Request to the extent it seeks documents that Google is legally or contractually prohibited from disclosing. Google also objects to this Request to the extent it seeks confidential or highly confidential information absent a protective order. Google will not search for documents in response to this Request. | **Plaintiffs (combined for both Requests):**<br><br>Revised request:<br><br>Documents evidencing, demonstrating, or sufficient to show the economic value and/or financial benefit that Google derived throughout the Class Period from Google Assistant. This includes documents relating to the nature of the economic value and/or financial benefit Google derived from the Google Assistant or from any audio recordings captured by the Assistant (e.g. increased revenues from targeted advertising; or increased sales of GAEDs due to the capability of hosting Google Assistant) and documents relating to the quantum of that economic value and/or financial benefit (whether calculated on a per-user basis, per-GAED basis, or otherwise).<br><br>Illustrative list of documents that would be responsive to the revised request:<br>• Any financial projections, models, assessments or estimates that incorporate, include data, or use as a factor, the number of Assistant users or the number of GAEDs;<br>• Income, revenue, or other economic benefit Google derives from:<br>    ▪ the placement of targeted ads to Google Assistant users on aggregate, per-user, or other basis; | |

| Request | Response | Proposed Compromise | Court |
|---|---|---|---|
| | | <ul><li>the sales, licensure, or provision to third parties of user data obtained by the Google Assistant;</li><li>the sale, licensure or provision to third parties of audio files obtained by the Google Assistant;</li><li>any use of audio files generated by Google Assistant on aggregate, per-user, or other basis;</li><li>any sale or use of transcripts of audio files generated by Google Assistant.</li></ul><br>**Defendants:**<br><br>Google has served Plaintiffs with the following verified interrogatory answer, which sufficiently addresses Plaintiffs' Request for revenue data:<br><br>[redacted] | |

| Request | Response | Proposed Compromise | Court |
|---------|----------|---------------------|-------|
|  |  | █████████████████████████████ ███████████████████████████████ ████████████████████████ ███████████████████████████████ ███████████████████████████████ ████████████████████████████ █████████████████████████ ██████████████████████████████ ███████████████████████████████ ████████████████████████████ ███████████████████████████████ ██████████████████████████ ████████████ |  |

| Request | Response | Proposed Compromise | Court |
|---|---|---|---|
| **Plaintiffs' Request No. 25:**<br><br>"Documents sufficient to show the total revenue Google generated from using audio recordings and/or transcripts to target personalized advertising to Plaintiffs and Class Members." | Google objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, vague, and ambiguous as written. Specifically, Google objects to the undefined phrases "total revenue," "audio recordings," "transcripts," and "personalized advertising" as vague and ambiguous because it is not clear what Plaintiffs mean by these phrases. With respect to "total revenue," it is unclear whether Plaintiffs use this term generally to mean income or whether it is net of costs and other expenses. In addition, because the Request broadly seeks information about "audio recordings" and "transcripts" and is not limited to the "audio recordings" and "transcripts" allegedly captured by the Google Assistant as alleged in the SAC, this Request is vague, overbroad, unduly burdensome, not proportional to the needs of the case, and irrelevant to any claim or defense. Google's revenue is also not relevant to any claim or defense. Google further objects to this Request to the extent it seeks documents that Google is legally or contractually prohibited from disclosing. Google also objects to this Request to the extent it seeks confidential or highly confidential information absent a | **Defendants:**<br><br>Google will supplement its response to this Request for Production to confirm that no responsive documents exist because, as multiple Google witnesses have testified during deposition, Google does not use audio recordings and/or transcripts from Google Assistant to target personalized advertising to users. | |

| Request | Response | Proposed Compromise | Court |
|---|---|---|---|
|  | protective order. Google will not search for documents in response to this Request. |  |  |