Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re GOOGLE ASSISTANT PRIVACY LITIGATION.

Case No. 19-cv-04286-BLF (SVK)

**FILED UNDER SEAL**

**ORDER RE JOINT DISCOVERY SUBMISSION**

Re: Dkt. Nos. 218, 240

### I. RELEVANT PROCEDURAL BACKGROUND

The Court has reviewed and given careful consideration to the Parties' first and second joint submissions pursuant to which Plaintiffs seek to compel production of data reflecting instances where potential class members were recorded, and/or their recordings used by Google or shared with human reviewers. Dkt. Nos. 218, 240. Following a hearing on the first submission, the Court ordered further robust meet and confer efforts (Dkt. 228) which appear to have met with some, albeit limited, success. Now before the Court is the remaining issue of whether Google is obligated to produce data sufficient to show the following:[1]

- o the number of False Accepts[2] analyzed by Google or any third party (RFP No. 7);
- o an aggregate of all instances in which Google Assistant activated into listening mode without the utterance of a "hot word" (RFP No. 10);
- o any data request that incorporates False Accept data (RFP No. 13, Set 2); and

---

[1] The Court summarizes the RFPs as set forth in Dkt. 240-1.
[2] In the joint submissions, the Parties use the terms "False Accepts," "misactivations," and "non-rejected misactivations" interchangeably to identify the alleged misconduct in the Fourth Amended Complaint ("FAC"). Dkt. 141.

- o all audio recordings and/or transcripts made by a Google Assistant enabled device in the absence of a "hot word" (RFP No. 18).

Discovery in this action closed on July 8, 2022[3], and the initial joint discovery submission on this issue, filed July 15, 2022, was timely. The Court held the first hearing on these issues on July 26, 2022. Dkt. 227. Following the further meet and confer efforts referenced above, on August 19, 2022 the Parties filed a second joint submission on the remaining issues (Dkt. 240), and the Court held a second hearing on September 15, 2022. While this issue was pending, the trial judge, the Hon. Beth Labson Freeman, *sua sponte* vacated the March 6, 2023 trial date. Dkt. 267. A new trial date will be set at the October 20, 2022 case management conference. *Id.*[4]

## II. DISCUSSION

Plaintiffs argue that the requests, first propounded more than two years ago in May 2020, seek relevant information "at the very crux of their case." Dkt. 240 at 2. Specifically, Plaintiffs are seeking production of data sufficient to identify "instances where class members were recorded, and/or their recordings used by Google or shared with human reviewers." *Id*. In response to the Court's inquiries at the hearing, Plaintiffs indicated that although the Parties had met and conferred regarding various production issues during the course of the litigation, meet and confer as to this data did not occur until July of this year. Counsel further explained that Plaintiffs did not receive named-Plaintiffs data, which Plaintiffs claim inform what data is available, until the May-June time frame of this year. In particular, Plaintiffs point to ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ It does not appear that there were issues or disputes regarding the production of named-Plaintiffs data (other than obtaining Plaintiffs' consent), and no issue

---

[3] Limited discovery relating to Plaintiffs' class certification motion was reopened from July 18, 2022 to September 13, 2022. Dkt. 205. The Parties acknowledge that for purposes of this motion, discovery closed in July. *See* Dkt. 218.

[4] Having conferred with Judge Freeman, the Court is informed that trial will be delayed at least six months until the fall of 2023.

