Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Attorneys for Plaintiffs*
*ASIF KUMANDAN, MELISSA SPURR,*
*And MELISSA SPURR, as guardian of*
*B.S., a minor*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 19-cv-04286-BLF<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>COMPLAINT FILED: July 25, 2019<br>Date:     October 20, 2022<br>Time:     9:00 a.m.<br>Dept.:    Courtroom 3-5th Floor<br>Judge:   Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................ 1

II.    ARGUMENT .................................................................................................................. 1

     A.    Plaintiffs Have Appropriately Defined the Proposed Classes and Subclasses ........................................................................................................... 1

     B.    The Proposed Class and Subclass Members Have Article III Standing ............................................................................................................. 2

     C.    Common Issues Predominate Over Individual Issues ..................................... 3

         1.    Common Issues of Privacy Expectation Predominate Over Individual Issues ................................................................................ 3

         2.    Class Members' Lack of Consent Can Be Shown By Common Evidence ........................................................................................ 7

         3.    There Are No Individual Issues Relating to Arbitration ....................... 9

         4.    The Damages Models are Consistent with Classes' Theories of Liability ...................................................................................... 10

     D.    Plaintiffs Are Typical of the Claims and Defenses of the Class ................. 13

     E.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .......................................................................................................... 15

     F.    A Class Action Is a Superior Method of Adjudicating This Action ........... 15

III.   CONCLUSION ........................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ades v. Omni Hotels Mgmt. Corp.,*
  No. 2:13-cv-2468, 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ....................................................8

*Al-Ahmed v. Twitter, Inc.,*
  No. 21-cv-08017-EMC, 2022 WL 1605673 (N.D. Cal. May 20, 2022).........................................2

*Backhaut v. Apple Inc.,*
  No. 14cv02285-LHK, 2015 WL 4776427 (N.D. Cal. Aug. 13, 2015) ...........................................8

*Bernhard v. City of Ontario,*
  270 F. App'x 518 (9th Cir. 2008) .................................................................................................4

*Bruton v. Gerber Prod. Co.,*
  No. 12-cv-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb 13, 2018) ........................................11

*Caldera v. Am. Med. Collection Agency,*
  320 F.R.D. 513 (C.D. Cal. 2017).................................................................................................7

*Calhoun v. Google LLC,*
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................................................7

*Campbell v. Facebook Inc.,*
  315 F.R.D. 250 (N.D. Cal. 2016).........................................................................................8, 13

*Cappello v. Walmart Inc.,*
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) ......................................................................................3

*Carrese v. Yes Online Inc.,*
  No. 16-cv-05301-SJO, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) .........................................6

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013)................................................................................................................10, 11

*Condon v. Condon,*
  No. 07cv-4985-JFW, 2008 WL 11338437 (C.D. Cal. June 6, 2008) ..........................................13

*Cummings v. Connell,*
  402 F.3d 936 (9th Cir. 2005) .....................................................................................................13

*DIRECTV, Inc. v. Huynh,*
  No. C 04-3496 CRB, 2005 WL 5864467 (N.D. Cal. May 31, 2005) ..........................................12

*Flowers v. Twilio, Inc.,*
  No. RG16-804363, 2018 WL 10758024 (Cal. Super. Jan. 02, 2018).........................................9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................14, 15

*Hanon v. Dataproducts Corp.*,
  976 F.2d (9th Cir.1992) ...................................................................................................13

*Huff v. Spaw*,
  794 F.3d 543 (6th Cir. 2015) .............................................................................................6

*Huynh v. Harasz*,
  No. 14-cv-02367-LHK, 2015 WL 7015567 (N.D. Cal. Nov. 12, 2015).........................14

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .........................................................................................2, 3

*In re Google Inc. Gmail Litig.*., No. 13-MD-02430-LHK,
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)..................................................................8

*In re High-Tech Emp. Antitrust Litig.*,
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) .....................................................................................15

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  527 F. Supp. 2d 1053 (N.D. Cal. 2007) ............................................................................3

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019)...............................................................................................5

*In re: Lenovo Adware Litig.*,
  No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...................11

*Jammeh v. HNN Assocs., LLC*,
  No. C19-0620JLR, 2020 WL 5407864 (W.D. Wash. Sept. 9, 2020) ............................14

*Katz v. United States*,
  389 U.S. 347 (1967)...................................................................................................4, 5, 6

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) ...........................................................................................10

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................................................2

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) ...........................................................................................9

*Melgar v. Zicam LLC*,
    No. 2:14-cv-00160-MCE-AC, 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016)............................15

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (Cal. Ct. App. 1986) ....................................................................5

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ...........................................................................4

*Negrete v. Allianz Life Ins. Co. of N.A.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ......................................................................................7

*O'Donovan v. Cashcall*,
    278 F.R.D. 479 (N.D. Cal. 2011) ......................................................................................8

*Opperman v. Path, Inc.*,
    No. 13-cv-453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016)............................13

*Payton v. New York*,
    445 U.S. 573 (1980)......................................................................................................5, 6

*Pena v. Taylor Farms Pac., Inc.*,
    305 F.R.D. 197 (E.D. Cal. 2015) ....................................................................................15

