1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION


4

5   IN RE GOOGLE ASSISTANT PRIVACY      )   CV-19-4286-BLF
    LITIGATION                          )
                                        )   SAN JOSE, CALIFORNIA
6                                       )
                                        )   OCTOBER 20, 2022
7                                       )
                                        )   PAGES 1-55
8                                       )
                                        )
9                                       )
    _____ )
10
              TRANSCRIPT OF PROCEEDINGS
11      BEFORE THE HONORABLE BETH LABSON FREEMAN
              UNITED STATES DISTRICT JUDGE
12

13              A P P E A R A N C E S

14

15   FOR THE PLAINTIFF:        **BY:  CHRISTIAN LEVIS**
                               LOWEY DANNENBERG, P.C.
16                             44 SOUTH BROADWAY, SUITE 1100
                               WHITE PLAINS, NY 10601
17

18

19   FOR THE DEFENDANT:        **BY:  ERIN KATHERINE EARL**
                               PERKINS COIE LLP
20                             1201 THIRD AVENUE, SUITE 4900
                               SEATTLE, WA 98101
21

22

23   OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
24

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
           TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          SAN JOSE, CALIFORNIA              OCTOBER 20, 2022

 2                      P R O C E E D I N G S

 3          (COURT CONVENED AT 10:06 A.M.)

 4              THE CLERK:  CALLING CASE 19-4826.  IN RE GOOGLE

 5      PRIVACY LITIGATION.

 6          COUNSEL, PLEASE STATE YOUR APPEARANCES.

 7              MR. LEVIS:  GOOD MORNING, YOUR HONOR.

 8          CHRISTIAN LEVIS FROM LOWEY DANNENBERG ON BEHALF OF THE

 9      PLAINTIFFS.

10              THE COURT:  THANK YOU.  GOOD MORNING.

11              MS. EARL:  GOOD MORNING, YOUR HONOR.

12          ERIN EARL FROM PERKINS COIE ON BEHALF OF DEFENDANTS.

13              THE COURT:  GOOD MORNING.

14          MS. EARL, LATE LAST NIGHT YOU SUBMITTED REQUEST FOR A

15      CLOSED PROCEEDING.  THAT'S DENIED.

16          FIRST OF ALL, THESE PAPERS WERE FILED IN JULY AND YOU

17      FILED YOUR OPPOSITION IN SEPTEMBER.  I DON'T KNOW WHY, A MONTH

18      AGO, YOU COULDN'T HAVE SUGGESTED THIS AND WE COULD HAVE COME TO

19      COURT AND WE COULD HAVE HAD A CLOSED PROCEEDING FOR THE LITTLE

20      BIT THAT WOULD HAVE NEEDED TO BE CLOSED.

21          BUT WHEN THIS CAME IN LAST NIGHT, I TOLD MY LAW CLERK THAT

22      IT DOESN'T DESERVE A RESPONSE.  IT WAS OFFENSIVE THAT YOU

23      SUBMITTED IT THAT LATE.  SO WHOEVER IN YOUR OFFICE DECIDED THAT

24      WAS APPROPRIATE, PLEASE PASS THAT MESSAGE ON.

25              MS. EARL:  I WILL.  AND UNDERSTOOD, YOUR HONOR.  WE
```

1      APOLOGIZE FOR THAT.

2              THE COURT:  ALL RIGHT.

3          OKAY.  I WANT TO MAKE SOME COMMENTS.  I WOULD SAY THAT

4     GENERALLY I LOOK FAVORABLY AND GENEROUSLY AT CERTIFYING A

5     CLASS, MAYBE NOT QUITE AS BROADLY AS REQUESTED, BUT WHEN A CASE

6     GETS -- GETS THIS FAR, AND I'VE COME TO UNDERSTAND IT THIS

7     WELL, I GENERALLY START OUT EXPECTING THAT THE CLASS CAN BE

8     CERTIFIED.

9          EVEN WITH THAT VIEWPOINT, MR. LEVIS, I DON'T THINK I CAN

10    CERTIFY ANY CLASSES HERE.  I THINK MS. EARL HAS DONE A REALLY

11    STELLAR JOB IN PRESENTING THE ARGUMENTS, BUT I'M REALLY LOOKING

12    AT SOME FAILURES IN YOUR PAPERS.  SHE'S POINTED THEM OUT TO ME,

13    BUT I HAVE TO TELL YOU THAT I WAS -- THE MOST VALUABLE DOCUMENT

14    THAT THE DEFENDANT PROVIDED TO ME WAS THE CHART IDENTIFYING THE

15    SUMMARY OF THE CLASSES AND THE CLASS REPRESENTATIVES.  AND

16    THAT'S AT DOCUMENT 271-3.  I DON'T BELIEVE THAT PLAINTIFFS HAVE

17    DISPUTED THE ACCURACY OF THIS CHART.

18         AND I WILL ALSO COMMENT THAT IT WAS GLARING THAT IN THE

19    MOTION, PLAINTIFFS DID NOT EVEN ASSIGN CLASS REPRESENTATIVES TO

20    THE VARIOUS CLASSES.  THAT CLEARLY WAS INTENTIONAL.  AND THAT

21    WAS REALLY QUITE SURPRISING.

22         I ALSO FIND IT CONCERNING THAT I NOW HAVE TWO POTENTIAL

23    CLASSES THAT ARE NOT BASED ON RECEIVING, HAVING EXPERIENCED

24    FALSE ACCEPTS.  WHEN THAT WAS REALLY THE PREMISE OF THE CASE

25    FROM THE OUTSET.  AND SO THAT DISCREPANCY FROM THE OPERATIVE

1    PLEADING IS CONCERNING.

2        BUT I ACTUALLY THINK BASED ON THIS CHART, THAT THE

3    DEFENDANTS ARE CORRECT, THEY DON'T ACTUALLY HAVE CLASS

4    REPRESENTATIVES FOR THESE CLASSES.  AND THE SUGGESTION IN THE

5    REPLY BRIEF THAT I COULD JUST MODIFY YOUR CHOSEN DEFINITION OF

6    THE CLASS TO TAKE IT FROM THE VAA TO THE WAA, IS NOT SOMETHING

7    I'M PREPARED TO CONSIDER.  THAT, TO ME, IS SUCH A DRAMATIC

8    CHANGE IN THE SCOPE OF THE CLASS.  WITHOUT A FAIR OPPORTUNITY

9    FOR GOOGLE TO RESPOND, THAT I WON'T EVEN CONSIDER THAT.

10        THERE ARE A LOT OF OTHER CONCERNS THAT I HAVE.  I THINK

11    THAT THERE'S A REAL PROBLEM IF OUR CLASS REPS DON'T -- AREN'T

12    EVEN MEMBERS OF THE IDENTIFIED CLASSES, THAT WE AREN'T GOING TO

13    BE ABLE TO INCLUDE IN OUR CLASS, POTENTIAL CLASS MEMBERS WHO

14    ARE ACTUALLY HARMED BY THIS CONDUCT.

15        AND THE SUPREME COURT IN TRANSUNION HAS MADE IT CLEAR THAT

16    I CAN'T JUST HAVE THESE GROSSLY LARGE CLASSES WHERE THERE ARE

17    MANY PEOPLE WHO AREN'T EVEN PROPERLY BEFORE THE COURT.  I AM

18    VERY CONCERNED THAT UNDER THE CLAIMS THAT RELY ON AN

19    EXPECTATION OF PRIVACY, THAT THE INCLUSION OF SMART PHONES

20    REALLY DESTROYS THE ABILITY TO HAVE COMMON PROOF OF THE ISSUES.

21        THE DEFINITION OF "HOME DEVICE" IS NOT -- THE WORD "HOME"

22    IS THERE, BUT THEY ARE NOT DEVICES THAT ARE USED SOLELY IN THE

23    HOME, AT JUST A DEFAULT LOCATION SETTING THAT COULD -- I DON'T

24    EVEN KNOW WHAT THE LOCATION SETTING OF MY CELL PHONE AND TABLET

25    ARE, BUT LET ME TELL YOU, MY TABLET LIVES OUTSIDE OF MY HOME

1    FOR ABOUT 18 HOURS A DAY BECAUSE I CARRY IT WITH ME.  AND IF

2    THERE'S A DEFAULT SETTING, WHY WOULD I EVER HAVE CHANGED IT AND

3    WHY WOULD ANYBODY CHANGE IT?

4         SO I DON'T -- ON THOSE THREE CLAIMS, I DON'T THINK THAT --

5    I THINK THE INDIVIDUAL ISSUES AND THE DETERMINATION OF THE

6    SUBJECTIVE EXPECTATION OF PRIVACY IT IS GOING TO DEVOLVE INTO

7    INDIVIDUAL ISSUES.

8         THE ISSUE OF CONSENT, I THINK THAT'S A LOT MORE

9    COMPLICATED.  I WILL SAY THAT IT WAS INTERESTING TO ME, MS.

10   EARL, THAT YOU STARTED YOUR BRIEFING WITH A JOURNEY THROUGH THE

11   EVOLUTION OF THE GOOGLE NOTICES AND PRACTICES.  AND I MEAN --

12   AND IT WAS EFFECTIVE, I WILL SAY, BECAUSE FRANKLY, IT LEAD ME

13   AT THE END TO QUESTION, AND THIS ISSUE OF CONSENT IS MAYBE

14   WHERE IT FALLS THE MOST, THAT OUR CLASS DEFINITION THAT THE

15   PERIOD OF TIME OF THE CLASS MAY BE WRONG AND THAT IT MAY --

16   BRINGING IT TO THE PRESENT MAY BE INCORRECT.

17        AND I'M NOT EXPECTING ANYTHING HERE.  I HAVE DISCRETION

18   AND I'M GOING TO EXERCISE DISCRETION TO EITHER -- IT'S UP OR

19   DOWN ON WHAT I HAVE BEEN GIVEN.  SO I HAVE CONCERNS ABOUT THE

20   CONSENT ISSUE.

21        THE ISSUE OF ARBITRATION, I DON'T KNOW WHEN, OR I'M NOT

22   EXACTLY SURE HOW THE ARBITRATION AGREEMENT APPLIES.  I'M NOT

23   SURE I HAVE ADEQUATE BRIEFING ON THAT.  I GATHER THERE'S AN

24   ARBITRATION AGREEMENT, BUT IT'S NOT IN THE TERMS OF SERVICE; IS

25   THAT CORRECT, MS. EARL?

1          MS. EARL:  THAT IS CORRECT.

2          THERE ARE ACTUALLY TWO GOOGLE ARBITRATION AGREEMENTS, AND

3     ONE OF THEM IS FOR PURCHASES FROM THE GOOGLE STORE.  AND ONE OF

4     THEM KIND OF COMES IN THE BOX WITH CERTAIN GOOGLE MADE DEVICES,

5     THAT IS ALSO PRESENTED DURING DEVICE SETUP.  THOSE, I BELIEVE,

6     HAVE BEEN IN PLACE SINCE THE 2020 TIME FRAME.  AND THEN WE ALSO

7     MAKE ARGUMENTS, OF COURSE, BASED ON PURCHASES OF DEVICES FROM

8     AUTHORIZED RETAILERS.

9          THE COURT:  THANK YOU.  THAT'S VERY HELPFUL.

10          SO I DON'T BELIEVE THAT THE DEFENSE HAS DELAYED INSERTING

11     THE ARBITRATION, BECAUSE I BELIEVE UNDER THE LAW, WE ARE ONLY

12     LOOKING AT THE NAMED CLASS REPRESENTATIVES UNTIL CLASS

13     CERTIFICATION.  SO I DON'T THINK THERE'S A WAIVER.

14          AND I DON'T ACTUALLY -- I DON'T BELIEVE THAT THERE'S A

15     JUDICIAL ADMISSION THAT ONLY THE TERMS OF SERVICE AND PRIVACY

16     POLICY APPLY.  IT'S AN INTERESTING ISSUE, BUT I THINK

17     ULTIMATELY ANYONE WITH A VALID ENFORCEABLE ARBITRATION

18     AGREEMENT CAN'T BE A MEMBER OF THE CLASS, AND THAT WOULD

19     REQUIRE LITIGATION ON THOSE ISSUES, SO I HAVE CONCERNS ABOUT

20     THAT.

21          MOVING ON TO THE DAMAGES MODELS, I'M NOT SURE I ACTUALLY

22     NEED TO EVALUATE THEM.  I HAVE PROBLEMS WITH -- LET ME JUST --

23     WITH -- IS IT MR. TORRES OR DR. TORRES?  I'M SORRY, I WAS JUST

24     LOOKING TO SEE, I DON'T MEAN ANY OFFENSE, BUT THE DAMAGES MODEL

25     NOT INCLUDING THE SUPPLY SIDE CONSIDERATION.

1          AND I MUST SAY THAT FOR MR. TORRES TO COME BACK IN A

2     SUPPLEMENTAL REPORT AND JUST THROW OUT THERE, WELL, THEY ARE A

3     A MONOPOLIST, IS REALLY A LITTLE BIT ABSURD, BECAUSE IT TAKES A

4     LOT OF EVALUATION TO DETERMINE MONOPOLY.  BUT I DON'T EVEN

5     KNOW -- I MEAN, IF I'M LOOKING AT A RELEVANT MARKET, I DON'T

6     ACTUALLY THINK THIS IS A MONOPOLY, I DON'T THINK THAT'S

7     APPROPRIATE.

8          THE MONOPOLY -- IT'S NOT A MARKET FOR GAED'S, IT'S A

9     MONOPOLY FOR THESE VOICE-ACTIVATED MACHINES THAT GIVE YOU

10     ACCESS TO THE INTERNET.  I MEAN, I THINK HIS PREMISE IS

11     INCORRECT, AND I THINK HE HAS SIMPLY NOT ADDRESSED ALL OF THE

12     ISSUE, SO I HAVE SOME REAL CONCERNS THERE.

13          I HAVE SOME CONCERNS ON THE ISSUE OF STATUTORY DAMAGES ON

14     WHETHER WE NEED AN INDIVIDUAL INQUIRY HERE.  AND MY INITIAL

15     COMMENTS GO TO TYPICALITY FOR THE PLAINTIFFS, IF THEY ARE NOT

16     EVEN MEMBERS OF THE CLASS.  I THINK THAT THE RESPONSE BY

17     PLAINTIFFS OF, IT'S GOOD ENOUGH, CLOSE ENOUGH, IS JUST NOT THE

18     LAW.

19          SO I HAVE REAL CONCERNS.  I WANT TO HEAR ARGUMENT ON THIS

20     CERTAINLY AND GIVE YOU AMPLE TIME, AND A LOT HAS GONE INTO THIS

21     CASE, AND IT WOULD -- I'M NOT SUGGESTING THAT I WOULDN'T GIVE

22     YOU -- DENY CLASS CERTIFICATION WITHOUT PREJUDICE, BUT I HAVE

23     TO HEAR ABOUT WHETHER I EVEN HAVE THAT OPTION.

24          I MEAN, THIS DELAY IN FILING CLASS CERT HAS CAUSED GOOGLE

25     TO LOSE ITS TRIAL DATE, I KNOW UNHAPPILY LOSE THE TRIAL DATE,

1    BUT THERE'S SO MUCH GOING ON HERE, AND THERE'S NO WAY I COULD

2    HAVE CONSIDERED SUMMARY JUDGEMENT TODAY.

3        SO THAT'S A LOT THAT I'VE LAID OUT THERE.  AND THE LAST

4    THING I WILL SAY MR. LEVIS THAT IS IMPORTANT TO ME, ALTHOUGH I

5    MAY NOT GET TO IT, I ACTUALLY CAN'T FIGURE OUT WHAT YOUR COMMON

6    QUESTIONS ARE FOR PREDOMINANCE.  AND THEY ARE LACED THROUGH

7    YOUR PAPERS, BUT I WOULD ACTUALLY LIKE A LIST OF THE COMMON

8    QUESTIONS, AND I WOULD LIKE THEM TO BE RELATED TO THE CLAIMS

9    THAT ARE IN THE OPERATIVE PLEADING AND WHICH CLASS THEY WOULD

10   PERTAIN TO.  I JUST NEED THAT SO I CAN EVALUATE PREDOMINANCE.

11       THE LAST THING YOU NEED TO DO IS CITE THE PAGE IN YOUR

12   OPENING BRIEF WHERE YOU HAVE IDENTIFIED THAT COMMON QUESTION, I

13   WANT TO BE SURE THAT I DON'T HAVE SOMETHING ADDED THAT WASN'T

14   BRIEFED, AND I KNOW YOU WOULDN'T DO THAT ON PURPOSE BUT IT WILL

15   HELP MS. EARL AND ME IF WE HAVE THAT ROAD MAP.

16       MR. LEVIS:  SURE.

17       THE COURT:  OKAY.  AND THANK YOU FOR THAT.

18       SO THERE ARE SOME THINGS THAT GOOGLE FEELS ARE

19   CONFIDENTIAL.  I HAVE A NUMBER OF PEOPLE, I SEE 26 PEOPLE

20   PARTICIPATING, IT COULD BE MEMBERS OF THE PUBLIC, AND THEY

21   WOULD BE WELCOME.  THEY COULD BE COMPETITORS, THEY COULD BE

22   ALMOST ANYBODY, AND I'M SENSITIVE TO THAT, SO IF YOU GET TO

23   SOMETHING THAT IS HIGHLY CONFIDENTIAL, I WILL ASK THAT YOU

24   EITHER IDENTIFY IT BY EXHIBIT NUMBER OR SOMETHING SO THAT YOU

25   DON'T HAVE TO REVEAL SOMETHING CONFIDENTIAL, BUT THIS IS AN

