# EXHIBIT BU

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN JOSE DIVISION
 4
 5   IN RE GOOGLE ASSISTANT PRIVACY
 6   LITIGATION.                        Case No.
 7                                      5:19-CV-04286-BLF
 8   _____/
 9
10            *** HIGHLY CONFIDENTIAL ***
11      VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
12                FERNANDO TORRES, MSc
13             WEDNESDAY, SEPTEMBER 7, 2022
14                      VOLUME I
15
16
17
18
19
20
21
22   STENOGRAPHICALLY REPORTED BY:
23   MEGAN F. ALVAREZ, RPR, CSR No. 12470
24   JOB NO. 5410341
25   PAGES 1 - 288
```

HIGHLY CONFIDENTIAL

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3                        SAN JOSE DIVISION
 4
 5   IN RE GOOGLE ASSISTANT PRIVACY
 6   LITIGATION.                         Case No.
 7                                       5:19-CV-04286-BLF
 8   _____/
 9
10          VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
11   FERNANDO TORRES, MSc, Volume I, taken on behalf of
12   Defendants, VIA REMOTE COUNSEL.  Deponent testifying
13   from Santa Fe, New Mexico, beginning at 10:05 a.m. and
14   ending at 6:08 p.m. Mountain Standard Time, on
15   Wednesday, September 7, 2022, before Megan F. Alvarez,
16   RPR, Certified Shorthand Reporter No. 12470.
17
18
19
20
21
22
23
24
25
                                                      Page 2
```

```
 1   scenario.                                                    14:03:43

 2   BY MR. POTESTA:                                              14:03:44

 3       Q.   And what do you mean by "a simplified               14:03:53

 4   scenario"?                                                   14:03:56

 5       A.   Well, in this case, I'm not specifying any          14:03:57

 6   specific price or quantity amount or -- and the              14:04:04

 7   supply and demand functions are illustrations of the         14:04:11

 8   textbook supply and demand functions that would              14:04:16

 9   correspond to this market.  They're just meant to            14:04:19

10   illustrate the point they're not the methodology --          14:04:22

11   they're not, of course, in the calculation.                  14:04:25

12       Q.   So these two figures would be relevant to           14:04:33

13   illustrate concepts in your price premium                    14:04:35

14   methodology; is that right?                                  14:04:38

15       A.   That's -- that's the intention.                     14:04:42

16       Q.   And the price premium calculation, if I             14:04:49

17   remember correctly, it would apply to the breach of          14:04:50

18   contract damages for the purchaser class?                    14:04:52

19       A.   Correct.                                            14:05:03

20       Q.   If we look on page 21, it looks like the            14:05:03

21   second full sentence, you say:  "Supply is depicted          14:05:06

22   as a horizontal line as is typical in digital                14:05:10

23   services because the supplier is able to offer any           14:05:14

24   level without a significant increase in unit costs           14:05:16

25   in the relevant quantity range."                             14:05:19
```

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Do you see that? | 14:05:22 |
| 2 | A. Yes. | 14:05:23 |
| 3 | Q. Mr. Torres, did you do any independent | 14:05:27 |
| 4 | analysis of the supply of Google Assistant-enabled | 14:05:29 |
| 5 | devices? | 14:05:34 |
| 6 | A. No. | 14:05:39 |
| 7 | Q. Mr. Torres, did you review any documents | 14:05:42 |
| 8 | related to the supply of Google Assistant-enabled | 14:05:44 |
| 9 | devices? | 14:05:50 |
| 10 | A. Some of the documents that I reviewed have | 14:05:51 |
| 11 | information that would be considered as part of the | 14:05:54 |
| 12 | supply aspect of those devices. But the -- the core | 14:05:57 |
| 13 | of the analysis is not to further extract the supply | 14:06:07 |
| 14 | function of any kind from Google. | 14:06:10 |
| 15 | Q. And why is that the case, that the core of | 14:06:20 |
| 16 | the analysis is not to extract the supply function | 14:06:22 |
| 17 | of any kind from Google? | 14:06:26 |
| 18 | A. That's not the purpose of the report, | 14:06:27 |
| 19 | it -- which is to set out a methodology to determine | 14:06:32 |
| 20 | damages if liability is proven and class membership | 14:06:39 |
| 21 | is determined by the court. | 14:06:43 |
| 22 | Q. And in determining damages, you're trying | 14:06:48 |
| 23 | to identify a price premium; is that correct? | 14:06:51 |
| 24 | MR. LEVIS: Objection. Misstates the | 14:06:53 |
| 25 | testimony. | 14:06:54 |

