1  Bobbie J. Wilson, Bar No. 148317
   BWilson@perkinscoie.com
2  Sunita Bali, Bar No. 274108
   SBali@perkinscoie.com
3  PERKINS COIE LLP
   505 Howard Street, Suite 1000
4  San Francisco, California 94105
   Telephone: +1.415.344.7000
5  Facsimile:  +1.415.344.7050

6  Erin Katherine Earl (*pro hac vice*)
   Eearl@perkinscoie.com
7  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
8  Seattle, WA 98101-3099
   Telephone: +1.206.359.8510
9  Facsimile:  +1.206.359.9510

10
   Attorneys for Defendants Alphabet Inc. and Google LLC
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 5:19-cv-04286-BLF<br><br>**DEFENDANTS ALPHABET INC. AND GOOGLE LLC'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT 331)**<br><br>Judge:   Hon. Beth L. Freeman |

Under Civil Local Rule 72-2, Federal Rule of Civil Procedure 72(a), and 28 U.S.C. § 636(b)(1)(A), Defendants Alphabet Inc. and Google LLC ("Google") respectfully move for relief from the Magistrate Judge's Order Following October 20, 2022 Discovery Hearing on Sampling Plan (the "Sampling Order"). Dkt. 331.

As written, the Sampling Order requires Google to produce the content of roughly 40 million queries,[1] including those directed to non-Assistant services (e.g., Voice Search) and those resulting from manual activations of Assistant (i.e., button presses) rather than detection of a hotword—both of which are irrelevant to this case. Beyond being vastly overbroad, requiring disclosure of the content of users' communications with Google services runs afoul of nonparties' privacy interests, including under Plaintiffs' interpretation of the Stored Communications Act, 18 U.S.C. §§ 2701, et seq. ("SCA"). Accordingly, Google respectfully submits that these portions of the Sampling Order are "clearly erroneous" and "contrary to law," Fed. R. Civ. P. 72(a), and should be modified as follows: **First**, the "random sample of 0.5% of the queries for each sample day" should be expressly limited to hotword-initiated Assistant queries. Sampling Order at 1. **Second**, the requirement that Google "turn over the entirety of each sampled query as reflected in the speech logs" should be stricken. *Id*. at 2.

## I. BACKGROUND

This case is about "false accepts," defined by Plaintiffs as "instance[s] in which Google Assistant records and transmits audio to Google without manual activation or a Hotword" (such as "Hey, Google" or "Okay, Google"). *See* Dkt. 222-1 at 1 n.6; Dkt. 141 at 58. Fact discovery effectively closed on July 8, 2022, with Google having produced over 3,000,000 pages of documents to Plaintiffs. Dkt. 218 at 1, 3. On July 12, 2022—three days before the deadline to move to compel—Plaintiffs first complained about the sufficiency of Google's production with

---

[1] This number is based on rough estimates discussed at the October 20, 2022, hearing. *See, e.g.*, Dkt. 346, Oct. 20, 2022 Hr'g Tr. at 48:11–15 ("Oct. 20, 2022 Hr'g Tr."). The actual number could be higher or lower, depending on how many queries occurred on each date to be sampled. Also, the number will be lower if the sample is limited to hotword-initiated Assistant queries.

respect to certain requests related to "false accepts," *id.* at 3–4, and on July 15, 2022, Plaintiffs and Google filed a joint letter brief, *see id.* Plaintiffs emphasized that they sought "the rate, frequency, and total number of False Accepts . . . during the Class Period." *Id.* at 1. Google responded that such comprehensive metrics do not exist because, as Google witnesses have testified, "false accepts" cannot accurately be identified without listening to each audio recording. Further, Google had already produced documents and data reflecting its best estimates of potential "false accepts." Nonetheless, Plaintiffs demanded that Google perform new analyses to determine the frequency of queries that do not include a hotword in the machine-generated text version of the query reflected in Google's "speech logs." *See* Dkt. 240 at 2–6, 9–10. Not only is this not a reliable method of measuring the rate of "false accepts," this would have required Google to analyze hundreds of terabytes of data and billions of queries. *See, e.g.*, Dkt. 289 at 39:46, 43:14–25; Oct. 20, 2022 Hr'g Tr. at 36:23–37:15.

