1  Bobbie J. Wilson, Bar No. 148317
   BWilson@perkinscoie.com
2  Sunita Bali, Bar No. 274108
   SBali@perkinscoie.com
3  PERKINS COIE LLP
   505 Howard Street, Suite 1000
4  San Francisco, California 94105
   Telephone: +1.415.344.7000
5  Facsimile:  +1.415.344.7050

6  Attorneys for Defendants
   Alphabet Inc. and Google LLC
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12  IN RE GOOGLE ASSISTANT PRIVACY          Case No. 5:19-cv-04286-BLF
    LITIGATION
13                                          **DEFENDANTS' MOTION TO COMPEL
                                            ARBITRATION**
14
                                            Date:     June 1, 2023
15                                          Time:     9:00 a.m.
                                            Dept.:    Courtroom 3, 5th Floor
16                                          Judge:    Hon. Beth Labson Freeman
17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on June 1, 2023, at 9:00 a.m. in Courtroom 3 of the United States District Court for the Northern District of California, at 280 South 1st Street, San Jose, California 95113, Defendants Alphabet Inc. and Google LLC (collectively, "Google") move to compel arbitration and exclude from the "Purchaser Class" all purchasers who agreed to have any dispute related to their device resolved through individual arbitration.

This motion is based on this Notice, the Memorandum of Points and Authorities below, the Declaration of Victoria Luu, and the exhibits thereto, all materials in the record, any oral argument, and any other information and evidence on which the Court may rely.

Dated: February 1, 2023

**PERKINS COIE LLP**

By: ___*/s/ Sunita Bali*___
Bobbie J. Wilson, Bar No. 148317
Sunita Bali, Bar No. 274108

Attorneys for Defendants
Alphabet Inc. and Google LLC

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  BACKGROUND ................................................................................................... 1

  A.  The Google Device AA ................................................................................ 2

  B.  The Sales Terms .......................................................................................... 4

III.  LEGAL STANDARD ........................................................................................... 7

IV.  ARGUMENT ......................................................................................................... 8

  A.  THE GOOGLE DEVICE AA REQUIRES A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ................................... 8

    1.  The parties entered a valid, written agreement to arbitrate. .................... 8

    2.  The Google Device AA encompasses absent class members' claims in this case. ........................................................................................... 10

    3.  The Google Device AA is not unconscionable. ..................................... 11

  B.  THE SALES TERMS REQUIRE A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ........................................... 13

    1.  The parties entered into a valid, written agreement to arbitrate ............. 13

    2.  The agreement encompasses absent class members' claims in this case ..................................................................................................... 14

    3.  The Sales Terms are not unconscionable ............................................... 14

  C.  ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE SHOULD BE EXCLUDED FROM THE CLASS DEFINITION ..................... 15

V.  CONCLUSION .................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**CASES**

5

*Arellano v. T-Mobile USA, Inc.*,
   No. C 10-05663 WHA, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ................................. 9

6

*Armendariz v. Found, Health Psycare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ................................................................................................................ 11

7

8

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   785 F.3d 1320 (9th Cir. 2015) ................................................................................................... 7

9

10

*Britt v. ContextLogic, Inc.*,
   3:20-CV-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ................................... 13

11

*Brown v. DirecTV, LLC*,
   562 F. Supp. 3d 590 (C.D. Cal. 2021) ..................................................................................... 14

12

13

*Buchanan v. Tata Consultancy Servs., Ltd.*,
   No. 15-CV-01696-YGR, 2018 WL 3537083 (N.D. Cal. July 23, 2018) .............................. 14

14

*California Crane Sch., Inc. v. Google LLC*,
   No. 21-CV-10001-HSG, 2022 WL 3348425 (N.D. Cal. Aug. 12, 2022) ............................. 13

15

16

*Carter v. Rent-A-Ctr., Inc.*,
   718 F. App'x 502 (9th Cir. 2017) ............................................................................................ 12

17

18

*Chalk v. T-Mobile USA, Inc.*,
   560 F.3d 1087 (9th Cir. 2009) ................................................................................................. 11

19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................................................. 10

20

21

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ............................................................................................ 11, 14

22

23

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .................................................................................................................. 6, 7

