Bobbie J. Wilson, Bar No. 148317
BWilson@perkinscoie.com
Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Erin K. Earl (*pro hac vice*)
EEarl@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendants
Alphabet Inc. and Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 5:19-cv-04286-BLF |
| | **DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| | Date:      December 14, 2023 |
| | Time:     9:00 a.m. |
| | Dept.:     Courtroom 3, 5th Floor |
| | Judge:    Hon. Beth Labson Freeman |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on December 14, 2023, at 9:00 a.m. in Courtroom 3 of the United States District Court for the Northern District of California, at 280 South 1st Street, San Jose, California 95113, Defendants Alphabet Inc. and Google LLC (collectively, "Google") move to compel arbitration and exclude from the "Purchaser Class" all purchasers who agreed to a class action waiver and to have any dispute related to their device resolved through individual arbitration.

This motion is based on this Notice, the Memorandum of Points and Authorities below, the Declaration of Victoria Luu, and the exhibits thereto, all materials in the record, any oral argument, and any other information and evidence on which the Court may rely.

Dated:  July 21, 2023        **PERKINS COIE LLP**

By:   */s/ Sunita Bali*
      Bobbie J. Wilson, Bar No. 148317
      Sunita Bali, Bar No. 274108
      Erin K. Earl (*pro hac vice*)

      Attorneys for Defendants
      Alphabet Inc. and Google LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 1

    A.    The Google Device AA ............................................................................ 2

    B.    The Sales Terms ...................................................................................... 4

III.  LEGAL STANDARD ......................................................................................... 6

IV.  ARGUMENT ...................................................................................................... 7

    A.    THE GOOGLE DEVICE AA REQUIRES A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ................................... 7

        1.    The parties entered into a valid, written agreement to arbitrate................ 7

        2.    The Google Device AA encompasses absent class members' claims in this case. .................................................................................... 10

        3.    The Google Device AA is not unconscionable. ....................................... 11

    B.    THE SALES TERMS REQUIRE A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ................................................. 12

        1.    The parties entered into a valid, written agreement to arbitrate.............. 12

        2.    The agreement encompasses absent class members' claims in this case.............................................................................................. 13

        3.    The Sales Terms are not unconscionable. ................................................. 14

    C.    ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE SHOULD BE EXCLUDED FROM THE CLASS DEFINITION...................... 14

V.   CONCLUSION ................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**CASES**

5

*Arellano v. T-Mobile USA, Inc.*,
   No. C 10-05663 WHA, 2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ................................... 9

6

*Armendariz v. Found, Health Psycare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ..................................................................................................... 11

7

8

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   785 F.3d 1320 (9th Cir. 2015) ......................................................................................... 7

9

10

*Britt v. ContextLogic, Inc.*,
   3:20-CV-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ................................... 13

11

*Brown v. DirecTV, LLC*,
   562 F. Supp. 3d 590 (C.D. Cal. 2021) ............................................................................. 14

12

13

*Buchanan v. Tata Consultancy Servs., Ltd.*,
   No. 15-CV-01696-YGR, 2018 WL 3537083 (N.D. Cal. July 23, 2018) .............................. 14

14

*California Crane Sch., Inc. v. Google LLC*,
   No. 21-CV-10001-HSG, 2022 WL 3348425 (N.D. Cal. Aug. 12, 2022) ............................. 14

15

16

*Carter v. Rent-A-Ctr., Inc.*,
   718 F. App'x 502 (9th Cir. 2017) ..................................................................................... 12

17

18

*Chalk v. T-Mobile USA, Inc.*,
   560 F.3d 1087 (9th Cir. 2009) ......................................................................................... 11

19

20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................................................................... 10

21

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) ................................................................................... 11, 14

22

23

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ......................................................................................................... 7

24

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................................................ 7

25

26

*Ekin v. Amazon Servs., LLC*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014) ..................................................................... 12, 14

27

28

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ......................................................................................... 7

