Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 19-cv-04286-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date: December 14, 2023<br>Time: 9:00 a.m.<br>Dept.: Courtroom 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Google Waived Its Right to Arbitration ............................................................. 4

        1. Google Knew of Its Purported Right to Compel Arbitration ................. 5

        2. Google Acted Inconsistently With its Purported Right to Arbitrate ...... 6

    B. Google Fails to Demonstrate that Any Class Members Agreed to Arbitration ... 7

        1. Google Fails to Show Lack of a Genuine Issue as to Contract Formation ... 7

        2. Google Fails to Show that Class Members' Claims Are Covered .......... 8

    C. The Arbitration Provisions are Unconscionable ................................................ 9

IV. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ferguson v. Countrywide Credit Indus., Inc.*,
 298 F.3d 778 (9th Cir. 2002) ................................................................................................... 10

*Hill v. Xerox Business Servs., LLC*,
 59 F. 4th 457 (2023) .......................................................................................................... *passim*

*Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc.*,
 969 F.2d 796 (9th Cir. 1992) ..................................................................................................... 5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-cv-5781 (SI),
 2013 WL 3784938 (N.D. Cal. Jul. 18, 2013) ............................................................................ 6

*In re Uber Text Messaging*,
 No. 18-cv-02931 (HSG), 2019 WL 2509337 (N.D. Cal. Jun. 18, 2019) ............................. 7, 8

*Ingle v. Circuit City Stores, Inc.*,
 328 F.3d 1165 (9th Cir. 2003) ................................................................................................ 10

*Jackson v. Amazon, Inc.*,
 65 F.4th 1093 (9th Cir. 2023) ................................................................................................... 9

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*,
 552 F. App'x 663 (9th Cir. 2014) .............................................................................................. 6

*Lima v. Gateway, Inc.*,
 886 F.Supp.2d 1170 (C.D. Cal. 2012) .................................................................................... 10

*Martin v. Yasuda*,
 829 F.3d 1118 (9th Cir. 2016) ......................................................................................... 4, 5, 6

*Martinez v. Welk Grp., Inc.*,
 No. 09-cv-2883 (AJB), 2012 WL 112535 (S.D. Cal. Jan. 12, 2012) ....................................... 7

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
 931 F.3d 935 (9th Cir. 2019) ..................................................................................................... 6

*Norcia v. Samsung Telecommunications Am., LLC*,
 845 F.3d 1279 (9th Cir. 2017) ................................................................................................... 7

*Plows v. Rockwell Collins, Inc.*,
 812 F. Supp. 2d 1063 (C.D. Cal. 2011) .................................................................................... 5

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*,
 399 F. Supp. 3d 1018 (C.D. Cal. 2019) .................................................................................. 10

*Roes v. SFBSC Mgmt., LLC*,
 656 F. App'x 828 (9th Cir. 2016) .............................................................................................. 4

*Solo v. Am. Ass'n of Univ. Women*,
   187 F. Supp. 3d 1151 (S.D. Cal. 2016) ........................................................................... 10

*Stafford v. Rite Aid Corp.*,
   No. 17-CV-1340-AJB-JLB, 2020 WL 905606 (S.D. Cal. Feb. 25, 2020) ................... 5, 6

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ........................................................................................ 10

*Zaborowski v. MHN Gov't Servs., Inc.*,
   936 F. Supp. 2d 1145 (N.D. Cal. 2013) ......................................................................... 10

I.     INTRODUCTION

This is a classic case of waiver. A defendant waives any right to arbitration when it makes a "tactical choice to resolve the claims judicially," then "belatedly cho[oses] to retreat and to claim the benefit of arbitration . . . only once its judicial strategy fail[s]." *Hill v. Xerox Business Servs., LLC*, 59 F. 4th 457, 473 (2023). That is precisely what Google did here. Four years into the litigation, having had four motions to dismiss denied, completed fact discovery, and a nationwide class certified, Google decided to try arbitration. It is much too late. The Ninth Circuit has recently made crystal clear that Google cannot hide behind the procedural particularities of class actions to avoid a finding of waiver. While it may be true that this Court "could not compel nonparties to the case to arbitrate until after a class had been certified and the notice and opt-out period were complete," *Xerox*, 59 F. 4th at 469, *Google* was perfectly capable of waiving its right to arbitrate sooner. That is because "waiver is a unilateral concept" that "does not reach out to affect the rights of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a right to be asserted." *Id.*

