1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    ASIF KUMANDAN, et al.,                    Case No.  19-cv-04286-BLF

8              Plaintiffs,

9         v.                                   **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

10   GOOGLE LLC, et al.,

11             Defendants.                     [Re:  ECF No. 222]

12

13         Plaintiffs brought this putative class action to address perceived privacy violations by

14   Defendants Alphabet Inc. and Google LLC (collectively "Google").  As shown below, they have

15   failed to put forth a qualifying class representative for the Privacy Classes and only succeed on the

16   Purchaser Class at this stage.  Plaintiffs Asif Kumandan, Melissa Spurr, minor B.S. through

17   guardian Melissa Spurr, Lourdes Galvan, and Eleeanna Galvan's operative complaint alleges eight

18   claims for relief: (1) violation of the Wiretap Act, 18 U.S.C. §2510, *et seq*.; (2) violation of the

19   Stored Communications Act ("SCA"), 18 U.S.C. § 2702, *et seq.*; (3) violation of the California

20   Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632; (4) intrusion upon seclusion; (5)

21   invasion of privacy, Cal. Const. art. I, § 1; (6) breach of contract; (7) violation of the California

22   Unfair Competition Law ("UCL"), Cal. Business & Professions Code §17200, *et seq*; and (8)

23   Request for Relief under the Declaratory Judgment Act.[1]  4th Amd. Compl. ("4AC") ¶¶ 156-270,

24   _____

25   [1] The Fourth Amended Complaint alleged two additional claims for relief: (1) violation of the

26   Consumers Legal Remedies Act ("CLRA"), California Civil Code §1750, *et seq.*, and (2) common

27   law fraud, deceit, and/or misrepresentation.  *See* 4AC ¶¶ 271-295.  The Court granted Google's

28   motion to dismiss these claims on January 11, 2022.  *See* Order Granting Mot. to Dismiss Counts

296-305, ECF No. 141.  Plaintiffs now move for class certification.  Pls.' Mot. for Class Certification ("Mot."), ECF No. 222.  Google opposes.  Defs. Opp'n to Pls.' Mot. for Class Certification ("Opp'n"), ECF No. 268.  Plaintiffs have filed a reply in support of their motion. Pls.' Reply Supp. Class Certification ("Reply"), ECF No. 304.  The Court held a hearing on this motion on October 20, 2022.  For the reasons stated on the record and below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for class certification.

I.    **BACKGROUND**

   A.    **Plaintiffs' Claims**

Plaintiffs' claims center around the operation of Google Assistant.  Google Assistant is software that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for tasks that Google Assistant executes.  4AC ¶ 4.  It comes preloaded on certain devices, such as the Google Home, the Google Pixel smartphones, and third party-manufactured smartphones that use the Google Android operating system; it can also be installed on a range of devices.  *Id.*

Because Google Assistant is voice-activated, it is constantly listening for a user to utter certain "hot words" to indicate the start of a user command.  *Id.* ¶ 80.  Specifically, Google Assistant listens for a user to utter the phrases "Okay Google" or "Hey Google."  *Id.*  It "listens" by recording and analyzing short snippets of audio, which are stored locally in the Google Assistant Enabled Device's random-access memory ("RAM").  *Id.*¶ 81.  These snippets are continuously overwritten if no hot words are detected.  *Id.*  The Google Assistant can also be manually activated by pressing a button on the device.  *Id.*

When hot words are detected or Google Assistant is manually activated, Google Assistant switches into "active listening" mode.  *Id.* ¶ 82.  When Google Assistant switches into active listening mode, the device running the Google Assistant software records and transmits audio to Google for analysis.  *Id.*  This analysis enables the device to respond to the user's command.  *Id.* Google also analyzes recorded audio to improve the functionality of Google Assistant as well as to

_____

8 and 9 of 4th Amd. Consolidated Class Action Compl., ECF No. 152.

United States District Court
Northern District of California

target personalized advertising to users.  *Id.* at ¶83.

Plaintiffs allege that Google Assistant may be triggered into active listening mode when even when a user has not uttered a hot word or manually activated it.  4AC ¶ 83.  This could happen, for example, when it hears something like the hot words.  *Id.* ¶¶ 98-99, 252.  This is known as a "False Accept."  *Id.* ¶ 252.

Plaintiffs allege that in such situations, Google does not destroy the audio recordings but rather continues to use them for further analysis.  *Id.* ¶¶ 83, 105-113.  This analysis is used to improve the functionality of Google Assistant as well as to target personalized advertising to users.  *Id.* ¶ 121.

This suit is based on Google's use of audio recordings in False Accept situations.  *Id.* ¶¶ 1, 6-8, 252.  In Plaintiffs' view, such use is an invasion of privacy, especially because many of the recorded conversations take place in individuals' homes.  *Id.* ¶¶ 18-75, 85-88.  Plaintiffs also believe that this practice contravenes the privacy assurances that Google makes to users in its Privacy Policy.  *Id.* ¶ 90.

### B.   Named Plaintiffs

- Melissa Spurr ("Spurr") alleges that she owned at least three Google Home devices during the Class Period, which Plaintiffs define in their Fourth Amended Complaint to be "May 18, 2016 to the present."  *See* 4AC ¶¶ 1, 20.

- B.S. is a minor member of Plaintiff Spurr's household.  *Id.* ¶ 19.  She has allegedly interacted with Plaintiff Spurr's Google Home device during the Class Period. *Id.* ¶ 20. She sues by and through Spurr, her legal guardian.  *Id.* ¶ 19.

- Lourdes Galvan ("L. Galvan") alleges that she interacted with a Google Assistant-enabled Samsung Galaxy Tab and a Google Assistant-enabled Samsung smartphone during the Class Period.  *Id.* ¶ 29.

- Eleeanna Galvan ("E. Galvan") alleges that she owned and interacted with a Google Assistant-enabled Samsung Galaxy Tab and a Google Assistant-enabled Samsung smartphone during the Class Period.  *Id.* ¶ 29.

- Asif Kumandan ("Kumandan") alleges that he owned a Google Assistant-enabled Google

United States District Court
Northern District of California

3

1    Pixel smartphone during the Class Period.  *Id.* ¶ 39.  He testified at deposition that he

2    purchased his device.  Decl. Sunita Bali Supp. Defs' Opp'n ("Bali Decl.") Ex. 79

3    ("Kumandan Depo.") 65:24-68:24, ECF No. 270-79.

4    **II.    LEGAL STANDARD**

5        Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class

6    certification has the burden of affirmatively demonstrating that the class meets the requirements of

7    [Rule 23]."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (internal quotation

8    marks and citation omitted).  "[A] class must first meet the four requirements of Rule 23(a): (1)

9    numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Id.*

10       "In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least

11   one of the three different types of classes set forth in Rule 23(b)."  *Id.* (internal quotation marks

12   and citation omitted). Plaintiffs seek certification under Rule 23(b)(3).  *See* Mot., ECF No. 222 at

13   16–25.  A class may be certified under Rule 23(b)(3) only if "the court finds that the questions of

14   law or fact common to class members predominate over any questions affecting only individual

15   members, and that a class action is superior to other available methods for fairly and efficiently

16   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

17       "Before it can certify a class, a district court must be satisfied, after a rigorous analysis,

18   that the prerequisites of [Rule 23] have been satisfied."  *Olean Wholesale Grocery Coop., Inc. v.*

19   *Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (internal quotations and citations

20   omitted), *cert. denied sub nom. Starkist Co. v. Olean Wholesale Grocery*, No. 22-131, 2022 WL

21   16909174 (Nov. 14, 2022).  The party seeking class certification "must prove the facts necessary

22   to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a

23   preponderance of the evidence."  *Id.* at 665; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

24   338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his

25   compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently

26   numerous parties, common questions of law or fact, etc.").  "In carrying the burden of proving

27   facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible

28   evidence."  *Olean*, 31 F.4th at 665 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 577 U.S.

