**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 19-cv-04286-BLF<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>[Re: ECF 397] |

Defendants Google LLC and Alphabet Inc. (collectively, "Google") move to compel arbitration. The motion comes four years into this litigation, after the parties have engaged in substantial motion practice, after completion of fact and expert discovery, and after the Court has certified a class. Plaintiffs contend that Google waived its right to compel arbitration. The Court finds that Plaintiffs have established waiver, and on that basis Google's motion is DENIED.

**I.   BACKGROUND**

This consumer class action comprises three cases that were consolidated by the Court. *See* Compl., ECF 1; Order, ECF 42; Order, ECF 109. Plaintiffs assert claims against Google arising from operation of Google Assistant, a voice-activated virtual assistant developed for use with Google Home, Android smart phones, and other devices. Google Assistant can answer spoken questions and be directed to perform a variety of tasks, including setting reminders, making telephone calls, looking up the weather, playing music, and getting driving directions. It may be activated by uttering "hot words" – typically "Okay Google" or "Hey Google" – to indicate the start of a user command, or it may be manually activated by pushing a button on the device. When activated, Google Assistant causes audio to be recorded and transmitted to Google. Google utilizes the audio recordings to improve functionality and to target personalized advertising.

Plaintiffs allege that Google Assistant sometimes causes audio to be recorded and transmitted to Google even when the user has not uttered hot words or manually activated Google Assistant. This might happen if words similar to hot words are spoken near the device. As with audio recordings transmitted after intentional activation of Google Assistant, Google utilizes audio recordings transmitted after unintentional activation to improve functionality and to target personalized advertising. According to Plaintiffs, Google's utilization of audio recordings created when the users have not uttered hot words or manually activated Google Assistant violates the users' rights under federal and state law privacy statutes, the California constitution, and California common law.

The original complaint was filed in July 2019, asserting putative class claims against Google. *See* Compl., ECF 1. In February 2020, the parties filed a Joint Case Management Statement in advance of the Initial Case Management Conference stating, "The parties agree that this case is not suitable for reference to binding arbitration[.]" Joint Case Management Statement at 11, ECF 67.

Google filed four motions to dismiss that resulted in dismissal of several claims on the merits, including claims for violation of California's Consumer Legal Remedies Act ("CLRA"), common law fraud, and declaratory judgment. *See* Motions, ECF 56, 91, 120, 144; Orders, ECF 80, 138, 152. Throughout the litigation of those motions, Google never suggested that it would reverse its position and seek to compel arbitration.

Google ultimately answered the operative Fourth Amended Consolidated Class Action Complaint ("FACC") in January 2022, two and a half years into the litigation. *See* FACC, ECF 141; Answer, ECF 154. In its answer, Google for the first time suggested that it might seek to compel arbitration, asserting as an affirmative defense that "Plaintiffs and the putative class members whom they purport to represent, agreed to arbitrate their claims." Answer at p. 116. Google "reserve[d] the right to compel arbitration of their claims upon confirming Plaintiffs' agreement to one or more applicable binding arbitration agreements." *Id*.

After filing its answer, however, Google spent the next nine months litigating the case without giving any further indication that it would seek to compel arbitration. The parties argued

2

1 numerous discovery matters before the assigned magistrate judge, *see* Orders, ECF 95, 208, 228, 235, 278, 299, 314, 331; asked this Court to review several of the magistrate judge's discovery rulings, *see* Orders, ECF 250, 350, 354, 355, 362, 370; and obtained multiple stipulated extensions of the discovery cut-off dates, *see* Orders, ECF 140, 161, 205.  Google fully participated in those proceedings without arguing that discovery relating to the putative class claims might be affected by one or more arbitration agreements.  Fact and expert discovery closed in October 2022.  *See* Order, ECF 205.

