```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3    Before The Honorable Susan van Keulen, Magistrate Judge
 4
 5 IN RE GOOGLE ASSISTANT,      ) No. C 19-04286-BLF
   PRIVACY LITIGATION,          )
 6                              )
           Defendant.           )
 7 _____)
 8
                                  San Jose, California
 9                                Tuesday, August 27, 2024
10
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
11            RECORDING 10:03 - 10:24 = 21 MINUTES
12 APPEARANCES:
13 For Plaintiffs:
                               Lowey Dannenberg, P.C.
14                             44 South Broadway
                               Suite 1100
15                             White Plains, New York 10601
                        BY:    ANDREA FARAH, ESQ.
16                             MARGARET C. MACLEAN, ESQ.
                               CHRISTIAN LEVIS, ESQ.
17                             RADHIKA GUPTA, ESQ.
   For Defendant:
18                             Perkins Coie LLP
                               1201 Third Avenue
19                             Suite 4900
                               Seattle, Washington 98101
20                      BY:    ERIN K. EARL, ESQ.
21 Transcribed by:             Echo Reporting, Inc.
                               Contracted Court Reporter/
22                             Transcriber
                               echoreporting@yahoo.com
23
24
25
```

```
 1  Tuesday, August 27, 2024                          10:03 a.m.
 2                    P-R-O-C-E-E-D-I-N-G-S
 3                           --oOo--
 4          THE CLERK:  Case 19-CV-4286, In re Google
 5  Assistant Privacy Litigation.
 6      Counsel, please identify yourselves for the record,
 7  beginning with Plaintiff.
 8          MS. FARAH (via Zoom):  Good morning, your Honor.
 9  Andrea Farah from Lowey Dannenberg on behalf of Plaintiffs.
10  I also see Christian Levis, Margaret MacLean, and Radhika
11  Gupta from my office, and Erin --
12          THE COURT:  I'm sorry, Ms. Farah, you're going to
13  have to slow down and speak --
14          MS. FARAH:  Okay.
15          THE COURT:  -- much more slowly.  The microphone
16  is a little -- sounds a little wobbly.
17          MS. FARAH:  Okay.  Okay.
18          THE COURT:  Please restate the appearances.
19          MS. FARAH:  So I am Andrea Farah of Lowey
20  Dannenberg on behalf of Plaintiffs.  And from my office,
21  also attending is Christian Levis, Margaret MacLean, and
22  Radhika Gupta.  I see from my co-counsel's office Scott and
23  Scott, Erin Comite is attending, and I believe that is it
24  for Plaintiffs.
25          THE COURT:  All right.  Thank you very much, Ms.
```

1  Farah.  Good morning.
2            MS. FARAH:  Good morning.
3            THE COURT:  And for Defendant today, please?
4            MS. EARL (via Zoom):  Good morning, your Honor.
5  On behalf of Defendants, Erin Earl from Perkins Coie, and
6  it's just me today.
7            THE COURT:  Ms. Earl, good morning.
8       All right.  We are on today to discuss a recently
9  resurrected issue around briefing schedule regarding
10 sampling.  So when I saw this come in, I did go back and
11 reacquaint myself with our long history on this case, and in
12 particular with regards to this issue.  And as I remember,
13 we had worked this around to a sampling order.  Defendants
14 had taken that to Judge Freeman.  Then Judge Freeman looked
15 at it and said, "Well, let's decide class cert, and then we
16 can get back to this."
17      And so she did that, issued the class certification
18 issue, and then told the parties if they still had sampling
19 questions -- well, actually, I think then I issued an order
20 following the class certification issue -- that's right --
21 that told the parties -- gave a briefing schedule on this
22 and set some deadlines.  And then that got stayed by
23 Google's motion regarding arbitration.  So that took some
24 time.  And then that was resolved, and you all went back to
25 see Judge Freeman last -- well, June of 2023, if I've got

1  the time line correct.  And she set the rest of the case
2  schedule.  You've got a trial date coming up.  I think
3  you're just about a year from trial.  And with regards to
4  this issue, should there -- you know, supplemental briefing
5  on the sampling issue in light of the class certification
6  order, she told you to come see me.  I don't go looking for
7  you, obviously.  I have plenty of discovery disputes to
8  handle.  And hearing nothing, nothing has happened.
9       So I do see the request to resurrect the issue at this
10 time.  I did touch base with Judge Freeman.  I just wanted
11 to see where the case was in scheduling.  And given that you
12 are a year from trial, we will return to this issue now and
13 pick it up where we left off, which was briefing --
14 providing supplemental briefing on -- in light of the class
15 certification issue and see if we can get this resolved or
16 if we proceed down the sampling path.
17      And, really, why I wanted to bring you in today, and as
18 I indicated in the notice for this hearing, I wanted to be
19 sure that the sampling plan that we had -- I had issued
20 following discussion with you back in January of '23, so a
21 year and a half ago, if that is still the right plan and
22 that -- the right scope of documents or if that should be
23 adjusted in some way.
24      The plan had two parts.  One was for Google to identify
25 categories of documents that had been produced.  And if I'm

