1   Bobbie J. Wilson, Bar No. 148317
    BWilson@perkinscoie.com
2   Sunita Bali, Bar No. 274108
    SBali@perkinscoie.com
3   PERKINS COIE LLP
    505 Howard Street, Suite 1000
4   San Francisco, California 94105
    Telephone: +1.415.344.7000
5   Facsimile:  +1.415.344.7050

6   Erin K. Earl (*pro hac vice*)
    EEarl@perkinscoie.com
7   PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
8   Seattle, Washington 98101-3099
    Telephone: 206.359.8000
9   Facsimile: 206.359.9000

10  Attorneys for Defendants
    Alphabet Inc. and Google LLC
11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

                     SAN JOSE DIVISION
14

15
    IN RE GOOGLE ASSISTANT PRIVACY          Case No. 5:19-cv-04286-BLF-SVK
16  LITIGATION
                                            **DEFENDANTS' FURTHER STATEMENT
17                                          ON DATA SAMPLING**

18                                          Dept.:    Courtroom 6, 4th Floor
                                            Judge:    Hon. Susan van Keulen
19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

There is only one remaining issue to be resolved before the sampling plan can be finalized: the size of the sample. The parties already agreed to limit the sample to hotword-initiated queries made on Google devices. And the Court has already made clear that the "limited sampl[e]" will be "of a fixed number . . . taken from one day per quarter across the class period." October 3, 2024 Hearing Tr. ("Tr.") at 37:4-6. The Court has also confirmed that query contents can be redacted, leaving only the hotword (where present). *Id*. at 37:12-15. As to sample size, the Court instructed the parties to further meet and confer, but advised that the total should fall under Plaintiffs' request for millions of queries and substantially exceed Google's initial 12,500 proposal. *Id*. at 43:4-7 ("millions . . . we're not going there. And . . . tens of thousands . . . that's not appropriate either").

Based on that guidance, during the parties' meet and confer, Google proposed a total sample size of 104,000 queries, captured by randomly selecting 4,000 queries for each of 26 sample days. As detailed in the Declaration of Jonathan Borck, Ph.D. ("Borck Decl."), this sample size is more than sufficient to facilitate a meaningful and accurate analysis of the rate at which the hotword appears in the "top hypothesis" field ("Hotword Rate"), and will amply capture languages and device types that account for the vast majority of queries. In the event the Court finds Google's proposed sample size too small, Google is willing to increase it to a total of 260,000 queries (10,000 queries per sample day). Although Google does not believe that such an increase is needed to accomplish the objectives of this sampling exercise, Google wants to be receptive to the Court's concerns regarding sample size, while still proposing a manageable number for Google.

However, Plaintiffs' continued demand for a sample size that exceeds 20 million is a nonstarter. During the parties' meet and confer, Plaintiffs unreasonably demanded that Google produce 100,000 queries for *each* of *eight* days per quarter, over 26 quarters, totaling 20,800,000 queries. Not only does Plaintiffs' proposal reflect no compromise, but it also seeks to retread ground already decided by the Court regarding the days per quarter to be sampled, and blatantly ignores the Court's proportionality concerns and guidance regarding a reasonable sample size. Moreover, such a large sample size is not necessary to satisfy the objectives of this sampling exercise, given that only two languages and three device categories account for the vast majority of queries.

1     The Court should adopt Google's proposal.

2  **II.     ARGUMENT**

3          **A.     Google's Sampling Plan Complies with the Court's Express Guidance**

4          The Court indicated its intent to significantly narrow the scope and volume of the prior

5  sampling order (Dkt. 331) to reflect that the majority of Plaintiffs' claims are no longer at issue.

6  *See* Tr. at 6:24-7:4 ("[W]e have a very narrowed class from where we were when we set the initial

7  sampling plan quite some time ago, and that significant narrowing . . . has significant impact on,

8  well, relevance and proportionality . . . ."); *see also id*. at 15:1-8. The Court also confirmed, as was

9  clear from the plain terms of the last sampling order, that the sample need not include queries made

10 in each language made on each Google-manufactured device type that Google Assistant supports,

11 no matter how rare. *See* Tr. at 27:3-6 ("I-- the plan was never going to be able to guarantee or even,

12 frankly, address . . . the stratification . . . of both devices and languages."). And that makes sense,

13 given that a much more complex sampling approach would be required to ensure that even the

14 rarest languages and device types are captured in meaningful numbers. *See* Borck Decl. ¶¶ 6-7.

