# EXHIBIT B

# Labaton Sucharow

Jonathan Gardner
Partner
212 907 0839  direct
212 907 0700  main
212 883 7039  fax
jgardner@labaton.com

New York Office
140 Broadway
New York, NY 10005

August 10, 2023

**VIA CERTIFIED MAIL**

Google LLC
Legal Department – Google Store Arbitration
c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Google LLC
Legal Department – Hardware Arbitration
c/o Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

1505 Corporation
CSC - LAWYERS INCORPORATING SERVICE
c/o Google LLC
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Re:    *Notice of Claims of 5,314 Individuals Against Google LLC and Alphabet Inc.*

Counsel:

This firm represents the 5,314 individuals identified in Exhibit A. Our clients are owners of Google LLC and Alphabet Inc., (collectively, "Google") manufactured devices that purchased their Google devices directly from Google, used Google's pre-installed Google Assistant voice activated smart assistant software, and had their private conversations surreptitiously intercepted, recorded, and disclosed without their authorization, knowledge, or consent ("Claimants"). This letter provides notice of their claims under the Google Store Sales Terms of Use attached as Exhibit B and the Google Arbitration Agreement – Devices, Related Accessories, and Related Subscription Services attached as Exhibit C (collectively, "Google Terms"). Unless a satisfactory resolution is found, our clients intend to commence individual arbitrations with the American Arbitration Association ("AAA") as set forth in the Google Terms.

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 2

Google Development and Implementation of Voice Activated Software

The prevalence of voice activated software and associated devices has skyrocketed in recent years. Voice activated software is now integrated into everything from cars, cameras, speakers and thermostats. Voice activated devices are designed to record and respond to communications after someone says an activation command, or "wake word." The wake word varies amongst the type of voice activated software but is typically either "Ok, Google" "Hey, Siri" or "Alexa." The wake word must first be used to precede any specific command, otherwise, the device is not supposed to listen, record, or otherwise respond. Once the device believes it detects the wake word, it begins recording the communications it detects. The device analyzes the recording, usually to perform a specific function, like make a phone call, play a song, or search the internet. However, the recording is also sent to third party subcontractors to be used for the software developer's own commercial and financial benefit, including to improve the speech recognition abilities of its own software and to target personalized advertising.

Google is the manufacturer and seller of various tech products, including Google Home, Google Nest, smart displays, and Pixel smartphones (collectively, "Google Devices"). To compete with Amazon, Apple, and other companies, Google developed the Google Assistant software platform – an artificial intelligence-based virtual assistant that allows individuals to use their voice to ask questions and receive answers based on information available on the internet and to give instructions for simple tasks that Google Assistant executes.

Google strives to make it easy for Google Device users to use Google Assistant – Google Assistant comes pre-installed on Google Devices. To use it on a phone or tablet with the Android operating system or Google app installed, users need only to hold the home button or say the wake words, "Hey Google."[1] If Google Assistant is off, the user will be asked to turn it on.[2] To use Google Assistant on other smart Google Devices, like Google Nest, Google Home, or Chromecast Display, users need only to open the Google Home app or Google app on their device, and select "Add Google Assistant," and proceed as above.[3]

Google Routinely Conducts Unconsented Recordings of Claimants' Conversations

*False Wake Words*

Google Assistant is designed to offer users convenient access to internet-based information and control over other internet-connected devices using voice commands. Google Assistant Enabled

---

[1] https://support.google.com/assistant/answer/7172657?hl=en&co=GENIE.Platform=Android

[2] *Id.*

[3] https://support.google.com/googlenest/search?q=how+to+set+up+google+assistant+on+google+nest

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 3

Devices are equipped with sensitive microphones capable of capturing sounds from various parts of a user's home. To establish interaction, Google Assistant listens for two activation phrases or wake words – "Hey Google" and "Ok Google," indicating the start of a user command.

These devices record and analyze brief audio snippets from their environment, which are stored locally in the device's random-access memory (RAM). This audio data is continuously overwritten as new sound is captured and assessed, until a wake word is detected or the device is manually triggered.

Upon hearing a wake word or through manual activation, Google Assistant Enabled Devices switch into "active listening" mode. The device then begins recording and transmitting audio to Google for processing. This analysis allows the device to respond to the user commands issued after a wake word or manual activation.

