# EXHIBIT D

## **TOLLING AGREEMENT**

This Tolling Agreement (the "Agreement") is made by and between each of the 5,314 individuals identified in Exhibit A to Claimants' August 10, 2023 notice letter and the 8,537 individuals identified in Exhibit A to Claimants' September 21, 2023 notice letter (the "Tolling Claimants"), and Google LLC, a wholly owned subsidiary of Alphabet Inc. (the "Tolling Defendant," and, together with Tolling Claimants, the "Parties").

WHEREAS, the Parties deem it to be in their mutual benefit that Tolling Claimants' putative claims against the Tolling Defendant related to certain data privacy and consumer protection claims, as described further in the August 10, 2023 notice letter ("Tolled Claims") not be asserted in any arbitration or individual litigation at the present time.

NOW THEREFORE, in consideration of the mutual covenants set forth herein which the Parties deem to be good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties and fully intending to be legally bound, the Parties covenant and agree as follows:

1.   **Tolling Period**.  The term of this Agreement shall be from August 10, 2023 (the "Effective Date"), through and including thirty (30) days after the date of any scheduled mediation (the "Tolling Period"), unless extended in writing by mutual agreement of the Parties. During the Tolling Period, no Tolling Claimant shall submit a demand for arbitration or otherwise take action to formally initiate arbitration or individual litigation of any of the Tolled Claims. If any Party terminates the Agreement as to itself in accordance with the procedure set forth in Paragraphs Three and Four below, the Tolling Period of this Agreement shall be, as to that Party, from the Effective Date until thirty (30) calendar days after delivery of such notice of termination.

2.   **Claims and Defenses**.  The Parties covenant and agree that the Tolling Period shall not be included in calculating any statute of limitations, statute of repose or other time-related

defense, whether statutory, contractual or otherwise, and whether at law, in equity, or otherwise (including, but not limited to, the doctrines of waiver, laches, acquiescence or estoppel) that might be applicable to any claims of any type in law or equity that the Tolling Claimants may file against the Tolling Defendant, or to any counterclaims or defenses that the Tolling Defendant may assert against any Tolling Claimants, based on, arising out of, or relating to, directly or indirectly, the Tolled Claims.  The Parties further agree not to assert that the Tolling Period should be considered for the purpose of applying any such statute of limitation, statute of repose, or other time-related defense that might be applicable to any of the Tolled Claims, counterclaims, or defenses.

3. **Termination and Notice of Termination**.  Any Party to this Agreement may terminate this Agreement as to itself by providing written notice to all other Parties in accordance with Paragraph Four below.  In the event such notice is given, this Agreement shall terminate as to that Party (the "Terminating Party") thirty (30) calendar days after delivery by email of such notice by the Terminating Party, consistent with Paragraph Four.  Such date thirty (30) calendar days after notice of termination is given shall be referred to as the "Termination Date."  Upon the Termination Date, the pertinent Parties shall be restored to their respective positions as of the Effective Date with respect to any statute of limitations, statute of repose or other time-related defense, whether statutory, contractual or otherwise, and whether at law, in equity, or otherwise (including, but not limited to, the doctrines of waiver, laches, acquiescence or estoppel), and those time periods will once again begin to run on the Termination Date.

4. **Notice Procedure**.  Any termination notice given pursuant to Paragraph Three above shall be addressed to all signatories to this Agreement at the addresses listed below and shall be delivered by email.

5.      **Agreement Not an Admission**.  This Agreement and all discussions in pursuance thereof shall not be deemed to be an admission by any Party hereto of any matter, including that valid claims or defenses exist, or as to the validity or strength of any claim or defense, and shall not alter the Parties' respective legal or evidentiary burdens with respect to any claim or defense.  This Agreement and all discussions in pursuance thereof shall not be offered or received into evidence in any arbitration or litigation between the Parties except as is necessary to enforce the terms of this Agreement.

6.      **Agreement Authorized and Binding**.  Each person executing this Agreement represents that he or she has the full power, capacity, and authority to execute this Agreement on behalf of the Party or Parties he or she purports to represent and that they intend the Agreement to be a valid and binding obligation, enforceable in accordance with its terms.  The provisions of this Agreement will be binding on and shall inure to the benefit of the successors and assigns of the Parties.

