Bobbie J. Wilson, Bar No. 148317
BWilson@perkinscoie.com
Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Erin K. Earl (*pro hac vice*)
EEarl@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendants
Alphabet Inc. and Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Case No. 5:19-cv-04286-BLF-SVK<br><br>**GOOGLE'S REPLY IN SUPPORT OF MOTION TO ENFORCE CLASS NOTICE PLAN AND REJECT MASS EXCLUSION REQUEST**<br><br>Date:    February 13, 2025<br>Time:    9:00 a.m.<br>Dept.:   Courtroom 3, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

## I. INTRODUCTION

The Mass Opt-Out submitted by Labaton Keller Sucharow LLP ("Labaton") on behalf of 69,507 of their putative clients did not comply with the Court-approved Notice, which required class members to individually sign or submit an online request for exclusion, a routine requirement designed to protect absent class members' due process rights. Google's Motion arose out of a concern that class members' rights to participate in this class action might be signed away without individualized consultation and consideration, a concern particularly acute here because Labaton would have needed to conduct an average of ***1,264 individual consultations per day*** during the 55-day notice period to consult each client individually and obtain their informed consent to opt out. Although Labaton's Opposition ("Opp.") and Class Counsel's Response ("Resp.") cast aspersions on Google's motives for bringing this issue to the Court's attention, neither does anything to assuage those concerns.

For the avoidance of doubt, Google has no desire to prevent any class member who wishes to opt out of the Purchaser Class from doing so, including to pursue arbitration. To the contrary, Google sought (and would continue to welcome) a modification of the Purchaser Class definition to exclude any class members who agreed to arbitrate their claims with Google. Dkt. 377. Rather, Google is moving to enforce the routine opt-out procedures included in the Court-approved Notice. Because the Mass Opt-Out did not comply, Google's Motion should be granted. If the Court agrees, Google does not object to the Court granting additional time for the claimants identified in the Mass Opt-Out to submit compliant exclusion requests.

## II. ARGUMENT

### A. The Mass Opt-Out Did Not Comply with the Court's Order or Notice Plan

Labaton argues that its Mass Opt-Out was permissible because it was not expressly prohibited by the Court's order. Opp. at 1. This is both backwards and false. As Labaton acknowledges, the Court ordered that class members could exclude themselves from the Purchaser Class by "either send[ing] a request by mail or through the case website stating that you wish to be excluded from the Class," and that a request by mail must "include your name, address, telephone number, and signature." Opp. at 5 (quoting ECF Nos. 423, 422-1). The Mass

Opt-Out was neither sent through the case website nor by mail with each class member's name, address, telephone number, and signature, and thus did not comply with the Court's order.

Labaton's contention that the Court's order "expressly permits opting out through an 'authorized' representative," Opp. at 1, likewise is false: the order says nothing of the sort. ECF No. 423. Only the online exclusion request form implicitly referenced authorization to submit the form on a class member's behalf. *See* Supp. Bali Decl., Ex. 1 ("If I am submitting this exclusion request on behalf of a Class Member, I certify that I am authorized to submit this exclusion request on the Class Member's behalf."). Since only a single online exclusion request could be submitted at a time, this text plainly does not authorize mass opt-outs. Instead, it appears to contemplate a circumstance where an authorized representative requests exclusion on behalf of a class member who is "a minor, lacking capacity or incompetent, or deceased." *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*, 2020 WL 5233029, at *4 (E.D. La. Sept. 2, 2020). Regardless, this website text has no bearing on the Mass Opt-Out, which was not sent through the website and did not include the same certifications. *See* ECF No. 456-3.

### B. The Court Should Enforce the Individual Signature Requirement

Neither Labaton nor Class Counsel disputes (nor can they) that the Court has discretion to reject the Mass Opt-Out and enforce the Notice's requirement that class members who wish to opt out must individually sign or submit an exclusion request. *See, e.g., In re Centurylink Sales Pracs. & Sec. Litig.*, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020). Nor does either cite any authority approving a mass opt-out request in any circumstance. Instead, they argue this Court should overlook Labaton's non-compliance with the Court-approved exclusion procedure because there's no definitive proof a class member's due process rights were violated; Google's request to enforce the exclusion procedure approved by the Court is a "questionable procedural tactic[]" that seeks to impose a "burdensome opt-out requirement"; the Federal Arbitration Act (FAA) precludes Google's request; engaging in some arbitration activity suffices to opt out, notwithstanding the Court's order; or Google's argument is untimely or otherwise undermined by Google mediating with Labaton. Opp. at 2-3, 5-10; Resp. at 1-4. None is persuasive.

*First*, requiring individual signatures is appropriate where, as here, concerns arise that a

class member may have been deprived of the ability to make an informed decision on exclusion based on varying individual circumstances, even absent definitive proof these concerns have ripened into a due process violation. The *Centurylink* decision is particularly instructive on this point. There, Keller Lenkner LLC ("Keller") filed letters seeking to exclude more than 16,000 of its purported clients who supposedly wished to pursue individual arbitrations against CenturyLink from a settlement class of over 17 million. 2020 WL 3512807, at *2, *3. The district court concluded the individual signature requirement was "vital" to "ensure[] that the class member is individually consenting to opt out," rather than "a third party or lawyer representing that they have that class member's authority, without the class member making an informed, individual decision." *Id*. at *3. The court was concerned counsel "did not spend much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them," due to "evidence that Keller gave generic advice to 22,000 clients that they should all opt out of this class action, an act that greatly benefits Keller financially because Keller will earn no attorney's fees if its clients decline to opt out." *Id*. at *3-4.

