1    Vincent Briganti (*pro hac vice*)      Erin Green Comite (*pro hac vice*)
    Christian Levis (*pro hac vice*)       Anja Rusi (*pro hac vice*)
2    Margaret MacLean (*pro hac vice*)    **SCOTT+SCOTT ATTORNEYS AT LAW**
    Andrea Farah (*pro hac vice*)        **LLP**
3    **LOWEY DANNENBERG, P.C.**      156 South Main Street
    44 South Broadway, Suite 1100      P.O. Box 192
4    White Plains, NY 10601         Colchester, CT 06415
    Telephone: (914) 997-0500       Telephone: (860) 537-5537
5    Facsimile: (914) 997-0035        ecomite@scott-scott.com
    vbriganti@lowey.com          arusi@scott-scott.com
6    clevis@lowey.com
    mmaclean@lowey.com
7    afarah@lowey.com

8    *Attorneys for Plaintiffs*
    [Additional counsel on signature page.]

9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION | Master Docket No.: 19-cv-04286-BLF |
| This Document Relates to: | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ALL ACTIONS | |
| | COMPLAINT FILED: July 25, 2019 |
| | Date:     May 8, 2025 |
| | Dept.:    Courtroom 3-5th Floor |
| | Judge:   Honorable Beth Labson Freeman |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF DISPUTED FACTS .................................................2

    A.    Google Made Uniform Contractual Promises to GAED Users ..................2

        1.    Google Promised Not to Collect Users' Audio Data Unless They Intentionally Used the Assistant ...............................2

        2.    Google Promised Not to Share Users' Audio Data without Explicit Consent ...................................................................3

        3.    Google Concealed Its Use of Audio Data and the Risk of False Accepts .........................................................................3

    B.    Google Breached Its Promises to Class Members for Financial Gain........5

        1.    Promise One: Google Collected and Monetized ▉▉▉ of False Accepts .........................................................................5

        2.    Promise Two: Google Impermissibly Shared Audio with Human Reviewers ..........................................................................6

        3.    Google Did Not Even Begin to Address its Conduct Until After It Was Sued .......................................................................7

III.  LEGAL STANDARD ON SUMMARY JUDGMENT..........................8

IV.   ARGUMENT ........................................................................................9

    A.    Google Breached Its Contractual Promises to Plaintiff and Purchaser Class ......................................................................................9

        1.    Google Made Actionable Promises ..................................9

        2.    Google Cannot Prevail on Its Competing Interpretation of the PP...............................................................................10

        3.    The Promises Google Created Uniformly Applied During the Class Period...........................................................11

        4.    Users Did Not Consent to Google's Sharing of Their Audio Data .......................................................................12

    B.    Google Breached Its Promises to Class Members .....................................13

    C.    Google Caused Harm to the Purchaser Class ............................................16

        1.    Price Premium Damages Will be Quantified by Expert Testimony.....................................................................16

        2.    Google Cannot Establish That Damages Are Precluded as a Matter of Law ...........................................................18

3.   The Class Is Separately Entitled to Nominal Damages and Disgorgement ................................................................21

D.   Google Is Not Entitled to Summary Judgment on Plaintiff's UCL Claim ..............................................................................22

1.   Evidence Adequately Supports Plaintiff's UCL Claim ................22

2.   Disputed Fact Issues Exist as to Plaintiff Kumandan's UCL Standing ...............................................................................23

3.   Disputed Fact Issues Exist as to Google's Continuing Misconduct, Precluding Summary Judgment on Injunctive Relief ..................................................................24

E.   Alphabet Is a Proper Defendant in This Case ............................................25

V.   CONCLUSION .............................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Aguilera v. Pirelli Armstrong Tire Corp.*,

5

223 F.3d 1010 (9th Cir. 2000) ....................................................................17

6

*Amchem Prods. Inc. v. Windsor*,

7

521 U.S. 591(1997)....................................................................................15

8

*Anderson v. Liberty Lobby, Inc.*,

9

477 U.S. 242 (1986) ......................................................................................8

10

*Arce v. Kaiser Foundation Health Plan, Inc.*,

11

181 Cal. App. 4th 471 (2020) .....................................................................23

12

*Beaty v. Ford Motor Co.*,

13

854 F. App'x 845 (9th Cir. 2021) ...............................................................15

14

*Belyea v. GreenSky, Inc.*,

15

No. 20-CV-01693, 2025 WL 589037 (N.D. Cal. Feb. 24, 2025) ...............24

16

*Block v. eBay, Inc.*,

17

747 F.3d 1135 (9th Cir. 2014) ......................................................................9

18

*Brazil v. Dole Packaged Foods, LLC*,

19

660 F. App'x 531 (9th Cir. 2016) ...............................................................18

20

*Briseno v. ConAgra Foods, Inc.*,

21

674 F. App'x 654 (9th Cir. 2017) ...............................................................16

22

*Brown v. Google LLC*,

23

685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................................9, 24

24

*Brown v. Grimes*,

25

192 Cal. App. 4th 265 (2011) .....................................................................23

26

*Cal. Lettuce Growers v. Union Sugar Co.*,

27

45 Cal. 2d 474, 289 P.2d 785 (1955) ..........................................................18

28

*Calhoun v. Google, LLC*,

113 F.4th 1141 (9th Cir. 2024) .............................................................12, 13

*Cappello v. Walmart Inc.*,

394 F. Supp. 3d 1015 (N.D. Cal. 2019) ......................................................23

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986).......................................................................................8

iii

*Clark v. Yodlee, Inc.*,
   No. 3:20-CV-05991 (N.D. Cal.), ECF No. 356 ...................................................................22

*Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint Reconstruction, Inc.*,
   57 Cal. App. 5th 1108 (Cal. App. 2020) ...........................................................................21

*Cummings v. Connell*,
   402 F.3d 936 (9th Cir. 2005) .............................................................................................21

*Day v. GEICO Casualty Co.*,
   No. 21-cv-02103, 2024 WL 251408 (N.D. Cal. Jan. 23, 2024)..........................................17

*Elation Sys., Inc. v. Fenn Bridge LLC*,
   71 Cal. App. 5th 958 (2021) ..............................................................................................21

*Encompass Ins. Co. v. Berger*,
   No. CV128294, 2013 WL 12124281 (C.D. Cal. Dec. 10, 2013).........................................17

*Frasco v. Flo Health, Inc.*,
   No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..........................12, 13

*G & M Oil Co. Inc. v. Am. Zurich Ins. Co.*,
   No. SACV 1500204, 2017 WL 11629299 (C.D. Cal. Mar. 28, 2017) .................................17

*Gardiner v. Walmart Inc.*,
   No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)................................19

*Ginoyan v. Barclays Bank Del.*,
   443 F. Supp. 3d 1136 (C.D. Cal. 2020) ..............................................................................10

*Gonzalez v. Scaletta*,
   No. 17-CV-7080, 2021 WL 4192065 (N.D. Ill. Sept. 15, 2021) .........................................12

*Gross v. CitiMortgage, Inc.*,
   33 F.4th 1246 (9th Cir. 2022) ............................................................................................18

*Gross v. Symantec Corp.*,
   No. C 12-00154, 2012 WL 3116158 (N.D. Cal. July 31, 2012)..........................................19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..............................................................................10

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................................19

*In re California Gasoline Spot Market Antitrust Litig.*,
   No. 20-CV-03131, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)........................................22

*In re Facebook, Inc. Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .........................................................................................9, 10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:19-cv-04286-BLF

*In re Facebook Priv. Litig.*,
　192 F. Supp. 3d 1053 (N.D. Cal. 2016) ...................................................................14

*In re LinkedIn User Priv. Litig.*,
　932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...................................................................19

*In re Tobacco II Cases*,
　46 Cal. 4th 298 (2009) ...........................................................................................23

*Kendon Indus. LLC v. Towblazer, Inc.*,
　No. 8:23-CV-00732-FWS-DFM, 2024 WL 5274500 (C.D. Cal. Nov. 27, 2024) ..................10

*Lindell v. Synthes USA*,
　155 F. Supp. 3d 1068 (E.D. Cal. 2016) ...................................................................15

*Lizarraga-Davis v. Transworld Sys. Inc.*,
　No. 18-CV-04081, 2022 WL 2789560 (N.D. Cal. July 15, 2022) ............................8

*Lopez v. Apple, Inc.*,
　519 F. Supp. 3d 672 (N.D. Cal. 2021) .....................................................................14

*Meister v. Mensinger*,
　230 Cal. App. 4th 381, 178 Cal. Rptr. 3d 604 (Cal. App. 2014) ............................21

