Bobbie J. Wilson, Bar No. 148317
BWilson@perkinscoie.com
Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
Elliott Joh, Bar No. 264927
EJoh@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

Erin K. Earl (*pro hac vice*)
EEarl@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Justin Potesta, Bar No. 314133
JPotesta@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Suite 1700
Austin, TX 78701
Telephone: +1.737.256.6100
Facsimile: +1.737.256.6300

Attorneys for Defendants
ALPHABET INC. and GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

IN RE GOOGLE ASSISTANT PRIVACY
LITIGATION

Case No. 5:19-cv-04286-BLF

**DEFENDANTS ALPHABET INC. AND
GOOGLE LLC'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT**

Date:        May 8, 2025
Time:        9:00 a.m.
Dept.:       Courtroom 3, 5th Floor
Judge:      Hon. Beth Labson Freeman

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .............................................................................................. 1

II.     GOOGLE'S RESPONSE TO PLAINTIFFS' EVIDENCE ................................ 1

        A.      Plaintiffs' "Disputed Facts" Are Either Immaterial or Unsupported .................... 1

        B.      Plaintiffs' Improper Expert Testimony Should Be Stricken ................................ 2

III.    ARGUMENT .................................................................................................... 4

        A.      There Is No Triable Issue of Fact on the Element of Promise ............................. 4

                1.      "Promise One" Is Not an Actionable Promise ............................................ 4

                2.      There Is No Triable Issue on the Interpretation of "Promise One" ............ 4

                3.      Google's Use of Human Reviewers Falls Squarely Within the
                        Scope of the Consent and External Processing Exceptions to
                        "Promise Two" ......................................................................................... 6

                4.      Plaintiffs Concede that the Purported Promises Were Not Uniform .......... 7

        B.      There Is No Triable Issue of Fact on Classwide Breach .................................... 7

                1.      Plaintiffs Concede that a Breach Requires a False Accept and
                        Disclosure to Human Reviewers ............................................................... 7

                2.      Most Class Members Could Not Have Had Any False Accept
                        Audio Collected or Shared, Regardless of the False Accept Rate ............ 7

                3.      Kumandan Experiencing a False Accept Would Not Create a
                        Triable Issue of Fact as to Classwide Breach .......................................... 8

                4.      There Is No Genuine Dispute that the False Accept Rate Was Low ........ 8

                5.      Summary Judgment Should Be Granted for Failure to Show Breach
                        of "Promise Two" as to Kumandan or Classwide .................................. 10

        C.      There Still Is Not Even a Scintilla of Evidence the Purchaser Class
                Experienced Price Premium Damages Resulting from Any Purported
                Breach .......................................................................................................... 10

                1.      Plaintiffs Identify No Evidence Any Breach Caused a Price
                        Premium ................................................................................................. 10

                2.      Plaintiffs Identify No Evidence of a Price Premium ............................... 11

                3.      The Purchaser Class Cannot Seek Nominal Damages or
                        Disgorgement ........................................................................................ 13

        D.      Plaintiffs' UCL Claim Fails ........................................................................... 14

IV.     CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Brobeck, Phleger & Harrison v. Telex Corp.,
602 F.2d 866 (9th Cir. 1979).................................................................................................. 4

Brown v. Google LLC,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................... 4

Calhoun v. Google, LLC,
113 F.4th 1141 (9th Cir. Aug. 20, 2024).............................................................................. 7

Clear-View Techs., Inc. v. Rasnick,
No. 13-cv-02744-BLF, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ..................................... 2

Codding v. Pearson Educ., Inc.,
No. 18-CV-00817-LB, 2019 WL 5864579 (N.D. Cal. Nov. 8, 2019),
aff'd, 842 F. App'x 70 (9th Cir. 2021)................................................................................... 10

Day v. GEICO Casualty Co.,
No. 21-cv-02103-BLF, 2024 WL 251408 (N.D. Cal. Jan. 23, 2024) ...................................... 3

Encompass Ins. Co. v. Berger,
No. CV-12-8294-MWF, 2013 WL 12124281 (C.D. Cal. Dec. 10, 2013) ............................... 12

Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.,
No. C 03-3721 VRW, 2005 WL 3325051 (N.D. Cal. Dec. 7, 2005)...................................... 13

Frasco v. Flo Health, Inc.,
No. 21-cv-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..................................... 6

Gardiner v. Walmart Inc.,
No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)................................. 13

Genentech, Inc. v. Tr. of Univ. of Penn.,
No. C 10-2037 PSG, 2011 WL 7074210 (N.D. Cal. Sept. 19, 2011) ...................................... 8

Hammerling v. Google LLC,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................. 4

Hebrew Univ. of Jerusalem v. Gen. Motors LLC,
No. CV 10-03790 AHM, 2012 WL 12507522 (C.D. Cal. May 31, 2012) ............................ 14

Hodes v. AMCO Ins. Co.,
No. 13-CV-0085, 2014 WL 12531092 (S.D. Cal. Oct. 24, 2014) ........................................ 15

Hoffman v. Constr. Protective Servs., Inc.,
541 F.3d 1175 (9th Cir. 2008), as amended (Sept. 16, 2008)................................................ 3

-ii-

*Huynh v. Quora, Inc.*,
No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .............................. 13

*In re Facebook, Inc. Tracking Internet Litig.*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................................... 4

*In re LinkedIn User Priv. Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) ............................................................................ 11, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2012 WL 5411590 (N.D. Cal. Nov. 6, 2012) .......................................... 6

*Javier v. Assurance IQ, LLC*,
No. 20-CV-02860-CRB, 2023 WL 3933070 (N.D. Cal. June 9, 2023).................................. 6

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) .................................................................................................. 15

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005) ................................................................................................. 15

*Maron v. Foster Wheeler Corp.*,
No. C 95-0686 SI, 2002 WL 102605 (N.D. Cal. Jan. 17, 2002).............................................. 5

