Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

*Additional Counsel for Plaintiffs*
*on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 5:19-cv-04286-BLF<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>COMPLAINT FILED: July 25, 2019<br>Date:    March 19, 2026<br>Time:    9:00 A.M. PT<br>Dept.:   Courtroom 1-5th Floor<br>Judge:   Honorable Beth Labson Freeman |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026, at 9:00 a.m. Pacific Time, or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 1, 5th Floor of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, the Honorable Beth Labson Freeman presiding, Plaintiffs Asif Kumandan, Melissa Spurr, individually and as guardian of B.S., a minor, Lourdes Galvan, and Eleeanna Galvan ("Plaintiffs"), through their undersigned counsel and on behalf of the proposed Settlement Classes, move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of an Order: (i) provisionally certifying the proposed Settlement Classes, designating Plaintiffs as Class Representatives, and appointing Christian Levis of Lowey Dannenberg, P.C. and Erin Green Comite of Scott+Scott Attorneys at Law LLP as Class Counsel; (ii) preliminarily approving the Settlement with Defendants Google LLC and Alphabet Inc. (together, "Google"); (iii) preliminarily approving the proposed Plan of Allocation; (iv) approving the proposed form and manner of Notice to the Settlement Classes; (v) approving the proposed Claims Administrator and the Escrow Agent; and (vi) scheduling a Final Approval Hearing before the Court.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Law set forth below, the accompanying Joint Declaration of Christian Levis and Erin Green Comite and the exhibits attached thereto, including the Settlement Agreement, the notice plan and the corresponding Declaration of Justin Parks of A.B. Data, Ltd., the pleadings and records on file in this Action, the proposed Preliminary Approval Order submitted herewith, and other such matters and argument as the Court may consider at the hearing of this Motion.

On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Preliminary Approval Order.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy so as to warrant: (a) the Court's preliminary approval; (b) provisional certification of the Settlement Classes for settlement purposes, including appointment of Plaintiffs as Class Representatives and Christian Levis of Lowey Dannenberg, P.C. and Erin Green Comite of Scott+Scott Attorneys at Law LLP as Class Counsel; (c) dissemination of notice of its terms to members of the Settlement Classes; and (d) setting a hearing date to consider final approval of the Settlement as well as Plaintiffs' forthcoming application for attorneys' fees and expenses and service awards;

2. Whether the proposed Plan of Allocation of the Settlement should be preliminarily approved;

3. Whether the proposed notice plan and forms of notice adequately apprise Settlement Class Members of the terms of the Settlement and their rights with respect to it;

4. Whether the selection of A.B. Data, Ltd. as Claims Administrator should be approved; and

5. Whether the selection of Huntington National Bank as Escrow Agent should be approved.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   THE PROPOSED SETTLEMENT ........................................................................1

    A.  PG 1.1: Class Definition ................................................................................2

    B.  PG 1.2: Claims to Be Released .....................................................................3

    C.  PG 1.3, 1.4, 1.5, 1.7, 8, 7, 8: Settlement Relief and Payments from the Settlement Fund ..........................................................................................3

    D.  PG 1.6 & PG 2: Claims Rate & Settlement Administration ..........................5

    E.  PG 3, 4, 5, 10: Notice-Related Information ...................................................6

III.  ARGUMENT ..........................................................................................................7

    A.  Conditional Certification of the Settlement Class Is Appropriate .................8

        1.  The Class Is Sufficiently Numerous .....................................................9

        2.  Common Questions of Law and Fact Exist ...........................................9

        3.  Plaintiffs' Claims Are Typical .............................................................10

        4.  Plaintiffs and Their Counsel Have Adequately Represented the Settlement Classes ...........................................................................11

        5.  Common Questions Predominate ........................................................11

        6.  Superiority Requirement Is Satisfied ..................................................12

        7.  Mr. Levis & Ms. Comite Should Be Appointed as Class Counsel.......13

    B.  The Proposed Settlement Is Fair, Reasonable, and Adequate ..............................14

        1.  The Ninth Circuit's Factors Support Approval of the Settlement ..................14

            i.    *Hanlon* Factors ...........................................................................14

                (a) Strength of the Case; Risk, Expense, and Complexity of Further Litigation; and Maintaining Class Certification Through Trial ..........................................................................14

                (b) Settlement Amount ..................................................................15

                (c) Extent of Discovery, Stage of Proceedings, and Plaintiffs' Counsel's Experience..............................................................16

            ii.   *Roes* Factors ................................................................................17

        2.  The Rule 23(e)(2) Factors Have Been Satisfied ............................................17

            i.    The Settlement is Procedurally Fair....................................................17

i

ii.    The Settlement Is Substantively Fair ....................................................18

C.  The Proposed Plan of Allocation Should Be Approved as Fair, Reasonable, and Adequate ......................................................................................22

D.  The Proposed Notice Program Should Be Approved ............................................23

E.  The Court Should Approve the Appointment of A.B. Data as Claims Administrator ......................................................................................................24

IV.   CONCLUSION........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alfred v. Pepperidge Farm, Inc.*,
 2019 WL 13240300 (C.D. Cal. Oct. 10, 2019)......................................................22

*Alvarez v. Sirius XM Radio Inc.*,
 2020 WL 7314793 (C.D. Cal. July 15, 2020) ........................................................18

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)................................................................................................7

*Barrett v. Apple Inc.*,
 2024 WL 5339480 (N.D. Cal. Dec. 19, 2024) .......................................................10

*Carlotti v. ASUS Comput. Int'l*,
 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ...................................................8, 24

*Cottle v. Plaid Inc.*,
 340 F.R.D. 356 (N.D. Cal. 2021) ...............................................................10, 13, 24

*Dennis v. Kellogg Co.*,
 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................................................24

*Dexter's LLC v. Gruma Corp.*,
 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023).........................................................14

*Dixon v. Cushman & Wakefield W., Inc.*,
 2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ........................................................16

*Elder v. Hilton Worldwide Holdings, Inc.*,
 2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) .......................................................8

*Evans v. Linden Rsch., Inc.*,
 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013)..........................................................23

*Foster v. Adams & Assocs., Inc.*,
 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ...................................................9, 10

*Granados v. Hyatt Corp.*,
 2024 WL 3941828 (S.D. Cal. Aug. 26, 2024) .........................................................21

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ........................................................19

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ........................................................................ *passim*

iii

*Hester v. Vision Airlines, Inc.*,
   2009 WL 4893185 (D. Nev. Dec. 16, 2009), *aff'd*, 687 F.3d 1162 (9th Cir.
   2012) ....................................................................................................................11

*In re Classmates.com Consol. Litig.*,
   2010 WL 11684544 (W.D. Wash. Apr. 19, 2010).................................................23

*In re Facebook, Inc. Internet Tracking Litig.*,
   2024 WL 700985 (9th Cir. Feb. 21, 2024) ...........................................................16

*In re Google Referrer Header Priv. Litig.*,
   2023 WL 6812545 (N.D. Cal. Oct. 16, 2023)...................................................10, 11

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .........................................................................8, 12

*In re Illumina, Inc. Sec. Litig.*,
   2019 WL 6894075 (S.D. Cal. Dec. 18, 2019).......................................................18

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th
   Cir. Nov. 16, 2022) ...............................................................................8, 9, 21, 22

*In re MacBook Keyboard Litig.*,
   2023 WL 3688452 (N.D. Cal. May 25, 2023) .......................................................17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..............................................................................16

*In re Nexus 6P Prods. Liab. Litig.*,
   2019 WL 6111379 (N.D. Cal. May 3, 2019) .........................................................23

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................22

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ...................................................21, 22

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................7

*In re TikTok, Inc., Consumer Priv. Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022), *appeal dismissed*, 2022 WL 19079999
   (7th Cir. Oct. 12, 2022)........................................................................................20

*In re Vizio, Inc., Consumer Priv. Litig.*,
   2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) .......................................................13

