| | |
|---|---|
| Vincent Briganti (*pro hac vice*) | Erin Green Comite (*pro hac vice*) |
| Christian Levis (*pro hac vice*) | Joseph P. Guglielmo (*pro hac vice*) |
| Margaret MacLean (*pro hac vice*) | **SCOTT+SCOTT** |
| Andrea Farah (*pro hac vice*) | **ATTORNEYS AT LAW LLP** |
| **LOWEY DANNENBERG, P.C.** | The Helmsley Building |
| 44 South Broadway, Suite 1100 | 230 Park Avenue, 24th Floor |
| White Plains, NY 10601 | New York, NY 10169-1820 |
| Telephone: 914-997-0500 | Telephone: 212-223-6444 |
| Facsimile: 914-997-0035 | Facsimile: 212-223-6334 |
| vbriganti@lowey.com | ecomite@scott-scott.com |
| clevis@lowey.com | jguglielmo@scott-scott.com |
| mmaclean@lowey.com | |
| afarah@lowey.com | |

*Additional Counsel for Plaintiffs on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 5:19-cv-04286-BLF<br><br>**JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>COMPLAINT FILED: July 25, 2019<br>Date: March 19, 2026<br>Time: 9:00 A.M. PT<br>Dept.: Courtroom 1-5th Floor<br>Judge: Honorable Beth Labson Freeman |

1

We, Christian Levis and Erin Green Comite, declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I, Christian Levis, am a partner at the law firm of Lowey Dannenberg, P.C. ("Lowey"). I am admitted *pro hac vice* to this Court to represent Plaintiffs Asif Kumandan; Melissa Spurr individually and as guardian of B.S., a minor; Lourdes Galvan; and Eleeanna Galvan (collectively "Plaintiffs"), in the above-captioned matter (the "Action").

2. I, Erin Green Comite, am a partner at the law firm of Scott+Scott Attorneys at Law LLP ("Scott+Scott"). I am admitted *pro hac vice* to this Court to represent Plaintiffs in the Action.

3. We respectfully submit this Joint Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). We have been actively involved in this case since before the Action was originally filed on July 25, 2019, and are familiar with the proceedings, and have personal knowledge of the matters stated herein.

4. Attached as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release ("Settlement Agreement" or "SA") entered into by the Parties to this Action. Attached to the Settlement Agreement are the Email Notice (**Exhibit A**), Reminder Notice (**Exhibit B**), proposed long form Notice (**Exhibit C**), Claim Form (**Exhibit D**), proposed Plan of Allocation (**Exhibit E**), and proposed Preliminary Approval Order (**Exhibit F**).

5. Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement, and all ECF citations are to the docket in this Action.

6. Attached as **Exhibit 2** is a true and correct copy of a chart detailing the settlements in comparable cases pursuant to Northern District of California's Procedural Guidelines for Class Action Settlements, Procedural Guideline 11.

7. Attached as **Exhibit 3** is Lowey's firm resume.

8. Attached as **Exhibit 4** is Scott+Scott's firm resume.

9. Attached as **Exhibit 5** is the firm resume of Lexington Law Group.

10. Attached as **Exhibit 6** is the firm resume of Wood Law Firm LLC.

1

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:19-CV-04286

## I. FACTUAL BACKGROUND

### A. Pleadings

11. Google Assistant is a virtual voice assistant that comes pre-installed on a range of devices, referred to as "Google Assistant Enabled Devices" that includes mobile phones, in-home smart speakers, and smart displays. *See* ECF No. 141, Fourth Amended Consolidated Class Action Complaint ("4AC") at ¶3.

12. Google Assistant is designed to respond to voice commands, which typically include requests for information (such as driving directions) or to complete simple tasks like playing music or setting up reminders. *Id.* ¶82. To do this, the Assistant waits in a "standby" mode until it detects a "Hot Word" (*i.e.*, "OK Google" or "Hey Google"), which causes the Assistant to transmit user audio to Google's servers for processing. This trigger phrase was supposed to act as a privacy-preserving gate, ensuring that the Assistant only reacted to (and thus Google only received) commands issued after the Hot Word was spoken.

