Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

*Additional Counsel for Plaintiffs*
*on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 5:19-cv-04286-BLF<br><br>**PLAINTIFFS' COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>COMPLAINT FILED: July 25, 2019<br>Date:    October 1, 2026<br>Time:    9:00 a.m. PT<br>Dept.:   Courtroom 1-5th Floor<br>Judge:   Honorable Beth Labson Freeman |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), on October 1, 2026, at 9:00 a.m. Pacific Time, or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 1, 5th Floor of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, the Honorable Beth Labson Freeman presiding, Plaintiffs Asif Kumandan, Melissa Spurr, individually and as guardian of B.S., a minor, Lourdes Galvan, and Eleeanna Galvan ("Plaintiffs"), through their undersigned counsel, will and hereby do move this Court for an order: (1) awarding Plaintiffs' Counsel attorneys' fees of one-third of the $68,000,000 Settlement Fund, or $22,666,666.67; (2) awarding reimbursement of litigation expenses of $1,021,738.40; and (3) approving service awards of $10,000 to each of the four Plaintiffs.

Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards ("Motion") is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Joint Declaration of Erin Green Comite and Christian Levis in Support of Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards; Declaration of Daryl F. Scott of Scott+Scott Attorneys at Law LLP; Declaration of Christian Levis of Lowey Dannenberg, P.C.; Declaration of Mark Todzo of Lexington Law Group; Declaration of Edward K. Wood of Wood Law Firm, LLC; Declarations of Asif Kumandan, Melissa Spurr, Lourdes Galvan, and Eleeanna Galvan; the Stipulation and Agreement of Settlement dated January 22, 2026 (ECF No. 549-2) ("Settlement Agreement" or "SA"); the pleadings, records, and papers on file in this Action; the arguments of counsel; and such other matters as the Court may consider.

On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter the proposed Order Granting Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards, submitted herewith.

1

## **STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should award Plaintiffs' Counsel attorneys' fees of one-third of the $68,000,000 Settlement Fund ($22,666,666.67), plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid.

2.    Whether the Court should award Plaintiffs' Counsel reimbursement of litigation expenses of $1,021,738.40, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid.

3.    Whether the Court should approve service awards of $10,000 to each of the four Plaintiffs.

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR
SERVICE AWARDS
CASE NO. 5:19-cv-04286-BLF

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A. The Requested Attorneys' Fees Are Fair and Reasonable........................................2

        1. The Percentage-of-Recovery Method Supports the Requested Fee....................3

            a. The Settlement Achieves an Excellent Result for the Settlement Classes................................................................................................ 3

            b. Plaintiffs' Counsel Litigated This Action Under Substantial Risk and on a Wholly Contingent Basis................................................... 4

            c. The Skill Required and Quality of Plaintiffs' Counsel's Work Support the Request.................................................................................. 6

            d. The Fee Is Consistent with Awards in Comparable Cases ..................... 8

        2. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable ................9

        3. The Objections to the Fee Request Should Be Overruled ................................10

    B. Counsel's Litigation Expenses Are Reasonable and Should Be Reimbursed.........12

    C. The Requested Service Awards Are Reasonable and Warranted...........................13

III. CONCLUSION........................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. Apple Inc.*,
  2025 WL 1002786 (N.D. Cal. Apr. 3, 2025) ...................................................................8, 10, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .........................................................................................................11

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).........................................................................................................................2

*In re Cal. Pizza Kitchen Data Breach Litig.*,
  129 F.4th 667 (9th Cir. 2025) .....................................................................................................3, 4

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019).......................................................................................8, 10

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................................................5

*Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*,
  2024 WL 4267431 (C.D. Cal. Sep. 17, 2024).............................................................................8, 10

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................................................5

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sep. 2, 2015) ............................................................................12, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
  2024 WL 4804974 (N.D. Cal. Nov. 15, 2024) ...............................................................................14

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) .........................................................................8, 10, 13

*In re LinkedIn User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)...............................................................................................5, 10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................................2

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .....................................................................................................9, 13

*Radcliffe v. Experian Info. Sols. Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .......................................................................................................13

ii

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................4, 13

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020)................................................................................12, 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..............................................................................................2

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) ............................................................................................9

