Nathaniel Smith
*Objector Pro Se*
1623 W Dion Drive
Anthem, AZ 85086
(602) 502-3606
nathan.y.smith@gmail.com

FILED
SEP 01 2026
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA,**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION,<br><br>This Document Relates to: ALL ACTIONS | Case No. 5:19-cv-04286-BLF<br><br>**OBJECTION OF SETTLEMENT CLASS MEMBER IN RE GOOGLE ASSISTANT PRIVACY LITIGATIONTO THE PROPOSED SETTLEMENT, PLAN OF ALLOCATION, CLAIMS PROCESS, AND MOTION FOR ATTORNEYS' FEES; DECLARATION AND EXHIBITS A–J; ADDENDUM A** |

**PRELIMINARY STATEMENT REGARDING PREPARATION**

I am not a lawyer. I am a software engineering leader by trade and, since the products' introduction, a heavy user of the Google Assistant ecosystem. As of this writing, 107 devices are registered in my Google Home environment, including Google Assistant speakers and displays alongside third-party smart switches, dimmers, fan controls, sensors, and cameras. I am a member of both Settlement Classes. This Objection began not as opposition but as an attempt to comply. I sat down to complete the Claim Form. The questions the form raised sent me to the Plan of Allocation (ECF No. 549-2, Ex. E), and the questions the Plan raised sent me through the approval and fee papers. What follows is the product of that inquiry. It is probative in origin, not adversarial.

My profession also informs how I read the allegations themselves. Wake-word detection is a confidence-threshold system, and false accepts are an expected engineering tradeoff. A device that leans toward activation on an ambiguous "OK" is making a defensible design choice, and I do not fault the misfire itself. Nor do I fault layered analysis: cascaded detection, secondary verification, and human classification of edge cases are how these systems are made better, and a program that routes samples to reviewers to label misfires is defensible engineering, at least when users are told it exists. The fault line is what the allegations describe happening after the misfire is identified. A recording captured by a false accept is identifiable as such after the fact; identifying them is the very task the reviewers were performing. Once a recording is identified as a misfire, the engineering purpose is served by the label, not by the recording. Taking the allegations as pleaded, what followed admits of no benign engineering explanation: "even after Google discovers that it has wrongly recorded a conversation, it nonetheless keeps and analyzes the recording," ECF No. 141 ¶105, and "the information gleaned from these recordings was wrongly transmitted to third parties for targeted advertising and other purposes," *id.* ¶8. Retaining identified misfires and putting their content to commercial use reflects negligence or deliberate choice. There is no innocent third possibility, and neither is acceptable from one of the most sophisticated software engineering organizations on earth. I acknowledge that Google denies the allegations and that settlement is no admission. The point is one of valuation, and it frames

everything below: the releases in this Settlement extinguish claims over conduct of that character, for every consumer in the country, at the prices described in Section II. A recovery this small, for alleged conduct this serious, from a defendant this capable, does a disservice not only to the class but to the public whose privacy these laws exist to protect. The seriousness of what is being released is exactly why the price of the release matters.

Absent class members are entitled to test the fairness of a settlement negotiated on their behalf. The economics of a case like this one all but guarantee that none will. Retaining counsel is beyond most class members' means, and for a recovery measured in tens of dollars it would be irrational even for those who could afford it. No one hires a lawyer to protect a claim worth less than the lawyer's first quarter hour. The predictable result is that settlements of this kind reach final approval without adversarial testing, at precisely the stage where the Ninth Circuit directs the Court to act as a fiduciary for the class, and too often the only parties made whole are the defendant and the lawyers. I recognize that the law is not always fair, nor is fairness always the law. But Rule 23(e) makes fairness the question before the Court, and this Objection is addressed to that question.

The questions raised here were found in the record. The Plan is measured against Plaintiffs' own damages model. The fee request is measured against Counsel's own comparator cases and rate declarations. The claims process is measured against a factual assertion in Counsel's own briefs, one that my own Google account disproves. Every quotation and citation was personally verified by me against the identified source before signing. Addendum A catalogs, item by item, the provenance of each: the exact text relied upon, its source, a public link, and, where a conclusion is synthesized from multiple sources, the constituent quotations and the reasoning from source to conclusion. No comparable provenance record accompanies the representations this Objection examines. I sign under the obligations of Rule 11, and this Objection is my own.

I raise these issues in good faith and without hostility to Class Counsel, who obtained a recovery after years of contingent work. I raise them because the device cap and the serial-number

requirement are, respectfully, plainly flawed, and because I am not alone in that view. Public reaction among class members, compiled at Exhibit I, reflects the same concerns, down to notices of this very settlement arriving in Gmail spam folders. Other class members have already filed objections of record. ECF Nos. 561, 563. Objector takes no position on, and does not adopt, the arguments in those filings. He cites them for a narrower reason: they show that dissatisfaction within the class is real, expressed even by members without counsel or the tools to develop a record. That is what the representation gap described above produces, and this Objection attempts to supply what it leaves missing. I simply happen to be one of the few positioned to put these concerns before the Court with the record they deserve. The fairness of a class settlement depends on someone examining it from the class's side of the table. That examination is what this Objection offers. On the record set out below, I respectfully but strenuously object.

## I. INTRODUCTION AND STATEMENT OF CLASS MEMBERSHIP

Pursuant to the Notice of Proposed Class Action Settlement and Federal Rule of Civil Procedure 23(e)(5), Settlement Class Member Nathaniel Smith ("Objector") respectfully objects to final approval of the proposed Settlement. The Class Notice states: "If the Court does not approve the Settlement, no Settlement payments will be made, and the lawsuit will continue." That is what Objector asks. The $68,000,000 fund is inadequate relative to the value of the certified claims it releases, measured against the record and the peer-reviewed valuation literature, including refinements of the very study Plaintiffs' Counsel selected (Section II). In the alternative, if the Court approves the Settlement, Objector objects to the three-device cap in Paragraph 7(a)(i) of the Plan of Allocation (Section III), to the Claim Form's serial-number requirement (Section IV), and to the above-benchmark attorneys' fee request (Section V). Each of those provisions independently reduces the recovery of the consumers this Settlement exists to compensate.

Objector is a member of both the Purchaser Settlement Class and the Privacy Settlement Class. Between May 18, 2016 and March 19, 2026, Objector purchased **eleven (11) Google-Made**

**Devices** in the United States, as that term is defined in the Settlement Agreement, across seven separate documented orders:

| # | **Device (as identified on the receipt)** | **Qty** | **Retailer** | **Order date** | **Price** |
|---|---|---|---|---|---|
| 1 | Google Home Hub - Charcoal (SKU GA00515-US) | 1 | Best Buy #1481 | Oct. 24, 2018 | $149.00 |
| 2 | Google Nest Hub Max - Charcoal (SKU GA00639-US) | 1 | Best Buy #1481 | Oct. 23, 2019 | $229.99 |
| 3 | Nest Mini (Chalk) | 4 | Google Store | Oct. 23, 2019 | $49.00 ea. |
| 4 | Nest Hub (Chalk) | 2 | Google Store | Nov. 21, 2020 | $89.99 ea. |
| 5 | Nest Hub Max (Chalk) | 1 | Google Store | Jan. 22, 2021 | $229.00 |

| | | | | | |
|---|---|---|---|---|---|
| 6 | Pixel 5a with 5G (128GB, Unlocked) | 1 | Google Store | Dec. 9, 2021 | $449.00 |
| 7 | Google Pixel Tablet with Charging Speaker Dock | 1 | Amazon | Sept. 6, 2023 | $599.00 |
| | **Total** | **11** | | | **$2,031.97** |

Prices in the table are the product line-item price stated on each receipt. Where a receipt attributes a discount to the product itself, that product-attributed price governs. For example, the receipt for a Google-manufactured product Objector does not claim (a Fitbit Sense 2) displays "$229.95 $299.95" on the product line and states beneath the item, "You got $70.00 off this item with a promotion." That attribution matches the order's $70.00 discount to the cent. Where a discount appears only as an unattributed order-level adjustment in a receipt's totals block, it does not reduce any device's price. The Pixel 5a receipt states a line price of $449.00; its totals block then shows "Discount: −$50.00" attributed to no product, immediately beside "Tax: $34.31." Order-level adjustments, taxes, and shipping are all components of the amount paid on an order. None is the price of a device. If unattributed order credits reduced a device's price, the tax line in the same block would have to increase it. Smith Decl. ¶5 & Ex. G.

The Google Home Hub is the original retail name of the device later marketed as the Nest Hub. It is the same smart display expressly enumerated in the Settlement's definition. Eight of the eleven devices were purchased directly from the Google Store. Three were purchased from Best Buy and Amazon, authorized third-party retailers within the meaning of the Settlement. Objector

purchased additional Google-manufactured hardware during the Class Period that he does **not** claim, because Google Assistant is neither pre-installed on nor downloadable to those products and they fall outside the definition of "Google Assistant Enabled Devices." Objector states his device count conservatively and by model so that the Court and the Parties may verify it.

Proof of class membership: Objector's **Unique ID** from the Court-approved email notice is **KCLF7DTN**, and the Google account email associated with Objector's Google Assistant Enabled Devices is nathan.y.smith@gmail.com. Purchase documentation for all eleven devices is attached as **Exhibit G**. Objector has timely submitted Claim Forms by mail, concurrently with this Objection, for himself and, as parent and guardian, for his two minor children. The Notice expressly permits objectors to do so (Long Form Notice Q.28: "If I object to the Settlement, can I still file a claim? Yes."). Objector submits this Objection because the recovery available to the Settlement Classes, Objector included, is inadequate whether or not any individual claim is paid.

## II. THE SETTLEMENT AMOUNT IS INADEQUATE UNDER RULE 23(E)(2)(C) BECAUSE THE "EXCELLENT RESULT" RESTS ON A TRIPLY-UNDERSTATED VALUATION

Rule 23(e)(2)(C)(i) permits approval only if "the relief provided for the class is adequate, taking into account ... the costs, risks, and delay of trial and appeal." The touchstone, per the Ninth Circuit authority Plaintiffs themselves invoke, is "the benefit to the class": "class counsel can only reap rewards if they have delivered results for class members." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025) (cited at ECF No. 566 at 3). The result here is presented to the Court through a single ratio: that $68,000,000 recovers "between approximately 15.15% and 56.67% of the maximum recoverable damages." ECF No. 567; ECF No. 566 at 1, 9; Joint Decl. (ECF No. 566-1) ¶12. That ratio's denominator is $448,800,000, a $3.74 price premium across 120 million Google-Made Devices. The denominator is understated in three independent, documented respects. Corrected in any one of them, the true recovery falls to a small fraction of class damages, and the Rule 23(e)(2)(C) balance tips against approval.

**First, the $3.74 figure is drawn from the low side of a gap its own source exists to document.** The premium comes from Gopavaram et al., "IoT Marketplace: Willingness-To-Pay vs. Willingness-To-Accept," WEIS 2021 (cited at ECF No. 549-1 ¶53 n.1). As the study's title states, it measures the divergence between willingness to pay (the price of acquiring privacy one lacks) and willingness to accept (the price of surrendering privacy one possesses). That divergence is a settled finding of the behavioral economics literature on privacy. Grossklags & Acquisti, "When 25 Cents is Too Much: An Experiment on Willingness-To-Sell and Willingness-To-Protect Personal Information," WEIS 2007, report: "We find a significant gap between WTA and WTP. In fact, the ratio between WTA and WTP is as large as 105; a dramatic gap even in comparison to the related literature in behavioral economics." The certified breach-of-contract claim is a WTA scenario. Class members possessed the contractual assurance that Assistant listens only after intentional activation, bundled into devices they had already bought, and it was allegedly taken from them. Valuing that loss by the WTP figure systematically understates it, by the study's own central finding. Objector does not ask the Court to adopt the documented gap. Even a five-fold adjustment, less than one-twentieth of the documented 105:1 gap, yields a corrected per-device value of $18.70, classwide damages of approximately $2.24 billion, and a Settlement recovery of approximately 3%.

**Second, the figure is a general-IoT average, while device-specific and methodologically stronger research values the precise attributes at issue at three to ten times more.** Emami-Naeini, Dheenadhayalan, Agarwal & Cranor, "Are Consumers Willing to Pay for Security and Privacy of IoT Devices?," 32nd USENIX Security Symposium (2023), used an incentive-compatible design (multiple price list) specifically to eliminate the hypothetical bias that inflates survey-based WTP. That is a method built to produce conservative figures. It priced privacy attributes on a smart speaker with a voice assistant, the very product category at the center of this case. The two attributes matching Plaintiffs' allegations were each valued at roughly triple the $3.74 premium: participants paid an $11.80 premium for data shared with no one rather than third

parties, and $11.79 for data collected for functionality only rather than monetization. The most protective bundle commanded $33.63 to $38.36. At even the single-attribute value of $11.80 per device, classwide damages on Plaintiffs' own 120-million-device estimate are approximately $1.42 billion, of which the Settlement recovers under 5%. That the study's baseline device was priced at $60 makes the figure conservative as applied here, not aggressive. The premium is a function of the privacy attribute, and eight of Objector's eleven devices carried a retail price at or above that baseline, three of them at $229 or more.

**Third, the figure is a nominal 2021 number applied without adjustment across a decade-long Class Period, in the same filings whose lodestar is computed "at current hourly rates."** ECF No. 566 at 9; Joint Decl. ¶22. Counsel invokes the time value of money for their own compensation, as the law permits. *Missouri v. Jenkins*, 491 U.S. 274, 283–84 (1989). The class's per-device value receives no equivalent adjustment. Cumulative CPI-U inflation from June 2021, when the Gopavaram study was presented, through July 2026, the most recent month published, is **22.9%** (CPI-U, U.S. city average, all items, not seasonally adjusted: 271.696 to 333.918; *see* Smith Decl. Ex. H, BLS CPI Inflation Calculator: $271.70 in June 2021 "has the same buying power as" $333.92 in July 2026). That places the same premium at **$4.60** in current dollars and the denominator at approximately **$551.6 million**, reducing the recovery to 12.33% before either correction above is applied. Time-value for counsel and nominal dollars for the class is not equitable treatment of the parties whose recovery this Settlement fixes.

