Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Erin Green Comite (*pro hac vice*)
Anja Rusi (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com
arusi@scott-scott.com

*Additional Counsel for Plaintiffs on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE ASSISTANT PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master Docket No.: 5:19-cv-04286-BLF<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (II) MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>COMPLAINT FILED: July 25, 2019<br>Date: October 1, 2026<br>Time: 9:00 a.m. PT<br>Dept.: Courtroom 1-5th Floor<br>Judge: Honorable Beth Labson Freeman |

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................................1

II. SUPPLEMENTAL STATEMENT OF FACTS ..................................................................2

III. THE NOTICE PLAN SATISIFED RULE 23 AND DUE PROCESS ................................3

IV. THE OVERWHELMINGLY POSITIVE REACTION OF THE SETTLEMENT CLASSES SUPPORTS FINAL APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND FEE REQUEST ................................4

V. THE SMITH OBJECTION TO THE SETTLEMENT, PLAN OF ALLOCATION, AND FEE REQUEST SHOULD BE OVERRULED ........................................................5

- A. The Settlement's Valuation Reflects a Reasonable, Risk-Adjusted Judgment........5
- B. The Three-Device Cap Is a Reasonable Exercise of Allocation Discretion ............7
- C. The Claim Form's Verification Requirements Are Reasonable and Necessary to Protect the Settlement Classes from Fraud........................................9
- D. The Objection to the Fee Should Be Overruled....................................................11

VI. THE GOLDSTONE OBJECTION SHOULD BE OVERRULED ..................................13

VII. THE BROWN OBJECTION SHOULD BE OVERRULED...........................................14

VIII. CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
2024 WL 5112227 (N.D. Cal. Dec. 13, 2024) .....5

*Dixon v. Cushman & Wakefield W., Inc.*,
2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) .....6

*Glass v. UBS Fin. Servs., Inc.*,
2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) .....11

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .....7, 9

*In re Apple iPhone/iPod Warranty Litig.*,
2014 WL 12640497 (N.D. Cal. May 8, 2014) .....4

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
2025 WL 822665 (N.D. Cal. Mar. 14, 2025) .....3

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) .....11

*In re Facebook Internet Tracking Litig.*,
2022 WL 16902426 (N.D. Cal. Nov. 10, 2022), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (9th Cir. Feb. 21, 2024) .....4

*In re Facebook, Inc. Internet Tracking Litig.*,
2024 WL 700985 (9th Cir. Feb. 21, 2024) .....6

*In re Google RTB Consumer Privacy Litigation*,
No. 4:21-cv-02155-YGR, ECF No. 813 (N.D. Cal. Mar. 26, 2026) .....11

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .....5

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) .....4

*Jenson v. First Tr. Corp.*,
2008 WL 11338161 (C.D. Cal. June 9, 2008) .....4

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .....5

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 7002057 (N.D. Cal. Nov. 15, 2024), *aff'd sub nom. Katz-Lacabe Oracle Am., Inc.*, 2026 WL 413182 (9th Cir. Feb. 13, 2026) ....................................6

*In re Kia Hyundai Vehicle Theft Litig.*,
2024 WL 4800876 (C.D. Cal. Oct. 1, 2024) ....................................14

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....................................5

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ....................................6

*Lopez v. Apple Inc.*,
No. 4:19-cv-04577, ECF No. 406 (N.D. Cal. Sept. 4, 2025) ....................................8

*In re: Metformin Marketing and Sales Practices Litig.*,
No. 20-cv-2324 (D.N.J. June 26, 2026), ECF No. 670-7 ....................................12

*Moore v. Verizon Commc'ns, Inc.*,
2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ....................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ....................................6

*In re Novartis & Par Antitrust Litig.*,
2024 WL 7033291 (S.D.N.Y. July 26, 2024) ....................................9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................4, 7

*In re Oracle Sec. Litig.*,
1994 WL 502054 (N.D. Cal. June 18, 1994) ....................................7

*Othart Dairy Farms, LLC v. Dairy Farmers of America, Inc.*,
No. 22-cv-251 (D.N.M. Sept. 29, 2025), ECF No. 218-3 ....................................12

*Rodriguez v. Google LLC*,
2026 WL 2547282 (N.D. Cal. Aug. 28, 2026) ....................................6

*Rodriguez v. Google LLC*,
No. 3:20-cv-04688 (N.D. Cal.) ....................................1, 6

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................................6, 13

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ....................................7, 8

*Shay v. Apple, Inc.*,
2024 WL 1184693 (S.D. Cal. Mar. 19, 2024) ....................................10