2

1  regarding production of either named-Plaintiffs data or the subject data was raised with this Court
2  prior to July 15, 2022.
3  　　　In the August 19 joint submission, in order to facilitate production, Plaintiffs propose
4  various models, filters and searches to be run ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for all users
5  of Google Assistant for the proposed class period 2016-2022.  Plaintiffs claim these proposals are
6  "grounded in Google's own witness testimony and documents" and would yield responsive data.
7  Dkt. 240 at 2.  At the hearing, Plaintiffs acknowledged that these methodologies were first raised
8  in meet and confer efforts in July and August of this year, after the close of fact discovery.
9  Plaintiffs further argued that if responsive data cannot be identified by the aforementioned
10 searches, then Google can and should review all audio recordings for all potential class members
11 to determine the number of False Accepts.  Dkt. 240 at 5.  Plaintiffs acknowledged at the hearing
12 that this would likely involve "millions" of recordings from the proposed class period.
13 　　　Google states, and Plaintiffs do not contest, that Google has produced over 3,000,000
14 pages of documents.  Dkt. 240 at 6.  In response to Plaintiffs' proposed approaches to producing
15 relevant data, Google complains that Plaintiffs seek to compel Google "to develop a methodology
16 for identifying false accepts, apply that methodology to all Assistant audio data in Google's
17 systems, and turn over the results of that analysis to Plaintiffs," asserting that such an approach is
18 "wildly outside the scope of Google's discovery obligations."  Dkt. 240 at 6.  Google further
19 contends that the quantification of the rate of Assistant misactivations "is a complex problem
20 without a simple solution."  Id. at 8.  At the hearing Google posited, and Plaintiffs concurred, that
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 10.  Google
23 also raises concerns that the proposed searches may impinge upon the privacy rights of non-class
24 members.  *Id*.
25 　　　The Court takes Google at its word that the identification and extraction of responsive data
26 relating to False Accepts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ spanning at least six years presents
27 a complex problem.  Complexity by itself, however, does not necessarily outweigh the need for
28 production of responsive data.  The argument that there is not a readily accessible "perfect" data

3

set that inarguably identifies False Accepts that were transferred to human reviewers is unavailing. Plaintiffs are entitled to responsive data. The admissibility, weight, and what conclusions the evidence at issue here does or does not support are arguments for the trial court. Nor are concerns of privacy implications necessarily a bar to production.

At both hearings on this issue the Court expressed concern that Plaintiffs raised this issue at the close of fact discovery, as it seems likely that the technical challenges inherent in the identification and extraction of relevant data from Google's vast sources was known to Plaintiffs at least in the earlier stages, if not at the outset, of the case. Equally troubling, however, is the fact that there is relevant data in Google's custody and control from which, at a minimum, violations alleged in the FAC may be deduced. The trial court's adjustment of the trial date is fortuitous for Plaintiffs in that it allows some additional time for the identification and production of responsive data. Accordingly, the Court **ORDERS** as follows:

Plaintiff's motion to compel is **GRANTED IN PART, IN ACCORDANCE WITH THE FOLLOWING**:

1. Plaintiffs' proposed methods of retrieving relevant data are, in their current form, only a starting point. It is obvious from the representations and demonstration at the September 15, 2022 hearing that Plaintiffs' request that all Google Assistant user information for the entire class period be filtered, sorted, or even listened to, is grossly overbroad.

2. Google has produced responsive documents that reflect the error rates of hotword models; rates of rejected misactivations; and estimates of the rates of potential non-rejected misactivations across various types of devices. Dkt. 242-2 at 8-9; Dkt. 240-1.

3. In light of the foregoing factors, the Court finds that production of a sample of relevant data is appropriate. Accordingly, the Parties are to meet and confer and develop a plan for the random sampling of ▮▮▮▮▮▮▮▮ from various points in the class period to generate a statistically meaningful sample of relevant data. The sample may include:

    i. Possible False Accepts;

    ii. Transfer of possible False Accepts to human reviewers or researchers;

4

       iii.   ■■■■■■■■■■

The Court leaves refinement of the content of and methodology to achieve the sample to the Parties. However, the Court wants to be very clear: there will be a sampling, but only a sampling, of the data.

4. The sampling will be completed **no later than December 16, 2022**, ninety days from the date of this Order.

5. The Court reminds both sides of their obligations to proceed in good faith to comply with this Order. The Parties are to provide this Court with a status report on their progress no later than **October 13, 2022**, and the Court will hold an in-person status hearing on **October 20, 2022 at 1:30 p.m.**[5] If the status report indicates that the Parties are progressing, the Court will vacate the status conference. If the report indicates that there is a dispute, each side must bring a person with sufficient technical knowledge of the issues to address and resolve the issues at the conference. The conference will run as long as necessary to ensure that both Parties are fulfilling their obligations under this Order.

**SO ORDERED.**

Dated: September 16, 2022

*Susan van Keulen*

SUSAN VAN KEULEN
United States Magistrate Judge

---

[5] The Court is aware that the Plaintiffs' motion for class certification will be heard on this date. Compliance with this order is not dependent upon resolution of class certification. The sampling of relevant data will get underway, notwithstanding the pendency of class certification.