*Reynolds v. City & Cnty. of San Francisco*,
    No. C 09-00301 MHP, 2009 WL 3569288 (N.D. Cal. Oct. 30, 2009) ..........................5

*Rivera v. Invitation Homes, Inc.*,
    No. 18-cv-03158-JSW, 2022 WL 504161 (N.D. Cal. Feb. 18, 2022) ............................1

*Sandoval v. County of Sonoma*,
    No. 11-cv-05817-TEH, 2015 WL 1926269 (N.D. Cal. Apr. 27, 2015)..........................1

*Schulken v. Wash. Mut. Bank*,
    No. 09-cv-02708-LHK, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ..............................15

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) .....................................................................................................5

*Smith v. Maryland*,
    442 U.S. 735 (1979)..........................................................................................................4

*Solis v. Regis Corp.*,
    No. C 05-03039 CRB, 2007 WL 1449801 (N.D. Cal. May 15, 2007) ..........................14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................................................2

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ................................................................................3

*Trujillo v. City of Ontario*,
    428 F. Supp. 2d 1094 (C.D. Cal. 2006) ...........................................................4, 6

*United States v. Oaxaca*,
    233 F.3d 1154 (9th Cir. 2000) ............................................................................6

*United States v. Taketa*,
    923 F.2d 665 (9th Cir. 1991) ..............................................................................6

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ..........................................................................10

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) ......................................................................11

*Williams v. Apple, Inc.*,
    449 F.Supp.3d 892 (N.D. Cal. 2020) ..................................................................3

# I.  **INTRODUCTION**

Plaintiffs' opening brief in support of Plaintiffs' Motion for Class Certification ("Motion") (ECF No. 222) establishes that each of the proposed Classes and Subclasses satisfies all Rule 23 requirements. Google's Opposition to Plaintiffs' Class Certification Motion ("Opposition" or "Br.") (ECF No. 268) attempts to manufacture individual issues that do not exist, let alone predominate, and even relies on previously undisclosed and unproduced evidence, but to no avail. Common evidence from Google's own documents (including data Google was recently ordered to produce to Plaintiffs) and testimony of its witnesses confirm that Plaintiffs can prove the elements of their claims asserted by each Class and Subclass on a class-wide basis. Plaintiffs' Motion should be granted.

# II.  **ARGUMENT**

## A.  **Plaintiffs Have Appropriately Defined the Proposed Classes and Subclasses**

Plaintiffs seek certification of three Classes and two Subclasses (*see* Motion at 1-2), all of which are narrower subsets of the overarching class pled in Plaintiffs' Fourth Amended Complaint, ECF No. 141 ("4AC"), at ¶[1] 140 ("***All individual purchasers***[2] . . . whose conversations were obtained by Google without their consent or authorization and/or ***were shared with third parties without their consent***."). Plaintiffs have simply split the original Class into smaller segments to more precisely track the claims alleged and evidence uncovered in discovery. The modification in Plaintiffs' Motion *narrows* the scope of what was initially pled, a practice accepted even by the cases Google cites. *See* Br. at 9-10 (*citing Sandoval v. County of Sonoma*, No. 11-cv-05817-TEH, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015) ("A party can narrow the definition used in the complaint"); *Rivera v. Invitation Homes, Inc.*, No. 18-cv-03158-JSW, 2022 WL 504161, at *4 (N.D. Cal. Feb. 18, 2022) (modifications to class definition that "require no additional discovery" are not prejudicial).

That the Purchaser Class and SCA Classes do not require members to experience a False Accept does not expand the case, as Google asserts (Br. at 9); it simply reflects the elements of the claims that Plaintiffs have long pled —neither of which requires that the recording disclosed to third parties result from a False Accept. *See, e.g.*, ¶ 253-56 (alleging breach of contract as a result of sharing

---

[1] "¶ _" refers to paragraphs in the 4AC.

[2] Unless otherwise stated, all emphasis is added and internal citations are omitted.

of audio with third parties); Order Re Defendants' Motion to Dismiss, ECF No. 80 ("First MTD Order") at 21 (finding Google's Privacy Policy does not disclose the types of information that Defendants share with third parties not that such sharing involves humans listening to the audio.).

**B. The Proposed Class and Subclass Members Have Article III Standing**

In evaluating Article III standing, courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized" such as "the disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *see also Al-Ahmed v. Twitter, Inc.*, No. 21-cv-08017-EMC, 2022 WL 1605673, at *7 (N.D. Cal. May 20, 2022) ("[I]nvasion of privacy by itself is sufficiently concrete and particularized to confer Article III standing."). Here, ███████████████████████████████████████████ ███████████████████████████. *See* Ex. 1,[3] Deposition Transcript of Terry Tai ("Tai Tr.") at 195:17-196:6 (████████████████████████████████████████████ This disclosure establishes Spurr's Article III standing to assert an SCA claim as privacy fundamentally "encompass[es] the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook*"). Contrary to Google's argument (Br. at 10), where this recording was stored, or that her husband owned the Gmail account first-linked to the GAED that recorded Plaintiff, is irrelevant as these factors do not affect her individual rights. *See id.* Further, ███████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████. *See* Ex. 2, SPURR000023-28 (████████████████████ ███████████████████).