```
1        OPEN HEARING.

2             SO LET'S START WITH PLAINTIFF, THIS IS YOUR MOTION FOR

3    CLASS CERTIFICATION.

4             MR. LEVIS:  SURE.

5        I WAS TRYING TO TAKE NOTES AS BEST I COULD.

6             THE COURT:  SORRY, I RAMBLED.

7             MR. LEVIS:  NO, IT'S FINE.  AND I'M GOING TO TRY TO

8    RESPOND TO YOU AS YOU WENT THROUGH IT, SO BEAR WITH ME.

9             SO I THINK WITH REGARDS TO THE CHART, WE OBVIOUSLY DON'T

10   AGREE THAT THE PLAINTIFFS ARE NOT MEMBERS OF THE CLASS.  IF YOU

11   THINK A COMPETING CHART WOULD HELP, THAT'S SOMETHING WE WOULD

12   BE WILLING TO PUT IN.

13            THE COURT:  WELL, YOU HAD A REPLY BRIEF, MR. LEVIS,

14   AND I DIDN'T GET THAT INFORMATION.

15            MR. LEVIS:  BUT I THINK WE DO HAVE PLAINTIFFS THAT

16   ARE MEMBERS OF ALL OF THE CLASSES.

17            THE COURT:  WHY DIDN'T YOU TELL ME THAT IN YOUR

18   OPENING PAPER?

19            MR. LEVIS:  THAT'S A FAIR QUESTION.  AND I THINK IN

20   REACTING TO YOUR HONOR'S COMMENTS, WE PROBABLY SHOULD HAVE

21   IDENTIFIED THOSE FOR YOU UP FRONT.

22        BUT I CAN TELL YOU THAT IF WE LOOK AT GOOGLE'S CHART

23   ITSELF, KUMANDAN, IN THE FIRST PROPOSED CLASS OF THE PURCHASER

24   CLASS, IT'S NOT DISPUTED THAT HE TESTIFIED THAT HE PURCHASED

25   THE PIXEL PHONE, SO HE'S A PURCHASER OF A GOOGLE ASSISTANT
```

1    ENABLED DEVICE.  HE WOULD QUALIFY FOR MEMBERSHIP IN THIS CLASS,

2    AS WOULD PLAINTIFF SPURR.

3         SO THERE WAS DISCOVERY TAKEN OF PLAINTIFF SPURR AND HER

4    HUSBAND, WHO WAS A THIRD PARTY, AND THE TESTIMONY FROM HER

5    HUSBAND IS THAT HE PURCHASED A GOOGLE HOME DEVICE USING THEIR

6    JOINT ACCOUNT FOR THE HOME.

7         SO SHE IS A PURCHASER OF THE DEVICE AS A MEMBER OF THE

8    HOME AND OWNER OF THE JOINT ACCOUNT THAT WAS USED TO PURCHASE

9    THAT GOOGLE HOME DEVICE.  SO THOSE TWO PLAINTIFFS WOULD BE

10   MEMBERS OF THE PURCHASER CLASS.

11             THE COURT:  OKAY.

12             MR. LEVIS:  FOR THE PRIVACY CLASS, THE PRIVACY CLASS

13   IS SET UP TO FOLLOW USERS THAT HAVE HAD A -- OPTED IN USERS OF

14   A GOOGLE HOME DEVICE WHERE THEY HAVE RECORDINGS FROM FALSE

15   ACCEPTS ASSOCIATED WITH THEIR ACCOUNT.

16        THE OPTED IN ISSUE ABOUT THE VAA VERSUS THE WAA CONSENT, I

17   UNDERSTAND YOUR HONOR'S ISSUE WITH THAT.  I WANT TO JUST MAKE

18   CLEAR THAT THE REASON THAT THIS DID NOT COME UP UNTIL LATER,

19   WAS NOT FOR LACK OF DILIGENCE ON OUR PART, THE ISSUE WITH THE

20   VAA AND WAA CONSENT WAS NOT RAISED UNTIL GOOGLE'S OPPOSITION TO

21   OUR CLASS CERTIFICATION MOTION.

22        IT AROSE FROM A DECLARATION THAT THEY SUBMITTED IN SUPPORT

23   OF THEIR OPPOSITION BY A PERSON NAMED MR. TERRY TAI.  MR. TAI'S

24   DECLARATION ATTACHED FOUR NEW EXHIBITS THAT WERE PREVIOUSLY NOT

25   PRODUCED TO US IN DISCOVERY, DESPITE THE FACT THAT WE HAD ASKED

1    FOR THE DOCUMENTS ASSOCIATED WITH THE NAMED PLAINTIFFS MORE

2    THAN TWO YEARS AGO, AND WE HAD ALREADY DEPOSED MR. TAI TWICE AS

3    A 30(B)(6) REPRESENTATIVE, INCLUDING SPECIFICALLY ON THE TOPIC

4    OF THE VAA AND THE WAA CONSENT ASSOCIATED WITH EACH OF THE

5    NAMED PLAINTIFF'S ACCOUNTS.

6        WHEN WE DEPOSED MR. TAI ABOUT THOSE SETTINGS SPECIFICALLY,

7    HE TOLD US THAT HE DID NOT HAVE KNOWLEDGE ABOUT THEM AND

8    COULDN'T ANSWER QUESTIONS ABOUT WHAT THEY MEANT.

9        WE WERE NATURALLY SURPRISED WHEN WE SAW DOCUMENTS THAT

10   DISPUTED THE SETTINGS AND WHAT THE CONSENTS MEANT ATTACHED TO

11   THE OPPOSITION, BECAUSE WE ASSUMED THAT WE WOULD HAVE RECEIVED

12   THEM SOONER, AND THUS WE WOULD HAVE MADE THAT REPRESENTATION IN

13   THE CLASS DEFINITION ABOUT WHAT THE APPROPRIATE CONSENT WAS

14   GOING TO BE.

15       THE COURT:  SO I'M NOT GOING TO CERTIFY THIS CLASS --

16   EVEN IF I ACCEPT EVERYTHING YOU TELL ME ABOUT THE STATE OF

17   DISCOVERY, I'M NOT GOING TO CERTIFY A CLASS THAT'S DIFFERENT

18   THAN WHAT YOU ASKED FOR.

19       MR. LEVIS:  WELL, I --

20       THE COURT:  I'M JUST NOT.  YOU SHOULD HAVE TERMINATED

21   THIS WHEN YOU LEARNED THAT IN THE OPPOSITION AND RE-FILED THIS.

22   I AM JUST NOT GOING TO DO THAT.  I'M NOT GOING TO MAKE THIS

23   CHANGE.

24       MR. LEVIS:  UNDERSTOOD.

25       I JUST THINK THAT THAT IS NOT SOMETHING THAT WE THOUGHT WE

1    WOULD HAVE DONE, IN TERMS OF TERMINATE THE MOTION AND RE-FILE

2    IT, WHICH IS WHY WE JUST RAISED THE ISSUE IN OUR BRIEFING, AND

3    THAT IT WOULD FALL WITHIN THE COURT'S DISCRETION TO CHANGE THE

4    VAA TO THE WAA BASED ON WHAT WE LEARNED AFTER THE OPPOSITION

5    WAS FILED.

6         THE COURT:  I WILL HEAR FROM MS. EARL ON WHETHER THE

7    WAA DESIGNATION OPT-IN IS SUFFICIENT.

8         SO IN MY VIEW -- SO YOU ARE SAYING THAT PERHAPS SPURR AND

9    THE CHILD, B.S., ARE OPTED IN WITH THE PROPER DEVICES, BUT THEN

10   WE GO ON IN THE CHART AND WE SEE KUMANDAN DOESN'T HAVE A HOME

11   DEVICE, L. GALVAN AND E. GALVAN DON'T HAVE HOME DEVICES.

12        MR. LEVIS:  SO PLAINTIFF SPURR WOULD BE THE

13   REPRESENTATIVE FOR THAT CLASS.  PLAINTIFF SPURR OPTED INTO THE

14   WAA CONSENT, AS DID ALL CLASS MEMBERS, AND THERE ARE EXAMPLES

15   OF FALSE ACCEPTS THAT ARE ASSOCIATED WITH HER ACCOUNT.  THERE

16   IS A SPREADSHEET THAT WE SUBMITTED ABOUT THIS, AND IT WAS

17   MANUALLY FILED AS EXHIBIT 30.

18        THE COURT:  SO CAN I TELL YOU, I'M NOT READING

19   MANUALLY FILED STUFF.

20        MR. LEVIS:  OKAY.

21        THE COURT:  I HAVE NEVER SEEN THAT.  I AM GOING TO

22   STRIKE THEM FROM THE RECORD BECAUSE THEY ARE IMPENETRABLE.  I'M

23   SORRY, DON'T EVER DO THAT AGAIN.

24        MR. LEVIS:  OKAY.

25        BUT IN ANY EVENT, WHAT WAS IN THOSE MANUALLY FILED

1    EXHIBITS, AND WE CAN FIND A BETTER WAY TO SUBMIT THEM, I WAS

2    UNAWARE.

3            THE COURT:  PAPER, PAPER.  THEY ARE NOT ON THE

4    RECORD.  THEY ARE NOT ACCESSIBLE TO THE PUBLIC, THEY ARE NOT

5    ACCESSIBLE TO ME.

6            MR. LEVIS:  OKAY.

7        IN THOSE EXHIBITS, THERE IS A SPREADSHEET THAT WAS

8    EXHIBIT 30 THAT CONTAINS INSTANCES OF FALSE ACCEPTS THAT ARE

9    SPECIFICALLY ASSOCIATED WITH MELISSA SPURR'S ACCOUNT.

10            THE COURT:  LET'S MOVE ON TO THE PRIVACY DISCLOSURE

11    SUBCLASS.

12        HERE, GOOGLE TELLS ME NOBODY HAD A FALSE ACCEPT DISCLOSED

13    TO A HUMAN REVIEWER.

14            MR. LEVIS:  BASED ON THE DATA WE HAVE, THAT IS

15    ACCURATE.

16        FOR THE PLAINTIFFS THAT ARE HERE, WE HAVE EVIDENCE THAT

17    PLAINTIFF SPURR HAD RECORDINGS THAT WERE SHARED WITH THIRD

18    PARTIES, BUT THAT THE RECORDING ITSELF WAS NOT A FALSE ACCEPT.

19        WHAT WE ARGUE IN OUR PAPERS THOUGH, IS BECAUSE THE TOP

20    LEVEL CLASS OF THE PRIVACY CLASS, SHE WOULD A MEMBER OF THAT.

21    THE USE AND DISCLOSURE SUBCLASSES WERE REALLY INCLUDED FOR

22    PURPOSES OF IF THERE WAS ANY ISSUES.

23            THE COURT:  I'M NOT GOING TO CERTIFY A SUBCLASS,

24    THAT'S FINE.  IF YOU GET THE MAIN CLASS, YOU ARE JUST NOT

25    GETTING THIS AS A SUBCLASS, AND IF YOU DON'T NEED IT, THAT'S

```
1       GREAT.