Page 129

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | THE WITNESS:  In identifying the damages | 14:07:00 |
| 2 | methodology, I'm stating that a price premium is a | 14:07:01 |
| 3 | proper methodology to calculate breach of contract | 14:07:06 |
| 4 | damages in this situation. | 14:07:12 |
| 5 | BY MR. POTESTA: | 14:07:22 |
| 6 | Q.   And to determine the price of | 14:07:22 |
| 7 | Google Assistant-enabled devices, would you need to | 14:07:25 |
| 8 | consider supply? | 14:07:30 |
| 9 | A.   No.  I would need to consider the price | 14:07:31 |
| 10 | information from Google.  Because we're not dealing | 14:07:35 |
| 11 | with a hypothetical theoretical construct like in | 14:07:43 |
| 12 | those two figures; we're dealing with an actual | 14:07:46 |
| 13 | market transaction. | 14:07:48 |
| 14 | Q.   Does a horizontal supply curve have | 14:07:55 |
| 15 | anything to do with the marginal cost of the | 14:07:58 |
| 16 | supplier? | 14:08:00 |
| 17 | A.   Yes. | 14:08:05 |
| 18 | Q.   In what way? | 14:08:09 |
| 19 | A.   Well, in the conventional -- in the | 14:08:12 |
| 20 | conventional analysis microeconomics, in perfect | 14:08:19 |
| 21 | competition, the supply function would be exactly | 14:08:25 |
| 22 | the marginal cost function of the supplier. | 14:08:34 |
| 23 | Not just the supplier; it would be of a | 14:08:39 |
| 24 | whole bunch of suppliers that would be sufficient to | 14:08:41 |
| 25 | probe this perfect market. | 14:08:45 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | in the report, and that's not an assumption that I'm | 17:29:23 |
| 2 | making. | 17:29:24 |
| 3 | BY MR. POTESTA: | 17:29:33 |
| 4 | Q.   What basis do you have to assume that | 17:29:35 |
| 5 | Google Assistant would be -- the Google Assistant | 17:29:37 |
| 6 | business would have a profitability ratio of | 17:29:37 |
| 7 | 43.1 percent? | 17:29:42 |
| 8 | MR. LEVIS:  Objection.  Vague. | 17:29:45 |
| 9 | THE WITNESS:  I'm not stating that | 17:29:48 |
| 10 | anywhere. | 17:29:49 |
| 11 | BY MR. POTESTA: | 17:29:58 |
| 12 | Q.   So why do you include 43.1 in your report? | 17:29:59 |
| 13 | MR. LEVIS:  Objection.  Asked and | 17:30:02 |
| 14 | answered. | 17:30:02 |
| 15 | THE WITNESS:  I'm including it as an | 17:30:03 |
| 16 | approximation to the level of profit expectations | 17:30:07 |
| 17 | that would be consistent with the above investments | 17:30:09 |
| 18 | in the table. | 17:30:12 |
| 19 | BY MR. POTESTA: | 17:30:13 |
| 20 | Q.   The level of profit expectations for what? | 17:30:16 |
| 21 | A.   For the Google Assistant operation. | 17:30:21 |
| 22 | Q.   And let's turn to page 34 of your report. | 17:30:34 |
| 23 | Actually, real quick, let's flip to | 17:30:37 |
| 24 | page 33, Table 3. | 17:30:45 |
| 25 | A.   Okay. | 17:30:50 |