The Magistrate Judge held multiple hearings on this dispute, *see* Dkts. 227, 273, 329, and the parties submitted additional letter briefs and status reports, *see* Dkts. 240, 311, 322, 323. Google consistently objected on privacy grounds to the production of data reflecting non-parties' query content, particularly given that Plaintiffs are suing Google in this case for alleged privacy violations, including violations of the SCA, for disclosing the content of Assistant queries to human reviewers to improve Assistant. *See, e.g.*, Dkt. 240 at 7–8, 11; Dkt. 289 at 47:21–48:22; Oct. 20, 2022 Hr'g Tr. at 50:24–51:4, 55:20–56:11. In response, Plaintiffs made "clear" that they were "**not even seeking production of actual contents of users' communications**" but rather "identification of instances in which Google Assistant made a recording without a hotword." Dkt. 240 at 3–4 (emphasis added); Dkt. 289 at 20:14–18 (discussing "higher level statistics").

Ultimately, the Magistrate Judge rejected "Plaintiffs' request that all Google Assistant user information for the entire class period be filtered, sorted, or even listened to" as "grossly overbroad." Dkt. 278 at 4. She instead ordered the parties "to meet and confer and develop a plan for the random sampling of speech logs from various points in the class period to generate a statistically meaningful sample of relevant data." *Id.* In response to this order, the parties submitted competing proposals. *Compare* Dkt. 322-1, *with* Dkt. 323. On October 20, 2022, the

1  Magistrate Judge held a hearing and issued the Sampling Order. Although Plaintiffs never
2  proposed a sample size, *see* Dkt. 323 at 2, and Google (based on expert opinion) proposed a
3  sample of 12,500 hotword-initiated Assistant queries, *see* Dkt. 322-1, the Magistrate Judge
4  ordered production of a sample that was estimated to "approach[] **40 million queries**," Oct. 20,
5  2022 Hr'g Tr. at 48:13–15 (emphasis added). She did not limit the sample to hotword-initiated
6  queries made to Assistant, which are the only queries implicated by Plaintiffs' claims. *See id.* at
7  32:8–33:4, 48:1–25. She also ordered Google to produce "the entirety of each sampled query,"
8  despite Google's objection on privacy grounds, including under the SCA, based on Plaintiffs'
9  newfound theory that reviewing the entire query could help identify queries not intended for
10 Google. Sampling Order at 2; Oct. 20, 2022 Hr'g Tr. at 49:1–51:5, 52:22–25, 55:15–58:24. The
11 Sampling Order also requires Google to analyze the number of queries in the sample (1) "that did
12 not contain a hot word," (2) "that were sent to a human reviewer," and (3) "that were included in
13 a dataset," and provide the results of that analysis to Plaintiffs. *Id.* at 1. Production is to be
14 completed by December 16. *Id*.

**II.   ARGUMENT**

This Court may "modify or set aside any part" of a magistrate judge's non-dispositive pretrial order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (similar). Under this standard, "factual determinations are reviewed for clear error" while legal conclusions "are reviewed *de novo* to determine whether they are contrary to law." *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014) (citations and quotation marks omitted). The Sampling Order's requirements that Google produce (1) samples of queries other than hotword-initiated Assistant queries; and (2) full transcriptions of voice queries from non-party users, is clearly erroneous and contrary to law.