24

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) .................................................................................................................... 7

25

26

*Ekin v. Amazon Servs., LLC*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014) ............................................................................ 12, 14

27

28

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*First Options of Chi., Inc. v. Kaplan*,

4
    514 U.S. 938 (1995)..................................................................................................... 7

5

*Freitas v. Cricket Wireless, LLC*,
    No. C 19-7270 WHA, 2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) ........................8, 14, 15

6

*George v. eBay, Inc.*,

7
    71 Cal. App. 5th 620 (2021)....................................................................................... 11

8

*HM DG, Inc. v. Amini*,

9
    219 Cal. App. 4th 1100 (2013) ..................................................................................... 8

10

*Houtchens v. Google LLC*,
    No. 22-CV-02638-BLF, 2023 WL 122393 (N.D. Cal. Jan. 6, 2023).................................... 8

11

*Mohamed v. Uber Techs., Inc.*,

12
    848 F.3d 1201 (9th Cir. 2016) ...............................................................................11, 14

13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

14
    460 U.S. 1 (1983) ....................................................................................................... 7

15

*Murphy v. DirectTV*, Inc.,
    No. 2:07-CV-06465-JHN, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011)............................. 9

16

*Nguyen v. Barnes & Noble Inc.*,

17
    763 F.3d 1171 (9th Cir. 2014) ..................................................................................... 8

18

*Peter v. DoorDash, Inc.*,

19
    445 F. Supp. 3d 580 (N.D. Cal. 2020)........................................................................ 13

20

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ............................................................................................. 11

21

*Randas v. YMCA of Metro. Los Angeles*,

22
    17 Cal. App. 4th 158 (1993)........................................................................................ 8

23

*Sheffer v. Samsung Telecomm. Am., LLC*,
    No. CV 13-3466-GW AJWX, 2013 WL 7158343 (C.D. Cal. Dec. 16, 2013)...................... 9

24

*Simula, Inc. v. Autoliv, Inc.*,

25
    175 F.3d 716 (9th Cir. 1999) ..................................................................................... 14

26

*Swift v. Zynga Game Network, Inc.*,

27
    805 F. Supp. 2d 904 (N.D. Cal. 2011)......................................................................... 9

28

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ............................................................. 12

4

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
  46 F. App'x 412 (9th Cir. 2002) ......................................................... 10

5

6

*United States v. Clayton*,
  108 F.3d 1114 (9th Cir. 1997) ............................................................. 7

7

8

STATUTES

9

9 U.S.C. § 1 ................................................................................................7

10

9 U.S.C. § 2 ................................................................................................7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:19-CV-04286-BLF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

A significant portion of the "Purchaser Class" agreed to have their claims resolved through binding arbitration. At least two arbitration agreements apply to a portion of absent class members' claims: (1) the Google Arbitration Agreement - Devices, Related Accessories, and Related Subscription Services; and (2) the Google Store Sales Terms. These agreements are valid, enforceable, and plainly applicable to the claims asserted by members of the Purchaser Class. The Court already observed that absent class members who agreed to a valid arbitration agreement cannot be included in the Purchaser Class. *See* Oct. 20, 2022 Tr. of Proceedings at 6 ("[B]ut I think ultimately anyone with a valid enforceable arbitration agreement can't be a member of the class[.]"). The Court should, therefore, grant this Motion to Compel Arbitration ("Motion"), and exclude from the Purchaser Class any class members who agreed to have their claims arbitrated pursuant to these agreements.

**II.    BACKGROUND**

On December 16, 2022, the Court certified a nationwide "Purchaser Class," which is defined as "All Users who purchased a Google-Made Device." Users are "individuals whose Gmail accounts were associated with at least one Google-Assistant Enabled Device during the class period." A Google-Assistant Enabled Device, or a "GAED," is a device that comes with Google Assistant pre-installed; and "Google-Made Devices" are "GAEDs manufactured and sold by Google, including Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart displays, Google Nest Hub, and Nest Hub Max; and its Pixel smartphones." (Dkt. 360 at 31–32.) The class period runs from May 18, 2016, to the date of certification. (*Id.* at 3.)