*Freitas v. Cricket Wireless, LLC*,
No. C 19-7270 WHA, 2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) ......................... 8, 14, 15

*George v. eBay, Inc.*,
71 Cal. App. 5th 620 (2021) ............................................................................ 11

*HM DG, Inc. v. Amini*,
219 Cal. App. 4th 1100 (2013) ......................................................................... 8

*Houtchens v. Google LLC*,
No. 22-CV-02638-BLF, 2023 WL 122393 (N.D. Cal. Jan. 6, 2023) ....................... 8

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....................................................................... 11, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................................... 7

*Murphy v. DirectTV*, Inc.,
No. 2:07-CV-06465-JHN, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) ................ 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........................................................................ 8

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .............................................................. 13

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) .................................................................................... 11

*Randas v. YMCA of Metro. Los Angeles*,
17 Cal. App. 4th 158 (1993) ............................................................................ 8

*Sheffer v. Samsung Telecomm. Am., LLC*,
No. CV 13-3466-GW AJWX, 2013 WL 7158343 (C.D. Cal. Dec. 16, 2013) ......... 9

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........................................................................... 14

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................. 9

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .................................................................................. 12

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
    46 F. App'x 412 (9th Cir. 2002) .............................................................................. 10

*United States v. Clayton*,
    108 F.3d 1114 (9th Cir. 1997) ................................................................................... 7

**STATUTES**

9 U.S.C. § 1 ……………………………………………………………………………….6

9 U.S.C. § 2……………………………………………………………………………..7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

A significant portion of the "Purchaser Class" agreed to a class action waiver and to have their claims resolved through binding arbitration. At least two arbitration agreements apply to a portion of absent class members' claims: (1) the Google Arbitration Agreement - Devices, Related Accessories, and Related Subscription Services; and (2) the Google Store Sales Terms. These agreements are valid, enforceable, and plainly applicable to the claims asserted by members of the Purchaser Class. The Court already observed that absent class members who agreed to a valid arbitration agreement cannot be included in the Purchaser Class. *See* Oct. 20, 2022 Tr. of Proceedings at 6 ("[B]ut I think ultimately anyone with a valid enforceable arbitration agreement can't be a member of the class[.]"). The Court should, therefore, grant this Motion to Compel Arbitration ("Motion"), and exclude from the Purchaser Class any class members who agreed to a class action waiver and to have their claims arbitrated pursuant to these agreements.

### II.    BACKGROUND

On December 16, 2022, the Court certified a nationwide "Purchaser Class," which is defined as "All Users who purchased a Google-Made Device." Users are "individuals whose Gmail accounts were associated with at least one Google-Assistant Enabled Device during the class period." A Google-Assistant Enabled Device, or a "GAED," is a device that comes with Google Assistant pre-installed; and "Google-Made Devices" are "GAEDs manufactured and sold by Google, including Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart displays, Google Nest Hub, and Nest Hub Max; and its Pixel smartphones." (Dkt. 360 at 31–32.) The class period runs from May 18, 2016, to the date of certification. (*Id*. at 3.)

A significant portion of the "Purchaser Class" agreed to arbitrate their claims on an individual basis. Some agreed to the "Google Arbitration Agreement - Devices, Related Accessories, and Related Subscription Services" ("Google Device AA") when they set up their "Google-Made Devices"; some agreed to the Google Store Sales Terms ("Sales Terms") when they purchased their "Google-Made Devices" from the Google Store; and some agreed to both. But no matter how they agreed, and which agreement they agreed to, there can be no dispute that

1    many members of the Purchaser Class agreed to arbitrate, on an individual basis, the claims

2    asserted in this case, and that those members must be excluded from the class.