Google waived its right to arbitrate multiple times. The first was when it submitted a case management statement ("CMC") in 2020 asserting that this case was "**not suitable for reference to binding arbitration**."[1] CMC, ECF No. 67 at 11. It reinforced that decision when it filed four successive motions to dismiss asserting every substantive argument under the sun, but saying not a word about arbitration. Google then litigated all the way through fact discovery without requesting or producing a shred of evidence regarding arbitration agreements. When Google finally asserted in its opposition to Plaintiffs' class certification motion that certain class members were subject to arbitration agreements, this Court rightly observed that Google failed to explain why any of the four unsigned exemplar agreements it proffered would apply to the claims at issue, or to identify how many, if any, class members might be subject to those agreements. Class Cert. Order, ECF No. 369-2 at 29-30. Notably, Google is not moving to compel arbitration as to Plaintiff Kumandan because he purchased a Pixel smartphone not subject to any arbitration agreement, "and it makes little sense to litigate his claims in two separate forums." ECF No. 397 ("Google Br.") at 6 n.1. But that is presumably true of thousands of other class

---

[1] Unless otherwise stated, all emphasis is added and internal citations and quotations are omitted.

members—whose claims Google has been vigorously litigating on the merits in this forum for the past four years. Google's conduct throughout this litigation has been "inconsistent with its exercising its right to arbitrate" and therefore constitutes waiver. *See Xerox*, 59 F. 4th at 478. Indeed, the only explanation for Google's total failure to address *Xerox* or the issue of waiver is that there simply *is* nothing Google can say to avoid the reality that it has waived any right to arbitration it may have had.

Independent of waiver, Google's motion to compel arbitration fails for a number of other reasons (despite containing 5 more pages of argument than the Court's Standing Order permits).[2] *First,* Google has not submitted evidence showing that *any* class member—even Plaintiff Kumandan—actually entered into an arbitration agreement. It relies instead on a generic description of the device set-up, purchase, and opt-out processes, presented in the declaration of a Google employee that Plaintiffs now have no opportunity to question. *Second,* Google fails to show that the two arbitration clauses it invokes cover class members' claims. Google's motion conspicuously ignores the Terms of Service ("TOS"), the contract that Plaintiffs allege Google breached and that governs the specific subject of Plaintiffs' claims (the "Assistant"). The TOS provide that "***all claims arising out of or relating to this agreement or the Services [defined to specifically include Google Assistant] . . . will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA***." Declaration of Margaret MacLean, TOS, Ex. 1 at 13. Google's attempt to cram Plaintiffs' claims under other contracts specific to Google hardware to take advantage of their arbitration clauses fails. *Third,* even if the Court were to find that the arbitration provision in the Device AA and Sales Terms apply here, those provisions are procedurally and substantively unconscionable.

## II. BACKGROUND

Since the filing of the first complaint in July 2019, Google has actively litigated this case. Google has moved to dismiss four times on multiple grounds (*see* ECF Nos. 56, 91, 120, 144), which Plaintiffs largely defeated. *See* ECF Nos. 80, 138, & 152. Thereafter, Google filed an Answer to the Fourth

---

[2] *Compare* Civil Standing Order § IV.A.4 *with* Google Br. at 1-15. Plaintiffs respectfully request that the Court decline to consider any arguments Google made in pages 10-15 of its brief, or, alternatively, that the Court decline to consider Google's reply, as Google has already exceeded its page allowance.

Amended Complaint (ECF No. 154) and a motion for summary judgment (ECF No. 245), and the parties proceeded through fact discovery. On July 18, 2022, Plaintiffs and class members moved to certify three classes. *See* ECF No. 222. On December 16, 2022, the Court certified the "Purchaser Class" consisting of "All Users who purchased a Google-Made Device" and permitting the class to proceed with its claims for breach of contract and for violation of the "unlawful prong" of the UCL. ECF No. 369-2 at 31.