United States District Court
Northern District of California

4

1   442, 454–55 (2016)).

2   **III.    DISCUSSION**

3     Plaintiffs seek certification of three classes:

4   • <u>Purchaser Class</u>:  All Users who purchased a Google-Made Device

5   • <u>Privacy Class</u>[2]:  All Opted-In Users of Google Home Devices who have a recording resulting

6     from a False Accept associated with their Google account

7   • <u>SCA Class</u>: All Opted-In Users of GAEDs for whom Google shared at least one recording with

8     a human reviewer.

9   Mot. 1-2.

10     Plaintiffs define the following terms:

11   • "Users" are "individuals whose Gmail accounts were associated with at least one Google-

12     Assistant Enabled Device during the class period."  Mot. 1.

13   • A "Google Assistant Enabled Device" (GAED) is a device that comes with Google

14     Assistant pre-installed.  *Id.* at 3.

15   • "Google-Made Devices" are "GAEDs manufactured and sold by Google, including

16     Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart

17     displays, Google Nest Hub, and Nest Hub Max; and its Pixel smartphones."  Mot. 1.

18   • "Opted-In [Users]" are "Users who have enabled Voice and Audio Activity."  Mot. 1.

19   • "Google Home Devices" are "GAEDs for which the location is set to 'Home' or a location

20     within 'Home,' such as 'Living Room' or 'Dining Room.'"  Mot. 1.

21   • A "False Accept" is "an instance in which Google Assistant records and transmits audio to

22     Google without manual activation or a Hotword," where a "Hotword" is an instance of a

23     person saying "Ok Google" or "Hey Google."  Mot. 1, 4.

24   _____

25   [2] Plaintiffs' motion sought certification of two subclasses within the Privacy Class.  Plaintiffs

26   withdrew these proposed subclasses at the hearing on their motion and confirmed their withdrawal

27   in a subsequent filing.  *See* Pls. Chart of Common Questions Ex. A, at 3 ("Common Questions

28   Chart"), ECF No. 348-1.

United States District Court
Northern District of California

United States District Court
Northern District of California

A.     **Request for Judicial Notice**

The Court first addresses Google's request for judicial notice.  Opp'n 1.  Courts may take judicial notice of matters that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "Specifically, a court may take judicial notice: (1) of matters of public record, (2) that the market was aware of information contained in news articles, and (3) publicly accessible websites whose accuracy and authenticity is not subject to dispute."  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 827 (N.D. Cal. 2019) (internal citations and quotation marks omitted).

Google requests that the Court take judicial notice of Exhibits 24-27 and 39-52, attached to the Declaration of Sunita Bali (ECF No. 270), filed concurrently with its opposition.  Opp'n 1.  Plaintiffs do not object to Google's request.  Each of the exhibits reflects a publicly available website.  *Id.*  The Court will take judicial notice of the existence of these materials.  *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015).

B.     **Preliminary Matters**

1.     **Standing of Plaintiffs to Bring Claim for Violation of Stored Communications Act**

The Court addresses whether Plaintiffs have Article III standing before proceeding to the requirements of Rule 23.  *See Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017) ("[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." (internal quotation marks omitted)).

Google contends that no named plaintiff has standing to bring a claim under the Stored Communications Act because ███████████████████████████████████████████████ ████████████.  Opp'n 10.  ███████████████████████████████████ ████████████████████████████████████████████████████.  Reply 2.  ████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

6

1    ██████  *Id.* at 10.  As discussed below, the Court finds Google's arguments unconvincing.

2           Before addressing the substance of the parties' arguments, the Court notes that Plaintiffs

3    dispute only Google's contention that Spurr lacks standing to bring their SCA claim.  Plaintiffs do

4    not argue that any other named plaintiff has standing to bring this claim.  Opp'n 10; Reply 2.

5           To have standing "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly

6    traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

7    favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The dispute here

8    centers around the first element of standing—whether Spurr suffered an injury in fact.

9           At least one named plaintiff must have suffered an injury in fact to bring a claim on behalf

10   of a class.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  An injury must be both concrete

11   and particularized.  *Spokeo*, 578 U.S. at 334.  Under the Stored Communications Act, "a person or

12   entity providing an electronic communication service to the public shall not knowingly divulge to

13   any person or entity the contents of a communication while in electronic storage by that service."

14   18 U.S.C. § 2701(a)(1).  The Ninth Circuit has explained that the Stored Communications Act

15   "codifies a substantive right to privacy, the violation of which gives rise to a concrete injury

16   sufficient to confer standing."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598

17   (9th Cir. 2020).  A plaintiff may therefore plead a concrete injury by claiming that a defendant

18   violated the Stored Communications Act when it disclosed his or her communications to third

19   parties without authorization.  *See In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999,

20   1009 (N.D. Cal. 2020).

21          Google argues that Spurr has no privacy interest in recordings Google shared with a human

22   reviewer because ███████████████████████████████████████  *See*

23   Opp'n 10.  Plaintiffs have provided testimony and documents showing that the recordings were

24   made on devices that Spurr and her husband jointly own and have in their home.  Spurr Dep. 72:5-

25   10 (describing location of devices in Spurr's home), ECF No. 269-10; Home App Data 2, 4, 6

26   (showing Spurr as owner and creator of three Google Home devices), ECF No. 304-5.[3]  Under

27   _____

28   [3] The document identifies ██████████████ as the owner and creator.  Ms. Spurr testified

United States District Court
Northern District of California

these circumstances, Spurr's expectation of privacy in the recordings is not defeated by the fact

that the devices happened to be configured to store recordings to Spurr's husband's Google

account rather than her own.

The Court likewise finds unconvincing Google's argument that Spurr suffered no injury

because the data associated with the recordings of her was anonymized ████████████████

███████████████. As another court in this District has explained, "18 U.S.C. § 2702 protects

users' privacy rights against the mere disclosure of their communications; the statute makes such

disclosure actionable regardless [of] whether those communications reveal the user's identity." *In*

*re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d at 1009.  Google does not dispute that at

least one recording of Spurr ███████████████████████████████████████████████

This is a concrete and particular injury to Spurr.  Accordingly, the Court finds that Spurr has

standing to bring a claim under the Stored Communications Act.

### 2.  Named Plaintiff Membership in Proposed Classes

It is elementary that Plaintiffs must be members of the classes they seek to represent.  *Gen.*

*Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d

948, 959 (9th Cir. 2009) ("A class representative must be part of the class and 'possess the same

interest and suffer the same injury' as the class members." (quoting *E. Tex. Motor Freight Sys.*

*Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977))).  This Court has previously analyzed class

membership as part of the adequacy inquiry under Federal Rule of Civil Procedure Rule 23(a)(4).

*See AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 1922579, at *5 (N.D. Cal.

Mar. 24, 2020) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009)).  Here,

however, class membership presents a threshold inquiry that implicates two of three proposed

classes.  The Court therefore analyzes this issue before proceeding to the enumerated requirements

of Rule 23.  1 Newberg and Rubenstein on Class Actions § 3:10 (6th ed. 2022) (noting that "some

district courts consider class membership to be a freestanding requirement that must be applied . . .

prior to the Rule 23 analysis").  The Court first addresses Plaintiffs' membership in the Privacy

_____

that this was her Gmail account in deposition.  Spurr Depo. 70:17-23.

United States District Court
Northern District of California

1   and SCA Classes and then addresses Plaintiffs' membership in the Purchaser class.

2                    **a.  Named Plaintiff Membership in the Privacy and SCA Classes**

3           Google contends that no named Plaintiff is a representative of the Privacy or SCA Classes.

4   Opp'n 22.  Google notes that under Plaintiffs' definition each of these classes requires each of its

5   members to be an "Opted-In User," which is a user who has enabled Voice & Audio Activity

6   ("VAA").  *Id.*  Google explains that three Plaintiffs—E. Galvan, Spurr, and B.S.—██████████

7   ████ and therefore cannot represent these classes.  The other two Plaintiffs, L. Galvan and

8   Kumandan, ████████████████████████████ and therefore cannot be representatives of the

9   Privacy Class, and never ████████████████████████ and therefore cannot be

10  representatives of the SCA Class.  *Id.* at 23.