Google also filed a motion for summary judgment in August 2022, seeking adjudication on the merits of all claims not previously dismissed as a result of earlier motion practice.  *See* Def.'s MSJ, ECF 245.  The Court did not reach the merits of that motion, however, because it realized that Google had set the summary judgment hearing on the same date as the hearing on Plaintiffs' motion for class certification.  *See* Order Vacating Trial; Terminating Motion, ECF 267.  The Court declined to hear summary judgment in advance of or in conjunction with class certification, and therefore terminated Google's summary judgment motion without prejudice.  *See id.*

Google raised the possibility of arbitration for only the second time in this litigation when it filed opposition to class certification in September 2022, more than three years into the case. *See* Def.'s Opp. to Class Cert., ECF 268.  Google contended that common issues do not predominate because "[p]utative class members may be subject to arbitration agreements."  *Id*. at 18.  Google did not present evidence that any particular putative class members were subject to binding arbitration, but Google identified several arbitration agreements that in its view could apply to putative class members.  *See id*.  In response, Plaintiffs argued that Google had waived its right to assert arbitrability.  *See* Pls.' Reply ISO Class Cert., ECF 303.  The Court determined that Google had not waived its right to compel arbitration, but concluded that Google had not provided adequate briefing on the issue of arbitrability to defeat class certification.  *See* Order at 28-30, ECF 360.  The Court granted Plaintiffs' class certification motion in part in December 2022, certifying a "Purchaser Class" to pursue the claims for breach of contract and violation of California's UCL. *See id.* at 31-32.

Seven months after class certification, Google filed the present motion to compel

arbitration. *See* Def.'s Mot. to Compel Arb., ECF 397. The motion was filed on July 21, 2023, almost exactly four years after the complaint was filed. Google does not seek to compel arbitration as to any particular individuals, but it does seek to modify the definition of the certified Purchaser Class to exclude individuals who entered into arbitration agreements. Google identifies two arbitration agreements: (1) the Google Arbitration Agreement - Devices, Related Accessories, and Related Subscription Services ("Google Device AA") that some individuals may have entered into when they set up their devices; and (2) the Google Store Sales Terms ("Sales Terms") that some individuals may have entered into when they purchased their devices from the Google Store. Google contends that a significant portion of the certified Purchaser Class entered into one or both of these arbitration agreements, and that those individuals must be excluded from the Purchaser Class definition. Plaintiffs oppose Google's motion to compel arbitration on multiple grounds, including that Google has waived the right to compel arbitration.

At the hearing on December 14, 2023, the Court acknowledged that its class certification order includes a determination that Google has not waived its right to compel arbitration as to unnamed class members. The Court stated that it would revisit the issue, however, in light of the scant briefing on waiver at the class certification stage and the Ninth Circuit's guidance on waiver in two cases issued after this Court's class certification order, *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023), and *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023). *See* Hrg. Tr. 11:20-25, ECF 418. Based on the parties' robust briefing on waiver in connection with Google's motion to compel arbitration, the Court was satisfied that both sides understood that the issue of waiver was still in play. *See id.* 12:1-5. The parties were given ample opportunity to present oral argument on waiver at the hearing. *See generally* Hrg. Tr.

**II.    LEGAL STANDARD**

"[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill*, 59 F.4th at 468. With respect to the first prong of this test, knowledge of an existing right to compel arbitration does not require "a present ability to move to enforce an arbitration agreement." *Id*. at 469. With respect to the second prong, "[t]here is no concrete test to

4

1  determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, we
2  consider the totality of the parties' actions." *Id*. at 471 (internal quotation marks and citation
3  omitted).  Under Ninth Circuit precedent, "a party generally acts inconsistently with exercising the
4  right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and
5  (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage
6  of being in court." *Armstrong*, 59 F.4th at 1015 (internal quotation marks and citation omitted).

   The party opposing arbitration bears the burden of establishing waiver, but that burden is not "heavy." *Armstrong*, 59 F.4th at 1014.  "[T]he burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Id*. at 1015.  The party opposing arbitration need not establish prejudice. *Id*.

**III.   DISCUSSION**

   Google contends that a "significant portion" of the certified Purchaser Class agreed to arbitration provisions in the Google Device AA and/or the Sales Terms.  Def.'s Mot. to Compel Arb. at 1.  Google moves to compel arbitration with respect to the claims of those individuals.  In this context, that means Google seeks to modify the Purchaser Class definition to exclude those individuals.

   Plaintiffs raise several arguments in opposition to Google's motion.  First, Plaintiffs assert that Google has waived its right to compel arbitration.  Second, Plaintiffs argue that Google has failed to show that any class members agreed to the Google Device AA or the Sales Terms.  Third, Plaintiffs dispute the applicability of the Google Device AA or the Sales Terms to class members. Plaintiffs argue that the claims asserted on behalf of the Purchaser Class are grounded in Google's Terms of Service ("TOS"), which does not contain an arbitration provision and instead provides that all claims arising out of the TOS will be litigated exclusively in the federal or state courts of Santa Clara County, California.  Fourth, Plaintiffs argue that the arbitration provisions contained in the Google Device AA and the Sales Terms are unconscionable and therefore unenforceable.