1  remembering correctly, the reason for that was in response
2  to Google's argument that sampling wasn't necessary because
3  this information or relevant information -- sufficient
4  amounts of relevant information had been produced.  And so
5  the idea was to, well, identify what you're relying on and
6  give me a short argument as to why then sampling is or is
7  not necessary, or not necessary in Google's case, and then
8  to give the Defendant some time to review Google's
9  identification of documents and to also respond as to why
10 sampling might still be necessary.
11      I don't see it in my order, but I would obviously
12 expect the parties to meet and confer, and I would include
13 that -- that will be included in any order that follows this
14 hearing.  Following Google's identification of document, the
15 parties will have to meet and confer and see if you can come
16 to some agreement in terms of what is sufficient and where
17 you are with regards to sampling.
18      But -- so that catches us all up, I hope.  And what I
19 want to know is, basically, does there need to be an
20 adjustment on the sampling order, either in the documents
21 that are to be identified by Google or the timing.
22      One last footnote, in its portion of the brief,
23 Plaintiff, I think, is -- in the joint submission that is
24 currently before me, as I read it, Plaintiff was just asking
25 that the sampling plan from January of '23 be resurrected.

```
 1  Google, after the arguments as to why -- as to delay, then
 2  said, "Well, if we're going to do sampling, also seemed
 3  okay.  Google seemed okay with the order from January, but
 4  wanted to tighten up the timing.
 5       So that's where I understand the state of the bidding.
 6       Ms. Farah, you're the Plaintiff.  Let me hear from you
 7  first with regards to the supplemental briefing request.  Is
 8  this the right scope?  If you get this information, is that
 9  helpful?  And then -- or do you think the case has shifted
10  in some way that you need something else?  And then I'll
11  hear from Ms. Earl.
12            MS. FARAH:  Yeah.
13            THE COURT:  Thank you.  Ms. Farah?
14            MS. FARAH:  Certainly, your Honor.  Thank you.  So
15  as your Honor noted, yes, there were events, mainly related
16  to the arbitration attempts by Google, why the sampling was
17  postponed temporarily.  Your Honor also may know we -- the
18  parties have attempted to resolve the case via private
19  mediation.  There was another, you know, set of events that
20  justified postponing sampling for the moment, according to
21  Apple and the Court.  The mediation efforts were not
22  successful, and so we absolutely believe that we should pick
23  up litigation where -- or discovery where we left off.
24       The class certification order where Judge Freeman
25  certified purchaser class, in our View, does not change the
```

1 scope of sampling.  The individuals in the purchaser class
2 are scattered from, you know, throughout the entirety of the
3 class period, from the beginning to the end.  They were
4 subject to the same --
5             THE COURT:  It's not about sampling.  It's about
6 the order that -- my request for supplemental briefing.
7             MS. FARAH:  Sure.
8             THE COURT:  Google has made the argument that the
9 relevant information is in these -- you know, these
10 documents.  And so I ordered Google to identify categories
11 of documents that quantify or estimate false accepts and/or
12 audio recordings sent to human reviewers for the relevant
13 class period, and go on from there as -- well, yes, so --
14 and my question is, is that the right --
15             MS. FARAH:  Yes.
16             THE COURT:  -- description of those documents?  Is
17 that still applicable, or does that need to be adjusted?
18             MS. FARAH:  No, your Honor.  It is still
19 applicable.  Google should go ahead and identify the
20 documents it believes are responsive to what we asked for.
21 We don't believe that the scope has changed.  Even with the
22 -- a class cert order, the order as written in January, it
23 still applies, and it applies in the scope as it did in the
24 past.  So we would like to proceed as your Honor left off in
25 January 2023.