15         Based on the Court's guidance, Google proposes (and proposed during the parties' meet-

16 and-confer) a sample size of 104,000 queries. A sample of this size "will result in narrow 95%

17 confidence intervals for the rates of interest." *Id*. ¶ 4. In other words, a random sample of 104,000

18 queries is more than sufficient to determine that the measured characteristic (i.e., the Hotword Rate)

19 is likely to appear the same in the sample as in the total population.

20         Even if the objective were a sample that is representative of the languages and device types

21 in the total query population (and Plaintiffs have not articulated any reason why they need that), a

22 sample size of 104,000 satisfies that purpose too. Based on data from Google, Dr. Borck estimates

23 that English-US (98.0%) and Spanish-US (1.3%) together were used for approximately 99.3% of

24 queries during the class period. *Id*. ¶ 6. Thus, Google's proposed sample would likely "include at

25 least 100,000 English (US) queries and 1,200 Spanish (US) queries," with "at least several hundred

26 queries" comprising a mix of less common languages. *Id.* ¶ 7. Any objection that this proposal does

27 not ensure inclusion of queries in languages that *when aggregated together* account for 0.7% of the

28 population is no basis to sample tens of millions of queries, particularly when even a sample size

1   that large may not capture every language. *See id*. ¶ 8.

2        Likewise, Dr. Borck calculates that Google smart speakers and displays (84.7%) and Pixel

3   phones (10.9%) together account for approximately 95.6% of all queries. *Id*. ¶ 7. A sample of

4   104,000 will thus include tens of thousands of queries from smart speakers and displays, thousands

5   of queries from Pixel phones, and a random mix of several thousand queries from other device

6   types. *Id*. Again, to the extent that Plaintiffs object that they are not guaranteed to receive queries

7   from every single device type, this sampling exercise was never designed to accomplish that goal

8   and doing so would require an entirely different approach. *Id*.

9        **B.      Plaintiffs' Continued Insistence on a Sample Size in the Tens of Millions
              Should Be Rejected Again**
10

11       The Court made clear during the October 3 hearing that a sample size of 20 million was a

12  nonstarter. *See, e.g.*, Tr. at 37:18-21; 44:13-14 ("[A]gain, the number with millions is not -- it's not

13  happening."). The Court also concluded that the sample would pull data from only one day per

14  quarter across the class period, after Google explained the burden associated with selecting multiple

15  days. *Id*. at 37:4-6, 43:3-4, and 43:9-11; *see also id*. at 32:18-24.

16       Nonetheless, Plaintiffs' final proposal during the parties' meet-and-confer was a sample

17  size of 20,800,000, based on 100,000 queries provided for each of 8 sample days per quarter. Bali

18  Decl. ¶ 7. When asked how to reconcile their proposal with the Court's remarks, Plaintiffs merely

19  claimed that the Court's remarks were not intentional. *Id*. But the Court could not have been more

20  clear. And indeed, even Plaintiff's counsel acknowledged that any sampling plan would sample

21  one day per quarter, not eight. Tr. at 35:9-14 (THE COURT: "Under the original model, which

22  you're -- from -- ***which you're proposing be adapted*** is to -- for any given day, ***one day in a quarter***,

23  you need to know the total number of queries, and then from that you take one quarter of a percent

24  of the queries?" MS. FARAH: "Yes, yes.") (emphasis added).

25       Plaintiffs' refusal to meet and confer in good faith, and instead insist on a proposal that

26  blatantly disregards the Court's guidance, should be admonished.

27  **III.   CONCLUSION**

28       For these reasons, Google respectfully requests that the Court adopt its sampling proposal.

1

Dated:  October 15, 2024

**PERKINS COIE LLP**

2

3

By: */s/ Sunita Bali*
    Bobbie J. Wilson, Bar No. 148317
    Sunita Bali, Bar No. 274108
    Erin Earl (*pro hac vice*)

4

5

Attorneys for Defendants
Alphabet Inc. and Google LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-