Unbeknownst to consumers when they first enable the devices, Google Devices with Google Assistant software are continually scanning and listening for a wake word, essentially recording every conversation it overhears. In order to ensure that it does not miss a wake word, these devices are designed to be overly sensitive when listening.[4] Researcher Dorothea Kolossa even stated that these devices are "programmed in a forgiving manner."[5] Researchers Prof. Wenyuan Xu, Dr. Yanjiao Chen and Prof. Ahmad-Reza Sadeghi were able to activate false words that differed significantly from the real wake-up words, whereby, surrounding noises, the volume of the words and the gender of the speaker hardly played a role.[6] They were able to generate more than 960 custom fuzzy words in English and Chinese which activated the "wake-up word detector" of the voice assistants.[7]

Google itself admits that Google Assistant sometimes activates when the user doesn't intend it to:

> Why does Google Assistant sometimes activate when I didn't intend it to?
>
> Google Assistant might activate when you didn't intend it to because it incorrectly detected that you wanted its help - for instance when there is a noise that sounds like "Hey Google" or you manually activate it accidentally. We are constantly working to make our systems better at reducing unintended activations.
>
> If that happens, and your Web & App Activity is turned on, you can say, "Hey Google, that wasn't for you," and your Assistant will delete what you said from My Activity.

---

[4] https://www.consumerreports.org/smart-speakers/yes-your-smart-speaker-is-listening-when-it-should-not/

[5] https://smartvoicestudio.com/smart-speaker-is-always-up/

[6] Yanjiao Chen et al, *FakeWake: Understanding and Mitigating Fake Wake-up Words of Voice Assistants*. arXiv:2109.09958v1 [cs.LG], arxiv.org/abs/2109.09958

[7] *Id.*

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 4

> You can also review and delete your Assistant interactions in My Activity at any time. If Google Assistant activates when you didn't intend it to, and your Web & App Activity setting is disabled, your Assistant interaction will not be stored in My Activity.
>
> To better tailor Google Assistant to your environment, you can adjust how sensitive your Assistant is to activation phrases (like "Hey Google") through the Google Home app for smart speakers and smart displays.[8]

As a result, consumers have often complained that their voice activated devices "wake up" and begin recording them, even though they have not used a wake word.[9] Consumers have noted that their device begins recording at the sound of laughter or when they are talking to their pet.[10] 62% of Claimants confirm that they personally witnessed their Google Device wake up without the use of a wake word at least several times per week. Claimants have stated that they witness this happen when they are eating dinner with their family, talking on the phone, listening to music, or just making background noise. Importantly, these are only the instances where Claimants have *noticed* their Google Device waking up. Upon information and belief, any Google user who regularly has conversations within earshot of a Google Device will have that conversation recorded without the Claimants noticing. Former Amazon executive Robert Frederick even admitted that he turns off his voice activated device when he wants a "private moment."[11] Claimants also report receiving targeted ads based on conversations had near their Google Device without interacting with Google Assistance or using a wake command.

On July 10, 2019, a Belgian media outlet reported on a whistleblower, a former Google subcontractor, who revealed that thousands of Google's subcontractors were systematically listening to audio files recorded by Google Home smart speakers and Google Assistant smartphone app.[12] This included audio that did not contain a trigger word. It reported that when a user interacts with Google Assistant's speech recognition, a script of the conversation is generated and stored with the audio recording. Google subcontractors then analyze whether Google Assistant accurately interpreted the user's

---

[8] https://safety.google/assistant/

[9] https://www.reddit.com/r/googlehome/comments/csuc7e/why_does_my_google_home_listen_without_a_wake_word/

[10] *Id.*

[11] https://www.9news.com.au/technology/amazon-alexa-smart-speaker-stores-private-conversations-google-homeapple-homepod/4107916e-5e34-4e22-806a-1255a3bb213f.

[12] Lente Van Hee, *Google employees are eavesdropping, even in your living room, VRT NWS has discovered*, VRT NWS (July 10, 2019), https://www.vrt.be/vrtnws/en/2019/07/10/google-employees-are-eavesdropping-even-in-flemish-living-rooms/.