7.      **Confidentiality**.  The Parties covenant and agree that the terms of this Agreement shall be treated as highly confidential, and shall be disclosed only (a) to those employees, legal representatives and insurers of the Parties who have a need to know; (b) to a court or arbitrator in any action that is both between the Parties and that asserts one or more of the Tolled Claims; (c) in any action based on similar facts or similar legal theories as the Tolled Claims, including without limitation *In re Google Assistant Privacy Litigation*, Case No. 5:19-cv-04286-BLF (N.D. Cal.), after providing three (3) business days' notice to counsel for the opposing party; (d) pursuant to a court order or subpoena, provided that the disclosing Party provide all other Parties with five (5) business days' notice via email prior to such disclosure; (e) pursuant to any effort to obtain judicial enforcement of this Agreement; or (f) by the written consent of the Parties.  Notwithstanding the

foregoing sentence, this Agreement does not prohibit any of the Parties from disclosing the terms of this Agreement to their registered independent public accounting firms and other persons if required to do so by applicable securities laws or regulations or other applicable law or duty, or by generally accepted accounting principles. Also, nothing in this Agreement shall preclude either party from disclosing information regarding the Tolling Claimants' notice of intent to arbitrate, or from disclosing the existence of an agreement between the Parties to toll those claims.

8.  **Agreement to Mediate**: The Parties agree to select a third-party neutral as soon as practicable after the Execution Date, for the purposes of overseeing good faith discussions between the Parties with respect to the Tolled Claims. The Parties will engage in good faith efforts to engage such a neutral within sixty (60) days after the Execution Date, with a mediation date to be determined once the third-party neutral is so engaged.

9.  **Exchange of Information and Records**. In addition to the information provided in Exhibit A to the August 10, 2023 notice letter, at least sixty (60) days prior to any scheduled mediation, Tolling Claimants will produce serial number(s) for their allegedly affected Google Device(s) and a global demand for all Tolling Claimants, with an explanation of how that demand was calculated for each individual Tolling Claimant.[1] To the extent such information is not available or not provided by any specific Tolling Claimant, the other provisions of this agreement shall continue to apply to that Tolling Claimant, and the Tolling Defendant expressly reserves all rights and defenses with respect to such Tolling Claimant, including that the notice of dispute provided was deficient under the terms of the applicable agreement to arbitrate. After the Tolling Claimants produce Google Device serial number(s) and at least thirty (30) days prior to any

---

[1] As defined in the Google Arbitration Agreement – Devices, Related Accessories, and Related Subscription Services (https://support.google.com/store/answer/9427031?hl=en) and in the Google Store Sales Terms (https://store.google.com/intl/en-US_us/about/device-terms/).

4

mediation, Google will identify any Tolling Claimants for which it could not verify, after a good faith search of the information provided against its records, that the Tolling Claimant (1) purchased a Google Device from the online Google Store, (2) activated Google Assistant using a hotword on that device, and/or (3) has any hotword-initiated Assistant audio recordings captured by that device stored in their account.

10. **Future Claimants**. Should counsel for the Claimants notify the Tolling Defendant, on behalf of any further claimants represented by it in connection with the Tolled Claims, those individuals shall become Tolled Claimants, and the provisions of this Agreement are effective to toll potential claims as to those claimants from the date Tolling Defendant receives notice and until terminated in accordance with its terms.  The Tolling Defendant expressly reserves all rights and defenses with respect to any such demand, including if the notice was deficient under the terms of the applicable agreement to arbitrate.

11. **Integration Clause**.  This Agreement contains the full and complete Agreement between the Parties with respect to the subject matter of this Agreement, and no prior oral or written statement concerning that subject matter shall have any force or effect and shall not be used or relied upon to interpret this Agreement.  This Agreement shall not be altered except in a writing executed by representatives of the Parties.  The Tolling Period of this Agreement may be extended by email agreement between the Parties.

12. **Severability**.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effectuate the original

intent of the Parties as closely as possible in an acceptable manner so that the substance of the legal transactions contemplated hereby are fulfilled to the fullest extent possible.

13.     **Joint Preparation**.  In interpreting this Agreement, the Parties expressly agree that the Agreement was prepared jointly by the Parties, and that no ambiguity shall be resolved against any Party on the basis that it was responsible, or primarily responsible, for having drafted the Agreement.  Each of the Parties acknowledges that it entered into this Agreement knowingly, voluntarily, and willingly, did not execute this Agreement under duress, and was represented by competent counsel.

14.     **Governing Law**.  This Agreement shall be construed and interpreted in accordance with the laws of the State of California, without giving effect to its conflicts of laws doctrine.

15.     **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but also which together shall constitute one and the same instrument.

*[remainder of page intentionally blank]*

**AGREED**

On Behalf of **The Tolling Claimants:**

By: _____
Jonathan Gardner
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
jgardner@labaton.com (with copy to
j.waisnor@labaton.com)
Tel.: 212-907-0839


On Behalf of **The Tolling Defendant:**

By: _____
Sunita Bali
**PERKINS COIE LLP**
505 Howard Street
Suite 1000
San Francisco, CA 94105
sbali@perkinscoie.com (with copy to
 eearl@perkinscoie.com)
Tel.: 415-344-7065


Date: October 4, 2023