Those same concerns are present here. To make an informed decision, each client would have needed individual consultation to discuss the risks of waiving their right to pursue relief in court through the Purchaser Class and proceeding solely in arbitration. This discussion would need to address each client's individual circumstances (e.g., whether the client actually agreed to arbitrate with Google, whether they have individualized evidence to prove their claims in arbitration, etc.), and tailor advice accordingly. To be sure, there is no class settlement here, so the value of each class member's legal rights as a member of the Purchaser Class or in arbitration is unknown. But Google's preliminary investigation indicates many of Labaton's clients in fact do not have valid arbitration agreements with Google. *See* Mot. at 4-5. Without a valid arbitration agreement, the decision to opt out of the Purchaser Class is "financially risky at best and economically irrational at worst." Opp. at 8 (quoting *Arena v. Intuit, Inc*., 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021)). Yet Labaton did not submit a single declaration or signature from any claimant confirming their informed decision to opt out (which could have simply confirmed authorization without delving into privileged communications), nor did Labaton's attorney

declaration confirm that it obtained the informed consent of each claimant. Perhaps that is because there was not enough time for Labaton to evaluate the opt-out decision "in light of the individual circumstances of each of their clients and in consultation with them." *Oil Spill*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012). Class notice was disseminated on July 5, 2024, and the Mass Opt-Out was postmarked on August 29, 2024 – 55 days later. During that time, Labaton would have needed to consult with an average of **1,264 of its clients per day** (including weekends) to solicit the necessary informed consent to opt out. Even if Labaton started advising its clients when the class was first certified on Dec. 16, 2022, that would still amount to a near-impossible 112 consultations per day. The ineluctable conclusion is that Labaton only provided blanket, generic advice to opt out, which is not sufficient. *See Centurylink*, 2020 WL 3512807, at *3.

Further, Google has informed Labaton that several claimants they purport to represent appear to be also represented by a different firm (which did not submit a mass opt-out), but Labaton has declined to engage with their own clients to confirm which are dual-represented and how they want to proceed. *See* Supp. Bali Decl. ¶ 3. This competition for claimants is another reason to require individual exclusion requests. For example, in *Smith v. SEECO, Inc.*, the district court required exclusion requests to be individually signed and notarized due to concerns "that lawyers, rather than the class members themselves, may be making decisions" given attorney competition for class members in parallel class actions—concerns that were confirmed to be "valid" when "[t]wo different lawyers represented in different instances that they represented some of the same class members." 2017 WL 4570804, at *6-7 (E.D. Ark. Jan. 18, 2017).

***Second***, requiring individual wet or electronic signatures is standard and widely recognized as not onerous. *See, e.g., Centurylink*, 2020 WL 3512807, at *3; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *26 (N.D. Ga. Mar. 17, 2020); *In re Syngenta Ag Mir 162 Corn Litig.*, 2018 WL 1726345, at *7 (D. Kan. Apr. 10, 2018); *Good v. Am. Water Works Co., Inc.*, 2016 WL 5746347, at *3 n.3 (S.D.W.Va. Sept. 30, 2016); *Hallie v. Wells Fargo Bank, N.A.*, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015). Indeed, Labaton has submitted thousands of individually-signed declarations in the parallel mass arbitration proceedings, confirming that obtaining individual signatures is not excessively onerous.

***Third***, the FAA does not preclude enforcing the individual signature requirement. The only case Labaton cites to support this theory involved a single "institutional investor with its own individual counsel," which is "entirely different" than here, where there are millions of class members and tens of thousands of "purported opt outs represented by one law firm." *Centurylink*, 2020 WL 3512807, at *7 (distinguishing *In re Piper Funds, Inc. Institutional Government Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995)).

***Fourth***, Labaton's argument that engaging in some arbitration activity is sufficient to opt out of the Purchaser Class is meritless. Courts have concluded that "the mere pendency and continued prosecution of a separate suit, which the litigant instituted before commencement of the 'opt-out' period in a related class action, neither registers nor preserves a litigant's election to 'opt out' of the related class action." *Bowman v. UBS Fin. Servs., Inc.*, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007). And Labaton's own authorities recognize that a class member who previously initiated arbitration may choose a different path forward. *See In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4982986, at *11 (N.D. Cal. Dec. 4, 2024). Indeed, another firm pursuing a substantively identical mass arbitration against Google did not attempt a mass opt-out, and given that Labaton did not include over 1,400 of their purported clients in the Mass Opt-Out, some have already made the choice to remain in the Purchaser Class.

***Finally***, Labaton's illogical argument that Google's Motion is untimely because it failed to "raise issues with the opt-out requirements . . . prior to notice being sent"—i.e., a year before Labaton submitted the Mass Opt-Out—is absurd. Google had no reason to know that Labaton would attempt to opt out its purported clients *en masse*, and without complying with the court-approved opt out requirements, until it actually did so. Nor does Google mediating with Labaton affect the calculus, Resp. at 3, as Google certainly never conceded Labaton's authority to sign a settlement agreement on behalf of 70,000 individual arbitration claimants.

## III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court reject Labaton's attempted Mass Opt-Out of 69,507 individuals from the Purchaser Class and instead require individual opt-outs in compliance with the Court-approved Notice.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: January 9, 2025 | **PERKINS COIE LLP** |
| 3 | | By: ___/s/ Sunita Bali___ |
| 4 | | Bobbie J. Wilson, Bar No. 148317<br>Sunita Bali, Bar No. 274108 |
| 5 | | Erin Earl (*pro hac vice*) |
| 6 | | Attorneys for Defendants<br>Alphabet Inc. and Google LLC |