*Mercury Air Grp., Inc. v. Kronos Inc.*,
　No. CV 18-04139 AB (SKX), 2019 WL 4570022 (C.D. Cal. July 2, 2019) ...........16

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
　No. 20-cv-07182, 2022 WL 1990225 (N.D. Cal. Jun. 6, 2022) ...............................21

*MGA Ent., Inc. v. Hartford Ins. Grp.*,
　No. EDCV080457, 2012 WL 12894053 (C.D. Cal. Jan. 27, 2012) .........................25

*Moore v. Apple Inc.*,
　No. 14-cv-02269, 2015 WL 7351464 (N.D. Cal. Nov. 20, 2015) ...........................15

*N. California River Watch v. California Dep't of Fish & Game*,
　No. C 06-06685 CRB, 2007 WL 1450313 (N.D. Cal. May 14, 2007) ......................8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
　287 F.R.D. 590 (C.D. Cal. 2012) ............................................................................11

*Oasis West Realty, LLC v. Goldman*,
　51 Cal. 4th 811 (2011) ..............................................................................................9

*Ollier v. Sweetwater Union High Sch. Dist.*,
　768 F.3d 843 (9th Cir. 2014) ...................................................................................14

*Olson v. Doe*,
　12 Cal. 5th 669 (2022) .............................................................................................15

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...................................................................12

*Otto v. Abbott Labs. Inc.*,
  No. 512CV01411, 2014 WL 12591475 (C.D. Cal. Apr. 22, 2014)...........................24

*Palantir Techs. Inc. v. Abramowitz*,
  No. 19-CV-06879, 2022 WL 2952578 (N.D. Cal. July 26, 2022) (J., Freeman) ...................21

*Podwall v. Robinson*,
  No. 216CV06088, 2021 WL 4441975 (C.D. Cal. Sept. 28, 2021).............................17

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...................10, 12

*Sandigo v. Ocwen Loan Servicing, LLC*,
  No. 17-CV-02727, 2019 WL 2233051 (N.D. Cal. May 23, 2019).............................22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) .................................................................................22

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...................................................................................22

*Soriano v. Countrywide Home Loans, Inc.*,
  No. 09–CV–02415, 2011 WL 1362077 (N.D. Cal. Apr.11, 2011).............................8

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
  No. C 09-05185, 2010 WL 5422556 (N.D. Cal. Dec. 27, 2010) ..............................23

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) .......................................................................20

*United States v. Winstar Corp.*,
  518 U.S. 839 (1996)..................................................................................................16

*Vance v. Church & Dwight Co., Inc.*,
  No. 2:22-CV-00044, 2023 WL 2696826 (E.D. Cal. Mar. 29, 2023)........................22

*Viacom Int'l Inc. v. MGA Ent., Inc.*,
  No. CV 15-9621, 2016 WL 7448142 (C.D. Cal. Aug. 11, 2016)..............................23

*Whittlestone, Inc. v. Handi-Craft Co.*,
  No. C 08-04193, 2012 WL 3939629 (N.D. Cal. Sept. 10, 2012) ............................10

*Williams v. Apple, Inc.*,
  338 F.R.D. 629 (N.D. Cal. 2021).............................................................................16

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst. Inc.*,
  No. 18CV1927 JM (MSB), 2021 WL 4895977 (S.D. Cal. Oct. 20, 2021)..............16

*Zucchella v. Olympusat, Inc.*,
    CV 19-7335, 2023 WL 2633947 (C.D. Cal. Jan. 10, 2023) ......................................13

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 56(a) ............................................................................................................8

Fed. R. Civ. P. 56(c)(2).................................................................................................14, 15

Fed. R. Evid. 702 ...............................................................................................................17

Cal. Civ. Code § 3300.........................................................................................................16


**Other Authorities**

A. Acquisti, L.K. John, and G. Lowenstein, *What is Privacy Worth?*, 42 J. Legal Stud.
    249 (2013)........................................................................................................................17

# I.    INTRODUCTION

Google Assistant is one of several pieces in Google's arsenal of technology designed to feed its advertising machine. Promoted as tool to help users carry out simple tasks with their voice, Google effectively embedded a live mic in tens of millions of individuals' private lives. Recognizing consumers would be reluctant to use such a product, Google repeatedly assured individuals that the Assistant would only record them when they intentionally invoked it by saying a specific "hotword"—*e.g.*, "Hey, Google." Google also promised not to share any of users' personal data, audio recorded by the Assistant, without express consent. Google violated both promises. The record is replete with evidence showing that Google not only knew the Assistant frequently activated and recorded individuals in situations where they did speak a hotword, but purposefully used audio resulting from those "False Accepts" to create data sets, train machine learning models, and improve its technology. Google also secretly shared recordings of Class Members captured by the Assistant with teams of human reviewers around the globe. Google paid these reviewers to manually transcribe users' conversations so it could use that data to test and improve the Assistant. It was not until one of these reviewers, disgusted by the content of the audio recordings, leaked Google's covert transcription activity to the press that the public learned the truth.

Defendants' Motion for Summary Judgment (ECF No. 496) ("Mot.") does not come close to meeting its burden of showing that Plaintiff's claims fail as a matter of law. Each of the arguments Google raises either seeks to impermissibly relitigate issues the Court already decided or presents a classic fact dispute that must be resolved by the jury. For instance, Google's claim that the promises it made to Class Members about its collection and use of their Assistant data are not enforceable ignores the Court's rejection of this exact argument earlier in the case. As the underlying contracts (*i.e.*, Google's policies) have not changed, the result remains the same. Similarly, Google's contentions about the number of False Accepts, frequency of its unauthorized sharing of Assistant data, or the efficacy of purported privacy controls, present fact disputes that cannot be resolved on this motion. Google's damages arguments fail for the same reason. Google may maintain (as every defendant does) that it did nothing wrong, or caused no harm. But it is axiomatic that a breach of contract—which the record amply supports here—is a harm that entitles Plaintiff to damages. Google's denials ring especially hollow given that it *concedes* it collected at least one False Accept from Plaintiff Kumandan. Google's attempt to dispute the *amount* of that damage

owed as a result of its breach is meaningless, as this is a question firmly within the jury's purview that can only be resolved at trial. Moreover, Google's ongoing violation of Plaintiff and Class Members' rights through its continued use of the Assistant data for testing, training, and advertising warrants injunctive relief and the disgorgement of any profits resulting from that ongoing violation.

## II.    STATEMENT OF DISPUTED FACTS

### A.    Google Made Uniform Contractual Promises to GAED[1] Users

Google's Terms of Service ("TOS") and Privacy Policy ("PP") are contracts that govern the relationship between Google and members of the certified Class, like Plaintiff. *See* ECF No. 138 ("MTD II") at 16. Throughout the Class Period, the PP contained two promises that form the basis of the Class's breach of contract claims. "Promise One" stated that Google "may collect … voice and audio information when [users] use audio features." *Id.* at 18. "Promise Two" guaranteed that "Google do[es] not share [users'] personal information with [third parties] . . . except …with [users'] consent [or] . . . for external processing." ECF No. 80 ("MTD I") at 33; MTD II at 19. These promises did not materially change over the Class Period.

### 1.    Google Promised Not to Collect Users' Audio Data Unless They Intentionally Used the Assistant

Promise One first appeared in Google's March 2016 PP, which limited Google's collection of user data to individuals' "use" of its services. Ex. 1.[2] Google identified six specific categories of information it collects; none referenced Google Assistant, False Accept audio, or audio data of any kind. *Id.* In May 2018, Google added voice and audio information to the list of items collected when individuals "use" Google services. *See* Ex. 2 (stating Google may collect "voice and audio information *when you use audio features*.").

Google updated the May 2018 PP for the last time during the Class Period in February 2022. *See* ECF No. 496-45. This update: (1) converted the text "voice and audio information" into a hyperlink; and (2) deleted the subsequent phrase "when you use audio features." *Id.* Users who clicked on this link were shown text—consistent with the prior version of the PP—stating that Google would collect voice and

---

[1] Google Assistant Enabled Devices ("GAED").

[2] "Ex." are Exhibits to the Declaration of Erin Green Comite ("Comite Decl."), filed concurrently.

audio information *only* when they "interacted" with their Google device. *Id*. at 32 ("For example, you can choose whether you want Google to save an audio recording to Your Google account *when you interact with* Google Search, Assistant, and Maps."). Google further added a specific example, stating: "*When your device detects an audio activation command*, like 'Hey Google,' Google records your voice and audio plus a few seconds before the activation." *See id*.; Ex. 3. This example did not mention False Accept audio or Google's use of that audio.