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988)................................................................................................... 12

*MGA Ent., Inc. v. Hartford Ins. Grp.*,
No. ED CV 08-0457-DOC(RNBx), 2012 WL 12894053
(C.D. Cal. Jan. 27, 2012)......................................................................................................... 15

*Moore v. Am. Honda Motor Co., Inc.*,
740 F. Supp. 3d 814 (N.D. Cal. 2024) ................................................................................... 15

*Moore v. Apple Inc.*,
No. 14-cv-02269-LHK, 2015 WL 7351464 (N.D. Cal. Nov. 20, 2015)................................. 8

*Morales v. Ametek, Inc.*,
No. SACV 14-244-JLS, 2015 WL 13915983 (C.D. Cal. May 19, 2015) .............................. 14

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*,
701 F.2d 95 (9th Cir. 1983)....................................................................................................... 5

*Noori v. Bank of Am., N.A.*,
710 F. App'x 757 (9th Cir. 2018) ........................................................................................... 15

*Olson v. Doe*,
12 Cal. 5th 669 (2022) ............................................................................................................... 7

-iii-

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d. 1064 (N.D. Cal. 2016) ................................................................. 6

*Plumley v. Mockett*,
    836 F. Supp. 2d 1053 (C.D. Cal. 2010) ................................................................. 3

*Podwall v. Robinson*,
    No. 2:16-CV-06088-ODW, 2021 WL 4441975 (C.D. Cal. Sept. 28, 2021) ......................... 12

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    No. 19-CV-04238-MMC, 2021 WL 2308277 (N.D. Cal. June 4, 2021) .............................. 14

*Rodman v. Safeway Inc.*,
    125 F. Supp. 3d 922 (N.D. Cal. 2015), 694 F. App'x 612 (9th Cir. 2017) .......................... 2

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2022 WL 214552, at *3 (N.D. Cal. Jan. 25, 2022) ............................ 5

*SiteLock LLC v. GoDaddy.com LLC*,
    562 F. Supp. 3d 283 (D. Ariz. 2022) ..................................................................... 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 15

*Wasco Prods., Inc. v. Southwall Techs, Inc.*,
    435 F.3d 989 (9th Cir. 2006) .............................................................................. 6

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) .............................................................................. 4

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021) ........................................................................ 10

*Winet v. Price*,
    4 Cal. App. 4th 1159 (1992) .............................................................................. 4

**STATUTES**

Cal. Bus. & Prof. Code § 22576 ............................................................................ 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................... 2, 3, 12

Fed. R. Civ. P. 37 ........................................................................................ 2

Fed. R. Civ. P. 56 ........................................................................................ 3

I.    **INTRODUCTION**

Plaintiffs' Opposition ("Opp.") to Defendants' Motion for Summary Judgment ("MSJ") is a transparent attempt to expand the record with largely irrelevant evidence, or mischaracterize the evidence to support their desired narrative, hoping to generate enough confusion to yield a genuine dispute of material fact. The recitation of unsupported and immaterial "disputed facts" is full of sound and fury, but proves nothing. Likewise, many legal arguments contradict Plaintiffs' longstanding positions in this case and the basis on which the Court certified the Purchaser Class. Nothing in the Opposition creates a *genuine* dispute of *material* fact as to any element of the certified claims and the Court should enter summary judgment in Defendants' favor.

II.   **GOOGLE'S RESPONSE TO PLAINTIFFS' EVIDENCE**

A.    **Plaintiffs' "Disputed Facts" Are Either Immaterial or Unsupported**

Plaintiffs introduce a host of new evidence in an attempt to gin up a factual dispute, but the evidence they cite either is irrelevant to the certified claims or does not support Plaintiffs' version of the facts, and is thus insufficient to create a *genuine* dispute of any *material* fact.

*Any alleged concealment is irrelevant and unsupported.* Plaintiffs' attempt to show that Google concealed false accepts or its use of false accept audio for training is both irrelevant and mischaracterizes the evidence. *See* Dkt. 360 at 31–32. Google's use of audio data for internal training is not related to any purported promise in the Privacy Policy ("PP"). *See, e.g.*, Dkt. 505-1, Decl. of Erin Comite in Supp. of MSJ Opp. ("Comite Decl."), Ex. 6 (Dkt. 502-5). And none of the cited exhibits show concealment, only Google's commitment and efforts towards reducing false accepts. *See, e.g.*, Comite Decl., Exs. 10–11 (Dkts. 502-9, 502-10).

*No evidence supports Plaintiffs' attempts to exaggerate the frequency of false accepts.* None of the evidence cited supports Plaintiffs' claim that false accepts occurred frequently throughout the class period. Opp. at 5. *See* Comite Decl., Ex. 43 (Dkt. 502-41) (testimony about audio data used for training, not false accepts); Ex. 16 (Dkt. 502-14) (summary of Assistant user metrics, no discussion of false accepts); Ex. 17 (Dkt. 502-15) (summarizing results of a 2016 survey of Google employees that predates the public launch of Google-Made Devices with hotword functionality); Ex. 21 (Dkt. 502-19) (showing false accept rates of ███████████

-1-

1    ██████████ and range of ███████████████████, without limitation to Google-Made

2    Devices); Ex. 19 (Dkt. 502-17) (describing many Assistant user mobile metrics as "accidental"

3    but not limited to hotword activation or false accepts); Ex. 22 (Dkt. 502-20) (estimating false

4    activations as ████ of hotword queries but not limited to Google-Made Devices); Ex. 23 (Dkt.

5    502-21) (estimating that hotword activations account for ██ of false accepts).

6         ***Google worked to reduce and delete false accepts before this action***. The cited evidence

7    shows Google worked on misactivations before this case was filed, contrary to Plaintiffs' claim.

8    *See, e.g.*, Comite Decl., Ex. 11 (Dkt. 502-10) ███████████████████████████

9    ██████████████████████████████████████████████

10   ████); Ex. 31 (Dkt. 502-29) (████████████████████████).