*In re VNGR Bev., LLC Litig.*,
   2025 WL 1489714 (N.D. Cal. May 23, 2025) .......................................................24

iv

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
     2025 WL 3004046 (N.D. Cal. Oct. 27, 2025)...................................................................21

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
     2023 WL 9227002 (C.D. Cal. Nov. 28, 2023)................................................................19

*James v. Uber Techs. Inc.*,
     338 F.R.D. 123 (N.D. Cal. 2021).................................................................................12

*Jenson v. First Tr. Corp.*,
     2008 WL 11338161 (C.D. Cal. June 9, 2008) ..............................................................21

*Just Film, Inc. v. Buono*,
     847 F.3d 1108 (9th Cir. 2017) ....................................................................................10

*Kanawi v. Bechtel Corp.*,
     254 F.R.D. 102 (N.D. Cal. 2008)...........................................................................10, 11

*Katz-Lacabe v. Oracle Am., Inc.*,
     2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ..............................................................21

*Krommenhock v. Post Foods, LLC*,
     334 F.R.D. 552 (N.D. Cal. 2020)..................................................................................9

*Lopez v. Apple, Inc.*,
     No. 4:19-cv-04577, ECF No. 341 (N.D. Cal. Feb. 10, 2025)...........................13, 21

*Miramontes v. U.S. Healthworks, Inc.*,
     2017 WL 11633665 (C.D. Cal. Sept. 5, 2017). Discovery in this Action ...............16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................15

*Opperman v. Kong Techs., Inc.*,
     2017 WL 11676126 (N.D. Cal. July 6, 2017).................................................................23

*Pena v. Taylor Farms Pac., Inc.*,
     2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ................................................................17

*Perks v. Activehours, Inc.*,
     2021 WL 1146038 (N.D. Cal. Mar. 25, 2021)...............................................................20

*Rodriguez v. West Publ'g Corp.*,
     563 F.3d 948 (9th Cir. 2009) ......................................................................................16

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
     944 F.3d 1035 (9th Cir. 2019) ....................................................................................17

*Ruiz Torres v. Mercer Canyons Inc.*,
     835 F.3d 1125 (9th Cir. 2016) ....................................................................................12

v

*S.C. v. Buddi US LLC*,
    2024 WL 1459808 (C.D. Cal. Apr. 1, 2024) ................................................................12, 13

*Shahar v. Hotwire, Inc.*,
    2014 WL 12647737 (N.D. Cal. July 25, 2014)......................................................................24

*Shay v. Apple, Inc*.,
    2024 WL 1184693 (S.D. Cal. Mar. 19, 2024) ......................................................................19

*Stewart v. Apple Inc.*,
    2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ......................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)................................................................................................................12

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)........................................................................14

*Vikram v. First Student Mgmt., LLC*,
    2019 WL 1084169 (N.D. Cal. Mar. 7, 2019).........................................................................8

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..............................................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................................................9

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..............................................................................................12

### STATUTES, RULES & REGULATIONS

California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200...........................................3

Class Action Fairness Act, 28 U.S.C. §1715(b) ...........................................................................7

Federal Rule of Civil Procedure 23 .................................................................................. *passim*

### OTHER AUTHORITIES

Govaparam *et al*., "IoT Marketplace: Willingness to Pay Versus Willingness to
    Accept," PROCEEDINGS OF THE 20TH ANNUAL WORKSHOP ON THE ECONS. OF
    INFO. SEC. (June 2021)...........................................................................................................15

# MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiffs Asif Kumandan, Melissa Spurr, individually and as guardian of B.S., a minor, Lourdes Galvan, and Eleeanna Galvan ("Plaintiffs") respectfully move for preliminary approval of their $68,000,000 class settlement with Defendants Google LLC and Alphabet Inc. (together, "Google").[1]   The Settlement, if approved, will resolve claims relating to Google's alleged recording of individuals' communications using Google Assistant and Google Assistant Enabled Devices without their consent and the use and disclosure of communications to third parties.  After nearly six years of vigorous litigation and multiple mediations, the Parties finally agreed to settle the Action in May 2025.  The process by which the Parties reached the Settlement, combined with the substantive terms of the Agreement, provide sufficient evidence that the Settlement is fair, reasonable, and adequate, and likely to be approved following a hearing.  Accordingly, Plaintiffs respectfully request that the Court: (i) provisionally certify the Settlement Classes, designate Plaintiffs as Class Representatives, and appoint Christian Levis and Erin Green Comite as Class Counsel; (ii) preliminarily approve the proposed Settlement; (iii) preliminarily approve the proposed Plan of Allocation; (iv) approve the form and manner of providing Notice to members of the Settlement Classes; (v) approve the proposed Claims Administrator and Escrow Agent; and (vi) set a date, time, and place for a Final Approval Hearing.

## II.    THE PROPOSED SETTLEMENT

The key terms of the Settlement are summarized below, in accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Procedural Guidelines" or "PG").

---

[1]    Unless otherwise defined herein, capitalized terms have the same meanings as in the Stipulation and Agreement of Settlement ("Settlement Agreement" or "Agreement"), attached as Exhibit 1 to the Joint Declaration of Christian Levis and Erin Green Comite (the "Joint Decl.") in support of this Motion.

### A.    PG 1.1: Class Definition

Plaintiffs propose two Settlement Classes under Federal Rules of Civil Procedure 23(a) and (b)(3), each with a Settlement Class Period of May 18, 2016, through the date the Court grants preliminary approval of the Settlement:

> <u>Purchaser Settlement Class</u>: All Users who purchased a Google-Made Device during the Settlement Class Period.

> <u>Privacy Settlement Class</u>: All Users of Google Assistant and members of their Households during the Settlement Class Period whose communications were recorded or otherwise obtained by Google Assistant as a result of a False Accept or whose communications were recorded or otherwise obtained by Google Assistant and disclosed to any third-party review vendor.

> Excluded from the Settlement Classes are: (1) any Judge or Magistrate presiding over this Action, any members of their families, and the staff of such Judge or Magistrate; (2) Google, Google's subsidiaries, successors, predecessors, and any entity in which Google or its parent has a controlling interest and their current or former employees, officers, and directors; (3) Persons who properly execute and file a timely Request for Exclusion from the Settlement Classes; (4) Persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) any individual who previously opted out of the Purchaser Class, as identified at ECF No. 440-4, unless that individual elects to rejoin the Settlement Classes; (6) individuals who, prior to the Objection/Exclusion Deadline, both (A) file or serve a written arbitration demand, or provide written notice to Google of their intent to pursue arbitration against Google relating to the Released Claim, and (B) execute an individual release of their claims; (7) the legal representatives, successors, and assigns of any excluded Persons; and (8) Plaintiffs' counsel and Defendants' counsel.

Settlement Agreement ("SA") ¶1.43.  The Agreement provides the following relevant definitions:

• "Users" are individuals who reside in the United States or its territories whose Google accounts were associated with at least one Google Assistant Enabled Device during the Settlement Class Period;

• "Google Assistant Enabled Devices" are devices that come with Google Assistant pre-installed or on which Google Assistant can be downloaded; and

• "Google-Made Devices" are Google Assistant Enabled Devices manufactured and sold by Google either directly or through third-party retailers, including Google's own smart home speakers, Google Home, Home Mini, and Home Max; smart displays, Google Nest Hub, and Nest Hub Max; and its Pixel smartphones.  *Id.* ¶¶1.22, 1.23, 1.53; *see also* ¶¶1.20, 1.24, 1.25, 1.45.

The proposed Purchaser Settlement Class is substantially the same as the Purchaser Class

certified in the litigation; the sole difference is that the Class Period extends to the date of preliminary approval, rather than ending on December 16, 2022. *Compare id.* and ¶1.43 *with* ECF No. 414 at 31 ("Purchaser Class: All Users who purchased a Google-Made Device" with the same definitions for the capitalized terms as currently proposed). The proposed Settlement Classes also are substantially similar to the class definition in the operative Fourth Amended Consolidated Class Action Complaint. *Compare id.* ¶1.43 *with* ECF No. 141 ¶140.