13. On July 10, 2019, Belgian news outlet *VRT NWS* published an article disclosing for the first time that despite Google's assurances, Google intercepted, recorded, disclosed, and misused private conversations of millions of individuals, without a Hot Word. *Id.* ¶7. As reported by *VRT NWS*, Google collected audio recordings of Assistant users in numerous instances where the Hot Word was never spoken ("False Accepts") and used these recordings for its own commercial and financial benefit, namely, to improve the quality of Google voice assistant dictation. *Id.* Further, Google disclosed these recordings to third-party subcontractors and/or affiliates without users' knowledge or consent. *Id.*

14. Plaintiffs Asif Kumandan and Melissa Spurr, individually and as guardian of B.S., filed their initial complaint on July 25, 2019, alleging privacy violations and other claims in connection with Google Assistant and the systematic collection of users' confidential communications without users' knowledge or consent. ECF No. 1 ¶¶3-4, 26, 32, 36, 56, 59, 64, 80, 85. On July 30, 2019, Plaintiffs Lourdes Galvan and Eleeanna Galvan filed a complaint against Defendants based on substantially the same facts. On September 25, 2019, the Court consolidated the two cases into this matter, captioned *In re Google Assistant Privacy Litigation*. ECF No. 42.

2

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:19-CV-04286

15. On October 25, 2019, Plaintiffs filed a Consolidated Amended Class Action Complaint against Defendants. ECF No. 48. Google moved to dismiss, and after full briefing, the Court, on February May 6, 2020, granted Google's motion in part and denied it in part with leave to amend. ECF No. 80.

16. On June 5, 2020, Plaintiffs filed the Second Amended Consolidated Class Action Complaint asserting eight causes of action as well as adding allegations concerning Plaintiffs' expectation of privacy, including specific instances of their confidential communications being recorded by Google. ECF No. 86 ¶¶19-51, 98-192. On August 7, 2020, plaintiffs Edward Brekhus ("Brekhus") and Jon Hernandez ("Hernandez") filed a complaint against Defendants, which the Court consolidated into this Action on September 10, 2020. ECF No. 109.

17. Plaintiffs, Brekhus, and Hernandez, on November 9, 2020, filed the Third Amended Consolidated Class Action Complaint ("TAC"), asserting ten causes of action. ECF No. 118. On July 1, 2021, the Court granted in part and denied in part Google's motion to dismiss the TAC, sustaining Plaintiffs' claims for violation of the Wiretap Act, 18 U.S.C. §2510, *et seq.* ("Wiretap Act"), California Invasion of Privacy Act, §632 ("CIPA"), intrusion upon seclusion, invasion of privacy under Article I, Section 1 of the California Constitution, breach of contract, and the unfair prong of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200, *et seq.*, with leave to amend the claims for violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*, and common law fraud asserted by Brekhus and Hernandez. ECF No. 138.

18. Plaintiffs, Brekhus, and Hernandez filed the 4AC against Defendants on August 2, 2021, which remains the operative complaint. ECF No. 141. On August 16, 2021, Defendants filed a motion to dismiss Brekhus' and Hernandez's claims for violation of the CLRA and for common law fraud, which was granted on January 11, 2022. ECF No. 152. On August 22, 2022, Defendants and plaintiffs Hernandez and Brekhus filed a stipulation for dismissal without prejudice as to Brekhus' and Hernandez's individual claims, which was granted by the Court on August 23, 2022. ECF No. 249.

19. Defendants filed their answer to the 4AC on January 25, 2022. ECF No. 154.

3

### B. Discovery & Discovery-Related Disputes

20. On April 9, 2020, the Court held an initial Case Management Conference, after which discovery commenced. ECF No. 76.

21. The Parties engaged in nearly three years of extensive and hard-fought discovery. Specifically, Plaintiffs served three sets of Requests for Production of Documents ("RFPs") (with 57 RFPs), one set of Interrogatories (with 26 Interrogatories), and two sets of Requests for Admission ("RFAs") (with 82 RFAs). In response to Plaintiffs' discovery requests, Google produced and Class Counsel reviewed three million pages of documents.