*Stovall-Gusman v. W.W. Granger, Inc.*,
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ....................................................................4

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................................5, 8, 10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................... *passim*

*In re Vizio, Inc., Consumer Priv. Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019).....................................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ..............................................................................................4

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508 (N.D. Cal. 2020) ..............................................................................10

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .....................................................................14

iii

## MEMORANDUM OF LAW

### I.     INTRODUCTION

After over six years of hard-fought litigation against one of the best-resourced technology companies in the world, Class Counsel with additional Plaintiffs' Counsel secured an all-cash, non-reversionary, common-fund settlement of $68,000,000 in this Action concerning the Google Assistant virtual voice assistant.[1]  The Settlement delivers immediate, guaranteed, and substantial monetary relief to the Settlement Classes.  Notice of the Settlement and of the relief requested in this Motion has been disseminated to the Settlement Classes in accordance with the Court's preliminary approval order.  Details concerning the adequacy of the notice program will be presented in Plaintiffs' forthcoming Motion for Final Approval of the Settlement.

The result here is excellent, particularly considering the risks Plaintiffs confronted.  The Court certified only the Purchaser Class—on the breach-of-contract and California Unfair Competition Law ("UCL") claims—and declined to certify the privacy-related classes.  Thereafter, Google moved to "clarify" the Purchaser Class definition to limit the class size and sought to compel nearly half of the certified class into arbitration.  The Parties also faced a September 2025 trial with substantial uncertainty before them.  Google's fully briefed motion for summary judgment remained, and the company contested every element of liability and damages.  Measured against Plaintiffs' estimate of damages, the $68,000,000 recovery represents approximately 15.15% to 56.67% of the $120,000,000 and $448,800,000 recoverable at trial for the certified Purchaser Class.  The Settlement also provides the Privacy Settlement Class modest compensation commensurate with the reality that the privacy-related claims were not certified and would face a challenging appeal.  Thus, this Settlement represents an outstanding result for Settlement Classes that faced a genuine risk of no recovery at all.

In recognition of this result and the years of work that produced it, Plaintiffs' Counsel respectfully request that the Court: (1) award attorneys' fees of one-third of the $68,000,000 Settlement Fund, or $22,666,666.67, plus interest on such amounts awarded at the same rate as the

---

[1]     Unless otherwise defined, capitalized terms have the same meaning as in the Settlement Agreement.

1

Settlement Fund until paid; (2) reimburse litigation expenses of $1,021,738.40, plus interest at the same rate as earned on the Settlement Fund until paid; and (3) approve service awards of $10,000 to each of the four Plaintiffs who served as Class Representatives.

The requested fee is fair and reasonable under the percentage-of-the-recovery method that the Ninth Circuit endorses for common-fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Although the request exceeds the Ninth Circuit's 25% benchmark, each of the factors the Ninth Circuit identified in *Vizcaino*—the exceptional result achieved, the substantial risks undertaken on an entirely contingent basis, the skill and quality of Plaintiffs' Counsel's work, and the fees awarded in comparable cases—amply supports the request. A lodestar cross-check confirms the result: Plaintiffs' Counsel's lodestar of $22,477,337.50 yields a multiplier of 1.01—essentially at counsel's actual hourly investment, and below the multipliers courts routinely approve. *See id.* at 1051 & n.6 (multipliers ranging from 1.0 to 4.0 are common). To date, just three individuals object to the fee request, and two of these individuals object to the requested expenses and service awards. *See* ECF Nos. 561, 562-1, 563. As explained below, these objections lack merit and should be overruled. The objection deadline is August 27, 2026. ECF No. 560 at 15. Plaintiffs' Counsel will address any further objections in their reply brief due on September 17, 2026. *Id.*

## II.    ARGUMENT

### A.    The Requested Attorneys' Fees Are Fair and Reasonable

Where, as here, a class action settlement creates a common fund for the benefit of the settlement class, courts award attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The Ninth Circuit recognizes two methods for calculating a reasonable fee in such cases—the percentage-of-the-recovery method and the lodestar method. *See Vizcaino*, 290 F.3d at 1047. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Under that method, courts in this Circuit apply a benchmark award of 25% of the common fund, which may be adjusted upward or downward in light of the circumstances of the particular case. *See id.* at 1047–48.