Taken together, the corrections produce the following:

| **Valuation basis** | **Per device** | **Classwide damages (120M devices)** | **$68M recovers** |
|---|---|---|---|
| Plaintiffs' figure, as filed (Gopavaram WTP, nominal 2021) | $3.74 | $448,800,000 | 15.15% |

| | | | |
|---|---|---|---|
| Same figure, adjusted to July 2026 dollars (CPI-U) | $4.60 | $551,600,000 | 12.33% |
| Device-specific single attribute (Emami-Naeini 2023) | $11.80 | $1,416,000,000 | 4.80% |
| WTA correction at a conservative five-fold adjustment (documented gap: up to 105:1) | $18.70 | $2,244,000,000 | 3.03% |
| Device-specific protective bundle (Emami-Naeini 2023) | $33.63 | $4,035,600,000 | 1.69% |

Objector does not ask the Court to adopt any particular row. He asks it to observe that Plaintiffs selected the top one, and that every methodologically defensible alternative moves the recovery down. That includes the mere application of inflation to Plaintiffs' own number.

The risk side of the Rule 23(e)(2)(C) balance does not close this gap. The Purchaser Class is certified (ECF No. 414, Order Granting in Part and Denying in Part Class Certification). Google's belated motion to compel arbitration was denied on waiver grounds after four years of litigation (ECF No. 420). The case was trial-ready for September 2025. Four months before this Settlement was signed, a jury in this District returned a $425.7 million verdict against this same Defendant

on comparable consumer-privacy claims. *Rodriguez v. Google LLC*, No. 3:20-cv-04688-RS (N.D. Cal.) (verdict Sept. 3, 2025). Nor were the allegations speculative when filed. The operative complaint pleads the July 2019 whistleblower disclosures reported by Belgian broadcaster VRT NWS: that Google collected Assistant recordings "in numerous instances where a hot word is never spoken," used them "for its own commercial and financial benefit," and "discloses these recordings to subcontractors." ECF No. 141 ¶¶7–8. It further pleads that a Google Home alerted a user that it "had detected a smoke alarm going off," that Google possessed the capability to detect ambient events without activation and did not disclose it, and that "in 2020 Google also configured the Google Home to record audio from users' homes, and to transmit that data to Google for processing, all without any activation command being spoken." *Id.* ¶¶9, 107, 289. Summary judgment risk is real, but it is the ordinary risk of every certified class case. It does not convert a low-single-digit recovery of conservatively measured damages, accompanied by a nationwide release of the uncertified privacy claims for one point apiece, including for minor Household Members, as to whom consent-based defenses are weakest, into an adequate one.

Objector recognizes, as the Notice states, that the Court cannot order a different settlement; it can only approve or reject. Objector respectfully submits that rejection serves the Settlement Classes better than approval of the present fund, because rejection returns the parties to a posture in which the certified class's claims must be repriced against the corrected record.

## III. IN THE ALTERNATIVE: THE THREE-DEVICE CAP CONTRADICTS PLAINTIFFS' OWN DAMAGES MODEL AND THE STATED RATIONALE FOR THE PLAN'S POINT VALUES

If the Court approves the Settlement, the Plan of Allocation should not be approved as proposed. A plan of allocation must be fair, reasonable, and adequate and must treat class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). As Plaintiffs' own briefing acknowledges, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their

injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (quoted at ECF No. 549 at 31; ECF No. 567 at 17). Paragraph 7(a)(i) assigns four points per eligible Google-Made Device "up to a maximum cap of three (3) Google-Made Devices." The fourth and every subsequent documented purchase is assigned a value of zero.

The cap contradicts the rationale Plaintiffs themselves offer for the point values. The final approval motion justifies the four-point value as "consistent with the approximately $4.00 per Google-Made Device purchased that was potentially available to the Purchaser Settlement Class had their claims succeeded at trial." ECF No. 567 at 17; *accord* ECF No. 549 at 23. That figure is the $3.74 per-device premium under which classwide damages of $448,800,000 were computed as $3.74 multiplied by every one of the estimated 120 million devices purchased, with no per-purchaser cap. Joint Decl. ¶12; ECF No. 549-1 ¶53. The arithmetic admits of no other reading: $448,800,000 ÷ $3.74 = 120,000,000, the full device population. Under Plaintiffs' own model, Objector's fourth through eleventh devices carried precisely the same trial value as his first three. Eleven devices at four points each is forty-four points. The cap forfeits thirty-two of them, 72.7% of Objector's certified claim. If, as Section II demonstrates, the model understates true per-device injury by a factor of three or more, the cap zeroes out value that is greater still. A Plan whose stated logic is that points mirror per-device trial value cannot coherently assign the fourth device a value of zero under any version of that value. The cap is not obscure to the class. As members discussing this settlement in a public forum put it: "I think they only allow you to enter in 3 items anyway"; "I bought 6 devices, and I don't have access to 3 of them any more." Ex. I-3.

Nor can the cap be justified by relative claim strength, the only distinction the approval papers defend. The Purchaser Settlement Class's claims are the certified breach-of-contract and UCL unlawful-prong claims (ECF No. 414 at 31). They are identical in strength for every device a class member purchased. The strength rationale explains why a Privacy point is worth less than a Purchaser point. It cannot explain why an identically situated purchase is worth nothing. Plaintiffs'

own authorities confirm it. Every allocation case cited in support of the Plan involved reduced weighting of weaker claims, never a zero-out of claims of identical strength. *See In re Lithium Ion Batteries*, 2020 WL 7264559, at *16 (N.D. Cal. Dec. 10, 2020) ("limited recovery" for weaker claims "not finally foreclosed");* In re Xyrem (Sodium Oxybate) Antitrust Litig., *2025 WL 3004046 (N.D. Cal. 2025) (weaker purchases "weighing substantially less," not nothing);* In re Oracle Sec. Litig., *1994 WL 502054, at* 1–2 (N.D. Cal. June 18, 1994) (stronger claims "recover a correspondingly larger portion"). The as-is Plan has no comparator in Plaintiffs' own briefing. Counsel's own "substantially similar case" makes the point concretely: in *Lopez*, the same firms negotiated a claims structure permitting recovery on up to **five** devices per class member. Ex. J. Nothing in this record explains why identical claims against Google support three.

Fraud prevention and administrability cannot rescue it. The Plan already contains device-by-device safeguards: perjury attestation (Plan ¶¶2, 13), audit and documentation demands with rejection for noncompliance (Plan ¶14), and per-device proof of purchase. A claimant documenting eleven purchases presents no greater fraud risk per device than one documenting three. To the extent any cap were justified by documentation gaps, the answer is a reasonable proof standard, not forfeiture. The Ninth Circuit has recognized that consumers rarely retain records of routine purchases and that administrators reliably validate claims through attestations cross-checked against a defendant's own records. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128–32 (9th Cir. 2017). A dated receipt, order confirmation, or card statement identifying the device model is competent proof of purchase even where the device has since been sold, particularly because Google's own records permit corroboration.

Because payment is pro rata from a fixed, non-reversionary Net Settlement Fund, the cap does not save money for the class. It silently redistributes money from the class members Plaintiffs' own model values most to those it values least. That is precisely the unequal treatment Rule 23(e)(2)(D) directs courts to scrutinize. The Court need not select a measure of injury to see the defect. Measured by Plaintiffs' certified model, extent is device count, uncapped. Measured by

dollars actually paid to Google, the payments that define this class, extent is documented spend. The as-is Plan is consistent with neither. Either cure restores the Plan to a recognized measure of injury: uncapped per-device points, or points weighted by documented purchase price, which the already-required proof of purchase states at no added claimant burden. Assigning documented purchases a value of zero is supported by none.

Finally, the cap does not operate alone. As Section IV explains, the Claim Form independently conditions payment on a hardware serial number that many class members cannot supply. The two mechanisms compound. A class member who purchased eleven eligible devices may claim three, and of those three, any device bought from an authorized third-party retailer may be unclaimable for want of an identifier the retailer never printed. Together they can convert a fully documented eleven-device claim into payment for as few as zero devices, without any determination that a single one of those claims is invalid.

## IV. IN THE ALTERNATIVE: THE CLAIM FORM'S SERIAL-NUMBER REQUIREMENT IS AN UNDULY DEMANDING CLAIMS-PROCESSING CONDITION THAT FORFEITS VALID CLAIMS ON A GROUND UNRELATED TO INJURY

**A. The requirement.** The Claim Form conditions payment on the claimant's production, for each device, of a "Serial Number or IMEI Number." Claim Form at 4. It imposes the identical condition on the Privacy Settlement Class, which must supply "the device type, model name, and serial number or IMEI number ... for the applicable Google Assistant Enabled Device in your Household." *Id.* at 5. The requirement is mandatory in terms ("You must provide") and appears as a dedicated column in the claim table, not as an optional aid to verification.

**B. The Court was told the requirement was costless. The record shows otherwise.** Rule 23(e)(2)(C)(ii) directs the Court to assess "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Advisory Committee's 2018 note cautions that while a claims process should deter unjustified

claims, "the court should be alert to whether the claims process is unduly demanding." Plaintiffs invoked that standard and discharged it with a single factual assertion, repeated verbatim at both approval stages: that serial numbers "are readily available in their Google accounts." ECF No. 549 at 19; ECF No. 567 at 13. That assertion is supported by no declaration from Google, from Class Counsel, or from the Claims Administrator. It is also incorrect, as Objector's accompanying Declaration establishes from his own account.

*The representation is true, at most, for the class members who needed it least.* The only place in a Google account where serial numbers appear at all is the Google Store order history, and only for devices purchased directly from Google. Objector's own direct-purchase receipts list serials; his third-party retail receipts do not. Smith Decl. ¶¶4–5 & Ex. G. That is a purchase record for one sales channel, not an account feature for the class. The class, by design and by court order, is broader. When Google moved to narrow the Purchaser Class to "individuals who bought devices manufactured and sold directly by Google," Plaintiffs opposed the motion, and the Court "denied it, holding that the Purchaser Class consists of users of devices sold by Google as well as by third-party retailers." Joint Decl. (ECF No. 566-1) ¶19; ECF No. 549-1 ¶32 (citing ECF Nos. 461–463). Counsel lists that ruling among their achievements in support of their fee. The claims process they then designed conditions payment on an identifier that, on their own "readily available" theory, only the direct-purchase segment can retrieve. Plaintiffs won third-party purchasers a place in the class and then built a claim form those purchasers cannot complete from the records the class was told to consult. Class members discovered the same channel split in real time. "If you happen to have bought your devices from the Google Store you can go to your order history and find them. They also show you the serial number for the device in the order summary. That's how I got mine." Ex. I-4. "I was able to screenshot from the Google store my purchased devices. Thank goodness I purchased through that otherwise I wouldn't have done it." *Id.* "I bought mine from different places. It doesnt even give me the serial numbers in the home app." *Id.* One member reported purchasing a Nest Hub from a third-party retailer in 2023, retaining the box but not the receipt,

and finding that neither the retailer nor his credit card company kept records past two years. *Id.* Nor is Objector someone who lacked the sophistication to look. He works in software engineering and administers a Google Home environment of 107 registered devices. If serial numbers were available in the account, he would have found them. Smith Decl. ¶3.

*The Google Home application does not display serial numbers.* The application's "Device information" screen identifies a device only by its user-assigned name and room placement, such as "Kitchen Hub" or "Back Porch speaker." It displays no model designation of any kind. Its section captioned "Technical information" lists exactly five fields: the system firmware version, the Cast firmware version, the device language, the MAC address, and the IP address. Smith Decl. ¶6 & Exs. A–B (two such screens from Objector's account). No serial number appears. The omission is not an artifact of navigation. In the section expressly captioned as the device's technical identifiers, Google surfaces every identifier it considers relevant, and neither a serial number nor even a model name is among them.

*Google's own published instructions confirm the number is not available in the account.* Google Home & Nest Help instructs users that the serial number for a Nest Mini, Nest Audio, or Google Home speaker is located "on the bottom of the device on the outer edge"; for a Home Max, "etched into the back of the device, below the Google 'G' logo"; and for a Nest Hub and Nest Hub Max, "etched into the bottom of the device's stand, below the Google 'G' logo." The article further states the number appears on a sticker on the retail packaging. Smith Decl. ¶10 & Ex. F. Google identifies no method of retrieving a serial number through the Google Home application or a Google Account. Compliance therefore requires a class member either to have retained retail packaging from a purchase made as long as eight years before notice, or to physically locate each device, disconnect it, invert or dismount it, and transcribe characters etched into the underside of its base or stand. For devices no longer in the class member's possession, whether sold, gifted, recycled, returned, or discarded across a class period beginning May 18, 2016, it cannot be done at all.

*The Google Account device list excludes the devices at issue entirely.* The "Your devices" page states its own scope: "You're signed in on these devices or have been in the last 28 days." Smith Decl. ¶9 & Ex. E-1. On Objector's account, the page lists Windows computer sessions and third-party Samsung devices. Not a single Google Assistant speaker or display appears, despite multiple such devices in active daily use in Objector's home. A device purchased in 2018, used for years, and since retired does not appear; neither, on this record, do the ones still plugged in. The only devices for which the account interface displays any hardware identifier at all are third-party devices. The device-settings page for Objector's Samsung Galaxy S25 Ultra displays the model designation and the device's IMEI. Smith Decl. ¶8 & Ex. D. The device-settings page for Objector's Google Pixel Tablet, on the same account, in the same interface, on the same day, displays only a device name and a registration date. *Id.* ¶7 & Ex. C. The Google Account device-activity page for that same Pixel Tablet likewise displays a location, a first sign-in date, and recent activity, and no identifier of any kind. *Id.* ¶9 & Ex. E-2. The interface is plainly capable of surfacing a device identifier. It does not do so for the class of devices this litigation concerns.