*Stark v. Patreon, Inc.*,
2025 WL 1592736 (N.D. Cal. June 5, 2025) ....................13

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ....................7

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................11, 12

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ....................3, 10

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23(e) ....................9

## I. INTRODUCTION

Plaintiffs respectfully submit this reply in further support of their Motion for Final Approval of Class Action Settlement (ECF No. 567) and their Motion for Attorneys' Fees and Expenses and Service Awards (ECF Nos. 566). The August 27, 2026 deadline for Settlement Class Members to object to, or exclude themselves from, the Settlement has now passed, and the reaction of the Settlement Classes confirms what the opening papers demonstrated: the $68,000,000 non-reversionary common fund is an excellent result, and both the Settlement and the attorneys' fee request are fair, reasonable, and adequate.

The Settlement Class's response has been overwhelmingly positive. Against a Court-approved Notice program that delivered Email Notice to over 171 million valid email addresses on the Direct Notice List, only six Settlement Class Members objected to any aspect of the Settlement, Plan of Allocation, or the fee request, and only 216 requested exclusion.[1] This resoundingly favorable reaction strongly supports approval of the Settlement, Plan of Allocation, and fee request.

Three of the objections—those of Joy Thomas (ECF No. 561), Joshua Keith Kirkley (ECF No. 562-1), and Melick Cook (ECF No. 563)—were addressed in Plaintiffs' opening papers and fail for the reasons stated there.[2] ECF No. 567 at 14-15, 19-21; ECF No. 566 at 10-12. This reply addresses the three objections submitted since those papers were filed from Nathaniel Smith (ECF No. 569), Samuel Goldstone (ECF No. 571), and Heidi Brown (ECF No. 572-1). Mr. Smith's objection rests on a series of misunderstandings and, most importantly, a failure to appreciate the fraud-prevention realities that shape every modern claims process. None of its four grounds

[1] One additional objection was filed on the docket (ECF No. 570, from Darlene Abbatecola); it appears directed at a different Google matter: it objects to a fee application by attorneys who are counsel of record in *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), and does not address this Settlement, the Plan of Allocation, or the fee requested here. It therefore is not counted among the objections to this Settlement.

[2] Plaintiffs do not re-argue those objections here and rest on their opening submissions.

identifies a defect that would render the Settlement, Plan of Allocation, or the requested attorneys' fee anything less than fair, reasonable, and adequate. Mr. Goldstone's *cy pres*-related objection is premature, and his fee request objection based on purportedly inadequate settlement value is meritless. Ms. Brown's objection raises a subset of the claims-process concerns raised by Mr. Smith and fails for the same reasons. The Court should overrule the objections and approve the Settlement, Plan of Allocation, and attorneys' fee request.

## II. SUPPLEMENTAL STATEMENT OF FACTS

Since Plaintiffs filed their opening papers, the Court-approved Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), completed the Notice Plan, and the claims, exclusion, and objection periods have closed. *See generally* Supplemental Declaration of Rochelle J. Teichmiller ("Supp. Teichmiller Decl."). As of September 17, 2026, A.B. Data has received more than 1.49 million timely Claims and more than 40,000 late Claims, which A.B. Data has discretion to accept under the Settlement Agreement. Supp. Teichmiller Decl. ¶13. Based on the current claims data, the Alternative Minimum Payment provided for in the Plan of Allocation is not necessary. *Id.* ¶16. A.B. Data estimates that the per-point recovery range is between approximately $8 and $20—resulting, at the low end, in $32 for Purchaser Settlement Class members (assuming one device each) and $8 for Privacy Settlement Class members. *Id.* ¶15.

As of September 17, A.B. Data has received 216 valid requests for exclusion. *Id.* ¶10 & Ex. A. Only six Settlement Class Members have objected to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fee request: Joy Thomas (ECF No. 561), Joshua Keith Kirkley (ECF No. 562-1), Melick Cook (ECF No. 563), Nathaniel Smith (ECF No. 569), Samuel Goldstone (ECF No. 571), and Heidi Brown (ECF No. 572-1).

Defendants Google LLC and Alphabet Inc. ("Google") also served notice of the proposed Settlement under the Class Action Fairness Act, 28 U.S.C. §1715(b) ("CAFA"), on the United States Attorney General and the Attorneys General of all U.S. states and territories on January 30 and February 2, 2026. ECF No. 557 ¶¶4, 7. No governmental official has objected.