Nor does Google's claim that it anonymizes audio data shared with human reviewers (Br. at 10) defeat standing. Tellingly, the witness declaration Google relies on here speaks only to its ***current*** practices, not those that existed during the Class Period, or in March 2018 when Spurr's audio was disclosed. *See id.* (citing Beaufays Decl. (ECF No. 270-90, ¶ 24)). The case that Google relies on does not support its position either. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012)—

---

[3] "Ex." refers to the documents and materials attached as exhibits to the Declaration of Margaret MacLean filed concurrently herewith.

PLTFS' REPLY MEM OF LAW ISO MOT. FOR CLASS CERT.  Case No. 5:19-cv-04286-BLF

decided after the case Google cites (*see* Br. at 10)—found consumers had Article III standing to assert SCA claims for the disclosure of anonymized browsing histories to third parties because that data could be "reidentified." *Id.* Plaintiffs here are no different: even if Google anonymized the audio prior to disclosure, ███████████████████████████████████████████████████████████ ███ confirms their standing to pursue SCA claims. Ex. 3.

Google's arguments that "countless" members of the proposed classes lack Article III standing because they suffered no injury (Br. at 10) also lack merit. With respect to the Purchaser Class, Google is simply wrong that users' awareness of the potential for False Accepts and human review before purchasing would negate their damages. Neither Plaintiffs' breach of contract claim nor their UCL claim requires reliance on Google's inadequate disclosures. *See, e.g., Williams v. Apple, Inc.,* 449 F. Supp. 3d 892, 804 (N.D. Cal. 2020) ("reliance is not an element of a breach of contract claim"); *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019) ("breach of the contractual privacy protections [] in violation of Section 22576, [] constitutes a non-misrepresentation-based argument that does not require a showing of reliance" to plead UCL standing). As far as disgorgement of profits, it is far from "clear" (Br. at 11) that Google does not profit from the Assistant (versus simply attributing that profit to other business segments or products). *See infra,* Sec. II.C.4. Finally, as to the Privacy Class, all class members have a uniform privacy interest in communications taking place in their homes (*see infra,* Sec. II.C.1.), giving rise to Article III standing. *See Facebook*, 956 F.3d at 600.

### C. Common Issues Predominate Over Individual Issues

Establishing predominance does not require Plaintiffs to "show that the legal and factual issues raised by the claims of each class member are identical," *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007), or that "each element of underlying cause of action is susceptible to classwide proof." *In re High-Tech Emp. Antitrust Litig.,* 985 F. Supp. 2d 1167, 1187 (N.D. Cal. 2013). Indeed, a Rule 23(b)(3) class is appropriate "even though other important matters," like affirmative defenses for some class members, "will have to be tried separately." *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 931 (9th Cir. 2018).

### 1. Common Issues of Privacy Expectation Predominate Over Individual Issues

PLTFS' REPLY MEM OF LAW ISO MOT. FOR CLASS CERT.  Case No. 5:19-cv-04286-BLF

Wiretap, CIPA, and invasion of privacy claims require a showing of a reasonable expectation of privacy, consisting of: (i) a subjective expectation of privacy exhibited by one's conduct; and (ii) an expectation that the society recognizes as 'reasonable.' *Katz v. United States*, 389 U.S. 347, 361 (1967) ("*Katz*"). Privacy Class's reasonable expectation of privacy can be showed by common proof.

### i.     Subjective Expectation

A subjective expectation of privacy exists when an individual "has shown that 'he seeks to preserve [something] as private'" (*Katz*, 389 U.S. at 351), compared to leaving it in "plain view of outsiders" or voluntarily providing it to third parties. *Id.* at 361. As such, there is a presumptive expectation of privacy for acts conducted in one's home. *See Smith v. Maryland*, 442 U.S. 735 (1979) (using a "telephone *in his house* to the exclusion of all others . . . calculated to keep the *contents* of [defendant's] conversation private"); *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1102 (C.D. Cal. 2006) ("That Plaintiffs chose to perform these activities in an area specifically designed to protect their privacy instead of a public area establishes that they had taken measures to preserve these activities as private."), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008).

Here, the subjective expectation of privacy of all members of the Privacy Class and Subclasses is demonstrated by the fact that their GAEDs are located in their homes where privacy is presumed. *Katz*, 389 U.S. at 361. The location of these devices is established by common evidence: ███████████████████████████████████████████████████████████████████████████.[4] This expectation of privacy is also evident from the affirmative steps class members took to ensure their privacy, including, password-protecting access to transcripts and audio recordings linked to their Gmail accounts. *See Mintz v. Mark Bartelstein & Assocs. Inc.,* 906 F. Supp. 2d 1017, 1033–34 (C.D. Cal. 2012) (finding privacy interest in the information contained in an email account protected by a password). Finally, in choosing to use a device that Google's Privacy Policy promised would activate