2            THEN WE GO ON TO THE PRIVACY USE SUBCLASS, FALSE ACCEPTS

3       FOR TESTING AND TRAINING.  AND AGAIN, IT LOOKS LIKE NONE OF OUR

4       CLASS REPS FIT THAT.  YOU DON'T DISAGREE WITH THAT?

5               MR. LEVIS:  I DON'T DISAGREE WITH THAT.

6               THE COURT:  OKAY.  FRANKLY, I DIDN'T THINK WE NEEDED

7       ALL THESE CLASSES.

8            AND THEN THE SCA CLASS IS THE SAME ISSUE OF YOUR

9       DEFINITION OF OPTED IN USER FOR SPURR AND THE CHILD.  AND THEN

10      FOR THE OTHER THREE -- AND IS E. GALVAN -- E. GALVAN IS A CHILD

11      AS WELL, WITH A GUARDIAN AD LITEM, CORRECT?

12              MR. LEVIS:  YES.

13              THE COURT:  BUT THE L. GALVAN WOULD NOT QUALIFY.

14           SO WE WOULD HAVE -- BUT OF COURSE NONE OF THEM QUALIFY

15      UNDER THE OPTED-IN USER DEFINITION.

16           IT MAKES NO SENSE TO ME THAT YOUR DEFINITION IS NOW

17      INCORRECT.  IT MAKES NO SENSE TO ME.

18              MR. LEVIS:  WELL, I CAN JUST GIVE YOU SOME CLARITY AS

19      TO WHY WE CHOSE TO DEFINE AN OPTED-IN USER.  THE REASON WE PUT

20      IT THERE WAS IN ORDER TO ENSURE THAT THERE WERE GOING TO BE

21      SPEECH LOGS.

22           SO THE CONSENTS AT ISSUE DETERMINED WHAT KIND OF DATA IS

23      STORED.  AND SO FOR THE WAA CONSENT, WHICH IS THE TOP LEVEL

24      CONSENT THAT EVERYONE OPTED INTO, THAT IS WHAT CREATES THE

25      LOGS, THE SPEECH LOGS OF THE RECORDINGS AND THE DATA.
```

1          THE COURT:  MS. EARL WILL LET ME KNOW WHETHER SHE

2     AGREES WITH THAT OR NOT.

3          MR. LEVIS:  THAT'S FINE.

4          I'M JUST LETTING YOU KNOW THAT THAT IS THE PURPOSE OF THE

5     CONSENT REQUIREMENT AND THAT WAS WHY WE INTENDED TO USE IT.

6     THE LOG ITSELF CONTAINS A RECORD FOR PLAINTIFF SPURR THAT SHOWS

7     THAT THERE IS A RECORDING THAT WAS SENT TO THIRD PARTIES THAT

8     QUALIFIES HER FOR MEMBERSHIP IN THE SCA CLASS.

9          THE COURT:  OKAY.

10         OKAY.  SO THAT'S JUST THE FIRST ISSUE.  I WILL LET YOU --

11    BECAUSE WE ARE RUNNING SHORT ON TIME, I'M GOING TO STOP TALKING

12    AND LISTEN A LITTLE BIT MORE, BUT THANK YOU.

13         MR. LEVIS:  SURE.

14         SO I THINK FOR THE PRIVACY, YOUR NEXT QUESTION WAS FOR THE

15    PRIVACY CLASS ITSELF, THE INCLUSION OF SMART PHONES IN THERE

16    THAT RAISED INDIVIDUAL ISSUES.

17         I JUST WANT TO MAKE CLEAR THAT THERE ARE NOT SMART PHONES

18    OR TABLETS INCLUDED IN THAT CLASS.  THE SETTING, THE LOCATION

19    SETTING IS NOT AVAILABLE ON THOSE DEVICES.

20         AND THAT IS SOMETHING THAT GOOGLE WILL ATTEST TO, I

21    BELIEVE IT'S IN NINO TASCA'S DECLARATION THAT'S ATTACHED TO

22    THEIR OPPOSITION.

23         SO THE ONLY DEVICES THAT YOU CAN SET A LOCATION IN THE

24    HOME ARE GOOGLE HOME DEVICES.  SO THE CLASS DOES NOT INCLUDE,

25    THE WAY IT IS DEFINED, ANY MOBILE DEVICES, AND THAT WAS DONE

1    INTENTIONALLY, GIVEN THE EXPECTATION OF PRIVACY DIFFERENCES

2    ASSOCIATED WITH ACTIVITIES THAT TAKE PLACE IN THE HOME.

3        AND TO TRACK YOUR HONOR'S EARLIER MOTION TO DISMISS

4    RULINGS WHICH IDENTIFIED EITHER THE CONTENTS OF THE

5    CONVERSATION OR THE LOCATION OF THE CONVERSATION AS BEING A

6    VALID WAY OF IDENTIFYING CONFIDENTIALITY AND AN EXPECTATION OF

7    PRIVACY.  IF THAT WAS UNCLEAR, I APOLOGIZE, BUT THOSE SETTINGS

8    WOULD EXCLUDE ANY MOBILE DEVICES FROM BEING PART OF THIS CLASS.

9        I WILL SAY THE ARBITRATION ISSUE, I UNDERSTAND

10   YOUR HONOR'S POSITION WITH THE WAIVER.  THE DIFFICULTY WE SEE

11   AND SOME OF THE PROBLEMS WE SEE WITH GOOGLE'S DEFENSE IS THEY

12   WOULD HAVE HAD TO ACTUALLY RAISED THIS ISSUE AND ACTUALLY HAVE

13   PROVEN THAT SOMEONE AGREED TO ANY OF THESE AGREEMENTS.

14       THE AGREEMENTS THAT THEY CITED WERE UNSIGNED TEMPLATES.

15   AND FACT DISCOVERY, AS YOUR HONOR IS AWARE, EVEN RELATED TO

16   CLASS CERTIFICATION, IS CLOSED.  I'M NOT SURE HOW THEY SHOW

17   THAT ANYBODY EVER AGREED TO ANYTHING IF THE ONLY THING THAT'S

18   BEEN SUBMITTED IS A FORM TEMPLATE OFF THE BEST BUY WEBSITE OR

19   VERIZON.

20       THE COURT:  SO MY GUESS IS GOOGLE DOESN'T WORK ON

21   PAPER AND HAVE SIGNATURES.  I'M PRETTY SURE THESE WOULD BE

22   CLICK-THROUGH KINDS OF AGREEMENTS, CLICK WRAP.

23       I DON'T KNOW, MS. EARL CAN TELL ME HOW THAT'S DONE.  THEY

24   LOOK LIKE CLICK WRAP AGREEMENTS.  IF THEY ARE IN THE BOX, YOU

25   CAN RETURN THIS ITEM IF YOU DON'T AGREE.  AND THE NINTH CIRCUIT

1    HAS UPHELD ALL OF THOSE.

2              MR. LEVIS:  SURE.

3              THE COURT:  BUT I THINK THAT DOES CREATE A PROBLEM.

4              MR. LEVIS:  I WOULD JUST QUESTION WHEN THEY WERE

5    INTENDING TO RAISE THE ISSUE.  BECAUSE IF THEY WERE GOING TO

6    BRIEF THIS NOW AND FILE A MOTION TO EXCLUDE PART OF THE CLASS

7    OR TO USE THE CLICK WRAP AGREEMENTS OR DATA THEY HAVE THAT

8    PURPORTEDLY SHOW --

9              THE COURT:  I THINK THEY ARE SUGGESTING YOU CAN'T

10   HAVE A CLASS AS BROAD AS YOU ARE ASKING, BECAUSE YOUR CLASS

11   DEFINITION DOESN'T EXCLUDE INDIVIDUALS WITH ARBITRATION

12   AGREEMENTS.

13             MR. LEVIS:  YES.  I UNDERSTAND THEIR POSITION.

14             THE COURT:  AND THAT'S ALL THEY NEED TO DO.  THEY ARE

15   NOT LITIGATING ANYTHING HERE.  THEY ARE TRYING TO DEFEAT YOUR

16   MOTION.

17             MR. LEVIS:  YES.

18       ALTHOUGH I WOULD JUST -- BEFORE I MOVE ON, I WOULD JUST

19   SAY, I WOULD THINK THAT THEY WOULD HAVE TO SHOW THAT AT LEAST

20   SOME PERCENTAGE OF THE CLASS AGREED TO THESE IN ORDER TO MAKE

21   THAT HAPPEN.

22       THE DAMAGES MODELLING, SO I THINK ON THE SUPPLY SIDE ISSUE

23   VERSUS WHAT THE MARKET STRUCTURE IS, THIS IS SOMETHING THAT

24   CAME UP IN MR. TORRES'S DEPOSITION ABOUT WHAT THE ACTUAL

25   APPROPRIATE STRUCTURE OF THE MARKET IS.

1          AND ON THE MARKET ITSELF, I JUST WANT TO CLARIFY ONE

2     THING.  THE TESTIMONY IN WHAT THE REPLY REPORT SAYS IS NOT THAT

3     THIS IS A MONOPOLY IN THE SENSE THAT GOOGLE HAS A MONOPOLY ON

4     THE DEVICE OF A SMART SPEAKER OR A SMART PHONE THAT HAS AN

5     ASSISTANT ON IT, BUT THAT IT IS, IT EXISTS IN MONOPOLISTIC

6     COMPETITION, MEANING THERE'S A GROUP OF LIMITED SUPPLIERS THAT

7     MAKE SIMILAR PRODUCTS WITH RELATIVELY HIGH MARKET SHARE BUT

8     THAT ARE NOT TOTALLY INTERCHANGEABLE WITH EACH OTHER.

9          IN THE SENSE THAT A SIRI DEVICE, FOR EXAMPLE, IS NOT

10    NECESSARILY INTERCHANGEABLE WITH A GOOGLE ASSISTANT DEVICE,

11    EVEN THOUGH MAYBE ONE OF THEM WOULD HAVE A HUNDRED PERCENT

12    MARKET SHARE IN THE MARKET.

13         THAT CONCEPT IS WHAT LEAD MR. TORRES, IN HIS REPORT, TO

14    USE AN ILLUSTRATION OF THE MARKET THAT WAS A FLAT SUPPLY CURVE,

15    WHICH IS CONSISTENT WITH THE MARKET FOR A MONOPOLISTIC

16    COMPETITION.  AND THAT'S WHAT HE EXPLAINED WHEN HE WAS DEPOSED

17    ON THIS TOPIC AT THE DEPOSITION.

18              THE COURT:  AND I DON'T FIND HIS SUPPLEMENTAL REPORT

19     TO ADEQUATELY ADDRESS THAT ISSUE SO THAT IT WOULD SUPPORT

20     EXCLUDING SUPPLY SIDE.  I THINK IT IS ALMOST A FLIP RESPONSE.

21              MR. LEVIS:  OKAY.  WELL, I THINK THAT'S SOMETHING

22     THAT WE WOULD NOT AGREE WITH, BUT I THINK THE POINT OF HIS

23     REPLY WAS REALLY TO RESPOND TO JUST THE COMMENTS THAT GOOGLE'S

24     EXPERT MADE ABOUT WHAT THEY VIEWED AS THE APPROPRIATE STRUCTURE

25     FOR THE MARKET.

1      AND THEN FOR STATUTORY DAMAGES AND THE OTHER ISSUES I

2    THINK THAT YOU RAISED, THAT'S SOMETHING WE THINK WOULD REALLY

3    BE BORNE OUT BY THE DATA, IN TERMS OF WHAT THE APPROPRIATE

4    SCOPE AND AMOUNT WOULD BE.  WE JUST UNDERSTAND FROM THE

5    EXAMPLES THAT I GAVE YOU ABOUT THE DATA THAT REFLECTS THE

6    INDIVIDUAL CLASS MEMBERS, MEMBERSHIP IN THE CLASSES, THAT THAT

7    SAME KIND OF DATA EXISTS FOR THE OTHER CLASS MEMBERS.

8      SO IT'S POSSIBLE USING THAT INFORMATION, TO USE THOSE

9    RECORDS TO CALCULATE STATUTORY DAMAGES BASED ON THE NUMBER OF

10   PEOPLE THAT FIT WITHIN EACH OF THESE CLASSES, AND --

11      THE COURT:  I WAS SWAYED BY JUDGE HAMILTON'S ORDER IN

12   CAMPBELL V. FACEBOOK ON THE STATUTORY DAMAGES.  SHE FOUND THAT

13   INDIVIDUAL ISSUES PREDOMINATED THERE.

14      MR. LEVIS:  WELL, I'M NOT SURE THAT INDIVIDUAL ISSUES

15   PREDOMINATE HERE, LARGELY JUST BECAUSE OF THE NATURE OF WHAT WE

16   HAVE IN TERMS OF THE RECORD.

17      SO FOR EXAMPLE, IF WE ARE LOOKING AT THE STORED

18   COMMUNICATIONS CLASS, THERE IS A COLUMN IN THE SPEECH LOGS THAT

19   ARE THE SAME AS THE ONES THAT WE SUBMITTED WITH OUR MOTION,

20   THAT IDENTIFY WHICH INSTANCES ARE SENT TO HUMAN REVIEWERS.

21      THAT'S NOT AN INDIVIDUAL ISSUE AS TO WHETHER SOMEONE'S

22   AUDIO FILE WAS SENT TO A HUMAN REVIEWER.  YOU CAN LOOK AT THE

23   LOG AND YOU CAN SEE EXACTLY WHOSE INSTANCES WERE AND HOW MANY

24   THERE WERE.  THERE'S NO NEED TO INTERACT WITH ANY PERSON TO ASK

25   THEM TO DO ANY INDIVIDUALIZED ANALYSIS TO REACH THAT

1    DETERMINATION.

2         AND IT'S THE SAME FOR OUR CLAIMS RELATING TO THE PRIVACY

3    CLASS, BECAUSE THE PRESENCE OF FALSE ACCEPTS CAN BE IDENTIFIED

4    FROM THE LOG DATA AS WELL.  THAT'S SOMETHING THAT WE WERE

5    WORKING WITH GOOGLE ON.

6         THE COURT:  YES.  THE PRESENCE OF FALSE ACCEPTS CAN

7     BE IDENTIFIED, BUT LET ME JUST LOOK AT THE LANGUAGE.

8         SO I GUESS SOME OF THIS REVERTS BACK TO A STATEMENT YOU

9    MADE JUST A MOMENT AGO THAT THE HOME DEVICES REALLY ARE ONLY

10   USED IN THE HOME, AND THE LOCATION SETTING FOR HOME IS -- SO

11   WHAT DEVICES ARE WE TALKING ABOUT?  HOW ABOUT A TABLET?

12        MR. LEVIS:  FOR WHICH CLAIM?  FOR THE --

13        THE COURT:  FOR ALL OF THE CLAIMS.

14    I MEAN, I'M DEALING WITH -- I HAVE TO DEAL WITH --

15   DETERMINE -- WELL, LET ME BACK UP.  YOU PREMISE THE PRIVACY

16   CLAIMS ON THE FACT THAT IT IS COMMONLY ACCEPTED THAT ACTIVITY

17   THAT OCCURS IN ONE'S HOME HAS A HIGH EXPECTATION OF PRIVACY.

18    I DON'T ACTUALLY DISAGREE WITH THAT AT ALL, BUT THE

19   PROBLEM IS IF THE DEVICE IS USED OUTSIDE THE HOME.  SO YOU ARE

20   TELLING ME, AND MS. EARL CAN TELL ME IF SHE AGREES WITH YOU,

21   THAT SMART PHONES DON'T EVEN HAVE THAT SETTING.  SO NO SMART

22   PHONE IS GOING TO BE INCLUDED.  BUT YOU DON'T LIMIT IT TO

23   PARTICULAR DEVICES.

24    I PRESUME A NEST DEVICE IS NOT SOMETHING YOU CARRY IN YOUR

25   POCKET, AND THERE ARE SOME OTHER THINGS THAT ARE TRADITIONALLY

```
1        NOT CARRIED.  AND FRANKLY, LAPTOPS, TABLETS AND PHONES ARE THE

2        THINGS THAT ONE COMMONLY CARRIES IN AND OUT OF THE HOME.

3            SO YOU HAVEN'T SAID TO ME WHICH DEVICES YOU ARE LIMITING

4        THIS TO.

5                MR. LEVIS:  YES.

6            SO IT IS INTENDED TO BE LIMITED TO THE HOME DEVICES, LIKE

7        THE NEST DEVICE YOU ARE SAYING THAT WOULD PLUG INTO THE WALL.

8        AND THAT'S BECAUSE THOSE ARE THE ONLY DEVICES THAT HAVE THE

9        ABILITY FOR YOU TO SET A FIXED LOCATION.

10           SO THAT WAS THE PURPOSE OF INCLUDING THAT WAS TO RELY ON

11       THE DATA THAT WE KNOW EXISTS, WHICH WE SUBMITTED AS AN EXAMPLE,

12       THE DOCUMENTS FROM PLAINTIFF SPURR'S GOOGLE HOME DEVICES, IT

13       WAS EXHIBIT 2 TO THE MACLEAN DECLARATION.  AND IT SHOWS THE

14       GOOGLE HOME DEVICES IN THEIR HOME AND THE LOCATIONS THAT THEY

15       ASSIGN TO THE GOOGLE HOME DEVICES.

16               THE COURT:  ALL RIGHT.  SO THAT TELLS ME THESE AREN'T

17       MOBILE DEVICES, BUT IT DOESN'T TELL ME THAT THEY ARE USED IN

18       THE HOME.  SO THEY COULD BE USED IN A BUSINESS.  THEY COULD BE

19       USED IN A SCHOOL CLASSROOM.  THEY COULD BE USED IN -- WELL, I

20       DON'T KNOW WHERE ELSE THEY COULD BE USED, BECAUSE I DON'T USE

21       THESE DEVICES, I CAN'T EVEN IMAGINE.  BUT I COULD HAVE ONE AT

22       MY DESK HERE TO HELP ME WITH MY RESEARCH INSTEAD OF GOOGLING

23       THIS STUFF EVERY FIVE SECONDS, OR WHATEVER I CHOOSE TO DO.

24           SO I STILL HAVE SOME PROBLEM WITH THAT.  AND AGAIN, WE GET

25       BACK TO THE TRANSUNION PROBLEM OF, HOW DO I SORT THE CLASS
```

```
 1          MEMBERS?