Page 257

| | | | |
|---|---|---|---|
| 1 | Q. | And in the first column, you say total | 17:30:51 |
| 2 | | expected profit at 43.1 percent. | 17:30:52 |
| 3 | | Do you see that? | 17:30:55 |
| 4 | A. | Yes. | 17:30:55 |
| 5 | Q. | Then, as we just discussed, the total | 17:30:57 |
| 6 | | expected profit could potentially be higher or lower | 17:30:59 |
| 7 | | than 43.1 percent; is that right? | 17:31:02 |
| 8 | A. | Within the expected profit for the | 17:31:06 |
| 9 | | Assistant business, yes. | 17:31:10 |
| 10 | Q. | And if we move over to the next column, it | 17:31:13 |
| 11 | | says "Attribution to class at 3 percent." | 17:31:15 |
| 12 | | Do you see that? | 17:31:19 |
| 13 | A. | Yes. | 17:31:19 |
| 14 | Q. | And as we discussed, you used the | 17:31:20 |
| 15 | | 3 percent number as an example, right? | 17:31:22 |
| 16 | A. | Yes. | 17:31:24 |
| 17 | Q. | You didn't have a basis in the record for | 17:31:24 |
| 18 | | that 3 percent number? | 17:31:26 |
| 19 | A. | I didn't. | 17:31:30 |
| 20 | Q. | And if we move over to "Attribution to the | 17:31:31 |
| 21 | | class at 6 percent," that's also a number that you | 17:31:33 |
| 22 | | assumed? | 17:31:37 |
| 23 | A. | The position of 6 percent, you mean? | 17:31:38 |
| 24 | Q. | Yes. | 17:31:46 |
| 25 | A. | Yes, that's the same situation. | 17:31:46 |

| | | | |
|---|---|---|---|
| 1 | Q. | Right. | 17:31:49 |
| 2 | | So you don't have a basis in the record | 17:31:49 |
| 3 | for that 6 percent number? | | 17:31:50 |
| 4 | A. | Correct. | 17:31:53 |
| 5 | Q. | Let's move to page 34. | 17:31:57 |
| 6 | A. | Okay. | 17:32:08 |
| 7 | Q. | That's a section that's discussing the | 17:32:08 |
| 8 | market value for speech data. | | 17:32:09 |
| 9 | | And why do you consider the market value | 17:32:14 |
| 10 | for speech data, Mr. Torres? | | 17:32:16 |
| 11 | A. | In order to determine the value of the | 17:32:25 |
| 12 | speech data captured from the false accepts as an | | 17:32:27 |
| 13 | avoided cost, that would be an alternative | | 17:32:33 |
| 14 | calculation of profit. | | 17:32:36 |
| 15 | Q. | I see. | 17:32:38 |
| 16 | | So it would be an alternative to the prior | 17:32:39 |
| 17 | profit calculation that we discussed, not in | | 17:32:42 |
| 18 | addition to that calculation? | | 17:32:44 |
| 19 | | MR. LEVIS: Objection. Misstates the | 17:32:46 |
| 20 | testimony and the document. | | 17:32:46 |
| 21 | | THE WITNESS: It's an avoided cost, so | 17:32:52 |
| 22 | it's not included in the financials of the company. | | 17:32:54 |
| 23 | So it's not duplicating the profits derived from the | | 17:32:56 |
| 24 | financials. | | 17:33:03 |
| 25 | /// | | |

```
1    BY MR. POTESTA:                                          17:33:04
2        Q.   Why would class members be entitled to          17:33:04
3    both disgorgement of profits and costs avoided as a      17:33:05
4    measure of damages?                                      17:33:09
5             MR. LEVIS:  Objection.  Calls for a legal       17:33:13
6    conclusion.                                              17:33:14
7             THE WITNESS:  I'm not citing a specific         17:33:15
8    legal basis for that.  I'm just making a more            17:33:16
9    complete analysis of defendants' profits in the          17:33:20
10   case.                                                    17:33:25
11   BY MR. POTESTA:                                          17:33:25
12       Q.   Would you agree that costs avoided --           17:33:26
13   costs avoided increased profits, all things being        17:33:28
14   equal?                                                   17:33:31
15            MR. LEVIS:  Objection.  Calls for               17:33:32
16   speculation.  Lacks foundation.                          17:33:32
17            THE WITNESS:  That's -- that's what I           17:33:36
18   would mean by "avoided costs."  So it -- it goes to      17:33:37
19   the bottom line directly because it was not spent.       17:33:41
20   BY MR. POTESTA:                                          17:33:48
21       Q.   And let's turn to page 35, Mr. Torres.          17:33:49
22       A.   Okay.                                           17:33:53
23       Q.   And at the top of that page, you say:  "At      17:33:54
24   the present stage of discovery, the documentation        17:33:58
25   produced by Google to plaintiffs does not include a      17:34:01
```