First, Plaintiffs' claims are solely based on hotword-initiated Assistant queries, *see* Dkt. 222-1 at 3 & n.7, so any others are plainly not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also U.S. Equal Emp. Opportunity Comm'n v. Chipotle Mexican Grill, Inc.*, No. 17-CV-05382-BLF, 2019 WL 3811890, at *4 (N.D. Cal. Aug. 1, 2019) (granting motion for relief because, among other reasons, "the evidence sought is not relevant to this case"). Indeed,

unless the sample is limited to hotword-initiated Assistant queries, the analysis compelled by the Sampling Order would be nonsensical, as calculating "the number of queries that did not contain a hot word" would be of no use when many of those queries would not be *expected* to contain a hotword because they were manual activations. And because Google can determine which queries were to Assistant, rather than another service, and which Assistant queries were hotword initiated (using metadata that reflects whether there was a preamble and whether the preamble type was hotword related), Google can narrow the sample to queries relevant to Plaintiffs' claims.

Second, the Sampling Order requires disclosure of the contents of an estimated 40 million Assistant queries, which is the very data that Plaintiffs are suing Google for allegedly disclosing. *See* Dkt. 141. The SCA prohibits covered entities from "knowingly divulg[ing]" the "contents" of communications. 18 U.S.C. § 2702(a). While there are exceptions, none permits disclosure in response to a discovery request, or even a court order, in a civil case. *See id*. § 2702(b). Indeed, courts have widely recognized that no such exceptions exist. *See, e.g.*, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011) ("[d]eclaring an implicit exception to the [SCA] for civil litigation would erode the safety of the stored electronic information and trigger Congress' privacy concerns"); *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 991 (C.D. Cal. 2012) ("The SCA does not contain an exception for civil discovery"); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) ("§ 2702 contains no exception for disclosure of such communications pursuant to civil discovery requests"); *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008) ("§ 2702 lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order"). Thus, the Magistrate Judge's conclusion that there is no SCA concern because "the information is turned over pursuant to a court order," Oct. 20, 2022 Hr'g Tr. at 60:2–3, is "clearly erroneous" and "contrary to law," Fed. R. Civ. P. 72(a).

The SCA and related privacy concerns cannot be addressed solely by assigning an anonymous unique identifier to the sampled queries. *See* Sampling Order at 1; Oct. 20, 2022 Hr'g Tr. at 51:18–22. Indeed, Plaintiffs themselves have argued that anonymization is not sufficient to avoid liability under the SCA. *See* Dkt. 303 at 2–3. Moreover, this does not eliminate the

possibility of personal information being disclosed through the query contents themselves, which could include names (e.g., "call John Smith"), phone numbers (e.g., "call [number]"), email addresses (e.g., "send email to [address]"), addresses (e.g., request for directions to medical clinic), or private reminders (e.g., "give [named child] [named medication]).

On the other side of the ledger, Plaintiffs will gain nothing by reviewing the contents of non-parties' queries. Plaintiffs' putative aim is to identify sampled queries where the machine-generated transcription does not contain a hotword. *See, e.g.*, Dkt. 218 at 1; Dkt. 240 at 3–6. The Sampling Order already requires Google to perform an analysis of the sampled data for that purpose and to provide the results to Plaintiffs. Sampling Order at 1. Plaintiffs do not need more, as they previously conceded. *See* Dkt. 240 at 3–4; Dkt. 289 at 20:14–18; *see also Johnson v. Sky Chefs, Inc.*, No. C11–05619 LHK (HRL), 2013 WL 11079297, at *2–3 (N.D. Cal. May 24, 2013) (declining to order the defendant to produce private information regarding unnamed class members where plaintiff failed to show a "legitimate need" that outweighed privacy interests).

### III.  CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court (1) limit the queries sampled for each day to hotword-initiated Assistant queries; and (2) strike the requirement that Google to "turn over the entirety of each sampled query as reflected in the speech logs."[2]

Dated:  November 3, 2022                                  **PERKINS COIE LLP**


By:  /s/ Sunita Bali
    Bobbie J. Wilson, Bar No. 148317
    Sunita Bali, Bar No. 274108
    Erin Earl (*pro hac vice*)

    Attorneys for Defendants Alphabet Inc. and Google LLC

---

[2] At a minimum, Google requests that the Court permit Google to attempt to identify and redact potential identifying information in query content before producing the data sample. Although this would not address the SCA concerns at all, it would provide implicated nonusers with some privacy protection.