A significant portion of the "Purchaser Class" agreed to arbitrate their claims on an individual basis. Some agreed to the "Google Arbitration Agreement - Devices, Related Accessories, and Related Subscription Services" ("Google Device AA") when they set up their "Google-Made Devices"; some agreed to the Google Store Sales Terms ("Sales Terms") when they purchased their "Google-Made Devices" from the Google Store; and some agreed to both. But no matter how they agreed, and which agreement they agreed to, there can be no dispute that

members of the Purchaser Class agreed to arbitrate, on an individual basis, the claims asserted in this case, and that those members must be excluded from the class.

### A.     The Google Device AA

The Google Device AA applies to a number of "Google-Made Devices" purchased by members of the Purchaser Class. Although Plaintiffs' definition of "Google-Made Devices" does not include an exhaustive list of devices, it includes three categories of devices as examples: (1) Google smart speakers, (2) Google smart displays, and (3) Pixel smartphones. Purchasers of each of these three categories of devices agreed to the Google Device AA during some portion of the class period. In addition, purchasers of numerous other "Google-Made Devices" agreed to the Google Device AA during the class period. Exhibit 1 to the Declaration of Victoria Luu ("Luu Decl.") summarizes (1) which Google-Made devices are subject to the Google Device AA, and (2) when the Google Device AA went into effect for each of those Google-Made Devices.

Purchasers of Google-Made Devices agreed to the Google Device AA in two distinct ways. First, for most of these devices, either a full printed copy of the Google Device AA or a notice of the Google Device AA that refers consumers to the full Google Device AA ("pointer paragraph") was included in the product packaging at the time of purchase. (Luu Decl., Ex. 1.) Second, during device setup, users were required to agree to the Google Device AA to complete the setup process and use their device. (*Id*. ¶¶ 4–6.) Specifically, during the device setup process, users are presented with a screen entitled "Additional legal terms," which states that by clicking "I accept," users are agreeing to the Google Device AA, which includes a "binding arbitration" provision. Users cannot complete the setup process or use their device without clicking "I accept" and agreeing to the Google Device AA. If a user clicks on the provided hyperlink to the Google Device AA (which appears in bold bright blue text), the user is redirected to a screen displaying the entirety of the Google Device AA. (*Id*. ¶ 17.) An example of the screen that users see during the setup process is reproduced below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    (*Id*. ¶ 18.) Importantly, the screen clearly explains that by clicking "I accept," users are agreeing

22    to "binding arbitration on an individual, non-class basis, as described in the Google Device

23    Arbitration Agreement, unless you opt out by following the instructions in the Arbitration

24    Agreement."  (*Id*.)

25            The Google Device AA further explains that the user and Google agree that any dispute

26    relating to the user's device will be resolved through binding arbitration, "regardless of the type

27    of dispute" and "regardless of the legal theory" on which the claim is based.  (Luu Decl., Ex. 5 at

28    1.) The Google Device AA also includes a class action waiver:

6. **No class actions**. By agreeing to arbitration, to the fullest extent legally permissible, we each may bring claims relating to these Arbitration Terms and/or your Google Device only in our individual capacities and not in a class action.

(*Id*. at 3.) It also contains the following provisions regarding the arbitration procedure:

- The arbitration agreement is governed by the Federal Arbitration Act ("FAA") and is "intended to be broadly interpreted" (*id*. at 1);

- Google will reimburse users their reasonable attorney's fees in certain situations and the arbitration filing fee for claims less than $10,000 (*id*. at 2); and

- The American Arbitration Association ("AAA") will administer the arbitration in accordance with its Consumer Arbitration Rules (*id*.).

Finally, the Google Device AA informs users that even after agreeing to arbitration, a user can return the device within 30 days of activating the device or opt out by completing the "Device Arbitration Opt-Out Form" available on Google's website within 30 days of activating the device. (*Id*. at 3–4.) The opt-out process is simple: it requires users to enter two pieces of information— the device type and the device's serial number—and click "Submit." (Luu Decl. ¶¶ 19–20.) According to Google's records, only a small percentage (approximately less than 0.1%) of users opt out of arbitration. (*Id*. ¶ 20.)