3         **A.     The Google Device AA**

4         The Google Device AA applies to a number of "Google-Made Devices" purchased by

5    members of the "Purchaser Class." Although Plaintiffs' definition of "Google-Made Devices"

6    does not include an exhaustive list of devices, it includes three categories of devices as examples:

7    (1) Google smart speakers, (2) Google smart displays, and (3) Pixel smartphones. Purchasers of

8    each of these three categories of devices agreed to the Google Device AA during some portion of

9    the class period. In addition, purchasers of numerous other "Google-Made Devices" agreed to the

10   Google Device AA during the class period. Exhibit 1 to the Declaration of Victoria Luu ("Luu

11   Decl.") summarizes (1) which Google-Made devices are subject to the Google Device AA, and

12   (2) when the Google Device AA went into effect for each of those Google-Made Devices.

13        Purchasers of Google-Made Devices agreed to the Google Device AA in two distinct

14   ways. First, for most of these devices, either a full printed copy of the Google Device AA or a

15   notice of the Google Device AA that refers consumers to the full Google Device AA ("pointer

16   paragraph") was included in the product packaging at the time of purchase. (Luu Decl., Ex. 1.)

17   Second, during device setup, users were required to agree to the Google Device AA to complete

18   the setup process and use their device. (*Id*. ¶¶ 4–6.) Specifically, during the device setup process,

19   users are presented with a screen entitled "Additional legal terms," which states that by clicking

20   "I accept," users are agreeing to the Google Device AA, which includes a "binding arbitration"

21   provision. Users cannot complete the setup process or use their device without clicking "I accept"

22   and agreeing to the Google Device AA. If a user clicks on the provided hyperlink to the Google

23   Device AA (which appears in bold bright blue text), the user is redirected to a screen displaying

24   the entirety of the Google Device AA. (*Id*. ¶ 17.) An example of the screen that users see during

25   the setup process is reproduced below.

26

27

28

CASE NO. 5:19-CV-04286-BLF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21 (*Id*. ¶ 18.) Importantly, the screen clearly explains that by clicking "I accept," users are agreeing

22 to "binding arbitration on an individual, non-class basis, as described in the Google Device

23 Arbitration Agreement, unless you opt out by following the instructions in the Arbitration

24 Agreement."  (*Id*.)

25        The Google Device AA further explains that the user and Google agree that any dispute

26 relating to the user's device will be resolved through binding arbitration, "regardless of the type

27 of dispute" and "regardless of the legal theory" on which the claim is based.  (Luu Decl., Ex. 5 at

28 1.) The Google Device AA also includes a class action waiver:

6. **No class actions**. By agreeing to arbitration, to the fullest extent legally permissible, we each may bring claims relating to these Arbitration Terms and/or your Google Device only in our individual capacities and not in a class action.

(*Id*. at 3.) It also contains the following provisions regarding the arbitration procedure:

- The arbitration agreement is governed by the Federal Arbitration Act ("FAA") and is "intended to be broadly interpreted" (*id*. at 1);

- Google will reimburse users their reasonable attorney's fees in certain situations and the arbitration filing fee for claims less than $10,000 (*id*. at 2); and

- The American Arbitration Association ("AAA") will administer the arbitration in accordance with its Consumer Arbitration Rules (*id*.).

Finally, the Google Device AA informs users that even after agreeing to arbitration, a user can return the device within 30 days of activating the device or opt out by completing the "Device Arbitration Opt-Out Form" available on Google's website within 30 days of activating the device. (*Id*. at 3–4.) The opt-out process is simple: it requires users to enter two pieces of information—the device type and the device's serial number—and click "Submit." (Luu Decl. ¶¶ 19–20.) According to Google's records, only a small percentage (approximately less than 0.1%) of users opt out of arbitration. (*Id*. ¶ 20.)

## B.     The Sales Terms

In addition to the Google Device AA, anyone who purchased a "Google Made Device" directly from Google's online store on or after August 3, 2020, agreed to the Sales Terms, which include an arbitration provision and class action waiver. (*Id*. ¶ 22.)  During the purchase process, Google provides a link to the Sales Terms, and purchasers are notified in bold font that by clicking "Confirm Purchase" they are agreeing to the Sales Terms, including the arbitration clause, which means that "any dispute related to your device . . . will be resolved through BINDING ARBITRATION on an individual, non-class basis." (*Id*. ¶ 23.) An example of the screen displayed to purchasers is as follows:

(*Id.* ¶ 24.)