For at least three of the four years of this litigation, Google opted not to assert its purported arbitration rights. Google mentioned arbitration for the first time in the parties' February 20, 2020 CMC, representing to the Court that the case was "**not suitable for reference to binding arbitration**." *See* ECF No. 67 at 11. After litigating the case for two years and four motions to dismiss, in its January 25, 2022 Answer, it claimed in boilerplate language to "reserve" its arbitration rights (ECF No. 154 at 116), and then said nothing further on the topic. Two and a half years later, at class certification, Google argued that Plaintiffs and class members could not demonstrate predominance due to some class members being subject to arbitration agreements. Class Cert. Opp., ECF No. 268 at 18-19. The Court rejected this argument, finding that Google did not provide sufficient briefing to determine whether any arbitration agreements apply to the Purchaser Class. ECF No. 369-2 at 29-30. Google did not move to compel arbitration until February 2, 2023. *See* Mot. to Compel, ECF No. 377.[3]

Google's motion relies upon arbitration clauses in two documents, the Device Arbitration Agreement ("Device AA") and the Sales Terms. Google Br. at 2-6. The Device AA and Sales Terms purport to cover various devices from 2018 to the present (Luu Decl., Ex. Nos. 1, 9). Neither of these agreements cover the Assistant or any software. Indeed, Google did not rely on the Device AA or Sales Terms in any of its four motions to dismiss. The contract that *does* cover the Assistant is the TOS. MacLean Decl., Ex. 1. Google itself relied upon the TOS in its first bid to dismiss Plaintiffs' breach of contract claims. *See* ECF No. 56 at 16 (citing to the TOS attached to declaration, stating "Google does not 'make any specific promises about the services' including 'the specific functions of the services, or their reliability, availability, or ability to meet your needs,' but rather 'provide the services 'as is'"). The TOS

---

[3] Proceedings were then temporarily stayed pending mediation. Upon expiration of the stay, the Court requested Defendants refile their motion, which they did on July 21, 2023.

applies to all the "Services" listed in Google's "List of Services & Service-Specific Additional Terms," one of which is the Assistant. *See* MacLean Decl., Ex. 2 at 2. No other agreements are listed as applicable to the Assistant. *Id.* The TOS contains a forum selection clause providing that "disputes will be resolved exclusively in the federal or state courts of Santa Clara County." *Id.*, Ex 1 at 13.

## III.   ARGUMENT

### A. Google Waived Its Right to Arbitration

As Google concedes, "[a] party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Google Br. at 7. *See also Roes v. SFBSC Mgmt., LLC*, 656 F. App'x 828, 829 (9th Cir. 2016) (affirming denial of motion to compel arbitration). Google has met neither prong. The right to arbitration, like any other contractual right, can be waived. *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016). A party seeking to demonstrate waiver of a right to arbitration is no longer required to demonstrate prejudice. *Xerox*, 59 F.4th at 468. Accordingly, the test for waiver "consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Id.* Both elements are easily satisfied here.

Tellingly, Google does not even address the issue of waiver in its briefing despite that the Ninth Circuit in *Xerox* recently (on March 31, 2023) addressed this precise procedural situation, in which a defendant in a class action case moved to compel arbitration after class certification. *Xerox*, 59 F.4th at 468. The Ninth Circuit rejected the argument that it was impossible for Xerox to waive its right to arbitrate before the class was certified: "[W]e have never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *Id.*, 59 F. 4th at 469. This is because "waiver is a unilateral concept. A finding of waiver by [Xerox] looks only to the acts of [Xerox], binds only [Xerox], does not reach out to affect the rights of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a right to be asserted." *Id.* A court evaluating waiver is "tasked with evaluating a party's actions and asking whether those actions, even if seemingly commonplace and not an express disavowal of arbitral forums, evinced the party's partiality for a judicial resolution of the claims." *Id.* at 472. A party evinces such a "partiality for judicial resolution" when it makes the "choice to rely on judicial proceedings, such as by filing pleadings and

motions and approving a pre-trial conference order[.]" *Id.* Thus, under the now-controlling Ninth Circuit precedent established in *Xerox*, the two-element test for waiver applies to Google regardless of whether Google's motion to compel was ripe prior to class certification. As Plaintiffs set forth below, Google (1) knew of its right to arbitrate and (2) acted inconsistently with that right.