11          Plaintiffs concede that the no named plaintiff is a member these classes as they are defined

12  in Plaintiffs' motion.  Reply at 14.  Plaintiffs attribute this shortcoming to their "confounding [of

13  the] relationship between two settings in a user's Google account: Voice & Audio Activity

14  ('VAA') and Web & App Activity ('WAA')."  *Id.*  According to Plaintiffs, they defined their

15  Classes to include persons who enabled VAA because "they believed that setting was required to

16  create the speech logs that would make [class] membership easier to ascertain."  *Id.*  Plaintiffs

17  assert—citing no evidence—that "speech logs containing transcripts of audio recordings are

18  created for all users who have *WAA* enabled."  *Id.* (emphasis in original).  Plaintiffs do not propose

19  a specific amendment to their proposed classes, but they appear to ask the Court to change the

20  definition of "Opted-In User" from a user who has VAA enabled to one who has WAA enabled.

21  *See id.*

22          At the class certification hearing, the Court questioned Google's counsel about the

23  difference between WAA and VAA.  Google's counsel was unable to identify what data—audio,

24  transcription, or anything else—Google records when WAA is enabled.  Hrg. Transcript 35:8-15.

25  Plaintiffs' counsel noted that a spreadsheet cited in its briefing reflected that Google maintains a

26  transcription of user interactions with Google Assistant.  Hrg. Transcript 45:24-47:3 (discussing

27  MacLean Decl. Ex. 30, ECF No. 223-4).

28          Although the Court has authority to exercise its discretion to modify the class definition,

United States District Court
Northern District of California

9

1   Plaintiffs' request asks too much. As noted above, Plaintiffs appear to request in their reply brief

2   that the Court amend their definition of "Opted In [Users]" to include users who have enabled

3   WAA rather than users who have enabled VAA. As Plaintiffs first raised this proposal in their

4   reply brief, Google has not been given an opportunity to meaningfully address the proposed

5   amendment. Furthermore, the Court has not been presented with sufficient information to assess

6   whether that amendment would result in classes that comply with the requirements of Federal

7   Rule of Civil Procedure 23. The Court therefore finds that it would not be appropriate to modify

8   Plaintiffs' proposed class definitions. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588

9   (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a rigorous analysis to

10  determine whether the party seeking certification has met the prerequisites of Rule 23." (internal

11  citation and quotation marks omitted)).

12       In a footnote in their reply, Plaintiffs also request leave to add Spurr's spouse as a class

13  representative. *See* Reply 14 n.9. This Court has cautioned the parties in this litigation not to raise

14  dispositive arguments in footnotes. *See In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945,

15  975 n.3 (N.D. Cal. 2021). Moreover, the authority upon which Plaintiffs rely to support their

16  request is inapposite. Plaintiffs cite *Solis v. Regis Corp.*, No. C 05-03039 CRB, 2007 WL

17  1449801 (N.D. Cal. May 15, 2007), as an example of a case in which a court "permit[ed] adding a

18  plaintiff during class certification." Reply 14 n.19. But in *Solis* Plaintiff moved to for leave to

19  amend its operative complaint after the court had denied class certification as to certain claims on

20  the ground that the named plaintiff was not an adequate and typical representative for those

21  claims. *Solis*, 2007 WL 1449801, at *1. The court therefore had the benefit of full briefing on

22  whether such amendment was proper under Federal Rule of Civil Procedure 15(a). *Id.* Here,

23  Plaintiffs buried their request in their reply brief, depriving Google of any meaningful chance to

24  respond and in violation of the Court's standing order. *See* Standing Order for Civil Cases IV.F

25  ("Footnotes shall not be used to cite to legal authorities or evidence."). The Court therefore

26  denies Plaintiffs' request to add Spurr's spouse as a class representative.

27       As noted above, Plaintiffs concedes that under its proposed definition, no named plaintiffs

28  are in the SCA Class or Privacy Class. Accordingly, Plaintiffs' motion to certify these classes is

United States District Court
Northern District of California

1    DENIED.

2                    **b. Named Plaintiff Membership in the Purchaser Class**

3            Google concedes that at least one named plaintiff, Asif Kumandan, is a member of the

4    Purchaser Class.  Opp'n 22; *see also* Hrg. Transcript 25:23-26:1.  But Google disputes that any

5    other named plaintiff is a member of the purchaser class.  Opp'n 22.  Plaintiffs did not reply to this

6    argument in their briefing but contended at the hearing that Spurr qualified as a purchaser because

7    her husband "purchased a Google Home device using their joint account for their home."  Hrg.

8    Transcript 10:5-6.

9            The Court finds that Kumandan is a member of the Purchaser Class, but that Spurr is not.

10   Plaintiffs define their Purchaser Class to be "All Users who purchased a Google-Made Device."

11   Mot. 1.  They concede that Spurr did not purchase a Google-Made Device but nevertheless

12   contended for the first time at oral argument that she falls within the class because she is "a

13   member of the home and owner of the joint account that was used to purchase [the] Google Home

14   Device."  Hrg. Transcript 25:7-10.  The Court declines to consider Plaintiffs' untimely argument.

15   *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (declining to consider

16   arguments raised for the first time at a hearing); *see also In re Apple Inc. Securities Litigation*,

17   2011 WL 1877988, *5 n. 6 (N.D. Cal. May 17, 2011) ("The Court is not inclined to consider this

18   argument given that it was not briefed but rather was raised for the first time at the end of

19   the hearing"); *White v. FedEx Corp.*, 2006 WL 618591, *2 (N.D. Cal. Mar. 13, 2006) ("The Court

20   will not consider any arguments or evidence raised for the first time at the hearing").  Even if the

21   Court were to consider Plaintiffs' argument, Plaintiffs have not given the Court a basis to depart

22   from the plain meaning Plaintiffs own definition.  *See* Purchaser, Webster's 3rd New Int'l

23   Dictionary ("one that purchases").  Accordingly, the Court finds that Kumandan may represent the

24   Purchaser Class but Spurr may not.

25                    **3. Expansion of the Purchaser Class**

26           Google argues that the Plaintiffs impermissibly seek to expand their class definitions,

27   including the definition of their Purchaser Class, beyond the definitions in their operative

28   complaint because none of the classes is limited to people who experienced False Accepts.  Opp'n

United States District Court
Northern District of California

11

9-10.  Plaintiffs dispute Google's contention, arguing that their proposed classes narrow the scope of what was alleged in the complaint.   Reply 1-2.

Google is not completely right in its assertion that the classes in Plaintiffs' operative complaint require False Accepts.  The three classes included in the Fourth Amended Complaint are:

- "Class":  All individual purchasers of a Google Assistant Enabled Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent from at least as early as May 18, 2016 to the present, or during the applicable statute of limitations period.

- "Google Manufactured Device Subclass":  Individual purchasers of a Google Manufactured Device, who reside in the United States and its territories, and members of their households, whose conversations were obtained by Google without their consent or authorization and/or were shared with third parties without their consent during the Class Period.

- "Purchaser Class" (4AC):  All natural persons who purchased any Google Home device in the United States from August 7, 2016 through the present.

4AC ¶ 140.  The first two classes—the "Class" and "Google Manufactured Device Subclass"— include a limitation related to False Accepts in that they require class members' conversations to have been "obtained by Google without their consent or authorization."  But this limitation is followed by a disjunctive "or" and a separate condition that would bring individual purchasers within the class if their conversations "were shared with third parties without their consent."  The third class, which confusingly shares the name "Purchaser Class" with the class presented in Plaintiffs' motion, does not include any requirement related to False Accepts.