   The Court finds Plaintiffs' first argument, waiver, to be dispositive.  Plaintiffs bear the burden of establishing waiver under the Ninth Circuit's two-prong test, meaning that Plaintiffs must show:  (1) Google's knowledge of an existing right to compel arbitration; and (2) Google's

intentional acts inconsistent with that existing right. *See Hill*, 59 F.4th at 468. The Court addresses Plaintiffs' showing on each prong in turn. For simplicity of discussion, the Court assumes the applicability and enforceability of the Google Device AA and the Sales Terms. Although Plaintiffs argue that the Google Device AA and the Sales Terms are inapplicable and/or unenforceable, the Court need not reach those arguments given Plaintiffs' showing that any right to compel arbitration under those provisions has been waived by Google.

### A. Knowledge of an Existing Right to Compel Arbitration

Plaintiffs argue that Google had knowledge of the arbitration provisions of the Google Device AA and the Sales Terms, because Google drafted those provisions. "Knowledge of a contractual right to arbitrate is imputed to the contract's drafter." *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011). Plaintiffs point to evidence that Google began using the Google Device AA in 2018, and that the current version of the Google Device AA has been in use since October 2019. *See* Luu Decl. ¶¶ 4-8, ECF 397-1. The arbitration provision in the Sales Terms has been in effect, unchanged, since August 3, 2020. *See id.* ¶ 22. This evidence is sufficient to establish Google's knowledge of its arbitration rights under the Google Device AA when the case was filed in July 2019 and when the Joint Case Management Statement was filed in February 2020, stating, "The parties agree that this case is not suitable for reference to binding arbitration[.]" Joint Case Management Statement at 11. The evidence also establishes Google's knowledge of its arbitration rights under the Sales Terms in August 2020, approximately one year after the case was filed.

Google does not dispute that it had knowledge of the arbitration provisions of its Google Device AA and Sales Terms. Indeed, Google does not offer any argument expressly directed to the first prong of the waiver test. Google does argue that "it was not clear which, if any, of the individual plaintiffs had agreed to arbitration, and Google could not move to compel arbitration as to the uncertified class claims." Def.'s Reply ISO Mot. to Compel Arb. at 3, ECF 402. To the extent Google is arguing that it lacked knowledge of a present right to compel arbitration prior to class certification, such argument is unpersuasive. The issue presented here is when Google had knowledge of its right to compel arbitration against putative class members, not against the

6

individual Plaintiffs. It was clear from early in the litigation that the putative class included individuals who agreed to the Google Device AA and/or the Sales Terms, given the proposed class period and asserted class claims. Controlling Ninth Circuit authority has "never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *Hill*, 59 F.4th at 469. A class action defendant can waive the right to arbitrate against putative class members by affirmatively renouncing that right or by impliedly waiving the right through litigation conduct. *See id*.

The Court finds that Plaintiffs have established Google's knowledge of an existing right to compel arbitration against putative class members.

### B. Intentional Acts Inconsistent with that Existing Right

In order to establish Google's waiver of its right to compel arbitration, Plaintiffs must show that Google's intentional acts in this litigation were inconsistent with that right. As noted above, there is no concrete test for this prong of the waiver test. *See Armstrong*, 59 F.4th at 1015; *Hill*, 59 F.4th at 471. This Court must consider the totality of Google's actions. *See Armstrong*, 59 F.4th at 1015; *Hill*, 59 F.4th at 471. "[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (internal quotation marks and citation omitted).

The Ninth Circuit's recent decisions in *Armstrong* and *Hill* illustrate conduct that does not rise to the level of waiver (*Armstrong*) and conduct that crosses the waiver threshold (*Hill*). In *Armstrong*, the plaintiff entered an agreement to arbitrate all disputes regarding the terms and conditions of her employment with the defendant, but nonetheless filed a putative class action against the defendant asserting violations of state wage and hour laws. *See Armstrong*, 59 F.4th at 1013. The defendant did not file a motion to dismiss, but instead filed answers to the initial complaint and the first amended complaint, asserting in both answers the right to arbitration as an affirmative defense. *See id*. The parties thereafter submitted a joint case management statement, in which the defendant advised that it planned to move to compel arbitration after conducting discovery. *See id*. The defendant reiterated that intent at the initial case management conference.