1          THE COURT: Okay. That's helpful. Thank you, Ms.
2 Farah.
3          MS. FARAH: Sure.
4          THE COURT: Ms. Earl, from Google's perspective?
5          MS. EARL: Thank you, your Honor. Just one minor
6 point of clarification. The stay that was entered in
7 February of 2023 was related to the parties' first mediation
8 attempt. It wasn't related to the motion to compel
9 arbitration.
10          THE COURT: Okay.
11          MS. EARL: And that matters because, as you know,
12 Google's position is that Plaintiffs waited too long to
13 revive this dispute.
14          THE COURT: Right. But we're past that because
15 we're going to go ahead and -- go ahead and address it.
16          MS. EARL: Well, understanding that your Honor is
17 past that and focused on the briefing schedule that your
18 Honor previously entered in December of 2023, yeah, Google's
19 position is that that briefing schedule remains appropriate,
20 and that is our position, as we outlined, 14 days for Google
21 to submit the materials that your Honor, you know,
22 requested, which was the chart and a five-page brief, and
23 then 14 days for Plaintiffs to respond.
24      So we -- it wasn't actually Google that requested a
25 modification to that schedule. It was Plaintiffs who

1 requested an extension of time for their response, the 28
2 days instead of the 14 days that your Honor previously
3 ordered and the parties previously agreed to back in June
4 2023 when the joint status report was submitted to Judge
5 Freeman.
6     So our position is that briefing schedule remains
7 appropriate and there's no reason to extend Plaintiff's
8 response deadline.
9         THE COURT:  Okay.  Is there -- in the documents
10 that I've described that are in the current briefing order
11 from January of '23 -- and just so our record is clear, I'm
12 looking at docket 375, Documents Produced that Quantify or
13 Estimate False Accepts and/or Audio Recordings Sent to Human
14 Reviewers for the Relevant Class Period.  Is there -- are --
15 do those documents or are -- is there -- are there other
16 documents that could be included that would focus it further
17 on the -- on devices that were manufactured and purchased --
18 manufactured and sold by Google as I -- because that's what
19 I understand is now the purchaser class.
20         MS. EARL:  That's right.  I mean, as I think Ms.
21 Bali (phonetic) previously discussed with your Honor,
22 there's -- you know, Google does not have records showing
23 which users purchased a Google made device, right?  You
24 know, you can imagine a Plaintiff might purchase a device
25 from Best Buy or from any number of third-party retailers.

10

1  And so the logs that we're speaking about -- there is not
2  and has never been a way to filter those logs just to
3  members of the purchaser class.
4          THE COURT:  Okay.
5          MS. EARL:  So, you know --
6          THE COURT:  Okay.
7          MS. EARL:  -- so that --
8          THE COURT:  I think that answers my question --
9          MS. EARL:  Thank you.
10         THE COURT:  -- which is, there's not a box in and
11 among these documents or on another set of documents that
12 identifies where the device was -- if the device that the
13 user is using was manufactured and sold by Google.
14         MS. EARL:  I mean, just to be clear, there's two -
15 - there's -- I can think -- you can think of it as two
16 different issues, right?  There's the issue of what device
17 is being used, and then there's the question of whether the
18 device was purchased by the user.  And so because the
19 purchaser class is limited to users who purchased those
20 devices, Google does not have a way to identify who
21 purchased a device.  But, you know, the -- what -- the type
22 of device that might be at issue is kind of a different
23 question, where, you know, there may be some information
24 that Google has about --
25         THE COURT:  Is there information that Google sold

1  the device, whether or not it's being used by the person who
2  made the purchase?
3           MS. EARL:  I don't -- I'm not sure, your Honor.  I
4  would have to -- I would have to check with Google on that.
5           THE COURT:  Okay.  Okay.  I think that that is --
6  that may be important information when we get through this
7  supplemental briefing and return to the sampling question.
8  So I think that that would be helpful to address in your
9  supplemental brief as to if there are documents, whether
10 it's in this category that we've already contemplated or in
11 some other -- you know, some other production or available
12 to be produced, that identifies at least the devices sold by
13 Google.  I appreciate your distinction about who's using it,
14 but that's a different question.  That may be helpful in
15 determining whether or not sampling is actually necessary.
16          MS. EARL:  Okay.  Just to make sure I'm
17 understanding.  Your -- what your Honor is suggesting that
18 we include in the briefing is documents related to
19 identifying which device types were manufactured and sold by
20 Google?
21          THE COURT:  Uh-huh.
22          MS. EARL:  Understood.  Okay.
23          THE COURT:  Well, yes.  I mean, not just types.  I
24 don't know if devices, right -- recordings that are showing
25 up in the documents that we've already identified, whether

12

1 those are coming from a device that was sold by Google or
2 not.
3             MS. EARL:  I see.  Thank you.
4             THE COURT:  Okay.  Does that make sense?
5             MS. EARL:  Yes.
6             THE COURT:  Okay. And maybe you can't answer that
7 question.  Maybe it's not answerable.  But it would seem to
8 me that that would -- could be helpful in making a sampling
9 decision down the road.  Okay.
10      All right.  So it -- we don't have a lot of time.  You
11 don't have -- I know you've got dispositive motions due in
12 the spring, I think April, for a May hearing, so -- to get
13 ready for your fall of 2025 trial date.  So we need to keep
14 this moving.  I want -- I'm going to have Google -- I will
15 issue an order because I want this to be clear.  It will
16 look very much like the order from January of 2023, and --
17 however, I am going to expand the page limit a little bit,
18 only because I'm not going to go back and read your Old
19 briefs.  When I set these page limits at five, we had been
20 around and around and around the briefing, the sampling
21 issue a couple of times.  So I will expand that to eight
22 pages on each side.
23      And I do want to keep the time line tight, but I also
24 want the parties to meet and confer.  So it may be -- I will
25 adjust that.  I'm going to give that some thought.  But I