Labaton Sucharow

Google LLC
August 10, 2023
Page 5

speech, cross-checking every audible detail against the transcript. This practice was confirmed by three independent sources.[13]

The whistleblower had access to over a thousand audio recordings, 153 of which contained conversations that had been recorded without the 'Okay Google' command. These included private conversations and professional phone calls. The report suggested that Google Assistant Enabled Devices not only record after a trigger word but also if they hear something that remotely resembles it. Despite realizing that a conversation was wrongly recorded, Google allegedly keeps and analyzes the recording. Following these reports, on August 1, 2019, German regulators prohibited Google from listening to any conversations using Google Assistant Software in Europe, citing potential privacy breaches. Following these news reports, on August 1, 2019, German regulators prohibited Google from listening to any conversations utilizing the Google Assistant Software in Europe.[14] Specifically, the Hamburg Commissioner for Data Protection and Freedom of Information stated that in banning Google from listening to conversations that "those recordings could include sensitive and private information, not only from people using the device, but also from others in the same household."[15]

Numerous studies have confirmed that the Claimants' experiences are typical of Google users. These studies have found that voice activated devices repeatedly "wake up" and record a conversation even when a wake word is not used. A study of 328 voice activated device users revealed startling results. Over half of the users noted that their device woke up without the use of the wake word at least once a week.[16] 30% reported this happening at least once a day, and 16% noted it happening multiple times a day.[17] Researchers at Northeastern also tested voice activated devices by playing popular television shows near them.[18] The study found that some of the devices would erroneously record without a wake word at a rate of once per hour when exposed to routine conversation. The study also noted that these devices can mistakenly activate up to 19 times per day.[19]

---

[13] *Id.*

[14] Richard Neiva, *Google temporarily banned from listening to voice recordings in the EU*, CNET (Aug. 1, 2019), https://www.cnet.com/news/google-temporarily-banned-from-listening-to-voice-recordings-in-the-eu/.

[15] *Id.*

[16] https://www.vocalize.ai/2018/11/01/wake-words-false-positives/

[17] https://www.vocalize.ai/2018/11/01/wake-words-false-positives/

[18] https://www.consumerreports.org/smart-speakers/yes-your-smart-speaker-is-listening-when-it-should-not/

[19] https://www.techradar.com/news/your-smart-speaker-could-be-accidentally-listening-in-on-your-conversations

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 6


The studies also found that routine and innocuous words are sufficient to erroneously trigger a voice activated device. For example, Google Assistant was found to wake up and record when a user said "Ok, Cool" in its vicinity.[20]

*Google does not Obtain Adequate Consent for False Wake Word Recordings*

At every turn, Google suggests that it retains and records its' users' conversations, but only when a wake word is used. For instance, Google says in its "Google Assistant Safety Center":

> What is Google Assistant doing when it is in standby mode?
>
> Google Assistant is designed to wait in standby mode until it detects an activation. In standby mode, the device processes short snippets of audio (a few seconds) to detect an activation – like when you say "Hey Google." If no activation is detected, then those audio snippets won't be sent or saved to Google.[21]

Google's disclosure of retaining its users' audio recordings for product development and retaining its users' Google Assistant recordings for ad personalization is conditioned upon using the devices, such as interacting with the Assistant by voice or pressing the home button. Thus, Google Assistant users are only consenting to having their conversations recorded when they first use a wake word or press the home button to activate Google Assistant on their Google Device.

While the "Google Assistant Safety Center" represents[22] that Google never sells audio recordings or personal information, and that only Google reviews audio recordings to improve Google Assistant technology, users that click through additional links uncover that "when you interact with your Assistant by voice, we may use the text of those interactions to inform your interests for ad personalization"[23]

Though seemingly benign, these false wakes and mistaken recordings represent serious privacy concerns. Google users have no way of knowing when their device will be recording their conversations. It could ultimately record conversations about household finances, marital issues, health issues, or the most intimate details of a persons' life. The disclosure of that data to advertisers, data brokers, and others constitutes a major intrusion into individuals' data privacy.

---

[20] https://smartvoicestudio.com/smart-speaker-is-always-up/

[21] https://safety.google/assistant/

[22] *See id.*

[23] https://support.google.com/assistant/answer/11091015

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 7

Illegal Wiretapping

The recording of Claimants' conversation without a wake word is unconsented and illegal wiretapping in violation of the California Invasion of Privacy Act ("CIPA") Cal. Penal Code § 631, the Federal Wiretap Act, other state wiretapping and consumer protection laws, and is an invasion of Claimants' privacy and an intrusion upon seclusion.