### 2.    Google Promised Not to Share Users' Audio Data without Explicit Consent

Promise Two appeared in Google's PP in March 2016, prior to the start of the Class Period. Ex. 1. The language remained the same until the May 2018 PP, when Google deleted the phrase "with companies, organizations, and individuals." Ex. 2. The promise not to share personal information "outside of Google" except "when we have your consent" did not change. *Id*. Google did not update Promise Two again until January 2019. *See* Ex. 5. This update reiterated the same promise that Google would only "share personal information … when we have your consent," and reassured users that Google would "ask for your *explicit consent* to share any sensitive personal information" such as "your name or phone number." *Id*.

As with Promise One, Google updated Promise Two for the final time during the Class Period in February 2022. *See* ECF No. 496-45. This version retained the same language describing data shared "With Your Consent" as the January 2019 PP. *Id*. at 12-13. However, it added an example under the heading "For external processing" of *when* Google would share information for external processing. *Id*. at 13. While all prior versions of the PP referred to providing "customer support" as the sole example of when Google would share data externally, the February 2022 PP stated: "We also use service providers to help review YouTube video content for public safety and analyze and listen to samples of saved user audio to help improve Google's audio recognition technologies." *Id*.; Ex. 4. It did not mention Google Assistant, Assistant voice and audio data, or False Accept audio data.

### 3.    Google Concealed Its Use of Audio Data and the Risk of False Accepts

Google worded each Promise deliberately to conceal its collection of False Accept audio and use of audio recordings for commercial purposes. Google was purposefully careful not to ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████. Ex. 6; *see also* Ex. 7 (██████████████████████████



1  ███████████████████); Ex. 9 (███████████████████████████████

2  ███████████████████████████████); Ex. 8 at 60, 61 (similar). Likewise, Google

3  avoided ███████████████████████████████████████████████████

4  █████████████████████████████ Ex. 10; Ex. 11 (█████████████████████

5  ███████████████████████).

6      Similarly, rather than disclose *when* Google collected voice and audio data, or *how* it used that

7  information, ████████████████████████████████████████████████████████

8  ██████████████████████████████████████. Ex. 12 at 066. Google ███

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████ *Id*.

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 Ex. 12 (███████████████████████████████████████████). Moreover,

15 ████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 █████████████████████████. *Id*. at 065. Google ██████████████████

18 ████████████████. *See* Ex. 13 (███████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████). Evidence of such ██████████████████

21 ███████████████. *See* Ex. 14 (data for ███████████████████████).

22      Google's plan to hide its collection and retention of Assistant audio and transcripts (collectively

23 "Assistant Data") worked. The public remained unaware of Google's practices until a human review

24 contractor leaked that information to *VRT News* in 2019 (*see* ECF No. 118, ¶¶ 7-8). Not surprisingly,

25 Plaintiff did not understand Promise One to disclose that Google collected audio when he did not

26 *intentionally* "use" the Assistant. *See* Ex. 47, Deposition Transcript of Asif Kumandan ("Kumandan Tr.")

27 at 199:18-201:3; Kumandan Decl. ¶¶ 3-6. Nor did he understand any part of the PP to address Google's

28 storage of Assistant Data, or its use of it for targeted advertising. Ex. 47, Kumandan Tr. at 215:6-11

1  (testifying that he was unaware that Google stores these conversations); *id*. at 217:18-20 (testifying that

2  he did not understand that Google might use his recordings for targeted advertising). Kumandan also took

3  concrete steps to prevent False Accepts, demonstrating that he did not wish to be recorded when not

4  actively using the Assistant. *Id*. at 101:15-16 ("I attempted to deactivate [the hotword functionality] at

5  some time"); *id*. at 101:25-102:2 (same).

6  **B.    Google Breached Its Promises to Class Members for Financial Gain**

7  **1.    Promise One: Google Collected and Monetized ▮▮▮▮ of False Accepts**

8  There is no dispute that Google collected ▮▮▮▮▮▮▮ of audio recordings from Class

9  Members as a result of "False Accepts" when users did not say "Hey Google." Ex. 43, Deposition

10  Transcript of Francoise Beaufays Vol. II ("Beaufays II Tr.") at 279:15-282:09; Ex. 16, ▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). There is likewise no dispute that

12  Google collected at least one False Accept from Plaintiff. Ex. 15 (recording of Plaintiff talking to friends).

13  False Accepts occurred ▮▮▮▮▮ throughout the Class Period. Ex. 17 (▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 21 at 587-591 (▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 19 at 730

17  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Once captured, False Accept audio ▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮. Ex. 43, Beaufays II Tr. at 238:8-238:25; *id*. at 177:16-178:5 (▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

22  While Google disputes the rate of False Accepts (Mot. at 4-5) its purported calculations are

23  ▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Ex. 21 at

25  587-589 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮); Ex. 22 (▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 23 at 790 (▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Google's reliance on ▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is even less credible. Mot. at 5. This



1  is not just ███████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  █████████████████████████████████, as Google contends. March 28, 2025 Declaration of Dr. Mary

4  Beth Landrum ("Landrum Decl.") ¶ 13.

5  ███████████████████████████████████████████

6  ███████████████████████████████████████████████████

7  ███████████████████████████████████████████████████

8  ███████████████████████████████████████████████. Ex.

9  49, Deposition Transcript of Hailey Crowel Vol. II ("Crowel II Tr.") at 205:3-207:3 (██████

10  ███████████████████████████████); Ex. 48, Deposition Transcript of Hailey Crowel Vol. I

11  ("Crowel I Tr.") at 108:5-16 (██████████████████████████████████████

12  ███████████████); Ex. 24 at 642  (█████████████████████████████

13  ██████████████████████████████); *id.* at 646 (███████████████████

14  ███████████████████).

### 2.    Promise Two: Google Impermissibly Shared Audio with Human Reviewers

16  It is undisputed that ████████████████████████████████████

17  █████████████████████████████. Ex. 44, Deposition Transcript of Bryan Horling

18  at 85:10-25 (█████████████████████████████); Ex. 43, Beaufays II Tr. at 136:22-

19  136:25 (█████████████████████████████████).  Google ████████████

20  ███████████████████████████████████████████████████

21  █████████████. *E.g.*, Ex. 25 (█████████████████████████).

22  Google's motive for ██████████████████████████████████████

23  ██████████████████████████████████████████████. Ex. 26

24  (███████████████████████████████████████████████

25  ███████████████████████████████████████); Ex. 43, Beaufays II Tr. at 266:6-

26  268:14 (███████████████████████████████████████████). In addition to ████████

27  ███████████████████████████████████████████████████

28  ███████████. *See* Declaration of Francoise Beaufays (ECF No. 245-4), ¶21. This included ████████



1  ███████████████████████████████████████████████

2  ████████. Ex. 43, Beaufays II Tr. 319:7-319:23 (██████████████████

3  █████████████████████████). Accordingly, Google

4  ████████████████████████████████████. Ex.

5  41 (█████████████████████████████

6  ███████).

7  Google generated ██████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████. Exs. 27, 28,

10  24, 16; Ex. 48, Crowel I Tr. at 38:06-39:09 and 92:06-93:10. █████

11  ████████████████████████████████████████████

12  ████████████████████. Ex. 46, Deposition Transcript of Nino Tasca at 37:3-38:5

13  (████████████████████████████████████████

14  █████████████); Ex. 27 at 592 (███████████████

15  ██████).

**3.      Google Did Not Even Begin to Address its Conduct Until After It Was Sued**

Much of Google's motion points to ████████████████████████████

████████████████, that did not exist during the Class Period, and in fact, were not started until

after this case was filed. For example:

- The ██████████████████████████████ (Mot.

  at 5) did not start until █████████████████████

  ███████████. *See* Ex. 11 at 502-03 (████████

  ██████).

- Google's ████████████████████████ (Mot. at 5), did not begin ████████

  ████████████████████████████████████████████

  ████████████████████████████████. Ex. 29; Ex. 30 (████

  ████████████████████████████████████████████

  ██████).



- The ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Mot. at 5) was not developed ▉▉▉▉▉▉▉. Ex. 18 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉).

- The ▉▉▉▉▉▉▉▉▉▉ (Mot. at 5) that Google ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉. Ex. 45, Deposition Transcript of Caroline Kenny at 208:8-208:20 (▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉).

- Google did not ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉. Ex. 31 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 42 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).