11        ***Google did not monetize false accept audio from Class Members.*** Plaintiffs' claim that

12   Google "monetized" false accept data by using it to target ads is not supported. *See* Comite Decl.,

13   Exs. 48–49 (Dkts. 502-45, 502-46) (████████████████████████

14   ██████████████████████████████); Ex. 24 (Dkt. 502-22)

15   ██████████████████████████████████████ Ex. 26 (Dkt.

16   502-24) (sources of data used for model training); Ex. 43 (Dkt. 502-41) (████████████

17   ████████████████████████████████████).

18       **B.**    **Plaintiffs' Improper Expert Testimony Should Be Stricken**

19        "Parties wishing to rely on expert opinions must disclose those opinions and the facts or

20   data considered in forming them 'at the times and in the sequence that the court orders.'" *Rodman*

21   *v. Safeway Inc.*, 125 F. Supp. 3d 922 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(a)(2)(D)),

22   *aff'd*, 694 F. App'x 612 (9th Cir. 2017). A party that fails to do so cannot "use that information or

23   witness to supply evidence on a motion . . . unless the failure was substantially justified or is

24   harmless." Fed. R. Civ. P. 37(c)(1); *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF,

25   2015 WL 3509384, at *2, 4–5 (N.D. Cal. June 3, 2015) (sanction is "automatic and mandatory").

26        Here, Plaintiffs failed to disclose by the expert disclosure deadline (July 15, 2022) the

27   identity of any expert witnesses who may present evidence at trial or any written reports. Dkts.

28   161, 205; Bali Decl. ¶ 2; Supp. Bali Decl. ¶ 5, Ex. 4. Instead, they included expert reports from

Dr. Reed-Arthurs and Mr. Fernando Torres with their Motion for Class Certification three days

later. Dkt. 222-2 ¶¶ 57–58. These reports did not contain the opinions the experts would express

at trial or supporting facts or data. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii); Dkt. 360 at 25.

Now, over two years after expert discovery closed, Plaintiffs disclosed *for the first time* a

conjoint survey attached to Dr. Reed-Arthurs' declaration in support of their Opposition. Dkt.

505-56. Plaintiffs' untimely disclosure is both unjustified and highly prejudicial. It is unjustified

because the need for this evidence was anticipated: Dr. Reed-Arthurs said she would conduct and

analyze a conjoint survey and Mr. Torres planned to rely on it to calculate damages. *See* Dkt. 360

at 25; *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1064 (C.D. Cal. 2010). Further, it could have

been disclosed long ago: the survey was conducted between August and September 2022—over

two years ago and also *before* her September 7, 2022 deposition and her October 3, 2022 "Reply"

report. *See* Reed-Arthurs Decl., Appendix B, Exhibit C at 1 (Dkt. 502-50); *see also* Befurt Decl.

¶ 10. And it is highly prejudicial because Google could not ask about a then-undisclosed survey

or any related opinions at her deposition. Accordingly, the Reed-Arthurs declaration and attached

survey data should be stricken. *See, e.g.*, *Day v. GEICO Casualty Co.*, No. 21-cv-02103-BLF,

2024 WL 251408, at *3 (N.D. Cal. Jan. 23, 2024) (striking supplemental expert declaration

containing opinion and analysis not included in original report). In response to *Day*, Plaintiffs

assert that their testifying experts were timely "disclosed." Opp. at 17. That is inaccurate. Supp.

Bali Decl. ¶ 5, Ex. 4. And experts were disclosed in *Day*, so it is also immaterial.

The references to Mr. Torres's report should also be stricken. Opp. at 16-17. Plaintiffs

failed to timely identify Mr. Torres as an expert witness at trial or produce an accompanying

merits report. Supp. Bali Decl. ¶ 5, Ex. 4; *see* Fed. R. Civ. P. 56(c)(2). Further, damages

calculations that are not timely disclosed cannot be used at trial. *See Hoffman v. Constr.

Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008), *as amended* (Sept. 16, 2008).

Plaintiffs' initial disclosures asserted they would "provide a calculation of damages during expert

discovery." Supp. Bali Decl., Ex. 1. But Mr. Torres's report solely proposes a damages *model*, not

a damages *calculation*. Opp. at 16. Plaintiffs' plan for Mr. Torres to "apply the methodology

described in his report to calculate price premium damages" for the jury does not satisfy their

obligation to disclose those calculations before trial. Opp. at 17. Finally, Plaintiffs improperly seek to incorporate this report by reference. *See* Court's Standing Order re: Civil Cases § IV.D.

## III.    ARGUMENT

### A.    There Is No Triable Issue of Fact on the Element of Promise

#### 1.    "Promise One" Is Not an Actionable Promise

There is no dispute the PP must contain "explicit promissory language" to be actionable. *See* Opp. at 9. But Google never promised not to collect false accept audio data: "Promise One" informed users that data collected "may include" audio data "when you use audio features." At the pleading stage, after "draw[ing] all reasonable inferences in favor of Plaintiffs," and without considering evidence, the Court declined to adopt Google's interpretation. Dkt. 138 at 18–19. The Court is not bound by that ruling now. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 n.2 (9th Cir. 2010); *see also Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992).

"Promise One" is devoid of any promise "about what [Google] 'will' or 'will not' do with Assistant Data." Opp at 9. In *Brown v. Google LLC*, by contrast, users were told "Google '*won't*' save users' browsing information while they are in Incognito mode." 685 F. Supp. 3d 909, 932 (N.D. Cal. 2023) (emphasis added). Thus, *Brown* is consistent with the ample case law cited by Google requiring explicit promissory language to support a breach of contract claim. *See* MSJ at 8–9. Plaintiffs also fail to distinguish Google's cited authority. *See* Opp. at 9-10; *In re Facebook, Inc. Tracking Internet Litig.*, 956 F.3d 589, 610 (9th Cir. 2020) (contractual language did not "contain an explicit promise not to track logged-out users"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1095 (N.D. Cal. 2022) (language describing information Google "may" collect "did not plausibly amount to [a] promise"). Because the PP does not promise that Google *will not* collect audio data in the case of a false accept, but only provides examples of the "activity information" it "may" collect, both *Hammerling* and *In re Facebook* are squarely on point.