### B.    PG 1.2: Claims to Be Released

The Release covers all claims or causes of action, whether known or unknown, "arising from or related to the facts and circumstances alleged in any of the complaints filed in the Action, including all claims and causes of action that were asserted or that could have been asserted in the Action based on the conduct or omissions alleged." SA ¶1.37. This includes the certified Purchaser Class's claims for breach of contract and violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200, *et seq.* (*see* ECF No. 414 at 31), as well as the claims asserted in each iteration of the complaint. ECF Nos. 1, 48, 86, 138, 141.

### C.    PG 1.3, 1.4, 1.5, 1.7, 6, 7, 8: Settlement Relief and Payments from the Settlement Fund

**PG 1.3 (Settlement Fund):** Google will pay $68 million into a non-reversionary common fund that will pay all approved claims, Notice and Administration Expenses, Taxes and Tax Expenses, escrow fees, any Court-approved Service Awards, and any Court-approved Attorneys' Fees and Expense Award. SA ¶¶2.1, 2.2, 2.5. *See also* §II.D, *infra* (discussing per class member recovery amounts); §III.B.1.i.b, *infra* (discussing maximum recoverable damages at trial).

**PG 1.4 (Other Cases):** No other cases are affected by the Settlement. Joint Decl. ¶57.

**PG 1.5 (Allocation Plan):** The Plan of Allocation provides that the Claims Administrator will allocate funds *pro rata* using a point system that assigns a value to each claim ("Claim Value") according to a formula. SA, Ex. E ¶¶7(a)-(c). Each member of the Purchaser Settlement Class can submit a claim for up to a maximum of three Google-Made Devices and will be assigned a Claim Value of four points for each eligible Google-Made Device that is part of a claim, for a maximum Claim Value of 12 points. *Id.* ¶7(a)(i). Each member of the Privacy Settlement Class will be assigned a Claim Value of one point. *Id.* ¶7(a)(ii). For Authorized Claimants who are

3

1    members of both the Purchaser Settlement Class and the Privacy Settlement Class, the Claims

2    Administrator will add the point allocations of their Valid Claims together to determine the Total

3    Claim Value for each of those Claimants up to a maximum value of 13 points.  *Id.* ¶7(a)(iii).  The

4    Claims Administrator will add the Claim Value of all Valid Claims submitted by members of both

5    Settlement Classes to calculate the Total Aggregate Claim Amount.  *Id.* ¶7(b).  To calculate each

6    Authorized Claimant's *pro rata* share, the Claims Administrator will divide the Net Settlement

7    Fund by the Total Aggregate Claim Amount to establish the per point value and multiply each

8    Authorized Claimant's Total Claim Value by the per point value to establish each Authorized

9    Claimant's award.  *Id.* ¶7(c).

10    **PG 1.7 (Reversion):**  No portion of the Settlement Fund will revert to Google unless the

11    Settlement Agreement is voided, cancelled, or terminated.  SA ¶¶2.2, 2.8.

12    **PG 6 (Attorneys' Fees and Expenses):**  Plaintiffs' Counsel will petition the Court for an

13    award of attorneys' fees not to exceed one-third of the Settlement Fund plus reasonable litigation

14    expenses.  Joint Decl. ¶60.  The unaudited lodestar invested in this case by Plaintiffs' Counsel as

15    of January 16, 2026, is more than $22 million.[2]  *Id.*  If this lodestar remains unchanged (which is

16    unlikely), the proposed attorneys' fee award would reflect a multiplier of 1.00.  *Id.*  At this time,

17    Plaintiffs' Counsel anticipate seeking no more than $1,600,000 as reimbursement for any litigation

18    expenses incurred.  *Id.*

19    **PG 7 (Service Awards):**  Subject to Court approval, Plaintiffs will apply for Service

20    Awards of $10,000 per Plaintiff (or $40,000), as compensation for their time and effort serving as

21    class representatives.  SA ¶¶1.40, 7.1.  Plaintiffs have spent substantial time on this Action, assisted

22    with the investigation of this Action, participated in document discovery and depositions, and

23    communicated frequently with counsel to stay informed about the Action.  Joint Decl. ¶61.

24    **PG 8 (*Cy Pres*):**  To the extent there are unclaimed payments, if administratively feasible,

25    Class Counsel will authorize the Claims Administrator to undertake a second distribution to

26

27    [2]    Plaintiffs will provide the total amount of litigation expenses and lodestar for all Plaintiffs'

28    Counsel when they file their motion for an award of attorneys' fees and expenses.

4

1  Authorized Claimants who have claimed their settlement payments; otherwise, those funds will be

2  distributed to one or more *cy pres* recipients, to be agreed upon by the Parties and submitted to the

3  Court for approval.  SA ¶4.20.

4      **D.      PG 1.6 & PG 2: Claims Rate & Settlement Administration**

5      The proposed Claims Administrator is A.B. Data, Ltd. ("A.B. Data").  SA ¶1.7.  The Court

6  appointed A.B. Data as the Notice Administrator after the Purchaser Class was certified.  ECF No.

7  423.  A.B. Data disseminated class certification notice, sending more than 29 million emails,

8  issuing a press release, posting the long form notice on the class notice website,

9  www.googleassistantprivacylitigation.com, and establishing a toll-free phone line.  ECF No. 440

10  at ¶¶5-11.  Plaintiffs selected A.B. Data as the proposed Notice Administrator after soliciting

11  competing bids from three leading notice and settlement administrators, all of whom submitted

12  responses.  Joint Decl. ¶62.  Each potential administrator proposed email notice and supplemental

13  notice methods (*e.g.*, publication notice and paid digital/social media plans).  *Id.*  All respondents

14  also provided cost estimates for class certification notice as well as settlement notice and claims

15  administration, including for direct notice, supplemental digital notice options, updating and

16  maintenance of the class notice website to provide case- and settlement-related information and

17  key documents, maintaining a dedicated phone line for class members during the claims period,

18  and various fraud detection and reduction and claims processing measures.  *Id.*  Google agrees to

19  use A.B. Data as the Claims Administrator.  *Id.* ¶65.  Over the past two years, Lowey has utilized

20  A.B. Data as the notice and/or settlement administrator for six new engagements.  Scott+Scott has

21  utilized A.B. Data in ten new engagements during the past two years.  *Id.* ¶66.

22      A.B. Data employs numerous control systems and procedures that meet or exceed relevant

23  industry standards for securely handling class member data, including technical controls,

24  administrative policies, and physical access controls for handling such data and appropriate data

25  collection and retention, data destruction, audit, and crisis and risk management policies.  *See*

26  Declaration of Justin Parks of A.B. Data ("Parks Decl.") ¶53.  A.B. Data accepts responsibility for

27  the security of Class Members' information and data and has affirmed that it will keep such

28  information confidential and will not use, disseminate, or disclose such information to any other

1   person or for any other purpose except effecting notice and claims administration. *Id*. ¶54. A.B.

2   Data maintains insurance for errors, including coverage for professional liability errors and

3   omissions in its administration, as well as a fidelity bond for employee dishonesty losses,

4   additional computer fraud and wire transfer communications fraud coverage, and network and

5   information security liability coverage. *Id*. ¶56.

6       A.B. Data estimates a net claims rate of 1-2% based on its experience administrating

7   consumer data breach and data privacy settlements, as well as a 2019 FTC Study analyzing

8   consumer class actions. *Id*. ¶¶49, 51. This is consistent with claims rates in comparable

9   settlements, which range between 0.41%-13%. *See* Joint Decl., Ex. 2; *see also* Parks Decl. ¶50.

10  These settlements were selected for comparison given that they are consumer privacy class action

11  cases arising from the disclosure of consumers' private information without consent and/or

12  consumer class actions relating to similar devices.

13      As they did during the litigation, the Parties continue to strenuously disagree about the

14  class size. Solely for purposes of complying with the Procedural Guidance, Class Counsel propose

15  using the population of individuals that will be provided with direct and supplemental notice to

16  calculate a conservative estimate of recovery per Settlement Class Member. Class Counsel

17  estimate that there are at most 60 million Purchaser Settlement Class Members. Joint Decl. ¶55.