22. Obtaining this discovery was not easy. The Parties held over 50 meet and confers during the discovery period, exchanging numerous lengthy dispute letters, and briefed multiple discovery disputes. For example, the Parties engaged in a multi-part dispute over Google's production of certain data evidencing the rate, frequency, and number of False Accepts that Google collects, which took months to resolve. ECF Nos. 218, 240, 431. This included multiple joint letters, hours of meet and confer sessions, and multiple hearings before Magistrate Judge Van Keulen. With the assistance of the Court (ECF Nos. 331, 435), the Parties negotiated a sampling protocol, where Google was to provide Plaintiffs with datasets containing a sample of the user audio along with its associated data. Google produced extensive Excel files containing thousands of rows of data. With the help of Plaintiffs' experts, Plaintiffs reviewed the sampling data produced by Google.

23. Other discovery disputes included those relating to documents reflecting the financial benefit that Google realizes from the collection of users' data as well as the deposition of Rule 30(b)(6) witnesses knowledgeable about how Google financially benefits from Google Assistant. ECF No. 207. The Parties also briefed disputes relating to revenue generated by Google Assistant. ECF No. 218.

24. Plaintiffs served five Rule 45 subpoenas on third parties, who in turn produced hundreds of additional documents, which Plaintiffs reviewed. Plaintiffs also briefed a dispute with third-party Appen Butler Hill Inc. ("Appen") over the third-party subpoena served on it. ECF No. 221. Magistrate Judge van Keulen ruled that some of the requested documents were within

4

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:19-CV-04286

1 Appen's exclusive knowledge, custody and control. ECF No. 235. Plaintiffs then engaged in
2 additional motion practice to oppose Appen's motion for relief from non-dispositive pretrial order
3 as well as Appen's motion for reconsideration, which Magistrate Judge van Keulen denied. ECF
4 No. 299.

5  25. Plaintiffs spent considerable time taking and defending depositions. Class Counsel
6 took the Rule 30(b)(6) and/or Rule 30(b)(1) depositions of twelve current or former Google
7 employees, deposed one third-party witness, and defended the depositions of the four Plaintiffs as
8 well as Plaintiff Eleeanna Galvan's father Frank Aguiar and Plaintiff Melissa Spurr's husband
9 Steven Spurr.

10  26. Plaintiffs served written responses and objections to two sets of RFPs (with 23 total
11 RFPs to each Plaintiff) and two sets of Interrogatories (with 15 total Interrogatories to each
12 Plaintiff) served by Google. Each Plaintiff also searched for and produced documents in response
13 to Google's RFPs.

14  27. Plaintiffs' Counsel also worked extensively with the evidence and their testifying
15 and consulting experts to support Plaintiffs' motion for class certification and Plaintiffs' opposition
16 to Google's motion for summary judgment. This was extremely time-consuming as it involved
17 analyzing complex technological issues as well as developing valuation models for each of the
18 theories of damage asserted in the Action. Plaintiffs also worked with experts to model False
19 Accept rates and other metrics from the datasets Google produced. Plaintiffs ultimately served
20 expert reports from two experts and defended each of their depositions. Google served expert
21 reports of two experts, each of whom Class Counsel deposed.

22  **C.  Motions for Class Certification, to Compel Arbitration, to Invalidate Opt Outs, and for Summary Judgment**
23

24  28. Plaintiffs filed their motion for class certification on July 18, 2022. ECF No. 222.
25 Plaintiffs spent hundreds of hours preparing their motion for class certification, including
26 conferring with experts regarding consumer expectation of privacy and damages. Plaintiffs also
27 utilized experts to analyze the technical contents of Google's document and data productions.
28 After the briefing was completed, the Court held a hearing on October 20, 2022. ECF No. 327.

1  On December 16, 2022, the Court granted in part and denied in part Plaintiffs' motion for class certification, certifying the Purchaser Class and declining to certify the privacy-related classes. ECF No. 414.

29. Google initially filed a motion for summary judgment on August 22, 2022. ECF No. 245. Immediately prior to the deadline for Plaintiffs to file their opposition to Google's motion for summary judgment, the Court, *sua sponte*, terminated Google's summary judgment, pending a decision on Plaintiffs' class certification motion. ECF No. 267.