Regardless of which method is used, the touchstone is the reasonableness of the fee considering the result achieved. *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025).

### 1.    The Percentage-of-Recovery Method Supports the Requested Fee

Plaintiffs' Counsel request a fee of one-third of the $68,000,000 Settlement Fund. While that request exceeds the 25% benchmark, an above-benchmark award is appropriate where the relevant factors so warrant. *See Vizcaino*, 290 F.3d at 1048–50. In assessing whether a percentage award is reasonable, the Ninth Circuit considers, among other factors: (1) the result achieved for the class; (2) the risk of the litigation; (3) the skill required and the quality of the work performed; and (4) awards in comparable cases. *See id.* Each of these factors supports the requested fee.

### a.    The Settlement Achieves an Excellent Result for the Settlement Classes

The result achieved for the class is the most important factor in determining a reasonable fee. *See id.* at 1048. The result here is excellent. Plaintiffs' Counsel secured a $68,000,000 all-cash common fund that provides immediate and certain monetary relief to the Settlement Classes. None of the funds revert to Google; any funds remaining after distribution will be applied to one or more subsequent distributions to eligible Settlement Class Members or, if further distribution is not feasible, paid to an appropriate *cy pres* recipient approved by the Court. SA ¶¶2.2, 4.20. Because the entire $68,000,000 will benefit the Settlement Classes the fee is properly measured against the full common fund. *Cal. Pizza Kitchen*, 129 F.4th at 679.

The strength of the recovery is confirmed by comparison to the Settlement Classes' realistic litigation prospects. The Court declined to certify any of the privacy-related litigation classes; the Privacy Settlement Class Members would have to succeed in appealing the class certification denial to have any prospect of recovering any related classwide damages. With respect to the Purchaser Class, Plaintiffs' Counsel estimated that, even if they prevailed at trial, classwide damages would range from approximately $120,000,000 (based on nominal damages of $1.00 per Google-Made Device) to $448,800,000 (based on a $3.74 price premium per device). Joint Declaration of Erin Green Comite and Christian Levis in Support of Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards ("Joint Decl.") ¶12. The $68,000,000

3

Settlement therefore recovers between approximately 15.15% and 56.67% of the maximum recoverable damages. *Id.*[2]  And even that range is itself hotly contested: Google has argued the number of devices is significantly lower and would have disputed whether the Purchaser Class could establish any right to recovery at all.

Measured against Plaintiffs' estimates, the Settlement delivers a substantial and certain recovery of approximately $18 to $56 to each Purchaser Settlement Class Member and approximately $2 to $10 to each Privacy Settlement Class Member.  ECF No. 549-8 ¶¶49-52. Courts in this Circuit regularly approve fee awards in cases where the settlement recovers a comparable—or considerably smaller—percentage of the maximum potential recovery, recognizing that a certain and immediate recovery is worth substantially more to the class than the speculative prospect of a larger judgment years later, after trial and appeal.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (concluding that 10% of the class's estimated damages was a fair and reasonable settlement); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *3 (N.D. Cal. June 17, 2015) (concluding that 10% of the class's estimated damages was "within the range of reasonableness").

### b. Plaintiffs' Counsel Litigated This Action Under Substantial Risk and on a Wholly Contingent Basis

The risk of nonpayment is a critical factor in assessing the reasonableness of a fee.  *See Vizcaino*, 290 F.3d at 1048.  Plaintiffs' Counsel prosecuted this Action for more than six years on a wholly contingent basis, advancing all out-of-pocket costs and devoting more than 20,000 attorney and staff hours with no assurance of any recovery whatsoever.  Joint Decl. ¶7.  The Ninth Circuit has long recognized that counsel who undertake representation on a contingent basis assume a substantial risk of nonpayment, and that this risk must be accounted for in setting a reasonable fee.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299–1301 (9th Cir. 1994).

---

[2]  Plaintiffs' Counsel estimated the average recovery solely for purposes of complying with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Procedural Guidelines"), and the calculation is explained further in ECF No. 549 at 6.