The Settlement Class expressly includes purchasers of Google-Made Devices sold "either directly or through third-party retailers." Claim Form at 1. Objector purchased three qualifying devices from authorized third-party retailers. Their receipts establish model, date, price, and purchaser. They contain no serial number, because retail point-of-sale receipts do not print one. Smith Decl. ¶4 & Ex. G. The Settlement admits those purchasers into the class by definition and then conditions their recovery on a data element that neither their purchase records nor their Google accounts contain.

**C. The defect is most acute for the Privacy Settlement Class.** A Household Member qualifies for that class precisely because they are not the User who maintains the device. They are a spouse, a child, or a housemate whose communications were captured by a device registered to another person's Google account. Requiring that person to produce the device's hardware serial number demands information that class membership itself presupposes they do not control. The

requirement is not merely demanding as to them. In the ordinary case it is impossible. Smith Decl. ¶13. The burden lands hardest on exactly the households the Privacy Class was built for: "It's a struggle for me to make seperate claims for each device and each minor dependant in the home who may be effected by this. I keep working on it, hopefully I'll complete this task before the deadline." Ex. I-4 (errors in original).

**D. The requirement serves no verification function the Settlement does not already discharge.** Whatever screening value a serial number might add is supplied three times over. Every Claim Form is sworn subject to penalty of perjury, and false statements or forged documentation "result in the rejection of a claim." Plan ¶13. The Claims Administrator "may request any Settling Class Member ... to provide documentation to support any aspect of the claim submission" and "may require specific documentary evidence to independently verify the details of the claim submission," with failure to comply resulting in rejection. Plan ¶14. And Purchaser Class members must independently submit proof of purchase, the feature of the claims process for which Plaintiffs cite *Shay v. Apple, Inc.*, 2024 WL 1184693, at \9 *(S.D. Cal. Mar. 19, 2024). Plaintiffs' own parenthetical describes* Shay *as "granting final approval and overruling objection to the requirement that class members submit proof of purchase with their claim," and quotes its reasoning: "courts have generally upheld proof of purchase requirements in such class action settlements, as these requirements ensure that payment is properly made to individuals belonging to the settlement class." ECF No. 549 at 19;* accord *ECF No. 567 at 13.* Shay, *as Plaintiffs themselves present it, addressed proof of purchase. It did not address, and provides no support for, a hardware-identifier requirement layered on top of proof of purchase. Counsel's own substantially similar settlement supplies the workable standard this Objection requests, in its claim form's own words: "If you have proof of purchase for a device (e.g., a receipt or invoice) you may upload it or attach it to the Claim Form and do not need to fill out any other information for that device." Ex. J-2. A serial number was the alternative, not an added requirement: "If you have the serial number, please provide the serial number for that device and the model name."*

Id.* The same firms, for the same alleged conduct, treated proof of purchase alone as sufficient verification one year ago. Relief item 3 asks for nothing more than what they have already administered.

Google, moreover, possesses the device-registration records against which any claim can be checked. That is the premise of Plaintiffs' own representation that serials are "readily available" in class members' Google accounts. If the data resides in Google's systems, verification does not require the class member to retrieve it. A requirement that shifts a verification burden onto the claimant when the defendant already holds the verifying data is the paradigm of an unduly demanding process. Class members see it plainly. As one put it in a public forum discussing this settlement: "Really fun that this is one of those things where they know everyone that is qualified, but still requires you to prove you qualify." Ex. I-3. The most-endorsed comment on a thread titled "Anyone else skipping the google assistant privacy litigation settlement?" makes the same point from the merits: "If they have recordings from a device linked to my account that they should not have, then THEY have the data needed to know who should be paid out. It's honestly ridiculous." Ex. I-4. Nor is a serial number a fraud control. A fabricated serial number is no harder to type than a genuine one. The requirement screens for recordkeeping diligence, not for honesty.

**E. The forfeiture is unreviewable.** The consequence is not merely inconvenience. Under Plan ¶15, "[a]ll decisions by the Claims Administrator with respect to the administration, processing, and determination of claims are final," and "[a]ll Claimants expressly waive trial by jury ... and any right of appeal or review with respect to the Claims Administrator's determination." A class member whose otherwise valid, fully documented claim is rejected for want of a hardware identifier he cannot obtain has no recourse of any kind. Where a claims condition is both unsatisfiable for an identifiable segment of the class and insulated from review, Rule 23(e)(2)(C)(ii) scrutiny is at its height.

**F. The redistribution is the same as the cap's.** Because the Net Settlement Fund is fixed and non-reversionary, a claim forfeited for want of a serial number returns nothing to Google. It

redistributes that class member's share pro rata to the remainder and raises the average per-claimant figure the Court will be shown at final approval. Like the three-device cap, the requirement operates as a silent transfer among class members on a ground bearing no relationship to the existence or strength of the underlying claim.

**G. The claims process operated against impaired notice delivery.** Objector's own email notice was delivered to his Gmail spam folder. Smith Decl. ¶14. He was not alone. Contemporaneous technology press documented the same pattern classwide. "Google Assistant users have started receiving emails to claim their part of a $68 million privacy settlement, but reports suggest the messages are ending up in spam folders." Ex. I-1 (Android Authority, June 4, 2026). "Notice to file against Google in a class action lawsuit is in your GMail spam folder. ... That notice is in your spam folder most likely, it was in mine." Ex. I-2 (Pocketables, May 21, 2026). A discussion thread titled "Google sent the email about their class action lawsuit against them to spam folder" drew 132 endorsements. Ex. I-3. Even class members who found the notice doubted it: "I came here cause I noticed it in my spam. In all defence, the email looks fake ...." Ex. I-3. And the friction did not end at the inbox: "Spent an hour entering info on 2 devices only for it to crash when I hit submit." Ex. I-4; *accord id.* ("Just resets every time I try to submit the form."). A compilation of this coverage and public class-member discussion, printed by Objector from the original sources, is attached as Exhibit I. Objector does not raise an independent notice challenge; the Court has the Administrator's reach declarations. The point is narrower. The demanding claims process examined in this Section operated on a class whose notice, for an unknowable share of its members, arrived pre-flagged as junk by the Defendant's own email service, and whose claim portal failed some of those who tried to comply. Every burden this Section describes compounds against that baseline.

**V. IN THE ALTERNATIVE: THE FEE REQUEST SHOULD BE REDUCED TO THE BENCHMARK, WITH EVERY DOLLAR OF THE REDUCTION FLOWING TO THE CLASS**

Plaintiffs' Counsel request one-third of the Fund ($22,666,666.67), above the 25% benchmark. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The request rests on two supports: the "excellent result" and a lodestar cross-check yielding a 1.01 multiplier. ECF No. 566 at 1–2, 9, 15. Neither survives scrutiny. The difference is approximately $5.67 million, roughly a fifteen percent increase to the Net Settlement Fund, and it flows pro rata to every Authorized Claimant.

**A. The "results achieved" factor is overstated, and Plaintiffs' own authority requires the Court to measure it.** The most important *Vizcaino* factor rests on the 15.15%–56.67% ratio addressed in Section II. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Measured against a denominator corrected for the WTP/WTA gap, the device-specific valuation literature, or inflation (let alone all three), the recovery is a low-single-digit percentage of conservatively measured class damages. It is accompanied by a classwide release of the uncertified privacy claims valued at one point per person. That is a defensible settlement of risky claims. It is not the exceptional result required to depart upward from the benchmark.

Plaintiffs invoke *California Pizza Kitchen* for the proposition that "[b]ecause the entire $68,000,000 will benefit the Settlement Classes the fee is properly measured against the full common fund." ECF No. 566 at 9 (citing 129 F.4th at 679). But that decision affirmed the settlement approval before it and *reversed the fee award* "because the district court did not assess the actual value of the settlement and compare it to the fees requested." 129 F.4th at 671–72. Its touchstone is "the benefit to the class": "class counsel can only reap rewards if they have delivered results for class members." *Id.* at 679. The premise Plaintiffs draw from it, that the entire fund will benefit the Settlement Classes, is precisely the proposition Sections III and IV place in issue. The three-device cap and the serial-number requirement forfeit valid claims and thereby

determine how much of the fund reaches class members and on what terms. *California Pizza Kitchen* does not permit those mechanisms to be assumed away. It requires the value actually delivered to the class to be assessed before a fee is set against the gross figure.

This District applied that principle to this same Defendant five months ago. In *In re Google RTB Consumer Privacy Litigation*, No. 4:21-cv-02155-YGR (N.D. Cal. Mar. 26, 2026), the court found an injunctive-only privacy settlement "adequate, but by no means excellent," rejected class counsel's valuation of the benefit as "purely speculative," and reduced a $128 million fee request to $21.8 million, citing limited success and billing inefficiencies. The structure of the inquiry, not the percentage, is the point: the court measured the benefit actually delivered before setting the fee, and declined to take counsel's characterization of their own result at face value. The same discipline applied here begins with Section II's corrected denominator and Sections III and IV's forfeiture mechanisms.

**B. The lodestar cross-check must be calibrated before its 1.01 multiplier is credited.** *Bluetooth*, 654 F.3d at 944–45. Two features of the $22,477,337.50 lodestar (20,371.60 hours at current rates, Joint Decl. ¶22) warrant it.

*Rates exceeding counsel's own cited approvals.* The declarations assert the firms' rates "have been approved by California federal courts as well as ... other federal courts," Scott Decl. (ECF No. 566-2) ¶8, and "have been approved by other courts in similar matters," Levis Decl. (ECF No. 566-3) ¶5, and cite the supporting cases. Three senior timekeepers are billed above every rate approved in those citations:

| Timekeeper (Firm) | Rate here | Hours | Lodestar | Highest rate in any approval that firm cites | Excess |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| David Scott (Scott+Scott) | $3,000 | 64.7 | $194,100 | $1,975 (*Olo*, S.D.N.Y. 2024) | $66,318 |
| Vincent Briganti (Lowey) | $1,795 | 986.6 | $1,770,947 | $1,650 (*Lopez v. Apple*, N.D. Cal. 2025) | $143,057 |
| Geoffrey Horn (Lowey) | $1,795 | 145.2 | $260,634 | $1,650 (*Lopez v. Apple*, N.D. Cal. 2025) | $21,054 |
| **Total** | | **1,196.5** | **$2,225,681** | | **$230,429** |

*See* Scott Decl. ¶8 & Ex. A; Levis Decl. ¶5 & Ex. A. Approximately $2.23 million of the submitted lodestar is billed by timekeepers whose rates exceed any rate their own authorities show approved. Of that amount, **$230,429 is charged above those ceilings**. Objector presents the smaller figure as the conservative measure. Measured against rates approved in this District, the excess is larger still. The highest Scott+Scott rate any cited N.D. Cal. decision approved is $1,545, *Barrett v. Apple Inc.*, 2025 WL 1002786, at *3 (N.D. Cal. Apr. 3, 2025), against which the $3,000 rate billed here is nearly double.

*Rate support that consists of applications rather than approvals.* The Levis Declaration represents that Lowey's rates "have been approved by other courts in similar matters." Its own parentheticals describe three of its five supporting citations as fee applications reporting rates, not decisions approving them: *Fund Liquidation Holdings LLC v. UBS* ("application reporting rates between $1,500 for partners and $300 for associates"); *In re European Government Bonds*

*Antitrust Litigation* ("application including attorney rates ranging from $365 to $1,395"); *Hozza v. PrimoHoagies Franchising* ("application reporting rates between $1,015 for partners and $430 for associates"). Levis Decl. ¶5. A court awarding fees in an aggregate amount does not thereby approve each rate in the underlying application. Only *Lopez* and *Barrett* are described as approving rates. Neither approved a rate above $1,650.

*The lodestar reflects no accounting for work product shared with a contemporaneous, materially similar case.* This is a question counsel's own benchmark raises and only counsel can answer. The same two lead firms simultaneously prosecuted *Lopez v. Apple, Inc.*, No. 4:19-cv-04577 (N.D. Cal.), the parallel voice-assistant "false accept" privacy class action concerning Siri, in this same District, and were awarded fees there in October 2025. Plaintiffs' own briefing calls *Lopez* a "substantially similar case," ECF No. 549 at 22, and relies on that similarity to benchmark both their rates and the requested service awards. Objector does not suggest that any hour was improperly recorded, and this is not an accusation of duplicative billing. It is a question the record as filed cannot answer, and the similarity counsel themselves invoke necessarily raises it. When the same firms prosecute two matters they describe as substantially similar, in the same District, on overlapping timelines, and each matter generates a full, independent lodestar, the Court is entitled to know how the shared foundation was accounted for before either lodestar is treated as a measure of case-specific investment. The shared foundation includes legal research, pleading architecture, certification strategy, and expert frameworks common to both. A near-1.0 multiplier on an unexamined lodestar is not probative of anything. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, ... the district court must assume the role of fiduciary for the class plaintiffs" and must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994), an authority on which Plaintiffs' Counsel themselves rely, ECF No. 566 at 4). That fiduciary obligation supplies the

action this record requires: a direction that Class Counsel submit a supplemental declaration identifying the categories of work uniquely expended in this Action and confirming how work product shared with *Lopez* was apportioned between the two engagements.

One further observation should not be lost on the Court. The Settlement's two proffered validations arrive at conspicuously convenient values: a recovery ratio whose floor is 15.15% of maximum damages, and a fee multiplier of 1.01. Objector does not suggest coordination. He observes that neither number is an independent check. The ratio's denominator is a valuation Counsel selected (Section II), and the multiplier's lodestar is a composition Counsel controlled (this Section): hours accrued through their chosen cutoff, billed at current rates of their chosen level. Two figures computed from inputs the same advocates chose cannot verify each other, however reassuring each looks standing alone.