## III. THE NOTICE PLAN SATISIFED RULE 23 AND DUE PROCESS

Now that the Court-approved Notice Plan has been fully implemented and the record is complete, the Court should confirm that the Notice Plan satisfied Rule 23 and due process, as the Court preliminarily found. *See* ECF No. 560 ¶15; ECF No. 567 ("Final Approval Br.") §IV.D.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances," not actual receipt by every class member. *In re California Gasoline Spot Mkt. Antitrust Litig.*, 2025 WL 822665, at *4 (N.D. Cal. Mar. 14, 2025). The Notice Plan met that standard. Direct Email Notice was delivered to approximately 99% of the 173,814,291 valid email addresses on the Direct Notice List, and A.B. Data thereafter sent a Reminder Email Notice to those that had not filed a claim or requested exclusion, which was delivered at a 99% rate. Declaration of Rochelle J. Teichmiller on Implementation of Notice Plan (ECF No. 567-1) ("Teichmiller Decl.") ¶7; Supp. Teichmiller Decl. ¶4. The Notice Plan as a whole reached an estimated 75.2% of the target audience (*see* Teichmiller Decl. ¶¶9-15), which is within the 70-95% range reflected in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist*. Final Approval Br. at 18-19. More than 1.5 million claims have been submitted, which is further confirmation that the Notice Plan worked. Supp. Teichmiller Decl. ¶13.

Mr. Smith claims that some Email Notices may have reached recipients' spam folders, but he does not challenge the notice process. ECF No. 569 at 20. Even if true, this does not impact the sufficiency of notice. *See California Gas*, 2025 WL 822665, at *4 (receipt by every class member not required). First, A.B. Data employed sophisticated, industry-standard practices to maximize delivery of the Notices and Reminder Email Notices to recipients' inboxes. Supp. Teichmiller Decl. ¶5; Teichmiller Decl. ¶6. There is no indication, given the filing of more than 1.5 million claims, that these efforts failed and email was ineffective. Second, notice was also communicated though several coordinated channels separate from email, including via a press release and targeted digital and social media advertising campaign, directing Class Members to the Settlement Website. Teichmiller Decl. ¶¶9-14. Nothing in Mr. Smith's submission disturbs the Court's preliminary finding that the Notice Plan satisfies Rule 23 and due process. *See, e.g.*, *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, 2022 WL 1593389, at *8 (N.D. Cal. Apr. 21, 2022)

(overruling objection based on email notice appearing in spam folder, where, like here, "the Settlement Administrator followed 'industry standard best practices ... for the Email Notice program specifically designed to avoid and overcome SPAM filters'" and email was not the only form of notice) (ellipsis in original); *In re Apple iPhone/iPod Warranty Litig*., 2014 WL 12640497, at *9 (N.D. Cal. May 8, 2014) (overruling objection based on email notice appearing in spam folder, stating "Courts routinely approve email notice campaigns and, inevitably, some email messages will end up in a spam folder—just as some postal mail will never reach its intended recipient") (citing cases).

## IV. THE OVERWHELMINGLY POSITIVE REACTION OF THE SETTLEMENT CLASSES SUPPORTS FINAL APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND FEE REQUEST

"'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, against a Notice Plan that delivered Email Notice to more than 171 million valid email addresses on the Direct Notice List and generated more than 175 million gross impressions via targeted digital and social media, having only five objections to the Settlement (Smith, Goldstone, Brown, Thomas, and Kirkley) and 216 requests for exclusion is an overwhelmingly positive response that strongly favors approval. *See, e.g*., *In re Facebook Internet Tracking Litig*., 2022 WL 16902426, at *5 (N.D. Cal. Nov. 10, 2022) (finding favorable reaction of the class, based on 9 objectors and 1,374 opt-outs out of more than 100 million class members, supported final approval), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig*., 2024 WL 700985 (9th Cir. Feb. 21, 2024).

The small number of objections likewise supports approval of the Plan of Allocation and the attorneys' fee request. The two objections directed at the Plan of Allocation (Smith and Brown) and the five objections to the fee request (Smith, Goldstone, Thomas, Cook, and Kirkley) are negligible against Settlement Classes numbering in the millions. *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10 (C.D. Cal. June 9, 2008) (that "there has been only one objection to the Plan of Allocation" supported approval); *see also In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *12 (S.D. Cal. June 16, 2025) ("lack of any objections to the Plan of Allocation after

distributing the Notice further evinces that it is fair"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) (same); *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *7 (N.D. Cal. Dec. 13, 2024) (lack of objections supported requested fees); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (same). The absence of governmental objection following CAFA notice also supports approval. *See*, *e.g.*, *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (no governmental objections following CAFA notice favors settlement approval).