---

[4] ████████████████████████████████████████████, (Ex. 4 at 13) any potential ambiguities (*see* Br. at 13) can be resolved by ████████████████████████████████ ███████████████████████████. *See, e.g.,* Ex. 5. The content of users' queries (e.g., "Hey, Google, turn off bedroom lights") can also be used to determine which GAEDs are located in individuals' homes.

only in response to a hotword and not share audio with third parties, Privacy Class Members displayed a subjective expectation of privacy by limiting Google access to their communications. *See In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (subjective expectation of privacy exhibited by users who denied Google's request to track their browsing history). This common proof will objectively answer the common question of whether Class Members' communications were recorded under circumstances evidencing a subjective expectation of privacy.[5]

### ii. Objective Expectation

Without a doubt, Privacy Class Members' expectation of privacy in their homes is one that the "society is prepared to recognize as reasonable" under the circumstances. *Katz*, 389 U.S. at 361 (holding ***"a man's home is, for most purposes, a place where he expects privacy"***); *Payton v. New York*, 445 U.S. 573, 589 (1980) ("In none is the ***zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home.***"). As the California appellate court observed in *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483 (Cal. Ct. App. 1986), "most individuals not acting in some clearly identified official capacity ***do not go into private homes without the consent*** of those living there; not only do widely held notions of ***decency preclude it***, but most individuals understand that ***to do so is either a tort, a crime, or both.***" ████████████ ████████████████████████████████████████████████████████████████ ████ . *E.g.*, Ex. 6, at 27646 ████████████████████████ ████████████████████████████████████████████████ .).

Google attempts to introduce new criteria, which require individual analysis to assess the objective reasonableness of Privacy Class Members' expectation of privacy fails. Br. at 14 (arguing that at least 6 additional factors impact objective expectation of privacy). Google concocts these factors from a single, unreported case concerning a phone call placed from a desk within a police department where individuals 25 feet away could overhear. *See Reynolds v. City & Cnty. of San Francisco*, No. C 09-00301 MHP, 2009 WL 3569288, at *1 (N.D. Cal. Oct. 30, 2009). Google cites

---

[5] Plaintiffs do not need to prove a subjective expectation for their common law intrusion upon seclusion claim. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).

no law at all (nor could it, given the decades of controlling precedent to the contrary) to indicate that any of these "factors" are relevant to in-home conduct. In fact, the law is clear that a multi-person pool party occurring in one's home (Br. at 15) is entitled to the same level of protection from Google's surreptitious recording as a 2-person romantic dinner. *See United States v. Taketa*, 923 F.2d 665, 673 (9th Cir. 1991) ("Privacy does not require solitude … access of others [did] not defeat [] expectation of privacy. . . "); *Trujillo,* 428 F. Supp. 2d at 1102 ("A person can have a subjective expectation of privacy . . . even if he or she has invited friends into his or her home."). Nor does the precise location within one's home matter. *United States v. Oaxaca*, 233 F.3d 1154, 1157 (9th Cir. 2000) ("Simply put, a person's garage is as much part of his castle as the rest of his home."). Google's argument simply ignores that the home is a fundamentally different place, where a "zone of privacy" exists absent evidence to the contrary. *Katz,* 389 U.S. at 361; *Payton,* 445 U.S. at 589. The "contextual factors" Google offers are insufficient to overcome this presumption and therefore irrelevant.

Straining under the insurmountable weight of the caselaw, Google points to anything it can— news articles, device settings, and even the very hotword functionality that resulted in users being recorded without authorization (Br. at 15)—to show that the expectation of privacy in Privacy Class Members' homes was objectively unreasonable. But nothing Google cites existed until *after* its unauthorized collection and use of Privacy Class Members' audio had been going on for years. *See* Ex. 7 (Bali Decl. Ex. 25) & 8 (Bali Decl. Ex. 26) (news articles from 2019); Ex. 9 (███████████████ ████████████████████████████); Ex. 10 ██████████████████████████ ████████████). These sources cannot retroactively undo individuals' reasonable expectation of privacy at home, or the privacy injuries that already occurred. If anything, Google's *post hoc* scramble to contain the fallout from the 2019 exposé of its unlawful practices only confirms Google's awareness that its conduct violated users' objective expectations of privacy. And even as to more recent communications, Google offers no law to support the notion that users give away their long-established expectations of privacy in their homes if they do not customize every single possible setting on their GAEDs. It cites no cases whatsoever from an in-home context. *See* Br. at 15 (citing *Huff v. Spaw*, 794 F.3d 543, 552 (6th Cir. 2015) (various places within a hotel) and *Carrese v. Yes Online Inc.*, No. 16-cv-05301-SJO, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) (involving an office).

6

In short, common evidence will establish Privacy Class Members' objective expectations of privacy in communications in their homes.