 2                  MR. LEVIS:  I WOULD JUST SAY THAT I RECOGNIZE THAT,

 3          AND THAT'S WHY OUR PROPOSED DEFINITION WOULD HAVE USED IT IS

 4          SUBSET OF LOCATIONS.

 5              SO THE WAY THE LOCATION SETTING WORKS, THERE IS A LIST

 6          THAT GOOGLE PROVIDES, IT'S A DROP DOWN.  AND THERE ARE OPTIONS

 7          THAT ARE AS YOUR HONOR MENTIONED, LIKE OFFICE OR OTHER PLACES.

 8              SO WE WERE INTENDING TO USE THE DATA REFLECTING THE

 9          LOCATION ASSIGNED TO IT WHICH MAKES COMMON SENSE BASED ON HOW

10          THE DEVICES ARE USED.

11                  THE COURT:  SO IT IS A DEVICE THAT IS NOT MOBILE.

12                  MR. LEVIS:  YEP.

13                  THE COURT:  AND THEN THE LOCATION IS SET AT HOME.

14                  MR. LEVIS:  CORRECT.

15                  THE COURT:  OKAY.

16              ALL RIGHT.  NOW MOVING ON, WE WERE TALKING ABOUT STATUTORY

17          DAMAGES, AND I'M JUST LOOKING AT FACEBOOK AND I'M LOOKING AT

18          THE CRITERION, THE SEVERITY OF THE VIOLATION, WHETHER OR NOT

19          THERE WAS ACTUAL DAMAGE TO THE PLAINTIFF, THE EXTENT OF ANY

20          INTRUSION INTO THE PLAINTIFF'S PRIVACY, THE RELATIVE FINANCIAL

21          BURDENS OF THE PARTIES.

22              SO I NEED TO SEE YOUR COMMON QUESTIONS THERE THAT CAN BE

23          PROVED WITH COMMON EVIDENCE.  BUT JUDGE HAMILTON WASN'T

24          PERSUADED OF IT IN FACEBOOK SO I WILL HAVE TO THINK ABOUT THAT.

25                  MR. LEVIS:  I JUST THINK -- IF I CAN JUST RESPOND TO
```

1    THAT.  I THINK THE <u>CAMPBELL V. FACEBOOK</u> CASE WAS SLIGHTLY

2    DIFFERENT, IN THAT THE ISSUE THERE WAS TURNING ON STANDING

3    ABOUT THE CONTENT OF MESSAGES.

4        SO WHEN YOU GOT TO THE INDIVIDUAL ISSUES AND WHAT WAS

5    BEING DEALT WITH, IT WOULD HAVE HAD TO DEAL WITH WHAT EACH

6    PERSON SAID.

7        THE MARKERS WE ARE LOOKING AT HERE, IN TERMS OF WHETHER

8    SOMETHING WAS SHARED, WHETHER IT IS A FALSE ACCEPT, OR BINARY,

9    AND THEY CAN BE DETERMINED WITHOUT DOING ANY INDIVIDUALIZED

10   INQUIRY, BECAUSE THE DATA ACTUALLY EXISTS THAT DEFINITIVELY

11   ANSWERS THAT QUESTION.

12       AND SO THAT'S WHY WE ARE STRUCTURING THE CLASSES TO TRY TO

13   FOLLOW WHAT WAS IN THE DATA AND MATCH THE DATA TO THE CLAIMS

14   THAT YOUR HONOR SUSTAINED SO WE CAN HAVE A MATCH BETWEEN THE

15   EVIDENCE AND WHAT WE WOULD NEED TO PROVE.

16       AND JUST THE QUESTIONS HERE ARE DIFFERENT THAN THAT THAT

17   WOULD HAVE BEEN ADDRESSED IN THE <u>FACEBOOK</u> CASE.

18             THE COURT:  OKAY.  WHY DON'T YOU GO AHEAD.

19             MR. LEVIS:  I'M NOT SURE IF YOU WERE ASKING ME OR --

20             THE COURT:  I WOULD LIKE YOU TO CONTINUE WITH YOUR

21   ARGUMENT.

22             MR. LEVIS:  YEAH.  SURE.

23       I GUESS IF I COULD RESPOND TO A COMMENT YOU SAID ABOUT,

24   THE THING WE THINK REALLY WARRANTS THE STATUTORY DAMAGES HERE

25   IS REALLY TURNING ON THE SCOPE AND NATURE OF THE VIOLATION

```
 1    ITSELF.