**B.     The Sales Terms**

In addition to the Google Device AA, anyone who purchased a "Google Made Device" directly from Google's online store on or after August 3, 2020, agreed to the Sales Terms, which include an arbitration provision and class action waiver. (*Id*. ¶ 22.)  During the purchase process, Google provides a link to the Sales Terms, and purchasers are notified in bold font that by clicking "Confirm Purchase" they are agreeing to the Sales Terms, including the arbitration clause, which means that "any dispute related to your device . . . will be resolved through BINDING ARBITRATION on an individual, non-class basis." (*Id*. ¶ 23.) An example of the screen displayed to purchasers is as follows:

(*Id.* ¶ 24.)

Then again, on the first page of the Sales Terms, a bolded statement advises purchasers that the terms include an agreement to arbitrate any dispute related to the purchaser's device on an individual basis:

**PLEASE CAREFULLY READ THE TERMS, INCLUDING THE AGREEMENT TO ARBITRATE IN SECTION 23, MEANING THAT ANY DISPUTE RELATED TO YOUR DEVICE AND/OR SUBSCRIPTION SERVICES PURCHASED FROM THE STORE WILL BE RESOLVED THROUGH BINDING ARBITRATION ON AN INDIVIDUAL, NON-CLASS BASIS.**

(Luu Decl., Ex. 9 at 1.)

Paragraph 23 of the Sales Terms further confirms that the purchaser agrees that any dispute relating to a device purchased from the Google Store "regardless of the type of dispute" will be resolved through binding arbitration. (*Id*. at 10.) The Sales Terms go on to describe the arbitration process, and provide some examples of the types of disputes that will be subject to arbitration, including, for example, "disputes relating to . . . your purchase of a Device," "disputes regarding the design, performance, features, or functionality of your Device," and "any disputes regarding your use of your Device." (*Id*. at 10–11.) The Sales Terms further state that the agreement to arbitrate applies "whether your dispute is with Google . . . or [a] parent company" and "regardless of the legal theory on which" the claim is based. (*Id*. at 11.) Further, Paragraph 23(f), entitled "No Class Actions," makes clear that claims can only be brought "in our individual capacities and not in a class action." (*Id*. at 13.) The Sales Terms also inform purchasers that they may return their device if they do not wish to agree to arbitration.  (*Id*. at 14.) Thus consumers who purchased (and did not return) a device from the Google Store on or after August 3, 2020, are required to arbitrate claims relating to their device.

Because a significant portion of the certified "Purchaser Class" indisputably agreed to have their claims arbitrated, either via the Google Device AA, the Sales Terms, or both, this Court should grant Google's Motion and exclude them from the Purchaser Class.[1]

---

[1] Indeed, even Plaintiff Kumandan agreed to the arbitration provision in the Google Device AA when he purchased and set up his Pixel 4 smartphone in July 2020, given that the Google Device AA was already in effect and Google has no record of Kumandan opting out. To be clear, Google is not moving to compel arbitration as to Kumandan's individual claims because he also purchased and used earlier versions of the Pixel smartphone that are not subject to any arbitration agreement, and it makes little sense to litigate his claims in two separate forums. But Kumandan's facts demonstrate that a significant portion of the Purchaser Class agreed to have their claims resolved through binding arbitration.

1

### III.   LEGAL STANDARD

2    The FAA, 9 U.S.C. § 1, *et seq*., governs the arbitration agreements in this case for two

3    reasons. First, the Google Device AA and the Sales Terms both specify that the FAA governs.

4    (Luu Decl., Ex. 5 at 1; Ex. 9 at 10.) Second, Google-Made Devices are plainly "within the flow of

5    interstate commerce," and thus subject to the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S.

6    52, 56 (2003) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995)); *id*. at

7    56–57 (explaining that the FAA "provides for the enforcement of arbitration agreements within

8    the full reach of the Commerce Clause" and Congress' Commerce Clause power extends to

9    "economic activity" that "in the aggregate . . . would represent a general practice subject to

10   federal control") (cleaned up); *see also United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir.

11   1997).