Then again, on the first page of the Sales Terms, a bolded statement advises purchasers that the terms include an agreement to arbitrate any dispute related to the purchaser's device on an individual basis:

**PLEASE CAREFULLY READ THE TERMS, INCLUDING THE AGREEMENT TO ARBITRATE IN SECTION 23, MEANING THAT ANY DISPUTE RELATED TO YOUR DEVICE AND/OR SUBSCRIPTION SERVICES PURCHASED FROM THE STORE WILL BE RESOLVED THROUGH BINDING ARBITRATION ON AN INDIVIDUAL, NON-CLASS BASIS.**

1   (Luu Decl., Ex. 9 at 1.)

2         Paragraph 23 of the Sales Terms further confirms that the purchaser agrees that any

3   dispute relating to a device purchased from the Google Store "regardless of the type of dispute"

4   will be resolved through binding arbitration. (*Id*. at 10.) The Sales Terms go on to describe the

5   arbitration process, and provide some examples of the types of disputes that will be subject to

6   arbitration, including, for example, "disputes relating to . . . your purchase of a Device," "disputes

7   regarding the design, performance, features, or functionality of your Device," and "any disputes

8   regarding your use of your Device." (*Id*. at 10–11.) The Sales Terms further state that the

9   agreement to arbitrate applies "whether your dispute is with Google . . . or [a] parent company"

10  and "regardless of the legal theory on which" the claim is based. (*Id*. at 11.) Further, Paragraph

11  23(f), entitled "No Class Actions," makes clear that claims can only be brought "in our individual

12  capacities and not in a class action." (*Id*. at 13.) The Sales Terms also inform purchasers that they

13  may return their device if they do not wish to agree to arbitration.  (*Id*. at 14.) Thus consumers

14  who purchased (and did not return) a device from the Google Store on or after August 3, 2020,

15  are required to arbitrate claims relating to their device.

16        Because a significant portion of the certified "Purchaser Class" indisputably agreed to

17  have their claims arbitrated, either via the Google Device AA, the Sales Terms, or both, this

18  Court should grant Google's Motion and exclude them from the Purchaser Class.[1]

19  **III.    LEGAL STANDARD**

20        The FAA, 9 U.S.C. § 1, *et seq*., governs the arbitration agreements in this case for two

21  reasons. First, the Google Device AA and the Sales Terms both specify that the FAA governs.

22  (Luu Decl., Ex. 5 at 1; Ex. 9 at 10.) Second, Google-Made Devices are plainly "within the flow of

23

24        [1] Indeed, even Plaintiff Kumandan agreed to the arbitration provision in the Google
    Device AA when he purchased and set up his Pixel 4 smartphone in July 2020, given that the
25  Google Device AA was already in effect and Google has no record of Kumandan opting out. To
    be clear, Google is not moving to compel arbitration as to Kumandan's individual claims because
26  he also purchased and used earlier versions of the Pixel smartphone that are not subject to any
    arbitration agreement, and it makes little sense to litigate his claims in two separate forums. But
27  Kumandan's facts demonstrate that a significant portion of the Purchaser Class agreed to have
    their claims resolved through binding arbitration.
28

interstate commerce," and thus subject to the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995)); *id.* at 56–57 (explaining that the FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause" and Congress' Commerce Clause power extends to "economic activity" that "in the aggregate . . . would represent a general practice subject to federal control") (cleaned up); *see also United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997).

The FAA establishes that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If the answer to both questions is yes, then the FAA requires enforcement of the arbitration agreement according to its terms. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## IV.     ARGUMENT

### A.     THE GOOGLE DEVICE AA REQUIRES MANY ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS

#### 1.     The parties entered a valid, written agreement to arbitrate.

In determining whether the parties entered an enforceable arbitration agreement, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the parties agree that California law applies.