### 1. Google Knew of Its Purported Right to Compel Arbitration

Google knew of its right to arbitrate. Under California law, knowledge of an arbitration agreement is imputed to the contract's drafter. *See Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011) (citing *Hoffman Const. Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992)). Here, it is undisputed that Google drafted the Device AA and the Sales Terms. As the drafter, Google is charged with knowledge of the terms in each version of the Device AA and the Sales Terms. *Plows*, 812 F. Supp. 2d at 1066. Notably, in February 2020, when Google expressly asserted in the CMC that this case was "not suitable for binding arbitration," (ECF No. 67 at 11) Google had already been using the Device AA it seeks to enforce here for a year and a half and had extended it to cover an increasing range of products, updating its language three times between October 2018 and October 2019. *See* Luu Decl. ¶¶ 4-8. Not only did Google know of the arbitration agreement that it drafted, but it was expressly *required* by the Court to investigate whether any arbitration agreements might apply to the claims in this case. *See* Standing Order for All Judges of the Northern District of California, Contents of Joint Case Management Statement, ¶ 13. Even if Google failed to conduct such an investigation, it still had the relevant arbitration agreements in its possession and is still considered to have known of its right to arbitrate. *See, e.g., Stafford v. Rite Aid Corp.*, No. 17-CV-1340-AJB-JLB, 2020 WL 905606, at *4 (S.D. Cal. Feb. 25, 2020), *aff'd*, 998 F.3d 862 (9th Cir. 2021) (finding waiver where the party seeking to compel arbitration had the information needed to evaluate that defense in its possession but failed to conduct a diligent investigation). Further, Google confirmed, in its January 25, 2022 Answer that it knew of its right to arbitrate when it expressly purported to "reserve" that right. *See* ECF No. 154 at 116. That "reservation," standing alone, does not actually demonstrate intent to arbitrate. *See Martin*, 829 F.3d at 1125 ("A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver"). But it *does* establish that Google knew of its arbitration right. *See Xerox*, 59 F.4th at 471 (knowledge element satisfied where defendant asserted arbitration as an affirmative defense

in its answer).

**2. Google Acted Inconsistently With its Purported Right to Arbitrate**

In determining whether a party has acted inconsistently with its right to arbitrate, the court considerers "the totality of the parties' actions." *Xerox*, 59 F.4th at 471. Courts generally find waiver where parties fail to assert their right to arbitrate early in a case and instead actively litigate on the merits. *Id.* at 470; *see also Martin*, 829 F.3d at 1125 ("[A] party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which [is] inconsistent with a right to arbitrate"); *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (finding defendant took inconsistent acts by filing a motion to dismiss and waiting eleven months to raise the issue of arbitration). Here, Google's conduct over the past four years has made clear that Google was pursuing a determination on the merits in litigation, not arbitration. Of course, Google's express statement to that effect in the CMC is the clearest indication, but there are many others as well. *First*, Google filed *four* motions to dismiss, asserting a host of substantive defenses that would be applicable to absent class members' claims. *See* ECF No. 56 at 6, 12; ECF No. 91 at 14-24; ECF No 120 at 13-14; ECF No. 144 at 3-5. Each one of these motions—none of which said a word about arbitration—demonstrates a clear preference for judicial resolution of Plaintiffs' claims. *See, e.g., Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019) (holding that filing a motion to dismiss with prejudice on merits issues was an inconsistent act)); *Stafford*, 2020 WL 905606, at *5 (filing two motions to dismiss for failure to state a claim was inconsistent with asserting right to arbitration). *Second*, Google litigated all the way through fact discovery—all without a word about arbitration until Google's opposition to Plaintiffs' class certification motion. Indeed, in deposing each and every named Plaintiff, Google never asked a single question regarding arbitration. Participating in discovery without invoking arbitration is regularly found to constitute waiver. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-cv-5781 (SI), 2013 WL 3784938, at *3, 4 (N.D. Cal. Jul. 18, 2013) (finding defendant waived its right to arbitration by making a "conscious decision to wait" until "the last day of fact discovery, some 18 months after [plaintiff] filed its complaint, to file its motion and by actively engaging in litigation through the issue of discovery requests and depositions"). *Third*, Google filed a motion for summary judgment, seeking to "defeat[] a substantial amount of the claims in