The Court cannot say whether the Purchaser Class as defined in Plaintiffs' motion expands or contracts any of the classes proposed in Plaintiffs' Fourth Amended Complaint.  In parsing and comparing the various class definitions in the 4AC and this motion, the Court acknowledges that there is some broadening, but also some narrowing of the reach of the classes.

"District courts are split over whether to hold a plaintiff to the definition of the class as set forth in the complaint."  *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158-JSW, 2022 WL 504161, at *3 (N.D. Cal. Feb. 18, 2022).  Some courts strictly adhere to the definitions provided in

United States District Court
Northern District of California

the operative complaint.  *Id.*  Others permit narrowed definitions at class certification without requiring a plaintiff to amend the complaint.  *Id.*  A third group of courts permits a plaintiff to modify the proposed class "so long as the 'proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants.'"  *Id.* (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010)).

The Court adopts the approach of the third group and permits Plaintiffs to modify their class definitions to the extent they are set forth in the motion.  Google's only argument against modification is that Plaintiffs violate the rule that a party moving for class certification cannot expand the class definition used in the complaint.  *See* Opp'n 9-10.  But as noted above, this is not a universal rule.  Google identifies no prejudice it will suffer and no additional discovery that will be required because of the Plaintiffs' modification to its class definition.  The Court therefore declines to deny certification of Plaintiffs' currently proposed Purchaser Class.

### C.   Rule 23(a) Requirements

Rule 23(a) requires a party seeking class certification to meet four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Stromberg*, 14 F.4th at 1066.  Plaintiffs argue that they meet each requirement of Rule 23(a).  *See* Mot. 10-16. Google does not dispute that Plaintiffs have met Rule 23(a)'s numerosity requirement, but it challenges each of the remaining requirements. *See* Opp'n 12-25.  The Court considers each of the requirements of Rule 23(a) in turn.  As the Court has denied Plaintiffs' motion to certify the Privacy and SCA Classes, the Court analyzes Rule 23(a)'s requirements only as to the Purchaser Class.

### 1.   Numerosity

Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity is presumed where the plaintiff class contains forty or more members."  *Id.*  However, a class as small as twenty properly may be certified when the other Rule 23 factors are satisfied.  *See Rannis*

1    *v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010) (affirming district court's certification of 20-

2    member class).

3          Plaintiffs assert that each class has at least millions of class members.  Plaintiffs cite

4    documentation showing, for example, that Google Assistant was available on over one billion

5    devices as of the end of 2019.  Mot. 10.  Furthermore, in her Initial Fact-Finding Survey,

6    Plaintiffs' expert Dr. Reed-Arthurs identified over 1,500 respondents who user Google Assistant-

7    Enabled Devices.  MacLean Decl. Ex. 58, at 20 & Ex. 3a ("Reed-Arthurs Report"), ECF No. 223-

8    4.  Google does not oppose certification of any class on numerosity grounds.  The Court finds that

9    Plaintiffs' evidence and Google's non-opposition support that the class easily meets the

10   numerosity requirement as to their Purchaser Class.  *See Brickman v. Fitbit, Inc.*, No. 3:15-CV-

11   02077-JD, 2017 WL 5569827, at *3 (N.D. Cal. Nov. 20, 2017) (numerosity satisfied where more

12   than 1,000 devices were sold and defendant did not challenge numerosity.

13          Accordingly, the Court finds that Plaintiffs' Purchaser Class has met the numerosity

14   requirement of Rule 23(a).

15          **2.   Commonality**

16          The commonality requirement is met if "there are questions of law or fact common to the

17   class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement is construed "permissively."  *Hanlon*

18   *v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).  All questions of fact and law need not be

19   common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient,

20   as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*

21   Commonality requires that the claims of a named plaintiff and all putative class members "depend

22   upon a common contention . . . of such a nature that it is capable of class-wide resolution—which

23   means that the determination of its truth or falsity will resolve an issue that is central to the validity of

24   each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

25          In its opposition, Google mentions the commonality requirement of Rule 23(a)(2) but appears

26   to direct its arguments toward the related, but more rigorous, predominance requirement of Rule

27   23(b)(3).  *See* Opp'n 11-22.  Plaintiffs argue that commonality is met because there are common

28   questions and facts for each claim.  For example, Plaintiffs identify the following common questions

United States District Court
Northern District of California

for their claim for breach of contract: (1) "[whether] Google made uniform representations to Plaintiffs and the Class Members, promising that the Assistant will only record information when users intentionally use the Assistant (*e.g.*, activating it with a Hotword) and that Google will not share users' audio beyond those circumstances disclosed in its Privacy Policies"; (2) "[whether] Google breached those promises by surreptitiously recording users' audio and then subsequently sharing such audio with third parties"; and (3) "[whether] this resulted in a common harm Plaintiffs and Class Members who overpaid for GAEDs that did not possess the promised attributes." Mot. 11; *see also* Common Questions Chart 2-3.  Given the permissive construction of Rule 23(a)(2), the Court finds that Rule 23(a)(2)'s commonality requirement has been satisfied.  *See Arabian v. Sony Elecs.*, Inc., No. 05-CV-1741WQHNLS, 2007 WL 627977, at *4 (S.D. Cal. Feb. 22, 2007) (assuming commonality requirement satisfied given permissive construction and lack of challenge by defendant).

Accordingly, the Court finds that Kumandan meets the commonality requirement of Rule 23(a)(2) as to the Purchaser Class.

### 3.  Typicality

Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted).  "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted).  However, "[a] court should not certify a class if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* (internal quotation marks and citation omitted).

Plaintiffs argue that their claims are typical of putative class members' claims because they arise out of the same common set of facts.  As to the Purchaser Class, Plaintiffs contend Kumandan and putative class members were presented with and agreed to the Google's Terms of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Service and Privacy Policy, have GAIA IDs linked to their devices, and suffered the same harms.

2    Mot. 12-13.  Google argues that Plaintiffs' claims are not typical because their claims are subject

3    to unique defenses.  Opp'n 23.  Google asserts that it demonstrated the presence of these unique

4    defenses in its motion for summary judgment.  *Id.*

5          The Court declines to consider argument presented in Google's motion for summary

6    judgment.  The Court's standing order prohibits incorporation by reference.  Standing Order Re

7    Civil Cases § IV.D. ("All factual and legal bases for a party's position with respect to a motion

8    must be presented in the briefing on that motion. Arguments presented in earlier-filed briefs or

9    documents may not be incorporated by reference.").  This Court has previously admonished

10   Google for its lack of compliance with the same standing order.  *See In re Google Assistant Priv.*

11   *Litig.*, 546 F. Supp. 3d at 975 n.3.  Furthermore, Google has not even directed the Court to specific

12   passages in its briefing.  The Court therefore declines to consider such argument presented outside

13   of Google's opposition.

14         As noted above, Plaintiffs' Purchaser Class is the only putative class for which Plaintiffs

15   have a class representative, and Kumandan is the only potential representative for that class.

16   Plaintiffs bring two claims on behalf of the Purchaser Class: breach of contract and violation of

17   California's UCL.  Common Questions Chart 1.  The Court first analyzes whether Kumandan's

18   claim for breach of contract is typical of the claims of putative class members.  The Court will

19   then perform the same analysis for his UCL claim.

20         The Court finds that Plaintiff Kumandan's claim for breach of contract is typical of

21   putative class members' claims.  Kumandan, like putative class members, purchased a GAED and

22   agreed to Google's Terms of Service and Privacy Policy.  Mot. 12.  Plaintiffs contend that

23   Kumandan suffered the same alleged harm as putative class members by paying a price premium

24   for his device based on Google's representations about how the device operates.  *Id.*  Each class

25   member's claim therefore arises from the same course of events as Kumandan's, and the same

26   legal arguments will be required to prove the Google's liability for their alleged harm.  *See*

27   *Rodriguez v. Hayes*, 591 F.3d at 1124.  The Court therefore finds that Plaintiffs have demonstrated

28   that Kumandan's breach of contract claim is typical of putative class members' claims.