7

1  *See id*. During discovery, the defendant requested that the plaintiff respond to five interrogatories and produce twenty-eight pages of documents. *See id*. Neither party filed discovery motions, aside from a stipulated request for a protective order. *See id*. The defendant filed a motion to compel arbitration approximately ten months into the litigation. *See id*. at 1014. The plaintiff opposed the motion, asserting that the defendant had waived its right to arbitration. *See id*. The district court rejected the plaintiff's assertion of waiver and granted the defendant's motion to compel arbitration. *See id*.

On appeal, the Ninth Circuit affirmed the denial of waiver under the totality of the circumstances test, observing that the defendant "repeatedly reserved its right to arbitration, did not ask the district court to weigh in on the merits, and did not engage in any meaningful discovery." *See Armstrong*, 59 F.4th at 1013. The *Armstrong* court emphasized that the defendant consistently asserted its right to compel arbitration in every substantive filing, including its answers to the original and amended complaints and the joint case management statement filed in advance of the initial case management conference. *See id*. at 1015-16. The defendant never filed a motion seeking a ruling on the merits and indeed did not file any significant motion other than the motion to compel arbitration. *See id*. at 1013, 1016. The *Armstrong* court also found it significant that the defendant did not litigate the case for a prolonged period before filing its motion to compel arbitration, and sought only limited discovery before filing that motion. *See id*. at 1015-16. The Ninth Circuit distinguished the circumstances presented in *Armstrong* from those in other cases in which the defendants waived the right to arbitration by litigating for more than two years and filing motions to dismiss on the merits. *See id*.

Google's conduct bears no resemblance to that of the defendant in *Armstrong*. The defendant in *Armstrong* asserted its right to compel arbitration at the earliest possible moment and consistently thereafter; filed no motions on the merits; engaged in only limited discovery; and ultimately filed a motion to compel arbitration ten months into the litigation. In contrast, Google first asserted its right to compel arbitration in its answer filed two and a half years into the case, *after* filing four motions to dismiss; then ignored the issue of arbitrability while participating in discovery and filing a motion for summary judgment; asserted its arbitration rights for a second

8

1   time when opposing class certification; then waited an additional seven months before filing the
2   present motion to compel arbitration, *four years* into this litigation.  Under these circumstances,
3   the Court finds Google's reliance on *Armstrong*, *see* Def.'s Reply ISO Mot. to Compel Arb. at 1-3,
4   to be misplaced.

5         The facts of the present case are closer to those in *Hill*, in which individuals who worked
6   as agents for the defendant's call centers brought putative class claims for violations of state
7   employment law.  *See Hill*, 59 F.4th at 460.  The defendant had a dispute resolution plan adopted
8   in 2002 ("2002 DRP"), and a later version of the dispute resolution plan adopted in 2012 ("2012
9   DRP").  *See id*. at 460-61.  The defendant expressly asserted a right to compel arbitration under
10  the 2012 DRP throughout the litigation, including in its answer to the operative second amended
11  complaint, in discovery documents, in a motion for summary judgment, and in opposition to class
12  certification.  *See id*. at 461-63.  The district court indicated that the ultimate class definition
13  would exclude agents who had signed the 2012 DRP, but deferred finalizing the class definition
14  pending further briefing.  *See id*.  In none of those proceedings did the defendant assert a right to
15  compel arbitration under the 2002 DRP.  *See id*.  Nor did the defendant raise the 2002 DRP when
16  moving for reconsideration of the district court's class certification decision.  *See id*. at 464.  The
17  case was stayed for a period of time while the defendant proceeded with an unsuccessful
18  interlocutory appeal of the denial of summary judgment.  *See id*. at 465.