1 want you to meet and confer.
2     So I will get that order out today, and everybody will
3 get underway, and we'll get this addressed as quickly as we
4 can and as efficiently as we can.  It's going to matter a
5 lot about that description of documents that have been
6 produced with that information that I indicated.  I think
7 that will be instrumental in figuring out whether or not
8 sampling is needed.  Okay.
9     So let me just shift gears for a moment.  I'm your
10 discovery judge.  You're before me.  I don't want any
11 substance, but I would like to know -- as this case lumbers
12 back to life, I did see in your joint submission -- I think
13 Plaintiff had laid out the mediation efforts as part of why
14 there had been delay.  When did the parties last meet with a
15 mediator?
16     Ms. Farah, do you recall?
17         MS. FARAH:  Yeah.  Your Honor, our last in-person
18 session was on May 20th, 2024.
19         THE COURT:  Okay.
20         MS. FARAH:  But I would say that the parties did
21 remain in contact and were -- continued to talk, you know,
22 even after.  And I would say that it was up until a few
23 days, maximum, few weeks ago, that they continued to talk.
24 So --
25         THE COURT:  Okay.  And have those further

1 discussions been facilitated by the mediator, or were they
2 just one on one?
3         MS. FARAH:  Both, your Honor.  Both.  I would say,
4 with the mediator, up to a point, and then we also attempted
5 to make direct contact and did one on one --
6         THE COURT:  Okay.
7         MS. FARAH:  Yeah.
8         THE COURT:  Okay.  And do you have --
9     And I'm going to ask you, Ms. Earl, in a moment if this
10 matches your understanding or if you have anything to add.
11     But, Ms. Farah, are there any further dates or time set
12 with the mediator?
13         MS. FARAH:  No, your Honor, not at this juncture.
14 No.
15         THE COURT:  And have you worked with the same
16 mediator throughout?  I know you said you had a couple of
17 sessions --
18         MS. FARAH:  Yeah.
19         THE COURT:  -- or have you tried different people?
20         MS. FARAH:  Yes, we had three sessions.  One was
21 with Randy Wulff, and two were with Jay Gandhi.
22         THE COURT:  Okay.  All right.  Thank you.
23     And Ms. Earl?
24         MS. EARL:  Thank you, your Honor.  I believe Ms.
25 Farah's description of the parties' ongoing negotiations is

1 correct, like, the parties have remained in contact, to my
2 knowledge.
3          THE COURT:  Okay.  Good.
4      All right.  Well, I would encourage the parties to
5 continue those efforts.  I know sometimes it feels like
6 maybe you've reached an impasse or you've kind of worked it
7 out as far as you can, but there's a lot to be -- there's a
8 lot of benefit, let me put it that way, obvious benefit.
9 You're still at a very good off-ramp for this case to get
10 settled in advance of the time and effort that will be going
11 to your dispositive motions.  And then, of course, those
12 will run you right up into your trial prep.
13      So I would encourage you to take advantage of this time
14 where there is obvious benefit to both sides to reaching a
15 resolution and to return to your mediator, if helpful, or if
16 the parties have a good talking relationship between those
17 who make those decisions, then I would hope that those would
18 continue.
19      Okay.  I will issue an order today, and we will get the
20 ball rolling on this and get it underway, all right?
21          MS. FARAH:  Thank you, your Honor.
22          THE COURT:  Any questions for the Court?  Ms.
23 Farah, from Plaintiff?
24          MS. FARAH:  No, not for us.  Thank you.
25          THE COURT:  Ms. Earl?

```
                                                              16
 1            MS. EARL:  No, your Honor.  Thank you.
 2            THE COURT:  All right.  All right.  Thank you both
 3   very much.  Thank you for getting here on relatively short
 4   notice, answering my questions.  I will go ahead and issue
 5   an order, and we'll get this one worked out.  Thank you.
 6            MS. FARAH:  Thank you.
 7            THE COURT:  That concludes this matter, and we are
 8   adjourned.  Have a good day.
 9        (Proceedings adjourned at 10:24 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

17

## CERTIFICATE OF TRANSCRIBER

3    I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9    I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

*[signature]*

Echo Reporting, Inc., Transcriber

Wednesday, September 11, 2024