*California Invasion of Privacy Act (Cal. Penal Code §631 et seq.)*

Google violated CIPA by intentionally recording, storing, intercepting and monitoring Claimants' communications without their consent when Claimants' Google Devices record their conversations without the use of a wake word.

The overarching purpose of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 696 P.2d 637, 642 (Cal. 1985). CIPA "prevent[s] the acquisition of the contents of a message by an unauthorized third-party." *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 608 (9th Cir. 2020).

To establish liability under CIPA, Claimants need only establish that Google, "by means of any machine, instrument, or contrivance, or any other manner," did any of the following:

> intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable or is being sent from or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Claimants' voice activated Google Devices are "machine[s], instrument[s], contrivance[s]" that engaged in illegal wiretapping. Further, by recording Claimants' conversations without the use of a

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 8

wake word, Google has recording Claimants' conversations "without the consent of" Claimants. *Id.* Pursuant to the Google's own representations, Claimants only consent to recording of their conversations after they use a wake word.

In addition, Claimants had a reasonable expectation of privacy over the contents of their conversations. Claimants place their Google Devices in the most personal areas of their home like their bedroom, kitchen and living room, or in the case of the Pixel smartphone, keep them on their person for many hours of the day. Claimants discuss the most intimate details of their lives with their spouse, children, friends and loved ones. They had an expectation that their Google Devices would not be conducting unprompted recording of these conversations. Courts have also recognized that mistaken wake word recording can form the basis of a viable CIPA claim. The court in *In re Google Assistant Privacy Litigation* found that having frequent "oral communications near their" Google Assistant devices formed the basis of a CIPA claim when the devices were known to activate without the use of a wake word. 2021 WL 2711747, at *5-6 (N.D. Cal. July 1, 2021). The court also noted that these recordings were unconsented and occurred "'surreptitiously' without Plaintiffs uttering a hot word." *Id.* The court in *Lopez, et al., v. Apple, Inc.,* found that allegations of incidents where voice-activated software activation occurred in private settings formed the basis of a CIPA claim when the devices were known to activate without the use of a wake word. *Lopez, et al., v. Apple, Inc.,* 19-cv-04577 (N.D. Cal. Sep. 2, 2021). The court also noted that these recordings were unconsented and occurred surreptitiously without Plaintiffs uttering a wake word. *Id.*

CIPA allows individuals to recoup statutory damages. CIPA permits the recovery of $5,000 per violation. Cal. Penal Code §637.2. "[I]t is not a necessary prerequisite to an action pursuant to this section that plaintiff has suffered, or be threatened with, actual damages." *Id.* Claimants are entitled to $5,000 for each instance their private conversation was recorded without the use of a wake word.

*Federal Wiretap Act (18 USC §2510 et seq.)*

The Federal Wiretap Act ("Wiretap Act") also prohibits the interception of any wire, oral, or electronic communication. The Wiretap Act permits a cause of action on behalf of "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 USC § 2520(a).

"Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."18 U.S.C. § 2510(4). "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. §2510(6). Last, "[p]erson is defined as "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C §2510(6).

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 9

As described above, Google Devices are devices under the Wiretap Act because they include software used to intercept confidential communications. The voice activated software inherent in Claimants' Google Devices was used to "intercept" their conversations. Further, Google did not have the consent of *any* of the parties to the communication. 18 U.S.C. §2511(2)(d). Google itself is not principally a party to the communication. Rather, the parties are Claimants and whoever they were speaking with, be it their family, friends or co-workers. Thus, by recording Claimants' conversation without the use of the wake word. Neither Claimants nor any other parties have not consented to the recording. Courts have also noted that a voice activated device's recording of private conversations is sufficient to state a claim under the Wiretap Act. *See In re Google Assistant Privacy Litigation* 2021 WL 2711747, at *5-6; *see also Lopez v. Apple, Inc.*, 558 F. Supp. 3d 821 (N.D. Cal. 2021) (allowing Wiretap Act claims to proceed when voice activated device is placed in home and exposed to private conversations).