## III.  LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is only appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Google has the burden of demonstrating the absence of a genuine issue of fact for trial. *Lizarraga-Davis v. Transworld Sys. Inc.*, No. 18-CV-04081, 2022 WL 2789560, at *4 (N.D. Cal. July 15, 2022); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is material "[if it cannot] reasonably be resolved in favor of either party" and "may affect the outcome of the suit . . . ." *N. California River Watch v. California Dep't of Fish & Game*, No. C 06-06685 CRB, 2007 WL 1450313, at *2 (N.D. Cal. May 14, 2007). Further, "'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[3] "'[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial.'" *Soriano v. Countrywide Home Loans, Inc.*, No. 09–CV–02415, 2011 WL 1362077, at *7 (N.D. Cal. Apr.11, 2011).

---

[3] Unless otherwise indicated, citations are omitted and emphasis is added.

1    **IV.    ARGUMENT**

2        **A.    Google Breached Its Contractual Promises to Plaintiff and Purchaser Class**

3        There are four elements to a breach of contract claim: (1) existence of a contract, (2) plaintiff's

4    performance or excused nonperformance, (3) breach, and (4) damages. *Oasis West Realty, LLC v.*

5    *Goldman*, 51 Cal. 4th 811, 821 (2011). This Court found at class certification that each element could be

6    proven through common evidence. ECF No. 414 at 21. The record confirms this.

7            **1.    Google Made Actionable Promises**

8        This case turns on two common promises Google made to Class Members in its PP. Promise One

9    concerns when Google would collect audio data from Class Members, while Promise Two concerns the

10   conditions under which it would share that data with third parties. *See* §II.A, *supra*.

11       Google argues that Plaintiff's claims fail as a matter of law because neither promise is enforceable.

12   Mot. at 8. This Court already considered, and rejected, the same argument at the motion to dismiss stage.

13   *See* MTD II at 18 (rejecting Google's argument that "as a matter of law [] this provision is broad enough

14   to permit Google to record conversations even where a hotword or manual activation does not occur"); *id*.

15   at 20 (finding Google's promise that it will not disclose Plaintiffs' personal information absent their

16   consent actionable). Google submits no evidence showing any differences between the PP the Court

17   already considered and the ones it presents now. As a result, there is no basis to disturb the Court's prior

18   ruling interpreting the identical contract at this stage of the case.

19       *Brown v. Google LLC*, 685 F. Supp. 3d 909, 930-31 (N.D. Cal. 2023), is instructive. There, the

20   court rejected a nearly identical argument from Google (also relying on *Block v. eBay, Inc.*, 747 F.3d 1135

21   (9th Cir. 2014)) that its statements regarding the Chrome browser's "Incognito" mode were not

22   "enforceable." *Id*. at 932. As *Brown* explained, the promises in *Block* referred to general characteristics of

23   eBay (*e.g*., that it "'allow[s] anyone to offer, sell, and buy just about anything,'") without promising that

24   eBay "will" or "will not" do anything. *Id.* By contrast, Google's statements about when it would collect

25   user data in Incognito, and what it would do with that data, reflected "explicit promissory language." *Id*.

26   The same is true of Google's promises here about what it "will" or "will not" do with Assistant Data.

27       Google's other cases are distinguishable for similar reasons. In *In re Facebook, Inc. Tracking*

28   *Litig.*, 956 F.3d 589, 610 (9th Cir. 2020), the Ninth Circuit found general statements similar to those in

*Block* (*e.g.*, "'[y]our privacy is very important to us'" and "'[w]e encourage you to read the Privacy Policy, and to use it to help make informed decisions'") did not create an enforceable promise. *Id*. Similarly, in *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022), the court found that Google did not specifically promise to collect data only from Google-made apps running on Android phones because its PP stated that Google "may" collect data from all "apps" that used Google's Android service. Here, by contrast, Class Members do not automatically "use" the Assistant, like an app installed on an Android device does, they must intentionally activate it with a hotword or button. *See* §I, *supra*. Google's promise that it "may" collect audio "when you use" or "interact with" the Assistant is actionable, even under *Hammerling*'s analysis.

## 2.    Google Cannot Prevail on Its Competing Interpretation of the PP

Even if this Court had not already ruled on the interpretation of the PP, Google's argument that Promise One does not amount to an enforceable promise that it "will never collect voice and audio information" (Mot. at 8) fails. To prevail on this issue, Google must show that the only reasonable interpretation of the contract is its own, a burden it cannot meet given that the Court has already found otherwise. *Kendon Indus. LLC v. Towblazer, Inc*., No. 8:23-CV-00732-FWS-DFM, 2024 WL 5274500, at *14 (C.D. Cal. Nov. 27, 2024); ECF No. 136, Hr'g Tr. dated May 6, 2021 at 7:3-10. Instead, Google's argument—which turns on the word "use" meaning "enabling" hotword functionality, as opposed to invoking the Assistant "using" the hotword—presents a classic factual dispute. *See Whittlestone, Inc. v. Handi-Craft Co.*, No. C 08-04193 SBA, 2012 WL 3939629, at *7 (N.D. Cal. Sept. 10, 2012) (denying summary judgment because contract term was not "clear" and was "ambiguous on its face," thus creating a "genuine dispute" of a "material fact"). *Ginoyan v. Barclays Bank Del.*, 443 F. Supp. 3d 1136 (C.D. Cal. 2020) (Mot. at 10) is inapposite. There, the court found the plaintiff "used" his credit card account when he made a balance transfer, even though the transfer failed. *Id*. at 1141. There is no analogous intentional action with a False Accept that qualifies as "use."

Google's attempt to bolster its strained interpretation of "use" with sources beyond the PP, namely screens that discuss "VAA" settings (Mot. at 10), should be rejected. Indeed, this is the very tactic that Google successfully *opposed* in *Rodriguez* when the plaintiffs sought to incorporate language from Google's WAA settings—which appear alongside VAA—into its PP. *See Rodriguez v. Google LLC*, No.

20-cv-04688-RS, 2022 WL 214552, at *3 (N.D. Cal. Jan. 25, 2022). However, even if the Court were to consider the VAA setting, it does not support Google's interpretation of "use." Google's ████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████. *See* §II.A.3, *supra.* Thus, even if VAA were considered, Google would still have breached Promise One by collecting, transcribing, and using False Accepts.

Google's "subjective intent" argument fares no better. Mot. at 11. As the drafter of the contract, Google chose the word "use" to describe when it would collect Assistant Data. *See* §II.A.1, *supra.* Class members, like Plaintiff, relied on the objective, common-sense meaning of that term, as the Court recognized (*see* MTD II at 18), in understanding what Google would or would not do with their audio data. *See* §II.A.3, *supra.* Google cannot avoid liability for breaching these promises by claiming now that the terms it imposed on consumers are not "capable of being carried into effect" because "Google has no failsafe way of determining…whether a user intended to invoke Assistant . . . ." Mot. at 11. Google was free to avoid this "absurd conclusion" (*id.*) by clearly disclosing its practice of user audio collection.

### 3.     The Promises Google Created Uniformly Applied During the Class Period

Google's Promises were in effect throughout the Class Period. *See* §II.A, *supra.* While Google made slight variations to its PP over time, those were not material as they did not change the core promise. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 602 (C.D. Cal. 2012) ("'The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims.'"). If anything, Google's edits *strengthened* its commitment to the Promises. For instance, in 2022, Promise One affirmed that users can "control" when Google collects their data, and that it will only do so "*[w]hen your device detects an audio activation command*, like 'Hey Google,'" (*see* §II.A.1, *supra*), reenforcing prior messaging that Google would not record individuals unless they intentionally "use" the Assistant by invoking the hotword. *See id.*.  Likewise, updates to Promise Two reassured users that Google would obtain "explicit consent" before sharing personal information. *See* §II.A.2, *supra.* Its 2022 obtuse reference to "service providers" in the context of "review[ing] YouTube video content  . . . and listen[ing] to samples of saved user audio to help improve Google's audio recognition technologies" (*see id.*) did not

1  even mention the Assistant, and thus could not inform users about Google's human review program.

2  **4.    Users Did Not Consent to Google's Sharing of Their Audio Data**

3      Google's consent argument fails because it cannot show that Class Members agreed to the specific

4  misconduct at issue. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (explaining defendant

5  bears the burden of proof to show consent was "actual" meaning "the disclosures must 'explicitly notify'"

6  users of "'the particular conduct'" at issue). Consent is "typically a fact-bound inquiry" that cannot be

7  resolved at summary judgment, especially where (as here) there are "disputes of fact about the scope of

8  the information that [Defendants] obtained . . . and the uses of that data[.]" *Frasco v. Flo Health, Inc*., No.