#### 2.    There Is No Triable Issue on the Interpretation of "Promise One"

The PP is "not reasonably susceptible" to Plaintiffs' interpretation and may be "disposed of by summary judgment" because "interpretation of the unambiguous contract is solely a question of law." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871–72 (9th Cir.

1   1979) (citations omitted); *see also* MSJ at 9–11. But even if the PP were ambiguous, Google is

2   still entitled to summary judgment because no evidence supports Plaintiffs' interpretation. *See*

3   *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co*., 701 F.2d 95, 97 (9th Cir. 1983).

4         Google has supported its interpretation of the PP with evidence. MSJ at 9–11 (citing

5   evidence that Assistant users "use audio features" when hotword functionality and VAA are

6   enabled because Assistant listens for the hotword to respond to user queries, and Google logs no

7   Assistant audio unless the user has consented to VAA). Plaintiffs, by contrast, cite no evidence to

8   support their interpretation; they only argue that the Court's prior ruling bars summary judgment.

9   *See* Opp. at 10. Plaintiffs are wrong. *See Nat'l Union*, 701 F.2d at 97; *Maron v. Foster Wheeler*

10  *Corp.*, No. C 95-0686 SI, 2002 WL 102605, *4 (N.D. Cal. Jan. 17, 2002) (no triable issue where

11  plaintiffs "offered no relevant evidence" of their interpretation and defendants "introduced ample

12  evidence to the contrary"). Even Kumandan testified that he did not interpret the PP as Plaintiffs

13  propose. *See* Bali Decl., Ex. 15 (Kumandan Dep. Tr.) at 133:3–6, 201:8–202:6.

14        Plaintiffs try to convince this Court not to consider VAA. Opp. at 10-11. But "Promise

15  One" concerns Google's collection of audio data, and VAA is the setting that controls such

16  collection. This critical fact cannot be ignored. Nothing here contradicts Google's position in

17  *Rodriguez v. Google LLC*, that plaintiffs cannot base a breach of contract claim on the Web &

18  App Activity ("WAA") settings page. No. 20-cv-04688-RS, 2022 WL 214552, at *3 (N.D. Cal.

19  Jan. 25, 2022) (cited in Opp. at 10-11). And Plaintiffs' claim that "Google collects users' audio

20  even when VAA is off" is flatly false, contradicted even by their cited evidence. Opp. at 4-5, 11;

21  Comite Decl., Ex. 12 (Dkt. 502-11) at 7 (cited in Opp. at 4) ("If VAA is turned off . . . [n]o audio

22  logging."); Beaufays Decl. ¶ 13 (the audio data for an Assistant interaction "is discarded unless

23  the user has enabled the VAA setting"). Nor can collecting a transcript breach "Promise One."

24  *See* Opp. at 11. "Promise One" pertains specifically to the "collect[ion]" of "[v]oice and audio

25  information," i.e., audio recordings; it says nothing about transcripts. *See* Bali Decl. Ex. 1 (Dkt.

26  496-7); Bali Decl., Ex. 39 at 4. Further, Plaintiffs' breach of contract claim has never been

27  premised on transcripts, but rather on Google's purported collection of non-consensual voice

28  recordings. That is the theory the Court certified. *See, e.g.*, FAC (Dkt. 141) ¶¶ 250–51 (alleging

-5-

this PP provision applies to the "voice recordings at issue in this litigation" and "non-consensual recordings"); Dkt. 222-01 at 17 (arguing Google breached promises in the PP "by collecting audio recordings that were the result of False Accepts and utilizing the audio"); *see also* Dkt. 360 at 21, 32. Plaintiffs cannot change their theory now. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 5411590, at \*5 (N.D. Cal. Nov. 6, 2012).

### 3.   Google's Use of Human Reviewers Falls Squarely Within the Scope of the Consent and External Processing Exceptions to "Promise Two"

"Promise Two" states that Google does not share personal information absent certain exceptions, including (1) "[w]ith your consent" or (2) "[f]or external processing." Bali Decl., Ex. 1 (Dkt. 496-7). The undisputed facts show that both exceptions apply here.

**Consent.** Plaintiffs again argue that VAA should not be considered because it was not part of the PP. *See* Opp. at 12. But even if VAA is not incorporated into the PP, user consent to VAA still satisfies the "[w]ith your consent" exception to "Promise Two." Next, Plaintiffs argue that the "Omniconsent" screen used for a portion of the class period did not give users sufficient "control" over their VAA setting. *See* Opp. at 12. But the exhibit they cite does not even show the full description of VAA available on that screen and confirms that VAA is optional. Comite Decl., Ex. 12 (Dkt. 502-11); Supp. Flynn Decl. ¶ 3. And starting in August 2020, users were expressly informed that by enabling VAA, they consented to their audio being "analyzed by trained reviewers, who listen to, transcribe, and annotate it," and that this may include audio that is "saved if your device incorrectly detects an activation." Bali Decl., Ex. 7 (Dkt. 494-13). These disclosures are more than sufficient to obtain consent. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d. 1064, 1073 (N.D. Cal. 2016). Finally, Google's updates to its VAA consent in August 2020 say nothing about the sufficiency of its prior consent. *See Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 3933070, at \*2 n.4 (N.D. Cal. June 9, 2023).

**External Processing.** Plaintiffs argue that whether "external processing" encompasses human reviewers is a question of fact, but only cite cases on consent, which is a separate exception. *See* Opp. at 13 (citing *Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2024 WL

4280933, at *2 (N.D. Cal. Sept. 23, 2024) (referencing "factual disputes" regarding "plaintiffs' consent"); *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. Aug. 20, 2024) (considering whether disclosures established consent)); *see also* Dkt. 80 at 35. And for part of the class period, the external processing exception referenced reviewers expressly. Bali Decl., Ex. 1 (Dkt. 496-7).