18  For purposes of calculating a conservative estimate of recovery per Settlement Class Member here,

19  A.B. Data assumed the notice population for the Privacy Settlement Class, i.e., approximately 266

20  million individuals, are all eligible to file claims. Parks Decl. ¶¶18-21. Based on these

21  assumptions, Authorized Claimants in the Purchaser Class may receive between $18 – $56

22  (assuming they own one Google-Made Device) and Privacy Class Members between $2 – $10. *Id*.

23  ¶52. Google does not agree that Class Counsel's estimates and assumptions are correct. If the

24  class size is smaller, as Google contends, Settlement Class Members may receive a greater benefit.

25      A.B. Data estimates notice and settlement administration costs will total approximately

26  $1,700,000, which is 2.5% of the Settlement Amount. *Id*. ¶57. This amount does not include A.B.

27  Data's costs incurred in disseminating class notice in connection with certification of the Purchaser

28  Class during the litigation. Those costs will be included in Class Counsel's forthcoming

1    application for an Attorneys' Fee and Expense Award.

2    **E.      PG 3, 4, 5, 10: Notice-Related Information**

3    **PG 3-5 (Notice, Opt Outs, and Objections):**  The notice plan for this Settlement involves

4    sending direct Email Notice using email addresses provided by Google (the "Direct Notice List").

5    *Id*. ¶¶10-11; SA, Ex. A.  A Reminder Notice also will be sent.  Parks Decl. ¶16; SA, Ex. B.  In

6    addition, the Claims Administrator will issue a press release to announce the Settlement and will

7    develop a targeted digital / social media advertising campaign.  Parks Decl. ¶¶18-31.  The Email

8    Notice, Reminder Notice, press release, targeted digital and social media advertising, and any

9    supplemental notices will direct the reader to review the long form Notice on the Settlement

10   Website to obtain the necessary information concerning the Settlement, including the nature of the

11   Action, the definition of the Settlement Classes, the Plan of Allocation, key documents, contact

12   information for Class Counsel, the options available to Settlement Class Members to participate,

13   opt out, or object to the Settlement, and the date of the Final Approval Hearing.  *Id*. and Exs. A-C.

14   **PG 9 (Timeline):**  The proposed Preliminary Approval Order provides a timeline of post-

15   preliminary approval deadlines.  SA, Ex. F at 13.  The forthcoming application for an Attorneys'

16   Fees and Costs Award will be posted on the Settlement Website for Settlement Class Members to

17   review at least 35 days prior to the deadline to opt out or object to the Settlement and the

18   forthcoming application for an Attorneys' Fees and Costs Award; Settlement Class Members will

19   have 112 days from the Notice Date to file a claim, object, or opt out.  *Id*.; *see also id.* ¶1.30.

20   **PG 10 (CAFA Notice):**  Google will provide notice of the Settlement to the appropriate

21   state and federal officials as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C.

22   §1715(b). SA ¶4.11.  The cost of CAFA notice will not come out of the Settlement Fund.

23   **III.    ARGUMENT**

24   The purpose of a preliminary approval motion is for the Court to ascertain whether to notify

25   the putative class members of the proposed settlement and to proceed with a fairness hearing.  *See*

26   *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Under the Federal

27   Rules, when the Court is presented with a proposed settlement, it must first determine whether the

28   proposed settlement class satisfies the requirements for class certification under Rule 23.  *Amchem*

7

*Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998).

Once a settlement class is certified, approval of a settlement under Rule 23 involves a two-step process: "First, the Court decides whether the class action settlement deserves preliminary approval.  Second, after notice is given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).  Preliminary approval should be granted and notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* at *4 (citation modified); *see also Elder v. Hilton Worldwide Holdings, Inc.*, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (court must preliminarily find "that it will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)") (citation modified).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027.  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *Carlotti v. ASUS Comput. Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019).

### A.    Conditional Certification of the Settlement Class Is Appropriate

The Court previously certified the litigation Purchaser Class, finding that the Rule 23(a) and Rule 23(b)(3) requirements are satisfied.  *See* ECF No. 414.  The Court likewise should conditionally certify the Purchaser Settlement Class for settlement purposes, as the only difference is that the Class Period extends past the date of the Court's class certification order to the date of preliminary approval.

Plaintiffs also seek to conditionally certify the proposed Privacy Settlement Class.  While the court denied certification of privacy and SCA classes earlier in the litigation, this does not affect its ability to certify the Privacy Settlement Class for settlement purposes now.  *See In re*

*Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). ("The criteria for class certification are applied differently in litigation classes and settlement classes."); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *10 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ("[T]his Court's analysis in its order denying without prejudice IPPs' first attempt to certify a nationwide litigation class does not foreclose certification of a nationwide *settlement* class.").  This is especially true because the Court's prior ruling was based on factual issues pertaining to Plaintiffs' class membership (*see* ECF No. 414 at 9-10), which are no longer at issue in the Privacy Settlement Class.  Plaintiffs previously sought to certify a privacy class of "All *Opted-In* Users of *Google Home Devices* who have a recording resulting from a False Accept[.]" *Id*. at 5 (emphasis added).  Membership in the Privacy Settlement Class, however, does not turn on whether a User as "opted-in" to a particular setting.  *Id*. at 9.  The Privacy Settlement Class also is not limited to Google Home Devices, which the Court held excluded Plaintiffs Kumandan and Lourdes Galvan as members of the proposed privacy class.  *Id*.  Accordingly, all Plaintiffs are Users (or Household members of Users) of Google Assistant Enabled Devices who experienced a False Accept and recording of their private communications (*see* ECF No. 141 ¶¶18-44), and thus, are members of the proposed Privacy Settlement Class.  Therefore, as explained below, all applicable Rule 23 requirements are met, and provisional certification should be granted. *See, e.g.*, *In re Lithium Ion Batteries*, 2020 WL 7264559, at *3, 9-12 (certifying settlement class that was previously denied class certification in the litigation).

### 1.    The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019.  Numerosity can be presumed with 40 members.  *Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) (same).  Here, the proposed Settlement Classes include millions of Google Assistant Users, which supports a finding of numerosity.  Joint Decl. ¶55; ECF No. 414 at 14.

### 2.    Common Questions of Law and Fact Exist

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23

(a)(2); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (commonality is present when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."). Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Foster*, 2019 WL 4305538, at *3 (citation modified).

Plaintiffs' claims relate to Google's alleged recording of individuals' private communications using Google Assistant and Google Assistant Enabled Devices without their consent. These common questions include, among others: (a) whether Google Assistant Enabled Devices intercept and record individuals' confidential conversations using Google Assistant absent the utterance of a Hot Word (e.g., "Hey Google"); (b) whether this practice violated state and federal privacy laws and the promises Plaintiffs allege Google made in its privacy policies and terms of service; and (c) whether Plaintiffs and Class Members sustained damages as a result of Google's conduct, and, if so, what is the appropriate measure of damages or restitution. *See In re Google Referrer Header Priv. Litig.*, 2023 WL 6812545, at *4 (N.D. Cal. Oct. 16, 2023) (finding commonality met where the "existence of [the alleged privacy] injury for each Settlement Class member could be determined by resolving one question: whether Google's system-wide practice and policy of storage and disclosure of their search query information was unlawful"); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 371 (N.D. Cal. 2021) (finding common questions related to SCA claim, including "whether [defendant] invaded Plaintiffs' and the Class Members' reasonable expectations of privacy . . . and whether [defendant] obtained Plaintiffs' and the Class Members' consent to obtain, store, and use their banking credentials and private financial information"); ECF No. 414 at 14-15, 32 (finding commonality for the Purchaser Class's claims). This is more than sufficient to establish commonality for purposes of provisional certification.