30. Nearly four years into this litigation and after the Purchaser Class was certified, Google moved to compel arbitration, on July 21, 2023, arguing that nearly half of the certified Purchaser Class should be compelled to arbitrate their claims. ECF No. 397. The Court denied Google's motion, finding that Google waived the right to compel arbitration by "ignor[ing] the issue of arbitrability," filing a summary judgment motion, opposing class certification, and conducting discovery. ECF No. 420 at 8-9.

31. On September 14, 2023, Plaintiffs proposed a class notice plan, which the Court approved and appointed A.B. Data, Ltd. ("A.B. Data") as the Notice Administrator on February 9, 2024. ECF No. 423. The class notice plan notified potential members of the Purchaser Class that they could exclude themselves from the certified Purchaser Class. A.B. Data thereafter disseminated class notice pursuant to the Court-approved notice plan. ECF No. 440.

32. On November 18, 2024, Google sought to narrow the Purchaser Class definition by arguing in its Motion for Clarification of Class Definition that the Purchaser Class only consisted of individuals who bought devices manufactured and sold *directly* by Google. ECF No. 461 at 4. Plaintiffs opposed this motion. ECF No. 462. The Court denied Google's motion, holding that the Purchaser Class consists of users of devices that were sold by Google as well as third-party retailers. ECF No. 463 at 4.

33. Nearly 70,000 individuals opted out of the Purchaser Class, including more than 69,000 of whom elected to pursue arbitration against Google ("Arbitration Opt Outs"). ECF No. 440 ¶13. Google filed a motion to invalidate the Arbitration Opt Outs on November 1, 2024. ECF No. 456 at 1-2. Plaintiffs and counsel for the Arbitration Opt Outs opposed Google's motion. ECF

6

Nos. 464, 466. After oral argument, the Court denied Google's motion and held that the Arbitration Opt Outs' exclusion requests were effective. ECF No. 486 at 5.

34. At the hearing on Google's motion to invalidate the Arbitration Opt Outs' exclusion requests, the Court directed the Parties to seek a settlement conference either privately or before a magistrate judge. ECF No. 485, 486. The Parties opted for a settlement conference before Magistrate Judge Kandis Westmore. ECF No. 487.

35. Google filed its summary judgment motion on February 28, 2025. ECF No. 496. Plaintiffs filed their opposition on March 28, 2025. ECF Nos. 501, 505. Among other things, Plaintiffs argued that summary judgment should be denied as there are material issues of disputed facts as it relates to the rate and frequency of False Accepts and whether Google breached its promises. Google filed its reply on April 18, 2025. ECF No. 514.

## II.     SETTLEMENT NEGOTIATIONS

36. After the Court certified the Purchaser Class, the Parties conducted an all-day in-person mediation with Randy Wulff on May 10, 2023. The mediation was unsuccessful.

37. The Parties subsequently mediated twice—on February 27, 2024, and May 20, 2024—with the Honorable Jay Gandhi (Ret.) of JAMS, both full-day in-person mediation sessions. At each of these mediation sessions, the Parties made modest progress, but ultimately these mediations were unsuccessful.

38. The Parties then attended a full-day in-person settlement conference on April 14, 2025, before Magistrate Judge Westmore in Oakland, California. ECF No. 511. During the settlement conference, the Parties again delivered substantive arguments on the strengths and weaknesses of their cases, the available evidence, and the legal issues, and the likelihood of success at summary judgment and trial. Despite being the fourth mediation, with the third mediator, the Parties still did not reach a final settlement at the end of this session.

39. The Parties nonetheless continued to negotiate the material terms of a settlement, exchanging numerous proposals and counterproposals concerning the scope of the proposed settlement provisions. Ultimately, the Parties executed a Binding Settlement Term Sheet on October 2, 2025, and then commenced drafting a formal Stipulation and Agreement of Settlement,

7

1  including all necessary exhibits, and working with the proposed Claims Administrator to devise a
2  proposed notice plan.  The Parties executed the Settlement Agreement on January 22, 2026.

3      40.    The Settlement Agreement provides an all-cash non-reversionary common fund
4  recovery of $68,000,000.  **Exhibit 1**, SA ¶¶1.42, 2.1.  The common fund will be used to pay all
5  approved claims by members of the Settlement Classes, notice and settlement administration costs
6  (including any taxes owed by the Settlement Fund), any Court-approved Service Awards to
7  Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award.  *Id*. ¶2.5.