The risks here were concrete and substantial.  Privacy claims of this kind—premised on the federal Wiretap Act, the California Invasion of Privacy Act, and related theories, applied to a novel voice-assistant technology—present difficult and unsettled questions of law, which courts have recognized increase the litigation risk.  *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 936 (N.D. Ill. 2022); *In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966638, at *7 (C.D. Cal. July 31, 2019); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Those inherent risks were compounded by case-specific obstacles.  With trial set for September 2025, Google moved for summary judgment arguing that the Purchaser Class could not prove most of the elements of its claims—including that there were no actionable promises, no breach of any promise, and no viable classwide damages methodology.  Joint Decl. ¶9.  The Court had already declined to certify Plaintiffs' proposed privacy-related classes, which reduced the size of the certified class, the claims that could be tried on a classwide basis, and the maximum recovery at trial; absent a successful appeal followed by a successful trial, the privacy-related classes could expect no recovery whatsoever.  Joint Decl. ¶8.  Notwithstanding the Court's class certification decision, Google continued to attack the Purchaser Class, moving to narrow the class definition and compel nearly half of the Class members to arbitration.  Joint Decl. ¶10.  An adverse ruling on any of these motions could have sharply reduced—or altogether eliminated—the Purchaser Class's recovery.

Plaintiffs' Counsel pressed these claims against Google, which had effectively limitless resources and every incentive to contest liability to the end.  Courts in this Circuit routinely treat this combination—novel claims, a well-funded adversary, and years of uncompensated work—as grounds for an above-benchmark percentage fee.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

### c.    The Skill Required and Quality of Plaintiffs' Counsel's Work Support the Request

The novelty and difficulty of the issues, the skill required to litigate them, and the quality of the work performed are central to the reasonableness of a fee. *See Vizcaino*, 290 F.3d at 1048. Plaintiffs' Counsel are experienced class-action litigators who staffed this case leanly and efficiently and litigated it at a consistently high level for more than six years against premier defense counsel representing one of the world's largest companies. The quality of that work is evident at every stage of the case.

***Pleadings.*** Plaintiffs' Counsel drafted and refined the operative pleadings through four successive amendments over more than two years, consolidating multiple related actions into this single Action and sharpening Plaintiffs' factual allegations and legal theories at each stage. From the initial complaints filed in July 2019 through the operative Fourth Amended Consolidated Class Action Complaint, Plaintiffs' claims withstood repeated motions to dismiss. *See* ECF Nos. 80, 138. The Court's July 1, 2021 order granting in part and denying in part Google's Motion to Dismiss the Third Amended Complaint sustained the core of Plaintiffs' claims—including claims under the federal Wiretap Act, the California Invasion of Privacy Act, intrusion upon seclusion, invasion of privacy under the California Constitution, breach of contract, and the unfair prong of the UCL. *See* ECF No. 138. Preserving these novel privacy and consumer-protection theories against sophisticated defense challenges required substantial skill and reflects the high quality of Plaintiffs' Counsel's work.

***Fact and Expert Discovery.*** Plaintiffs' Counsel conducted nearly three years of hard-fought fact and expert discovery. They served three sets of requests for production (totaling 57 requests), 26 interrogatories, and 82 requests for admission; reviewed and analyzed approximately 3 million pages of documents produced by Google; and engaged in more than 50 meet-and-confer sessions. Plaintiffs' Counsel litigated numerous discovery disputes before Magistrate Judge van Keulen, including disputes over Google's "False Accepts" data and the design of a complex sampling protocol. They served five Rule 45 subpoenas on third parties, and took or defended numerous depositions, including of 12 Google employees, a third-party witness, the four Plaintiffs and two of their family members, and the Parties' testifying experts, for whom Plaintiffs' Counsel

6

prepared and defended two expert reports.  Joint Decl. ¶16.