Objector requests that fees be awarded at no more than the 25% benchmark, with the cross-check recomputed at rates counsel's own authorities support and evaluated only after the supplemental declaration described above is filed.

## VI. REQUESTED RELIEF

Objector respectfully requests that the Court:

1. **Decline to grant final approval of the Settlement**, on the ground that the $68,000,000 fund is inadequate under Rule 23(e)(2)(C)(i) relative to the corrected value of the certified claims released, so that the parties must reprice the Settlement Classes' claims against the record set forth in Section II;
2. In the alternative, if the Settlement is approved, **decline to approve the Plan of Allocation** insofar as Paragraph 7(a)(i) caps Purchaser Settlement Class claims at three Google-Made Devices, and direct that Purchaser points be assigned either (a) per eligible documented device without a cap, (b) weighted by documented purchase price, or (c) subject to a cap set by reference to record evidence of actual claim distribution rather than to a figure the damages model does not contain;

3. In the alternative, if the Settlement is approved, **decline to approve the claims process** unless the Claim Form is modified to permit a claimant to establish an eligible device by either (a) serial number or IMEI, or (b) proof of purchase identifying the device model, together with the attestation already required under penalty of perjury, the Claims Administrator retaining its existing authority under Plan ¶¶13–14 to demand documentation from any claim it elects to audit; and, because the claims deadline has passed, direct that the claims period be reopened for a period sufficient to permit affected claimants to cure;

4. In the alternative, if the Settlement is approved, **award attorneys' fees at no more than the 25% benchmark**, after directing Class Counsel to file a supplemental declaration addressing the apportionment of work product shared with *Lopez v. Apple* and recomputing the lodestar cross-check at the rate levels counsel's own cited authorities have approved; and

5. Grant such other and further relief as the Court deems just and proper.

## VII. STATEMENTS REQUIRED BY THE CLASS NOTICE

**Scope of Objection.** Section II applies to all Settlement Classes. Section III applies to the Purchaser Settlement Class as a whole, and in particular to all members who purchased more than three Google-Made Devices during the Class Period. Section IV applies to all Settlement Classes, and in particular to Purchaser Settlement Class members who purchased from third-party retailers or who no longer possess their devices, and to Privacy Settlement Class members who are Household Members rather than Users. Section V applies to all Settlement Classes.

**Prior Objections.** Objector has not filed an objection to any class action settlement in the past five years.

**Counsel.** Objector is not represented by counsel and appears pro se.

**Intent to Appear.** Objector wishes to be heard at the Final Approval Hearing on October 1, 2026, should the Court find oral presentation useful, and respectfully requests permission to

appear and speak remotely via the Court's Zoom videoconference platform. Objector resides in Arizona, and his employment may require international travel during the period of the hearing, on dates not yet confirmed. For a class member whose maximum individual recovery under this Settlement is measured in tens of dollars, interstate and potentially intercontinental travel to San Jose is a hardship that the economics described in the Preliminary Statement make unreasonable to require. Remote appearance, by contrast, would permit Objector to participate from wherever his obligations place him. If remote appearance is not available, Objector will be unable to appear and respectfully submits this Objection on the papers, with the request that the Court consider it as fully as if Objector had appeared. Objector remains at the Court's disposal, by remote means, for any questions the Court may have before or at the hearing.

**Witnesses and Exhibits.** Objector does not intend to call any witnesses other than himself. Objector relies on the accompanying Declaration of Nathaniel Smith and Exhibits A through J thereto; the papers of record cited herein (including ECF Nos. 414, 549, 549-1, 549-2, 560, 566, 566-1, 566-2, 566-3, and 567); and the published studies cited in Section II, copies of which can be provided at the Court's request: Gopavaram et al., WEIS 2021; Emami-Naeini et al., USENIX Security 2023; Grossklags & Acquisti, WEIS 2007.

Respectfully submitted this 27th day of August, 2026.

Nathaniel Smith
1623 W Dion Drive
Anthem, Arizona 85086
Telephone: 602.502.3606
Email: nathan.y.smith@gmail.com
Settlement Class Member, pro se

Objector's legal name is Nathaniel Smith; certain purchase records attached as Exhibit G were issued in the name Nathan Smith, as explained in the accompanying Declaration ¶2. Signature must be handwritten in ink; electronic signatures, including DocuSign, are deemed invalid per ECF No. 560 ¶29(h). File via CM/ECF, in person at any N.D. Cal. location, or by First-Class U.S. Mail postmarked no later than August 27, 2026, to: Clerk of Court, United States District Court, Northern District of California, 280 South 1st Street, Room 2112, San Jose, CA 95113.

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT A

Google Home application "Device information" screen for a Google Assistant device on Objector's account (captured Aug. 23, 2026). Decl. ¶6.


[redacted]
Device information
Name
Back Porch speaker
Home
Home
Placement
Back Porch
Wi-Fi
[redacted]
Preview program
Open source licenses
Other licenses
Technical information
System firmware version: 540761
Cast firmware: 3.78.540761
Language: en-US
MAC address: AC:[redacted]
IP address: [redacted]

# EXHIBIT B

Google Home application "Device information" screen for a second Google Assistant device on Objector's account (captured Aug. 23, 2026). Decl. ¶6.

[redacted]

← Device information ⋮

Name
Kitchen Hub

Home
Home

Placement
Kitchen

Wi-Fi
[redacted]

Time format

Preview program

Open source licenses

Other licenses

Technical information
System firmware version: 31.20260429.103.8712800
Cast firmware: 3.80.546557
Language: en-US
MAC address: 7C:[redacted]
IP address:[redacted]

# EXHIBIT C

Google Find Hub device-settings page for Objector's Google Pixel Tablet: device name and registration date only; no identifier. Decl. ¶7.


Google Find Hub
Device settings
Devices
People
Pixel Tablet
Pixel Tablet
First registered: Sep 7, 2023
Basic info
Device name*
Pixel Tablet
12/200
Done

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT D

Google Find Hub device-settings page for Objector's Samsung Galaxy S25 Ultra: model designation and IMEI displayed. Decl. ¶8.

← Device settings



Galaxy S25 Ultra

SM-S938U

IMEI: 355[redacted]

First registered: Apr 7, 2025

Basic info

Device name*

Galaxy S25 Ultra

16/200

Done

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT E

Google Account device pages (two parts, E-1 and E-2).

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT E-1

Google Account "Your devices" page: "You're signed in on these devices or have been in the last 28 days." No Google Assistant device appears. Decl. ¶9.

Google Account

## ← Your devices

You're signed in on these devices or have been in the last 28 days. There might be multiple activity sessions from the same device. Learn more

2 sessions on Windows computer(s)
What's a session?

Windows
Arizona, USA
Google Chrome, Google Drive for desktop... +3
Your current session

Windows
United States
Jul 14
Google Chrome

2 sessions on Android phone(s)
What's a session?

Galaxy S25 Ultra
Arizona, USA
1 hour ago
Android device, Ingress... +14

SM-S938U
Arizona, USA
Aug 10
Chrome Webview

1 session on Android device
What's a session?

Galaxy Watch Ultra
Arizona, USA
3 hours ago
Android device

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT E-2

Google Account device-activity page for the Pixel Tablet:
location, first sign-in, recent activity; no identifier. Decl. ¶9.

myaccount.google.com/device-activity/id/[redacted]=https://myaccount.google.com/device-activity?[redacted]

[redacted]

Google Account

Google Pixel Tablet

Arizona, USA

August 12, 8:01 PM

First sign-in: Sep 7, 2023

Sign out | Find device | Don't recognize something?

RECENT ACTIVITY

- Arizona, USA Aug 12

How locations and times are determined

BROWSERS, APPS, AND SERVICES

Android device

Browsers, apps, and services with some access to your account on the device

# EXHIBIT F

Google Home & Nest Help: serial-number location instructions
(printed copy). Decl. ¶10.

# Find your Google smart speaker or display's serial number

Locate the unique serial number on your Google smart speaker or display for support and identification purposes.

## Google smart speakers

### Google Home Speaker (2026)

| | |
|---|---|
| The Google Home Speaker device's 14-digit alphanumeric serial number is located on the bottom of the device on the outer edge. |  |
| The serial number is also listed on a sticker on the Google Home Speaker packaging near the bar codes. |  |

### Google Nest Audio

| | |
|---|---|
| The Google Nest Audio device's 14-digit alphanumeric serial number is located on the bottom of the device on the outer edge. |  |
| The serial number is also listed on a sticker on the Nest Audio packaging, near the bar codes. |  |

### Google Nest Mini (2nd Gen)

The Google Nest Mini (2nd gen) has a wall mount screw slot on the back. If y
have a wall mount screw slot, it's a Google Home Mini (1st gen).

| | |
|---|---|
| The Google Nest Mini device's 14-digit alphanumeric serial number is located on the bottom of the device on the outer edge. | |

How satisfied are you with your Help experience?

Very Dissatisfied Very Satisfied

By continuing, you agree Google uses your answers, account & system info to improve services, per our Privacy & Terms.

The serial number is also listed on a sticker on the Google Nest Mini packaging near the bar codes.



## Google Home Max

The serial number can be found etched into the back of the device, below the Google "G" logo.



The serial number is also listed on a sticker on the Google Home Max packaging near the bar codes.



## Google Home Mini (1st Gen)

The Google Home Mini device's 10-digit alphanumeric serial number is located on the bottom of the device on the outer edge.



The serial number is also listed on a sticker on the Google Home Mini packaging near the bar codes.



## Google Home

| | |
|---|---|
| The Google Home device's 10-digit alphanumeric serial number is located on the bottom of the device in the center. |  |
| The serial number is also listed on a sticker on the Google Home packaging near the bar codes. |  |

## Google Nest Displays

 Google Nest Hub Max

| | |
|---|---|
| The serial number can be found etched into the bottom of the device's stand, below the Google "G" logo. |  |
| The serial number is also listed on a sticker on the Google Nest Hub Max packaging near the bar codes. |  |

 Google Nest Hub

| | |
|---|---|
| The serial number can be found etched into the bottom of the device's stand, below the Google "G" logo. |  |

| | |
|---|---|
| The serial number is also listed on a sticker on the Google Nest Hub packaging near the bar codes. |   |

## Related resources

- Find your Nest device serial number
- Find your Chromecast or Google TV Streamer device serial number

---

Need more help?

Try these next steps:

**Get personalized support**

Get help from our AI assistant, with other support options if needed.

**Post to the help community**

Get answers from community members

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G

Purchase documentation, by order (G-1 through G-7: the eleven claimed Google-Made Devices; G-8: unclaimed exemplar). Decl. ¶¶4–5.

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-1

Best Buy #1481, Oct. 24, 2018 — Google Home Hub (Charcoal), $149.00

Gmail Nathan Smith <nathan.y.smith@gmail.com>

## Your Best Buy receipt.

**Best Buy Notifications** <BestBuyInfo@emailinfo.bestbuy.com> Sun, Aug 23, 2026 at 4:20 PM
Reply-To: Best Buy <reply-AFQAA2RRAOSURL6YN4MUNTCMCI.10199@emailinfo2.bestbuy.com>
To: nathan.y.smith@gmail.com

BEST BUY. View Account

# Thank you for shopping with us.

Here's a copy of your receipt.



Make shopping for tech even easier with the **Best Buy app.**

**Continue in the app**

******* Duplicate Receipt *******

```
Welcome to Best Buy #1481
 2440 W HAPPY VALLEY RD
   PHOENIX, AZ 85085


Val #:000136-351747-004267-645115-450624-562

1481 005 7034 10/24/18 18:35

            Duplicate Receipt
           ******************
```

```
6290306    GA00515-US          149.00
  GOOGLE HOME HUB - CHARCOAL
  Sales Tax           12.81
                             ----------
                   Subtotal   149.00
                  Sales Tax    12.81
                             ==========
                      Total   161.81

**********5885   ChipRead USD$   161.81
VISA CREDIT - VISA
SMITH/NATHANIEL
Approval 06243C

MODE: Issuer
AID: A0000000031010



My Best Buy ELITE
Member ID 0301422938




NATHAN,
Thanks for shopping at Best Buy today!
Your My Best Buy balance as of 06/04/2018
Posted points: 339
Go to BestBuy.com for more info

As a My Best Buy Elite member,
we are pleased to extend your return and
exchange period on eligible products
to 30 days from purchase date.

     Devices that can be activated and
      cell phones have a 14-day return
         policy for all customers.
          15-day return period on
          almost everything else.

   Restocking fee applies on select items

    A valid receipt is required for all
  returns. Except where prohibited, we may
 request an ID. ID info may be stored in a
    secure, encrypted database used for
      tracking returns and exchanges.
```

Returned items missing accessories are subject to a missing part fee. Best Buy reserves the right to deny any return.

For return policy details and a complete list of exceptions, ask for a policy brochure or go to www.BestBuy.com/Returns.

To learn about our privacy practices please visit www.BestBuy.com/privacy.

Your Customer Service PIN is:
1481 005 7034 102418




Don’t miss today-only deals

Shop now




Clearance, open-box and more

Shop now

Appliances Computers Cell Phones TVs

Track your orders and unlock deals with the **Best Buy app**.

**Need help?** Visit our Support Center

Follow us and share your story

Your privacy is important to Best Buy. For more information on how Best Buy protects your privacy, steps you can take to protect your personal information and alerts on privacy risks facing consumers, please visit the Best Buy Privacy Hub.

Best Buy 7601 Penn Avenue South, Richfield, MN 55423-3645

© 2026 Best Buy. All rights reserved.

View email in browser

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-2

Best Buy #1481, Oct. 23, 2019 — Google Nest Hub Max (Charcoal), $229.99
("Duplicate Receipt" is Best Buy's reprint stamp; single purchase)

Gmail Nathan Smith <nathan.y.smith@gmail.com>

## Your Best Buy receipt.

**Best Buy Notifications** <BestBuyInfo@emailinfo.bestbuy.com> Sun, Aug 23, 2026 at 4:27 PM
Reply-To: Best Buy <reply-73YLC6XQR7HERM7MIZZUH7QLWY.10202@emailinfo2.bestbuy.com>
To: nathan.y.smith@gmail.com

BEST BUY. View Account

# Thank you for shopping with us.

Here's a copy of your receipt.