None of the objections detract from the favorable reaction of the Settlement Classes or provide any basis to withhold approval.

## V. THE SMITH OBJECTION TO THE SETTLEMENT, PLAN OF ALLOCATION, AND FEE REQUEST SHOULD BE OVERRULED

Mr. Smith objects on four grounds: that the Settlement undervalues the claims of the Settlement Classes; that the Plan of Allocation's three-device cap is improper; that the Claim Form's serial-number requirement in addition to the proof of purchase requirement is unduly demanding; and that the requested fee exceeds the Ninth Circuit's benchmark. ECF No. 569 at 4.

### A. The Settlement's Valuation Reflects a Reasonable, Risk-Adjusted Judgment

Mr. Smith's lead argument is, at bottom, a disagreement about which damages figure the Court should use. He would replace the $3.74 willingness-to-pay premium Plaintiffs used with a willingness-to-accept figure, a device-specific study, and/or an inflation adjustment, which he believes results in a larger damages denominator and a smaller recovery percentage. *Id.* at 7-11. But a settlement's fairness is not measured against the most aggressive damages theory a class member can assemble after the fact; it is measured against the recovery realistically available at trial, discounted for the risk, expense, and delay of continued litigation.

Mr. Smith's argument fails to account for events in this litigation, including Google's vigorous challenges to Plaintiffs' price premium estimate. ECF No. 496 at 17-22. Google maintained at summary judgment that the Purchaser Class could establish no price premium and no right to recovery at all—a factor Mr. Smith does not consider. A class member's ability to hypothesize a higher damages figure does not make the negotiated, certain, and non-reversionary

$68,000,000 recovery inadequate given the risk that the class would recover far less—or nothing—at trial if this case were litigated to its conclusion. Even a certified class had to survive summary judgment, win a trial on hotly contested issues of consent and damages, and defend the resulting judgment on appeal—any one of which could have left the class with far less, or nothing, and each of which the Settlement's certain recovery removes.

Against that backdrop, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Courts in this Circuit routinely approve settlements recovering far less than the 15.15% to 56.67% recovered here. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (10% of estimated damages fair and reasonable); *Dixon v. Cushman & Wakefield W., Inc.*, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (approximately 8% fair given the risks of continued litigation). The negotiated, certain $68,000,000 recovery is well within that range.

Mr. Smith's own comparator undercuts his argument. He invokes the $425 million jury verdict in *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), as evidence that more was available. But that verdict was returned in a class encompassing essentially every Android user in America, approximately 98 million individuals, such that the recovery amounts to less than $5 per class member. *Rodriguez v. Google LLC*, 2026 WL 2547282, at *1 (N.D. Cal. Aug. 28, 2026). If this Settlement is approved, Class Members participating in the Settlement will do *better* than those in *Rodriguez*, recovering an estimated $32 for Purchaser Settlement Class members (assuming one device each) and $8 for Privacy Settlement Class members. Supp. Teichmiller Decl. ¶15. Thus, Mr. Smith's comparator, if anything, confirms that the per-member post-trial recovery here is strong, not deficient. *See also In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024) (no abuse of discretion in approving $90 million settlement on behalf of approximately 124 million individuals where estimated maximum damages were $900 million); *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 7002057, at *3 (N.D. Cal. Nov. 15, 2024), *aff'd sub nom. Katz-Lacabe Oracle Am., Inc.*, 2026 WL 413182 (9th Cir. Feb. 13, 2026)

(resolving data privacy class action involving statutory claims and over 220 million class members for $115 million); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 937-38 (N.D. Ill. 2022) (granting final approval to data privacy class action involving statutory claims and 89 million class members for $92 million). Further, because the Net Settlement Fund is distributed *pro rata* among those with valid Claims, the updated estimated per-point recovery range of between approximately $8 and $20 far exceeds the $3.74 per-device premium on which Mr. Smith relies. Indeed, the actual recovery is in line with his preferred range, even though it remains hypothetical and unsupported.

Mr. Smith's disagreement with Plaintiffs' damages estimate is not a basis to reject the Settlement. A class member who believes the negotiated recovery undervalues his claim may opt out and pursue it individually; "the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600 (N.D. Cal. 2020). Mr. Smith did not opt out.

**B. The Three-Device Cap Is a Reasonable Exercise of Allocation Discretion**

Mr. Smith objects to the Plan of Allocation, arguing that the three-device cap unfairly diminishes the claim value. ECF No. 569 at 11-14. This objection simply repackages Mr. Smith's objection that the Settlement value is inadequate, and thus, should be overruled for the reasons discussed above. *See* §V.A., *supra*.