### 2. Class Members' Lack of Consent Can Be Shown by Common Evidence

Google argues that questions relating to Class Members' consent to Google's misconduct make establishing predominance impossible. Br. at 16. Just the opposite is true: express consent in this case is particularly suitable to class-wide adjudication since all Class Members were subject to the same inadequate disclosures. *E.g. Negrete v. Allianz Life Ins. Co. of N.A.,* 238 F.R.D. 482, 491 (C.D. Cal. 2006) ("'claims based on uniform misrepresentations made to all members of the class' are 'appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof'"). Google concedes that all Class Members agreed to Google's uniform Privacy Policy as a condition of using the Assistant. Br. at 5. The Court has twice found that this Policy insufficient to establish consent to Google's alleged misconduct because it "says nothing about the types of information that Defendants might send to 'affiliates and other trusted business or persons' for 'processing[]' . . . [and] does not indicate that such 'processing' might involve human reviewers listening to the audio."). *See* First MTD Order at 21; Second MTD Order at 20. And Google has not presented any new evidence to the contrary. *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017) ("Where a party has not submitted any evidence of . . . express consent, courts will not presume that resolving such issues requires individualized inquiries.). Accordingly, express consent is a common issue a jury can resolve by reviewing the same disclosures the Court did when it denied Google's motion to dismiss on the same grounds.

The paltry "evidence" Google does submit is plainly insufficient to establish consent for all Class Members (which is Google's burden). *See, e.g., Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619-20 (N.D. Cal. 2021)). It consists of a total of 10 documents out of the 24,000 produced in discovery that Google claims somehow put tens of millions of Class Members on notice of the "possibility of misactivations." Br. at 16. But Google presents no evidence that *any* Class Member— let alone majority of them over the full six-year class period—even saw these documents, some of which are not even publicly available (*e.g.*, Ex. 11 (Bali Decl. Ex. 38) (an internal onboarding screen for Google's Voice Match feature introduced in 2020)), and all of which post-date July 2019. Further,

none of the documents address the conduct at issue in Plaintiffs' claims, which is not just the occurrence of False Accepts, but Google's recording, storage, and use of that audio. *See* Ex. 12 (Bali Decl. Ex. 30) (no mention that False Accept audio is recorded, retained, or used by Google or disclosed to third parties)); (ii) Ex. 13 (Bali Decl Ex. 36) (same)); (iii) Ex. 14 (Bali Decl Ex. 32) (no disclosure that Google utilized False Accepts for testing and training purposes); (iv) Ex. 15 (Bali Decl. Ex. 34) (same); (v) Ex. 16 (Bali Decl Ex. 18) (video not disclosing that misactivations will result in recording, use, and disclosure to third parties).

That Google can muster just four new articles in support of its consent claim despite indexing the entire Internet—one of which is only about Amazon (Ex. 17 (Bali Decl. Ex. 24)), and another of which is about data use overall by Google, Amazon and Apple (Ex. 18 (Bali Decl. Ex. 27))—only further undermines its position. Even the two articles that refer to Google do not mention Google's collection and use of False Accept audio. Exs. 19 & 20 (Bali Decl. Ex. 28 & 29). Even the suggestion that 4 articles over 5 years could sufficiently place tens of millions of people on notice of its conduct, despite Google's onslaught of contrary misinformation during the same period, is not credible. Google's reliance on *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *17 (N.D. Cal. Mar. 18, 2014) (*"Gmail"*) only highlights the weakness of its argument. *Gmail* involved multiple disclosures communicated to users via at least dozen different channels (including direct mail, website banners, mobile app notifications, etc.) published in several different iterations over an extended period of time displayed billions of times. *Id.* The promotional campaign in *Gmail* is a major distinction that other courts in this District have recognized as determinative of the question of alternative disclosures bearing on the issue of consent. *See, e.g.*, *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-2468, 2014 WL 4627271, at *12 (C.D. Cal. Sept. 8, 2014) (rejecting argument that individual issues of consent will predominate absent any evidence that class members consented to calls being recorded and finding that declarations of Omni employees insufficient to show that individual issues will predominate)[6]; *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 266 (N.D. Cal.

---

[6] *O'Donovan v. Cashcall*, 278 F.R.D. 479, 494 (N.D. Cal. 2011) involved consent to initiate an EFT withdrawal on a date other than that specified in the loan agreement. In *Backhaut v. Apple Inc.*, No.

PLTFS' REPLY MEM OF LAW ISO MOT. FOR CLASS CERT.  Case No. 5:19-cv-04286-BLF

2016) ("*Campbell*") (finding one example of Facebook generated document and argument that challenged practices varied over time insufficient that class members viewed some of these disclosures); *Flowers v. Twilio, Inc.*, No. RG16-804363, 2018 WL 10758024, at *4 (Cal. Super. Jan. 02, 2018) (finding that even if there were widespread disclosures (which there were not) they could be evaluated on a class-wide basis and would not in itself raise individualized issues). But more than that, the *Gmail* defendants presented evidence of the precise number of website views by class members, as well as the number of clicks by those individual users, to support their assertion that "hundreds of millions of unique accounts" viewed the disclosures in question. *See Gmail* at 8-12. Google here has done no such thing.

Finally, the record here affirmatively demonstrates that Plaintiffs did *not* consent to Google's recording and use of their audio. Plaintiffs all testified that once they learned of False Accepts, they took definitive steps to protect their privacy, such as unplugging their devices, avoiding having sensitive conversations near the devices, and attempting to disable hotword functionality. *See* Ex. 21 (L. Galvan Tr. 76:22-77:8); Ex. 22 (Spurr Tr. at 116:4, 119:4-119:8); Ex. 23 (Kumandan Tr. at 101:15-16). This real-world evidence only confirms that Google's consent argument fails.