 2         WE KNOW, AT LEAST CURRENTLY, THAT THERE'S HUNDREDS OF

 3    TERABYTES OF DATA THAT'S RELEVANT TO THIS THAT'S REFLECTING

 4    RECORDINGS OF MILLIONS OF USERS THAT WENT ON FOR YEARS.  AND SO

 5    THE CLASS HERE, JUST GIVEN THE SIZE AND NATURE AND GOOGLE'S

 6    KNOWLEDGE OF THE ISSUE FOR SUCH AN EXTENDED PERIOD OF TIME, WE

 7    THINK THE SEVERITY OF THE VIOLATION, AND GIVEN GOOGLE'S

 8    RELATIVE MEANS, WARRANTS THE STATUTORY PENALTIES THAT WE ARE

 9    SEEKING.

10         THE COURT:  ARE YOU SAYING THAT THERE WERE FALSE

11    ACCEPTS FOR MILLIONS OF USERS, OR ARE YOU SAYING THAT THE

12    CLAIMS THAT -- THE CLASSES AND CLAIMS THAT DON'T RELY ON FALSE

13    ACCEPTS MAKES IT MILLIONS?

14         MR. LEVIS:  I DO NOT HAVE AN EXACT ANSWER AS TO

15    NUMBERS YET BECAUSE WE ARE STILL WAITING TO RECEIVE DATA ON

16    THIS, BUT I THINK THE ANSWER TO BOTH YOUR QUESTIONS IS LIKELY

17    YES TO BOTH.

18         IN TERMS OF THERE ARE LIKELY FALSE ACCEPTS FOR MILLIONS OF

19    USERS, BASED ON WHAT WE UNDERSTAND FROM HOW THE TECHNOLOGY

20    WORKS, THERE ARE ALSO MILLIONS OF USERS WHOSE CONVERSATIONS

21    WERE LIKELY SHARED OUTSIDE WITH THIRD PARTIES, BUT I WOULD WAIT

22    FOR CONFIRMATION ON NUMBERS FROM THE DATA THAT WE HAVE YET TO

23    RECEIVE.

24         THE COURT:  THAT'S FAIR.

25         MR. LEVIS:  AND I THINK THAT TOUCHED ON ALL OF THE
```

1    POINTS YOU RAISED, UNLESS YOU HAVE ANY OTHER QUESTIONS.

2        I WOULD JUST SAY, YOU KNOW, THAT THESE DO SEEM LIKE ISSUES

3    WE CAN ADDRESS IF YOU WANT US TO SUBMIT ADDITIONAL PAPERS ON

4    IT.  I KNOW YOU MENTIONED YOU WOULD HAVE EXPECTED US TO

5    WITHDRAW OR MOTION AND RE-FILE IT.  I WOULD HAVE DONE THAT IF I

6    KNEW THAT WAS SOMETHING YOUR HONOR WOULD BE OPEN TO.

7        THE COURT:  I JUST RULE ON THE MOTION THAT'S BROUGHT

8    BEFORE ME, IT'S THE ONLY WAY THE DEFENDANT HAS FAIR NOTICE.

9        AND I RECOGNIZE THAT I HAVE DISCRETION, I HAVE MODIFIED

10   CLASSES TO NARROW THEM IN ORDER TO APPROVE A CLASS.  BUT HERE,

11   I DON'T THINK IT'S ABOUT NARROWING, I THINK IT'S A FUNDAMENTAL

12   CHANGE, AND THAT'S MY CONCERN.

13       THIS WAA VERSUS VAA, IS REALLY A BIG PROBLEM.  AND I DON'T

14   THINK YOU WANT TO GO FORWARD WITH JUST YOUR PURCHASER CLASS

15   WITH SPURR AND KUMANDAN.  I GUESS YOU COULD GO FORWARD WITH

16   YOUR SCA CLASS IF I DON'T HAVE ANYTHING ELSE.

17       ALL RIGHT.  LET ME TURN TO MS. EARL AND HEAR YOUR

18   ARGUMENT.

19       MS. EARL:  THANK YOU, YOUR HONOR.

20       I TOO WILL GO IN THE ORDER OF THE ISSUES YOU HAVE

21   IDENTIFIED.

22       SO FIRST AS TO THE MEMBERSHIP OF THE NAMED PLAINTIFFS IN

23   THESE CLASSES.  SO IT IS TRUE THAT KUMANDAN TESTIFIED THAT HE

24   PURCHASED A PIXEL PHONE.  SO WE DON'T CONTEST THAT HIS

25   TESTIMONY WOULD SUGGEST THAT HE IS A MEMBER OF THE PURCHASER

1    CLASS.

2         HOWEVER, AS TO PLAINTIFF SPURR, YOU KNOW, SHE TESTIFIED

3    THAT SHE DID NOT PURCHASE ANY OF THE DEVICES, SHE DIDN'T HAVE

4    ANY MEMORY OF ANY DISCUSSIONS THAT WENT INTO WHETHER OR NOT TO

5    PURCHASE A DEVICE.  THE DEVICE WAS -- ONE OF THE DEVICES WAS

6    PURCHASED BY HER HUSBAND, THE OTHER TWO WERE GIFTS.

7         AND YOU KNOW, TO THE EXTENT THAT THE PURCHASER CLASS IS

8    GOING TO EXTEND TO INCLUDE PEOPLE WHO ARE -- HAVE JOINT

9    ACCOUNTS WITH PEOPLE WHO ACTUALLY PURCHASED THE DEVICE, I THINK

10   THERE'S GOING TO BE AN IDENTIFICATION PROBLEM.

11        THE COURT:  SO YOU KNOW, IT'S AN INTERESTING ISSUE,

12   BUT IF IT'S PURCHASED BY -- FROM A JOINT ACCOUNT, IN

13   CALIFORNIA, THE PRESUMPTION IS SHE'S AN EQUAL OWNER OF IT.

14        THE GIFT ISSUE IS DIFFERENT.  BUT ARE YOU SUGGESTING THAT

15   THE PURCHASER CLASS HAD THE NAMED PLAINTIFF TO HAVE HAD ACTUAL

16   KNOWLEDGE OF THE REPRESENTATIONS AND RELIED ON THEM, IN WHICH

17   CASE SHE WOULD NOT.

18        SHE'S A FINANCIAL PARTICIPANT IN IT, BUT THE

19   REPRESENTATIONS ARE MADE IN ADVANCE OF THE PURCHASE TO THE

20   HUMAN BEING WHO IS PUTTING THEIR CREDIT CARD ACROSS THE ISLE TO

21   PAY FOR IT.  AND THIS PURCHASER CLASS IS ALL ABOUT THE

22   REPRESENTATIONS MADE, ISN'T THAT RIGHT?

23        MS. EARL:  YOUR HONOR, I AGREE WITH YOU THAT

24   PLAINTIFFS HAVE FRAMED THE PURCHASER CLASS AS BEING ABOUT THE

25   REPRESENTATIONS MADE, BUT THE PURCHASER CLASS IS SEEKING TO

1    ASSERT THE BREACH OF CONTRACT CLAIM, AND THE UCL UNFAIRNESS AND

2    UNLAWFULNESS CLAIM, IS MY UNDERSTANDING.

3             THE COURT:  YEAH.

4             MS. EARL:  AND THE BREACH OF CONTRACT CLAIM, YOU

5    KNOW, IT'S NOT THE SAME AS A TRULY FALSE REP ARGUMENT.

6             THE COURT:  SO THE CONTRACT WAS, YOU PROMISED ME A

7    DEVICE THAT WOULD ONLY RECORD WHEN I ACTIVATED IT WITH A HOT

8    WORD, AND YOU DIDN'T DELIVER THAT BECAUSE YOU HAD ALL THESE

9    FALSE ACCEPTS.

10            MS. EARL:  RIGHT.

11            THE COURT:  YEAH.  SO WHETHER YOU HAD A FALSE ACCEPT

12   OF ME OR NOT, I STILL DIDN'T GET THE LEVEL OF PRIVACY I WAS

13   BUYING, THAT I PAID FOR.

14            MS. EARL:  THE REPRESENTATION IN THE PRIVACY POLICY

15   WAS THAT WE WILL -- EXCUSE ME, LET ME PULL UP THE PRECISE

16   LANGUAGE -- IS THAT WE COLLECT INFORMATION ABOUT YOUR ACTIVITY

17   IN OUR SERVICES WHICH WE USE TO DO THINGS LIKE RECOMMEND A

18   YOUTUBE VIDEO YOU MIGHT LIKE.  THE ACTIVITY INFORMATION WE

19   COLLECT MAY INCLUDE VOICE AND AUDIO INFORMATION WHEN YOU USE

20   AUDIO FEATURES.

21            AND FOR ANYBODY WHO DIDN'T ACTUALLY EXPERIENCE A FALSE

22   ACCEPT, THAT PROMISE WASN'T BREACHED.  AND SO IT'S NOT A FALSE

23   REPRESENTATION CLAIM, IT'S A BREACH OF CONTRACT CLAIM.  AND I

24   THINK ALL OF THE ARGUMENTS ABOUT THE PURCHASER CLASS AND THAT

25   BREACH OF CONTRACT CLAIM KIND OF OMIT THE FALSE ACCEPT PORTION

1    OF IT.

2            THE COURT:  BUT YOU DIDN'T SUGGEST IN YOUR CHART THAT

3    THESE PLAINTIFFS WERE NOT MEMBERS OF THE CLASS BECAUSE THEY

4    FAILED TO HAVE FALSE ACCEPTS, YOU DIDN'T EVEN LIST THAT.  YOU

5    ARE ONLY -- AND I DON'T READ THE PURCHASER CLASS SO NARROWLY, I

6    THINK IN ELEMENTS OF PROOF FOR BREACH OF CONTRACT, YOU HAVE TO

7    HAVE BEEN HARMED BY IT.

8        BUT THE HARM CAN BE, YES, I GOT MY GOOGLE ASSISTANT, AND

9    WHENEVER I USED IT, WE WENT THROUGH THIS AT THE MOTIONS TO

10   DISMISS, MEANING I DECIDED THAT I WANTED IT ACTIVATED, I GOT

11   THAT.  THE PROBLEM IS I GOT A DEVICE THAT MIGHT HAVE AND OFTEN

12   DID, ACTIVATE WHEN I DIDN'T WANT IT TO.  AND SO I PAID FOR

13   SOMETHING THAT HAD A HIGHER LEVEL OF QUALITY CONTROL THAN I

14   GOT.

15       I THINK THAT'S -- MR. LEVIS, IF I BUTCHERED YOUR THEORY, I

16   APOLOGIZE, BUT I DON'T READ IT SO NARROWLY THAT THERE HAD TO

17   HAVE BEEN -- AND IT DIDN'T LOOK LIKE YOU DID EITHER -- THAT

18   THERE HAD TO HAVE BEEN A FALSE ACCEPT IN ORDER TO HAVE THE

19   CLAIMS UNDER THE PURCHASER CLASS.

20           MS. EARL:  NO, YOUR HONOR.  WE DID OBJECT TO THE

21   DEFINITION OF THE PURCHASER CLASS BECAUSE IT WASN'T LIMITED TO

22   INDIVIDUALS WHO EXPERIENCED A FALSE ACCEPT, WHICH IS REQUIRED

23   TO STATE A BREACH OF CONTRACT CLAIM UNDER THE --

24           THE COURT:  OKAY.  GOT IT.

25       WOULDN'T THAT JUST BE A FAILURE OF PROOF, THOUGH,

1    ULTIMATELY AT TRIAL?  BECAUSE I'M NOT DECIDING AT CLASS CERT

2    THAT THE CLAIMS ARE VALID.

3              MS. EARL:  UNDERSTOOD, YOUR HONOR.

4        BUT I THINK OUR CONCERN IS THAT BY DEFINING THE PURCHASER

5    CLASS IN THIS WAY, IT'S OVERBROAD AND WILL SWEEP IN INDIVIDUALS

6    WHO NEVER TURNED ON VAA, NEVER HAD ANY RECORDINGS, NEVER

7    EXPERIENCED A FALSE ACCEPT, NEVER HAD ANY RECORDINGS DISCLOSED

8    TO HUMAN REVIEWERS, AND THEREFORE HAD NO BREACH OF CONTRACT

9    CLAIM, IN ADDITION TO THOSE WHO MAY HAVE HAD THOSE -- WHOSE

10   DATA MAY HAVE BEEN USED IN THAT WAY.

11             THE COURT:  I DON'T ACTUALLY AGREE WITH THAT.  I

12   THINK THAT THAT'S NOT OVERBROAD.

13       AND IF I HAVE -- I MEAN, IF I ACTUALLY HAVE AT LEAST

14   KUMANDAN, WHO IS A CLASS MEMBER, ALTHOUGH WE SHOULDN'T HAVE HAD

15   TO GO THROUGH THIS EXERCISE, I SHOULD HAVE HAD THE -- I SHOULD

16   HAVE HAD SOMEONE IDENTIFIED, IT SEEMS THAT THIS IS A -- YOU

17   KNOW, IT'S A QUALITY ISSUE.  I PAID A PREMIUM FOR SOMETHING

18   THAT HAD THIS PROTECTION, AND JUST BECAUSE IT DIDN'T ACTIVATE

19   FOR ME, DOESN'T MEAN I WASN'T HARMED OR BY HAVING SOMETHING

20   THAT MIGHT FALSELY LISTEN IN.

21             OKAY.  LET'S MOVE ON.

22             MS. EARL:  THANK YOU, YOUR HONOR.

23       JUST ONE FINAL POINT ON THAT BEFORE WE MOVE ON, IS THAT

24   THEY DID HAVE A FALSE ADVERTISING AND FRAUD CLAIMS THAT WERE

25   DISMISSED.

1    MOVING ON TO THE PRIVACY CLASS, PLAINTIFFS -- AND TO

2    ADDRESS THE VAA VERSUS WAA ISSUE, IT IS NOT THE CASE THAT THE

3    WAA CONSENT IS ALL THAT IS REQUIRED TO HAVE BOTH AUDIO

4    RECORDINGS AND SPEECH LOGS, IT IS ONLY THE WAA CONSENT THAT

5    WILL RECORD AUDIO AND RESULT IN SPEECH LOGS.

6    AND WE HAVE BEEN TALKING A LOT ABOUT SPEECH LOGS AND I

7    JUST WANT TO POINT OUT A FEW THINGS.  PLAINTIFFS REPRESENT THAT

8    THERE'S A LOT OF DATA IN THESE SPEECH LOGS, BUT WHAT'S NOT IN

9    THE SPEECH LOGS IS WHO IS SPEAKING, WHO THEY ARE SPEAKING TO,

10    WHETHER THE PERSON BEING SPOKEN TO EXPRESSLY OR IMPLIEDLY

11    CONSENTED, WHO ELSE IS AROUND, WHETHER THE COMMUNICATION IS

12    BEING RECORDED BY ANOTHER DEVICE, WHETHER THE COMMUNICATION IS

13    ACTUALLY THE RADIO OR THE TV, THE SPEAKER'S EXPECTATIONS OF

14    PRIVACY, WHAT DISCLOSURES OR NEWS ARTICLES THE SPEAKER MAY HAVE

15    SEEN.  AND OUR POSITION IS THAT THE SPEECH LOGS DO NOT ACTUALLY

16    SHOW WHETHER THE QUERY IS A FALSE ACCEPT.

17    SO WHAT YOU SEE IN THE SPEECH LOGS IS THE MACHINE

18    TRANSCRIPTION OF WHAT GOOGLE SERVERS UNDERSTOOD THE USER TO

19    HAVE BEEN SAYING.  BUT WHAT THE GOOGLE SERVER UNDERSTOOD AND

20    WHAT THE USER ACTUALLY SAID ARE DIFFERENT.

21    AND SO IF YOU LOOK AT THE DECLARATION OF TERRY TAI AND THE

22    DECLARATION OF FRANCOISE BEAUFAYS AND SOME OF HER DEPOSITION

23    TESTIMONY THAT WE ATTACHED TO OUR MOTION, THE ONLY WAY TO

24    DETERMINE WHETHER THERE HAS BEEN A FALSE ACCEPT IS TO LISTEN TO

25    THE UNDERLYING AUDIO.

1          AND SO FOR THOSE REASONS, WE DON'T BELIEVE THAT THE SPEECH

2    LOGS ARE THE FANTASY THAT PLAINTIFFS MAKE THEM OUT TO BE.

3          NOW THEY POINT TO SOME DEPOSITION TESTIMONY FROM TERRY TAI

4    ABOUT ONE OF THE ENTRIES IN THE SPEECH LOGS.  AND WHAT MR. TAI

5    TESTIFIED TO IS THAT THERE WAS AN ENTRY WHERE THE MACHINE

6    TRANSCRIPTION DID NOT INCLUDE THE HOT WORD.  AND HE SAID THAT

7    SHOULD HAVE BEEN A TRUE REJECT.

8          AND WHAT THAT MEANS IS THAT UNDER TODAY'S CURRENT

9    POLICIES, AND YOUR HONOR MENTIONED THE LITANY OF CHANGES GOOGLE

10   HAS BEEN MAKING TO TRY TO IMPROVE TRANSPARENCY AND THE USER

11   EXPERIENCE, BUT UNDER TODAY'S CURRENT POLICIES, THAT AUDIO