12   The FAA establishes that arbitration agreements "shall be valid, irrevocable, and

13   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

14   contract." 9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to

15   show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the

16   agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc*.,

17   785 F.3d 1320, 1323 (9th Cir. 2015). If the answer to both questions is yes, then the FAA requires

18   enforcement of the arbitration agreement according to its terms. *See Dean Witter Reynolds, Inc. v.*

19   *Byrd*, 470 U.S. 213, 218 (1985) ("[The FAA] leaves no place for the exercise of discretion by a

20   district court, but instead mandates that district courts shall direct the parties to proceed to

21   arbitration on issues as to which an arbitration agreement has been signed."). Courts must resolve

22   "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the

23   problem at hand is the construction of the contract language itself or an allegation of waiver,

24   delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

25   460 U.S. 1, 24–25 (1983).

26

27

28

## IV.   ARGUMENT

### A.   THE GOOGLE DEVICE AA REQUIRES A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS

#### 1.   The parties entered a valid, written agreement to arbitrate.

In determining whether the parties entered an enforceable arbitration agreement, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the parties agree that California law applies. (ECF 222-1 at 25 (acknowledging that California law governs all disputes in this action).)  The Google Device AA also specifies that California law governs the arbitration terms. (Luu Decl., Ex. 5 at 4.)

In California, "[c]ontract formation requires mutual consent." *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013). Mutual consent "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id*. "[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract" so long as the party is on inquiry notice of the agreement's terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (recognizing that an arbitration agreement in online terms of use is enforceable if "the website puts a reasonably prudent user on inquiry notice of the terms of the contract"); *see also Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th 158, 163 (1993) ("Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.").

Here, class members who purchased certain Google-Made Devices on or after the effective date of the Google Device AA, as summarized in Exhibit 1, had to expressly consent to arbitration before they could set up and use their devices. During the device setup process, users are presented with a screen that conspicuously (1) provides notice of the Google Device AA, (2) provides easy access to the complete Google Device AA, including via hyperlink, and (3) notifies users that by clicking "I accept," users agree to be bound by the terms of the Google

Device AA. Users cannot complete the device setup process without first clicking "I accept" to agree to the Google Device AA.

Courts routinely enforce online arbitration agreements like this, even where users do not read the terms of the agreement before indicating their acceptance. *See, e.g., Houtchens v. Google LLC*, No. 22-CV-02638-BLF, 2023 WL 122393, at *5 (N.D. Cal. Jan. 6, 2023) ("[P]laintiffs were on inquiry notice of Fitbit's Terms of Service due to the clickwrap agreement to which they assented when they created their Fitbit accounts."); *Freitas v. Cricket Wireless, LLC*, No. C 19-7270 WHA, 2022 WL 1082014, at *10 (N.D. Cal. Apr. 11, 2022) ("[T]he 438 class members who executed online agreements were, at least, on constructive notice of the arbitration clause, and the online agreements are valid as to them."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' . . . a binding contract was created here."). By clicking "I accept" on the screen entitled "Additional legal terms," which both includes a hyperlink to the Google Device AA and expressly states that "by clicking 'I accept' you agree to the . . . Google Device Arbitration Agreement," many members of the Purchaser Class agreed to be bound by the Google Device AA. Thus, aside from those small percentage of purchasers who opted out by completing the online opt out form, virtually everyone who purchased one of the Google-Made Devices after the effective date, as summarized in Exhibit 1, agreed to arbitrate their claims.

Class members also manifested their assent to the Google Device AA by continuing to use their devices after receiving the Google Device AA or pointer paragraph included in the device box. Courts have held that terms contained within documents accompanying a product, including arbitration agreements, are enforceable under California law. *See, e.g., Sheffer v. Samsung Telecomm. Am., LLC*, No. CV 13-3466-GW AJWX, 2013 WL 7158343, *4–5 (C.D. Cal. Dec. 16, 2013) (concluding that plaintiffs' receipt of the warranty and arbitration provision that came in the box with their smartphones and their failure to opt out within 30 days "constitute[d] valid acceptance of those terms"); *Murphy v. DirectV, Inc.*, No. 2:07-CV-06465-JHN, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (agreeing with defendants that "by accepting, rather than

canceling, their services after receiving the Customer Agreement [in the mail after their purchases], Plaintiffs manifested their acceptance of the Customer Agreement [including the arbitration provision therein] . . . even if they did not read it"); *aff'd*, 724 F.3d 1218 (9th Cir. 2013); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, *3 (N.D. Cal. Apr. 11, 2011) ("[A]greements packaged with a product are enforceable"). Thus, class members also agreed to be bound by the Google Device AA by continuing to use their devices after purchase, instead of returning them or opting out of the Google Device AA via Google's online opt-out form.