1   (ECF 222-1 at 25 (acknowledging that California law governs all disputes in this action).)  The

2   Google Device AA also specifies that California law governs the arbitration terms. (Luu Decl.,

3   Ex. 5 at 4.)

4          In California, "[c]ontract formation requires mutual consent." *HM DG, Inc. v. Amini*, 219

5   Cal. App. 4th 1100, 1109 (2013). Mutual consent "is determined under an objective standard

6   applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of

7   their words and acts, and not their unexpressed intentions or understandings." *Id*. "[F]ailure to

8   read a contract before agreeing to its terms does not relieve a party of its obligations under the

9   contract" so long as the party is on inquiry notice of the agreement's terms. *Nguyen v. Barnes &*

10  *Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (recognizing that an arbitration agreement in

11  online terms of use is enforceable if "the website puts a reasonably prudent user on inquiry notice

12  of the terms of the contract"); *see also Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th

13  158, 163 (1993) ("Ordinarily, one who accepts or signs an instrument, which on its face is a

14  contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has

15  not read it.").

16         Here, class members who purchased certain Google-Made Devices on or after the

17  effective date of the Google Device AA, as summarized in Exhibit 1, had to expressly consent to

18  arbitration before they could set up and use their devices. During the device setup process, users

19  are presented with a screen that conspicuously (1) provides notice of the Google Device AA,

20  (2) provides easy access to the complete Google Device AA, including via hyperlink, and

21  (3) notifies users that by clicking "I accept," users agree to be bound by the terms of the Google

22  Device AA. Users cannot complete the device setup process without first clicking "I accept" to

23  agree to the Google Device AA.

24         Courts routinely enforce online arbitration agreements like this, even where users do not

25  read the terms of the agreement before indicating their acceptance. *See, e.g., Houtchens v. Google*

26  *LLC*, No. 22-CV-02638-BLF, 2023 WL 122393, at *5 (N.D. Cal. Jan. 6, 2023) ("[P]laintiffs were

27  on inquiry notice of Fitbit's Terms of Service due to the clickwrap agreement to which they

28  assented when they created their Fitbit accounts."); *Freitas v. Cricket Wireless, LLC*, No. C 19-

-8-

7270 WHA, 2022 WL 1082014, at *10 (N.D. Cal. Apr. 11, 2022) ("[T]he 438 class members who executed online agreements were, at least, on constructive notice of the arbitration clause, and the online agreements are valid as to them."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' . . . a binding contract was created here."). By clicking "I accept" on the screen entitled "Additional legal terms," which both includes a hyperlink to the Google Device AA and expressly states that "by clicking 'I accept' you agree to the . . . Google Device Arbitration Agreement," many members of the Purchaser Class agreed to be bound by the Google Device AA. Thus, aside from those small percentage of purchasers who opted out by completing the online opt out form, virtually everyone who purchased one of the Google-Made Devices after the effective date, as summarized in Exhibit 1, agreed to arbitrate their claims.

Class members also manifested their assent to the Google Device AA by continuing to use their devices after receiving the Google Device AA or pointer paragraph included in the device box. Courts have held that terms contained within documents accompanying a product, including arbitration agreements, are enforceable under California law. *See, e.g., Sheffer v. Samsung Telecomm. Am., LLC*, No. CV 13-3466-GW AJWX, 2013 WL 7158343, *4–5 (C.D. Cal. Dec. 16, 2013) (concluding that plaintiffs' receipt of the warranty and arbitration provision that came in the box with their smartphones and their failure to opt out within 30 days "constitute[d] valid acceptance of those terms"); *Murphy v. DirectTV, Inc*., No. 2:07-CV-06465-JHN, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011) (agreeing with defendants that "by accepting, rather than canceling, their services after receiving the Customer Agreement [in the mail after their purchases], Plaintiffs manifested their acceptance of the Customer Agreement [including the arbitration provision therein] . . . even if they did not read it"); *aff'd*, 724 F.3d 1218 (9th Cir. 2013); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, *3 (N.D. Cal. Apr. 11, 2011) ("[A]greements packaged with a product are enforceable"). Thus, class members also agreed to be bound by the Google Device AA by continuing to use their devices after purchase, instead of returning them or opting out of the Google Device AA via Google's online

1  opt-out form.