this case." *Xerox*, 59 F. 4th at 476 (observing that the filing of a motion for summary judgment is the "most clear[]" evidence that a party "actively litigated" the case). All of the arguments Google offered in its summary judgment motion apply to absent class members as well as the named Plaintiffs, and are the "most clear" evidence of Google's intent to finally resolve all class members' claims in this forum rather than via arbitration. *Id.*

Google has plainly "exerted a significant amount of energy challenging the merits [of Plaintiffs' claims] raised personally and on behalf of the class members." *Xerox*, 59 F. 4th at 473. In doing so, Google acted inconsistent with its right to compel arbitration and only after a class of many million individuals was certified, moved to compel arbitration. Having failed to dispose of the action, Google cannot use arbitration now as a "backup plan for litigation strategies." *Martinez v. Welk Grp., Inc.,* No. 09-cv-2883 (AJB), 2012 WL 112535, at *4 (S.D. Cal. Jan. 12, 2012).

**B.     Google Fails to Demonstrate that Any Class Members Agreed to Arbitration**

Google has also failed to meet its burden of proof regarding the existence of an arbitration agreement with any class members that covers the claims in this action. Motions to compel arbitration are subject to the same standard applied at summary judgment, with the party seeking to compel arbitration bearing the burden of proof. *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279 (9th Cir. 2017).

**1.     Google Fails to Show Lack of a Genuine Issue as to Contract Formation**

Google fails to meet its burden of showing that no genuine issue of fact exists regarding the formation of an agreement to arbitrate. Absent from Google's motion is a single signed arbitration agreement or other proof that any individual assented to Google's Device AA or Sales Terms. It relies instead on screenshots of images and hyperlinks that a hypothetical purchaser *might* see at device setup process (*see* Google Br. at 2-6). These screenshots do not prove that any class members were ever actually presented with the screens Google cites or whether they "checked the box" that Google claims operated as a consent. *Id.* Likewise, Google offers no concrete evidence that any class member received documentation in the boxes their devices came in. Where Google did not "produce[] a signed contract or other proof of an agreement—just declarations from its employees and unauthenticated screenshots from its database," Google cannot meet its burden to establish the existence of an agreement. *In re Uber Text*

*Messaging*, No. 18-cv-02931 (HSG), 2019 WL 2509337, at *8 (N.D. Cal. Jun. 18, 2019). Indeed, Google did not bother to locate a record of Plaintiff Kumandan's assent to the relevant arbitration agreement. Instead, Google simply infers that because it has no record of Plaintiff Kumandan opting-out, he *must* have agreed to arbitrate (Google Br. at 6 n.1). This kind of negative inference cannot establish mutual assent as "[t]here are a number of other potential explanations for how [defendant] came to possess [plaintiff's] information"—such as a partial completion of the setup process, or other errors—each of which Google bears the burden of ruling out. *Uber*, 2019 WL 2509337, at *9.

Google likewise cannot rely on its product packaging to establish mutual assent. Google Br. at 9. While some courts have held that arbitration agreements conspicuously packaged with a product and received by consumers are binding (*see*, *e.g.*, *id.* at 9 (citing cases)), Google has not demonstrated that there is no issue of fact as to whether its product packaging is sufficient to bind class members. Google admits that for some devices a copy of the Device AA was within a booklet that contains "some of the agreements that apply to the customer's use of the device." Luu Decl. ¶ 15. Other devices were accompanied only by a "pointer paragraph". Luu Decl. ¶ 16. Google therefore fails to offer the requisite evidence to meet its burden of demonstrating that an agreement to arbitrate with any class member exists.