The Court next turns to Plaintiffs' claim for violation of the UCL.  California's UCL prohibits "unlawful or fraudulent business practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The UCL prohibits three separate forms of unfair competition: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *accord Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  Plaintiffs allege that Google engaged in both "unlawful" and "unfair" acts or practices and therefore violated both the first and second prongs of the UCL.  The Court analyzes Plaintiffs' "unlawful" prong claim followed by their "unfair" prong claim.

"By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotation marks omitted).  "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001).  Plaintiffs predicate their "unlawful" prong claim on Google's alleged violations of the following privacy laws:  the Wiretap Act, California's common law prohibition on intrusion upon seclusion, the California Constitution's prohibition on invasion of privacy, and CIPA. [4]  4AC ¶ 266.  Plaintiffs also predicate their "unlawful" prong claim on Google's alleged breach of its Terms of Service and Privacy Policy.  *Id.*  Plaintiffs allege that this breach supports a common law claim for breach of contract and a claim under California

_____

[4] Plaintiffs also predicate their UCL "unlawful" prong claim on Google's alleged violations of the SCA.  4AC ¶ 266.  As the Court noted above, Plaintiffs did not dispute that no recording of Kumandan was shared with a human reviewer, and therefore Kumandan lacks standing to bring their SCA claim.  Because Kumandan lacks standing to bring the SCA claim, he also lacks standing to bring a UCL claim predicated on that claim.  *Cf. AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) ("[W]hen the underlying legal claim fails, so too will a derivative UCL claim.").

1    Business and Professions Code § 22576.  *Id.*

2         The Court finds that Kumandan is typical of putative members of the Purchaser Class as to

3    Plaintiffs' "unlawful" prong UCL claim.  To prove this claim, Kumandan will seek to show that

4    Google is recording and using the contents of communications in violation of its contracted

5    promises.  This is the same alleged injury as putative class members, and it is based on the same

6    alleged conduct putative class members would seek to prove.  Accordingly, the Court finds

7    Kumandan's claims under the "unlawful" prong of the UCL limited to the breach of contract claim

8    and claim under California Business and Professions Code § 22576 as the underlying unlawful

9    conduct to be typical of Purchaser Class members' claims.[5]  *See Hanon*, 976 F.2d at 508 ("The

10   test of typicality is whether other members have the same or similar injury, whether the action is

11   based on conduct which is not unique to the named plaintiffs, and whether other class members

12   have been injured by the same course of conduct." (internal quotations omitted)).

13        The Court finally analyzes Plaintiffs' UCL claim under the "unfair" prong.  Plaintiffs

14   allege that Google's unfair practice was that it "failed to disclose during the Class Period that

15   [GAEDs] were intercepting, recording, disclosing and otherwise misusing Plaintiffs' and Class

16   Members' speech without their consent."  4AC ¶ 267.  As with Plaintiffs' claim for breach of

17   contract, each putative class member's claim arises from the same course of events and alleged

18   misrepresentations as Kumandan's.  Accordingly, the Court finds Kumandan's claims under the

19   "unfair" prong of the UCL to be typical of Purchaser Class members' claims.  *See Hanon*, 976

20   F.2d at 508.

21        Accordingly, the Court finds that Kumandan meets the typicality requirement of Rule

22   23(a)(3) as to the Purchaser Class.

23             **4.  Adequacy**

24        Courts generally resolve two questions in determining whether plaintiffs will adequately

25   represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest

26   _____

27   [5] As discussed above, the underlying privacy claims cannot be swept into this UCL claim because

28   no Plaintiff is an appropriate class representative.

United States District Court
Northern District of California

with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez*, 563 F.3d at 959.

Google challenges whether several Plaintiffs are adequate class representatives. As Kumandan is the only potential class representative, the Court focuses on Google's challenge to him. Google contends that Kumandan is not adequate because he went to law school with former Plaintiffs' counsel, and he testified that he did not know who he is trying to represent. Opp'n 24. Plaintiffs contend that they have demonstrated their desire to vigorously prosecute the case by attending full-day depositions, monitoring the case, and responding to numerous discovery requests. Mot. 14; Reply 15.

The Court finds that Kumandan is an adequate class representative. That Plaintiff attended law school with former Plaintiffs' counsel does not in itself suggest any sort of conflict that would render Kumandan inadequate. *See DeNicolo v. Hertz Corp.*, No. 19-CV-00210-YGR, 2021 WL 1176534, at *6 (N.D. Cal. Mar. 29, 2021) ("As this Court and others have previously found, in the absence of some evidence to indicate that a friendship between the class representative and one of his attorneys would create a conflict of interest, the court will not presume one." (collecting cases)). Kumandan's inability to articulate the exact bounds of the class he seeks to represent also does not render him inadequate. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ("While class representatives must be familiar with the basics of, and understand the gravamen of, their claims, it is not necessary that they be intimately familiar with every factual and legal issue in the case."). Here, Kumandan has given deposition testimony, reviewed pleadings, and participated in discovery. *See* Kumandan Depo. 48:14-19; 50:5-7.

Google does not challenge the qualifications of Plaintiffs' counsel, and the Court finds that the plaintiffs' counsel is qualified and able to litigate this case.

Accordingly, the Court finds that Kumandan meets the adequacy requirement of Rule 23(a)(4) as to the Purchaser Class.

### D.      Rule 23(b)(3) Requirements

Plaintiffs seek class certification under Rule 23(b)(3).  Rule 23(b)(3) permits a court to certify a class only when two criteria are met: (1) questions of law or fact common to members of the class predominate over questions affecting only individual members, *see Tyson Foods*, 136 S. Ct. at 1044-46, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  The Court will consider each of the requirements of Rule 23(b)(3) in turn.

#### 1.      Predominance

"When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Olean*, 31 F.4th at 668 (internal quotation marks and citation omitted).  Plaintiffs need not show that they are likely to succeed on the common issues in the case.  *See id.* at 667.  "[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue."  *Id.*  If the plaintiffs present evidence that could sustain a reasonable jury verdict on the merits of a common question as to all class members, a district court may conclude that the plaintiffs have carried their burden under Rule 23(b)(3).  *See id.*

Courts typically analyze predominance on a claim-by-claim basis.  *Moreno v. JCT Logistics, Inc.*, No. EDCV172489JGBKKX, 2019 WL 3858999 (C.D. Cal. May 29, 2019); *see also Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018).  Plaintiffs bring two claims on behalf of their Purchaser Class: breach of contract and violation of California's UCL.  Plaintiffs contend that the same price premium damages model applies to both claims.  The Court first analyzes predominance as to the breach of contract claim and then as to the UCL claim.  The Court will then analyze Plaintiffs' damages model.

#### a.      Breach of Contract

Plaintiffs contend that "[e]ach element of their breach of contract claim, i.e. (i) the

existence of a contract; (ii) performance under the contract; (iii) Defendants' breach; and (iv) damages will be established by common proof." Mot. 17 (footnote omitted).  Regarding the breach element, Plaintiffs assert that "Google breached [its] promises by collecting audio recordings that were the result of False Accepts and utilizing the audio for its own commercial purposes or for disclosure to third parties, contentions that can be established by common proof." *Id.*  Google does not dispute Plaintiffs' predominance analysis as to liability for its breach of contract claim.

The Court finds that Plaintiffs have shown that common issues will predominate over individual issues in assessing Google's liability for breach of contract.  Plaintiffs identified the following common questions regarding the breach of contract claim: (1) whether Google made uniform representations to class members in its contracts promising that Google Assistant will only record information when users intentionally use Google Assistant and that Google will not share users audio beyond those circumstances disclosed in its Privacy Policies; (2) whether Google breached those promises by surreptitiously recording users' audio and then subsequently sharing such audio with third parties; and (3) whether Google's breach resulted in a common harm to Plaintiffs and class members who overpaid for their devices as a result of Google's contractual promises of privacy.  Common Questions Chart 1.  Each of these questions is capable of resolution with generalized, classwide proof.  The answer to the first question will be shown by analysis of Google's Terms of Service and Privacy Policy during the class period.  Mot. 17.  The second will be shown by analysis of Google's voice records and Speech logs.  Mot. 10-12, 17.  And the last will be shown through a price premium damages model, Mot. 22-23, which the Court addresses below.  Accordingly, the Court finds that plaintiffs have satisfied their burden of showing predominance as to the question of Google's liability for breach of contract.