19        The defendant in *Hill* asserted a right to compel arbitration under the 2002 DRP for the
20  first time in a joint status report filed after the stay was lifted, and argued that the district court
21  should exclude signatories of both the 2002 DRP and the 2012 DRP when finalizing the class
22  definition.  *See id*. at 466.  The district court issued a class definition excluding the signatories to
23  the 2012 DRP; the district court did not address the defendant's assertion of rights under the 2002
24  DRP.  *See id*. at 466-67.  The defendant thereafter advised the district court that it had worked
25  with the plaintiff to develop a list of 5,772 class members that included signatories to the 2002
26  DRP, but anticipated moving to compel arbitration under the 2002 DRP after the class notice was
27  issued and the time to opt out expired.  *See id*. at 467.  The day after the notice administrator
28  submitted his report on the final class size, the defendant moved to compel individual arbitration

United States District Court
Northern District of California

1  with respect to 2,927 class members who had signed the 2002 DRP.  *See id*. at 468.  The district

2  court determined that the defendant had waived its right to compel arbitration under the 2002

3  DRP.  *See id*.

4  On appeal, the defendant argued that it did not have an existing right to compel arbitration

5  prior to class certification, because Hill was not a signatory to the 2002 DRP and the district court

6  could not have compelled non-parties to arbitration.  *See Hill*, 59 F.4th at 469.  The Ninth Circuit

7  rejected that argument, holding that a finding of waiver by the defendant, XBS, "looks only to the

8  acts of XBS, binds only XBS, does not reach out to affect the rights of as then-unnamed class

9  members, and does not depend upon when the law requires or authorizes such a right to be

10  asserted."  *Id*.  The Ninth Circuit determined that the defendant waived its right to compel

11  arbitration under the 2002 DRP by failing to assert its rights under the 2002 DRP earlier in the

12  case; engaging in extensive discovery regarding the claims of unnamed putative class members

13  without attempting to exclude signatories of the 2002 DRP; and seeking judicial resolution on the

14  merits by moving for, and appealing the denial of, summary judgment.  *See id*. at 473-76.  The

15  *Hill* court concluded its discussion of the waiver issues as follows:  "Overall, considering the

16  totality of the circumstances, as we must, we hold that the district court properly found that XBS

17  has acted inconsistently with its right to compel arbitration under the 2002 DRP."  *Id*. at 479.

18  Google has engaged in much the same type of conduct that led the Ninth Circuit to find

19  waiver in *Hill*.  Google failed to assert its right to compel arbitration under the Google Device AA

20  or the Sales Terms until years into the litigation; completed fact and expert discovery; and sought

21  judicial resolution of the merits through motion practice.  Google attempts to distinguish its

22  conduct from that of the defendant in *Hill* by highlighting certain factual differences between the

23  cases.  It is true that the present case does not mirror *Hill* in every respect.  However, in the

24  Court's view the factual differences between the cases do not weaken Plaintiffs' waiver argument.

25  For example, Google points out that whereas the *Hill* defendant failed to raise arbitration under the

26  2002 DRP in its answer, Google did raise arbitration in its answer.  Google ignores that its answer

27  was filed two and a half years into the litigation, after four motions to dismiss that resulted in

28  dismissal of three claims on the merits.  Google also ignores that after raising arbitration in its

answer, Google continued litigating the case for nine months without further mention of arbitration, and even went so far as to file a motion for summary judgment.

Google points out that whereas the *Hill* defendant failed to raise arbitration under the 2002 DRP when it opposed class certification, Google did raise arbitration in its opposition to class certification. While Google's factual recitation is correct, Google does not address the *Hill* defendant's assertion of its arbitration rights under the 2002 DRP prior to finalization of the class definition. The Ninth Circuit did not find the *Hill* defendant's assertion of its arbitration rights in connection with finalizing the class definition to be sufficient to avoid waiver.

Finally, Google argues that its motions to dismiss and motion for summary judgment were directed solely to the individual Plaintiffs' claims and in no way asked the Court to decide the merits of the class claims. The Court disagrees with Google's characterization of its motions. The motions to dismiss resulted in dismissal of three claims on the merits. The motion for summary judgment sought adjudication of issues going to the crux of the class claims, for example, whether inadvertent activation of Google Assistant and use of resulting recordings by Google constitutes a breach of contract or gives rise to damages.

Considering the totality of the circumstances, the Court finds that Google acted inconsistently with its right to compel arbitration under the Google Device AA and/or the Sales Terms. The Court therefore concludes that Plaintiffs have met their burden to establish that Google waived its right to compel arbitration in this case.

Accordingly, Google's motion to compel arbitration is DENIED.

## IV. ORDER

(1) Google's motion to compel arbitration is DENIED; and

(2) This order terminates ECF 397.

Dated: January 23, 2024

BETH LABSON FREEMAN
United States District Judge

11