The Wiretap Act allows Claimants to recover "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000" along with punitive damages. 18 U.S.C §2520(c)(2)(B). Given the length and breadth of Google' conduct and the intimate nature of the conversations recorded, Claimants will seek the maximum damages under the Wiretap Act in arbitration along with punitive damages.

*State Wiretapping Laws*

Claimants also reside in states that have wiretapping laws similar to CIPA and the Wiretap Act. These states include Maryland, Florida, Pennsylvania and Washington.[24] Similar to CIPA, these laws require the consent of both parties to record a communication. As described above, Google did not have Claimants' consent to record their conversations without the use of a wake word. As a result, Google recorded Claimants' conversations without their consent and violated these state wiretapping laws.

These states permit the recovery of statutory damages as well. These statutes permit the recovery of $1,000 for a violation of its provisions.[25] Again, in arbitration, Claimants will seek the maximum statutory damages for Google' surreptitious recording of their conversations without consent.

*State Consumer Protection Claims*

Our clients will also bring claims for violations of their states' consumer protection laws. These state consumer protection laws are designed to protect consumers against unfair and deceptive business practices. A predominance of Claimants live in California, which possess some of the strongest

---

[24] Fla. Stat. ch. 934.03; Md. Code Ann., Cts. & Jud. Proc. § 10-402; 18 Pa. Cons. Stat. § 5703; Wash. Rev. Code §9.73.030(1).

[25] Fla. Stat. ch. 934.10; Md. Code Ann. Cts & Jud. Pro. §10-410; 18 Pa. Cons. Stat. § 5725; Wash. Rev. Code §9.73.060.

Labaton Sucharow

Google LLC
August 10, 2023
Page 10

consumer protection laws in the country.[26] Google violated these state consumer protection laws by knowingly misrepresenting its' services and that Google Devices would not record their private conversations without a wake word. Google also failed to disclose the frequency by which Claimants' Google device would activate and record their conversations without the use of a wake word.

At a minimum, Claimants are entitled to their actual damages and restitution, calculated as the total amount spent on their Google Devices. In some cases, Claimants are entitled to three times these amounts. For example, Washington consumers can recover "three times the actual damages sustained" for consumer protection violations.[27]

*Intrusion Upon Seclusion and Invasion of Privacy*

Claimants will also bring claims for intrusion upon seclusion and invasion of privacy in violation of the California Constitution.

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art I., Sec. 1, Cal. Const. Google intruded upon Claimants' privacy interests by recording their private, intimate conversations without consent. Claimants had a reasonable expectation of privacy over their conversations.

Claimants will also bring claims for intrusion upon seclusion. Google' practice of intercepting and recording Claimants' conversations on their Google Device without consent constituted an intentional intrusion upon Claimants' seclusion. *See Lopez v. Apple, Inc.*, 558 F. Supp. 3d 821 (N.D. Cal. 2021) (allowing claims for intrusion upon seclusion and invasion of privacy to proceed based on Apple's recording of private conversations without a wake word). Google effectively placed itself in the middle of a conversation to which it was not invited, welcomed, or authorized.

As a result of Google's invasion of privacy and intrusion upon seclusion, Claimants have been harmed. Claimants will seek damages for the harm to their privacy interests in arbitration.

Potential Resolution

Our clients would welcome the opportunity to discuss a fair and prompt resolution of their claims prior to commencing individual arbitration. In furtherance of productive discussions, accompanying this letter via secure FTP is an excel spreadsheet (Exhibit A) containing the name of each client, their

---

[26] Cal. Bus. & Prof. Code §§ 17200, *et seq.*; Cal. Civ. Code §§1750, *et seq.*

[27] Wa. St. §19.86.090.

**Labaton Sucharow**

Google LLC
August 10, 2023
Page 11

email address, the email address associated with their Google Account, their phone number, and the types of Google Devices they've used Google Assistant on. Any communication with these clients regarding their claims against Google must go through counsel. Google must also preserve all documents and communications related to the clients listed on Exhibit A, including but not limited to their account records and copies of any recordings obtained from their Google Devices.

You may contact me by email, at [jgardner@labaton.com](mailto:jgardner@labaton.com) or 212-907-0839 if you would like to discuss.

Very truly yours,

*/s/ Jonathan Gardner*

Jonathan Gardner