9  21-CV-00757-JD, 2024 WL 4280933, at *2 (N.D. Cal. Sept. 23, 2024).

10     Google cannot meet its burden to show that it secured consent from users to collect audio and

11  voice data by pointing to ███████████████. As explained above (*see* §II.A.3, *supra*), ████████

12  ████████████████████████████████████████████████████████████████████████

13  ██, they were insufficiently disclosed. *Rodriguez*, 2022 WL 214552, at *4 (link to Google's WAA help

14  page was not sufficient to "incorporate[] [it] by reference into the Privacy Policy"). Indeed, users who

15  ████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████. *See* §II.A.3, *supra*. Asking ████████

17  ███████████████████████ is *not* the same as obtaining informed consent. *See Opperman v. Path,*

18  *Inc.*, 205 F. Supp. 3d 1064, 1073 (N.D. Cal. 2016) (finding the court "cannot conclude as a matter of law"

19  that "off-screen terms" separate from the disclosures "provided users with constructive notice such that

20  they could effectively consent to anything contained" therein).

21     Moreover, the record confirms that Google ████████████████████████████████████

22  ████████████████. After whistleblowers revealed Google's rampant disclosure of Class Members' audio

23  data, ██████████████████████████████████████████████████████████████████. *See*

24  Ex. 31 at 701. ████████████████████████████████████████████████████████████

25  ████████████████████████. Google's efforts to cover its tracks about audio data collection

26  (*see* §II.A.3, *supra*) and its later attempts ████████████████████ (*see* §II.B.3, *supra*) are a tacit

27  admission of Google's initial failure to obtain Class Members' consent. *Gonzalez v. Scaletta,* No. 17-CV-

28  7080, 2021 WL 4192065, at *42 (N.D. Ill. Sept. 15, 2021) ("A party cannot wipe away an intentional

12

1  falsehood by belatedly telling the truth, especially after getting caught.").

2       Google's excuse for sharing Class Members' data based on the "external processing" exception

3  (Mot. at 12-13) in its PP fails as well. Whether a reasonable user would understand the undefined term

4  "external processing" to encompass human reviewers listening to hundreds of thousands of recordings of

5  their private audio in unsecured warehouses in Kenya is a jury question. *Frasco*, 2024 WL 4280933, at

6  *2, *4 (factual disputes regarding what "'a reasonable user . . . would [have thought]" they were

7  consenting to "preclude[d] summary judgment" on the issue) (alteration in original); *Calhoun,* 113 F.4th

8  1148 ("what a 'reasonable' user would have understood" the disclosure to mean is an issue "for trial").

9  Vague references to "contractors" peppered throughout the PP do not change the result. Mot. at 13.

10      **B.**    **Google Breached Its Promises to Class Members**

11       The record shows that Google breached both promises to Class Members because it: (1) it recorded

12  them when they were not "us[ing]" the Assistant, and (2) shared audio recordings captured by Assistant

13  with third parties even though it did not have their consent to do so. *See* §II.B, *supra*. Google's admission

14  that it ███████████████████████████████ (Mot. at 16) is fatal to its motion. *See* §IV.C, *infra*.

15  Unable to dispute that its conduct breached the Promises, Google raises a series of failing arguments.

16       *First*, Google argues it that it did not breach its Promises because it "did not 'collect' any Assistant

17  audio data for most class members." Mot. at 15. The Court has twice rejected Google's effort to limit the

18  contract claim to individuals who experienced False Accepts: once at the motion to dismiss stage (*see*

19  MTD II at 18-19) and again at class certification. *See* ECF No. 414 ("Class Cert Order") at 12 ("Purchaser

20  Class…. does not include any requirement related to False Accepts"). It should do so again.

21       Regardless, what data Google collected and how much it collected are disputed questions of fact.

22  Plaintiff has ample evidence that, ███████████████████████████████████████████

23  ██████████████████████████████████. *See* §II.B.1, *supra*. Google has consistently refused

24  to produce data showing ███████████████████████████████████████████████

25  ██████████████████████. *See* ECF Nos. 431, 240. It cannot rely on ███████████████████

26  ███████████████████████████████████████. *See Zucchella v. Olympusat, Inc.*,

27  CV 19-7335, 2023 WL 2633947, at *2 (C.D. Cal. Jan. 10, 2023) ("it would clearly be unfair to allow

28  Defendants to raise" a defense based on evidence it "refuse[d] to provide.").

*Second*, Google's reliance on *Lopez v. Apple, Inc.*, which dismissed the breach of contract claim at the motion to dismiss stage with leave to amend because the plaintiffs "failed[ed] to allege facts showing interception and disclosure in their particular circumstances," is inapposite. 519 F. Supp. 3d 672, 692 (N.D. Cal. 2021). Here, after full discovery, there is no doubt that Google collected and shared users' data without consent. *See* §II.B, *supra*. Google's reliance on *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053 (N.D. Cal. 2016) is similarly misplaced. There, the court dismissed plaintiff's claim for lack of standing finding it was *dependent* on sharing of the information with third parties. *Id*. at 1058. Here, Google breached its contract with Plaintiff as soon as it recorded his voice in the absence of the hotword. *See* Ex. 15. Sharing of False Accept data with third party reviewers is simply an *additional* breach.

*Third*, the sampled data does not help Google. Mot. at 15-16. Preliminarily, Plaintiff objects to ECF No. 496-4, Tai Declaration, ¶¶19-20, including the cited documents (GOOG-ASST-03047493 and GOOG-ASST-03047494), under Rule 56(c)(2). Tai claims that Google ███████████████████████████████████████████████████████████████████████. Plaintiff moved to compel production of this data. ECF No. 431. Google opposed but never told the Court that it would ███████████████████████████████████████████████. ECF No. 451. The Court must exclude this evidence. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2014). To the extent the Court considers the evidence, unlike the initial data set Plaintiffs requested (ECF Nos. 311, 431), the limited sample Google produced is ███████████████████████████. *See* Landrum Decl. ¶¶ 7, 11, 13. Even if it were reliable, Google's argument is meritless. Google ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id*. ¶ 12. Neither conclusion is supported. For one, the data is not collected ████████████████████████████████████████████████████. *Id*. ¶ 7. ████████████████████████████████████████████████████████████████████████. *See* Mot. at 5. Given this conflicting evidence, the true prevalence of False Accepts remains a disputed issue of fact.

Even if the Court credited Google's analysis (which it should not), the presence of ████████████████████████████████████████████████████████████████████

14

[REDACTED]

[REDACTED]

[REDACTED]. *See Beaty v. Ford Motor Co.*, 854 F. App'x 845, 849 (9th Cir. 2021) (reversing granting of summary judgment and noting that "Ford makes much of its calculated failure rate of 0.05%, but a reasonable juror could find that even a small risk that a PSR might explode without warning is a material fact. . ."). The cases Google cites are inapposite. *Moore v. Apple Inc.*, No. 14-cv-02269, 2015 WL 7351464, at *8 (N.D. Cal. Nov. 20, 2015), denied class certification because class members' contracts with different wireless providers had different "terms or services" such that some would not have an enforceable "contractual right." That is not an issue here. *Olson v. Doe,* 12 Cal. 5th 669, 679, 684 (2022), found the language in a mediation agreement stating that the parties "'agree not to disparage one another'" did not foreclose future litigation for disparaging remarks because that would "sweep so broadly" and as to conflict with other provisions. This is also not an issue here.

Google's reliance on *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591(1997), to claim Plaintiff cannot represent Class Members whose audio was disclosed to human reviews also fails. Mot. at 12. Unlike *Amchem*, where conflicts among individuals with different injuries arising from exposure to asbestos precluded class certification (*id.* at 594), this Court has already found that Kumandan is an adequate Class representative (ECF No. 414 at 19) because he experienced the same harm as all Class Members, *i.e.*, he purchased a GAED that did not perform as Google promised. *See* ECF No. 494-8. This occurred regardless of whether his audio or False Accepts were shared with human reviewers.