### 4. Plaintiffs Concede that the Purported Promises Were Not Uniform

Plaintiffs concede that relevant provisions of the PP changed during the class period, but assert that those changes were not "material" because they did not change the "core promise." Opp. at 11. The record plainly shows otherwise. *See* Bali Decl., Ex. 1; MSJ at 11–13.

### B. There Is No Triable Issue of Fact on Classwide Breach

#### 1. Plaintiffs Concede that a Breach Requires a False Accept and Disclosure to Human Reviewers

Plaintiffs' Opp. clarifies that they *agree* with Google that "[a]ny promise in Google's PP to only 'collect' a user's audio data when she intentionally activates Assistant can only be breached if Google in fact collects a user's false accept audio data" and "any promise in Google's PP to only 'share' such audio under 'those circumstances disclosed in its Privacy Policies' can only be breached if Google *in fact* shared such false accept audio outside those circumstances." MSJ 14–15; *see* Opp. at 13. At no point does the Opp. contend the *sale* of a Google-Made Device with an alleged propensity to false accept is alone a breach of the PP. *See generally* Opp. 13–16.

That the Court did not limit the class to purchasers who experienced a false accept, *see* Opp. at 13, does not relieve Plaintiffs of their burden to prove a breach. *See Olson v. Doe*, 12 Cal. 5th 669, 679 (2022). By Plaintiffs' own theory, Plaintiffs must show a triable issue of fact as to whether Google breached its purported promises *classwide* by "surreptitiously recording users' audio and then subsequently sharing such audio with third parties," a question that the Court indicated, at Plaintiffs' invitation, would be answered "by analysis of Google's voice records and Speech logs." Dkt. 360 at 21; Dkt. 222-01 at 15; Dkt. 303 at 13. They fail to do so.

#### 2. Most Class Members Could Not Have Had Any False Accept Audio Collected or Shared, Regardless of the False Accept Rate

Because the Purchaser Class is not limited to users who experienced a false accept,

Plaintiffs' admission that a breach requires a false accept means, as a matter of logic, that many class members did not experience a breach. Indeed, the Purchaser Class includes individuals who purchased and associated their Gmail account with a Google-Made Device but *never used Assistant* at all. Dkt. 360 at 31; MSJ at 15–16. Likewise, most Purchaser Class members did not enable VAA. *See* Flynn Decl. ¶ 10. Because Google collects audio recordings only when VAA is enabled, these class members could not have had *any* audio recordings collected or shared with reviewers, including false accepts. *See* Flynn Decl. ¶ 10; Beaufays Decl. ¶ 13.

### 3.    Kumandan Experiencing a False Accept Would Not Create a Triable Issue of Fact as to Classwide Breach

The Opposition does not identify a false accept experienced by Kumandan. ████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ *See* Supp. Beaufays Decl. ¶ 3. Regardless, a single false accept experienced by Kumandan cannot show a *classwide* breach of contract. *See* Dkt. 360 at 21; *Moore v. Apple Inc.*, No. 14-cv-02269-LHK, 2015 WL 7351464, at *8 (N.D. Cal. Nov. 20, 2015); *cf.* Dkt. 80 at 10 ("some *de minimis* error rate in the Google Assistant may be tolerated without exposing [Defendants] to liability; after all, even the human ear misinterprets words and sounds at times").

### 4.    There Is No Genuine Dispute that the False Accept Rate Was Low

Plaintiffs' arguments regarding Google's speech log data supported the Court's conclusion that the breach element would be "capable of resolution with generalized, classwide proof." *See* Dkt. 360 at 21 (citing Dkt. 222-01 at 10–12, 17). Plaintiffs cannot abandon this evidence now that it does not support their position. *See Genentech, Inc. v. Tr. of Univ. of Penn.*, No. C 10-2037 PSG, 2011 WL 7074210, at *3 (N.D. Cal. Sept. 19, 2011) (when a court grants a party's discovery request, that party "should not be permitted to reverse course" and adopt contradictory positions "[i]f only for consistency and fairness"). Indeed, Plaintiffs' attempt to abandon the speech log data calls into question the basis for the Court's predominance ruling and Google reserves all rights to move to decertify the Purchaser Class.

The scattered handful of exhibits Plaintiffs submit to create the mirage of a genuine

1    factual dispute do nothing of the sort. To use Plaintiffs' own words, these documents "represent

2    an incomplete set of False Accept calculations and estimates from random points in time during

3    the Class Period across an anecdotal set of device types and operating software." Dkt. 443 at 5;

4    *see also* Dkt. 443-1 at 1 (arguing that the documents they now attach as Exs. 21 and 22 do not

5    describe key characteristics of the false accept rate and that Ex. 22 calculated rates for a "highly

6    rare and/or discontinued device"); Dkt. 450 ("Oct. 3, 2024 Hr'g Tr.") at 14:16–22 (Judge Van

7    Keulen noting that these documents do not appear "particularly helpful or useful in terms of

8    creating some sort of . . . defensible quantification on the false accepts"). Nor do these documents

9    support the inflated false accept rates Plaintiffs attempt to attribute to them. *See supra* pp. 1–2.

10       The sampled speech logs, on the other hand, consist of randomly sampled hotword-

11   initiated queries from Google-Made Devices, a subset intentionally selected to *most closely*

12   resemble relevant queries from the Purchaser Class. *See* Supp. Beaufays Decl. ¶ 4; Dkt. 450 (Oct.