### 3.    Plaintiffs' Claims Are Typical

Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23 (a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and

. . . other class members have been injured by the same course of conduct." *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (citation modified); *see Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) (plaintiffs need only demonstrate that they "endured a course of conduct directed against the class").  Here, the claims against Google "all arise from the same nucleus of facts," *Barrett v. Apple Inc.*, 2024 WL 5339480, at *3 (N.D. Cal. Dec. 19, 2024); that is, Google's alleged recording of individuals' confidential communications without their consent as a result of a False Accept.  *See In re Google Referrer Header Priv. Litig.*, 2023 WL 6812545, at *4 (finding typicality met where all class members' privacy claims were essentially identical); ECF No. 414 at 15-18 (finding Plaintiff Kumandan typical).  Thus, Plaintiffs' claims are typical.

### 4.      Plaintiffs and Their Counsel Have Adequately Represented the Settlement Classes

Plaintiffs also will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This determination turns on two questions: "whether any conflicts of interest exist between the named plaintiffs and the class members" and "whether the named Plaintiffs' counsel will adequately protect the interests of the class."  *Kanawi*, 254 F.R.D. at 110.

Both components of the "adequacy" test are met here.  Plaintiffs have actively pursued this litigation on behalf of members of the Settlement Classes for more than five years.  Joint Decl. ¶45.  Both Plaintiffs and members of the Settlement Classes were harmed by Google's alleged misconduct; they also share an identical interest in establishing Google's liability and obtaining an adequate remedy for Google's violations of law.  Plaintiffs have no conflicts or positions antagonistic to the Settlement Classes and have actively participated in the Action.  Joint Decl. ¶61.  Further, proposed Class Counsel Christian Levis and Erin Green Comite and the other Plaintiffs' Counsel are "qualified, experienced, and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009), *aff'd*, 687 F.3d 1162 (9th Cir. 2012) (citation modified); *see* Joint Decl. ¶¶46-52, Exs. 3-6 (explaining qualifications).  Accordingly, Plaintiff Kumandan, whom the Court appointed as the class representative for the certified litigation Purchaser Class (ECF No. 414 at 11, 31), should likewise be appointed as Class Representative for the Purchaser Settlement Class.  Each Plaintiff should be

11

1    appointed as Class Representative for the Privacy Settlement Class as each used a Google Assistant

2    Enabled Device and experienced a False Accept and recording of their private communications.

3    ECF No. 141 ¶¶18-44.

4    ### 5.    Common Questions Predominate

5    A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to

6    the members of the class predominate over any questions affecting only individual members[.]"

7    Fed. R. Civ. P. 23(b)(3).   Predominance demands that the proposed classes are sufficiently

8    cohesive to warrant adjudication by representation.  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d

9    1125, 1134 (9th Cir. 2016). It does not require proof that "each element" of the claims is

10   "susceptible to class-wide proof, so long as one or more common questions predominate." *James*

11   *v. Uber Techs. Inc.*, 338 F.R.D. 123, 135 (N.D. Cal. 2021) (citation modified).  As the Supreme

12   Court recognized, "[w]hen one or more of the central issues in the action are common to the class

13   and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even

14   though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*,

15   577 U.S. 442, 453-54 (2016) (citation modified).   In the settlement context, "[t]he focus is on

16   whether a proposed class has sufficient unity so that absent members can fairly be bound by

17   decisions of class representatives." *In re Hyundai*, 926 F.3d at 558 (citation modified).   The

18   Privacy Settlement Class is cohesive: all members are Users of Google Assistant Enabled Devices

19   or their Household members, and their claims turn on the extent, usage, and impact of Google's

20   alleged unauthorized recording as a result of a False Accept. *See, e.g.*, *S.C. v. Buddi US LLC*, 2024

21   WL 1459808, at *4 (C.D. Cal. Apr. 1, 2024) (finding predominance met because "whether

22   [defendant] misappropriated, used, and disclosed class members' personal information without

23   consent . . . and whether [defendant] violated the CIPA, ECPA, and SCA—predominate over any

24   individual issues"); ECF No. 414 at 20-28 (finding predominance satisfied for Purchaser Class's

25   claims).  Thus, common questions predominate for settlement purposes.

26   ### 6.    Superiority Requirement Is Satisfied

27   "[T]he purpose of the superiority requirement is to assure that the class action is the most

28   efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am.*

*LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation modified).  Rule 23(b)(3)'s non-exclusive factors consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  All of the superiority factors considered under Fed. R. Civ. P. 23(b)(3) weigh in favor of certifying the Settlement Classes.  Managing these disputes in a single class action before a single judge is preferable and more manageable than millions of users bringing individual actions.  The filing fees in such individual actions alone would likely exceed the value of any potential recovery, leaving no incentive for an individual to seek relief and, consequently, no adequate remedy achievable by members of the Settlement Classes.  *See, e.g.*, *Cottle*, 340 F.R.D. 356, 372; *Buddi*, US LLC, 2024 WL 1459808, at *5.

Accordingly, all requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Settlement Classes are appropriate for certification in a settlement context.  Indeed, the settlement class was provisionally certified, and preliminary approval was granted, in a highly analogous case involving Apple's Siri voice assistant.  *See Lopez v. Apple, Inc.*, No. 4:19-cv-04577, ECF No. 341 (N.D. Cal. Feb. 10, 2025); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019) (conditionally certifying class for settlement of consumer privacy claims); *Cottle*, 340 F.R.D. at 363 (certifying settlement class in case involving interception of plaintiffs' financial information).

### 7.    Mr. Levis & Ms. Comite Should Be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1), (4).  In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Proposed Class Counsel for the Settlement Classes have extensive experience in prosecuting consumer privacy cases and other

13

1  complex consumer class actions.  *See* Joint Decl. ¶¶46-49 and Exs. 3-4.  As a result of their zealous

2  efforts and the efforts of the other Plaintiffs' Counsel, a substantial monetary recovery has been

3  secured for members of the Settlement Classes.  Accordingly, the Court should appoint Mr. Levis

4  and Ms. Comite as Class Counsel.

### B.    The Proposed Settlement Is Fair, Reasonable, and Adequate

#### 1.    The Ninth Circuit's Factors Support Approval of the Settlement

##### i.    *Hanlon* Factors

8  "To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the

9  Court to determine whether the proposed settlement is fair, reasonable, and adequate."  *Urakhchin*

10  *v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *3 (C.D. Cal. Feb. 6, 2018).  When

11  making this determination, the Ninth Circuit has instructed district courts to balance several

12  factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely

13  duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;"

14  (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the

15  proceedings"; and (6) "the experience and views of counsel."  *Hanlon*, 150 F.3d at 1026.

#### (a)    Strength of the Case; Risk, Expense, and Complexity of Further Litigation; and Maintaining Class Certification Through Trial

18  Plaintiffs have always believed in the strength of their case and that Google would be held

19  liable on the merits if the case proceeded to trial, which was set for September 2025.  *See* ECF No.

20  396 at 12.  Proving liability and damages remained Plaintiffs' burden, and there was no certainty

21  that Plaintiffs would prevail.  And Google equally believed in the strength of its defenses.  Indeed,

22  Google moved for summary judgment, arguing that Plaintiff Kumandan and the Purchaser Class

23  could not prove most of the elements of his purchaser class claims.  ECF Nos. 496, 514.  For

24  example, Google argued that there were no actionable promises, no breach of any promises, and

25  that Plaintiffs failed to provide viable damages methodologies.  *Id.*  Moreover, the Court denied

26  certification of Plaintiffs' proposed privacy and SCA classes earlier in the litigation, thereby

27  reducing the size of the class certified during the litigation, the claims that could be pursued on a

28  classwide basis at trial, and the recovery available to class members if Plaintiff Kumandan

1   prevailed.  And, data privacy law is developing, posing inherent risks that a new decision could

2   shift the legal landscape as to liability and damages.  *See, e.g.*, *Dexter's LLC v. Gruma Corp.*, 2023

3   WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval

4   of settlement given "the evolving legal landscape" of the law at issue in the case).  By reaching

5   this settlement, Plaintiffs avoid significant risk, expense, and delay related to trial and appeal and

6   assure recovery for the Settlement Classes, including members who were not included in the

7   certified Purchaser Class.  The risk that Plaintiffs faced heading into the hearing on Google's

8   summary judgment motion and trial supports approval of the Settlement.