8      41.    Each Settling Class Member who wishes to receive proceeds from the Net
9  Settlement Fund must submit a Claim Form to provide pertinent information that will be used to
10 determine their eligibility to receive a distribution from the Net Settlement Fund in accordance
11 with the attached Plan of Allocation.  **Exhibit 1 at Exhibit E**.

12      42.    This Settlement is consistent with other settlements that have been approved
13 involving analogous claims.  For example, **Exhibit 2** provides a breakdown of several recent class
14 action settlements by total settlement fund, number of class members, potential class members to
15 whom notice was sent, method of notice, claims percentage, average recovery per class member,
16 *cy pres* distributions, administrative costs, attorneys' fees and costs, and injunctive and non-
17 monetary relief, for comparison.

### III. PLAINTIFFS' COUNSEL'S AND PLAINTIFFS' SUPPORT OF THE PROPOSED SETTLEMENT

43.    The Settlement Agreement represents the culmination of years of litigation and intense arm's-length negotiations between the Parties over two years, involving three mediators. The time spent on negotiations, as well as the involvement of skilled neutrals, confirms that there was no collusion or complicity in connection with the Settlement.

44.    While Plaintiffs believe that their claims have substantial merit, they also recognize the risks involved in continued litigation of this Action.  Plaintiffs and Plaintiffs' Counsel have taken into account the risks involved with continued litigation and believe that this Settlement is a fair and reasonable resolution that will provide guaranteed relief to the Settlement Classes.

45.    Plaintiffs have actively participated in the Action from the time their claims were

filed. They confirmed the allegations in the complaints, consulted with Plaintiffs' Counsel as needed, answered discovery requests and provided additional information, sat for depositions, participated in strategy and settlement discussions with Plaintiffs' Counsel, and assisted in representing the interests of the Settlement Classes. Plaintiffs understand the nature of their claims, as well as their duties and responsibilities as putative class representatives. They have no interests antagonistic to the members of the Settlement Classes.

46. Plaintiffs' Counsel's thorough investigation, coupled with the document discovery and depositions conducted, has afforded Plaintiffs' Counsel a significant understanding of the merits of the claims asserted, the strength of Google's defenses, and the values of theoretical outcomes of the Action.

47. In addition, Plaintiffs' Counsel are experienced in class action litigation, including consumer-related actions, and have recovered billions of dollars on behalf of their clients in class actions nationwide.

48. Lowey has substantial experience in class action litigation, having been at the forefront of class action litigation for over fifty years. *See* **Exhibit 3** (Lowey's resumé). This includes data privacy matters, such as *Frasco v. Flo Health, Inc.*, where Lowey partner Christian Levis obtained a historic jury verdict against Meta for violating the California Invasion of Privacy Act by unlawfully recording information though its Software Development Kit. Mr. Levis is also lead or co-lead counsel in other data privacy class actions, including several resulting in significant recoveries for class members. *See, e.g.*, *id*. at 2 (identifying *In re Wawa Data Security Litig*., No. 19-CV-6019 (E.D. Pa.), where Mr. Levis is co-lead counsel as the third largest data breach settlement of 2023); *Lopez v. Apple, Inc*., No. 4:19-cv-04577-JSW (N.D. Cal.) (co-class counsel with Ms. Comite in privacy class action that recovered $95 million for the class).

49. Scott+Scott is a nationally recognized class action law firm with over one hundred attorneys dedicated to complex and class action litigation. Representing individuals, businesses, and public and private pension funds in consumer, antitrust and securities class actions, Scott+Scott has recovered billions of dollars for their clients and the classes they have represented. *See* **Exhibit 4** (Scott+Scott's firm resumé).

9

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:19-CV-04286

50. Lexington Law Group ("LLG") is a public interest law firm specializing in class action and environmental litigation. LLG's tireless efforts over the last three decades representing consumers and non-profits have helped to recover millions of dollars for consumers, removed toxic chemicals from everyday consumer products, and achieved wide ranging changes to harmful industry practices via injunctive relief. *See* **Exhibit 5** (LLG's firm resumé).