*Class Certification.*  Plaintiffs' Counsel briefed and won certification of the Purchaser Class on the breach-of-contract and unlawful-prong UCL claims—a significant achievement in a hotly contested consumer-privacy action, and one that required substantial expert development and a detailed damages methodology.  Securing a certified class materially strengthened the Settlement Classes' settlement position.  Plaintiffs' Counsel devoted hundreds of hours to Plaintiffs' motion for class certification, filed on July 18, 2022 (*see* ECF No. 222), conferring with experts regarding consumers' expectation of privacy and damages and retaining experts to analyze the technical contents of Google's document and data productions.  After full briefing and a hearing on October 20, 2022, the Court, on December 16, 2022, granted Plaintiffs' motion in part—certifying the Purchaser Class while declining to certify the privacy-related classes.  *See* ECF No. 414.  Plaintiffs' Counsel then developed and obtained approval of a comprehensive class-notice plan, under which the Court appointed A.B. Data, Ltd. as Notice Administrator, and notice was disseminated to the certified Purchaser Class.  *See* ECF Nos. 423, 440.  Plaintiffs' Counsel also successfully defended the scope of the certified class: when Google moved, on November 18, 2024, to narrow the Purchaser Class definition to individuals who purchased devices manufactured and sold directly by Google, Plaintiffs' Counsel opposed the motion and the Court denied it, holding that the Purchaser Class consists of users of devices sold by Google as well as by third-party retailers.  *See* ECF Nos. 461–463.  Litigating certification of a class of this size and complexity, and administering notice to it, required Plaintiffs' Counsel to bring considerable skill to bear.  Joint Decl. ¶19.

*Arbitration and Dispositive Motion Practice.*  Plaintiffs' Counsel prevailed on two additional pivotal contested motions.  They defeated Google's motion to compel nearly half of the certified Purchaser Class into arbitration, persuading the Court that Google had waived its arbitration rights.  *See* ECF No. 420.  And they fully briefed the Class's opposition to Google's renewed motion for summary judgment, which remained pending when the Parties agreed to settle.  Each of these victories preserved the value of the litigation and, correspondingly, the Settlement ultimately delivered to the class.  Joint Decl. ¶20.

7

***Settlement Negotiations.*** The Settlement was the product of arm's-length negotiations conducted over an extended period and with the assistance of multiple respected neutrals. The Parties participated in a private mediation before Randy Wulff, two full-day mediation sessions before the Honorable Jay Gandhi (Ret.) of JAMS, and a settlement conference before Magistrate Judge Westmore, before ultimately executing a binding term sheet and a comprehensive Settlement Agreement. That this hard-won result was achieved only after years of adversarial litigation and supervised negotiation underscores both its fairness and the skill of the counsel who produced it. Joint Decl. ¶21.

Taken together, this sustained, high-quality work against formidable opposition reflects precisely the skill that the *Vizcaino* factor is intended to recognize and reward.

### d.    The Fee Is Consistent with Awards in Comparable Cases

Finally, the requested fee is consistent with awards in comparable complex class actions, including data-privacy litigation. Courts in this Circuit and elsewhere have repeatedly approved fees of one-third of the common fund—including in cases involving settlement funds of comparable or greater size. *See Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431, at *3 (C.D. Cal. Sep. 17, 2024) (awarding 33% of $70 million settlement in an environmental oil-spill class action); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding 33.3% of $40 million settlement in misrepresentation/RICO class action); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1 (N.D. Cal. Sep. 20, 2018) (awarding one-third of a $104.75 million fund in antitrust class action); *Barrett v. Apple Inc.*, 2025 WL 1002786, at *2 (N.D. Cal. Apr. 3, 2025) (awarding 33.33% of $35 million settlement in consumer data privacy class action); *see also TikTok*, 617 F. Supp. 3d at 943 (awarding 33% of $92 million settlement in consumer data privacy class action).

The requested fee is especially reasonable here. Not only is it consistent with the fees courts routinely approve in cases of comparable complexity, but—as shown below—it reflects a multiplier of 1.01 on Plaintiffs' Counsel's lodestar, below the higher positive multipliers approved in many of these same cases. The first three *Vizcaino* factors thus support the requested fee, and the fourth confirms that it falls comfortably within the range courts routinely approve.

### 2.     A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable

The Ninth Circuit encourages courts to perform a lodestar cross-check to confirm that the requested percentage produces a reasonable fee. *See Vizcaino*, 290 F.3d at 1050; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). The cross-check is performed by multiplying the hours reasonably expended by reasonable hourly rates and comparing the resulting lodestar to the requested fee to derive an implied multiplier. *See Stetson v. Grissom*, 821 F.3d 1157, 1165–67 (9th Cir. 2016).

Plaintiffs' Counsel have collectively devoted 20,371.60 hours to the prosecution of this Action, calculated at their current hourly rates, yielding an aggregate lodestar of $22,477,337.50. Joint Decl. ¶22. The cross-check here strongly confirms the reasonableness of the request.