Make shopping for tech even easier with the **Best Buy app.**

**Continue in the app**

***** Duplicate Receipt *****

```
Welcome to Best Buy #1481
2440 W HAPPY VALLEY RD
PHOENIX, AZ 85085


Val:100001-362189-693744-344893-227176-02599

1481 003 3609 10/23/19 18:16

Duplicate Receipt
******************
```

```
6085430    VMC4030P-10          179.99
  ARLO PRO 2 - ADD ON CAM WHITE
  Sales Tax             15.48
6348562    GA00639-US           229.99
  GOOGLE NEST HUB MAX CHARCOAL
  Sales Tax             19.78
                               ----------
                      Subtotal   409.98
                     Sales Tax    35.26
                               ==========
                         Total   445.24

**********1688   ChipRead USD$   445.24
Visa Credit - BBY CARD
SMITH/NATHAN
Approval 023384

CARD ENTRY: Chip
MODE: Issuer
AID: A0000000031010
Rewards (Standard Credit)



My Best Buy ELITE PLUS
Member ID 0301422938



NATHAN,
Thanks for shopping at Best Buy today!
Your My Best Buy balance as of 08/28/2019
Posted points: 831
Go to BestBuy.com for more info

As a My Best Buy Elite Plus member,
we are pleased to extend your return and
exchange period on eligible products
to 45 days from purchase date.

Cell phones, cellular tablets, and cellular
   wearables have a 14-day return policy
    year-round for all customers. Major
   appliances have a 15-day return policy
    year-round for all customers. 15-day
  return policy on almost everything else.

  Restocking fee applies on select items.
```

A valid receipt is required for all returns.

Returned items missing accessories are subject to a missing part fee. Best Buy reserves the right to deny any return.

For return policy details and a complete list of exceptions, ask for a policy brochure or go to www.BestBuy.com/Returns.

Best Buy is not responsible for any personal data left on a returned item.

To learn about our privacy practices please visit www.BestBuy.com/privacy.

Your Customer Service PIN is:
1481 003 3609 102319




**Don’t miss today-only deals**

**Shop now**




**Clearance, open-box and more**

Shop now

Appliances | Computers | Cell Phones | TVs

Track your orders and unlock deals with the **Best Buy app**.

**Need help?** Visit our Support Center

Follow us and share your story

Your privacy is important to Best Buy. For more information on how Best Buy protects your privacy, steps you can take to protect your personal information and alerts on privacy risks facing consumers, please visit the Best Buy Privacy Hub.

Best Buy 7601 Penn Avenue South, Richfield, MN 55423-3645

© 2026 Best Buy. All rights reserved.

View email in browser

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-3

Google Store order GS.0828-9264-9874, Oct. 23, 2019 —
4× Nest Mini (Chalk), $49.00 ea.

The new Google Pixel devices have arrived, packed with special offers. Shop all offers

## Order details

**Order #** GS.0828-9264-9874
**Ordered** October 23, 2019
**Total** $217.34

## Delivered



Tracking: ONG C11764411495861

**Delivered to**

Nathan Smith
1623 West Dion Drive
Anthem, AZ 85086, United States
+1 602-502-3606



**Nest Mini (Chalk)**

Serials:
9929105AP2KEC5,
9929105AP2L083,
9929105AP2L165,
9929105AP2L157

**$49.00**
Qty: 4

## Purchase

Google Store Financing-8913

Subtotal: $196.00

| | |
|---|---|
| Tax: | $12.35 |
| Shipping: | $8.99 |
| **Total:** | **$217.34** |

Google Store

**About**

Find a Store

Magazine

Pixel for Business

Official Merch

**Orders**

Tracking an order

Shipping options

Country availability

Pixel Care+

Trade-in

Financing

Return Policy

## Support

Get help

Repairs

Installations

Disability Support

Contact us

Send Feedback

## Sustainability

Sustainability

Device recycling

Refurbished devices

---

United States

Privacy

Google Nest Commitment to Privacy

Sales Terms

Terms of Service

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-4

Google Store order GS.0828-7505-8172, Nov. 21, 2020 —
2× Nest Hub (Chalk), $89.99 ea.

The new Google Pixel devices have arrived, packed with special offers. Shop all offers

# Order details

**Order #** GS.0828-7505-8172

**Ordered** November 21, 2020

**Total** $195.46

## Delivered

Tracking: FedEx 943248355506

**Delivered to**

Nathan Smith
1623 West Dion Drive
Anthem, AZ 85086, United States
+1 602-502-3606



**Nest Hub (Chalk)**

Serials:
0A272AA2ZWYA,
0A272AA2ZGD6

**$89.99**

Qty: 2

## Purchase

Google Store Financing-8913

Subtotal: $179.98

Tax: $15.48

| | |
|---|---|
| Shipping: | $0.00 |
| **Total:** | **$195.46** |

Google Store

**About**

Find a Store

Magazine

Pixel for Business

Official Merch

**Orders**

Tracking an order

Shipping options

Country availability

Pixel Care+

Trade-in

Financing

Return Policy

**Support**

Get help

Repairs

Installations

Disability Support

Contact us

Send Feedback

## Sustainability

Sustainability

Device recycling

Refurbished devices

United States

Privacy

Google Nest Commitment to Privacy

Sales Terms

Terms of Service

Careers

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-5

Google Store order GS.0828-3707-4450, Jan. 22, 2021 —
Nest Hub Max (Chalk), $229.00 (order also includes an unclaimed lock)

The new Google Pixel devices have arrived, packed with special offers. Shop all offers

# Order details

**Order #** GS.0828-3707-4450

**Ordered** January 22, 2021

**Total** $519.11

## Delivered

Tracking: FedEx 951763618589

**Delivered to**

Nathan Smith
1623 West Dion Drive
Anthem, AZ 85086, United States
+1 602-502-3606



**Nest Hub Max (Chalk)**

Serial: 0C050YCAB0G5DM ⓘ

**$229.00**

Qty: 1



**Nest x Yale Lock Standalone Nickel**

Serial: AHNJ8000101 ⓘ

**$249.00**

Qty: 1

Purchase
Google Store Financing-8913

| | |
|---|---|
| Subtotal: | $478.00 |
| Tax: | $41.11 |
| Shipping: | $0.00 |
| **Total:** | **$519.11** |

Google Store

**About**

Find a Store

Magazine

Pixel for Business

Official Merch

**Orders**

Tracking an order

Shipping options

Country availability

Pixel Care+

Trade-in

Financing

Return Policy

## Support

Get help

Repairs

Installations

Disability Support

Contact us

Send Feedback

## Sustainability

Sustainability

Device recycling

Refurbished devices

United States

Privacy

Google Nest Commitment to Privacy

Sales Terms

Terms of Service

Careers

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-6

Google Store order GS.0828-2394-9359, Dec. 9, 2021 —
Pixel 5a with 5G, line price $449.00 (unattributed order-level discount –$50.00)

The new Google Pixel devices have arrived, packed with special offers. Shop all offers

## Order details

| | |
|---|---|
| **Order #** | GS.0828-2394-9359 |
| **Ordered** | December 9, 2021 |
| **Total** | $433.31 |

## Delivered

Tracking: UPS 1ZR642340310645808

**Delivered to**

Nathan Smith
1623 West Dion Drive
Anthem, AZ 85086, United States
+1 602-502-3606



**Pixel 5a with 5G (128GB, Mostly Black, Unlocked)**

Serial: 354292956941582 ⓘ

**$449.00**

Qty: 1

### Purchase

Google Store Financing-8913

| | |
|---|---|
| Subtotal: | $449.00 |
| Discount: | -$50.00 |
| Tax: | $34.31 |

| | |
|---|---|
| Shipping: | $0.00 |
| **Total:** | **$433.31** |

Google Store

**About**

Find a Store

Magazine

Pixel for Business

Official Merch

**Orders**

Tracking an order

Shipping options

Country availability

Pixel Care+

Trade-in

Financing

Return Policy

**Support**

Get help

Repairs

Installations

Disability Support

Contact us

Send Feedback

**Sustainability**

Sustainability

Device recycling

Refurbished devices

United States

Privacy

Google Nest Commitment to Privacy

Sales Terms

Terms of Service

Careers

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT G-7

Amazon order 112-7970863-7448243, Sept. 6, 2023 —
Google Pixel Tablet with Charging Speaker Dock, $599.00

# Order Summary

Order placed September 6, 2023 | Order # 112-7970863-7448243

**Ship to**

Nathan Smith
1623 W Dion Drive
Anthem, AZ 85086
United States

**Payment method**

American Express ending in 4008

View related transactions

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $599.00 |
| Shipping & Handling: | $2.99 |
| Free Shipping: | -$2.99 |
| Total before tax: | $599.00 |
| Estimated tax to be collected: | $37.74 |
| **Grand Total:** | **$636.74** |



Google Pixel Tablet with Charging Speaker Dock - Android Tablet with 11-Inch Screen, Smart Home Controls, and Long-Lasting Battery - Porcelain/Porcelain - 256 GB

Sold by: Amazon.com

Supplied by: Other

$599.00

Purchased with monthly payments View and manage

Back to top

amazon

Conditions of Use Privacy Notice Consumer Health Data Privacy Disclosure Your Ads Privacy Choices

© 1996-2026, Amazon.com, Inc. or its affiliates

# EXHIBIT G-8 — NOT CLAIMED

Google Store order GS.0828-4401-9873, Dec. 10, 2022 — Fitbit Sense 2.
Pricing-methodology exemplar: “You got $70.00 off this item with a promotion”

The new Google Pixel devices have arrived, packed with special offers. Shop all offers

# Order details

**Order #** GS.0828-4401-9873

**Ordered** December 10, 2022

**Total** $249.73

## Delivered

Tracking: FedEx 620169183908

**Delivered to**

Nathan Smith
1623 West Dion Drive
Anthem, AZ 85086, United States
+1 602-502-3606



**Fitbit Sense 2 (Lunar White / Platinum Aluminum)**

Serial: 3C0A52925A21

**$229.95** ~~$299.95~~

Qty: 1

You got $70.00 off this item with a promotion

## Purchase

Google Store Financing-8913

Subtotal: $299.95

| | |
|---|---|
| Discount: | -$70.00 |
| Tax: | $19.78 |
| Shipping: | $0.00 |
| **Total:** | **$249.73** |

## Store Credit Earned

Google One benefit $6.90

Store credit will be added to your account 24 hours after order ships, and can be used to purchase any Google Store device or accessory. Learn more

# Google Store

**About**

Find a Store

Magazine

Pixel for Business

Official Merch

**Orders**

Tracking an order

Shipping options

Country availability

Pixel Care+

Trade-in

Financing

Return Policy

## Support

Get help

Repairs

Installations

Disability Support

Contact us

Send Feedback

## Sustainability

Sustainability

Device recycling

Refurbished devices

United States

Privacy

Google Nest Commitment to Privacy

Sales Terms

Terms of Service

Careers

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT H

BLS CPI Inflation Calculator: $271.70 (June 2021) has the same buying power as $333.92 (July 2026). Filing §II.

An official website of the United States government Here is how you know

United States Department of Labor

Release Calendar | Subscribe

U.S. BUREAU OF LABOR STATISTICS

Search BLS.gov

HOME SUBJECTS DATA TOOLS PUBLICATIONS ECONOMIC RELEASES CLASSROOM BETA

Bureau of Labor Statistics > Data Tools > Charts and Applications > Inflation Calculator

TOP PICKS
SERIES REPORT
PUBLIC DATA API
DISCONTINUED DATABASES
FAQS
SPECIAL NOTICES
MORE SOURCES OF DATA

# CPI Inflation Calculator

## CPI Inflation Calculator

$ 271.70

in June 2021

has the same buying power as

$333.92

in July 2026

Calculate

Calculations using October 2025 data cannot be calculated due to a lapse in appropriations.

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT I

Contemporaneous press coverage and public class-member discussion regarding notice delivery to spam folders, the serial-number requirement, the device cap, and the claims process. Printed by Objector from the original sources on August 24, 2026 (capture timestamps and URLs appear in each printout's margins). Index follows; printouts I-1 through I-4 follow the index. Decl. ¶15.

# EXHIBIT I — INDEX OF SOURCES AND EXCERPTS

**I-1. Android Authority, "Check your spam folder: Google's $68M Assistant settlement emails are going out now" (Adamya Sharma, June 4, 2026)**

- "Google Assistant users have started receiving emails to claim their part of a $68 million privacy settlement, but reports suggest the messages are ending up in spam folders."
- "The problem is that the emails are being filtered into spam folders, making them easy to miss."
- Embedded post of Artem Russakovskii (June 3, 2026): "Check your email spam for a class action settlement notification ... It is a legit settlement website. The form is a pain in the ass to fill out, but could be worth it."

**I-2. Pocketables, "Notice to file against Google in a class action lawsuit is in your GMail spam folder" (Paul E King, May 21, 2026)**

- "That notice is in your spam folder most likely, it was in mine."
- "Before you go filing you will want to locate a few of your assistant-enabled devices and you'll need a serial number and potentially IMEI number in some cases, where/when it was purchased, receipts if possible."
- "I suspect we'll be seeing a 68 million class action lawsuit against Google shortly for sending all of these claims to the spam folder."