A plan of allocation need only be fair, reasonable, and adequate, and "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1045; *accord In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). Indeed, an allocation formula "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018). The three-device cap satisfies that standard based on publicly available information

estimating how long Google-Made Devices are expected to last.[3] The cap also serves as a reasonable administrability and anti-fraud measure. Because payment is *pro rata* from a fixed fund, the cap serves the equitable purpose of preventing inflated or fraudulent multi-device filings from diluting the recovery available to ordinary Class Members. And, in any event, based on the current claims experience, the average number of devices claimed by members of the Purchaser Settlement Class is 1.35. Supp. Teichmiller Decl. ¶14. To the extent a class member purchased an extraordinary number of devices, the remedy is to opt out of the settlement to pursue their claims individually. The low number of exclusions confirms this was not an actual concern across the Purchaser Settlement Class.

Courts routinely approve allocation distinctions of precisely this kind. *See, e.g., Chipotle Mexican Grill, Inc.*, 336 F.R.D. at 593 (each household capped at 15 claims); Final Approval Order ¶14, *Lopez v. Apple Inc.*, No. 4:19-cv-04577, ECF No. 406 (N.D. Cal. Sept. 4, 2025) (approving plan of allocation that adopted a five-device cap[4]). That a different settlement in a different case

---

[3] Google expects its smartphones to last for up to 7 years and Google Nest devices up to 5 years based on its commitment to updates. *Pixel Drops give you seven years of that new-phone feeling.*, GOOGLE: STORE https://store.google.com/intl/en/ideas/articles/pixel-security-updates/#:~:text=Google%20pledges%20to%20update%20newer%20phones%20with,on%20Pixel%208%20Pro%20and%20newer%20models (last visited Sep. 16, 2026); *Security updates & security validation results for Google's connected home devices*, GOOGLE: SUPPORT https://support.google.com/product-documentation/answer/10231940?hl=en#:~:text=Next-,Security%20updates%20and%20security%20validation%20results%20for%20Google%20Nest%20devices,more%20about%20Google%20Nest%20devices (last visited Sep. 16, 2026).

[4] The *Lopez* Plan of Allocation provides: “Settlement Class Members may submit claims for up to five Siri Devices on which they claim to have experienced an unintended Siri activation during a conversation intended to be confidential or private.” LOPEZ V. APPLE INC.: HOME, https://www.lopezvoiceassistantsettlement.com/home (last visited Sept. 16, 2026). Of note, *Lopez* involved a single settlement class.

adopted a different device cap does not make the three-device cap unreasonable here. The design of a plan of allocation is committed to the parties' informed judgment and the Court's sound discretion, and where, as here, the Plan of Allocation has a "reasonable, rational basis" and is recommended by experienced and competent counsel, that is enough. *Anthem*, 327 F.R.D. at 332. The Plan of Allocation, including the three-device cap, is fair, reasonable, and adequate, and Mr. Smith's objection to it should be overruled.

### C. The Claim Form's Verification Requirements Are Reasonable and Necessary to Protect the Settlement Classes from Fraud

The serial-number requirement Mr. Smith attacks (ECF No. 569 at 14-20) is not an obstacle to valid claims; it is a safeguard against fraudulent ones, thereby protecting the value of legitimate Class Members' claims. In Mr. Smith's assumed ideal world scenario, a claim form sworn under penalty of perjury would be sufficient fraud protection on its own, but the reality is that the modern claims process is fraught with automated "bot" operations, state actors, and others that willingly sign false claim forms for the opportunity to receive settlement payments. Supp. Teichmiller Decl. ¶¶18-19.

The Advisory Committee's note to Rule 23(e) instructs that "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. The Claim Form's verification requirements satisfy both concerns. High-profile consumer settlements publicized nationwide are frequent targets of large-scale, automated claims fraud. Supp. Teichmiller Decl. ¶19. A pure checkbox form, backed by nothing but an attestation, could invite organized fraud rings and "bot" farms to submit fraudulent claims by the thousands or millions, siphoning the fund away from the legitimate class members the settlement exists to compensate. *Id*. This is not a hypothetical risk. Courts have recognized that "in recent years, the filing of fraudulent claims in class action settlements has meaningfully increased," and settlement administrators now routinely field fraudulent-claim rates reaching 80% and higher. *In re Novartis & Par Antitrust Litig.*, 2024 WL 7033291, at *3 (S.D.N.Y. July 26, 2024) (finding 80% of consumer claims bore indicia of fraud and noting other settlements where 95% and 99% of claims were rejected as fraudulent or invalid), *report and recommendation adopted*, 2026 WL 1214521 (S.D.N.Y. May 4, 2026).