### 3. There Are No Individual Issues Relating to Arbitration

"A party [who] chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court" waives his right to compel arbitration later on. *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016). Here, Google has actively litigated this case for over three years, through multiple motions to dismiss and all the way through discovery, demonstrating its intent to forego any right to arbitration. On top of that, Google ignores the judicial admissions it made in the past three years of litigation that: (1) the TOS and Privacy Policy incorporated therein are the *only* contracts that apply to this proceeding;[7] and (2) this Court is the appropriate venue in which to

---

14cv02285-LHK, 2015 WL 4776427, at *14 (N.D. Cal. Aug. 13, 2015) both parties cited significant Apple and non-Apple sources including disclosures, online postings, websites, AppleCare discussion board, and technical journals highlighting the importance of de-registering from iMessage.

[7] Google's website states that the TOS (incorporating the Privacy Policy) *is the only contract*

hear this dispute. *See, e.g.*, ECF No. 56 at 17:12-16; ECF No. 91 at 15:4-5 and 18:14; ECF No. 120 at 13:14-15 and 15:4-5. No further inquiry is required.

The unexecuted, *third-party agreements* Google attaches from Best Buy or Verizon (Br. at 18-19) are also insufficient to establish that Google has a right to arbitration. The Ninth Circuit has repeatedly held such third-party arbitration agreement to unenforceable, establishing that these documents should not even be considered. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) (arbitration clause in corporation's customer agreement was unenforceable for lack of mutual assent under California law). However, even if the Court considered these agreements, they do not even apply to this case. For instance, the Best Buy purchase agreement, states that "[t]o the extent that the provisions of any additional terms"—e.g., like Google's own TOS—"conflict with these Terms, the provisions of the additional terms will govern." Ex. 25 at p. 1 (Bali Decl.  Ex. 39). The Verizon Retail Installment Contract Google attaches covers only claims related to the installment payment terms. Ex. 26 (Bali Decl. Ex. 40). Google's Arbitration Agreement only applies where the underlying contract includes an arbitration provision, which the TOS (i.e., the "underlying contract") does not. Ex. 27 (Bali Decl. Ex. 41). Finally, the Google Store Sales Terms only apply to Devices and Subscription Services, not to the Google Assistant. Ex. 28 (Bali Decl. Ex. 42).

### 4.    The Damages Models are Consistent with Classes' Theories of Liability

"At the class-certification stage (as at trial) any model supporting a 'plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). A classwide damages methodology is acceptable so long as it is "just and reasonable" and not "arbitrary." *Id.* at 35-36. The potential for individual damages calculations does not impact the action's suitability for class treatment. *Vaquero v. Ashley Furniture Indus.*, *Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he need for individualized findings as to the amount of damages does not defeat class certification."). The proposed damages models use separate methodologies specifically designed to capture the harm resulting from each claim, and as such, they satisfy *Comcast* as they convert "the *legal theory of the harmful event* into an analysis of the economic impact *of that event*" across

applicable to the Assistant. *See* Ex. 24 (*List of Services & Service Specific Additional Terms*, accessible at https://policies.google.com/terms/service-specific?hl=en-US (last viewed 09/27/22)).

PLTFS' REPLY MEM OF LAW ISO MOT. FOR CLASS CERT.  Case No. 5:19-cv-04286-BLF

the class. *Comcast*, 569 U.S. at 38 (emphasis in original).

Price Premium: The calculation of price premium takes as inputs the results of a choice-based conjoint survey that measures consumers' willingness to pay for products that fully disclose Google's practices at issue in the case. *See* Ex. 29 (Torres Decl., at 27, 37); Ex. 38, Expert Reply Report of Rebecca Reed-Arthurs, Ph.D; Ex. 39, Declaration of Dr. Reed-Arthurs ISO Motion for Class Certification. Google's claim that *Comcast* somehow precludes a methodology that "relies on surveys yet to be done" (Br. at 19) is unsupported by the case law. In fact, the case Google relies on, *Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2018 WL 1009257, at *12 (N.D. Cal. Feb 13, 2018) stands for the exact opposite: "It is not necessary to show that [plaintiff's] method will work with certainty at this time." *Id.* The *Bruton* court rejected the expert analysis there because it sought to refund the "entire purchase price of the challenged product" (*id*. at *9) without "isolat[ing] the damages attributable to the mislabeling of the product" in violation of *Comcast*. 2018 WL 1009257, at *11. Plaintiffs' expert proposes nothing of that sort. Nor do Plaintiffs' damages methodologies seek to compensate hypothetical users who "knew about potential misactivations before purchasing their GAEDs" or who "never experienced a false accept," as Google claims. Br at 19. This is particularly obvious given the absence of evidence from Google that any Class Member ever saw the "disclosures" Google relies on. *See* Sec.II.C.2.