12   RECORDING WOULD NOT HAVE BEEN MADE AND WOULD NOT HAVE BEEN

13   LOGGED.  BUT THAT'S NOT THE SAME THING AS SAYING IT'S A TRUE

14   FALSE ACCEPT.

15            THE COURT:  CAN I JUST GO BACK SO THAT I UNDERSTAND

16   THIS, BECAUSE I THINK I JUST DIDN'T CATCH IT WHEN YOU DID IT.

17          THE VAA, WHICH IS IN THE CLASS DEFINITION IN THE MOTION,

18   WHAT DOES -- IF YOU'VE OPTED IN TO VAA, WHAT HAVE YOU DONE,

19   WHAT HAVE YOU ALLOWED TO HAPPEN?

20            MS. EARL:  OKAY.

21          SO THE VAA STANDS FOR THE VOICE AND AUDIO ACTIVITY

22   SETTING, WHICH HAS BEEN IN PLACE SINCE 2016, HAS ALWAYS BEEN AN

23   OPT-IN CONSENT.

24          AND SO WHAT IT MEANS IS THAT YOU ARE CONSENTING TO HAVING

25   YOUR AUDIO ACTIVITY SAVED, AND THE SPEECH LOG WE HAVE BEEN

1    TALKING ABOUT ARE ASSOCIATED WITH THAT AUDIO ACTIVITY.

2          THE COURT:  AND SO IF I DON'T OPT IN TO VAA, THEN NO

3    AUDIO RECORDINGS ARE SAVED AT ALL?

4          MS. EARL:  THAT'S CORRECT.

5          THE COURT:  WHETHER THERE ARE TRUE HOT WORDS OR NOT,

6    NOTHING IS SAVED.

7          MS. EARL:  THAT'S CORRECT.

8        THE VAA CONSENT HAS ALWAYS INFORMED USERS THAT BY ENABLING

9    VAA, THEY ARE CONSENTING TO GOOGLE SAVING AND USING THEIR AUDIO

10   DATA TO IMPROVE GOOGLE SPEECH RECOGNITION TECHNOLOGIES.

11         THE COURT:  SO IF I ONLY OPT IN -- AND IS WAA AN

12   OPT-IN AS WELL?

13         MS. EARL:  WAA IS AN OPT OUT.

14         THE COURT:  SO YOU ARE AUTOMATICALLY IN, IT'S OPT

15   OUT.  SO IF I DON'T OPT OUT, IF I'M IN WAA, WHAT'S HAPPENING?

16   IS THERE RECORDING?

17         MS. EARL:  JUST TO CLARIFY SLIGHTLY, YOUR HONOR, SO

18   WAA IS STILL PRESENTED TO THE USER, IT'S JUST, SO IT'S NOT

19   AS --

20         THE COURT:  I UNDERSTAND.

21         MS. EARL:  BUT WHEN YOU ARE IN WAA, BUT NOT IN VAA,

22   THERE'S NO AUDIO STORED, THERE ARE NO SPEECH LOGS, BUT YOU

23   DO -- YOU HAVE OPTED IN TO RETAINING -- IT STANDS FOR WEB AND

24   APP ACTIVITY.  IT MEANS THAT IT REFLECTS THE ACTIVITY THAT YOU

25   HAVE ON VARIOUS GOOGLE SERVICES, INCLUDING THE ASSISTANT.

1          SO FOR EXAMPLE, IT WOULD SAVE YOUR GOOGLE WEB SEARCH

2     HISTORY, RIGHT.  SO IT WOULD SAVE YOUR GOOGLE LOCATION SEARCH

3     HISTORY, IF YOU SEARCH ON THE GOOGLE SEARCH ENGINE OR IF YOU

4     SEARCH ON GOOGLE MAPS.

5          AS TO ASSISTANT, IT WOULD SAVE, FOR EXAMPLE, THAT YOU HAD

6     AN ASSISTANT QUERY, AND I BELIEVE IT WILL INCLUDE KIND OF A

7     TEXT TRANSCRIPTION OF THAT QUERY, BUT IT --

8               THE COURT:  WHAT DOES THAT MEAN, TEXT?  WORD FOR

9     WORD?

10              MS. EARL:  GOOGLE'S AUTOMATIC TRANSCRIPTION OF WHAT

11    IT UNDERSTOOD THE USER TO HAVE ASKED THE ASSISTANT.

12              THE COURT:  ALL RIGHT.

13         SO THIS IS WHERE MAYBE -- SO IT WOULDN'T HAVE AN AUDIO

14    RECORDING OF MY VOICE, BUT IT WOULD HAVE A WORD FOR WORD

15    RENDITION OF WHAT I SAID.  YOU SAY TEXT, THAT'S THE WORD, SO IF

16    I SAY "GOOGLE, GET ME THE WEATHER FORECAST," IT WOULD WRITE

17    THAT DOWN, BUT WE WOULDN'T KNOW WHO SAID IT AND WE WOULDN'T

18    KNOW WHAT THE -- WHETHER IT WAS A HOT WORD OR NOT?

19         I'M JUST TRYING TO UNDERSTAND WHETHER THIS IS AN AREA

20    WHERE MR. LEVIS SHOULD GO WITH WAA.

21              MR. LEVIS:  I CAN ANSWER THAT TOO.

22              THE COURT:  OKAY.  LET ME HEAR FROM MS. EARL, BECAUSE

23    I'M TRYING TO UNDERSTAND WHAT WAA DOES.

24              MS. EARL:  THE WEB AND APP ACTIVITY, IT'S JUST MEANT

25    TO CAPTURE YOUR ACTIVITY.  SO IT WILL INCLUDE CERTAIN

1    INFORMATION ABOUT THE QUERY, BUT NOT THE UNDERLYING AUDIO AND

2    NOT OTHER INFORMATION ABOUT THE UNDERLYING AUDIO.

3              THE COURT:  SO IT'S NOT THE AUDIO, BUT IT'S THE -- SO

4    IF I'M HERE SAYING "GOOD MORNING, IT'S THURSDAY," THERE'S MY

5    VOICE, BUT YOU COULD TYPE DOWN "GOOD MORNING, IT'S THURSDAY"

6    AND SHOW IT TO ME IN WRITTEN FORM.

7          SO THAT'S WHAT WAA WILL HAVE, IT WILL HAVE IN WRITTEN

8    FORM, WHAT IT UNDERSTOOD ME TO HAVE SAID.

9              MS. EARL:  YES.  IT WILL MAKE THAT AVAILABLE TO YOU

10   ON YOUR "MY ACTIVITY" PAGE.

11             THE COURT:  OKAY.  AND DOES WAA REFLECT THE HOT WORD

12   THAT TRIGGERED THE RETENTION OF INFORMATION?

13             MS. EARL:  NOT TO MY KNOWLEDGE, YOUR HONOR.

14             THE COURT:  SO HOW WOULD WE KNOW THE DIFFERENCE

15   BETWEEN A TRUE USE WITH A REAL HOT WORD AND A FALSE ACCEPT ON

16   WAA?

17             MS. EARL:  I DON'T THINK YOU CAN.

18             THE COURT:  BECAUSE THAT'S THE WHOLE POINT HERE, IS

19   THAT WE HAVE TO HAVE FALSE ACCEPTS.

20             MS. EARL:  YES.

21             THE COURT:  BECAUSE PEOPLE WHO BUY THESE DEVICES

22   ACTUALLY PLAN TO USE THEM AND THEY ACTUALLY PLAN TO CONSENT TO

23   THE LISTENING BY GOOGLE FOR THE ACTUAL HOT WORDS.

24          I MEAN, I DON'T KNOW WHY ANYONE WOULD EVER DO THAT, I'VE

25   SAID THAT FROM DAY ONE, BUT PEOPLE SEEM TO LIKE THESE THINGS.

1    SO YOU ARE TELLING ME THAT WAA WILL RECORD THE TEXT OF ALL

2    OF THE QUERIES, BUT IT WON'T RECORD THE TRIGGER OF A TRUE HOT

3    WORD OR A FALSE ACCEPT, THE AUDIO WOULD DO THAT.  THAT'S IN

4    WAA.

5        MS. EARL:  THE AUDIO IN VAA.

6        THE COURT:  THE VAA.

7        MS. EARL:  THAT IS MY UNDERSTANDING.

8    NOW I WILL CONFESS I AM NOT AN EXPERT ON WAA, SO TO THE

9    EXTENT THAT YOUR HONOR WAS GOING TO CONSIDER BROADENING THE

10   CLASS TO INCLUDE WAA, WE WOULD CERTAINLY WANT AN OPPORTUNITY TO

11   RESPOND.

12       THE COURT:  SO THAT'S THE WHOLE THING.  THAT'S WHY

13   I'M NOT GOING TO DO IT HERE IN THIS MOTION, BECAUSE I DON'T

14   UNDERSTAND ENOUGH OF WHAT I'M DOING, AND YOU HAVEN'T BEEN GIVEN

15   THAT OPPORTUNITY.

16   BUT WHAT I'M LEARNING THOUGH, IS THIS CLASS, I THINK

17   PLAINTIFFS AGREE, CANNOT GO FORWARD WITH WAA OPT-IN BECAUSE

18   THEY DON'T HAVE OPT-INS.  AND WAA, THEY ARE NOT OPTED-IN USERS.

19   LET ME GO BACK TO THE CLASS DEFINITION.  SO NONE OF OUR

20   CLASS MEMBERS ENABLED VAA, THAT'S WHAT YOUR DATA TELLS ME.  AND

21   THERE'S NO DISAGREEMENT ON THAT.

22       MS. EARL:  THE DATA IS THAT NONE OF THE USERS -- NONE

23   OF THE NAMED PLAINTIFFS ARE CURRENTLY OPTED IN TO VAA.  THE

24   KUMANDAN AND L. GALVAN DID AT ONE POINT ENABLE VAA, BUT THEY

25   WERE NOT USERS OF GOOGLE HOME DEVICES AS PLAINTIFFS HAVE

1    DEFINED THEM.

2        SO THEN TO ADDRESS SOME OF YOUR HONOR'S QUESTIONS ABOUT

3    GOOGLE HOME DEVICES, IT IS TRUE THAT, AS THEY HAVE DEFINED IT,

4    THAT SETTING THAT THEY ARE RELYING ON IS NOT AVAILABLE FOR

5    MOBILE PHONES OR FOR TABLETS; HOWEVER, IT IS NOT LIMITED TO THE

6    GOOGLE HOME, THE GOOGLE BRANDED GOOGLE HOME DEVICE OR THE KIND

7    OF SUBSEQUENT SMART SPEAKERS.  IT COULD BE ANY GOOGLE ASSISTANT

8    ENABLED DEVICE THAT IS ABLE TO BE CONFIGURED USING THE GOOGLE

9    HOME APP.

10       SO IT WOULD INCLUDE THIRD PARTY DEVICES, IT COULD INCLUDE

11   THINGS LIKE THE SMART TV'S.  SO IT'S REALLY NOT LIMITED TO THE

12   SMART SPEAKERS AND SMART DISPLAYS THAT ARE THE KIND OF GOOGLE

13   HOME BRANDED DEVICES.

14       AND YOU KNOW, AS YOUR HONOR NOTED, IT ALSO DOESN'T

15   INDICATE THAT ANY OF THE DEVICES ARE ACTUALLY BEING USED IN THE

16   HOME, BECAUSE THEY COULD BE USED IN A NUMBER OF OTHER

17   LOCATIONS.

18       I ALSO WANTED TO POINT OUT AS TO PLAINTIFF SPURR, ALL OF

19   THE RECORDINGS THAT PLAINTIFFS HAVE REFERRED TO, THOSE ARE ALL

20   FROM HER HUSBAND'S GOOGLE ACCOUNT.  SO THE DEVICES THAT WERE

21   USED IN THE SPURR HOUSEHOLD WERE ALL REGISTERED TO MR. SPURR'S

22   GOOGLE ACCOUNT.

23       AND SO THAT GOES TO THE ISSUE OF, YOU KNOW, THE RECORDINGS

24   THAT ARE ASSOCIATED WITH A GOOGLE ACCOUNT DON'T SAY WHO IS

25   SPEAKING.  SO SOME OF THE RECORDINGS WERE FROM MR. SPURR, SOME

1    WERE FROM MRS. SPURR, SOME WERE OF PLAINTIFF B.S., AND SOME

2    WERE OF OTHER INDIVIDUALS IN THEIR HOME.

3         AND SO THE WAY THE PRIVACY CLASS IS DEFINED, IT'S DEFINED

4    AS BEING THE USERS WHO HAVE ASSOCIATED THEIR ACCOUNT WITH THE

5    DEVICE, BUT THE ACTUAL RECORDINGS ARE NOT LIMITED TO THOSE

6    USERS.  SO WE DON'T THINK THAT MS. SPURR IS A MEMBER OF THE

7    PRIVACY CLASS AS MR. LEVIS ARGUED.

8         THE COURT:  OKAY.  ALL RIGHT.

9         FURTHER ARGUMENT?

10        MS. EARL:  JUST TO TOUCH ON THE EXPECTATION OF

11    PRIVACY AND CONSENT ISSUES, YOUR HONOR.

12        I TAKE YOUR HONOR'S POINT THAT A CONVERSATION THAT OCCURS

13    IN THE HOME MAY BE SUBJECT TO A HIGH EXPECTATION OF PRIVACY,

14    BUT THAT'S ONLY ONE FACTOR.  THERE ARE A NUMBER OF OTHER

15    FACTORS THAT GO INTO WHETHER A USER WILL HAVE AN EXPECTATION OF

16    PRIVACY IN ANY PARTICULAR COMMUNICATION.

17        AND JUST TO GIVE ONE EXAMPLE OF THAT, THERE'S -- ALL OF

18    THE GAED'S HAVE A VISUAL INDICATOR OR AN AUDIO THAT SHOW WHEN

19    THE DEVICE IS RECORDING.  AND IF AN INDIVIDUAL IS HAVING AN

20    ORAL CONVERSATION AND SEES THAT THE DEVICE IS RECORDING, AND

21    KNOWS THAT THE DEVICE IS RECORDING AND NONETHELESS CONTINUES TO

22    SPEAK, THAT WE THINK IS BOTH SUGGESTIVE THAT THEY DON'T HAVE AN

23    EXPECTATION OF PRIVACY IN THAT COMMUNICATION, AND ALSO GOES TO

24    THE IMPLIED CONSENT ISSUES THAT WE RAISED.

25        THE COURT:  OF COURSE I DON'T KNOW HOW CLOSE YOU HAVE

1    TO BE TO THE DEVICE FOR IT TO PICK SOMETHING UP.  YOU COULD

2    HAVE YOUR BACK TO THE DEVICE, BECAUSE THESE ARE FALSE ACCEPTS,

3    IF YOU COULD HAVE YOUR BACK TO THE DEVICE, YOU ARE NOT SEEING

4    THAT LIGHT GO ON.  SO THAT'S A CONCERN.

5        I MEAN, IF I INTENTIONALLY WANT TO USE THE DEVICE, THEN

6    I'M PROBABLY GOING TO BE NEAR IT OR -- BUT I DON'T EVEN KNOW

7    BECAUSE I DON'T KNOW HOW GOOD THE SPEAKERS ARE, AND HOW IT CAN

8    PICK UP.  BUT IF IT'S A FALSE ACCEPT, I CAN BE HAVING A

9    DISAGREEMENT WITH MY SPOUSE, BECAUSE I'M NOT THINKING ABOUT MY

10   HOME DEVICE, MY BACK COULD BE TO THAT DEVICE, AND SO I'M NOT

11   SEEING THAT.

12       NOW, YOU KNOW, SO I'M NOT REALLY INCLINED TO ACCEPT THAT

13   ARGUMENT ON THE EXPECTATION OF PRIVACY.  I MEAN, MAYBE I NEED

14   TO SEE, BECAUSE I DO NEED THIS LIST OF COMMON QUESTIONS,

15   BECAUSE I CAN'T REALLY TELL IF I HAVE ENOUGH COMMON QUESTIONS

16   FOR EACH CLAIM.  IT HAS TO BE CLAIM BY CLAIM.

17       AND SO -- ALL RIGHT.  ANYWAY, GO AHEAD.

18       MS. EARL:  I UNDERSTAND, YOUR HONOR.

19       AND YOU DON'T HAVE TO ACCEPT IT AS TO ANY PARTICULAR

20   COMMUNICATION, THE POINT IS THAT IT'S GOING TO VARY, IT'S GOING

21   TO VARY BY USER, IT'S GOING TO VARY BY INDIVIDUAL

22   COMMUNICATION, IT'S GOING TO VARY DEPENDING ON WHO IS USING THE

23   DEVICE.

24       AND SO THE EXPECTATION OF PRIVACY IS GOING TO BE AN

25   INHERENTLY INDIVIDUALIZED ISSUE, EVEN IF IT'S OCCURRING WITHIN

1    THE HOME.

2         AND SO THAT'S THE MAIN POINT IS THAT THERE ARE A HOST OF

3    FACTORS THAT WILL BEAR ON ANY EXPECTATION OF PRIVACY AS TO ANY