### 2. The Google Device AA encompasses absent class members' claims in this case.

The Google Device AA unambiguously requires the parties to arbitrate any dispute relating to Google-Made Devices. (Luu Decl., Ex. 5 at 1–2.) Specifically, the Google Device AA states that any dispute "that relates to . . . your device(s)," "regardless of the type of dispute," is to be resolved through binding arbitration. (*Id.* at 1.) It further states that the terms "are intended to be broadly interpreted" and apply, for example, to "any disputes regarding the design, performance, features, or functionality of your Google Device," "any disputes regarding your use of your Google Device," and "any disputes based on device defects." (*Id.*) Finally, it states that the terms apply "whether your dispute is with Google [or a] parent company," and "regardless of the legal theory on which you base your claim."  (*Id.*)

Here, the claims of the Purchaser Class unquestionably qualify as a "dispute" that "relates to" Google-Made Devices and thus fall squarely within the broad terms of the Google Device AA. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (recognizing that arbitration agreements covering "[a]ny dispute, controversy, or claim" reach "broad and far" in scope); *see also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 413 (9th Cir. 2002) (noting that "the phrase 'relating to'" in an arbitration agreement "has a broad and inclusive meaning"). In particular, the Purchaser Class asserts breach of contract and UCL claims on the theory that they "pa[id] a price premium for [their] device[s] based on

1  Google's representations about how the device[s] operate," contending that Google

2  "surreptitiously record[ed] users' audio" via those devices and later "shar[ed] such audio with

3  third parties." (Dkt. 360 at 16, 32 (emphasis added).) These claims not only "relate[] to" Google-

4  Made Devices, they center on them, including the "design, performance, features, or

5  functionality" of those devices. (*See* Luu Decl., Ex. 5 at 1.)

6      Simply put, the Google Device AA is a valid and enforceable arbitration agreement that

7  was agreed to by a significant portion of the Purchaser Class, and squarely covers the claims that

8  they allege in this case.

9                          **3.      The Google Device AA is not unconscionable.**

10      To the extent Plaintiffs argue that the Google Device AA is unconscionable, Plaintiffs

11  bear the burden of proving unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt.*

12  *Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("The party seeking arbitration bears the burden of

13  proving the existence of an arbitration agreement, and the party opposing arbitration bears the

14  burden of proving any defense, such as unconscionability."); *see Chalk v. T-Mobile USA, Inc.*,

15  560 F.3d 1087, 1092 (9th Cir. 2009) (looking to state law for which party bears the burden of

16  proving unconscionability of an arbitration clause). Plaintiffs cannot come close to carrying their

17  burden.

18      To prove unconscionability, Plaintiffs must prove that the Google Device AA is both

19  procedurally and substantively unconscionable. *Armendariz v. Found, Health Psycare Servs.*,

20  *Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural unconscionability focuses on oppression or surprise

21  due to unequal bargaining power, while substantive unconscionability looks for overly harsh or

22  one-sided results. *Id*. Neither procedural nor substantive unconscionability exists here.

23      As to procedural unconscionability, an arbitration agreement is "not adhesive" and thus

24  not procedurally unconscionable where "there is an opportunity to opt out of it." *Mohamed v.*

25  *Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (applying California law). Here, class

26  members had the ability to opt out of the Google Device AA within 30 days of activating their

27  devices. The ability to opt out defeats any claim of procedural unconscionability. *Circuit City*

28  *Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (holding that the right to opt out

1  within 30 days defeated a claim of procedural unconscionability). That should be the end of the

2  inquiry. *Mohamed*, 848 F.3d at 1211.