2        **2.    The Google Device AA encompasses absent class members' claims in this case.**

3

4        The Google Device AA unambiguously requires the parties to arbitrate any dispute

5  relating to Google-Made Devices. (Luu Decl., Ex. 5 at 1–2.) Specifically, the Google Device AA

6  states that any dispute "that relates to . . . your device(s)," "regardless of the type of dispute," is to

7  be resolved through binding arbitration. (*Id*. at 1.) It further states that the terms "are intended to

8  be broadly interpreted" and apply, for example, to "any disputes regarding the design,

9  performance, features, or functionality of your Google Device," "any disputes regarding your use

10  of your Google Device," and "any disputes based on device defects." (*Id*.) Finally, it states that

11  the terms apply "whether your dispute is with Google [or a] parent company," and "regardless of

12  the legal theory on which you base your claim." (*Id*.)

13        Here, the claims of the Purchaser Class unquestionably qualify as a "dispute" that "relates

14  to" Google-Made Devices and thus fall squarely within the broad terms of the Google Device

15  AA. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)

16  (recognizing that arbitration agreements covering "[a]ny dispute, controversy, or claim" reach

17  "broad and far" in scope); *see also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F.

18  App'x 412, 413 (9th Cir. 2002) (noting that "the phrase 'relating to'" in an arbitration agreement

19  "has a broad and inclusive meaning"). In particular, the Purchaser Class asserts breach of contract

20  and UCL claims on the theory that they "pa[id] a price premium for [their] device[s] based on

21  Google's representations about how the device[s] operate," contending that Google

22  "surreptitiously record[ed] users' audio" via those devices and later "shar[ed] such audio with

23  third parties." (Dkt. 360 at 16, 21, 32 (emphasis added); *see also* Dkt. 141 ¶¶ 134, 262, 269.)

24  These claims not only "relate[] to" Google-Made Devices, they center on them, including the

25  "design, performance, features, or functionality" of those devices. (*See* Luu Decl., Ex. 5 at 1.)

26        Simply put, the Google Device AA is a valid and enforceable arbitration agreement that

27  was agreed to by a significant portion of the Purchaser Class, and squarely covers the claims that

28  they allege in this case.

### 3.      The Google Device AA is not unconscionable.

To the extent Plaintiffs argue that the Google Device AA is unconscionable, Plaintiffs bear the burden of proving unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability."); *see Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (looking to state law for which party bears the burden of proving unconscionability of an arbitration clause). Plaintiffs cannot come close to carrying their burden.

To prove unconscionability, Plaintiffs must prove that the Google Device AA is both procedurally and substantively unconscionable. *Armendariz v. Found, Health Psycare Servs.*, *Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power, while substantive unconscionability looks for overly harsh or one-sided results. *Id*. Neither procedural nor substantive unconscionability exists here.

As to procedural unconscionability, an arbitration agreement is "not adhesive" and thus not procedurally unconscionable where "there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (applying California law). Here, class members had the ability to opt out of the Google Device AA within 30 days of activating their devices. The ability to opt out defeats any claim of procedural unconscionability. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (holding that the right to opt out within 30 days defeated a claim of procedural unconscionability). That should be the end of the inquiry. *Mohamed*, 848 F.3d at 1211.