### 2. Google Fails to Show that Class Members' Claims Are Covered

Even if Google had not waived its right to arbitration and presented evidence demonstrating that class members agreed to the Device AA and/or the Sales Terms, the arbitration provisions in those contracts do not apply to the claims here. The Purchaser Class specifically claims that Google breached the *TOS*, not the Device AA or the Sales Terms, through its conduct related to the Assistant. *See* Class Cert. Order, ECF No. 369-2 at 3-32 (certifying breach of contract and UCL claims based on Google's TOS); Complaint (Aug. 2, 2021), ECF No 141 ¶¶ 4, 14, 245. The TOS, unlike the Device AA and Sales Terms which apply to "devices," specifically applies to the Assistant. *See* MacLean Decl., Ex 2 at 1. The forum selection clause contained in the TOS specific to the Assistant is clear as day: "***All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.***" *See* MacLean Decl., Ex. 1 at 13. The Purchaser Class's claim for breach of the TOS is obviously a claim "arising out of these terms," and is also a claim "relating to the Services," which includes the

Assistant. *See* MacLean Decl., Ex. 2 at 2. Plaintiffs accordingly brought this action in the federal courts in Santa Clara County, California, right where it belongs according to the choice of forum provisions that Google drafted itself.

Save for one cursory mention (Luu. Decl. ¶ 17), Google says nothing in its brief about the TOS or its forum selection clause. It pretends the Device AA and Sales Terms are the only applicable contracts, and argues this action is a dispute "regarding [Plaintiffs'] Google device" [Device AA], or "related to [their] device [Sales AA]." *See* Google Br. at 10, 13-14. While it is true that the Assistant lives on devices, that does not mean that these device agreements cover the claims here. The very existence of a TOS covering *only* software products such as the Assistant, with its own forum selection provision, as contrasted with the separate Device AA and Sales Terms, covering *only* hardware products and containing a separate forum selection provision contradictory to that in the TOS, demonstrates that Google treats software and hardware separately.[4] Plaintiffs are not asserting any claims for breach of the Device AA or Sales Terms, and the proof for their claims for breach of the TOS has nothing to do with the Device AA or the Sales Terms.

The Ninth Circuit has previously rejected identical attempts to take advantage of arbitration provisions in contracts unrelated to the plaintiff's claims. For example, in *Jackson v. Amazon*, *Inc.* the court declined to apply an arbitration provision in the plaintiff's employment contract to Amazon's alleged breach of wiretapping statutes and invasion of privacy. 65 F.4th 1093, 1104 (9th Cir. 2023). The plaintiff did not allege breach of the employment contract, only that defendant Amazon "essentially spied on Flex drivers while they were not working…without drivers' knowledge." *Id.* at 1101. The plaintiff's claims for breach of privacy did "not depend on any terms of his contract as a driver", the harm alleged was "not measured by or dependent on the terms" of the employment contract, and the alleged misconduct was "wholly unrelated" to the employment contract. *Id.* at 1102. So too here.

C. **The Arbitration Provisions Are Unconscionable**

Google's motion should still be denied for the independent reason that the agreements at issue are

---

[4] Indeed, Google's declarant in support of its motion to compel arbitration works specifically for the "Hardware team." *See* Luu Decl. ¶ 1.