### b.  UCL

As noted above, Plaintiffs allege that Google violated both the "unlawful" and "unfair" prongs of the UCL.  The Court will first examine predominance as it relates to Google's liability under the "unlawful" prong of the UCL and will then examine predominance as it relates to Google's liability under the "unfair" prong.

### i. "Unlawful" Prong

Plaintiffs allege that Google violated the "unlawful" prong of the UCL by (1) violating several privacy laws and (2) by breaching its Terms of Service and Privacy Policy in violation of the common law and California Business and Professions Code § 22576.  4AC ¶ 266.  The Court will first analyze predominance as it relates to Plaintiffs' UCL "unlawful" claim predicated on privacy law violations and then as it relates to Plaintiffs' UCL "unlawful" claim predicated Google's alleged breaches of its Terms of Service and Privacy Policy.

Plaintiffs rely, in part, on alleged violations of the following privacy laws as the basis for their UCL "unlawful" prong claim: the Wiretap Act, California's common law prohibition on intrusion upon seclusion, the California Constitution's prohibition on invasion of privacy, and CIPA.  4AC ¶ 266.  Plaintiffs acknowledge that to show violations of these laws, they will have to show that class members had a reasonable expectation of privacy in intercepted communications. *See* Mot. 18.  But Plaintiffs never even attempt to show that common questions would predominate over individualized inquiries in determining whether members of the Purchaser Class had such expectations.  *See* Mot. 18-19, Reply 5-7.  They address only Privacy Class members' expectations of privacy.  The difference matters because Plaintiffs have defined their Privacy Class to attempt to capture class members who have GAEDs in their homes, and they have argued that Privacy Class members' claims raise common questions based on their devices being in the home.[6]  *See* Mot. 19, Reply 5-7.  The Purchaser Class, however, is not limited to class members whose devices were used in their homes.  It includes all Users who purchased a Google-Made Device, where Plaintiffs have defined Google-Made Device to include, among other things, Pixel smartphones.  Plaintiffs' arguments about the common questions raised by Google's alleged interception of communications from devices that are used only in the home therefore do not apply to a large swath of the Purchaser Class, and most particularly to Kumandan who only purchased a mobile device.

---

[6] Google disputes that Plaintiffs' Privacy Class is, in fact, limited to Users whose devices were in their home during the relevant time period.  *See* Opp'n 13.

United States District Court
Northern District of California

1    Moreover, Google has shown that common questions would not predominate over

2    individualized inquiries in analyzing whether Purchaser Class members had a reasonable

3    expectation of privacy in intercepted communications.  "Courts in this Circuit have looked to a

4    number of factors to determine whether a reasonable person would possess an expectation of

5    privacy in an oral conversation, including the nature of the location where the conversation was

6    seized."  *Reynolds v. City & Cnty. of San Francisco*, No. C 09-0301 RS, 2012 WL 1143830, at *5

7    (N.D. Cal. Mar. 30, 2012) (cleaned up).  And courts in this Circuit have denied class certification

8    in cases involving claims for which reasonable expectation of privacy is a necessary element

9    because "the individual nature of the objective expectations inquiry" raised issues that defeated

10   commonality or predominance.  *See Saulsberry v. Meridian Fin. Servs., Inc.*, No.

11   CV146256JGBJPRX, 2016 WL 3456939, at *15-16 (C.D. Cal. Apr. 14, 2016) (decided on

12   commonality grounds); *see also Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 595 (C.D. Cal.

13   2013).  Google has identified numerous examples of individualized inquiries with which the Court

14   would be confronted to determine whether class members had a reasonable expectation of privacy,

15   including where a given conversation occurred, who was present, whose voice was captured, and

16   whether the speaker saw the visual indicator on the device and knew that audio was being

17   recorded.  Opp'n 15.  Plaintiffs have not offered any rebuttal to these individualized inquiries

18   concerning their Purchaser Class.  Plaintiffs have therefore failed to show that common issues will

19   predominate over these individualized inquiries.  Accordingly, the Court DENIES Plaintiffs'

20   motion to certify its Purchaser Class to bring its UCL "unlawful" prong claim predicated on

21   privacy law violations.

22          The Court next turns Plaintiffs' UCL "unlawful" claims predicated on Google's alleged

23   breach of its Terms of Service and Privacy Policy, which fare better.  As the Court noted above,

24   Plaintiffs have shown that common questions will predominate regarding Google's liability for its

25   alleged breaches of its Terms of Service and Privacy Policy.  Plaintiffs' UCL "unlawful" claim

26   predicated on these alleged breaches will therefore present the same common questions.

27   Accordingly, the Court finds that Plaintiffs have satisfied the predominance requirement as to their

28   UCL "unlawful" prong claims predicated on Google's alleged breaches of its Terms of Service

23

1    and Privacy Policy.[7]

2              ii.    **"Unfair" Prong**

3              The Court next examines Plaintiffs' claim under the UCL "unfair" prong.  Plaintiffs allege

4    that Google has "engaged in business practices deemed 'unfair' under the UCL" by "fail[ing] to

5    disclose during the Class Period that [GAEDs] were intercepting, recording, disclosing, and

6    otherwise misusing Plaintiffs' and Class Members' speech without their consent."  4AC ¶ 267.

7    Plaintiffs identify the following common question concerning their UCL "unfair" prong claim:

8    "whether Google's conduct was 'unfair' because it 'violated California's strong public

9    policy of protecting privacy [based on] intercepting, recording, disclosing or otherwise misusing

10   Plaintiffs' and Class members' private conversations . . .,' as evidenced by the frequency of False

11   Accepts as well as Google's violations [of privacy laws]."  Common Questions Chart, at 1.

12             The Court finds that Plaintiffs have not shown that common issues will predominate as to

13   their "unfair" prong claim under the UCL.  Plaintiffs state in their Common Questions Chart that

14   their UCL "unfair" prong claim relies, in part, on showing that Google recorded "private

15   conversations" and violated privacy laws.  But the as the Court explained above, evaluation of the

16   privacy of conversations and whether Google violated privacy laws, will require individualized

17   inquiries.  Accordingly, the Court finds that Plaintiffs have not satisfied the predominance

18   requirement as to their UCL "unfair" prong claim.

19             c.  **Damages**

20             "Rule 23(b)(3)'s predominance requirement takes into account questions of damages."

21   *Just Film*, 847 F.3d at 1120.  The Supreme Court has held that absent an appropriate methodology

22   for measuring damages on a classwide basis, "[q]uestions of individual damage calculations will

23   inevitably overwhelm questions common to the class."  *Comcast*, 569 U.S. at 34.  "Calculations

24   need not be exact."  *Id.* at 35.  In fact, the Ninth Circuit has made clear both before and

─────────────────────

26   [7] Equitable relief under the UCL dependent on Plaintiffs' breach of contract claim may be

27   foreclosed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  The Court

28   anticipates briefing on this issue at summary judgment.

United States District Court
Northern District of California

1    after *Comcast* that "'damage calculations alone cannot defeat certification.'"  *Leyva v. Medline*

2    *Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*,

3    594 F.3d 1087, 1094 (9th Cir. 2010)).  However, "at the class-certification stage (as at trial), any

4    model supporting a plaintiff's damages case must be consistent with its liability case."  *Comcast*,

5    569 U.S. at 35 (internal quotation marks and citation omitted).  "If the plaintiffs cannot prove that

6    damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance."