*Finally,* Google's invocation of its limited *hardware* warranty (Mot. at 16 (citing Ex. 50)) is meritless. First, Plaintiff objects to Ex. 50 under Rule 56(c)(2) as this document was never previously produced, and Google provides no information to substantiate when this version of the hardware limited warranty came into effect and if and how any Class Member agreed to it. *See Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1082 (E.D. Cal. 2016) (defendants "cannot support their motion for summary judgment" with an "undated" policy lacking "credible evidence support" it was effective during the applicable time period). Second, as a *hardware* limited warranty, by its terms, it does not apply to the Assistant. Mot. at Ex. 50 (expressly stating "This Limited Warranty only applies to hardware components (and not any software elements) of Google Product"). Third, even if Google had proffered admissible evidence (which

1    it did not) and even if the hardware limited warranty applied to the Assistant software (which it does not),

2    there would at most would be a triable issue of fact as to any limitation of remedy. *See Mercury Air Grp.,*

3    *Inc. v. Kronos Inc.*, No. CV 18-04139 AB (SKX), 2019 WL 4570022, at *2 (C.D. Cal. July 2, 2019)

4    (triable issues of fact existed as to whether "limited warranties apply to bar [p]laintiffs' claims").

5            **C.    Google Caused Harm to the Purchaser Class**

6            Google's breach of its contractual promises entitles Class Members to damages as a matter of law.

7    *See United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (explaining "damages are always the default

8    remedy for breach of contract"); Cal. Civ. Code § 3300 (the measure of damages for a breach of contract

9    under California law is "the amount which will compensate the party aggrieved for all the detriment

10   proximately caused thereby"). The only issue remaining is the *amount* of damages owed to Class

11   Members, which is a question for the jury. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,

12   No. 18CV1927 JM (MSB), 2021 WL 4895977, at *17 (S.D. Cal. Oct. 20, 2021) (denying summary

13   judgment because "in a breach of contract case . . . 'the precise amount of damages is a question of fact,

14   inappropriate for summary adjudication.'").

15           **1.    Price Premium Damages Will be Quantified by Expert Testimony**

16           "'The difference between price paid for a product and value received' is in fact the main measure

17   of contract damages." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 652 (N.D. Cal. 2021). Plaintiff's proposed

18   damages model quantifies the difference in value between the market price of the promised device (*i.e.*,

19   with privacy protections) and that of the device delivered by Google (*i.e.*, one that records, shares, and

20   uses users' communications outside disclosed circumstances). Torres Report (ECF No. 222-2, Ex. 57) at

21   7. This can be established through a conjoint analysis, (*id.*), which is a reliable and "well-established

22   damages model" for overpayment damages. *Briseno v. ConAgra Foods, Inc*., 674 F. App'x 654, 657 (9th

23   Cir. 2017). Here, Plaintiff's expert, Dr. Reed-Arthurs completed the conjoint survey in accordance with

24   the methodology described in her class certification report. *See generally* March 28, 2025 Declaration of

25   Rebbecca Reed-Arthurs, Ph.D. The survey shows that ███████████████████████████████. *See*

26   *generally id*. & Exs. A-D.  This is consistent with (1) Google's own internal research ████████████

27   ██████████ (*see* Ex. 20 at 083, 101, 103 (Google's research ████████████████████████

28   ██████████████); Ex. 50 at 644 (similar); (2) Plaintiff's own belief

16

that he overpaid for his GAEDs as a result of Google's breach of its promises (Kumandan Decl. ¶ 7); and (3) academic literature that recognizes that people assign a value for the breach of similar promises. *See, e.g.*, Torres Report (ECF No. 222-2, Ex. 57) at 19 n.44 (citing A. Acquisti, L.K. John, and G. Lowenstein, *What is Privacy Worth?*, 42 J. Legal Stud. 249, (2013)). At trial, Mr. Torres can apply the methodology described in his report to calculate price premium damages using this information. Torres Report (ECF No. 222-2, Ex. 57) at 23-27. A jury is entitled to weigh this evidence in determining the amount Google overcharged the Class. *G & M Oil Co. Inc. v. Am. Zurich Ins. Co.*, No. SACV 1500204, 2017 WL 11629299, at *4 (C.D. Cal. Mar. 28, 2017) (noting that it is for the jury to decide which expert's proposed range reflects the appropriate damages).

Google's belated attempt to challenge these experts, or its claim that Plaintiff failed to "disclose any experts who may testify at trial" (Mot. at 20) are meritless. Plaintiffs disclosed each of their experts well in advance of the July 2022 deadline for disclosing trial witnesses. Comite Decl., ¶55. Google did not move to exclude any of Plaintiffs' experts or challenge their opinions under Fed. R. Evid. 702. Instead, Google offered its own competing rebuttal experts to criticize Plaintiffs' experts' conclusions. *See* ECF No. 268  at 19-20. These critiques do not demonstrate the absence of triable fact issues on price premium damages. Thus, the jury is entitled to consider the experts' competing reports and testimony at trial in evaluating which method to credit and how much to award in damages. *See Podwall v. Robinson*, No. 216CV06088, 2021 WL 4441975, at *3-4 (C.D. Cal. Sept. 28, 2021) (sustaining contract claim at summary judgment where plaintiff provided damage calculation method and there is sufficient information in the record "to which this computation may be applied"); *Encompass Ins. Co. v. Berger*, No. CV128294, 2013 WL 12124281, at *5 (C.D. Cal. Dec. 10, 2013) (denying summary judgment on contract claim where "the fact of damages" is established, and allowing plaintiffs to "prove the amount of their damages at *trial*" by having witnesses testify about "the damages sustained") (emphasis in original).

Google's authority does not show otherwise. In *Day v. GEICO Casualty Co.*, No. 21-cv-02103, 2024 WL 251408 (N.D. Cal. Jan. 23, 2024), the court struck a supplemental declaration submitted after the close of fact discovery. Here, Plaintiffs timely disclosed their experts well ahead of the fact discovery cutoff, including the expert opinions, and the bases for those opinions, giving Google ample opportunity to test them, including in expert depositions. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th

1    Cir. 2000), is likewise inapposite. There, class members sought to have the court recognize "fear of future

2    layoff" as an actionable injury for their breach of contract claim. Plaintiff and the Class here suffered

3    concrete quantifiable damages.

4                    **2.    Google Cannot Establish That Damages Are Precluded as a Matter of Law**

5            Google seeks to avoid this battle of the experts by arguing that price premium damages are only

6    available in cases "sounding in fraud." Mot. at 17. This Court's prior orders (*see* Class Cert Order at 21,

7    28) and Google's own authority confirm this is wrong. *Brazil v. Dole Packaged Foods, LLC,* 660 F. App'x

8    531, 534 (9th Cir. 2016), did not find that price premium damages were precluded outside of fraud cases.

9    Rather, it rejected the plaintiffs' argument that fruit allegedly mislabeled as "All Natural" was "valueless,"

10   such that the premium paid was equal to the full purchase price. *Id.* at 535. Consistent with *Dole*, Plaintiff

11   is not trying to recover the *full* price of GAEDs, only the price premium resulting from Google's violation.

12           Google contends that its breach cannot cause price premium damages from the purchase of GAEDs

13   because the overpayment purportedly precedes contract formation (since, according to Google, "most"

14   class members do not agree to the TOS and PP until after they purchase their GAEDs). Mot. at 18-20.

15   This improperly conflates the fact of harm as a result of the breach – which establishes an entitlement to

16   damages – with the calculation of damages. Where, as here, "'the fact of damages is certain, the amount

17   of damages need not be calculated with absolute certainty. The law requires only that some reasonable

18   basis of computation of damages be used, and the damages may be computed even if the result reached is

19   an approximation.'" *Workplace Techs. Rsch.*, 2021 WL 4895977, at *17; *see also Cal. Lettuce Growers

20   v. Union Sugar Co.*, 45 Cal. 2d 474, 486-87, 289 P.2d 785 (1955).  As discussed above, Plaintiff provides

21   such a reasonable basis of computation. *See* §IV.C.1, *supra*. Moreover, causation is generally a question

22   of fact that cannot be resolved by summary judgment. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253

23   (9th Cir. 2022). Here, Google promised not to collect audio absent use of the device and not to disseminate

24   user audio to third parties and it breached those promises. *See* §II.A-B, *supra*. Google's breach resulted in

25   (*i.e.*, caused) harm to Plaintiff and Class Members. *See* Kumandan Decl. ¶ 7; Torres Report (ECF No. 222-

26   2, Ex. 57) at 18. A reasonable juror easily could find that Google's breach was a substantial factor in

27   producing these harms.