13   3, 2024 Hr'g Tr.) at 5:19–10:11, 13:1–16; 14:8–12. Plaintiffs' objections to the sample, levied

14   primarily through the declaration of statistical expert Dr. Mary Beth Landrum, have no basis in

15   the record. *See* Borck Decl. ¶¶ 12–19. Dr. Landrum opines, at most, that it is "unclear" if the

16   sample might be unrepresentative; it is not. *See* Landrum Decl. ¶ 7; Borck Decl. ¶¶ 12–13. Her

17   other critiques lack merit. First, Dr. Landrum takes umbrage that queries where a hotword was

18   included in the "redacted top hypothesis field" are considered intended for Google and not a false

19   accept. Landrum Decl. ¶ 9. But that is *Plaintiffs'* own proposed methodology. *See* Dkt. 289 (Sept.

20   23, 2022 Hr'g Tr.) at 10:21–12:9 (arguing for this methodology); Dkt. 450 (Oct. 3, 2024 Hr'g Tr.)

21   at 36:25–38:2 (Judge Van Keulen concluding this methodology would yield "relevant" results

22   notwithstanding Google's objections). Second, Dr. Landrum's assertion that the sample data does

23   not break down false accept rates for "device or date level," Landrum Decl. ¶¶ 10–11, ignores

24   that (1) the raw sample data enabled Plaintiffs to do their own analysis based on device and date,

25   and (2) the sampling exercise (like Plaintiffs' Class Definition) is agnostic to device type and was

26   intended to provide a holistic picture across Google-Made Devices throughout the class period.

27   Google's sampling was entirely consistent with Judge Van Keulen's orders. *See* Dkt. 455. Third,

28   ██████████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████

2 ███ *See* Supp. Beaufays Decl. ¶ 5. Finally, Google redacted query content for privacy reasons as

3 permitted by Judge Van Keulen, *see* Dkt. 450 (Oct. 3, 2024 Hr'g Tr.) at 37:4–15, but provided the

4 categories into which queries without hotwords in the "top hypothesis" field were sorted,

5 including the nature of the query where it was categorized as likely intended for Google. *See* Bali

6 Decl., Ex. 4. And even without considering Google's manual review, the data sample reflects that

7 only around ███ of hotword-initiated queries had no hotword reflected in the top hypothesis field,

8 whether due to logging practices or otherwise. *See* Bali Decl., Ex. 3.

9           **5.**      **Summary Judgment Should Be Granted for Failure to Show Breach of**

10                 **"Promise Two" as to Kumandan or Classwide**

11      At minimum, the Court should grant summary judgment on the *disclosure* claim for

12 failure to show a triable issue of fact as to breach. Plaintiffs do not and cannot dispute that *no*

13 recordings of Kumandan's Assistant interactions (much less recordings of any false accepts) were

14 shared with human reviewers. Opp. at 14; Dkt. 494-7 ("Tai Decl.") ¶ 9. And Plaintiffs cite *no*

15 evidence in the record to even attempt to rebut the extremely low rate at which audio recordings

16 were disclosed to human reviewers. Bali Decl. Exs. 3, 56 (Dkts. 494-9, 494-24); Tai Decl. ¶ 16.

17 Summary judgment is warranted as to this claim.

18     **C.**     **There Still Is Not Even a Scintilla of Evidence the Purchaser Class**

19           **Experienced Price Premium Damages Resulting from Any Purported Breach**

20          **1.**      **Plaintiffs Identify No Evidence Any Breach Caused a Price Premium**

21      A breach of contract claim requires a causal connection between the alleged *breach* of a

22 contractual promise—not just the defendant—and damages sought as relief. *See* MSJ at 17 (citing

23 cases); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 652 (N.D. Cal. 2021) (measure of contractual

24 damages "is the injured party's loss in the value to him of the other party's performance *caused*

25 *by its failure or deficiency*, plus any other losses") (cleaned up). Here, Plaintiffs cite *no evidence*

26 to support any causal link between any purported breach and their putative price premium

27 damages. That is because there is none, thus Google is entitled to summary judgment. *See*

28 *Codding v. Pearson Educ., Inc.*, No. 18-CV-00817-LB, 2019 WL 5864579, at *16 (N.D. Cal.

Nov. 8, 2019), *aff'd*, 842 F. App'x 70 (9th Cir. 2021).

Plaintiffs instead attack strawman arguments and raise incomprehensible rebuttals. *First*, Google never argued "that price premium damages are only available in cases 'sounding in fraud.'" Opp. at 18 (quoting MSJ at 17). *See* MSJ at 18 (citing *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1093–94 (N.D. Cal. 2013)).

*Second*, Plaintiffs argue the absence of evidence of *causation* is somehow related to "the calculation of damages." Opp. at 18. But here, *any damages* (regardless of amount) cannot be "caused by" a breach because they *precede* the breach and would have been incurred *absent the breaching conduct*. MSJ at 18–19. Alleged overpayment when an individual purchases a Google-Made Device precedes both contract formation (by agreeing to Terms when that device is later activated) and breach (if a false accept occurs during use of that device). *See id.*; *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d at 1094. And price premium damages are incurred *absent the breaching conduct* because the Purchaser Class is defined to include individuals who purchased Google-Made Devices but (1) *never used Assistant at all* or (2) never enabled VAA and thus never had any audio data collected by Google. *See* Dkt. 360 at 21. Yet Plaintiffs' price premium theory posits that these class members likewise overpaid. Opp. at 19; *see* MSJ at 18 (citing cases).

*Third*, the only evidence Plaintiffs cite to attempt to support causation are a declaration from Kumandan and the expert report from Mr. Torres attached to their Motion for Class Certification. Neither supports any price premium. Although Kumandan now claims that he was not asked "to put a monetary number on or ask for quantification of his harm," *id.*, he testified that he experienced no "immediate harm" such as "lost money." Bali Decl., Ex. 15 (Dkt. 495-2) at 182:5–7. He likewise did not testify in either his deposition or his declaration that he overpaid for Google devices for *any* reason, much less as a result of false accepts that occurred *after purchase*. And even if the Torres report is not stricken, *see supra* pp. 2–4, the cited section does not provide any evidence of price premium damages. Dkt. 222-2, Ex. 57 at 18.