9                              **(b)     Settlement Amount**

10          The amount provided by the Settlement also supports approval.  The determination of "the

11  fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of

12  applying a particular formula."  *Knapp v. Art.com*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017)

13  (citation modified).  In assessing the consideration available to members of the Settlement Classes

14  in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual

15  component parts, that must be examined for overall fairness."  *Nat'l Rural Telecomms. Coop. v.*

16  *DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  "[I]t is well-settled law that a proposed

17  settlement may be acceptable even though it amounts to only a fraction of the potential recovery

18  that might be available to the class members at trial."  *Id.*

19          As explained above, the Parties strenuously disagree about the class size.  Class Counsel

20  estimate that at most 120 million Google-Made Devices were purchased during the Settlement

21  Class Period.  Joint Decl. ¶53.   Plaintiff Kumandan proposed two classwide damages models

22  based on price premium and nominal damages (i.e., $1.00) for the Purchaser Class's remaining

23  claims.  *See* ECF No. 505 at 16-17, 21.  Class Counsel contends that research supports applying a

24  price premium of $3.74 per Google-Made Device. *See* Govaparam *et al*., "IoT Marketplace:

25  Willingness to Pay Versus Willingness to Accept," PROCEEDINGS OF THE 20TH ANNUAL

26  WORKSHOP ON THE ECONS. OF INFO. SEC. (June 2021) at 16 (finding consumers' willing to pay

27

28

                                              15

$3.74 on average for improved privacy protections on internet-enabled devices).[3]  Thus, Class Counsel contends that if the Purchaser Class were to succeed at trial, the estimated recoverable damages would range from $120,000,000 (i.e., $1.00 per Google-Made Device) to $448,800,000 (i.e., $3.74 per Google-Made Device) on these remaining claims.  Joint Decl. ¶53.[4]  Further, given the privacy-related classes were not certified, absent a successful appeal followed by a successful trial, no recovery of damages on these claims would be expected.  Therefore, based on Class Counsel's estimate, which is contested by Google, the Settlement Fund represents between 56.67% and 15.15% of the estimated recoverable damages, which is an excellent result.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (concluding that ten percent of the class's estimated damages was a fair and reasonable settlement award); *Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the risks of continued litigation).

The recovery resulting from the Settlement, i.e., between $18 – $56 (assuming they own one device) per Purchaser Class Member, and between $2 – $10 for Privacy Class Members (*see* §II.D, *supra*) is a comparable recovery to other actions involving similar claims.  *See* Joint Decl., Ex. 2; *In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024) (district court did not abuse its discretion in determining that $90 million settlement in data privacy case on behalf of approximately 100 million individuals was fair and reasonable where class counsel estimated maximum recoverable damages were $900 million).  This *Hanlon* factor supports preliminary approval of the Settlement.

**(c)    Extent of Discovery, Stage of Proceedings, and**

---

[3]        Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3867652.

[4]        As it did during the litigation, Google vehemently disputes Class Counsel's estimate of recoverable damages and the assumptions on which it is based, including Class Counsel's estimate of the number of devices sold and the amounts that Class Counsel claim the Purchaser Class could recover for each purchased Google-Made Device if they succeeded at trial (which Google contends they would not).

**Plaintiffs' Counsel's Experience**

In approving a settlement, courts also consider whether class counsel had sufficient information to make an "informed decision" about the merits of the case and counsel's views on the settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Miramontes v. U.S. Healthworks, Inc.*, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017). Discovery in this Action has been extensive, involving significant document production, data sampling, depositions, and motion practice over years, and the Action was litigated all the way through summary judgment briefing.  *See* Joint Decl. ¶¶20-35.  In short, Plaintiffs and Plaintiffs' Counsel were fully informed about the relevant facts and circumstances when negotiating and entering the proposed Settlement.  This information gathered during Plaintiffs' Counsel's investigation and litigation of this matter combined with their extensive experience in prosecuting and litigating consumer class action cases support Plaintiffs' Counsel's view that the Settlement is fair, reasonable, and adequate.  *Id*. ¶¶46-52 and Exs. 3-6.  These final *Hanlon* factors also support preliminary approval of the Settlement.

### ii.    *Roes* Factors

For settlements reached prior to class certification, a district court will also "look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations."  *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *6 (N.D. Cal. May 25, 2023).  This includes: "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (citation modified).  This Settlement does not implicate *Roes* concerns, which primarily apply to claims made or reversionary settlements.  First, Plaintiffs' Counsel will not receive a disproportionate distribution from the Settlement because they will seek up to one-third of the Settlement Fund (Joint Decl. ¶60), which is within the range of reasonable fee requests.  *See* §III.B.2.b.ii, *infra*.  Second, while clear sailing provisions on their own do not support any inference of collusion, no such term exists here, and so, it is not an issue.  And, finally,

17

the Settlement explicitly provides that there will be no reversion of the Settlement Fund absent termination of the Settlement.  SA ¶¶2.2, 2.8.  The *Roes* factors thus support preliminary approval of the Settlement.

### 2. The Rule 23(e)(2) Factors Have Been Satisfied

Courts must also consider the four enumerated factors in Rule 23(e)(2) in approving a settlement, including any agreement required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2); *accord Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *2-3 (E.D. Cal. Mar. 10, 2021). There is a significant overlap between the Ninth Circuit's factors and the Rule 23(e)(2) factors, and each supports approval of the Settlement.

### i. The Settlement is Procedurally Fair

The Settlement is procedurally fair under Rule 23(e)(2)(A) and (B), which require the Court to consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B).  As discussed above, Plaintiffs' interests here are aligned with the Settlement Classes' interests because they allege that they suffered the same injuries when Google allegedly recorded individuals' confidential communications using Google Assistant and Google Assistant Enabled Devices without their consent and used and disclosed their communications to third parties.  *See* §III.A.3, *supra*.  Because Plaintiffs and the Settlement Classes suffered these alleged injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims of the Settlement Classes.  *Id.*; *see also* §III.A.4, *supra*.  Further, Plaintiffs' attorneys have extensive experience and have more than adequately met the obligations and responsibilities of Class Counsel, vigorously litigating the Action for nearly six years.  Joint Decl. ¶¶12-35, 46-52 and Exs. 3-6.  The Settlement also is the result of extensive negotiations, before multiple mediators, and most recently, Magistrate Judge Westmore.  *Id.* ¶¶36-39.  Under such circumstances, the proposed Settlement is entitled to a finding of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments.  *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

1

### ii.    The Settlement Is Substantively Fair

2     The relief itself is also substantively adequate under Rule 23(e)(2)(C), which requires the

3     Court to assess whether the:

4         relief provided for the class is adequate, taking into account: (i) the costs, risks, and
          delay of trial and appeal; (ii) the effectiveness of any proposed method of
5         distributing relief to the class, including the method of processing class-member
          claims; (iii) the terms of any proposed award of attorney's fees, including timing of
6         payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

7     Fed. R. Civ. P. 23(e)(2)(C).

8     Rule 23(e)(2)(C)(i) overlaps with the *Hanlon* factors discussed above.  *See* §III.B.1.i,

9     *supra*.  As to Rule 23(e)(2)(C)(iv), there are no agreements that need to be disclosed under Rule

10    23(e)(3), and so, this factor is not at issue.  Joint Decl. ¶57.

11    Regarding "the effectiveness of any proposed method of distributing relief to the class"

12    under Rule 23(e)(2)(C)(ii), "[a] claims processing method should deter or defeat unjustified

13    claims, but the court should be alert to whether the claims process is unduly demanding." *Alvarez*

14    *v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citation modified).