51. The Wood Law Firm has over 30 years of mass tort and class action litigation experience. Mr. Wood has served in leadership positions in various successful multidistrict and state court joint complex matters. Significant favorable client results have been obtained in Hawai'i bad faith insurance matters, California wildfires, and antitrust litigation. *See* **Exhibit 6** (Wood Law Firm's resumé).

52. Based on their collective experience in similar matters, Plaintiffs' Counsel believes the proposed Settlement is fair, reasonable, and adequate, is likely to be approved by the Court after the Final Approval Hearing, and notice should issue to the Settlement Classes concerning the Settlement.

53. The Court previously certified the litigation Purchaser Class to proceed to trial on the breach of contract and UCL unlawful prong claims. ECF No. 414 at 31. Plaintiff Kumandan proposed two classwide damages models based on price premium and nominal damages (i.e., $1.00) for the Purchaser Class's remaining claims. ECF No. 505 at 16-17, 21. Research supports applying a price premium of $3.74 per Google-Made Device. *See* Govaparam *et al.*, "IoT Marketplace: Willingness to Pay Versus Willingness to Accept," PROCEEDINGS OF THE 20TH ANNUAL WORKSHOP ON THE ECONS. OF INFO. SEC. (June 2021) at 16 (finding consumers' willing to pay $3.74 on average for improved privacy protections on internet-enabled devices).[1] Class Counsel estimate that at most 120 million Google-Made Devices were purchased during the Settlement Class Period. Thus, Class Counsel contends that if the Purchaser Class were to succeed at trial, the estimated recoverable damages would range from $120,000,000 (i.e., $1.00 per Google-Made Device) to $448,800,000 (i.e., $3.74 per Google-Made Device) on these remaining

---

[1] Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3867652.

10

JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:19-CV-04286

1  claims. Therefore, based on Class Counsel's assumptions and estimates, the Settlement provides certain monetary relief of between approximately 56.67% and 15.15% of the total damages the Purchaser Settlement Class potentially could have recovered at trial. While these figures are defensible, obtaining total damages at trial would be a challenge. Indeed, even if the Court denied Google's motion for summary judgment, Google would continue to challenge every element of Plaintiff Kumandan's claims—existence of a promise, breach, causation, price premium and nominal damages, among other arguments. *See* ECF Nos. 496, 514.

54. The privacy-related claims were not certified during litigation, and thus, would not have proceeded to trial on a classwide basis. Therefore, Class Counsel have valued the Privacy Settlement Class's claims less than the Purchaser Settlement Class's per device claims, given the nominal value of the Privacy Settlement Class's rights to seek appellate review of the Court's denial of class certification on the privacy-related claims. *See* **Exhibit 1 at Exhibit E** (Plan of Allocation) ¶¶7(a)-(c) (allocating four points per Google-Made Device claimed by a member of the Purchaser Settlement Class up to a maximum of three Google-Made Devices and one point to a claim by a member of the Privacy Settlement Class).

55. Based on publicly available information, Class Counsel contends that approximately 120 million Google-Made Devices were sold during the Class Period. Class Counsel therefore conservatively estimate that there are at most 60 million members of the Purchaser Settlement Class.

56. Plaintiffs' Counsel has fully investigated and developed this Action, reviewed document productions by Google and third parties, and taken and defended fact witness depositions in order to meaningfully assess the strength of Plaintiffs' claims. They worked with experts, engaged in significant motion practice, and will continue to properly and vigorously represent the interests of the Settlement Classes.

57. To the best of Class Counsel's knowledge, there are no other cases pending that would be impacted by this Settlement. There are also no agreements that need to be disclosed under Rule 23(e)(3).

58. To the extent there are unclaimed payments, if administratively feasible, Class

11

1  Counsel will authorize the Claims Administrator to undertake a second distribution to Authorized
2  Claimants who have claimed their settlement payments; otherwise, those funds will be distributed
3  to one or more *cy pres* recipients, to be agreed upon by the Parties and submitted to the Court for
4  approval.

## IV.     ATTORNEYS' FEES AND EXPENSE AWARDS

59.     Plaintiffs' Counsel prosecuted the Action on a contingent basis and advanced all associated out-of-pocket costs, as well as all associated attorney and staff time, with no expectation of recovery of costs or payment of fees in the event the Action did not result in recovery for the Settlement Classes.