A firm-by-firm breakdown of hours, hourly rates, and lodestar for Lowey Dannenberg, P.C., Scott+Scott Attorneys at Law LLP, the Lexington Law Group, and the Wood Law Firm, LLC, is set forth in the accompanying declarations submitted by each firm. These rates are commensurate with those regularly charged by attorneys with comparable experience for complex litigation of this kind, and courts in this District have repeatedly approved rates at these levels. Joint Decl. ¶23; *see also* Scott Decl. ¶¶6-11; Levis Decl. ¶¶4-11; Todzo Decl. ¶¶4-8; Wood Decl. ¶¶4-8. Consistent with the Procedural Guidance and this Court's Standing Order for Civil Cases, each firm's declaration includes a breakdown of the hours that each attorney and other professional devoted to the litigation into 12 distinct categories undertaken over the course of the litigation. Scott Decl., Ex. B; Levis Decl., Ex. B; Todzo Decl., Ex. B; Wood Decl., Ex. B. Moreover, Plaintiffs' Counsel have excluded from their fee application for cross-check purposes any time expended after June 30, 2026. Scott Decl. ¶5; Levis Decl. ¶7; Todzo Decl. ¶4; Wood Decl. ¶4. In addition, Plaintiffs' Counsel also made other reductions to its time as a matter of billing discretion. Scott Decl. ¶4; Levis Decl. ¶4; Todzo Decl. ¶4; Wood Decl. ¶4.

Dividing the requested fee ($22,666,666.67) by Plaintiffs' Counsel's lodestar of $22,477,337.50 produces a multiplier of 1.01. A multiplier essentially at 1.0 is plainly reasonable; indeed, it sits at the very bottom of the range the Ninth Circuit has recognized as common, in which multipliers "range from 1.0 to 4.0." *Vizcaino*, 290 F.3d at 1051 & n.6 (citation modified);

9

*see, e.g.*, *Barrett*, 2025 WL 1002786, at *2 (0.99 multiplier); *Grey Fox, LLC*, 2024 WL 4267431, at *3 (1.63 multiplier); *Carlin*, 380 F. Supp. 3d at 1023 (0.96); *Lidoderm*, 2018 WL 4620695, at *1 (1.37 multiplier); *see also TikTok*, 617 F. Supp. 3d at 943 (2.04 multiplier).

Because Plaintiffs' Counsel seek essentially no premium over the value of the time they actually invested—despite the substantial risk they assumed and the excellent result they achieved—the lodestar cross-check powerfully confirms that the requested one-third fee is fair and reasonable.

### 3.    The Objections to the Fee Request Should Be Overruled

To date, three individuals have objected to Plaintiffs' Counsel's fee request. *See* ECF Nos. 561 (Joy Thomas Objection), 562-1 (Joshua Keith Kirkley Objection), and 563 (Melick Cook Objection).

The first of these objections requires little discussion. Joy Thomas (ECF No. 561) does not engage with the fee request at all. Her objection voices only a generalized grievance about the recording of communications by mobile devices and the propriety of electronic surveillance—concerns directed at the underlying conduct alleged in this Action rather than at the reasonableness of Plaintiffs' Counsel's requested fee, expenses, or service awards. Because it identifies no deficiency in any requested amount and offers no basis on which the Court could reduce it, the objection supplies no ground to disturb the requested fee and should be overruled. *See, e.g.*, *LinkedIn User Priv. Litig.*, 309 F.R.D. at 592 (finding objector had "not satisfied [his] burden" where he "simply assert[ed] that the requested fees are excessive [ ] without offering any reasons"); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 533 (N.D. Cal. 2020) (rejecting objection to attorneys' fee where the objector described that request as "bloated," but made no specific complaint about it.)