**I-3. Reddit, r/Android: "$68M Google Assistant Privacy Settlement: How to Claim" (250 upvotes, 98 comments)**

- u/txmail: "Really fun that this is one of those things where they know everyone that is qualified, but still requires you to prove you qualify."
- u/saturnaliatemple (54 upvotes): "It's really funny and annoying to me that Gmail always puts these class action notification emails in your spam."
- u/DrLuciferZ (29 upvotes): "I bought 6 devices, and I don't have access to 3 of them any more. Google store does show Serial number in the purchase history so that is nice."
- u/namelessxsilent: "I think they only allow you to enter in 3 items anyway"; also: "If you go for the purchaser claim, you need a receipt for purchases, even if that purchase was a decade ago. But if you bought it on google store, that receipt will be in your purchase history ...."
- u/Missing_The_Pixel: "I came here cause I noticed it in my spam. In all defence, the email looks fake ...."
- Sidebar (r/google, 132 upvotes): thread titled "Google sent the email about their class action lawsuit against them to spam folder."

**I-4. Reddit, r/ClassActionSettlement: "Anyone else skipping the google assistant privacy litigation settlement?" (78 upvotes, 56 comments)**

- u/Delouest (79 upvotes, most-endorsed comment): "I don't even have the devices anymore, specifically because of privacy concerns that came up. If they have recordings from a device linked to my account that they should not have, then THEY have the data needed to know who should be paid out. It's honestly ridiculous."
- u/eyeamej: "If you happen to have bought your devices from the Google Store you can go to your order history and find them. They also show you the serial number for the device in the order summary. That's how I got mine."
- u/MadamAndroid: "I was able to screenshot from the Google store my purchased devices. Thank goodness I purchased through that otherwise I wouldn't have done it."
- u/sweetpea122: "I bought mine from different places. It doesnt even give me the serial numbers in the home app"; also: "I have the devices but lots of them dont have serial numbers. All my nest and nest minis have no serial numbers on them."
- u/rachie-cakes: "It's a struggle for me to make seperate claims for each device and each minor

dependant in the home who may be effected by this. I keep working on it, hopefully I'll complete this task before the deadline ...."

- u/666six: "i bought my nest hub from home depot in 2023. i still have the box but not the receipt so i went to the home depot i purchased it from after already talking to the credit card company and they didnt have any records past 2 years."
- u/lstud: "You aren't skipping: you are being forced to exclude yourself because they don't want to pay out. ... if you got the ID, they know you were affected."
- u/SufficientRaccoon823: "The class action website is crap and does not work. Just resets every time I try to submit the form." Reply, u/RoseofSharonVa: "Spent an hour entering info on 2 devices only for it to crash when I hit submit."
- u/daw4888: "You would think they could just have Google pull all the devices you have registered to your Google account over the years."

*All excerpts verbatim as displayed, including original spelling and punctuation; usernames reproduced as displayed. Vote counts as shown at capture. Forum comments are offered as illustrations of public reaction, not for the truth of any commenter's individual circumstances. Each printout's capture timestamp (Aug. 24, 2026) and URL appear in its page margins.*

ANDROID AUTHORITY Login




AI Assistant

Rephrase

MOBILE

# Check your spam folder: Google's $68M Assistant settlement emails are going out now

You might qualify for a Google payout, and the claim email may be easy to miss.

By Adamya Sharma Jun 4, 2026 — 12:13 AM ET 1

Get started

Start your free trial today.

Shopify

Sign Up ›






Follow us on Google Discover
Add us as preferred source

**TL;DR**

- Google Assistant users have started receiving emails to claim their part of a $68 million privacy settlement, but reports suggest the messages are ending up in spam folders.
- The lawsuit accused Google Assistant of recording conversations during false activations and allegedly using that information for ad targeting.
- Google denied any wrongdoing but agreed to settle the matter.
- To receive the payout, the settlement form must be completed by August 27, 2026.

Google Assistant users are finally being notified about a $68 million privacy settlement, and if you think you might qualify, it may be worth taking a look inside your email's spam folder.

**Don't want to miss the best from *Android Authority*?**

- Set us as a **favorite source in Google Discover** to never miss our latest exclusive reports, expert analysis, and much more.
- You can also set us as a **preferred source in Google Search** by clicking the button below.

Add as a preferred source on Google

Settlement emails are now landing in users' inboxes (h/t Artem Russakovskii), and the notification directs recipients to googleassistantprivacylitigation.com. As per the settlement agreement, this is the official website handling claims related to the settlement. The problem is that the emails are being filtered into spam folders, making them easy to miss.

Artem Russakovskii
@ArtemR · Follow

Check your email spam for a class action settlement notification from googleassistantprivacylitigation.com.

It is a legit settlement website.

The form is a pain in the ass to fill out, but could be worth it.

12:54 PM · Jun 3, 2026

9 Reply Copy link

Read 3 replies

Our top deals of the day

Liene PixCut S1
6% off See price at Amazon
Limited Time Deal!

The Google Assistant settlement stems from a class action lawsuit that Google agreed to resolve in January 2026. Plaintiffs alleged that Google Assistant sometimes activated accidentally after falsely detecting wake words like "OK, Google" and recording conversations it was never supposed to hear. They further claimed that information gathered during these unintended activations was used for advertising purposes.

The plaintiffs argued that the company crossed a line when Assistant allegedly listened during conversations that were never intended for Google's ears in the first place.

Even though Google denied any wrongdoing as part of the settlement agreement, it agreed to pay $68 million to resolve the case.

Now the claims are open, and eligible users are being asked to complete a fairly detailed claim form to receive compensation. If you've used Google Assistant during the period covered by the lawsuit and think you may qualify, it's a good idea to search your inbox for messages related to the settlement and check your spam folder if nothing appears.

## Who is eligible for the payout?




The settlement website notes that the "Purchaser Settlement Class" covers users who purchased a Google-made device in the United States or its territories between May 18, 2016, and March 19, 2026.

Meanwhile, the "Privacy Settlement Class" includes Google Assistant users or members of a user's household whose communications were allegedly recorded by Google Assistant due to a false activation between May 18, 2016, and March 19, 2026. The class also includes users whose communications were disclosed to third-party review vendors during that period.

To receive the payout, the settlement form must be completed by August 27, 2026.

As always, users should verify that any email they receive points to the legitimate settlement site before submitting personal information.

While individual payouts will depend on the number of approved claims, eligible users who miss the notification could miss their opportunity to participate altogether. That's why it's important to check your spam folder right now.

NEWS

Google,Google Assistant

Follow Adamya Sharma + Android apps + General technology + Mobile + Privacy and security + News +

Thank you for being part of our community. Read our Comment Policy before posting.

# Pocketables

News and reviews for the




ASSISTANT - HOME | AI | GOOGLE

# Notice to file against Google in a class action lawsuit is in your GMail spam folder

May 21, 2026 · Paul E King · 0 Comments

There's a 68 million settlement that you have to file to be compensated for Google improperly storing voice data when Assistant was triggered accidentally. That notice is in your spam folder most likely, it was mine.

Yes, the lawsuit started two years ago, but the settlement and registration is dated May 15th with a register-by deadline of August 27, 2026.

I had my doubts initially because the site is very bare bones, but other sites tend to indicate it's true and you have about 98 days left to file at this point.

Before you go filing you will want to locate a few of your assistant-enabled devices and you'll need a serial number and potentially IMEI number in some cases, where/when it was purchased, receipts if possible.

I suspect we'll be seeing a 68 million class action lawsuit against Google shortly for sending all of these claims to the spam folder.

← LAMTTO RC32 11" wireless Android Auto/CarPlay display with native Netflix review

13 months with the Yarbo Modular Lawn Robot →

Paul E King

Paul King started with GoodAndEVO in 2011, which merged with Pocketables, and as of 2018 he's evidently the owner. He lives in Nashville, works at a film production company, is married with two kids. Facebook | Twitter | Donate | More posts by Paul | Subscribe to Paul's posts



0

Article Rating

Subscribe ▾ Connect with Login

Be the First to Comment!

B I U S {} [+]

0 COMMENTS

Pocketables doesn't accept direct advertising, sponsored posts, paid link insertion, guest posts, paid reviews, etc. Want to help us keep it that way?

1-time site donations via Paypal or Venmo

Search

## Recent Posts

A reminder to check your piles of discarded laptops for spicy pillows

I am rattled (just a blog)

It's been... a google of a couple days

Losing the edges (project time)

A month with the Shuffle Wallet 2.0

## recently updated posts



**A reminder to check your piles of discarded laptops for spicy pillows** (8/21/2026)



**I added assisted/self-driving hands-off capabilities to my 2024 minivan with a Comma 4** (8/21/2026)



**Starting to suspect Yarbo's support is sending customers on a runaround to act responsive** (8/21/2026)



**Orico MetaBox 2-Bay private cloud storage review** (8/20/2026)



**I am rattled (just a blog)** (8/20/2026)

Copyright © 2026 Pocketables. All rights reserved.

Skip to main content Search Reddit Log In ...

**r/Android** • 3mo ago
great6

# $68M Google Assistant Privacy Settlement: How to Claim




claimhub24.com

A $68M Google Assistant privacy settlement may pay eligible users. See who qualifies, deadlines, payout basics, and how to file safely.

Open

250 98 Share

shopify • Ad

Hey redditors, ever wonder about growing your online business? Shopify answers your top questions. Swipe to learn more.




shopify.com

Sign Up

Join the conversation

Skip to main content Search Reddit Log In

**BobState** • 3mo ago

Is this just for USA residents ?

78 Reply ···

**great6** OP • 3mo ago

Yes

15 Reply ···

1 more reply

**TastyBananaPeppers** • 3mo ago

Payout is $0.69

87 Reply ···

**DreadPirateGriswold** • 2mo ago

Great! If I save up a little bit more, I can get that Diet Coke I've been eyeing at the gas station!

9 Reply ···

2 more replies

**YourNeighborLuis** • 3mo ago

You're too generous

27 Reply ···

3 more replies

**namelessxsilent** • 2mo ago

If you go for the purchaser claim , you need a receipt for purchases, even if that purchase was a decade ago. But if you bought it on google store , that receipt will be in your purchase history so you should be able to upload a screenshot

35 Reply ···

**DrLuciferZ** • 2mo ago

Asking for Serial/IMEI is fucked up I bought 6 devices, and I don't have access to 3 of them any more.

Google store does show Serial number in the purchase history so that is nice.

29 Reply ···

**namelessxsilent** • 2mo ago

I think they only allow you to enter in 3 items anyway

5 Reply ···

Skip to main content Search Reddit Log In

Thanks for the tip about Google Store purchase history, I was about to give up because I don't have the devices anymore

4 Reply ···

2 more replies

9 more replies

**saturnaliatemple** • 2mo ago

It's really funny and annoying to me that Gmail always puts these class action notification emails in your spam.

54 Reply ···

**Eagle1337** • 2mo ago

I always find it funny that people come up with the conspiracy theory that Google intentionally marks their class action settlement emails as spam, but from my experience it's basically every one.

**Comfortable_Pin6521** • 2mo ago

why do you find it funny? It's seriously legit to question that these things should never have been there in the first place, and even their own AI should know that by understanding the link credentials as is - let alone the stuff they have coming in their new feeds.

7 more replies

**Missing_The_Pixel** • 9d ago

I came here cause I noticed it in my spam. In all defence, the email looks fake as shit. Different email to url, url looks odd, they tell you NOT to contact the courts, there's an unsubscribe link that isn't part of the main body and doesn't take you to the same URL as the one they want you to go to in order to file the claim. Even the website looks fake, and does not say who is the representing law firm.

I am not American (therefore the email does not apply to me anyway) but I presume this kind of email is standard stuff

1 more reply

u/Roblox • Ad ···

Skip to main content

Search Reddit

Log In

Play Now

roblox.com



**ReadersAreRedditors** • 2mo ago

What's the link to claim. This site feels like it's going to give me a virus if I click the wrong link.

1 more reply

**txmail** • 2mo ago

Really fun that this is one of those things where they know everyone that is qualified, but still requires you to prove you qualify.

**Jak33** • 2mo ago

This is probably a different one. But I signed up for 1 a few years ago and I just got paid a few weeks ago for like $130

**SinMeToHell** • 2mo ago

Also had a coworker get the same amount on that. Def signing up for this one.

1 more reply

**Dey_EatDaPooPoo** • 2mo ago

The site states that for purchasers it applies to Google-made devices, but this can apply and affect anyone with an Android phone or tablet. For me, it would apply to my current phone, the S21+ I used to have and sold, and an LG V60 I also used to have and sold. Seems kinda bullshit that based on the points system you'd be able to claim more by having had a Google-made device rather than by using the privacy settlement option when those using Google Assistant on Android devices like me would be affected in the exact same way.

1 more reply

**russellvt** • 2mo ago

Direct Link that avoids the cancerous blogspam.

Skip to main content Search Reddit Log In

It wants a link for a proof of purchase but the link cant have a colon (:) so how can you add a link lol?

⊕ 5 more replies

u/monday_com • Ad

That feeling when you've completed all your tasks! It's exhilarating! Well, with monday.com's work management platform, get more done in less time with no-code automations, real-time communication, and notifications! Smash that done button! Try now!

Sign Up monday.com




**Dey_EatDaPooPoo** • 2mo ago

The site states that for purchasers it applies to Google-made devices, but this can apply and affect anyone with an Android phone or tablet. For me, it would apply to my current phone, the S21+ I used to have and sold, and an LG V60 I also used to have and sold. Would you then claim it based on the private

⊕ 1 more reply

**AINmsRTkn** • 1mo ago

Just an FYI, it's US ONLY. So don't waste your time like i did.

**mrandr01d** • 2mo ago

The only thing giving me pause is it wants my Gmail address. I could see Google turning extra scrutiny on these people if they say use morphe or upload nude pictures to GPhotos, etc.... Finding reasons to ban people who cause them trouble.

**KingKongAI** • 2mo ago

Any luck in Europe?