Against this backdrop, Mr. Smith's answer that a Claim Form signed under penalty of perjury should be sufficient is no answer at all. The perjury statute has force only against claimants within the practical reach of United States process; it does nothing to deter the anonymous domestic fraudster or the foreign or state-sponsored actors. Courts routinely uphold such verification processes, including proof of purchase requirements, as reasonable and not unduly demanding, and have recognized that such requirements prevented many fraudulent claims. *See Shay v. Apple, Inc.*, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024); *Zoom Video Commc'ns, Inc.*, 2022 WL 1593389, at *7 (finding documentation requirement was reasonable).

As to Mr. Smith's contention that the Claim Form's requirement of a device serial number or IMEI in addition to proof of purchase is too onerous, that additional requirement is neither redundant nor unreasonable. The two serve different verification functions: proof of purchase establishes that a qualifying purchase occurred, while the device identifier ties each claim to a specific, eligible device and enables the administrator to detect the duplicate and fabricated device claims that a receipt alone cannot screen. Supp. Teichmiller Decl. ¶20. Requiring both is a reasonable response to that risk and falls squarely within the discretion committed to Class Counsel, the Claims Administrator, and the Court in designing a claims process. Google publicly publishes where serial number and IMEI can be found—physically on the device, on the packaging, and/or in one's account or app, depending on device type. *See Find your device serial number & model*, GOOGLE: STORE: SUPPORT, https://support.google.com/store/answer/3333000 ?hl=en#zippy=%2Cfind-your-google-nest-speaker-or-display-serial-number. That some class members may find the identifier inconvenient to locate does not render the requirement unduly demanding; indeed, the fact that approximately 85% of the more than 1.5 million claimants provided at least one serial number (or IMEI) confirms that it is not. Supp. Teichmiller Decl. ¶14.

Mr. Smith further complains that the supposed burden of the serial number requirement is compounded because the Claims Administrator is the final arbiter of whether a Claim Form is deficient. ECF No. 569 at 19. A.B. Data is a highly experienced neutral evaluator. ECF No. 549-8 at Ex. A. Mr. Smith has submitted no evidence calling into question A.B. Data's ability to fairly resolve claims disputes and no authority requiring the Court to resolve any such disputes. *See,*

*e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *13 (N.D. Cal. Jan. 26, 2007) (overruling similar objection), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

**D. The Objection to the Fee Should Be Overruled**

The requested fee of one-third of the Settlement Fund ($22,666,666.67) is reasonable under the factors set out in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002), and is confirmed by a lodestar cross-check yielding a multiplier of 1.01, as the opening papers demonstrate. ECF No. 566. Mr. Smith's objection does not undermine that showing; his three challenges—to the result, to the lodestar, and to purportedly shared work—each fail.

First, Mr. Smith's contention that the "excellent result" is overstated fails for the same reason as his valuation argument and failure to appreciate the risk of no recovery in this case, which is addressed in §IV.A above. Because the entire $68,000,000 fund benefits the Settlement Classes, the fee is properly measured against the full common fund.

Mr. Smith's reliance on *California Pizza Kitchen* is misplaced. There, the Ninth Circuit *affirmed* the settlement's approval and reversed only the fee award because the district court set fees against an unvalidated, facially inflated valuation of a *claims-made* settlement, without first calculating the benefit actually delivered to the class, yielding a fee that approached half of the settlement's value. *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 671-72, 678-79 (9th Cir. 2025). This Settlement presents none of those features. The benefit here is a fixed, non-reversionary $68,000,000 common fund that does not depend on a claims rate or post-validation adjustment. Further, the requested one-third fee aligns with fees awarded in common-fund settlements, not the ~45%-of-value outlier the court confronted in *California Pizza Kitchen*. If anything, that decision confirms the fee here is reasonable: it measures fees by "the benefit to the class," *id.* at 679, and the entire $68,000,000 fund is that benefit.

Mr. Smith's reliance on *In re Google RTB Consumer Privacy Litigation* is also misplaced. That case involved an injunctive-only settlement with no common fund, and counsel's attempt to assign the injunctive relief a monetary value rested on expert evidence the court found "too speculative." Order Granting in Part Motion for Attorneys' Fee at 8-9, *In re Google RTB Consumer Privacy Litigation,* No. 4:21-cv-02155-YGR, ECF No. 813 (N.D. Cal. Mar. 26, 2026).