Next, Google critiques Mr. Torres' reliance on a conjoint survey that purportedly fails to consider the "supply side" (*e.g*., Google's willingness to sell devices at the hypothetical price). Br. at 20. But the law requires only that the proposed methodology accurately reflect the market (as Mr. Torres' does), not that it considers the specific "supply side" factor Google demands. *Williams v. Apple, Inc.*, 338 F.R.D. 629, 654 (N.D. Cal. 2021) ("Plaintiffs need not hypothesize Apple's willingness to supply iCloud in a 'but-for world' where the iCloud Agreement lacks the disputed language."; *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (accepting damages model where expert ensured results would "reflect the market" without addressing "the supply side"). And Google's claim that it would be impossible for Mr. Torres to consider the supply side of the market because he "has no evidence about how the supply of GAEDs might be affected," (Br. at 20) is incorrect. The issue is a simple battle of the experts

as to whether the market for GAEDs exists in monopolistic competition (as Mr. Torres contends), or perfect competition (as Google's expert contends) and not a basis for denying certification.

Profits: To estimate profits, Mr. Torres proposes using documents ███████████████ ████████████████████████ Ex. 29 (Torres Decl.) at 30-33. Google's argument that Plaintiffs cannot present any methodology for estimating profits relies on its unproven assertion that it operates the Assistant "at a loss." Br. at 21. ██████████████████████████ █████████████████████████████████████████████████ (*see* Ex. 30 (Torres Tr. at 252:16-253:13); Ex. 31 Crowel Tr. at 107:13-107:18 (███████████████████████ █████████████████████████████████████████████████████████████ (Ex. 32 (██████████████████████████████████████████); Ex. 31 Crowel Tr. at 38:14-39:05)). But under standard finance and accounting principles, ████████████████████████████████████ ███████████████████████████████████████████████████████████████. *See* Ex. 34, Torres Rebuttal Report at 12-14. Properly treated in this way, ██████████████████████ ███████████████████████. *See* Ex. 33 at 3045646 (████████████████████████ ████████████████).

Statutory Damages: To calculate the statutory damages and nominal damages owed to Plaintiffs and Class Members, Mr. Torres intends to use ██████████████████████████████ ███████████████████████████████████████████████████████. *See* Ex. 29 Torres Decl. at 34; *See* Ex. 34, Rebuttal Declaration of Fernando Torres ("Rebuttal Decl.") at 13. Google's unauthorized collection, use, and disclosure of tens-of-millions of individuals' private conversations reflect an egregious violation of the Wiretap Act, SCA, and CIPA, and as such, warrants an award of statutory damages in this case. *See* Motion at Sec. III.B.3.ii. This is consistent with Google's authority (*see* Br. at 21), which recognizes that statutory damages are appropriate in cases like this where "plaintiff has presented strong evidence of defendants' liability, while also having made a strong showing of harm." *DIRECTV, Inc. v. Huynh*, No. C 04-3496 CRB, 2005 WL 5864467, at *9 (N.D. Cal. May 31, 2005), *aff'd*, 503 F.3d 847 (9th Cir. 2007).

Contrary to Google's assertion, the severity of Google's privacy violations or whether any

12

1   Class Member suffered actual damage (Br. at 21) will not require individual inquiries. Given

2   ███████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████. *See e.g.*, Exs. 35-

5   37, 3. ███████████████████████████████████████████████████████

6   ████. *See* Ex. 29 at 34-36.[8] Each of the cases Google relies on involved situations where the class

7   either suffered no damage (*Campbell,* 315 F.R.D. at 267-269) or where statutory damages were

8   unnecessary because actual damages exceeded that amount (citing *Condon v. Condon*, No. 07cv-

9   4985-JFW, 2008 WL 11338437, at *5 (C.D. Cal. June 6, 2008)).

10      <u>Nominal Damages</u>: The Ninth Circuit has repeatedly recognized that, in the class action

11   context, each class member whose rights were violated is entitled to nominal damages. *See Cummings*

12   *v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) ("We agree with the approach taken by the courts that

13   have recognized that each class member whose constitutional rights were violated is entitled to

14   ***nominal damages***."); *Opperman v. Path, Inc.*, No. 13-cv-453-JST, 2016 WL 3844326, at *15 (N.D.

15   Cal. July 15, 2016) ("several district courts in the Ninth Circuit have certified classes involving claims

16   for nominal damages."). Google does not cite any authority to the contrary, claiming instead that

17   plaintiffs cannot use this as a way to meet Rule 23(b)'s predominance requirement. Br. at 22. This is

18   beside the point. The predominance requirement is met because common evidence—including data

19   showing which individuals' information was actually recorded without permission and disclosed—

20   can be used to answer all questions in the litigation. That the calculation of nominal damages relies

21   on this common evidence confirms that common questions do in fact predominate.