4    PARTICULAR COMMUNICATION.

5         ON THE CONSENT PIECE, I THINK SIMILARLY, YOU KNOW,

6    CERTAINLY THERE HAVE BEEN A NUMBER OF DISCLOSURES, PARTICULARLY

7    SINCE 2019, THAT WOULD HAVE PUT USERS ON NOTICE OF THE FALSE

8    ACCEPT ISSUE, AS WELL AS THE POTENTIAL DISCLOSURE OF AUDIO

9    RECORDINGS TO HUMAN REVIEWERS.

10        AND I WANT TO POINT OUT IN PARTICULAR, THAT BEGINNING IN

11   2020, USERS WHO OPT IN TO THE VAA SETTING ARE EXPRESSLY

12   PROVIDED A NOTICE THAT HIGHLIGHTS THE POSSIBILITY OF

13   MIS-ACTIVATIONS, AND ALSO DESCRIBES THAT YOUR RECORDING MAY BE

14   SHARED WITH HUMAN REVIEWERS FOR THE IMPROVEMENT PURPOSES THAT

15   GOOGLE USES THOSE RECORDINGS FOR.

16        SO AT LEAST BEGINNING IN 2020, WE HAVE EXPRESS CONSENT TO

17   THESE PRACTICES FOR USERS WHO OPT IN TO VAA.  AND FOR THE

18   PERIOD BEFORE THAT, YOU HAVE THE POSSIBILITY OF IMPLIED

19   CONSENT, AT LEAST AS TO SOME USERS, AND AT LEAST AS TO SOME

20   COMMUNICATIONS.

21          THE COURT:  SO YOU WOULD SUGGEST THAT ON THE PRIVACY

22    CLASS, THAT THE CLASS PERIOD NEEDS TO BE ROLLED BACK TO 2020,

23    AT LEAST.

24          MS. EARL:  AT LEAST.  I THINK.

25        AND I THINK EVEN IF YOU DID THAT, YOU WOULD STILL HAVE

1    PREDOMINANCE PROBLEMS.  CONSENT CAN BE IMPLIED FROM A NUMBER OF

2    CIRCUMSTANCES, INCLUDING NOT JUST SPECIFIC WRITTEN NOTICES THAT

3    YOU MAY HAVE SEEN, BUT ALSO YOUR INDIVIDUAL EXPECTATIONS AND

4    THE ACTIONS THAT YOU TAKE.

5        SO FOR EXAMPLE, USERS WHO EXPERIENCE FALSE ACCEPTS KNOW

6    THAT FALSE ACCEPTS CAN HAPPEN, AND YOU KNOW, IF THEY

7    NONETHELESS CHOOSE TO CONTINUE USING THE SAME PRODUCT OR

8    PURCHASING AN ADDITIONAL PRODUCT OR OTHERWISE NOT TAKING STEPS

9    TO PREVENT THE RECORDINGS FROM HAPPENING, I THINK YOU CAN

10   SAFELY SAY THAT AT LEAST SOME OF THOSE USERS WILL HAVE

11   IMPLIEDLY CONSENTED TO THE FALSE ACCEPTS.

12       THE COURT:  OKAY.

13       OKAY.  DO YOU WANT TO MOVE ON TO THE DAMAGES ISSUE?  LET

14   SEE IF I HAVE ANYTHING ELSE -- OH, THE ARBITRATION.  DID YOU

15   WANT TO SAY ANYTHING ABOUT ARBITRATION?

16       MS. EARL:  ON THE ARBITRATION POINT, YOUR HONOR, I

17   THINK YOU SUMMARIZED OUR ON POSITION WELL.

18       THERE IS, OF COURSE, THE GOOGLE CONSENTS, AND WE AGREE

19   THAT WE HAVEN'T WAIVED ANYTHING BY NOT RAISING IT, BECAUSE THE

20   ONLY PARTIES AT ISSUE RIGHT NOW ARE THE NAMED PLAINTIFFS, AND

21   WE DON'T SEE THAT WE HAVE AN ARBITRATION ARGUMENT AS TO ANY OF

22   THEM.

23       THE COURT:  OKAY.  AND THEN DAMAGES.

24       MS. EARL:  ON DAMAGES, WE WOULD CERTAINLY AGREE WITH

25   YOUR HONOR THAT THEY HAVE A SUPPLY -- BY FAILING TO ACCOUNT FOR

1    THE SUPPLY SIDE ISSUE, THAT IS A PROBLEM WITH THEIR DAMAGES

2    THEORY.

3         I THINK THE OTHER ISSUE THAT WE WANT TO MAKE SURE TO ALERT

4    YOUR HONOR TO UNDER COMCAST, IS THAT THEIR DAMAGES MODEL, IT

5    WILL INCLUDE INDIVIDUALS WHO HAVEN'T BEEN HARMED.

6         AND SO BASICALLY, THE WAY THAT I UNDERSTAND THEIR DAMAGES

7    MODEL TO WORK, IS THAT THEY WILL CONDUCT A CONJOINT SURVEY THAT

8    WILL COMPARE CONSUMER WILLINGNESS TO PAY BASED ON WHETHER OR

9    NOT A CONSUMER RECEIVES CERTAIN DISCLOSURES ABOUT THE

10   POSSIBILITY OF FALSE ACCEPTS AND THE DISCLOSURE OF RECORDINGS

11   FOR HUMAN REVIEW.  AND SO IT'S THE COMPARISON BETWEEN THAT

12   DISCLOSURE AND NOT HAVING THAT DISCLOSURE.

13        BUT FOR THE SAME REASONS THAT WE DISCUSSED IN OUR

14   ARGUMENTS ABOUT CONSENT, THERE ARE MANY USERS WHO ALREADY

15   RECEIVED THAT DISCLOSURE BEFORE THEY WOULD PURCHASE A DEVICE.

16   AND THE CONJOINT SURVEY DOESN'T TAKE THAT INTO CONSIDERATION.

17        SO IT'S NOT AN ISSUE OF RELIANCE, IT'S AN ISSUE OF THE

18   DAMAGES MODEL, INCLUDING PEOPLE WHO HAVEN'T BEEN HARMED.

19   BECAUSE PEOPLE WHO ALREADY KNOW THAT WHEN THEY PURCHASE THE

20   DEVICE, HAVE RECEIVED THE BENEFIT OF THE BARGAIN.

21             THE COURT:  BUT THAT GOES TO THE PURCHASER CLASS,

22   THAT'S WHAT YOU ARE SPEAKING TO?

23             MS. EARL:  OUR UNDERSTANDING IS THAT THE PRICE

24   PREMIUM DAMAGES MODEL IS ONLY TO THE PURCHASER CLASS.

25             THE COURT:  SO IT REALLY SEEMS THAT YOU ARE ARGUING

1    THAT EVEN IF MR. KUMANDAN IS A VALID CLASS MEMBER FOR THE

2    PURCHASER CLASS, THE CLASS STILL FAILS UNDER DAMAGES MODEL.

3            MS. EARL:  THAT ABSOLUTELY IS OUR POSITION,

4    YOUR HONOR.

5            THE COURT:  OKAY.

6        THE ISSUE ON THE PROFITS, I THINK THAT REALLY JUST GOES TO

7    PROOF, I DON'T THINK THAT WAS A CLASS ISSUE, I DON'T THINK IT

8    WAS A METHODOLOGY ISSUE.

9        SO THEN WE STILL HAVE STATUTORY DAMAGES, NOMINAL

10   DAMAGES -- LET'S SEE, I THINK THOSE ARE THE OTHER TWO.  DID YOU

11   HAVE ANY COMMENTS ON THOSE?

12           MS. EARL:  I DID, YOUR HONOR.

13       AS TO THE PROFITS, I DO THINK WE HAVE A METHODOLOGY ISSUE,

14   BECAUSE EVEN IF YOU WERE TO ACCEPT MR. TORRES'S APPROACH TO

15   CALCULATING PROFITS, HE HASN'T FIGURED OUT A WAY TO ASSIGN

16   WHICH PERCENTAGE OF ANY SUCH PROFITS WOULD BE ATTRIBUTABLE TO

17   FALSE ACCEPTS.  AND IN PARTICULAR, TO ACTIONABLE FALSE ACCEPTS.

18       BECAUSE MY UNDERSTANDING IS THAT THE DISGORGEMENT OF

19   PROFITS DAMAGES MODEL IS FOR THE INVASION OF PRIVACY AND

20   INTRUSION UPON SECLUSION CLAIMS, AND IT'S BEING BROUGHT FOR THE

21   PRIVACY CLASS.

22       SO EVEN IF IT WERE TRACEABLE TO FALSE ACCEPTS, WHICH IT

23   JUST ISN'T, THEN YOU STILL HAVE AN ISSUE OF INCLUDING WITHIN

24   IT, BOTH ACTIONABLE FALSE ACCEPTS AND NON-ACTIONABLE FALSE

25   ACCEPTS, SUCH AS THOSE TO WHICH THE USER CONSENTED OR IN WHICH

1         THE USER DIDN'T HAVE A REASONABLE EXPECTATION OF PRIVACY.

2             SO THERE IS STILL A COMCAST ISSUE AS TO THE DISGORGEMENT

3     OF PROFITS THEORY.

4             AND I THINK IF YOU LOOK AT THE CAMPBELL V. FACEBOOK CASE

5     THAT DISCUSSES STATUTORY DAMAGES, IT ALSO TALKS ABOUT THE

6     PROFIT.

7                 THE COURT:  YES.

8                 MS. EARL:  AND SO ON STATUTORY DAMAGES, I THINK FOR

9     THE SAME REASONS WE WERE TALKING ABOUT IN CONNECTION WITH THE

10    REASONABLE EXPECTATION OF PRIVACY, AND CONSENT, THOSE

11    INDIVIDUALIZED ISSUES WILL PERSIST INTO THE ASSESSMENT OF

12    WHETHER STATUTORY DAMAGES ARE APPROPRIATE.

13            AND I THINK THAT'S TRUE EVEN IF THE SCA CLASS WERE

14    EXPANDED, AS PLAINTIFFS HAVE PROPOSED, TO INCLUDE -- AS YOU

15    KNOW, WE ARGUE THAT THEIR DEFINITION OF THE SCA CLASS IS

16    IMPROPER BECAUSE IT ISN'T LIMITED TO THE DISCLOSURE OF FALSE

17    ACCEPTS TO HUMAN REVIEWERS, IT'S DEFINED AS ANY TIME ANY AUDIO

18    RECORDING IS PROVIDED TO A HUMAN REVIEWER, AND THAT'S

19    INCONSISTENT WITH THE CLAIMS THAT HAVE BEEN ALLEGED IN THE

20    COMPLAINT.

21            BUT EVEN IF IT WERE EXPANDED, THEN YOU HAVE A BIGGER

22    PREDOMINANCE PROBLEM WITH THE APPROPRIATENESS OF THE STATUTORY

23    DAMAGES FOR THE SCA CLASS.

24            AND THEN AS TO NOMINAL DAMAGES, THAT ARGUMENT WAS MADE IN

25    THE ALTERNATIVE IN A FOOTNOTE.  SO I DON'T KNOW THE EXTENT TO

1    WHICH THE PLAINTIFFS ARE TRULY PURSUING IT.  BUT WE WOULD

2    DISAGREE THAT NOMINAL DAMAGES ARE AN APPROPRIATE DAMAGES THEORY

3    FOR ANY OF THE CLASSES HERE.

4              THE COURT:  OKAY.

5        OKAY.  DOES THAT BRING US TO AN END TO THE ISSUES YOU

6    WANTED TO TOUCH?

7              MS. EARL:  I THINK SO, YOUR HONOR.

8        I THINK WE HAVE DISCUSSED ALL THE ISSUES THAT YOUR HONOR

9    RAISED.

10             THE COURT:  OKAY.  YES, IT IS.

11       AND WAS THERE ANYTHING ELSE YOU FELT THAT I SHOULD PAY

12   ATTENTION TO FROM YOUR BRIEFING?

13             MS. EARL:  I DID WANT TO BRIEFLY TOUCH ON THE

14   ARGUMENT ABOUT THE NAMED PLAINTIFFS IN THE SCA STANDING, AND

15   STANDING FOR THEIR SCA CLAIMS.

16       BASICALLY THIS GOES BACK TO -- IT'S SIMILAR TO WHAT WE

17   WERE DISCUSSING WITH RESPECT TO MS. SPURR.  AND SO TO THE

18   EXTENT THE PLAINTIFFS ARE GOING TO TRY TO HAVE CLASS MEMBERS

19   WHOSE VOICES WERE RECORDED AND ACCOUNTS THAT AREN'T THEIRS, WE

20   DO THINK THAT CREATES A REAL STANDING PROBLEM, BECAUSE ANY

21   RECORDING THAT WAS PROVIDED TO HUMAN REVIEWERS WAS

22   DEIDENTIFIED.  BUT CERTAINLY AS TO ANY PERSON WHO WASN'T EVEN

23   ASSOCIATED WITH THE ACCOUNT, LIKE COULD NOT BE REIDENTIFIED BY

24   HAVING THEIR INFORMATION PROVIDED TO HUMAN REVIEWERS.

25             SO WE THINK THERE'S A SUSTAINING PROBLEM AS TO THAT SCA

1    CLAIM AS WELL.

2            THE COURT:  SO FOR THE SCA CLASS, IF I LEAVE IT AS

3    OPTED-IN USERS, SHE WAS NOT OPTED IN TO THE VAA AS DEFINED,

4    CORRECT?

5            MS. EARL:  THAT IS CORRECT.

6        HER -- HER ACCOUNTS WERE NEVER OPTED IN TO VAA.  HER

7    HUSBAND'S ACCOUNT, AT ONE POINT, WAS OPTED IN TO VAA, AND

8    THAT'S WHERE THE RECORDINGS AND SPEECH LOGS THAT PLAINTIFFS ARE

9    REFERRING TO CAME FROM.  THEY WEREN'T FROM HER ACCOUNT.

10           THE COURT:  OKAY.  ALL RIGHT.

11       I HAVE OTHER CASE MANAGEMENT TO DO, SO I JUST -- ALL

12   RIGHT.

13       SO MR. LEVIS, FINAL WORDS, BUT REALLY QUITE SHORT, I'M

14   AFRAID.

15           MR. LEVIS:  YEAH.  I APPRECIATE THAT.

16       I WILL KEEP IT VERY SHORT TO TRY TO FOCUS ON A FEW KEY

17   POINTS.

18       I THINK WITH THE VAA AND WAA ISSUE, THE WAA CONSENT IS

19   RELEVANT HERE AND DOES ADDRESS SOME OF THE ISSUES YOUR HONOR

20   WAS TALKING ABOUT.  IT DOES SHOW THE HOT WORDS, IT DOES PROVIDE

21   FULL TRANSCRIPTS OF THE RECORDINGS AND IT CAN BE USED TO

22   EXACTLY WHAT WE ARE TALKING ABOUT.

23       THE VAA CONSENT ONLY DETERMINES HOW LONG THE AUDIO IS

24   STORED.  SO IF YOU OPTED IN TO WAA BUT NOT VAA, FOR EXAMPLE, AS

25   PLAINTIFF SPURR DID, THE EXHIBIT WE SUBMITTED, EXHIBIT 30, IS A

1    SPEECH LOG FROM HER ACCOUNT WHERE SHE OPTED IN TO WAA THAT

2    SHOWS ALL OF THE FULL TRANSCRIPTS OF THE RECORDINGS, DATE,

3    TIME, EVERYTHING.

4              THE COURT:  TRANSCRIPTS, RIGHT.

5              MR. LEVIS:  TRANSCRIPTS, YES.

6         AND I'M LOOKING AT THEM, AND I WON'T SHOW THE WHOLE THING

7    BECAUSE OF THE TIME AND THE ISSUES WITH SEALING THE COURTROOM.

8    BUT ROW 50 IN THIS THING SAYS "HEY GOOGLE, PLAY FELIZ

9    COMPLEAÑOS."  SO IT VERY CLEARLY ILLUSTRATES WHEN THERE WAS A

10   HOT WORD, WHEN THERE WAS NOT A HOT WORD, IT CAN BE USED TO DO

11   EXACTLY WHAT WE ARE TALKING ABOUT USING LOGGING DATA.

12             THE COURT:  BUT DOES IT SHOW ANY TRANSCRIPTS WHERE IT

13   DIDN'T SAY "HEY GOOGLE" BECAUSE THAT'S OBVIOUSLY A HOT WORD.

14             MR. LEVIS:  CORRECT.  IT DOES.

15        AND IT SHOWS THINGS THAT JUST LOOK LIKE TIMES WHERE PEOPLE

16   ARE SAYING "ME, ME," "HEY DO YOU WANT TO TAKE AN ADVENTURE WITH

17   ME IN THE CAR."  I'M JUST READING THINGS THAT DON'T HAVE "HEY

18   GOOGLE" IN IT, WHICH WOULD BE FALSE ACCEPTS THAT WE WOULD

19   IDENTIFY, BASED ON JUST THIS LOG THAT IS A WAA-RELATED LOG.