3  But any substantive unconscionability argument fails, too. Proving that an agreement is

4  substantively unconscionable is a "high bar." *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 634

5  (2021) ("[T]he standard for substantive unconscionability is exceedingly high[.]"). The agreement

6  must contain terms that are "so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at

7  246 (internal quotation marks omitted). Here, the terms are not one-sided. Almost all provisions

8  in the Google Device AA are bilateral, including the obligation to arbitrate disputes. (Luu Decl.,

9  Ex. 5 at 1.) Bilateral provisions generally are not substantively unconscionable. *See Tompkins v.*

10  *23andMe, Inc.*, 840 F.3d 1016, 1024–25 (9th Cir. 2016) (concluding that the fact a provision was

11  bilateral, rather than unilateral, weighed against finding it unconscionable under California law).

12  The few unilateral provisions in the Google Device AA protect the consumer, not Google.

13  For example, consumers may choose the hearing location (Luu Decl., Ex. 5 at 2–3); Google will

14  pay consumers' reasonable attorney's fees and arbitration fees in certain instances (*id*. at 2); and

15  users may opt out of the terms (*id*. at 3–4.). That the Google Device AA also contains a class

16  action waiver does not render the Google Device AA substantively unconscionable. *See Carter v.*

17  *Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (collecting Ninth Circuit cases

18  interpreting Supreme Court precedent as "foreclosing any argument that a class action waiver, by

19  itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely

20  because it contains a class action waiver"). Moreover, under the Google Device AA's terms,

21  "[a]rbitration is conducted not according to some rules created by [Google], but rather by the

22  [AAA]'s published and accessible rules." *Ekin v. Amazon Servs.*, LLC, 84 F. Supp. 3d 1172,

23  1176–77 (W.D. Wash. 2014); (*see* Luu Decl., Ex. 5 at 2.)

24  There is nothing unfair or unconscionable about the Google Device AA, and it should be

25  enforced according to its terms.

26

27

28

1

2

**B.      THE SALES TERMS REQUIRE A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS**

3

The Sales Terms provide an independent basis to compel arbitration as to a portion of the

4

Purchaser Class.

**1.      The parties entered into a valid, written agreement to arbitrate.**

5

6

Members of the "Purchaser Class" who purchased a Google-Made Device directly from

7

the online Google Store any time on or after August 3, 2020, agreed to arbitrate their dispute.[2]

8

These class members received notice that by purchasing their device via the Google Store, they

9

affirmatively agreed to the Store Terms, which include an arbitration agreement. The hyperlink to

10

the Sales Terms appears during the purchase process, and purchasers are notified that by clicking

11

"confirm purchase," they are affirmatively agreeing to the Sales Terms including its arbitration

12

clause. The Sales Terms further make clear that "[y]our purchase of devices . . . from the Store

13

constitutes your agreement to be bound by these Devices Terms of Sale." (Luu Decl., ¶ at 1.)

14

Courts regularly enforce online agreements in similar circumstances. For example, in *Britt*

15

*v. ContextLogic, Inc.*, the court held that a user was bound to the defendant's terms of use where

16

the defendant's online "sign-in screen" displayed a hyperlink to the terms and a statement that the

17

user agreed to those terms by signing into his or her account. 3:20-CV-04333-WHA, 2021 WL

18

1338553, at *4 (N.D. Cal. Apr. 9, 2021). Similarly, in *Peter v. DoorDash, Inc.*, the court enforced

19

an arbitration agreement contained in terms and conditions that were hyperlinked, in blue font,

20

directly below a notice stating that the user agreed to the terms and conditions by signing up for

21

services. 445 F. Supp. 3d 580, 582, 587 (N.D. Cal. 2020).

22

Likewise, here, those who purchased devices from the Google Store would have seen a

23

screen informing them that by clicking "confirm purchase," they were agreeing to the Sales

24

Terms, including its arbitration clause. Thus, this case is substantively indistinguishable from the

25

cases in which courts in this District have enforced online arbitration agreements. The arbitration

26

27

[2] Like the Google Device AA, the Sales Terms specify that California law governs the contract.  (Luu Decl., Ex. 9 at 14.)

28

agreement in the Sales Terms is binding and enforceable.