But any substantive unconscionability argument fails, too. Proving that an agreement is substantively unconscionable is a "high bar." *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 634 (2021) ("[T]he standard for substantive unconscionability is exceedingly high[.]"). The agreement must contain terms that are "so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotation marks omitted). Here, the terms are not one-sided. Almost all provisions in the Google Device AA are bilateral, including the obligation to arbitrate disputes. (Luu Decl.,

Ex. 5 at 1.) Bilateral provisions generally are not substantively unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024–25 (9th Cir. 2016) (concluding that the fact a provision was bilateral, rather than unilateral, weighed against finding it unconscionable under California law).

The few unilateral provisions in the Google Device AA protect the consumer, not Google. For example, consumers may choose the hearing location (Luu Decl., Ex. 5 at 2–3); Google will pay consumers' reasonable attorney's fees and arbitration fees in certain instances (*id*. at 2); and users may opt out of the terms (*id*. at 3–4.). That the Google Device AA also contains a class action waiver does not render the Google Device AA substantively unconscionable. *See Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (collecting Ninth Circuit cases interpreting Supreme Court precedent as "foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver"). Moreover, under the Google Device AA's terms, "[a]rbitration is conducted not according to some rules created by [Google], but rather by the [AAA]'s published and accessible rules." *Ekin v. Amazon Servs.*, LLC, 84 F. Supp. 3d 1172, 1176–77 (W.D. Wash. 2014); (*see* Luu Decl., Ex. 5 at 2.)

There is nothing unfair or unconscionable about the Google Device AA, and it should be enforced according to its terms.

### B.   THE SALES TERMS REQUIRE A PORTION OF ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS

The Sales Terms provide an independent basis to exclude certain members from the Purchaser Class.

### 1.   The parties entered into a valid, written agreement to arbitrate.

Members of the "Purchaser Class" who purchased a Google-Made Device directly from the online Google Store any time on or after August 3, 2020, agreed to arbitrate their dispute on an individual basis.[2]  These class members received notice that by purchasing their device via the Google Store, they affirmatively agreed to the Store Terms, which include an arbitration

---

[2] Like the Google Device AA, the Sales Terms specify that California law governs the contract.  (Luu Decl., Ex. 9 at 14.)

1  agreement. The hyperlink to the Sales Terms appears during the purchase process, and purchasers

2  are notified that by clicking "confirm purchase," they are affirmatively agreeing to the Sales

3  Terms including its arbitration clause. The Sales Terms further make clear that "[y]our purchase

4  of devices . . . from the Store constitutes your agreement to be bound by these Devices Terms of

5  Sale." (Luu Decl., Ex. 9 at 1.)

6       Courts regularly enforce online agreements in similar circumstances. For example, in *Britt*

7  *v. ContextLogic, Inc.*, the court held that a user was bound to the defendant's terms of use where

8  the defendant's online "sign-in screen" displayed a hyperlink to the terms and a statement that the

9  user agreed to those terms by signing into his or her account. 3:20-CV-04333-WHA, 2021 WL

10 1338553, at *4 (N.D. Cal. Apr. 9, 2021). Similarly, in *Peter v. DoorDash, Inc.*, the court enforced

11 an arbitration agreement contained in terms and conditions that were hyperlinked, in blue font,

12 directly below a notice stating that the user agreed to the terms and conditions by signing up for

13 services. 445 F. Supp. 3d 580, 582, 587 (N.D. Cal. 2020).

14      Likewise, here, those who purchased devices from the Google Store would have seen a

15 screen informing them that by clicking "confirm purchase," they were agreeing to the Sales

16 Terms, including its arbitration clause. Thus, this case is substantively indistinguishable from the

17 cases in which courts in this District have enforced online arbitration agreements. The arbitration

18 agreement in the Sales Terms is binding and enforceable.

19            **2.    The agreement encompasses absent class members' claims in this case.**

20      Like the Google Device AA, the arbitration agreement in the Sales Terms is broad. It

21 applies to "ANY DISPUTE RELATED TO YOUR DEVICE," including, for example, "any

22 disputes relating to . . . your purchase of a Device . . . from the Store," "any disputes regarding the

23 design, performance, features, or functionality of your Device," and "any disputes regarding your

24 use of your Device." (Luu Decl., Ex. 9 at 1, 11.) The arbitration agreement also applies

25 "regardless of the legal theory on which" a claim is based.  (*Id*.)