procedurally and substantively unconscionable, and therefore, unenforceable. Procedural unconscionability has two elements: "(1) oppression, which focuses on bargaining power disparity and the resulting absence of meaningful choice, and (2) surprise, which turns on whether operative terms are hidden in lengthy forms drafted by the party seeking to enforce the contract." *Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1030–31 (C.D. Cal. 2019) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002)). Here, the bargaining power disparity between Google and Plaintiff cannot be disputed. Courts routinely find procedural unconscionability in cases between parties on more equitable footing than Google (one of the world's largest companies) and class members (ordinary consumers presented with a contract of adhesion). *See, e.g.*, *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013), *aff'd,* 601 F. App'x 461 (9th Cir. 2014) (disparity in bargaining power existed between "well-educated professionals" and the entity that hired them). Further, the Device AA, to the extent it accompanied a device *already* purchased (*e.g.*, Luu Decl., Ex. 1 ¶¶ 15, 16), came as a surprise. *See Lima v. Gateway, Inc.*, 886 F.Supp.2d 1170, 1182 (C.D. Cal. 2012) (holding arbitration agreement contained in the box after purchase was a "surprising way" to learn of the arbitration agreement, "underscor[ing] the high degree of procedural unconscionability present").

A contract provision is also substantively unconscionable if it is "overly harsh," "unduly oppressive," or "one-sided." *Solo v. Am. Ass'n of Univ. Women*, 187 F. Supp. 3d 1151, 1159 (S.D. Cal. 2016). Here, the confidentiality provision in the Device AA (Luu Decl., Ex. 2 ¶ 8), allows Google to leverage the information learned in all its arbitration of the same claims while prohibiting plaintiffs from sharing the same knowledge. *See Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003) (finding a similar "secrecy provision" unconscionable). Additionally, Google is allowed to make unilateral modifications to the agreement without notifying signatories, a factor courts have found unconscionable as well. Luu Decl., Ex. 2 ¶ 10; Ex. 9 ¶ 23(j). *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (finding unilateral right to modify, even with notice, substantively unconscionable).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Arbitration.

| | | |
|---|---|---|
| 1 | Dated: August 11, 2023 | **LOWEY DANNENBERG, P.C.** |
| 2 | | |
| 3 | | *s/ Margaret MacLean*<br>Christian Levis (*pro hac vice*) |
| 4 | | Margaret MacLean (*pro hac vice*)<br>Andrea Farah (*pro hac vice*) |
| 5 | | 44 South Broadway, Suite 1100<br>White Plains, NY 10601 |
| 6 | | Telephone: (914) 997-0500<br>Facsimile:  (914) 997-0035 |
| 7 | | clevis@lowey.com<br>mmaclean@lowey.com |
| 8 | | afarah@lowey.com |
| 9 | | Mark N. Todzo (Bar No. 168389) |
| 10 | | Eric S. Somers (Bar No. 139050)<br>**LEXINGTON LAW GROUP** |
| 11 | | 503 Divisadero Street<br>San Francisco, CA 94117 |
| 12 | | Telephone: (415) 913-7800<br>Facsimile: (415) 759-4112 |
| 13 | | mtodzo@lexlawgroup.com |
| 14 | | Joseph P. Guglielmo (*pro hac vice*) |
| 15 | | Erin Green Comite (*pro hac vice*)<br>**SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| 16 | | The Helmsley Building<br>230 Park Avenue, 17th Floor |
| 17 | | New York, NY 10169-1820<br>Telephone: (212) 223-6444 |
| 18 | | Facsimile: (212) 223-6334<br>jguglielmo@scott-scott.com |
| 19 | | ecomite@scott-scott.com |
| 20 | | John T. Jasnoch (Bar No. 281605) |
| 21 | | Stephanie A. Hackett (Bar. No. 238655)<br>Hal C. Cunningham (Bar. No. 243048) |
| 22 | | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** |
| 23 | | 600 W. Broadway<br>Suite 3300 |
| 24 | | San Diego, CA 92101<br>Telephone: (619) 233-4565 |
| 25 | | Facsimile: (619) 233-0508<br>Jjasnoch@scott-scott.com |
| 26 | | shackett@scott-scott.com<br>hcunningham@scott-scott.com |
| 27 | | |
| 28 | | *Attorneys for Plaintiffs a*nd *the Proposed Class* |

**CERTIFICATION OF SERVICE**

I hereby certify that on August 11, 2022, I electronically filed the foregoing Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

*s/ Margaret MacLean*
Margaret MacLean