7    *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

8            Plaintiffs advance a price premium damages model for both their UCL claim and breach of

9    contract claim.  Mot. 21-22.  The theory purports to calculate of the difference between what

10   consumers paid for their device and what consumers would have paid for the device had Google

11   adequately disclosed how Google Assistant operates.  Mot. 3; *see also* MacLean Decl., Ex 57, at 7

12   ("Torres Report"), ECF No. 223-4, at 1001.  To assess this difference, Plaintiffs' expert, Dr.

13   Rebecca Reed-Arthurs proposes a choice-based conjoint survey to analyze how consumer

14   willingness to pay for a given device would change if adequate disclosures were made at the time

15   of purchase.  MacLean Decl., Ex. 58 ¶ 66-68 ("Reed-Arthurs Report"), ECF No. 223-4, at 1073.

16   Plaintiffs' expert, Mr. Torres, would then use inputs from Dr. Reed-Arthurs's survey to calculate

17   damages on a classwide basis.  Torres Report 27.

18           Plaintiffs contend that their price premium damages model measures only damages

19   attributable to their breach of contract and UCL claims.  *Id.* at 22.  Google argues that Plaintiffs'

20   model fails because it (1) relies on surveys that have not yet been performed; (2) would award

21   damages to purchasers who suffered no injury; (3) does not account for the effect a shift in

22   demand would have on supply of the relevant products; and (4) does not account for "actual

23   market conditions."  Opp'n 19.  The Court addresses each of Google's arguments in turn.

24           The Court first addresses Google's argument that Plaintiffs' price premium theory is

25   "insufficient" because it "relies on surveys yet to be done and analysis yet to be performed."  To

26   support its argument Google relies on *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2018

27   WL 1009257 (N.D. Cal. Feb. 13, 2018).  But *Bruton* does not stand for the proposition that the

28   surveys and analysis supporting a damages theory must be complete at the class certification stage.

United States District Court
Northern District of California

25

*Bruton* expressly states that Plaintiffs are required to present only a "likely method for determining class damages" and that "it is not necessary to show that [plaintiff's] method will work with certainty at [the class certification stage]." *Bruton*, 2018 WL 1009257, at *12 (quoting *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010)). The *Bruton* court rejected the analysis at issue because the expert "identified a number of variables that might prevent the proposed [model] from complying with *Comcast*'s requirements, but has failed to provide a meaningful explanation as to how the variables will be addressed." *Id.* Here, Google identifies no such failings in Plaintiffs' experts' analysis. Accordingly, the Court will not deny class certification on the basis that Plaintiffs' experts rely on surveys or analysis that are not yet complete.

The Court next addresses Google's argument that Plaintiffs' damages model fails because it would award damages to purchasers "who suffered no injury." Google contends that some putative class members suffered no injury because they "knew about [False Accepts] before they purchased their GAED, e.g., through numerous public disclosures." Opp'n 19. Google's expert, Dr. Rene Befurt, identifies some of these disclosures. *See id.*; *see also* Befurt Report ¶¶ 69-74, ECF No. 271-44. For example, Dr. Befurt identifies a disclosure from a webpage about Google Assistant that was archived on September 1, 2020, that states, "Important: Sometimes, audio might be saved if your device incorrectly detects an activation, like a noise that sounds like 'Hey Google.'" *See Befurt Report* ¶ 69 n.2. But Dr. Befurt does not even attempt to quantify the number of purchasers who actually saw these purported disclosures. The best she can come up with is to say "some customers may have reviewed one or more of the several disclosures Google has made . . . prior to purchasing a Google Assistant Enabled Device." *Id.* ¶ 70. Plaintiffs assert that their damages methodologies do not seek to compensate the "hypothetical users" who knew about False Accepts before purchasing their devices. Reply 11. Plaintiffs note that Google has not provided evidence that any putative class member saw the disclosures Google relies on. *Id.*

The Court finds that Plaintiffs' price premium model satisfies the predominance requirement, despite Google's disclosures. As an initial matter, Plaintiffs are right that Google leaves unclear whether any putative class members actually saw the disclosures. Furthermore,

1    Plaintiffs' alleged harm is that they overpaid for a service that did not perform as Google promised

2    in its Terms of Service and Privacy Policy.  *See* Mot. 17, 22; 4AC ¶ 262.  Plaintiffs contend, and

3    Google does not dispute, that the relevant terms of these agreements remained in effect throughout

4    the Class Period.  Mot. 8.  Therefore, despite Google's separate disclosures, which may not have

5    been viewed by anyone prepurchase, each putative class member suffered the same harm, and

6    their damages are susceptible to common proof.  Accordingly, Google's disclosures do not cause

7    Plaintiffs' damages model to fail under the predominance requirement.

8            The Court next turns to Google's argument that Plaintiffs' methodology fails because it

9    does not account for supply.  Specifically, Google asserts that Plaintiffs' analysis fails because it

10   "has no evidence about how the supply of GAEDs might be affected . . . by consumers' supposed

11   shift in demand, and merely assumes that supply would be a 'horizontal line.'"  Opp'n 20.

12           The Court disagrees.  Plaintiffs' remaining classwide claims include a breach of contract

13   claim and a UCL "unlawful" prong claim based that alleged breach of contract.  To measure

14   contract damages, Plaintiffs need not hypothesize a defendant's willingness to supply the product

15   at issue in a but-for world where the agreement at issue includes adequate disclosures.  *See*

16   *Williams v. Apple*, 338 F.R.D. 629, 654 (N.D. Cal. 2021).  "Rather, where 'defective or partial

17   performance is rendered, the loss in value caused by the breach is equal to the difference between

18   [1] the value that the performance would have had if there had been no breach and [2] the value of

19   such performance as was actually rendered.  In principle this requires a determination of the values

20   of those performances to the injured party himself and *not* their values to some hypothetical

21   reasonable person or *on some market*.'"  *Id.* (quoting Restatement (Second) of Contracts § 347).

22   Here, Plaintiffs' economics expert Mr. Torres proposes to analyze the difference in value between

23   the market price of the promised device and service (1) GAEDs if they did not intercept and

24   transfer communications in alleged breach of the Terms of Service and Privacy Policy; and (2)

25   GAEDs as they allegedly actually operate.  Torres Report ¶ 7.  Plaintiffs' theory is therefore

26   consistent with proving damages under theory of breach of contract.

27           Finally, the Court addresses Google's contention that Plaintiffs' model fails because it

28   "does not account for actual market conditions, including the wide variation in factors that actually

1    drive consumer choice across the broad range of GAED types." Opp'n 20. The Court finds that

2    Plaintiffs' expert did, in fact, address this consideration. Specifically, Mr. Torres stated that his

3    proposed calculations are not affected by differences in intended use of a device. Torres Report

4    27. Again, Google may disagree with this conclusion, but that is not a reason for the Court to

5    deny class certification.

6            In sum, the Court finds that Plaintiffs' proposed price premium model applies a "well-

7    accepted economic methodology," *see Williams*, 338 F.R.D. at 652, that measures only those

8    damages attributable to Plaintiffs' breach of contract and UCL theories, *see Comcast*, 569 U.S. at

9    35. Accordingly, the Court finds that Plaintiffs' damages theory satisfies the predominance

10   requirement under Rule 23(b)(3).

### d. Class Members Subject to Arbitration Agreements

12           Google contends that common issues do not predominate because putative class members

13   may be subject to different arbitration agreements. Opp'n 18-19. Google identifies four

14   exemplary agreements. *Id.* at 18. Plaintiffs respond that the arbitration agreements Google

15   identifies do not defeat predominance because (1) Google has waived its right to assert the

16   agreements, (2) Google has made judicial admissions that bar it from asserting the agreements,

17   and (3) none of the agreements applies to Plaintiffs' causes of action. Reply 9-10.

18           The Court first addresses whether Google has waived its right to compel arbitration against

19   unnamed class members or made a judicial admission that would bar it from asserting the

20   arbitration agreements it now raises. The Court finally addresses whether the arbitration

21   agreements Google cites bar certification of Plaintiffs' Purchaser Class.