28           Google's cited authority does not show otherwise. In *In re LinkedIn User Priv. Litig.*, 932 F. Supp.

                                                    18

2d 1089, 1093 (N.D. Cal. 2013), the benefit of the bargain theory failed because the privacy policy was "the same for the premium membership as they [were] for the nonpaying basic membership," such that the plaintiffs could not allege they "actually provided consideration for the security services which they claim were not provided." Similarly, in *Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021), the benefit of the bargain theory failed because the plaintiff did not allege that the privacy policy stated "that the cost of data security was included in the cost of its goods." *Id*. This is not the case here, where the record shows that Google █████████████████████ ████████████████████████████████████████. *See* Ex. 51. In *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 980 (N.D. Cal. 2016), the breach of contract claim failed because it was based on promises "that might have been issued after the alleged breach and based on language from documents that might not even have been part of the alleged contract." Finally, in *Gross v. Symantec Corp.*, No. C 12-00154, 2012 WL 3116158, at *12 (N.D. Cal. July 31, 2012), the allegedly defective product was not the subject of the contract. The allegations demonstrated that only "the *free trial version* [of the software] did not function as advertised," (emphasis in original), while the full version that was purchased and was the subject of the contract performed as advertised. *Id*. These facts bear no relation to this case.

Google's attempt to minimize its role by claiming that "most class members . . . never had any false accept audio collected or disclosed to human reviewers" (Mot. at 18) has nothing to do with damages. As explained above, the Court explicitly found that Google's contractual promises, and its subsequent brief, were *not* contingent on any Class Member experiencing a False Accept. MTD II at 18-19; Class Cert Order at 11-12. Rather, all Class Members were damaged because the Assistant did not perform as Google promised, a fact for which the prevalence of False Accepts is irrelevant. Google's argument also misrepresents the evidence, as the data sample █████████████████████████████████ ██████████████████. Landrum Decl. ¶ 7 (████████████████████████████████████████ ████████████████████); *id*. at ¶ 13 (████████████████████████████ ████████████████████████████████████████████████). ████████████████████████████████████████████████████ ████████████████████████. *See* Ex. 21 at 587-591. In any event, Google's data-based argument, at best, raises fact or expert questions that must be resolved at trial.

Further, Google's attempt to re-visit the question of whether the purchase of a device that is merely *susceptible* to False Accepts can result in damages (Mot. at 19) ignores the Court's prior orders. The Court already rejected Google's argument that Class Members must have experienced False Accepts to claim contract damages. Class Cert Order at 12. Rather, as the Court found, Plaintiffs' injury lies in the fact that "the services Plaintiffs . . . received in exchange for the purchase price of [GAED] were worth less than the services they paid for." MTD II at 21. That is exactly what the evidence now shows and what Plaintiffs' expert reports and testimony establishes. Ex. 47, Kumandan Tr. at 80:8-11 (testifying that he paid more for the Pixel phone than he would've otherwise because of the Assistant); *id*. at 93:13-25 (testifying that his phone recording him without his knowledge makes him think differently about his phone); *id*. at 182:4-14 (testifying that he was harmed by Google's conduct because "[he] had a level of privacy in using this device and that sort of trust was broken.); Torres Report (ECF No. 222-2, Ex. 57) at 37 (concluding that breach of contract "dilutes or even destroys the value of the investment [in the GAED] and makes Class members worse off than if they had not made the purchase.").

Google's attacks on Plaintiff's testimony are meritless. Mot. at 20. Whether Plaintiff remembered the price he paid for his Pixel device, if receipts were produced, or if he received a discount on his phone does not change the fundamental facts of the case that entitle Kumandan to damages, namely that Google sold Kumandan a GAED that did not perform as promised. *See* §II.A-B. That Kumandan purchased a different Pixel device after filing this lawsuit does not show absence of evidence substantiating damages (Mot. at 20-21) from his *prior* purchase. *Svenson v. Google Inc.*, 65 F. Supp. 3d 717 (N.D. Cal. 2014) is distinguishable because, unlike here, the plaintiff did not allege that she made any payment to the defendant, and thus could not have price premium damages. *Id*. at 724.

Finally, contrary to Google's claim, the Assistant is *not* free. Mot. at 22.



(Ex. 48, Crowel I Tr. at 108:5-16) and . Torres Report (ECF No. 222-2, Ex. 57) at 23-27. This makes sense, of course: . *Id*. at 14-19.

### 3.    The Class Is Separately Entitled to Nominal Damages and Disgorgement

Even if the Court were to credit Google's arguments regarding the price premium damages, Google still cannot show that Plaintiff and the Class have no damage as a matter of law. The Court previously recognized, consistent with long standing precedent, that in addition to compensatory damages proven by a conjoint analysis, breach of contract claims allow nominal damages and disgorgement of profit. MTD II at 23-25. Both are still available to the class here and preclude ruling in Google's favor.

*Nominal Damages*: "[R]ecent California Court of Appeal authority confirms that nominal damages are available as a matter of law where a contract has been breached." *Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879, 2022 WL 2952578, at *3 (N.D. Cal. July 26, 2022) (J., Freeman) (citing *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965-66 (2021)); *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, No. 20-cv-07182, 2022 WL 1990225, at *22-23 (N.D. Cal. Jun. 6, 2022) (granting summary judgment on liability to party asserting breach of contract claim because even if it did not suffer actual damages as pleaded in complaint, "at least nominal damages are available" as a matter of law); *Cummings v. Connell*, 402 F.3d 936 (9th Cir. 2005) (holding at summary judgment that "each class member whose [] rights were violated is entitled to nominal damage," not just the "named class representatives"). This is true even where (unlike here) a plaintiffs cannot show actual damages. *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 967 (2021) (a plaintiff "is entitled to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him"). Nominal damages can easily be calculated here on a class wide basis by simply multiplying the total number of Class Members by $1. Torres Report (ECF No. 222-2, Ex. 57) at 29; Ex. 52 (document showing GAED users). Google's cited cases (Mot. at 22) are of no moment as all predate *Palantir*.

*Nonrestitutionary Disgorgement*: Plaintiff's evidence demonstrates that Google has ███████ ████████████████████████████████████████████████████████████████████ ███████. *See* Torres Report (ECF No. 222-2, Ex. 57) at 29-36. Under California law, Google, as the wrongdoer, is not entitled to retain the benefit of its breach and must discharge these profits. *See Meister v. Mensinger*, 230 Cal. App. 4th 381, 398, 178 Cal. Rptr. 3d 604, 618 (Cal. App. 2014) ("[T]he public policy of this state does not permit one to 'take advantage of his own wrong' regardless of whether the other party suffers actual damage."); *Ctr. for Healthcare Educ. & Rsch., Inc. v. Int'l Cong. for Joint*

1  *Reconstruction, Inc.*, 57 Cal. App. 5th 1108, 1130 (Cal. App. 2020) (same). Plaintiff's expert Mr. Torres

2  has already demonstrated how he can quantify Google's profits based on existing evidence, and

3  specifically from Google's ███████████████████████████████. See ECF No.

4  222-2, Ex. 57  (Torres Report) at 9, 18.

5      Google's argument that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) would

6  bar equitable relief because Plaintiff has an adequate remedy at law (Mot. at 24) is wrong. In *Sonner*, the

7  plaintiff sought damages available at law under the CLRA and equal to the amount of restitution under

8  the UCL, such that her remedy at law would fully compensate plaintiff for her injury.  Courts post-*Sonner*

9  have distinguished situations where the damages available at law do not fully encompass the equitable

10  relief sought. *See e.g.*, *Vance v. Church & Dwight Co., Inc*., No. 2:22-CV-00044, 2023 WL 2696826, at

11  *5 (E.D. Cal. Mar. 29, 2023) (holding *Sonner* does not foreclose disgorgement where no adequate remedy

12  covered "'the financial profits that Defendant obtained as a result of its unjust conduct'"); *In re California*

13  *Gasoline Spot Market Antitrust Litig*., No. 20-CV-03131, 2021 WL 1176645, at *7-9 (N.D. Cal. Mar. 29,

14  2021) (similar); *see also Clark v. Yodlee, Inc.*, No. 3:20-CV-05991 (N.D. Cal.), ECF No. 356 at 8-9

15  (explaining that legal remedy can only "reach the compensation . . . for the alleged misappropriation of

16  [plaintiffs' data] but not defendant's "unjust enrichment"). Here, the ███████████████████

17  █████████████████████████████ are *not* captured by the price premium Class

18  Members paid for their GAEDs, and Plaintiff may properly seek relief for both harms.

19      **D.    Google Is Not Entitled to Summary Judgment on Plaintiff's UCL Claim**

20          **1.    Evidence Adequately Supports Plaintiff's UCL Claim**

21      Because Google's motion fails as to Plaintiff's breach of contract claim, Google is not entitled to

22  summary judgment on Plaintiff's UCL claim either. *See Sandigo v. Ocwen Loan Servicing, LLC*, No. 17-