### 2. Plaintiffs Identify No Evidence of a Price Premium

*First*, Plaintiffs still offer zero evidence substantiating any "price premium" damages. The improper expert testimony they attempt to cite as support should be stricken. *See supra* pp. 2–4.

Even if considered, that testimony does not—and cannot—establish a triable issue of fact on price premium. Plaintiffs' survey expert, Dr. Reed-Arthurs, earlier proposed "a choice-based conjoint survey to analyze how consumer willingness to pay for a given device would change if adequate disclosures were made at the time of purchase." Dkt. 360 at 25. Plaintiffs claim the survey results attached to her declaration "show[] that users assign value to Google's Promises." Opp. at 16. But her declaration says nothing of the sort: it says *nothing* about the survey results, does *not* apply the methodology described in her prior report, and does *not* opine that the survey results show *any* change in purchasers' willingness to pay for any device. *Cf.* Reed-Arthurs Decl. ¶ 3; Befurt Decl. ¶¶ 10, 15. Instead, she says she can perform that analysis later "and explain the results to the jury at trial." Reed-Arthurs Decl. ¶ 6. Thus, it is not even appropriate for the Court's consideration. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806 (9th Cir. 1988). And its failure to identify *any change* in purchasers' willingness to pay for any device is fatal to Plaintiffs' price premium damages theory. *See, e.g.*, *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 306 (D. Ariz. 2022). Further, the improper Torres report did not substantiate any damages, only promised to use the calculated change in consumers' willingness to pay for devices (missing in the Reed-Arthurs Declaration) to later calculate price premium damages. Dkt. 222-2, Ex. 57.

  *Second*, Plaintiffs appear to contend they can present their experts' damages opinions for the first time at trial if they explain the methodology and assert that the record includes the evidence to which it will be applied. *See* Opp. at 17–18. But both cases Plaintiffs cite for support contemplated *lay* witnesses applying damages calculations. *See Podwall v. Robinson*, No. 2:16-CV-06088-ODW (AGRx), 2021 WL 4441975, at *3-4 (C.D. Cal. Sept. 28, 2021) (damages to be calculated by plaintiff as 10% of defendant's gross compensation); *Encompass Ins. Co. v. Berger*, No. CV-12-8294-MWF (PJWx), 2013 WL 12124281, at *4 (C.D. Cal. Dec. 10, 2013) ("no expert testimony [was] required" to show damages). Here, the basis for satisfying predominance as to damages was a "price premium damages model" reliant on expert testimony, which the Federal Rules require be disclosed. *See* Dkt. 360 at 21, 24–28; Fed. R. Civ. P. 26(a)(2); *supra* pp. 2–4. And Plaintiffs here have not met their burden of production on damages: there is no evidence of what Kumandan paid for his Pixel devices, much less any other Purchaser Class member. *See*

1 MSJ at 20; *compare* Kumandan Decl., *with Podwall*, 2021 WL 4441975, at *5–6 (records showed

2 defendant's compensation subject to 10% damages calculation).

3    Finally, Plaintiffs' concessions doom their price premium theory. The Opposition

4 concedes that (1) Plaintiffs' grievance is with Assistant, not Google-Made Devices; and

5 (2) Assistant "does not have its own separate price tag" (i.e., is free to use) and is "marketed and

6 tested . . . separately from its devices." Opp. at 15, 19, 20. Because Plaintiffs concede their issue

7 is with *Assistant*, any purported overpayment for *devices* cannot be price premium damages. *See*

8 *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19,

9 2019); Dkt. 80 at 37. Nor can Plaintiffs distinguish the authority Google cites to support this

10 common-sense point. They try to distinguish *Svenson* by arguing the plaintiff "did not allege that

11 she made any payment to the defendant, and thus could not have price premium damages." Opp.

12 at 20. But Kumandan *also* did not pay Google anything for use of Assistant, or even for his Pixel

13 device, which he purchased from Verizon. Bali Decl., Ex. 15 at 65:16–19; 86:17–23; *see also In*

14 *re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d at 1093 (no price premium where putative promises

15 made in the privacy policy are the same if a user does not pay as if they do); *Gardiner v. Walmart*

16 *Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) (same).

17    **3.**  **The Purchaser Class Cannot Seek Nominal Damages or Disgorgement**

18    After offering no meaningful argument on either nominal damages or disgorgement as a

19 Purchaser Class damages model at class certification, neither was accepted by the Court. *See* Dkt.

20 222-01 at 24, 25 n.16 (addressing disgorgement only for privacy tort claims and nominal damages

21 only in a footnote); Standing Order § IV(F); Dkt. 360 at 24–28. Plaintiffs cannot now rely on

22 them to avert summary judgment. Purchaser Class members also are not entitled to disgorgement

23 of purported profits absent any injury to plaintiffs, or "nonrestitutionary disgorgement." *See* Opp.

24 21–22. Purchaser Class members have not and cannot show they "retain a stake in the profits

25 garnered." Dkt. 138 at 24 (internal citation omitted). ██████████████████████████

26 ████████████████████████████████████████████████████████████████

27 ███████████████████████████ *Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No.

28 C 03-3721 VRW, 2005 WL 3325051, at *11 (N.D. Cal. Dec. 7, 2005); *see also* Supp. Bali Decl.,

1    Ex. 3, Ex. 4 (July 21, 2022 Crowel Tr.) at 27:13–20. That Google made some use of some audio

2    data, Opp. at 21–22, does not mean it "profited" from the allegedly wrongful conduct. *See, e.g.*,

3    *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC, 2021 WL 2308277, at *4 (N.D.