15    Here, Settling Class Members are required to provide basic contact information as well as

16    applicable device model type and serial numbers, which are readily available in their Google

17    accounts, and proof of purchase, and to attest to several requirements of class membership.  SA,

18    Ex. D.  The Settling Class Member may log on to the Settlement Website, either with or without

19    a unique claim identification number provided in the Email Notice, and submit a Claim, or may

20    print the Claim Form from the Settlement Website and mail the completed Claim Form to the

21    Settlement Administrator.  Parks Decl. ¶¶13, 40.  Authorized Claimants can elect to receive their

22    award automatically via electronic payment platform or check.  SA, Ex. D; *see also* Parks Decl.

23    ¶48.  The Court should thus find that this process is not unduly demanding and that the proposed

24    method of distributing relief to the Class is effective.  *Shay v. Apple, Inc*., 2024 WL 1184693, at

25    *9 (S.D. Cal. Mar. 19, 2024) (granting final approval and overruling objection to the requirement

26    that class members submit proof of purchase with their claim, stating that "courts have generally

27    upheld proof of purchase requirements in such class action settlements, as these requirements

28    ensure that payment is properly made to individuals belonging to the settlement class" and noted

19

1    that the proof of purchase requirement had prevented many fraudulent claims) (citation modified).

2    Regarding the Rule 23(e)(2)(C)(iii) factor, Plaintiffs' Counsel will apply for attorneys' fees

3    not to exceed one-third of the Settlement Fund.  Joint Decl. ¶60.  As Class Counsel will address in

4    their separate fee application to the Court, the following considerations support the reasonableness

5    of the requested attorneys' fees under Ninth Circuit law.  *See Vizcaino v. Microsoft Corp.*, 290

6    F.3d 1043, 1048-50 (9th Cir. 2002).  Plaintiffs' Counsel have secured a $68 million cash

7    settlement, amounting to approximately between 15.15% and more than 50% of estimated

8    recoverable damages, which is an excellent result.  Plaintiffs have also shown that there are

9    significant risks in entering protracted litigation, especially in light of the arguments Google raised

10   in its motion for summary judgment attacking each element of Plaintiff Kumandan's and the

11   Purchaser Class's claims.  *See* §III.B.1.i, *supra*; *see also* ECF Nos. 496, 514.  The requested fee is

12   consistent with market rates as reflected by awards made in similar cases.  *See*, *e.g.*, *Grey Fox,*

13   *LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) (awarding

14   33% of the $70 million settlement as attorneys' fees); *In re ZF-TRW Airbag Control Units Prods.*

15   *Liab. Litig.*, 2023 WL 9227002, at *5 (C.D. Cal. Nov. 28, 2023) (awarding 33% of the $78.5

16   million total settlement amount as attorney fees); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F.

17   Supp. 3d 904, 942 (N.D. Ill. 2022), *appeal dismissed*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)

18   (awarding 33% of the $92 million settlement fund as attorneys' fees noting "[t]he need to provide

19   financial incentives for zealous and effective representation of consumers in legally and

20   technologically complex data privacy cases such as this—especially in the age of pervasive social

21   media—weighs in favor of granting the request").  Finally, the requested fee is fair given the

22   significant time and resources Plaintiffs' Counsel devoted to this case on a contingency fee basis,

23   with the threat of no recovery at all, absent successful resolution.  This further supports approval.

24   Finally, under Rule 23(e)(2)(D), the Court must consider "whether 'the proposal treats

25   class members equitably relative to each other.'"  *Perks v. Activehours, Inc.*, 2021 WL 1146038,

26   at *6 (N.D. Cal. Mar. 25, 2021) (citing Fed. R. Civ. P. 23(e)(2)(D)).  "Matters of concern could

27   include whether the apportionment of relief among class members takes appropriate account of

28   differences among their claims[.]" Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes;

1   *see also* 4 William B. Rubenstein, Newberg on Class Actions §13:56 (5th ed. 2020) ("Put simply,

2   the court's goal is to ensure that similarly situated class members are treated similarly and that

3   dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

4           The Settlement Classes' claims are valued relative to their strength in the litigation.  The

5   breach of contract and UCL unlawful prong claims of the certified litigation class of purchasers,

6   which is substantially the same as to the Purchaser Settlement Class, were the only ones allowed

7   to proceed on a classwide basis.  *See generally* ECF No. 414.  The remaining privacy-related class

8   claims, settled on behalf of the Privacy Settlement Class, were not allowed to proceed on a

9   classwide basis.  *Id*.  Under the terms of the proposed Plan of Allocation, Claimants will be

10  assigned points based on whether the individual is a member of the Purchaser Settlement Class

11  (four points per Google Made Device purchased capped at three Google Made Devices for a

12  maximum of 12 points), the Privacy Settlement Class (one point per claim), or both Settlement

13  Classes (for a maximum of 13 points).  SA, Ex. E ¶¶7(a)(i)-(iii).  The Claims Administrator will

14  divide the Net Settlement Fund by the Total Aggregate Claim Value to establish the per point value

15  and multiply the resultant per point value by the Total Claim Value for each Authorized Claimant

16  to determine their award.  *Id*. ¶¶7(b)-(c).  Courts have found that allocating settlement benefits

17  among class members in this manner is equitable.  *See In re Lithium Ion Batteries*, 2020 WL

18  7264559, at *16 (finding it "appropriate for class members from non-repealer states to receive a

19  limited recovery because, although their claims were relatively weak compared to repealer state

20  class members, they were still active litigants in the case, and their claims were not finally

21  foreclosed"); *In re Xyrem (Sodium Oxybate) Antitrust Litig*., 2025 WL 3004046, at *4 (N.D. Cal.

22  Oct. 27, 2025) (finding that class members were treated equitably where distribution "will be made

23  on a *pro rata* basis according to the weighted value of the class member's claim with Xywav

24  purchases and purchases made in non-repealer states weighing substantially less than Xyrem

25  purchases in repealer states"); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10 (C.D. Cal.

26  June 9, 2008) (approving distinctions in plan of allocation as reasonably reflecting likelihood of

27  recovery of subgroups within the class); *In re Oracle Sec. Litig*., 1994 WL 502054, at *2 (N.D.

28  Cal. June 18, 1994) (approving plan "reasonably calculated to allow class members with more

21

meritorious claims to recover a correspondingly larger portion of the settlement" based upon class counsel's appraisal of relative merits of subgroups).  While the Plan of Allocation treats the two Settlement Classes differently, it does so on reasonable and equitable grounds, and so, this factor also supports preliminary approval.  *See also* §III.C, *infra*.

In addition, the Service Awards requested for Plaintiffs are presumptively reasonable and therefore do "not constitute inequitable treatment of class members."  *See Lopez v. Apple, Inc*., No. 4:19-cv-04577, ECF No. 429 ¶8 (N.D. Cal. Feb. 10, 2025) (granting request for $10,000 each class representative in substantially similar case); *Katz-Lacabe v. Oracle Am., Inc*., 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (finding the requested service awards of $10,000 each to class representatives is reasonable); *Granados v. Hyatt Corp*., 2024 WL 3941828, at *10 (S.D. Cal. Aug. 26, 2024) (finding the requested $10,000 as service awards reasonable and noting "[s]ervice awards of $7,500 or larger are often awarded in this Circuit") (citing *Gutierrez v. Amplify Energy Corp*., 2023 WL 6370233, at *8 (C.D. Cal. Sept. 14, 2023)).  Finally, any undistributed funds will go as a *cy pres* distribution.  SA ¶4.20.  Thus, this factor weighs in favor of granting approval.