60.     In connection with the final approval of this Settlement, Plaintiffs will ask the Court for an attorneys' fee award of no more than one-third of the Settlement Fund plus reasonable litigation expenses.  At this time, Plaintiffs' Counsel anticipate seeking no more than $1,600,000 as reimbursement for any litigation expenses incurred by Plaintiffs' Counsel.  The unaudited lodestar invested in this case by Plaintiffs' Counsel as of January 16, 2026, is approximately $22 million.  If this lodestar remains unchanged, which is unlikely, the lodestar multiplier would be no greater than 1.00 if Plaintiffs request one-third of the Settlement Fund.

## V.     SERVICE AWARDS

61.     Plaintiffs will apply for service awards of $10,000 per Plaintiff, as appropriate compensation for their time and effort serving as Plaintiffs and putative class representatives. Plaintiffs have spent substantial time on this Action, including assisting with the investigation of this Action, providing critical information for the complaints, cooperating with the production of documents and answering of interrogatories, and sitting for depositions.  Plaintiffs have been in contact with Plaintiffs' Counsel frequently and have stayed informed of the status of the Action. Plaintiffs also have no conflicts or positions antagonistic to the Settlement Classes.

## VI.     PROPOSED NOTICE PLAN AND CLAIMS ADMINISTRATOR

62.     The Court appointed A.B. Data as the Notice Administrator after the Purchaser Class was certified. ECF No. 423.  A.B. Data disseminated class certification notice, sending more than 29 million emails, issuing a press release, posting the long form notice on the class notice

12

1 website, www.googleassistantprivacylitigation.com, and establishing a toll-free phone line. ECF
2 No. 440.

3   63.   Plaintiffs selected A.B. Data as the proposed Notice Administrator following a competitive selection process that involved the solicitation of proposals from three leading notice and settlement administrators, all of whom submitted responses. All firms responding to the solicitation provided bids that included issuing direct notice by email. In addition, each responding firm provided several digital media notice options to supplement the direct notice program, as needed. All respondents proposed building a notice website that would host all important case documents and notices. Finally, all respondents also provided cost estimates for settlement notice and claims administration, including for direct notice, supplemental digital notice options, updating and maintenance of the class notice website to provide settlement-related information and key documents, maintaining a dedicated phone line for settlement class members during the claims period, and various fraud detection and reduction and claims processing measures.

14   64.   Plaintiffs now seek to have A.B. Data appointed as the Claims Administrator based on its prior appointment as the Notice Administrator, its effective dissemination of class notice after class certification, competitive bid covering both notice and settlement administration, and vast experience with administering settlements with millions of settlement class members.

18   65.   Google has agreed to use A.B. Data as the Claims Administrator.

19   66.   A.B. Data has been selected by Lowey to serve as the notice and/or settlement administrator for six new engagements during the past two years. Scott+Scott has utilized A.B. Data in ten new engagements during the past two years.

22   67.   Filed concurrently herewith is the Declaration of Justin Parks of A.B. Data ("Parks Decl."), which describes A.B. Data's proposed notice plan, its capabilities, the procedures for securely handling class member data, its acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, and the reasonableness of those costs in relation to the value of the Settlement. All notice and settlement administration costs will be paid from the Settlement Fund. SA ¶4.3.

28   68.   Pursuant to the Settlement Agreement, Google is responsible for complying with

its obligations under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715(b) and will provide notice of the Settlement to the appropriate state and federal officials. SA ¶4.11. The cost of disseminating CAFA notice will not come out of the Settlement Fund.

## VII.   PROPOSED ESCROW AGENT

69.   Huntington National Bank is proposed as the Escrow Agent for the Court's approval. *Id.* ¶1.17.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on January 23, 2026, in White Plains, NY.

                                            */s/ Christian Levis*
                                            Christian Levis

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on January 23, 2026, in Colchester, CT.

                                            */s/ Erin Green Comite*
                                            Erin Green Comite

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026 the foregoing document entitled JOINT DECLARATION OF CHRISTIAN LEVIS AND ERIN GREEN COMITE IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

      /s/ *Erin Green Comite*
      Erin Green Comite