Melick Cook (ECF No. 563) likewise identifies no specific deficiency. Cook does not object to the Settlement and acknowledges the work Plaintiffs' Counsel performed; he asks only that the Court "carefully scrutinize" the requested fees, expenses, and service awards and reduce any amount that proves excessive or inadequately supported. *Id*. at 2. But that is precisely the independent reasonableness review Rule 23 already demands of the Court in every common-fund

10

case, and it is the review this motion is designed to satisfy.  The percentage-of-recovery analysis and lodestar cross-check set forth above confirm the reasonableness of the requested fee; the requested litigation expenses are itemized by category and documented in the accompanying declarations, *see infra* Part II.B; and the four $10,000 service awards—together totaling less than 0.06% of the $68,000,000 Settlement Fund—are supported by each Plaintiff's documented participation in the litigation, *see infra* Part II.C.  An objection that identifies no actual flaw in these showings and asks only that the Court undertake the review it must perform in any event supplies no basis to reduce any requested amount.

Only one objector advances a substantive challenge to the fee.  Joshua Keith Kirkley (ECF No. 562-1) objects on two grounds: that the requested fee is "disproportionate" to the per-capita benefit delivered to the class and reflects a settlement structure in which Google declined to contest fees in exchange for a broad release; and that the fee rests on "recycled labor."  *Id*. at 2.  Neither ground is supported (or valid), and the objection should be overruled.

The disproportionality argument misapprehends both the structure of the Settlement and the governing standard.  As explained above, this is a non-reversionary common-fund settlement, and the requested one-third fee is measured against the entire $68,000,000 fund created for the Settlement Classes—not a claims-made settlement that makes "up to" a certain amount available per-capita and then seeks to collect fees on the total theoretical amount.  The objector's reliance on *Bluetooth* is therefore misplaced.  The heightened scrutiny that decision counsels is triggered by warning signs of collusion, none of which is present here: there is no "clear sailing" agreement, as Google has not agreed to refrain from opposing the fee; there is no "kicker" or reverter returning unawarded fees to Google; and the fee request is not disproportionate as the amount counsel receives is substantially less than the Settlement Classes.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  That Google agreed to a release of the Settlement Classes' claims in exchange for funding a $68,000,000 settlement is not a hallmark of collusion; it is the ordinary consideration present in every class settlement.

The objector's "recycled labor" charge fares no better.  As the lodestar cross-check confirms, Plaintiffs' Counsel seek a fee reflecting a multiplier of 1.01—essentially no premium

11

over the value of the hours actually devoted to prosecuting this Action over more than six years, including the pleadings, fact and expert discovery, class certification, arbitration, and summary-judgment proceedings described above. A request that seeks no meaningful premium over time actually expended is the antithesis of the padded or duplicative billing the objection imagines. The hours and rates underlying that lodestar are documented firm-by-firm in the accompanying declarations and reflect work performed in this case, not borrowed from any other.

Because the requested fee is fair and reasonable under both the percentage-of-recovery method and the lodestar cross-check, and because none of the objections identify a sound basis to reduce the requested fee, the objections should be overruled.

**B.      Counsel's Litigation Expenses Are Reasonable and Should Be Reimbursed**

Plaintiffs' Counsel are entitled to reimbursement of the reasonable out-of-pocket expenses they advanced in prosecuting this Action for the benefit of the class. The Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to counsel who has incurred the expense. *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sep. 2, 2015). Courts routinely award reimbursement of "those out-of-pocket expenses that would normally be charged to a fee paying client." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020).

Plaintiffs' Counsel seek reimbursement of litigation expenses of $1,021,738.40, representing costs reasonably and necessarily incurred over more than six years of litigation. These expenses include expert and consultant fees, mediation fees, electronic-discovery and document-hosting costs, the costs of distributing notice to the certified Purchaser Class following class certification, filing and service of process fees, transcript fees, court-reporter and videographer charges, photocopying, mailing costs, legal research, and travel. Joint Decl. ¶24. An itemization by category is set forth in the accompanying declarations submitted by each law firm. Scott Decl. Ex. C; Levis Ex. C; Todzo Decl. Ex. C; Wood Decl. Ex. C. These are precisely the categories of expenses that courts in this District routinely find compensable, and the requested amount is reasonable in light of the scale of the litigation, which entailed the review of approximately three million pages of documents, numerous depositions, multiple testifying