⊕ 1 more reply

**gobitecorn** • 2mo ago

Skip to main content

Search Reddit

Log In

1 more reply

## Related posts

r/google • 3mo ago

$68M Google Assistant Privacy Settlement: How to Claim




210 upvotes · 28 comments

Team_17 • Ad

Highly realistic FPS with authentic weapons, vehicles and locations. Hell Let Loose: Vietnam is now available on PC and consoles




hellletloose.com

Learn More

r/ClassActionSettlement • 3mo ago

Google Assistant Privacy Litigation Settlement

92 upvotes · 154 comments

r/news • 7mo ago

Google settles Google Assistant privacy lawsuit for $68 million




400 upvotes · 25 comments

r/degoogle • 7mo ago

Google Settles Assistant "Eavesdropping" Lawsuit for $68 Million



991 upvotes · 51 comments

r/google • 18d ago

Google Assistant Privacy Litigation Settlement email



Skip to main content

Search Reddit

Log In

Google pays $68M to settle claims its voice assistant spied on users




488 upvotes · 39 comments

r/classactions • 2mo ago

Google Assistant Privacy Litigation Settlement

5 upvotes · 7 comments

r/firefox • 3y ago

Google settles $5 billion privacy lawsuit over tracking people using 'incognito mode' (Re: Switch to Firefox ASAP).




278 upvotes · 17 comments

r/privacy • 7mo ago

Google to pay $68m to settle spying lawsuit




395 upvotes · 44 comments

r/news • 1y ago

Google agrees to pay $28m in racial bias lawsuit




1.3K upvotes · 115 comments

r/technology • 7mo ago

Google will settle its Assistant spying lawsuit for $68 million




122 upvotes · 15 comments

r/privacy • 7mo ago

Reuters: Google settles lawsuit for $68 million. Its voice-activated assistant spied inappropriately on users.




1.4K upvotes · 109 comments

r/googleassistant • 4mo ago

Is anyone else frustrated with how much the Google Assistant has been dumbed down?

Skip to main content

Search Reddit

Log In

$8.2M Google Play Kids COPPA Privacy Settlement: How to Claim (No Proof)




102 upvotes · 13 comments

r/ClassActionSettlement • 2mo ago

Google Assistant Privacy Litigation Settlement

22 upvotes · 12 comments

r/google • 2mo ago

Google sent the email about their class action lawsuit against them to spam folder

132 upvotes · 61 comments

r/privacy • 7mo ago

Google is replacing Assistant with Gemini, forcing you to accept these disturbing statements:

516 upvotes · 69 comments

r/CryptoCurrency • 2y ago

68 MILLION lost from Address Poisoning

851 upvotes · 361 comments

r/TechNook • 13d ago

Google Assistant will be discontinued, will you miss it?

Google Assistar

44 upvotes · 76 comments

r/technology • 7mo ago

Google settles for $68 million after lawsuit claimed it secretly recorded users




222 upvotes · 18 comments

r/books • 1mo ago

A group of major publishers have filed a lawsuit against Google, accusing the company of illegally using millions of copyrighted books to help build its Gemini artificial intelligence models




11K upvotes · 225 comments

r/google • 6y ago

Search Reddit

Log In

r/technology • 2y ago

Google must destroy $5 billion worth of user data illegally collected in Incognito Mode

tuta

22K upvotes · 900 comments

r/ClassActionSettlement • 6d ago

Google Assistant privacy settlement, claims close Aug 27. One of the two classes needs no proof of purchase.

37 upvotes · 46 comments

r/Scams • 2y ago

Google incognito lawsuit scam?

14 upvotes · 56 comments

VIEW POST IN

Français

Português (Brasil)

See more

Home Popular News Explore Best of Reddit Best of Reddit in Portuguese Best of Reddit in German Reddit Rules Privacy Policy User Agreement Your Privacy Choices Accessibility Reddit, Inc. © 2026. All rights reserved.

Skip to main content Search Reddit Log In •••

r/ClassActionSettlement • 2mo ago
[deleted]

# Anyone else skipping the google assistant privacy litigation settlement?

Sorry, this post was deleted by the person who originally posted it.

78 56 Share

Join the conversation

Sort by: Best Search Comments

**Delouest** • 2mo ago

I don't even have the devices anymore, specifically because of privacy concerns that came up. If they have recordings from a device linked to my account that they should not have, then THEY have the data needed to know who should be paid out. It's honestly ridiculous.

79 Reply Share •••

**daw4888** • 2mo ago

You would think they could just have Google pull all the devices you have registered to your Google account over the years..

Would have to be easier than having people submit, and going through that paperwork..

20 Reply Share •••

**Morpheus_505** • 1mo ago

Anytime it involves giving money deserves to the poor, they always make it a mountains to climb. But FBI wants your information? They'll make it work I seconds. The hypocrisy of Corporatocracy.

2 Reply Share •••

1 more reply

**Pascal6662** • 2mo ago

For each device's info you submit you receive four times the payout as people who don't submit device information.

Skip to main content Search Reddit Log In

36 Reply Share ···

**sweetpea122** • 2mo ago

I bought mine from different places. It doesnt even give me the serial numbers in the home app

20 Reply Share ···

**sandra_p** • 2mo ago

I didn't even print to PDF, just took screenshots of the receipts from my Google account.

2 Reply Share ···

**3xdiamonds** • 24d ago

If I purchased it for my son with his name in delivery do I put my name when I submit or his name? Somehow the Order details in Google history doesn't show my name. Also, did you check "Yes, I am a member of the Privacy Segment Class?" Or NO? Thanks.

2 Reply Share ···

5 more replies

**sweetpea122** • 2mo ago

I have the devices but lots of them dont have serial numbers. All my nest and nest minis have no serial numbers on them

9 Reply Share ···

**sandra_p** • 2mo ago

You can use the IMEI instead which is in the settings

5 Reply Share ···

2 more replies

**Pascal6662** • 2mo ago

https://support.google.com/googlehome/answer/9169258

2 Reply Share ···

**kn0where** • 20d ago

It's imprinted in the plastic on the back on the right side after "Made in China". 14 letters and numbers starting with "9".

**Dead_arie** • 2mo ago

I got mine free from Spotify when they were giving them away for signing up for premium so I can't sign up

Skip to main content Search Reddit Log In

**rachie-cakes** • 2mo ago

The email and the process to make a claim requires more cognitive bandwidth than I have in a given day. It's a struggle for me to make seperate claims for each device and each minor dependant in the home who may be effected by this. I keep working on it, hopefully I'll complete this task before the deadline, whenever that is 🙃

⊕ 1 more reply

**MadamAndroid** • 2mo ago

I was able to screenshot from the Google store my purchased devices. Thank goodness I purchased through that otherwise I wouldn't have done it.

**eyeamej** • 2mo ago

If you happen to have bought your devices from the Google Store you can go to your order history and find them. They also show you the serial number for the device in the order summary. That's how I got mine.

**rollingthestonex** • 2mo ago

I got the emails for it but I'm Canadian and apparently Canadians aren't eligible. No idea how they got my contact information if I wasn't eligible. I also didn't bother with the Canadian Silk Milk settlement as they wanted me to send in my personal health number and other personal identifying information that I've never had to enter for a class action settlement. Wasn't worth it to me.

**echobunny9203** • 2mo ago

I got the emails from them and I don't have the devices anymore so I didn't bother.

**blkwidow76** • 2mo ago

I submitted one but it only asked for the IMEI number for my old phone. I didn't have to submit proof of purchase. Now I'm confused

**lstud** • 1mo ago

You aren't skipping: you are being forced to exclude yourself because they don't want to pay out. Other settlements don't make this requirement, and if you got the ID, they know you were affected. It shouldn't be legal to require proof of purchase when people gifted these devices were also subject to privacy breaches.

Skip to main content Search Reddit Log In

**SufficientRaccoon823** • 23d ago

The class action website is crap and does not work. Just resets every time I try to submit the form.

**RoseofSharonVa** • 22d ago

Same here. I can't believe it doesn't allow you to save info & come back another time to pick up where you left off. Spent an hour entering info on 2 devices only for it to crash when I hit submit.

1 more reply

**MonochromeMaru** • 2mo ago

Where did you get the email from?

**Warm-Bar-4523** • 2mo ago

From Google assistant privacy litigation - info@googleassistantprivacylitigation .com

**JJonVinyl** • 2mo ago

I had 2 devices from my google store order history so I had to register

**666six** • 2mo ago

i bought my nest hub from home depot in 2023. i still have the box but not the receipt so i went to the home depot i purchased it from after already talking to the credit card company and they didnt have any records past 2 years. fml

## Related posts

r/ClassActionSettlement • 7d ago

**Received AntiFugal settlement check of $1.86, recommendations on how to invest?**

Skip to main content

Search Reddit

Log In

AAAMountainWestGroup • Ad

Yep — AAA Insurance covers damage from hungry bears. Save up to $534 when you switch to AAA Auto Insurance. Get a quote.



mwg.aaa.com

Get a Quote

r/ClassActionSettlement • 6d ago

No proof settlements

78 upvotes · 16 comments

r/ClassActionSettlement • 1d ago

bcbs payment came today 36k paid in

62 upvotes · 6 comments

r/ClassActionSettlement • 5d ago

2 Small Payouts

47 upvotes · 42 comments

r/ClassActionSettlement • 3d ago

HOWELL V. BUMBLE REPRISEE

44 upvotes · 11 comments

r/ClassActionSettlement • 6d ago

Google Assistant privacy settlement, claims close Aug 27. One of the two classes needs no proof of purchase.

37 upvotes · 46 comments

r/ClassActionSettlement • 7d ago

AT&T settlement

34 upvotes · 44 comments

r/ClassActionSettlement • 7d ago

Amazon settlement

29 upvotes · 63 comments

r/ClassActionSettlement • 5d ago

Smallest Payout Ever

21 upvotes · 13 comments

Skip to main content

Search Reddit

Log In

18 upvotes · 12 comments

r/ClassActionSettlement • 6d ago

Homebuyer Antitrust Litigation Email

16 upvotes · 10 comments

r/ClassActionSettlement • 2d ago

23&ME payment

14 upvotes · 6 comments

r/ClassActionSettlement • 3d ago

Katz-Lacabe et al v. Oracle America, Inc

14 upvotes · 5 comments

r/ClassActionSettlement • 4d ago

Just got my Milburn Albert settlement

14 upvotes · 22 comments

r/ClassActionSettlement • 6d ago

GSkill Settlement

12 upvotes · 31 comments

r/ClassActionSettlement • 6d ago

Walmart to pay $2.1M in Louisiana Spark delivery settlement




10 upvotes

r/ClassActionSettlement • 2d ago

Payment for FTC Prime Subscription Settlement arrived yesterday via paypal

9 upvotes · 5 comments

r/ClassActionSettlement • 3d ago

$68.81 Received from Sutter Health Analytics Litigation Settlement

9 upvotes

r/ClassActionSettlement • 6d ago

Search Reddit

Log In

r/ClassActionSettlement • 4d ago

Albert settlements

8 upvotes · 8 comments

r/ClassActionSettlement • 4d ago

Albert settlement

8 upvotes · 12 comments

r/ClassActionSettlement • 7d ago

Antifungal spray settlement

8 upvotes · 6 comments

r/ClassActionSettlement • 4d ago

Kirkbride et al. v. The Kroger Co. CASE NO. 2:21-CV-00022

7 upvotes

r/ClassActionSettlement • 5d ago

BCBS check never came, no response to my emails

7 upvotes · 1 comment

r/ClassActionSettlement • 2d ago

Facebook settlement email from noreply@digitaldisbursements.com

6 upvotes · 2 comments

Home Popular News Explore Best of Reddit Best of Reddit in Portuguese Best of Reddit in German Reddit Rules Privacy Policy User Agreement Your Privacy Choices Accessibility Reddit, Inc. © 2026. All rights reserved.

In re Google Assistant Privacy Litigation, No. 5:19-cv-04286-BLF (N.D. Cal.)
Declaration of Nathaniel Smith in Support of Objection

# EXHIBIT J

Lopez v. Apple, Inc. (Siri) settlement, No. 4:19-cv-04577 (N.D. Cal.):
J-1: settlement website homepage (claims for up to five Siri Devices; $20 cap per device).
J-2: Claim Form (proof of purchase alone sufficient; serial number as alternative).
Printed by Objector from the settlement website. Decl. ¶16.

# Lopez v. Apple Inc.

Case No. 4:19-cv-04577-JSW

United States District Court, Northern District of California

MENU

Initial claimant payments have now expired. However, claimants can still request payment reissuance by visiting the Request Payment Reissuance page and submitting the form by **September 3, 2026**. Final reissued payments are estimated to be sent on or around **September 17, 2026**.

## If you owned or purchased a Siri-enabled device and experienced an unintended Siri activation during a confidential or private communication between September 17, 2014 and December 31, 2024, you should read this Notice as it may impact your legal rights

Para el Aviso en español haga clic aquí

### Important Dates

**July 2, 2025**
Claim Deadline

**July 2, 2025**
Exclusion Deadline

**July 2, 2025**

Objection Deadline

**August 22, 2025 at 9:00 AM PDT**
Final Approval Hearing

- A settlement has been reached with Apple Inc. ("Apple") in a class action lawsuit brought on behalf of current or former owners or purchasers of a Siri-enabled iPhone, iPad, Apple Watch, MacBook, iMac, HomePod, iPod touch, or Apple TV ("Siri Device/Devices") whose confidential or private communications were allegedly obtained by Apple and/or shared with third parties as a result of an unintended Siri activation. Apple denies all of the allegations made in the lawsuit and denies that Apple did anything improper or unlawful.

- The Settlement provides for a $95 million fund for payments to Settlement Class Members who are individual current or former owners or purchasers of a Siri Device, who reside in the United States or its territories, and whose confidential communications were obtained by Apple and/or were shared with third parties as a result of an unintended Siri activation. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families. The Class Period is September 17, 2014 to December 31, 2024.