Absent any non-speculative valuation of the relief, the court had no settlement fund against which to apply the percentage-of-recovery method and therefore turned to the lodestar. Here, by contrast, the class benefit is the fixed $68,000,000 common fund, so the percentage-of-recovery method is available and appropriate. *Google RTB*'s reasoning does not apply to a cash settlement of ascertainable value.

Second, the requested fee is confirmed by a lodestar cross-check producing a multiplier of 1.01, a very small premium over the value of the time counsel devoted, and at the very bottom of the 1.0 to 4.0 range of multipliers courts commonly approve. *Vizcaino*, 290 F.3d at 1051 & n.6. This multiplier also does not take into account the additional lodestar Class Counsel have incurred and will continue to incur since submitting their fee request, including preparing this brief, arguing at the Final Approval Hearing, and assisting with future claims administration work.

Mr. Smith's contention that a few senior timekeepers' current rates exceed rates approved in certain cited decisions does not move the needle. Class Counsel faced a significant risk of nonpayment developing this highly technical case under nascent, ever-changing case law. ECF No. 566-1 ¶¶7-11. Class Counsel invested extensive amounts of their time, effort, and money, and prosecuted it vigorously against a well-resourced defendant with sophisticated, tenacious defense counsel. *See generally* ECF Nos. 566-1, 566-2, 566-3. The partners whose rates Mr. Smith challenges are highly experienced class action litigators who were essential to mediating this Action, whose 2025 rates have been approved. *See* ECF No. 566-3 ¶¶5, 10, and Ex. B; ECF No. 566-2 ¶¶8-9 and Ex. B; *see also* ECF No. 549-4 (Lowey firm resume); ECF No. 549-5 (Scott+Scott firm resume); *Othart Dairy Farms, LLC v. Dairy Farmers of America, Inc.*, No. 22-cv-251 (D.N.M. Sept. 29, 2025), ECF No. 218-3 at Ex. 1 (submitting Scott+Scott partner hourly rates of $895 to $2,050); *id.* (Dec. 8, 2025), ECF No. 228 ¶2 (approving one-third attorneys' fee request); *In re: Metformin Marketing and Sales Practices Litig.*, No. 20-cv-2324 (D.N.J. June 26, 2026), ECF No. 670-7 (submitting Scott+Scott partner hourly rates of $900 to $1,960); *id.* (Aug. 12, 2026), ECF No. 687 (approving attorneys' fee request). Hourly rates rise year over year; that a 2026 rate is higher than a rate an earlier court approved is therefore not evidence of overcharging; it is the ordinary and expected consequence of the current-rate method. Even accepting Mr.

Smith's figures, the amounts he identifies are a small fraction of the $22,477,337.50 lodestar, and a modest reduction would leave the multiplier near 1.0 (i.e., 1.02) and still fully support the requested fee. Reducing the fee to the 25% benchmark Mr. Smith proposes would yield a negative multiplier of 0.76, compensating counsel at less than the value of the time they devoted over more than six years.

Third, Mr. Smith's request that the Court order a supplemental declaration apportioning work purportedly "shared" with *Lopez v. Apple, Inc.* should be denied. *Lopez* involved a different defendant, and a different product (Apple's Siri, not Google Assistant), and required the development of case-specific evidence. The lodestar here reflects time recorded in this Action only. *See* ECF No, 566-2 (hours were drawn from contemporaneous daily time records and reviewed for accuracy, necessity, and reasonableness, with reductions made in the exercise of billing judgment); ECF No. 556-3 (same).

The requested fee is fair and reasonable, and the Court should overrule this objection.

## VI. THE GOLDSTONE OBJECTION SHOULD BE OVERRULED

Mr. Goldstone faults the Settlement for failing to identify a specific *cy pres* recipient, which thus "prevents the class from verifying whether the chosen charity is heavily funded by Google or tied to the attorneys." ECF No. 571 at 1-2. The Settlement Agreement provides that if any money remains in the Settlement Fund after the initial distribution, the balance shall be redistributed to those valid claimants who cashed their settlement payments, after the additional costs and fees incurred in administering such redistribution are deducted. ECF No. 549-2 ¶4.20. The provision is intended to ensure that the Settlement Fund is exhausted through distributions to valid claimants. Only to the extent it becomes economically infeasible to distribute any remainder in the Settlement Fund will the parties seek the Court's approval for a *cy pres* distribution, naming any recipient(s) at that time. *Id.*; *see also* ECF No. 567-2 ¶12 (proposed Final Approval Order requiring the parties to seek Court approval for any *cy pres* distribution). Thus, an objection to *cy pres* distribution "becomes ripe only if the entire settlement fund is not distributed to class members." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Accordingly, the Court should overrule this objection as premature. *See, e.g.*, *Stark v. Patreon, Inc.*, 2025 WL 1592736, at *4 (N.D. Cal.