22      **D. Plaintiffs Are Typical of the Claims and Defenses of the Class**

23       "Typicality refers to the nature of the claim or defense of the class representative, and not to

24   the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d

25   at 497, 508 (9th Cir.1992). "Under the rule's permissive standards, representative claims are 'typical'

---

[8] That distinguishes this case from *Campbell*, where the court found individual inquiries about "how

27   many interceptions any given class member was subjected to" and "how that class member's

28   messaged were intercepted," made class certification inappropriate. *Campbell*, 315 F.R.D. at 268.

if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims are typical of those of the Classes because they arise from Google's recording of their communication and subsequent sharing with third parties without their consent, *i.e.,* it is undisputed that Plaintiffs' own communications which occurred in their homes were unlawfully recorded by Google, and at least with respect to Spurr, shared with third party reviewers. *See supra,* Sec. II.B. Thus, their claims are "reasonably co-extensive" with those of other Class Members since they arise from a course of Google's conduct common to the Class, and the violations are typical to those of the Class generally.

Google's argument that Plaintiffs are atypical because they do not qualify as "Opted-In Users" as Plaintiffs defined that term can easily be cured by amending the Class definition. *See, e.g., Huynh v. Harasz,* No. 14-cv-02367-LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015) (modifying the definition of the class, noting that "shortcomings" with class definition are not "fatal" to class certification); *Jammeh v. HNN Assocs., LLC,* No. C19-0620JLR, 2020 WL 5407864, at *12 (W.D. Wash. Sept. 9, 2020) (altering class definition "in the manner suggested in Plaintiffs' reply memorandum and . . . consider[ing] the revised definition under the standards set forth in Rule 23").[9] The issue appears to arise from confounding relationship between two settings in a user's Google account: Voice & Audio Activity ("VAA") and Web & App Activity ("WAA"). As Google explains in its opposition, VAA is a "subconsent" under the broader WAA. See Br. at 23. Plaintiffs defined their Classes to include persons who opted into VAA because they believed that setting was required to create the speech logs that would make membership easier to ascertain. *See* Mot. Sec. I. This turned out to be inaccurate: speech logs containing transcripts of audio recordings are created for all users who have *WAA* enabled. This includes all currently named Plaintiffs. *See* Exs. 37, 3. This modification makes common sense as it corrects a minor error in the Class definition and brings it into harmony

---

[9] Alternatively, Plaintiffs request leave to add Spurr's spouse, who would be an adequate and typical Class representative under Google's own analysis, and from whom Google has already secured documents and deposition testimony. *See, e.g., Solis v. Regis Corp.*, No. C 05-03039 CRB, 2007 WL 1449801, at *1 (N.D. Cal. May 15, 2007) (permitting adding a plaintiff during class certification).

with evidence Google presented for the first time *after* Plaintiffs' Motion was filed. *See* Tai Declaration. ECF No. 270-92.

### E.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The adequacy inquiry turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members" and whether they "will prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Google does not even attempt to argue that Plaintiffs have conflicts of interest with the rest of the Class. Moreover, contrary to Google's baseless claims (Br. at 23), Plaintiffs have already demonstrated their desire to vigorously prosecute this Action by being well informed of the litigation, meaningfully participating in important decisions, and attending full day depositions to represent the interests of the Class. *See, e.g. In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 595 (N.D. Cal. 2010) (plaintiffs adequate where they participated in discovery and monitored litigation progress). Google's attacks on Plaintiffs' adequacy based on their relationship with counsel are readily rejected. *E.g., Melgar v. Zicam LLC*, No. 2:14-cv-00160-MCE-AC, 2016 WL 1267870, at *4 (E.D. Cal. Mar. 31, 2016) (rejecting adequacy challenge where plaintiff and the attorney were law school classmates and friends, noting "such a relationship could arguably enhance the quality of the representation that class counsel provides.").

### F.  A Class Action Is a Superior Method of Adjudicating This Action

This Action easily satisfies the requirements of Rule 23(b)(3) superiority. *Schulken v. Wash. Mut. Bank,* No. 09-cv-02708-LHK, 2012 WL 28099, at *14 (N.D. Cal. Jan. 5, 2012). *First*, the amounts at issue for each individual are not substantial enough to justify the pursuit of an individual lawsuit. *Second*, no other action seeks relief on behalf of the Classes asserted in this case. *Third*, Google's TOS provide that California law will govern any disputes related to its services and Google and most of its witnesses are located in this District. *See Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 221 (E.D. Cal. 2015). *Finally*, management of the proposed classes presents no unique procedural or substantive difficulties.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Classes/Subclasses as set forth in their Motion for Class Certification and herein.

Dated:   White Plains, New York
           October 3, 2022

*/s/ Vincent Briganti*
Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Eric S. Somers (Bar No. 139050)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
mtodzo@lexlawgroup.com.

Joseph P. Guglielmo (pro hac vice)
Erin Green Comite (pro hac vice)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169-1820
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

John T. Jasnoch (Bar No. 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

*Attorneys for Plaintiffs*

## **ATTESTATION**

I, Margaret MacLean, am the ECF User whose identification and password are being used to file this Motion for Class Certification pursuant to Civil L.R. 5-1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

Dated: October 3, 2022

/s/ *Margaret MacLean*
Margaret MacLean

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2022, I electronically filed the foregoing Plaintiffs' Motion For Class Certification using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. I also caused a copy of the foregoing document to be served via email on counsel of record for all parties.

*/s/ Margaret MacLean*
Margaret MacLean