20        AND SO I THINK THE WAA CONSENT --

21             THE COURT:  THAT'S YOUR EXHIBIT 30.  AND IS THAT IN

22   THE REPLY WITH THE REPLY PAPERS?

23             MR. LEVIS:  IT IS.  IT WAS SUBMITTED WITH OUR OPENING

24   BRIEF.

25             THE COURT:  OKAY.  THAT'S EXHIBIT 30.  I WILL TAKE A

1      LOOK AT THAT.  THAT IS A WAA?

2           MR. LEVIS:  THAT IS A WAA, THAT IS FROM PLAINTIFF

3      SPURR'S ACCOUNT, HER HOME.

4           THE ISSUE WITH WHERE THE AUDIO FILE IS STORED, I JUST WANT

5      TO TOUCH ON THAT BRIEFLY.  MS. EARL TALKED ABOUT ALL THE LOGS

6      COME FROM MR. SPURR'S ACCOUNT AND THOSE ARE THE ONLY ONES

7      LINKED TO THOSE DEVICES.  THAT'S ACTUALLY NOT CORRECT.

8           SO WE SUBMITTED WITH THE REPLY, EXHIBIT 2, THE PRINTOUT OF

9      THE GOOGLE HOME SETTINGS FOR PLAINTIFF SPURR AND HER HUSBAND.

10     BOTH OF THE PLAINTIFFS THERE ARE ASSOCIATED WITH ALL OF THE

11     DEVICES IN THEIR HOME.  THEY ARE BOTH IDENTIFIED BY E-MAIL

12     ADDRESS AS OWNER AND AS CREATOR OF EACH DEVICE THAT IS IN THEIR

13     HOUSE.

14          NOW THAT GOOGLE STORES THE AUDIO FROM THEM IN ONE PERSON'S

15     LOCATION, WOULD NOT NEGATE THE VIOLATION OF MELISSA SPURR'S

16     PRIVACY BECAUSE THE RECORDING THAT'S SHARED IS HER VOICE.

17          SO WE DON'T VIEW THE ASSOCIATION OF THE AUDIO FILE UNDER

18     HER HUSBAND'S ACCOUNT AS BEING RELEVANT TO HER ABILITY TO BRING

19     THE CLAIM OR TO REPRESENT ANY OF THE CLASSES BASED ON THE

20     SHARING OF THAT AUDIO.

21          ON THE ARBITRATION POINT, JUST BRIEFLY, I WILL NOTE THAT

22     WHILE WE UNDERSTAND THAT -- WE'VE TALKED ABOUT THIS A LITTLE

23     BIT -- WE THINK THERE IS AN ISSUE IN THAT THE CONTRACTS, THE

24     TERMS OF SERVICE AND PRIVACY POLICY REQUIRE THE CLAIMS HERE TO

25     BE BROUGHT IN CALIFORNIA COURT IN THIS DISTRICT.

1          AND SO IT MAY BE THAT GOOGLE WANTS TO ASSERT THE

2     ARBITRATION PROVISION, BUT THAT WOULD SEEM TO CONFLICT DIRECTLY

3     WITH THE CONTRACT THEY BOUND THESE USERS BY, WHICH IS TO TELL

4     THEM THEY HAVE TO FILE THEIR CLAIMS IN THIS DISTRICT IN

5     SAN JOSE AGAINST THEM.  WE THINK THAT'S VERY PROBLEMATIC FOR

6     THE ARBITRATION DEFENSE.

7          THE COURT:  THAT'S HELPFUL.  THANK YOU.

8          MR. LEVIS:  I WILL ALSO SAY THAT ON THE NOTICE POINT,

9     WHEN GOOGLE WANTS TO PROVIDE NOTICE, THEY KNOW HOW TO DO IT.  I

10    WOULD DIRECT YOUR HONOR TO THE IN RE GMAIL LITIGATION WHERE

11    THERE WAS AN EXTENSIVE ADVERTISING CAMPAIGN AND DECLARATION

12    TESTIMONY GOING TO THE SPECIFICS OF A MULTIPOINT NOTICE PLAN

13    THAT DEMONSTRATED THAT MILLIONS OF USERS HAD NOT ONLY SEEN, BUT

14    CLICKED AND READ SPECIFIC DISCLOSURES THAT GOOGLE MADE ABOUT

15    CHANGES TO THE GMAIL PRODUCT WHEN THEY SOUGHT TO RAISE THIS

16    KIND OF NOTICE AND CONSENT ARGUMENT.

17         THERE'S NOTHING CLOSE TO THAT HERE.  AND IN ANY EVENT,

18    NOTICE IS NOT AN ISSUE FOR THE BREACH OF CONTRACT CLASS OR THE

19    CLAIM AT ALL BECAUSE THEY BREACHED THE CONTRACT BY HAVING FALSE

20    ACCEPTS OR BY NOT INFORMING PEOPLE OF THE PRACTICE THAT THEY

21    ARE DISCLOSING.

22         THE COURT:  WELL, OKAY.  SO WE ARE NOT GETTING INTO

23    WHETHER YOU CAN PROVE THE CLAIM, I'M GETTING INTO WHETHER YOU

24    HAVE A CLASS REP.

25         MR. LEVIS:  UNDERSTOOD.

1    THEN -- YEAH, I THINK THERE'S A SERIOUS PROBLEM ON THE

2    KIND OF CLASS INDIVIDUAL ISSUE GOOGLE TRIES TO CREATE IN

3    ASSUMING THAT SOMEONE EITHER SAW LIGHT AND UNDERSTOOD THAT

4    THERE WAS A FALSE ACCEPT, OR IN ANY EVENT, THAT INDIVIDUALS

5    WOULD HAVE RECOGNIZED THE FALSE ACCEPT AND THEN UNDERSTOOD THE

6    FULL EXTENT OF WHAT THEY MEANT, WHICH IS THAT THEY WERE TAKING,

7    TESTING, USING THE AUDIO FOR TRAINING OR DISCLOSING IT TO THIRD

8    PARTIES.

9    THERE'S NO INDICATION, AND EVEN IF YOU FIGURED OUT THAT

10    THERE WAS A FALSE ACCEPT HERE, THAT YOU WOULD HAVE PICKED UP ON

11    ALL OF THE OTHER THINGS GOOGLE WAS DOING THAT WAS NEVER

12    DISCLOSED.  AND I THINK THAT DEFEATS THEIR INDIVIDUALIZED ISSUE

13    ARGUMENT.

14    THAT GOES TO THE SAME POINT THEY WERE MAKING ABOUT

15    COMCAST, BUT ALSO ON THE SURVEY MODEL, I THINK MS. EARL IS

16    INCORRECT ABOUT HOW THE CONJOINT ANALYSIS WORKS.

17    TO THE EXTENT THERE WAS ANYBODY IN THE UNIVERSE THAT

18    UNDERSTOOD THIS AND SAW THE NOTICE AND WOULD HAVE, BY HER

19    POSITION, HAD NO HARM, THE SURVEY METHODOLOGY IS DESIGNED TO

20    SAMPLE AND COME UP WITH A MARKET PRICE, SUCH THAT THOSE PEOPLE

21    WOULD HAVE BEEN IN THE SAMPLE IF THEY EXISTED, AND THE NUMBER

22    REFLECTED IT NOT CALCULATING OR COMING UP WITH ANYONE WHO

23    DOESN'T HAVE DAMAGES, IT'S SIMPLY REPRESENTING WHAT THE MARKET

24    WOULD PAY FOR THAT AT A GIVEN TIME.

25    SO THE SAMPLING METHODOLOGY IS NOT IMPACTED BY THOSE

1    ISSUES, EVEN IF THEY DID EXIST, AND WE THINK THAT THEY DON'T.

2         UNLESS YOU HAVE ANY OTHER QUESTIONS, THAT'S ALL I HAVE TO

3    SAY.

4         THE COURT:  WELL, THANK YOU BOTH.

5         SO MR. LEVIS, I'M GOING TO RECEIVE FROM YOU THIS ANNOTATED

6    LIST OF COMMON QUESTIONS FOR THE PREDOMINANCE ARGUMENT.  YOU

7    ARE GOING TO CITE TO THE PAGE IN YOUR OPENING BRIEF WHERE YOU

8    RAISED IT, AND YOU ARE GOING TO TELL ME WHAT CLAIM THAT GOES TO

9    IN THE OPERATIVE PLEADING.

10         MR. LEVIS:  SURE.

11         THE COURT:  AND I GUESS YOU NEED TO TELL ME WHAT

12    CLASS THAT WOULD PERTAIN TO.

13         OKAY.  AND IT DOES APPEAR THAT EVEN AT THE BEST, THAT I

14    WOULD BE LOOKING AT THREE CLASSES AND NO SUBCLASSES AT THIS

15    POINT.

16         AND I STILL HAVE RESERVATIONS, BUT I'VE DONE A LOT OF

17    READING AND I HAVE A LOT MORE TO DO.

18         THANK YOU BOTH REALLY FOR VERY THOROUGH ARGUMENT, YOU'VE

19    RESPONDED TO MY QUESTIONS AND I REALLY APPRECIATE THAT.  IT'S

20    GOING TO TAKE ME SOME TIME TO WORK THROUGH THIS, BUT WE ALSO

21    SET THIS FOR FURTHER CASE MANAGEMENT, AND I'M GOING TO TURN TO

22    THAT NOW.

23         I'M RELUCTANT TO SET NEW DATES BECAUSE I DON'T -- BUT I

24    WILL -- I DON'T WANT YOU TO HAVE TO START BACK TO THE SUMMARY

25    JUDGEMENT UNTIL I'VE DECIDED THE CLASS CERT ISSUE.

1    SO THIS MAY BE SUBJECT TO MODIFICATION, BUT I DID HAVE AN

2    OPENING IN 2023, I'M SETTING CASES IN MID-2025 NOW.  I DIDN'T

3    WANT YOU TO BE PREJUDICED THAT MUCH.

4        AND MS. EARL, I APPRECIATE THAT YOU DID ALL OF YOUR WORK

5    TO COMPLY WITH YOUR LAST DAY FOR SUMMARY JUDGEMENT.  AS I SAID

6    IN MY ORDER, I DIDN'T PUT IT ALL TOGETHER AT THE TIME I

7    APPROVED THE STIPULATED CONTINUANCE OF THE CLASS CERT, BUT

8    ESPECIALLY WHEN I SAW HOW COMPLICATED THIS WAS, IT MADE NO

9    SENSE FOR US TO BE DEALING WITH SUMMARY JUDGEMENT NOW.

10       SO THANK YOU FOR YOUR HARD WORK, I KNOW THAT THAT WAS A

11   DISAPPOINTMENT TO YOU, IF NOT WORSE, BUT I JUST WANTED TO

12   ADDRESS IT.

13       SO I AM ABLE TO RESET YOUR TRIAL ON SEPTEMBER 11TH OF

14   2023.  SO THAT'S VERY LONG FROM NOW, THAT'S LESS THAN A YEAR,

15   IS THAT GOING TO WORK FOR YOU?  BECAUSE OTHERWISE I PROBABLY AM

16   LOOKING AT 2025 AND I DON'T HAVE DATES RIGHT NOW TO GIVE TO

17   YOU.

18           MS. EARL:  THAT'S FINE, YOUR HONOR.

19           MR. LEVIS:  YES, YOUR HONOR.

20           THE COURT:  OKAY.

21       I'M GOING TO SET YOUR FINAL PRETRIAL CONFERENCE ON

22   AUGUST 3 OF 2023 AT 1:30 IN THE AFTERNOON.  AND I'M GOING TO

23   HEAR YOUR SUMMARY JUDGEMENT MOTION ON APRIL 27TH OF 2023.

24       THE PLAINTIFFS NEVER FILED BEFORE I VACATED DATES, SO YOU

25   MAY NOT FILE SUMMARY JUDGEMENT, IT'S JUST I'M GOING TO LET YOU

1        RE-FILE THE ONE THAT YOU HAD, MS. EARL, IN TIME FOR THE

2        APRIL 27TH HEARING.  I WILL RESERVE THAT DATE FOR YOU.  BUT I

3        TERMINATED THE MOTION, AND BASED ON MY CLASS CERT ORDER, YOU

4        WILL BE FREE TO REDRAFT THAT AS YOU WISH.

5            I'M GOING TO -- I THINK BASED ON THE COMPLEXITY OF THIS

6        CASE, THAT I'M GOING TO REQUIRE THAT YOU WORK OUT A BRIEFING

7        SCHEDULE THAT IS AT LEAST A LITTLE BIT MORE COMFORTABLE THAN

8        THE BEAR 35 DAYS.

9            I'M NOT GOING TO SUGGEST ANYTHING, I NEED THE CLOSING

10       BRIEF TWO WEEKS BEFORE THE HEARING, BUT I THINK THIS IS PRETTY

11       COMPLICATED, AND I THINK THAT YOU OUGHT TO EXPAND THAT AT LEAST

12       BY TWO WEEKS, BUT MAYBE MORE.

13           SO I'M GOING TO ASK THE TWO OF YOU TO MEET AND CONFER AND

14       WORK OUT A BRIEFING SCHEDULE FOR SUMMARY JUDGEMENT.  YOU ARE

15       WELCOME TO WAIT UNTIL YOU SEE MY CLASS CERT.  IF I DON'T

16       CERTIFY A CLASS, YOU MAY BE ASKING ME TO VACATE THESE DATES.  I

17       DON'T KNOW WHAT YOU WILL WANT TO DO.  AND I MAY CERTIFY ONE

18       CLASS AND NOT THE OTHER, THAT'S CERTAINLY POSSIBLE AS WELL.  I

19       DON'T LOOK AT IT AS ALL OR NOTHING.  BUT I CAN'T -- IT MAY BE

20       ALL, BUT NOT BECAUSE OF A SINGLE REASON IS REALLY WHAT I'M

21       SAYING.

22           OKAY.  THANK YOU AGAIN.  AND YOU WILL GET MY ORDER, IT'S

23       GOING TO TAKE ME A WHILE TO WORK THROUGH THIS.

24               MR. LEVIS:  I HAVE ONE QUESTION BEFORE WE GO.

25               THE COURT:  YES.

1          MR. LEVIS:  WHAT DATE WOULD YOU LIKE THE CHART OF THE

2     PREDOMINANCE QUESTIONS BY?

3          THE COURT:  OH, LET'S SEE, COULD I HAVE THAT IN TWO

4     WEEKS?

5          MR. LEVIS:  SURE.

6          THE COURT:  I DON'T KNOW WHAT THAT DATE IS.

7          MS. EARL:  AND YOUR HONOR, ON THAT POINT, ARE

8     DEFENDANTS GOING TO BE ALLOWED TO RESPOND TO THAT FILING?

9          THE COURT:  NO.

10        I WILL REQUIRE -- I WILL TELL YOU THIS; MR. LEVIS, I'M

11    GOING TO REQUIRE THAT YOU SEND THAT CHART TO MS. EARL, IT'S NOT

12    THAT IT HAS TO BE A STIPULATED CHART, BUT YOU HAVE TO PINPOINT

13    WHERE IT IS IN YOUR OPENING BRIEF, AND I WILL LET HER POINT OUT

14    TO YOU THAT THAT QUESTION ISN'T IN YOUR BRIEF.

15        IF I GO TO YOUR BRIEF AND IT'S NOT THERE, I WILL JUST EXIT

16    OUT.  SO SHE WILL BE DOING YOU A GREAT SERVICE.  BUT I WILL

17    CROSSCHECK IT, BUT NO, THE BRIEFING IS DONE, I'M JUST ASKING

18    MR. LEVIS TO EXTRACT THAT FOR ME, BECAUSE I WAS UNABLE, I JUST

19    GOT LOST IN THE THICKET ON ALL OF THAT.

20         MR. LEVIS:  SURE.

21         THE COURT:  BUT I DO THINK IT'S FAIR FOR MS. EARL TO

22    HAVE THE CHANCE TO CALL OUT TO YOU WHERE SHE THINKS THAT YOU

23    DIDN'T -- AND THE TRUTH IS IN WHEN YOU HAVE TO GIVE ME THE PAGE

24    AND LINE NUMBER FROM YOUR OPENING BRIEF, AND THAT WOULD BE

25    EASY.

1          MR. LEVIS:  OKAY.

2          THE COURT:  THANK YOU.  I APPRECIATE THAT.

3      OKAY.  THANK YOU AGAIN.  AND I WILL -- WELL, I WILL GET

4  THIS ORDER OUT, IT'S GOING TO TAKE ME QUITE A WHILE, SO THANK

5  YOU.

6          (THE PROCEEDINGS WERE CONCLUDED AT 11:25 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 10/24/22