> **2.      The agreement encompasses absent class members' claims in this case.**

Like the Google Device AA, the arbitration agreement in the Sales Terms is broad. It applies to "ANY DISPUTE RELATED TO YOUR DEVICE," including, for example, "any disputes relating to . . . your purchase of a Device . . . from the Store," "any disputes regarding the design, performance, features, or functionality of your Device," and "any disputes regarding your use of your Device." (Luu Decl., Ex. 9 at 1,11.) The arbitration agreement also applies "regardless of the legal theory on which" a claim is based. (*Id*.)

For the same reasons discussed above with respect to the Google Device AA, the Purchaser Class's breach of contract and UCL claims in this case plainly relate to the devices that class members purchased, including the "performance" and "functionality" of those devices. *See California Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001-HSG, 2022 WL 3348425, at *3 (N.D. Cal. Aug. 12, 2022) (concluding that a similarly worded arbitration agreement encompassed a broad variety of claims); *see also Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 720–21 (9th Cir. 1999) (collecting cases broadly construing similar arbitration agreements).

> **3.      The Sales Terms are not unconscionable.**

Plaintiffs cannot show that the arbitration agreement in the Sales Terms is procedurally or substantively unconscionable. Purchasers could have declined to make a purchase or returned their device if they did not want to be bound by the Sales Terms. (Luu Decl., Ex. 9 at 14.) As discussed above, this defeats any argument about procedural unconscionability. *Circuit City*, 283 F.3d at 1200. The Court can end its inquiry there. *Mohamed*, 848 F.3d at 1211. But Plaintiffs also cannot show substantive unconscionability. The terms are not one-sided. For example, the terms give purchasers the right to choose the hearing location (Luu Decl., Ex. 9 at 12), the ability to recover attorney fees if they prevail by a certain amount (*id*.), and the right to have Google reimburse their filing fee for claims less than $10,000 (*id*.). The AAA will administer the arbitration, and the AAA's rules will govern proceedings. Plaintiffs cannot meet their burden to show that the Sales Terms are unconscionable given these provisions. *See Ekin*, 84 F. Supp. 3d at 1176 (remarking that similar terms in an arbitration agreement "hardly strike this Court as

1  unfair").

2  **C.    ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE SHOULD
3       BE EXCLUDED FROM THE CLASS DEFINITION**

4      The Court has certified the "Purchaser Class," but class members have not yet received

5  notice. In these circumstances, courts recognize that a successful motion to compel arbitration

6  serves to "exclude from the class definition absent class members who are likely subject to

7  arbitration." *Freitas*, 2022 WL 1082014, at *3; *see Buchanan v. Tata Consultancy Servs., Ltd.*,

8  No. 15-CV-01696-YGR, 2018 WL 3537083, at *10 (N.D. Cal. July 23, 2018) (refining class

9  definition after granting a motion to compel arbitration); *see also Brown v. DirecTV, LLC*, 562 F.

10  Supp. 3d 590, 599 (C.D. Cal. 2021) (noting that the court's order granting a motion to compel

11  arbitration resulted in modification of the class definition).

12      In the interest of judicial efficiency, absent class members who agreed to have their claims

13  arbitrated via the Google Device AA and/or Sales Terms should be excluded from the "Purchaser

14  Class." *See Freitas*, 2022 WL 1082014, at *10 (excluding class members who agreed to

15  arbitration from the class definition "as a concession to efficient resolution of class-wide

16  issues."). Thus, the definition of the Purchaser Class should be revised as: "All Users who

17  purchased a Google-Made Device and did not agree to arbitrate disputes related to that device."

18  **V.    CONCLUSION**

19      For these reasons, Google respectfully requests that the Court grant Google's Motion, and

20  exclude from the "Purchaser Class" all purchasers who agreed to have any dispute related to their

21  device resolved through individual arbitration, either via the Google Device AA, the Sales Terms,

22  or both.

24  Dated:  February 1, 2023                 **PERKINS COIE LLP**

26                                   By:    */s/ Sunita Bali*
                                        Bobbie J. Wilson, Bar No. 148317
27                                       Sunita Bali, Bar No. 274108

                                        Attorneys for Defendants

-15-

1                                            Alphabet Inc. and Google LLC

-16-