26      For the same reasons discussed above with respect to the Google Device AA, the

27 Purchaser Class's breach of contract and UCL claims in this case plainly relate to the devices that

28 class members purchased, including the "performance" and "functionality" of those devices. *See*

-13-

*California Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001-HSG, 2022 WL 3348425, at *3 (N.D. Cal. Aug. 12, 2022) (concluding that a similarly worded arbitration agreement encompassed a broad variety of claims); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720–21 (9th Cir. 1999) (collecting cases broadly construing similar arbitration agreements).

### 3.     The Sales Terms are not unconscionable.

Plaintiffs cannot show that the arbitration agreement in the Sales Terms is procedurally or substantively unconscionable. Purchasers could have declined to make a purchase or returned their device if they did not want to be bound by the Sales Terms. (Luu Decl., Ex. 9 at 14.) As discussed above, this defeats any argument about procedural unconscionability. *Circuit City*, 283 F.3d at 1200. The Court can end its inquiry there. *Mohamed*, 848 F.3d at 1211. But Plaintiffs also cannot show substantive unconscionability. The terms are not one-sided. For example, the terms give purchasers the right to choose the hearing location (Luu Decl., Ex. 9 at 12), the ability to recover attorney fees if they prevail by a certain amount (*id.*), and the right to have Google reimburse their filing fee for claims less than $10,000 (*id.*). The AAA will administer the arbitration, and the AAA's rules will govern proceedings. Plaintiffs cannot meet their burden to show that the Sales Terms are unconscionable given these provisions. *See Ekin*, 84 F. Supp. 3d at 1176 (remarking that similar terms in an arbitration agreement "hardly strike this Court as unfair").

### C.     ABSENT CLASS MEMBERS WHO AGREED TO ARBITRATE SHOULD BE EXCLUDED FROM THE CLASS DEFINITION

The Court has certified the "Purchaser Class," but class members have not yet received notice. In these circumstances, courts recognize that a successful motion to compel arbitration serves to "exclude from the class definition absent class members who are likely subject to arbitration." *Freitas*, 2022 WL 1082014, at *3; *see Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-CV-01696-YGR, 2018 WL 3537083, at *10 (N.D. Cal. July 23, 2018) (refining class definition after granting a motion to compel arbitration); *see also Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 599 (C.D. Cal. 2021) (noting that the court's order granting a motion to compel arbitration resulted in modification of the class definition).

1    In the interest of judicial efficiency, absent class members who agreed to have their claims

2    arbitrated via the Google Device AA and/or Sales Terms should be excluded from the "Purchaser

3    Class." *See Freitas*, 2022 WL 1082014, at *10 (excluding class members who agreed to

4    arbitration from the class definition "as a concession to efficient resolution of class-wide

5    issues."). Thus, the definition of the Purchaser Class should be revised as: "All Users who

6    purchased a Google-Made Device and did not agree to arbitrate disputes related to that device."

7    **V.    CONCLUSION**

8    For these reasons, Google respectfully requests that the Court grant Google's Motion, and

9    exclude from the "Purchaser Class" all purchasers who agreed to a class action waiver and to

10   have any dispute related to their device resolved through individual arbitration, either via the

11   Google Device AA, the Sales Terms, or both.

12

13   Dated:  July 21, 2023                               **PERKINS COIE LLP**

14

15                                                       By:  ___*/s/ Sunita Bali*___
                                                         Bobbie J. Wilson, Bar No. 148317
16                                                       Sunita Bali, Bar No. 274108
                                                         Erin Earl (*pro hac vice*)
17
                                                         Attorneys for Defendants
18                                                       Alphabet Inc. and Google LLC

19

20

21

22

23

24

25

26

27

28