22           The Court finds that Google has not waived its right to assert the agreements against

23   unnamed class members. "[C]ourts have held that a defendant cannot move to compel arbitration

24   against unnamed class members prior to class certification." *Rushing v. Williams-Sonoma, Inc.*,

25   No. 16-CV-01421-WHO, 2020 WL 6787135, 1t *3 (N.D. Cal. Oct. 8, 2020) (citing *In re TFT-*

26   *LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *4 (N.D. Cal. May 9,

27   2011)). Therefore, a defendant does not waive its right to move to compel arbitration against

28   unnamed class members by declining to assert an arbitration agreement against a named plaintiff

United States District Court
Northern District of California

1    before class certification.  *See id.*  Here, Google had no basis to move to compel arbitration against

2    any unnamed class members and therefore could not have waived that right.

3         The Court also finds that Google has not made any judicial admission that would bar it

4    from asserting any arbitration agreement.  "[S]tatements of fact contained in a brief *may* be

5    considered admissions of the party in the discretion of the district court."  *Am. Title Ins. Co. v.*

6    *Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (emphasis in original).  "A judicial admission

7    must be deliberate, clear, and unambiguous."  *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F.

8    Supp. 3d 863, 870 (N.D. Cal. 2014).  Plaintiffs appear to contend that Google made a judicial

9    admission that only the Terms of Service or Privacy Policy may impose arbitration requirements

10   on class members because Google argued in motions to dismiss that it did not breach those two

11   agreements.  *See* Reply 9-10.  The Court disagrees.  Google's assertion that it did not breach one

12   agreement is not a clear and unambiguous admission that no other agreement contains relevant

13   provisions.  The Court therefore finds that Google's arguments in its motions to dismiss are not

14   judicial admissions that only the Terms of Service or Privacy Policy may impose arbitration

15   requirements on class members.

16        The Court finds, however, that Google has not provided adequate briefing to enable the

17   Court to determine that any of the arbitration agreements apply in this matter.  The Court

18   acknowledges that although a party seeking to compel arbitration bears the burden of proving that

19   a valid arbitration agreement exists, *see, e.g.*, *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912,

20   928 (N.D. Cal. 2018) (citing *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1282, 73 Cal.Rptr.3d 395

21   (2008)), it is Plaintiffs who bear the burden of demonstrating compliance with Rule 23, *see, e.g.*,

22   *Lim v. Helio, LLC*, No. CV119183PSGACRX, 2012 WL 12884439, at *4 (C.D. Cal. Apr. 18,

23   2012) (denying class certification where the plaintiff had failed to meet her burden of

24   demonstrating that class action was superior and manageable given that "the evidence before the

25   Court strongly suggest[ed] that the vast majority of potential members signed arbitration

26   agreements containing class action waivers").  But here, Google identifies four purportedly

27   exemplary agreements with arbitration provisions without explanation as to why any of them

28   would govern the claims at issue.  Nor does Google identify how many, if any, putative class

United States District Court
Northern District of California

1    members would be subject to the agreements.  The Court finds that Google's identification of

2    agreements that have arbitration provisions, without more explanation as to why they apply here,

3    is insufficient to defeat Plaintiffs' showing that they satisfy the predominance requirement.

4              **2.  Superiority**

5              To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that "a class action is superior to

6    other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

7    23(b)(3).  Rule 23 lists the following factors that courts should consider in making this

8    determination: "(A) the class members' interests in individually controlling the prosecution or

9    defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

10   already begun by or against class members; (C) the desirability or undesirability of concentrating

11   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

12   class action."  Fed. R. Civ. P. 23(b)(3).

13             Plaintiffs contend that their class meets the requirements for superiority.  For the first

14   factor, Plaintiffs argue that the amounts at issue are not substantial enough to justify pursuit of an

15   individual lawsuit.  Reply 15.  For the second factor, Plaintiffs note that no other action seeks

16   relief on behalf of the classes asserted in this case.  *Id.*  As for the third factor, Plaintiffs note that

17   Google's Terms of Service provide that California law will govern any disputes related to its

18   services and Google and most of its witnesses are located in this District.  *Id.*  Finally, regarding

19   the final factor, Plaintiffs contend that the management of the proposed classes presents no unique

20   procedural or substantive difficulties.  *Id.*  Plaintiffs also contend that that the classes are

21   "uniquely positioned to meet Rule 23(b)(3)'s requirements given the existence of an

22   overwhelming amount of common evidence – namely, from Google's extensive repository of user

23   data, and uniform set of policies – which constitute common proof of the elements of each claim."

24   Mot. 2.

25             Google challenges Plaintiffs' assertion as insufficient to satisfy Rule 23(b)(3)'s superiority

26   requirement.  Google argues that the Purchaser Class would not be manageable because it is not

27   possible to identify all False Accepts from speech log data.  Opp'n 25.  Rather, such a

28   determination requires an individualized review of audio data.  *Id.*  Google also notes that it has

United States District Court
Northern District of California

1    deleted the vast majority of user audio data. *Id.*

2       The Court agrees with Plaintiffs. The Rule 23(b)(3) factors support that a class action is a

3    superior method of adjudicating Plaintiffs' claims. *See, e.g., Siemers v. Wells Fargo & Co.*, 243

4    F.R.D. 369, 376 (N.D. Cal. 2007). Google does not offer any arguments specific to the Purchaser

5    Class that would undermine this conclusion. Instead, Google challenges whether a class action is

6    a superior method for adjudicating the claims Plaintiffs sought to bring on behalf of its Privacy

7    Class. *See* Opp'n 24-25. Even assuming identification of False Accepts from audio recordings,

8    rather than speech log data, is required, Google has not persuasively demonstrated

9    unmanageability for the Purchaser Class's claims, which are unlike the uncertified class's privacy

10    claims. Accordingly, the Court finds that Plaintiffs' Purchaser Class meets the superiority

11    requirement of Rule 23(b)(3).

12    **IV.    ORDER**

13       Plaintiffs' privacy claims have all failed to qualify for class certification, most significantly

14    because there is no named plaintiff who suffered the defined harms. Plaintiffs' Hail Mary to

15    modify the class definitions to relate to class members covered by WAA instead of the opt in

16    VAA has come too late in the process for this Court to fairly evaluate Plaintiffs' newly asserted

17    argument raised only in its Reply and found nowhere in the operative complaint. However, a

18    Purchaser Class led by Kumandan may proceed on the breach of contract claim and UCL

19    "unlawful" prong claims predicated on breach of contract and violation of California Business and

20    Professions Code § 22576. That class is defined as:

21       Purchaser Class:  All Users who purchased a Google-Made Device, where

22       • "Users" are individuals whose Gmail accounts were associated with at least one Google-

23        Assistant Enabled Device during the class period;

24       • "Google Assistant Enabled Devices" are devices that come with Google Assistant pre-

25        installed; and

26       • "Google-Made Devices" are Google Assistant Enabled Devices manufactured and sold by

27        Google, including Google's own smart home speakers, Google Home, Home Mini, and

28        Home Max; smart displays, Google Nest Hub, and Nest Hub Max; and its Pixel

smartphones.

Common questions are certified as follows:

1. Whether Google made uniform representations to Class Members in its contracts, promising that assistant will only record information when users intentionally use the Assistant (*e.g.* activating it with a Hotword) and that Google will not share users' audio beyond those circumstances disclosed in its Privacy Policies.

2. Whether Google breached those promises by surreptitiously recording users' audio and then subsequently sharing such audio with third parties.

3. Whether Google's breach resulted in a common harm to Plaintiffs and Class Members who overpaid for GAEDs as a result of the price premium attributable to the Google's uniform, contractual promises of privacy.

Plaintiffs shall submit a proposed notice plain after a meet and confer with Defendants. The plan shall be submitted to the Court by **February 3, 2023**.

Dated:  December 16, 2022

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

32