23  CV-02727, 2019 WL 2233051, at *30 (N.D. Cal. May 23, 2019) (denying summary judgment as to UCL

24  unlawful claim where predicate claims survived). Google attempts to avoid this result by arguing that

25  common law claims, like breach of contract, cannot serve as the predicate for a UCL violation. Mot. at

26  23-24. But Google's sole authority, *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035 (9th

27  Cir. 2010), says just the opposite, acknowledging that "a violation of common law *can* support a § 17200

28  claim, provided that the conduct is also unlawful, unfair, or fraudulent." *Id.* at 1044. This includes contract

claims. *See Spring Design, Inc. v. Barnesandnoble.com, LLC*, No. C 09-05185, 2010 WL 5422556, at *9 (N.D. Cal. Dec. 27, 2010) (sustaining UCL unlawful claim predicated on a breach of contract that is also "unlawful"). Here, Google's intentional unauthorized recording of Plaintiff and Class Members in breach of its PP (*see* §II.B, *supra*) is independently "unlawful" because it violates Section 22576, which prohibits a commercial website operator from "knowingly and willfully" or "negligently and materially" failing to comply with the provisions of its posted PP. *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1021-23 (N.D. Cal. 2019) (allowing plaintiff to "base[] the UCL claims on a breach of contract" that "constituted a violation of Section 22576"). Google's argument to the contrary simply denies the evidence, and at best, presents a material issue of fact for resolution by the jury.

Likewise, Google's claim that its violations are not "material" because it only collects a "small number of false accepts" (Mot. at 23) misses the mark for several reasons. First, it concedes the alleged violation, thereby precluding summary judgment. Second, Google's characterizations of the False Accept rates are inaccurate. *See* §II.B.1, *supra*. Third, even using Google's own inaccurate figures, whether its False Accept rates are material to a reasonable consumer is a quintessential fact question. *See Brown v. Grimes*, 192 Cal. App. 4th 265, 277-278 (2011) (materiality is generally a fact question). Google's cited case, *Viacom Int'l Inc. v. MGA Ent., Inc.,* No. CV 15-9621, 2016 WL 7448142, at *1 (C.D. Cal. Aug. 11, 2016), is inapposite because it dealt with whether the plaintiff's purported failure to "substantially perform" under the contract was material. Here, there is no dispute about Plaintiff's performance, and Plaintiff and the Class suffered an invasion of privacy with each false accept, which constitutes injury as a result of the breach as a matter of law. *See* §IV.C, *supra*.

In addition, California "appellate courts have recognized that 'a systematic breach of certain types of contracts (*e.g.*, breaches of standard consumer [] contracts involved in a class action) can constitute an unfair business practice under the UCL.'" *Arce v. Kaiser Foundation Health Plan, Inc*., 181 Cal. App. 4th 471, 489-90 (2020) (collecting cases). Therefore, Google's systematic and surreptitious breach of its PPs (*see* §II.B, *supra*.) constitutes "unfair" as well as "unlawful" conduct.

### 2.    Disputed Fact Issues Exist as to Plaintiff Kumandan's UCL Standing

Google's argument that the Class lacks UCL standing (Mot. at 23-24) fails for three reasons. *First*, only Plaintiff Kumandan, not the entire Class, needs to establish UCL standing. *See In re Tobacco II*

1    *Cases*, 46 Cal. 4th 298, 306 (2009) (UCL "standing requirements are applicable only to the class

2    representatives, and not all absent class members"). *Second*, Google is wrong that Plaintiff cannot show

3    that Google breached its policies. *See* §II.B, *supra*. *Third*, contrary to Google's assertion (Mot. at 24),

4    Plaintiff Kumandan has shown that Google's breach caused him injury in fact. *See* §IV.C, *supra*. Plaintiff

5    testified he overpaid for his devices. Ex. 47, Kumandan Tr. at 80:8-12; *id*. at 69:6-14; *see also* Kumandan

6    Decl. ¶ 7. This is a quintessential economic injury for UCL standing, and Google's effort to contradict

7    this evidence creates a triable issue of fact. *See Otto v. Abbott Labs. Inc.*, No. 512CV01411, 2014 WL

8    12591475, at *4 (C.D. Cal. Apr. 22, 2014) (finding plaintiff provided sufficient evidence for "economic

9    injury" for UCL at summary judgment where he testified he "would have paid less" had he known of the

10    truth about the product).

### 3. Disputed Fact Issues Exist as to Google's Continuing Misconduct, Precluding Summary Judgment on Injunctive Relief

13       Google argues that there "is no risk of ongoing harm warranting injunctive relief" because Google

14    "already amended its PP" to clarify "that whether Google collects voice and audio data information

15    depends on whether a user enables VAA and that 'external processing' covers the human review vendors."

16    Mot. at 24. Google further contends that "the current VAA consent expressly discloses both the possibility

17    of misactivations and the use of human reviewers to analyze audio." *Id*. But False Accepts and human

18    review are not the only ongoing harm at issue in the case. Plaintiff Kumandan's evidence demonstrates

that Google



. Ex. 32 at 46 (                                                                                         );

Ex. 33 (

                                                          ); Kumandan Decl. ¶ 8. The Court should order Google to

                              because "absent an injunction, Google will continue to collect users' private

25    [voice and audio] data for its own use without users' express consent." *Brown*, 685 F. Supp. 3d at 926

26    (denying summary judgment, rejecting that plaintiff lacked Article III standing to pursue injunctive relief).

27    The Court will resolve factual disputes regarding the appropriate nature of an injunction during the

28    "equitable relief proceedings" after trial. *Belyea v. GreenSky, Inc.*, No. 20-CV-01693, 2025 WL 589037,

at *16 (N.D. Cal. Feb. 24, 2025).

     **E.**    **Alphabet Is a Proper Defendant in This Case**

     It is far from undisputed that Alphabet "has no role in this case." Mot. at 25. Alphabet employees were involved in ███████████████████████████████████████████████████████████████████████████████. Ex. 34. Further, privacy engineers of both Google and Alphabet participated at ████████████████████████████████████████████████████████████████████████████. Exs. 35-37. Internal policies relating to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Exs. 38-39. ███████████████████████████████████████████████████████████. Ex. 40. Thus, Alphabet should not be dismissed from the case. *See MGA Ent., Inc. v. Hartford Ins. Grp.*, No. EDCV080457, 2012 WL 12894053, at *11 (C.D. Cal. Jan. 27, 2012) (denying summary judgment on contract claim against the parent company where it had "intimate involvement in" the wrongdoing).

**V.**    **CONCLUSION**

     For the reasons stated herein, Google's Motion should be denied in its entirety.


Dated: April 2, 2025         */s/* Erin Green Comite
                          Erin Green Comite (*pro hac vice*)
                          Anja Rusi (*pro hac vice*)
                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                          156 South Main Street
                          P.O. Box 192
                          Colchester, CT 06415
                          Telephone: (860) 537-5537
                          ecomite@scott-scott.com
                          arusi@scott-scott.com

                          Vincent Briganti (*pro hac vice*)
                          Christian Levis (*pro hac vice*)
                          Margaret MacLean (*pro hac vice*)
                          Andrea Farah (*pro hac vice*)
                          **LOWEY DANNENBERG, P.C.**
                          44 South Broadway, Suite 1100
                          White Plains, NY 10601
                          Telephone: (914) 997-0500
                          vbriganti@lowey.com
                          clevis@lowey.com
                          mmaclean@lowey.com

1     afarah@lowey.com

2     Joseph P. Guglielmo (*pro hac vice*)
      Anjori Mitra (*pro hac vice*)
3     **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
      The Helmsley Building
4     230 Park Avenue, 24th Floor
      New York, NY 10169-1820
5     Telephone: (212) 223-6444
      jguglielmo@scott-scott.com
6
      Mark N. Todzo (Bar No. 168389)
7     Patrick Carey (Bar No. 308623)
      **LEXINGTON LAW GROUP**
8     503 Divisadero Street
      San Francisco, CA 94117
9     Telephone: (415) 913-7800
      mtodzo@lexlawgroup.com
10    pcarey@lexlawgroup.com

11    *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:19-cv-04286-BLF

1

## **CERTIFICATE OF SERVICE**

2    I hereby certify that on 2nd day of April, 2025, I caused the foregoing to be electronically filed

3    with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4    email addresses denoted on the Electronic Mail Notice List.

5

6    s/ Erin Green Comite

7    Erin Green Comite

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:19-cv-04286-BLF