4    Cal. June 4, 2021). To the contrary, Google deletes unintentional activations when they are

5    detected; the evidence does not support Plaintiffs' assertion that Google treats all intentional and

6    unintentional activations the same. *See* MSJ at 23; *see, e.g.*, Comite Decl., Exs. 21, 43 (Dkts. 502-

7    19, 502-41) (reviewers "skip" false accept audio and "unintended speech" utterances and Google

8    requires automatic deletion of these recordings). Plaintiffs seek to fill this gap using the improper

9    Torres report, which should be stricken. *See supra* pp. 2–4. Even if the Court considered that

10   report, the disgorgement opinion still should be stricken as irrelevant and unreliable because it

11   (1) did not claim to calculate profits as damages for the Purchaser Class, only non-certified

12   classes; and (2) expressed no opinion on profits from false accepts and relied on mere

13   assumptions. *See* Dkt. 222-2, Ex. 57, at 31–33, 35–36; *see also Hebrew Univ. of Jerusalem v.*

14   *Gen. Motors LLC*, No. CV 10-03790 AHM (JCx), 2012 WL 12507522, at *6 (C.D. Cal. May 31,

15   2012) (excluding Torres opinion on methodology for calculating profits as "unreliable").

16          **D.    Plaintiffs' UCL Claim Fails**

17          Summary judgment should be granted in favor of Google on the UCL claims.

18          *First*, Plaintiffs agree their UCL claim cannot be predicated on a breach of contract unless

19   Google also violated Cal. Bus. & Prof. Code Section 22576, Opp. at 22–23, so Plaintiffs must

20   show Google failed to comply with its PP "knowingly and willfully" or "negligently and

21   materially." Plaintiffs fail across the board. Plaintiffs show no triable issue as to Google's

22   compliance with its PP. *See supra* pp. 4–10. The evidence they cite to purportedly show

23   "intentional unauthorized recording" shows at best varying misactivation rates (including via

24   inadvertent button presses, etc.) over time and across device types, and Google's efforts to limit

25   them and delete resulting audio. *See., e.g.*, Comite Decl., Exs. 21, 23 (Dkts. 502-19, 502-21).

26   Plaintiffs cannot overcome summary judgment by mischaracterizing the evidence. *See Morales v.*

27   *Ametek, Inc.*, No. SACV 14-244-JLS (DFMx), 2015 WL 13915983, at *12 (C.D. Cal. May 19,

28   2015). And Plaintiffs' attempt to characterize Google's conduct as "unfair" under the UCL

should be ignored because that claim was denied certification. Dkt. 360 at 24.

*Second*, there is no evidence Google violated its PP or that such violation resulted in *any* purported economic injury to Kumandan, so Plaintiffs lack UCL standing even if Plaintiffs need only show UCL standing for him. *See* MSJ at 23–24; Opp. at 24. Kumandan received precisely what he bargained for when he purchased his Pixel devices, as he did not interpret the PP to promise that Assistant would not collect audio from false accepts. *See* Bali Decl., Ex. 15 at 84:14–18; 198:1–202:6. A declaration that "flatly contradicts" his deposition testimony or disagrees with the evidence without identifying anything to the contrary does not create a triable issue of fact. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Hodes v. AMCO Ins. Co.*, No. 13-CV-0085 W (NLS), 2014 WL 12531092, at *8 (S.D. Cal. Oct. 24, 2014).

*Finally*, Plaintiffs have no claim for equitable relief. They concede their restitution theory is identical to their price premium damages theory. Opp. at 21–22. Their claim for disgorgement of profits Google supposedly earned "in violation of its Promises," Opp. at 22, is foreclosed by California law. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460 (2005); *see also* Dkt. 138 at 29. Nor can they seek prospective injunctive relief, both under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and because any request is moot given Google's existing processes to delete false accept audio. *See Moore v. Am. Honda Motor Co., Inc.*, 740 F. Supp. 3d 814, 829 (N.D. Cal. 2024); *Noori v. Bank of Am., N.A.*, 710 F. App'x 757, 759 (9th Cir. 2018); Bali Decl., Ex. 9 at 4–5; Beaufays Dec. ¶¶ 22–23.

**E.    Alphabet is Not a Proper Defendant**

Plaintiffs' own authority shows that Alphabet can continue as a defendant in this case only if the evidence creates a triable question that it and Google are alter egos. *See MGA Ent., Inc. v. Hartford Ins. Grp.*, No. ED CV 08-0457-DOC(RNBx), 2012 WL 12894053, at *12 (C.D. Cal. Jan. 27, 2012) (evidence that parent and subsidiary corporations failed to observe corporate formalities precluded summary judgment). No such evidence exists here. Alphabet cannot be liable for breach of a contract to which it was not a party.

**IV.    CONCLUSION**

Defendants respectfully request that summary judgment be granted in their favor.

1

2

DATED: April 18, 2025

**PERKINS COIE LLP**

3

By: _/s/ Sunita Bali_
Bobbie J. Wilson, Bar No. 148317
BWilson@perkinscoie.com

4

Sunita Bali, Bar No. 274108
SBali@perkinscoie.com

5

Elliott Joh, Bar No. 264927
EJoh@perkinscoie.com

6

PERKINS COIE LLP
505 Howard Street, Suite 1000

7

San Francisco, California 94105
Telephone: +1.415.344.7000

8

Facsimile:  +1.415.344.7050

9

Erin K. Earl (*pro hac vice*)
EEarl@perkinscoie.com

10

PERKINS COIE LLP
1201 Third Avenue, Suite 4900

11

Seattle, Washington 98101-3099
Telephone: +1.206.359.8000

12

Facsimile: +1.206.359.9000

13

Justin Potesta, Bar No. 314133
JPotesta@perkinscoie.com

14

PERKINS COIE LLP
405 Colorado Street, Suite 1700

15

Austin, TX 78701
Telephone: +1.737.256.6100

16

Facsimile: +1.737.256.6300

17

Attorneys for Defendants
ALPHABET INC. and GOOGLE LLC

18

19

20

21

22

23

24

25

26

27

28

-16-