### C.    The Proposed Plan of Allocation Should Be Approved as Fair, Reasonable, and Adequate

"Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation modified).  Allocation of the settlement funds based on the extent of class members' injuries or the strength of their claims on the merits represents a fair, reasonable, and adequate allocation.  *Id.*; *see also Oracle*, 1994 WL 502054, at *1 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Here, the Court previously certified a class of purchasers to pursue breach of contract and UCL unlawful prong claims.  ECF No. 414 at 31.  The privacy-related claims were not certified during litigation, and thus, would not have proceeded to trial on a classwide basis.  Given the difference in relative strength of the Settlement Classes' respective claims, Class Counsel valued the Privacy Settlement Class's claims less than the Purchaser Settlement Class's claims for

22

1    settlement purposes, given the nominal value of the Privacy Settlement Class's rights to seek

2    appellate review of the Court's denial of class certification on the privacy-related claims.  Joint

3    Decl. ¶54.  The relative value is also consistent with the approximately $4.00 per Google-Made

4    Device purchased available to the Purchaser Settlement Class had their claims succeeded at trial

5    (*id*. ¶53) compared to the nominal value of the Privacy Settlement Class members' claims.  The

6    Court should find this Plan of Allocation based on the relative merits of the claims to be fair,

7    reasonable, and adequate.  *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the

8    settlement funds to class members based on the extent of their injuries or the strength of their

9    claims on the merits."); *Lithium Ion Batteries*, 2020 WL 7264559, at *3, 7, 10, 18 (certifying

10   settlement class (that previously was denied certification during the litigation) and approved plan

11   of allocation based on relative strengths and risks of the claims); *see also Alfred v. Pepperidge*

12   *Farm, Inc*., 2019 WL 13240300, at *14 (C.D. Cal. Oct. 10, 2019) (granting preliminary approval

13   where one class's claim was certified and thus valued higher in the plan of allocation than another

14   class's claim that was not certified and at substantial risk of receiving nothing in the litigation and

15   thus valued lower in the plan of allocation); *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6111379,

16   at *2 (N.D. Cal. May 3, 2019) (granting preliminary approval and approving plan of allocation

17   that allocated settlement funds based on the strength of claims and documentation provided with

18   the claim form); *see also id*., ECF No. 194-1 ¶¶27-32.

19          **D.      The Proposed Notice Program Should Be Approved**

20          Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide

21   "the best notice that is practicable under the circumstances."  *Evans v. Linden Rsch., Inc.*, 2013

22   WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013) (citation modified).  Utilizing contact information

23   in Google's possession, the Claims Administrator will disseminate Email Notice directly to

24   potential members of the Settlement Classes.  SA ¶¶4.4, 4.5(a); Parks Decl. ¶12.  The Email Notice

25   will include text describing the key terms of the settlements, including the procedures and

26   deadlines for objecting to and opting out of the Settlement, and will provide a link to the Settlement

27   Website.  SA, Ex. A; Parks Decl. ¶13.  The Settlement Website will be published prior to or

28   contemporaneously with dissemination of Notice and will host additional documents and

1    information, such as the long form Notice (SA, Ex. C), Settlement Agreement, Preliminary

2    Approval Order, Plaintiffs' motion for attorneys' fees and expenses, and any updates relating to

3    the Final Approval Hearing or deadlines in the case. SA ¶4.5(c); Parks Decl. ¶32. Targeted digital

4    media advertising also will be used to extend the reach of Notice to the Settlement Classes. SA

5    ¶4.5(e); Parks Decl. ¶¶18-31. A Reminder Notice will be sent by the Claims Administrator no

6    later than 7 days before the Claims Deadline to each email address on the Direct Notice List from

7    which a claim has not been received. SA ¶4.5(b), Ex. B; Parks Decl. ¶16. Several courts have

8    approved similar notice plans, recognizing that email is the most reliable means of notification for

9    settlement class members where, as here, they were required to provide a valid email address when

10   registering to use a Google Assistant Enabled Device. *See In re Classmates.com Consol. Litig.*,

11   2010 WL 11684544, at *3 (W.D. Wash. Apr. 19, 2010) (granting preliminary approval and finding

12   email notice "an excellent option here" where "every class member provided an e-mail address to

13   [the defendant] in the process of registering as a user"); *Opperman v. Kong Techs., Inc.*, 2017 WL

14   11676126, at *5 (N.D. Cal. July 6, 2017) (approving the notice plan which will provide "email

15   notice to every user who downloaded and registered for the app during the relevant time period");

16   *Shahar v. Hotwire, Inc.*, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing the

17   "direct e-mail notice" plan was "the best notice practicable under the circumstances"); *Stewart v.

18   Apple Inc.*, 2022 WL 3013122, at *5 (N.D. Cal. Feb. 17, 2022) (same). *See also Cottle*, 340 F.R.D.

19   at 367 (approving similar notice plan with direct email notice plus social media and digital

20   advertising); *In re VNGR Bev., LLC Litig.*, 2025 WL 1489714, at *8 (N.D. Cal. May 23, 2025)

21   (same); *Carlotti*, 2019 WL 6134910, at *3 (same).

22       **E.    The Court Should Approve the Appointment of A.B. Data as Claims**
            **Administrator**

23

24       A.B. Data, which this Court previously appointed as the Notice Administrator after the

25   Purchaser Class was certified (ECF No. 423), is a settlement administrator with over 23 years of

     experience administering class action settlements and has successfully administered hundreds of

26   complex class action settlements in an efficient and effective manner. Parks Decl. ¶3. A.B. Data

27   estimates that notice and administration costs will be approximately $1,700,000, which is 2.5% of

28   the Settlement Amount. *Id.* ¶57. This is amount is reasonable. *See, e.g.*, *Dennis v. Kellogg Co.*,

                                              24

2013 WL 6055326 at *8 (S.D. Cal. Nov. 14, 2013) (granting final approval where notice and settlement administration costs were 22.72% of the settlement fund, explaining "amounts are within that contemplated by the settlement, have been endorsed by experienced counsel and claims administration consultants involved in this case, and are thus presumed reasonable").  A.B. Data has provided notice and administration services in more than 54 class actions in the Northern District of California.  *Id.* ¶4.  A.B. Data also has robust procedures for keeping class member data strictly confidential and secure and sufficient insurance coverage.  *Id.* ¶¶53-56.  The full slate of its capabilities is further discussed in the accompanying declaration.  *See id.* ¶¶3-5, 35-41, 49-52 and Exs. A, B, C.

## IV.    CONCLUSION

Plaintiffs respectfully submit that the Court should grant Plaintiffs' Motion and enter the proposed Order provisionally certifying the proposed Settlement Class, appointing Mr. Levis and Ms. Comite as Class Counsel, preliminarily approving the Settlement, preliminarily approving the proposed plan of allocation, approving the proposed form and manner of notice to the Settlement Classes, approving the proposed selection of the Claims Administrator and Escrow Agent, and setting a date for the Final Approval Hearing.

Dated:  January 23, 2026                                    Respectfully submitted:


                                                           */s/ Erin Green Comite*
                                                           Erin Green Comite (*pro hac vice*)
                                                           Joseph P. Guglielmo (*pro hac vice*)
                                                           **SCOTT+SCOTT**
                                                           **ATTORNEYS AT LAW LLP**
                                                           The Helmsley Building
                                                           230 Park Avenue, 24th Floor
                                                           New York, NY 10169-1820
                                                           Telephone: 212-223-6444
                                                           Facsimile:  212-223-6334
                                                           ecomite@scott-scott.com
                                                           jguglielmo@scott-scott.com

                                                           Vincent Briganti (*pro hac vice*)
                                                           Christian Levis (*pro hac vice*)
                                                           Margaret MacLean (*pro hac vice*)

1    Andrea Farah (*pro hac vice*)
2    **LOWEY DANNENBERG, P.C.**
     44 South Broadway, Suite 1100
3    White Plains, NY 10601
     Telephone: 914-997-0500
4    Facsimile:  914-997-0035
     vbriganti@lowey.com
5    clevis@lowey.com
     mmaclean@lowey.com
6    afarah@lowey.com

7    Mark N. Todzo (Bar No. 168389)
8    Patrick Carey (Bar No. 308623)
     **LEXINGTON LAW GROUP**
9    503 Divisadero Street
     San Francisco, CA 94117
10   Telephone: 415-913-7800
     Facsimile:  415-759-4112
11   mtodzo@lexlawgroup.com

12
     *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026 the foregoing document entitled PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

  /s/ *Erin Green Comite*
Erin Green Comite