experts, fully briefed class certification and summary judgment motions, and several mediations. *See Lidoderm*, 2018 WL 4620695, at *4 (awarding expenses for filing fees, computerized research, copies, postage and messenger services, document hosting services, experts, sales data purchased from third parties, transcripts, translations of documents, case-related travel, and distributing notice of the court's certification order); *High-Tech*, 2015 WL 5158730, at *16 (awarding expenses for expert witness fees, mediators' fees, document review, court reporting and videographer services, electronic research, copying, mailing, and serving documents, and case-related travel for the plaintiffs, witnesses, experts, and counsel); *Schneider*, 336 F.R.D. at 599 (awarding expenses for experts, legal research, court reporting services, travel for depositions, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses). To the extent Joy Thomas (ECF No. 561) or Melick Cook (ECF No. 563) objects to the requested expenses, those objections fail for the reasons set forth above in addressing their fee objections, as neither identifies any specific cost as excessive or unsupported and the itemized expenses are documented in the accompanying declarations. *See supra* Part II.A.3.

### C. The Requested Service Awards Are Reasonable and Warranted

Service awards "are fairly typical in class action cases" and serve to compensate named plaintiffs for the time and effort they devoted, and the risks they assumed, on behalf of the class. *Rodriguez*, 563 F.3d at 958–59. Courts in this Circuit regularly approve such awards. *See Online DVD-Rental*, 779 F.3d at 943; *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Each of the four Plaintiffs—Asif Kumandan; Melissa Spurr, individually and as guardian of B.S., a minor; Lourdes Galvan; and Eleeanna Galvan—seeks a service award of $10,000. These awards are well earned. Plaintiffs actively participated in the litigation over a period of six years: they assisted in the investigation and preparation of the claims, responded to requests for production of documents and interrogatories, produced documents, sat for their depositions, consulted with counsel, and stayed apprised of the litigation and the Settlement, all in the interest of the class. The specific contributions of each Plaintiff are detailed in their accompanying

13

declarations. *See* Declaration of Asif Kumandan; Declaration of Melissa Spurr; Declaration of Lourdes Galvan; Declaration of Eleeanna Galvan.

The requested $10,000 awards are reasonable in amount and consistent with awards routinely approved in this District. *See Barrett*, 2025 WL 1002786, at *4 (approving $10,000 service awards to each of four plaintiffs, noting their discovery efforts and active participation in the litigation); *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 4804974, at *6 (N.D. Cal. Nov. 15, 2024) (approving and noting $10,000 service awards to each of two plaintiffs as reasonable, noting their discovery efforts and active participation in the litigation). Collectively, the four service awards total $40,000—less than 0.06% of the $68,000,000 Settlement Fund—and will not meaningfully reduce the recovery available to the class. *See id.* at *6 (total requested service awards amounted to 0.17% of settlement fund). *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (total requested service awards were 0.56% of settlement fund). To the extent Joy Thomas (ECF No. 561) or Melick Cook (ECF No. 563) objects to the requested service awards, those objections fail for the reasons set forth above in addressing their fee objections, as neither identifies any basis to find the awards excessive and each award is modest, consistent with awards routinely approved in this District, and supported by the named Plaintiffs' documented participation in the litigation. *See supra* Part II.A.3.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court enter an order: (1) awarding attorneys' fees of one-third of the $68,000,000 Settlement Fund, or $22,666,666.67, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; (2) awarding reimbursement of litigation expenses of $1,021,738.40, plus interest on such amounts awarded at the same rate as earned on the Settlement Fund until paid; and (3) approving service awards of $10,000 to each of the four Plaintiffs.

Dated:  July 23, 2026

Respectfully submitted:

*/s/ Erin Green Comite*
Erin Green Comite (*pro hac vice*)
Joseph P. Guglielmo (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Telephone: 212-223-6444
Facsimile:  212-223-6334
ecomite@scott-scott.com
jguglielmo@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
**LEXINGTON LAW GROUP**
503 Divisadero Street
San Francisco, CA 94117
Telephone: 415-913-7800
Facsimile:  415-759-4112
mtodzo@lexlawgroup.com

Edward K. Wood, Jr. (*pro hac vice*)
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238
Telephone: 205-612-0243
Facsimile:  866-747-3905
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026 the foregoing document entitled Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Application for Service Awards was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

 /s/ *Erin Green Comite*
Erin Green Comite

PLAINTIFFS' COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS' APPLICATION FOR SERVICE AWARDS
CASE NO. 5:19-cv-04286-BLF