- If you believe you are a Settlement Class Member, you must submit a valid Claim Form to get a payment from the Settlement. Settlement Class Members may submit claims for up to five Siri Devices on which they claim to have experienced an unintended Siri activation during a conversation intended to be confidential or private. Settlement Class Members who submit valid claims shall receive a pro rata portion of the Net Settlement Amount for a Class Payment of up to a cap of $20 per Siri Device. The amount available to Settlement Class Members will increase or decrease pro rata depending on the total number of valid claims submitted, and Siri Devices claimed. Depending on the total number of valid claims, this Plan of Allocation is subject to modification by agreement of the Parties without further notice to Settlement Class Members, provided any such modification is approved by

the Court. The final amount will not be known until all claims are evaluated. Please see the information in the Notice concerning payments.

- If you received an email or postcard with a Claim Identification Code and a Confirmation Code notifying you about the Settlement, use these codes when making a claim. If you did not receive an email or postcard about the Settlement and don't have these codes but believe you are a member of the Settlement Class, you may still make a claim by going to the Submit a Claim page to make a claim and following the instruction on how to submit a Claim Form.
- You can also opt out of or object to the Settlement.
- Your rights are affected whether you act or don't act. Please read the Notice carefully

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **Stay in the Settlement Class, File a Claim Form, and Receive a Payment**<br><br>**Deadline: JULY 2, 2025** | If you receive an email or postcard notifying you that you may be a member of the Settlement Class, or you believe that you are a member of the Settlement Class, you must submit a valid Claim Form to receive a Class Payment.<br><br>The Claim Form requires that you confirm or update your current contact information and confirm the following under oath: from September 17, 2014 to December 31, 2024 (i) you purchased or owned a Siri Device in the United States or its territories and enabled Siri on that device, (ii) you experienced an unintended Siri activation, and (iii) the unintended Siri activation occurred during a conversation intended to be confidential or private. You may submit a Claim Form for up to five Siri Devices.<br><br>This is the only way to get a payment.<br><br>By receiving a payment, Settlement Class Members will give up rights and be bound by the Settlement. |

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **Exclude Yourself**<br><br>**Deadline: JULY 2, 2025** | Get no payment.<br><br>This is the only option that allows you to keep your right to bring any other claim against Apple arising out of or related to the claims in this case. |
| **Comment On or Object to the Settlement and/or Attend a Hearing**<br><br>**Deadline: JULY 2, 2025** | You can write to the Court about why you like or do not like the Settlement.<br><br>You cannot ask the Court to order a larger settlement. |
| **Do Nothing** | Give up rights and be bound by the Settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in the Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved.

© 2026 | Privacy Policy | Version 3.2.2

| Your form must be submitted online or postmarked by: July 2, 2025 | **CLAIM FORM**<br><br>*Lopez, et al. v. Apple Inc.*<br>Case No. 4:19-cv-04577 (N.D. Cal.) | LVA |
|---|---|---|

**GENERAL INSTRUCTIONS**

Please read these instructions and the Notice of Proposed Class Action Settlement ("Full Class Notice") carefully and then select either the Electronic Claim Form or Printed Claim Form option at the bottom of the page. If you need assistance completing a Claim Form, if you are unable to submit the required information as described below, or if you have any questions, you should call 1-888-981-4106 or email info@LopezVoiceAssistantSettlement.com the Settlement Administrator for further instructions. Refer back to the Notice and the Settlement Agreement, which can be found online at www.LopezVoiceAssistantSettlement.com, for more information about the Settlement.

Deadline and Submission Method. Claim Forms must be either:

(1) submitted online **by no later than 11:59 p.m. Pacific Time on July 2, 2025**; or

(2) postmarked and mailed to the Settlement Administrator by **July 2, 2025,** to P.O. Box 6609, 614 Cranbury Rd, East Brunswick, NJ 08816.

Eligibility. The Settlement will provide a cash payment if you are a current or former owner or purchaser of a Siri Device, who resides in the United States or its territories, whose confidential or private communications were obtained by Apple and/or were shared with third parties as a result of an unintended Siri activation between September 17, 2014 to December 31, 2024.

The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families.

"Siri Device" means a Siri-enabled iPhone, iPad, Apple Watch, MacBook, iMac, HomePod, iPod touch, or Apple TV.

You may submit claims for up to five Siri Devices on which you claim to have experienced an unintended Siri activation during a conversation intended to be confidential or private. Claims must be submitted by a Settlement Class Member. Except for claims submitted by an authorized individual on behalf of a Settlement Class Member that is a minor, claims submitted by people or entities other than the Settlement Class Member will be rejected without opportunity to provide additional information or challenge the Settlement Administrator's determination.

If eligible, you will receive a *pro rata* portion of the Net Settlement Amount up to a cap of $20 per Siri Device. This amount will increase or decrease *pro rata* depending on the total number of valid claims submitted, and Siri Device(s) claimed.

Unless you request exclusion from the Settlement Class as explained in the Class Notice, you will be bound by the Settlement Agreement and Release and the Final Judgment even if you do not submit the Claim Form. If you requested exclusion from the Settlement Class, you are not eligible to receive a cash payment unless you withdraw your request for exclusion by **July 2, 2025**.

**Return your completed Claim Form to:**
**Lopez Voice Assistant Settlement Administrator, P.O. Box 6609, 614 Cranbury Rd, East Brunswick, NJ 08816**

**Your form must be submitted online or postmarked by: July 2, 2025**

# CLAIM FORM

*Lopez, et al. v. Apple Inc.*
Case No. 4:19-cv-04577 (N.D. Cal.)

**LVA**

You must fill out and submit a complete and accurate Claim Form using one of the submission methods by **July 2, 2025**. If you received an email or postcard notice from the Settlement Administrator about the Settlement, please enter the Claimant Identification Code and the Confirmation Code from the email or postcard notice on the Claim Form and the number of devices for which you are claiming in Section II. CLAIM INFORMATION. If you did not receive a Claimant Identification Code and the Confirmation Code from the Settlement Administrator but believe that you are eligible to participate in this Settlement, please provide the requested information in Section III. PURCHASE INFORMATION concerning the Siri Device(s) to be included in your claim.

If your Claim Form is incomplete, contains false information, or is not submitted by the deadline, your claim will be rejected, and you will waive all rights to receive a payment under this Settlement. The Settlement Administrator may contact you to request more information to verify your claim. The information you provide will be treated as confidential and used for the purpose of this Settlement only.

**Return your completed Claim Form to:**
**Lopez Voice Assistant Settlement Administrator, P.O. Box 6609, 614 Cranbury Rd, East Brunswick, NJ 08816**

**Your form must be submitted online or postmarked by: July 2, 2025**

# CLAIM FORM

*Lopez, et al. v. Apple Inc.*
Case No. 4:19-cv-04577 (N.D. Cal.)

**LVA**

## I. NAME AND CONTACT INFORMATION

The Settlement Administrator will use this information for all communications relevant to this Claim Form. Note that the First and Last Name must match the information connected to the email address associated with the Siri Device(s) for which you are making a claim.

If your contact information changes after the submission of this form, please notify the Settlement Administrator in writing.

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

**First Name** | **Last Name**

**Street Address**

**City** | **State** | **Zip Code**

**Email Address**

## II. CLAIM INFORMATION

Please provide the Claimant Identification Code and Confirmation Code that you received. If you have a Claimant Identification Code and Confirmation Code, you must provide that information below. Once you have completed this Section, you can then skip to Section IV. You do not need to complete Section III.

**A. Claimant Identification Code:** ________________ **Confirmation Code:** ____________________

Please indicate the number of Siri Devices for which you are submitting this Claim. A "Siri Device" means an iPhone, iPad, Apple Watch, MacBook, iMac, HomePod, iPod touch, or Apple TV, which you have enabled to use Siri, and purchased or owned between September 17, 2014 and December 31, 2024. There is a limit of 5 devices that can be claimed. If you did not receive a Claimant Identification and Confirmation Code from the Settlement Administrator but believe that you are eligible to participate in this Settlement, please proceed to Section III. PURCHASE INFORMATION and provide the requested information.

**# of Devices (up to 5):** ________________

**Return your completed Claim Form to:**
**Lopez Voice Assistant Settlement Administrator, P.O. Box 6609, 614 Cranbury Rd, East Brunswick, NJ 08816**

| Your form must be submitted online or postmarked by: July 2, 2025 | **CLAIM FORM**<br>*Lopez, et al. v. Apple Inc.*<br>Case No. 4:19-cv-04577 (N.D. Cal.) | LVA |
|---|---|---|

## III. PURCHASE INFORMATION

If you do not have a Claimant Identification Code and Confirmation Code, please provide your email address associated with the Siri Device(s) for which you are making a claim:

**Email Address:** ______________________________

If you do not have a Claimant Identification Code and Confirmation Code, you may submit claims for up to <u>five</u> Siri Devices, but you must provide the information in the chart below for each Siri Device you are submitting a claim for.

If you have proof of purchase for a device (*e.g.*, a receipt or invoice) you may upload it or attach it to the Claim Form and do not need to fill out any other information for that device.

If you have the serial number, please provide the serial number for that device and the model name (*i.e.*, iPhone X).

| No. | Check here if you are providing proof of purchase. If you provide proof of purchase, you do not need to complete anything else in this chart for that Siri Device. | Serial Number | Model |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**Return your completed Claim Form to:**
**Lopez Voice Assistant Settlement Administrator, P.O. Box 6609, 614 Cranbury Rd, East Brunswick, NJ 08816**

| Your form must be submitted online or postmarked by: July 2, 2025 |
|---|

# CLAIM FORM

*Lopez, et al. v. Apple Inc.*
Case No. 4:19-cv-04577 (N.D. Cal.)

| LVA |
|---|

## IV. PAYMENT SELECTION

Please select **one** of the following payment options:

☐ **Digital Check** (Enter Email Address) ______________________________

☐ **Check** (Mailed to the address in Section I of this form)

Note: If you prefer to receive your payment via direct deposit, please complete the form online.

## V. ATTESTATIONS AND DECLARATION

For each Siri Device that you are submitting a claim, you are required to attest under penalty of perjury to each of the following statements as true. Please confirm by putting a check mark in the boxes provided:

☐ I attest that I purchased or owned the Siri Device(s) above, reside in the United States or its territories, and enabled Siri on that device/those devices;

☐ I attest that I experienced at least one unintended Siri activation;

☐ I attest that at least one of the unintended Siri activations that I experienced occurred during a conversation intended to be confidential or private.

**BY SIGNING BELOW, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT ALL THE INFORMATION PROVIDED BY ME ON THIS CLAIM FORM IS TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT MY CLAIM IS SUBJECT TO AUDIT, REVIEW, AND VALIDATION USING ALL AVAILABLE INFORMATION.**

______________________________ Signature of Claimant    ______________________________ Print Name of Claimant    __________ Date

**REMINDER: YOUR SETTLEMENT CLAIM FORM MUST BE SUBMITTED ONLINE BY 11:59 P.M. PACIFIC TIME ON JULY 2, 2025 OR POSTMARKED AND MAILED NO LATER THAN JULY 2, 2025 TO:**

**Lopez Voice Assistant Settlement Administrator**
**P.O. Box 6609**
**614 Cranbury Rd**
**East Brunswick, NJ 08816**

# GOOGLE ASSISTANT PRIVACY SETTLEMENT

# CLAIM FORM

## INSTRUCTIONS

This Claim Form should be filled out and submitted online or by mail if you received a notice of class action settlement and/or you believe you are a Settlement Class Member. **PLEASE REVIEW THE LONG-FORM NOTICE LOCATED ON THE SETTLEMENT WEBSITE, www.GoogleAssistantPrivacyLitigation.com,** for more detailed information about the settlement.

**You are a Settlement Class Member if you are a member of one or both of the following Settlement Classes:**

You are a member of the ***Purchaser Settlement Class*** if you are a User who purchased a Google-Made Device in the United States or its territories between May 18, 2016 and March 19, 2026.

You are a member of the ***Privacy Settlement Class*** if you are a User of Google Assistant or were a member of a User's Household between May 18, 2016 and March 19, 2026, and your communications were recorded or otherwise obtained by Google Assistant as a result of a False Accept or disclosed to any third-party review vendor.

- "Users" are individuals who reside in the United States or its territories whose Google accounts were associated with at least one Google Assistant Enabled Device during the Class Period;
- "Household" is a group of individuals sharing a common abode;
- "Google Assistant Enabled Devices" are devices that come with Google Assistant pre-installed or on which Google Assistant can be downloaded;
- "Google-Made Devices" are Google Assistant Enabled Devices manufactured and sold by Google either directly or through third-party retailers, including Google's own smart home speakers (Google Home, Home Mini, and Home Max); smart displays (Google Nest Hub and Nest Hub Max); and its Pixel smartphones;
- "False Accept" is an instance where a Google Assistant Enabled Device records and transmits audio data to Google's servers because a Hot Word was detected although a Hot Word was not spoken; and
- "Hot Word" is a word or phrase (such as "OK Google" or "Hey Google") which can be used to activate Google Assistant on certain Google Assistant Enabled Devices.

**To be eligible for payment, you must submit a valid Claim no later than August 27, 2026.**

**How Do I Fill Out and Submit This Claim Form?**

If you believe you are eligible and would like to submit a Claim, you have two options: (1) complete and submit the online Claim Form at **www.GoogleAssistantPrivacyLitigation.com** or (2) complete a paper Claim Form and send it by First-Class Mail to:

Google Assistant Privacy Settlement
c/o A.B. Data, Ltd.
P.O. Box 170500
Milwaukee, WI 53217

Your Claim Form must be **submitted online, or postmarked, by August 27, 2026**. Please read and follow the instructions carefully. Make sure you include all the required information. If you do not provide complete and accurate information, your claim may be delayed or rejected.

**Communications about settlement payments will be digitally sent to you via email or mobile phone text.** Please provide a current, valid email address and mobile phone number on your Claim Form. If your contact information changes after you submit your Claim Form, you must tell the Claims Administrator. Otherwise, you may not get your Settlement payment. The Claims Administrator will send you an email and/or mobile phone text when your Settlement payment is available. The email and/or mobile phone text will give you several digital payment options, such as PayPal, Venmo, Zelle, or ACH, to get your Settlement payment.