June 5, 2025) (finding objection that potential *cy pres* recipients were not identified was premature and noting that the Court would approve any *cy pres* distribution); *In re Kia Hyundai Vehicle Theft Litig*., 2024 WL 4800876, at *19 (C.D. Cal. Oct. 1, 2024) (citing cases).

Next, Mr. Goldstone contends the fee request is excessive based on his misunderstanding regarding the class size and the resultant inaccurate calculation of the claims rate. The 171 million delivered Notices Mr. Goldstone relies on as the class size (ECF No. 571 at 1) is simply the notice population of those *who potentially could be* Settlement Class Members. Notice is broadly disseminated, alerting those receiving it to investigate to determine their eligibility to participate in the Settlement. Ultimately, Mr. Goldstone's objection is the same as Mr. Smith's—that the settlement amount is inadequate—and should be overruled. For the reasons discussed in the opening briefs and herein, the Settlement is an excellent result for the Settlement Classes, particularly considering the *highly uncertain* recovery at trial. ECF No. 566 at 3-5; ECF No. 567 at 7-10. Indeed, it is presently estimated that Purchaser Settlement Class members could receive $32 (assuming one device each) and Privacy Settlement Class members could receive $8. Supp. Teichmiller Decl. ¶15. Finally, analysis of the *Vizcaino* factors and the lodestar crosscheck confirm the reasonableness of the requested fee. ECF No. 566 at 3-10.

## VII. THE BROWN OBJECTION SHOULD BE OVERRULED

Ms. Brown objects that: (1) she cannot readily supply serial numbers and proof of purchase for devices she purchased; (2) her children were minors when the devices were used; and (3) the Plan of Allocation is "unspecified." ECF No. 572-1 at 1-2. Her first objection fails for the same reasons as Mr. Smith's serial number and proof of purchase arguments. *See* §V.C, *supra*. The Claim Form's requirements are reasonable and necessary to protect the Settlement Fund from fraud. Her second objection is misplaced: her children, born in 2005 and 2007 (ECF No. 573-3 at Obj. Ex. 4 (filed under seal)), are no longer minors and thus could have filed their own claims in the Privacy Settlement Class, while she retained her rights as the purchaser of the devices for the Purchaser Settlement Class. Ms. Brown's third objection that the Plan of Allocation is "unspecified" (*id*. at 2) is baseless. The Plan of Allocation is available on the Settlement Website along with the relevant briefing and declarations, which explain the Plan of Allocation and estimate

the potential payout. Teichmiller Decl. ¶16; ECF No. 549-1 ¶53; ECF No. 567 at 10. Ms. Brown also did not comply with the Court-ordered requirement to mail her objection to the Court for docketing (ECF No. 560 ¶3), instead emailing it to Class Counsel. *See* ECF Nos. 572, 573-1 ¶4. For this reason alone, Ms. Brown's objection can be overruled. *See, e.g.*, *Moore v. Verizon Commc'ns, Inc*., 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling objections, among other reasons, "for failing to comply with the procedural requirements for objecting to the Settlement").

## VIII. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the opening papers, Plaintiffs respectfully request that the Court overrule the objections, grant final approval of the Settlement and Plan of Allocation as fair, reasonable, and adequate, grant Plaintiffs' Counsel the requested attorneys' fees and expenses and Plaintiffs the requested service awards, and enter the proposed orders granting this relief.

Dated: September 17, 2026

Respectfully Submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

By: /s/Erin Green Comite

Erin Green Comite (*pro hac vice*)
Anja Rusi (*pro hac vice*)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com
arusi@scott-scott.com

Joseph P. Guglielmo (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169-1820
Tel.: 212-223-6444
Fax: 212-223-6334
jguglielmo@scott-scott.com

Vincent Briganti (*pro hac vice*)
Christian Levis (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601

Tel.: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
mmaclean@lowey.com
afarah@lowey.com

Mark N. Todzo (Bar No. 168389)
Patrick Carey (Bar No. 308623)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Tel.: 415-913-7800
Fax: 415-759-4112
mtodzo@lexlawgroup.com
pcarey@lexlawgroup.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026 the foregoing document entitled PLAINTIFFS' REPLY IN SUPPORT OF (I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (II) MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

/s/ *Erin Green Comite*
Erin Green Comite