United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ASIF KUMANDAN, et al.,
Plaintiffs,
v.
GOOGLE LLC, et al.,
Defendants.

Case No. 19-cv-04286-BLF

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND OVERRULING OBJECTIONS**

[RE: ECF Nos. 566, 567]

Before the Court are two motions: (1) Plaintiffs' Motion for Final Approval of the Class Action Settlement, ECF No. 567 ("Final Approval Mot."); (2) Class Counsel's Motion for Attorney's Fees, Expenses, and Service Awards, ECF No. 566 ("Fees Mot."); and (3) seven objections filed by class members, ECF Nos. 561, 562-1, 563, 569, 570, 571, 572-1. The Court held a fairness hearing on October 1, 2026. ECF No. 579 ("Tr.").

For the following reasons, (1) the Motion for Final Approval of the Class Action Settlement is GRANTED; (2) the Motion for Attorney's Fees, Expenses, and Service Awards is GRANTED IN PART AND DENIED IN PART, and (3) the objections are OVERRULED.

## I. BACKGROUND

This consolidated[1] class action began seven years ago. Plaintiffs' claims pertain to Google's

[1] In July 2019, Asif Kumandan, Melissa Spurr, and Melissa Spurr, as guardian of B.S., a minor, filed a class action complaint against Google arising from Google's alleged nonconsensual recording of individuals. *See Kumandan v. Google*, 5:19-cv-04286 (N.D. Cal.), ECF No. 1. Five days later, Lourdes Galvan and Eleeanna Galvan filed a class action complaint against Google based

alleged privacy violations related to its hardware devices capable of running the Google Assistant software ("Google Assistant-enabled devices" or "GAEDs"). Google Assistant allows users to activate and interact with these devices using voice commands or other forms of manual activation, like pressing a button. To use a GAED, a user must sign up for a Google Account and agree to Google's Terms of Service and Privacy Policy.

Plaintiffs allege that based on Google's public representations, Terms of Service, and Plaintiffs' reasonable expectation of privacy, GAEDs were only able to record, transmit, and process sound after being activated based on voice commands or manual activation. However, Plaintiffs allege that in fact, GAEDs could activate in other circumstances, including to collect data to improve the speech recognition abilities of GAEDs and based on "alarm events" like the sound of breaking glass or a smoke alarm. Plaintiffs allege that GAEDs improperly transmit sound files recorded without users' consent, including to unauthorized third-party contractors.

To date, the complaint has been amended four times. *See* ECF Nos. 48, 86, 118, 141. Correspondingly, there have been three rounds of motions to dismiss. *See* ECF Nos. 56, 91, 120, 144. On the last round, two claims of the Fourth Amended Complaint—violation of California's Consumer Legal Remedies Act ("CLRA") and common law fraud—were dismissed. *See* ECF No. 152. Once the dust settled, eight claims remained: (1) violation of the federal Wiretap Act, 18 U.S.C. §§ 2510 et seq.; (2) violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 et seq.; (3) violation of Cal. Penal Code § 632; (4) intrusion upon seclusion; (5) invasion of privacy under Article I, Section 1 of the California Constitution; (6) breach of contract; (7) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and (8) request for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.

In July 2022, Plaintiffs moved for class certification. ECF Nos. 222. Plaintiffs sought

---

on substantially identical facts alleging violations of the same laws and seeking the same relief. *See Galvan v. Google LLC*, 5:19-cv-04360 (N.D. Cal.), ECF No. 1. Then, in August 2020, Edward Brekhus and Jon Hernandez also filed a class action complaint arising from the same alleged wrongdoing. *See Brekhaus v. Google LLC*, 5:20-cv-05488 (N.D. Cal.), ECF No. 1. All three cases were consolidated. *See* ECF Nos. 42, 109. Plaintiffs Brekhus and Hernandez thereafter stipulated to dismiss their claims. *See* ECF No. 249.

certification of three classes:

> **<u>Purchaser Class</u>**: All Users who purchased a Google-Made Device
>
> **<u>Privacy Class</u>**: All Opted-In Users of Google Home Devices who have a recording resulting from a False Accept associated with their Google account
>
> **<u>SCA Class</u>**: All Opted-In Users of GAEDs for whom Google shared at least one recording with a human reviewer.

ECF Nos. 414 at 5 ("Class Cert. Ord."). The Court granted in part and denied in part the motion for class certification. ECF Nos. 414. The Court declined to certify the proposed Privacy Class and SCA Class but certified the Purchaser Class, finding that the Purchaser Class, led by Kumandan, could proceed on the breach of contract and UCL claims. *See* Class Cert. Ord. at 31–32.

Trial was set for September 2025. *See* ECF No. 531. And in February 2025, Google moved for summary judgment arguing that the Purchaser Class could not prove most of the elements of its claims. ECF No. 496.

All the while, the parties were diligently pursuing settlement negotiations. Google has since agreed to settle this consolidated class action for a non-reversionary total of $68,000,000 ("Settlement Fund"). *See* ECF No. 549-2 ¶ 2.1. The parties moved for preliminary approval of class action settlement in March of 2026. The Court granted the motion, preliminarily approving the settlement and conditionally certifying the settlement class. *See* ECF Nos. 553, 560. The Settlement Class was conditionally defined as follows:

> **<u>Purchaser Settlement Class</u>**: All Users who purchased a Google-Made Device during the period between May 18, 2016 through the date the Court grants preliminary approval of the Settlement (both days inclusive) ("the Settlement Class Period.");
>
> **<u>Privacy Settlement Class</u>**: All Users of Google Assistant and members of their Households during the Settlement Class Period whose communications were recorded or otherwise obtained by Google Assistant as a result of a False Accept or whose communications were recorded or otherwise obtained by Google Assistant and disclosed to any third-party review vendor.

ECF Nos. 560 ¶ 9.

Plaintiffs now seek final approval of the class action settlement and an award of attorneys' fees, expenses and service awards. Seven class members have filed objections to the proposed

objections and attorney's fees.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs move for final approval of the class action settlement. Class action settlements require court approval. *See* Fed. R. Civ. P. 23(e). The approval process has three steps. ***First***, the Court must first certify a class. *See* Fed. R. Civ. P. 23(a)–(b); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). ***Second***, the Court must "ensure that [the] settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)). ***Third***, the court must ensure that "[a]dequate notice" was provided to the class. Fed. R. Civ. P. 23(e); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

The Court addresses each inquiry in turn.

### A. Class Certification

The Court conditionally approved two settlement classes: the Purchaser Settlement Class, and the Privacy Settlement Class. *See* ECF No. 560 ¶ 9. The Court must evaluate whether these proposed classes meet the certification standards set forth in Fed. R. Civ. P. 23(a) and (b). *See Staton*, 327 F.3d at 952.

#### 1. Rule 23(a)

Class certification under Rule 23(a) requires that: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Numerosity is satisfied. Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed where the plaintiff class contains forty or more members." *Kang v. Wells Fargo Bank, N.A.*, WL 5826230, at *9 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v. Fyson*, 2022 WL 6943174 (9th Cir. Oct. 12, 2022). Here there are millions of members. ECF No. 549-1 ¶ 55.

Commonality is satisfied too. Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need

not be common to satisfy the commonality requirement. The existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. United States Immigration & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (cleaned up). Here, key factual issues are shared across the class, such as whether GAEDs recorded confidential communications absent utterance of a Hot Word (e.g., "Hey Google"). Legal issues are shared too, such as (1) whether Google's recording or disclosure policies violated privacy laws or constituted breach of contract; and (2) whether class members sustained damages, and if so, what the appropriate remedy was. *See In re Google Referrer Header Priv. Litig.*, 2023 WL 6812545, at *4 (N.D. Cal. Oct. 16, 2023) (certifying settlement class).

Plaintiffs' claims are also typical across both classes. Fed. R. Civ. P. 23(a)(3). These claims all arise from Google's alleged nonconsensual recording of confidential communications. *See Barrett v. Apple Inc.*, 2024 WL 5339480, at *3 (N.D. Cal. Dec. 19, 2024). That is, Plaintiffs' claims are "reasonably coextensive with those of absent class members." *Gonzalez*, 975 F.3d at 809.

Finally, the Court is satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Neither Plaintiffs nor Class Counsel have any conflicts with the Settlement Classes. *See* ECF No. 549-1 ¶¶ 45–52; ECF Nos. 566-6 ¶¶ 4–15, 566-7 ¶¶ 4–15, 566-8 ¶¶ 4–14, 566-9 ¶¶ 4–14. The record demonstrates that the Plaintiffs and Class Counsel have prosecuted this case vigorously—shepherding it through four amended complaints, class certification, discovery, and summary judgment briefing. *See* Tr. at 14:2–5; *see also infra* III.A.1.c.

Although the Court denied certification for Plaintiffs' proposed Privacy Class during the litigation, "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *10 (N.D. Cal. Dec. 10, 2020) (certifying settlement class that was denied earlier as a litigation class). Moreover, the Court's denial was based on factual issues regarding Plaintiffs' class membership that are no longer at issue. *See* ECF No. 414 at 9–10; *see also* Final Approval Mot. at 4–5.

For the foregoing reasons, the Court finds that the elements of Rule 23(a) are satisfied.

United States District Court
Northern District of California

**2. Rule 23(b)**

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614.

Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that these requirements are satisfied with respect to both the Purchaser and Privacy Settlement Classes. There are, as previously discussed, shared factual and legal issues that are critical to both classes. Therefore, the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 614. Moreover, given the large class size, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

* * *

For the foregoing reasons, the Court concludes that the proposed classes satisfy the requirements for certification under Rule 23(a) and (b).

**B. Fair, Reasonable, and Adequate**

"Federal Rule of Civil Procedure 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (cleaned up). In particular, the district court must scrutinize the settlement for signs of collusion. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). The Court held a fairness hearing on October 1, 2026. *See* ECF No. 579.

Rule 23(e)(2) sets forth several factors to be considered by the Court in determining whether a class action settlement is fair, reasonable, and adequate:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;
>
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>
> **(iv)** any agreement required to be identified under Rule 23(e)(3);
>
> **(D)** The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### 1. Rule 23(e)(2)(A) – Adequate Representation

First, the Court must determine whether Plaintiffs and Class Counsel have adequately represented the class.

The Court finds that Plaintiffs adequately represented their respective classes. As previously discussed, all of the alleged injuries here arose from Google's alleged nonconsensual recording of class members' conversations. Plaintiffs suffered the same injuries as those of the class members and hence share an interest in vigorously litigating this case. Several of the Plaintiffs have also submitted declarations detailing the time and effort they have invested in this case. *See* ECF Nos. 566-6 ¶¶ 6–12 ("Kumandan Decl."), 566-7 ¶¶ 6–12 ("Spurr Decl."), ¶¶ 6–11 ("L. Galvan Decl."), ¶¶ 6–11 ("E. Galvan Decl."). For example, Plaintiff Asif Kumandan's declaration provides that he was deposed for over 7 hours. Kumandan Decl. ¶ 10. As another example, Plaintiff Lourdes Galvan's declaration provides that she was deposed for over five hours. L. Galvan Decl. ¶ 9.

The Court finds that class counsel has zealously and capably represented the class. Counsel have devoted significant time and resources to litigating this case for almost six years. *See* ECF No. 549-1 ¶¶ 11–35, 46–52; *see also* ECF Nos. 549-4, 549-5, 549-6, 549-7. Counsel are experienced attorneys who have handled this case with sophistication, shepherding it through four amended complaints, class certification, discovery, and summary judgment briefing. *See* Tr. at 14:2–5.

Therefore, Rule 23(e)(2)(A) cuts in favor of approval.



United States District Court
Northern District of California

United States District Court
Northern District of California

**2. Rule 23(e)(2)(B) – Arm's Length Negotiation**

The Court must also determine whether the settlement agreement was the product of an arm's length negotiation. The Court finds that it was. The settlement is the result of extensive negotiations before several mediators. ECF No. 549-1 ¶¶ 33–39. Most recently, Magistrate Judge Westmore mediated the negotiations. *Id.*; *see also In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Bluetooth*, 654 F.3d at 946. The unopposed nature of the motion for final approval changes nothing because here, the settlement was a product of extensive negotiations before a neutral mediator. Moreover, Google did not agree to refrain from opposing the fee. *See* ECF No. 574 at 14–15 ("Reply").

Therefore, Rule 23(e)(2)(B) cuts in favor of approval.

**3. Rule 23(e)(2)(C) – Adequate Relief**

The Court must next assess the relief procured through the settlement agreement and evaluate whether the $68,000,000 sum is adequate. *See* ECF No. 549-2 ¶ 2.1.

**a. Costs, Risks, and Delay of Trial and Appeal**

With respect to the costs, risks, and delay of trial and appeal, *see* Fed. R. Civ. P. 23(e)(2)(C)(i), both the Purchaser Class and the Privacy Class faced significant risk that litigation (and subsequent appeals) would not go their way.

With respect to the Purchaser Class, although the Court certified the class, any monetary relief was still conditional on winning at trial. Moreover, even if the Purchaser Class were to prevail at trial (and subsequently fend off any post-trial motions and appeals), classwide damages would range from approximately $120,000,000 (based on nominal damages of $1.00 per Google-Made Device) to $448,800,000 (based on a $3.74 price premium per device). *See* ECF No. 566-1 ¶ 12. Accordingly, the $68,000,000 settlement represents approximately 15.15% to 56.67% of the maximum recoverable damages, an exceptional outcome given the risks. ECF No. 566-1 ¶ 12.

The Privacy Class faced even great risks. The Court declined to certify the Privacy Class. *See* Class Cert. Ord. at 31–32. Hence, for the Privacy Class to procure relief of the same stature as the Purchaser Class, it would have to win an appeal of the denial of class certification, fend off pre-

United States District Court
Northern District of California

and post-trial motions, win at trial, and secure an affirmance on appeal. *See* ECF No. 566-1 ¶ 8.

Measured against Plaintiffs' estimates, the $68,000,000 settlement delivers an estimated recovery of approximately $18 to $56 to each Purchaser Settlement Class Member and approximately $2 to $10 to each Privacy Settlement Class Member. *See* ECF No. 549-8 ¶¶ 49–52. Where, as here, the prospect of a larger recovery is locked behind years of litigation and uncertainty, these recoveries are satisfactory. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (concluding that 10% of the class's estimated damages was a fair and reasonable settlement); *Stovall-Gusman v. W.W. Granger*, Inc., 2015 WL 3776765, at *3 (N.D. Cal. June 17, 2015) (same).

**b. Proposed Method of Distributing Relief to the Class**

With respect to the proposed method of distribution, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii), settling class members may submit a claim online or through mail. *See* ECF No. 549-8 ¶¶ 13, 40 ("Parks Decl."). All members of the Purchaser and Privacy Classes must provide basic contact information, the email address for the Google Account associated with the GAED on which their claims are based, and to attest to several requirements of class membership. *See* Final Approval Mot. at 13. Members of the Purchaser Settlement Class are further required to provide the applicable device model type, serial numbers, and proof of purchase. *Id.* Authorized claimants can elect to receive their reward via direct electronic transfer, via ACH, Zelle, Venmo, PayPal, or check. ECF No. 567-1 at 26 ("Teichmiller Decl."); Parks Decl. ¶ 48.

The Court is satisfied that this distribution process is reasonable and not unduly demanding. *See Shay v. Apple, Inc.*, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024) ("[C]ourts have generally upheld proof of purchase requirements in such class action settlements, as these requirements ensure that payment is properly made to individuals belonging to the settlement class.") (cleaned up).

**c. Proposed Award of Attorney's Fees**

Class Counsel have filed a separate motion for an award of attorneys' fees comprising one-third of the Settlement Fund (i.e., $22,666,666.7). *See* ECF No. 566. As the Court discusses in *infra* III.A, the Court scrutinized the fee charts and found that certain entries and hourly rates were not reasonable. The Court also carefully reviewed  and considered the objections.

After modifying the fee award in light of these findings, the Court concludes that the

attorney's fee award is reasonable. In short, the settlement figure of $68,000,000 is an excellent result, particularly in light of the risks that pepper the road ahead should the parties continue to litigate. These risks are perhaps most saliently exemplified by Google's arguments in the summary judgment motion filed against the Purchaser Class's claims. *See* ECF Nos. 496, 514. Moreover, the requested total fee, notwithstanding unreasonable individual entries that make virtually no difference for lodestar cross-check purposes, is consistent with market rates. *See, e.g.*, *Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, 2024 WL 4267431, at *7 (C.D. Cal. Sept. 17, 2024) (awarding 33% of the $70 million settlement); *Barrett v. Apple Inc.*, 2025 WL 1002786, at *2 (N.D. Cal. Apr. 3, 2025) (awarding 33.33% of $35 million settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 942 (N.D. Ill. 2022) (awarding 33% of $92 million settlement).

**d. Agreements Required to be Identified**

There are no agreements that must be identified under Fed. R. Civ. P. 23(e)(3).

* * *

For the foregoing reasons, the Court finds that Rule 23(e)(2)(C) cuts in favor of approval.

**4. Rule 23(e)(2)(D) – Equitable Treatment**

Under Rule 23(e)(2)(D), the Court must evaluate "whether 'the proposal treats class members equitably relative to each other.'" *Perks v. Activehours*, Inc., 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims . . . ." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Recall that there are two Settlement Classes: the Purchaser Class, and the Privacy Class. Plaintiffs estimate that the $68,000,000 settlement delivers an estimated recovery of approximately $18 to $56 to each Purchaser Class Member and approximately $2 to $10 to each Privacy Class Member. *See* ECF No. 549-8 ¶¶ 49–52. As proposed, claimants are assigned points based on whether the individual is a member of the Purchaser Settlement Class (four points per Google Made Device purchased capped at three Google Made Devices for a maximum of 12 points), the Privacy Settlement Class (one point per claim), or both Settlement Classes (for a maximum of 13 points). ECF No. 549-2 ¶¶ 7(a)(i)–(iii). Those points determine how the settlement fund will be apportioned

among the class members.

The Court's task here is to assess whether any consequent monetary differentials within and between the two classes are equitable.

**a. Equity Within the Purchaser and Privacy Classes**

To start, with respect to the Purchaser Class, a points-based system that distributes points proportional to the number of Google Made Devices an individual has purchased appears perfectly reasonable. A class member who has purchased three devices, for instance, is presumably deserving of a greater share of the settlement fund compared to a class member who has purchased one device. And because all Privacy Class members are treated the same (they all get one point per claim), there is no inequity within the class.

**b. Equity Between the Purchaser and Privacy Classes**

The next question is whether the differential *between* the Purchaser and Privacy Classes is reasonable and equitable. Again, under Plaintiffs' estimates, Purchaser Class members are expected to recover approximately $18 to $56, while Privacy Class members are expected to recover approximately $2 to $10. *See* ECF No. 549-8 ¶¶ 49–52.

The Court concludes that this recovery differential is reasonable and equitable. Although the settlement plan treats the two classes differently, it does so on reasonable and equitable grounds. The critical distinction between the two classes is that the Purchaser Class was permitted to proceed on a classwide basis while the Privacy Class was not. *See* ECF No. 414. This means that relief for the Privacy Class was further conditioned on a successful appeal of the denial of class certification. Class certification is itself a major hurdle in class action cases, and securing a reversal of a denial of class certification is an even taller order. Therefore, it appears perfectly reasonable that the recovery enjoyed by the Purchaser Class is greater than that of the Privacy Class. *See In re Oracle Sec. Litig.*, 1994 WL 502054, at *2 (N.D. Cal. June 18, 1994) (approving plan "reasonably calculated to allow class members with more meritorious claims to recover a correspondingly larger portion of the settlement" based on class counsel's appraisal of relative merits of subgroups); *see also In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 3004046, at *4 (N.D. Cal. Oct. 27, 2025) (similar); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10 (C.D. Cal. June 9, 2008)

(similar); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *16 (N.D. Cal. Dec. 10, 2020), *aff'd* 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (similar).

**c. Equity Between the Class Representatives and Other Class Members**

Lastly, the Court evaluates whether the Service Awards requested for the four Plaintiffs who served as Class Representatives are reasonable and equitable. Each of the four Plaintiffs—Asif Kumandan; Melissa Spurr, individually and as guardian of B.S., a minor; Lourdes Galvan; and Eleeanna Galvan—seek a service award of $10,000. *See* Final Approval Mot. at 16; Fees Motion at 13.

Plaintiffs argue that the service awards would only constitute "less than 0.06%" of the settlement fund, but that misses the point. Fees Mot. at 14 (citing *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) for the proposition that the "total requested service awards were 0.56% of settlement fund"). The Court's role here is to ensure that "the proposal treats class members equitably relative to each other." *Perks v. Activehours*, Inc., 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021). The question, then, is not what proportion of the fund the service awards would make up, but (1) how the $10,000 service award stacks up to the recovery figures of other class members; and (2) whether that differential is warranted. Under Plaintiffs' estimates, Purchaser Class members are expected to recover $56 at the high end. *See* ECF No. 549-8 ¶¶ 49–52. Even assuming a high-end recovery, this means that a Class Representative would receive more than 178 times that of a Purchaser Class member.

Accordingly, although other courts in this district have granted similar service awards, *see* Final Approval Mot. at 16 (collecting cases), the Court finds that here, $10,000 awards would be unreasonable and constitute "inequitable treatment of class members." *Lopez v. Apple, Inc.*, No. 4:19-cv-04577, ECF No. 429 ¶8 (N.D. Cal. October 16, 2025). That is so particularly considering the large class size and the relatively modest recovery figure on an individual basis, notwithstanding the adequate total sum of the settlement fund. *See* Tr. 16:21–17:22. Rather, the Court finds that a service award of $5,000 per Class Representative is reasonable while still recognizing the considerable efforts those Class Representatives have invested into this case. *See infra* III.C. Once that adjustment is made, the Court is satisfied that the settlement agreement meets the equitable



United States District Court
Northern District of California

United States District Court
Northern District of California

treatment requirement.

* * *

After balancing the Rule 23(e)(2) factors, with particular attention to any indicia of collusion, the Court finds that the proposed settlement is fair, reasonable, and adequate.

### 5. The *Churchill* Factors

Prior to the 2018 amendment in which the current version of Rule 23(e) was adopted, the Ninth Circuit had developed a list of eight factors, dubbed the *Churchill* factors, for evaluating class action settlements:

> **(1)** the strength of the plaintiff's case; **(2)** the risk, expense, complexity, and likely duration of further litigation; **(3)** the risk of maintaining class action status throughout the trial; **(4)** the amount offered in settlement; **(5)** the extent of discovery completed and the stage of the proceedings; **(6)** the experience and views of counsel; **(7)** the presence of a governmental participant; and **(8)** the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Rule 23 sets forth the central factors for evaluating and approving a class action settlement. Indeed, Rule 23, as amended, incorporates "[s]everal of the *Churchill* factors." *Walters v. Target Corp.*, 2020 WL 6277436, at *5 (S.D. Cal. Oct. 26, 2020). That said, the considerations enumerated in Rule 23 are not exhaustive. *See Churchill*, 361 F.3d at 576 n.7 ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted."); *see also* Fed. R. Civ. Proc. 23, Advisory Comm. Notes (explaining that the goal of the amendment was "not to displace any factor" developed by the courts, but rather to focus the courts and counsel on the "core concerns" enumerated in Rule 23(e)(2)).

The Court finds that final approval is supported by the *Churchill* factors not already encompassed in Rule 23(e)(2). Of particular emphasis are factors six and eight: (1) the experience and views, of counsel; and (2) the reaction of the class members.

The sixth *Churchill* factor cuts in favor of approval. "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Kang*, 2021 WL 5826230, at *14 (quoting *Ellis v. Naval Air Rework Facility*,

87 F.R.D. 15, 18 (N.D. Cal. 1980)). Class counsel in this case—who are experienced and capable—endorse the proposed settlement.

The eighth *Churchill* factor—the reaction of the class—likewise cuts in favor of approval. "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 598 (N.D. Cal. 2020) (cleaned up). Seven objectors have lodged objections. Notwithstanding the merits of these objections (which the Court addresses in *infra* IV.A–G), the small number of objections compared to the size of the noticed classes demonstrates the class's positive reaction. Moreover, as of September 30, 2026, A.B. Data has received 217 valid and timely exclusion requests versus 1.49 million timely claims. *See* ECF No. 575. That yields an opt-out rate of less than 0.015%. Opt-out percentages of nearly 5% have been deemed so "overwhelming[ly] positive" as to support approval of the class action settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement with 4.86% opt-out rate). And here the opt-out rate is much, much lower. Accordingly, the Court concludes that the positive response of the class members provides an additional ground for approving the Settlement.

* * *

For the foregoing reasons, the Court concludes that the settlement is fair, reasonable, and adequate under Rule 23.

**C. Notice**

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances," but it does not require actual notice to every class member. *In re California Gasoline Spot Mkt. Antitrust Litig.*, 2025 WL 822665, at *4 (N.D. Cal. Mar. 14, 2025). The notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Following the preliminary approval, Plaintiffs undertook an aggressive campaign to notify

class members of the settlement. A.B. Data, the Claims Administrator, sent email notices to 173,814,291 valid email addresses with a 98.76% successful delivery rate. Teichmiller Decl. ¶ 7. A.B. Data sent a reminder notice two months later to each of the valid email addresses from which A.B. Data had not received a claim or a request for exclusion. Teichmiller Decl. ¶ 8; *see also Opperman v. Kong Techs., Inc.*, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving notice plan that would provide "email notice to every user who downloaded and registered for the app during the relevant time period"); *Shahar v. Hotwire, Inc.*, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing the "direct e-mail notice" plan was "the best notice practicable under the circumstances").

A.B. Data also implemented a digital and social media plan to provide supplemental notice to Settlement Class Members. Teichmiller Decl. ¶ 9–13. A.B. Data distributed a news release and shared information about the case on X (formerly Twitter). Teichmiller Decl. ¶ 14. The press release was picked up by 426 online publications and viewed more than 4,400 times. Parks Decl. ¶ 14. A.B. Data also created and managed a Settlement Website, a dedicated email inbox, and a toll-free telephone line. *See* Teichmiller Decl. ¶¶ 5–7, 9–14, 16–18. The Settlement Website hosts pertinent documents such as the settlement agreement, the Court's preliminary approval orders, and the instant fees motion. *Id.* The website has received approximately 5,193,744 visits by 1,959,763 unique users. Parks Decl. ¶ 16. A.B. Data has received and responded to more than 3,729 emails, and the toll-free line has received more than 2,817 calls. Parks Decl. ¶¶ 17–18.

"The Notice Plan reached more than 75.2% of the target audience[.]" ECF No. 567-1 ¶ 15 ("Teichmiller Decl."). That 75.2% figure is consistent with the 70 to 95% reach standard reflected in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist. Teichmiller Decl. ¶ 15. And as of September 17, 2026, A.B. Data has received more than 1.49 million timely Claims and more than 40,000 late Claims, which A.B. Data has discretion to accept under the Settlement Agreement. Teichmiller Decl. ¶ 13.

Based on the foregoing, the Court is satisfied that the notice campaign is "the best notice that is practicable under the circumstances." *California Gasoline*, 2025 WL 822665, at *4; *see also* Final Approval Mot. at 19 (collecting cases).

United States District Court
Northern District of California

### D. Conclusion

For the foregoing reasons, the Court approves the class action settlement because the settlement satisfies Rule 23's requirements. The Court further certifies Plaintiff Kumandan as the class representative for the Purchaser Settlement Class, and Plaintiffs Kumandan, Melissa Spurr, Lourdes Galvan, and Eleeanna Galvan as the class representatives for the Privacy Settlement Class. *See* ECF No. 560 ¶ 12.

## III. MOTION FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS

Class Counsel move for fees, expenses, and service awards. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has an obligation to ensure that awards are reasonable. *Bluetooth*, 654 F.3d at 941.

### A. Attorney's Fees

Class Counsel seek a third of the settlement fund, which amounts to $22,666,666.7. Where, as here, the settlement creates a common fund, courts award attorney's fees from the fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit recognizes two methods for calculating a reasonable fee in such cases: (1) the percentage-of-the recovery method; and (2) the lodestar method. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The ultimate touchstone is reasonableness. *See In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025).

Under the percentage method, courts apply a benchmark award of 25% of the common fund, which may be adjusted upward or downward based on the circumstances of the particular case. *See id.* at 1047–48. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047–48 (N.D. Cal. 2008). In contrast, under the lodestar method, courts "calculate[] the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Kang*, 2021 WL 5826230, at *15 (cleaned up).

"In common fund cases, it is appropriate to use a percentage calculation with a lodestar cross-check to determine an attorneys' fees award." *Id.* at *16. "The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel

and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation," render the percentage method "a valuable tool." *Id.* "If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range, but the court is not necessarily required to make such an adjustment." *Id.*

**1. Percentage Method**

Again, Class Counsel seek a third of the settlement fund. That request therefore represents an upward departure from the default 25% benchmark. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). That said, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Id.* The Court therefore analyzes the *Vizcaino* factors to determine whether the upward departure from 25% to 33.33% is reasonable here. In assessing reasonableness, the Ninth Circuit considers, among other factors: (1) the result achieved for the class; (2) the risk of the litigation; (3) the skill required and the quality of the work performed; and (4) awards in comparable cases. *See id.* at 1048–50.

**a. Result Achieved for the Class**

First, the result achieved for the class—a $68,000,000 settlement fund—is excellent. The fund is all cash and provides immediate and certain monetary relief. *See* Fees Mot. at 3. Measured against Plaintiffs' estimates, the $68,000,000 settlement delivers an estimated recovery of approximately $18 to $56 to each Purchaser Settlement Class Member and approximately $2 to $10 to each Privacy Settlement Class Member. *See* ECF No. 549-8 ¶¶ 49–52. Moreover, the fund is non-reversionary: none of the funds revert to Google; any remaining funds after the first round of distribution will be redistributed (or, once it becomes economically irrational to continue distribution, paid to an appropriate *cy pres* recipient approved by the Court). *See* ECF No. 549-2 ¶¶ 2.2, 4.20.

The Court previously assessed the costs, risks, and delay of trial and appeal under Fed. R. Civ. P. 23(e)(2)(C)(i). *See supra* II.B.3.a. To summarize, both the Purchaser Class and the Privacy Class faced significant risk that litigation (and subsequent appeals) would not go their way. Under

Class Counsel's calculations, with respect to the Purchaser Class, relief was contingent on winning at trial and fending off any post-trial motions and appeals. The $68,000,000 settlement represents approximately 15.15% to 56.67% of the maximum recoverable damages, an exceptional outcome given the risks. ECF No. 566-1 ¶ 12. Moreover, the Privacy Class was not certified, and so to procure relief, the Privacy Class would have had to achieve a reversal of the denial of class certification, then confront the same hurdles besetting the Purchaser Class. *See* ECF No. 566-1 ¶ 8. In sum, the result achieved to the class—an estimated recovery of approximately $18 to $56 to each Purchaser Settlement Class Member and approximately $2 to $10 to each Privacy Settlement Class Member, *see* ECF No. 549-8 ¶¶ 49–52—cuts in favor of an upward departure from the 25% benchmark. *See Rodriguez*, 563 F.3d at 965 (concluding that 10% of the class's estimated damages was a fair and reasonable settlement); *Stovall-Gusman*, 2015 WL 3776765, at *3 (same).

**b. The Risk of Litigation**

"[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051; *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."). Class Counsel prosecuted this case for more than six years on contingency, fronting out-of-pocket costs and devoting over 20,000 attorney and staff hours. *See* ECF No. 566-1 ¶ 7.

The privacy claims here are not entirely novel, though they were applied to a novel voice-assistant technology and thus exemplify unsettled questions of law. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 936 (N.D. Ill. 2022); *In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966638, at *7 (C.D. Cal. July 31, 2019); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Moreover, it goes without saying that Google is a well-funded adversary. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]aintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly[.]"). Further, as previously discussed, Google's previously pending summary judgment motion, efforts to move members of the Purchaser Class

United States District Court
Northern District of California

into arbitration, and the imminent trial compounded the risk of reducing or eliminating recovery altogether. *See* ECF No. 566-1 ¶ 10.

In sum, the risk of litigation cuts in favor of an upward departure from the 25% benchmark.

**c. Requisite Skill and Quality of Performance**

Class Counsel are experienced class action litigators who have litigated this case efficiently and professionally. *See* Tr. at 14:2–5. They devoted the high level of skill and work required to reach settlement. *See Equity Funding Corp.*, 438 F. Supp. at 1337.

Class Counsel were exemplar at every stage of this proceeding. They shepherded the complaint through successive amendments and fielded consolidation. ECF No. 566-1 ¶ 15. They served fifty-seven requests for production, twenty-six interrogatories, and eighty-two requests for admission. ECF No. 566-1 ¶ 16. They engaged in more than fifty meet and confers, took and defended depositions, and prepared and defended two expert reports. *Id.* The parties also litigated several discovery disputes and traversed mediation with respect and professionalism. *Id.*

With respect to class certification, Class Counsel's performance was exemplary too. Achieving class certification is no small feat. Although the Court declined to certify the Privacy Class, it certified the Purchaser Class. *See* ECF Nos. 414. The fees chart reflects the substantial effort—amounting to over 2950 hours—that Class Counsel invested in class certification efforts. *See* ECF No. 583-1 (column 6 documenting hours billed on class certification).

And as discussed, the result here is excellent, which serves as a testament to the skill of both parties. In sum, the high quality of performance of Class Counsel cuts in favor of an upward departure from the 25% benchmark.

**d. Awards in Comparable Cases**

The Court is satisfied that the requested fee is consistent with awards in comparable complex class actions. *See Barrett v. Apple Inc.*, 2025 WL 1002786, at *2 (N.D. Cal. Apr. 3, 2025) (awarding 33.33% of $35 million settlement in consumer data privacy class action); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) (awarding 33% of $92 million settlement in consumer data privacy class action). The Court is also satisfied that the requested award is consistent with contingency fee contracts found in the marketplace. *See Chavez v. Netflix, Inc.*, 162

Cal. App. 4th 43, 65 (2008) (noting a "20 to 40 percent range of contingency fee contracts found in the marketplace"). Moreover, as the Court will discuss further below, once subjected to the lodestar cross-check, the requested award yields a very reasonable multiplier of 1.01. *See infra* III.A.2.

**2. Lodestar Cross-Check**

Because the requested fees are so high, however, the Court concludes that a lodestar cross-check is appropriate. Class Counsel spent 20,371.6 hours on the case. Counsel's hours and fees are adequately documented. *See* ECF No. 583-1. Class Counsel submitted a firm-by-firm breakdown of hours, hourly rates, and lodestar for Lowey Dannenberg, P.C., Scott+Scott Attorneys at Law LLP, the Lexington Law Group, and the Wood Law Firm, LLC. *See* ECF No. 566-1 ¶ 23; Scott Decl. ¶¶ 6–11; Levis Decl. ¶¶ 4–11; Todzo Decl. ¶¶ 4–8; Wood Decl. ¶¶ 4–8. Moreover, Class Counsel have excluded from the fees motion for cross-check purposes any time expended after June 30, 2026, and made other reductions to its time as a matter of billing discretion. Scott Decl. ¶¶ 4–5; Levis Decl. ¶¶ 4,7; Todzo Decl. ¶ 4; Wood Decl. ¶ 4. The resulting lodestar, under Class Counsel's calculation, is $22,477,337.50, which yields a cross-check ratio of 1.01. *Id.*; *see also* ECF No. 566-1 ¶ 22.

The Court has also reviewed the summary of tasks performed and finds them to be of adequate detail. The Court is well aware of the exhaustive work put into prosecuting this case in both the motion practice and discovery. Upon review of the hours expended on those and other tasks, the Court finds the hours expended to be reasonable. The Court has also reviewed Class Counsel's billing rates and finds them to be largely within reason, barring some exceptions.

First, Mr. David Scott requests a billing rate of $3,000. *See* ECF No. 583-1. That is patently unreasonable. Mr. David Scott cites several cases in which Scott+Scott's billing rates "have been approved by California federal courts." ECF No. 566-2 ¶ 8 (collecting cases). None come close to the $3,000 requested here. *See id.* The highest amount awarded in any case cited by Mr. David Scott is "$1,975 for partners or senior counsel." *Id.* (citing *Steamship Trade Ass'n of Balt. – Int'l Longshoremen's Ass'n Pension Fund v. Olo Inc.*, No. 1:22-cv-08228, ECF No. 128 (S.D.N.Y. Jun. 11, 2024). And the highest amount awarded in an intra-district case is $1,545. *See Barrett v. Apple Inc.*, 2025 WL 1002786, at *3 (N.D. Cal. Apr. 3, 2025); *see also Lopez v. Apple, Inc.*, No. 4:19-cv-04577, ECF No. 426 (N.D. Cal. Oct. 14, 2025) (awarding $1,420 on the high range). It is not unusual

for named partners to charge more than other partners. And the Court is cognizant that rates increase year to year. But not to $3,000 an hour. Moreover, the Court notes that both Mr. Daryl Scott and Mr. David Scott have only billed hours to the later stages of the case, i.e., litigation strategy and settlement efforts. *See* ECF No. 583-1. The Court therefore will reduce, for purposes of calculating the lodestar, Mr. David Scott's effective billing rate to $1,600. For the same reasons, the Court will reduce Mr. Daryl Scott's requested billing rate from $1,960 to $1,600.

Second, Mr. Geoffrey Horn and Mr. Vincent Briganti of Lowey Danneberg, P.C., both request effective billing rates of $1,795. *See* ECF No. 583-1. Those numbers appear slightly inflated compared to the cases cited in the supporting declaration. *See* ECF No. 566-3 (collecting cases); *Lopez v. Apple, Inc.*, No. 419-cv-04577, ECF No. 426 (N.D. Cal. Oct. 16, 2024) (highest rate of $1,650). Again, the Court is cognizant of inflation and rising rates. And Mr. Horn and Mr. Briganti are both shareholders and played an active role in the lifetime of the case. *See* ECF No. 583-1. The Court will therefore reduce both Mr. Geoffrey Horn's and Mr. Vincent Briganti's effective billing rates to $1,600 for purposes of calculating the lodestar.

After these rate reductions, the total lodestar award as calculated by Class Counsel (i.e., $22,477,337.50) is reduced by $217,800. The resulting lodestar cross-check yields a ratio of 1.009, which is not materially different from the original cross-check ratio. *See Vizcaino*, 290 F.3d at 1051 n.6.

Thus, informed by the lodestar cross-check, the Court finds that an award equal to 33.33% of the Settlement Fund, or $22,666,666.7, is fair and reasonable.

**B. Expenses**

Reasonable expenses incurred in procuring the settlement are reimbursable. *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sep. 2, 2015). Courts routinely award reimbursement of "those out-of-pocket expenses that would normally be charged to a fee paying client." *Chipotle*, 336 F.R.D. at 602.

Class Counsel seek reimbursement of litigation expenses of $1,021,738.40. *See* Fees Mot. at 12. These costs were incurred over more than six years of litigation and include:

> expert and consultant fees, mediation fees, electronic-discovery and

United States District Court
Northern District of California

> document-hosting costs, the costs of distributing notice to the certified Purchaser Class following class certification, filing and service of process fees, transcript fees, court-reporter and videographer charges, photocopying, mailing costs, legal research, and travel.

Fees Mot. at 12.

Counsel have submitted declarations showing that the requested expenses were reasonably incurred. ECF Nos. 566-1 ¶ 24, 566-2, Ex. C ("Scott Decl."), 566-3 ("Levis Decl."), Ex. C, 566-4, Ex. C ("Todzo Decl."), 566-5 Ex. C ("Wood Decl."). The Court is satisfied that these expenses were necessary to this case, benefited the class, and are the type of expenses normally billed to paying clients. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sep. 20, 2018) (awarding similar expenses); *see also* Fees Mot. at 13 (collecting cases). Therefore, the Court approves an award of actual litigation expenses in the requested amount of $1,021,738.40.

### C. Service Awards

Plaintiffs also seek a service award of $10,000 for each of the four Class Representatives—Asif Kumandan; Melissa Spurr, individually and as guardian of B.S., a minor; Lourdes Galvan; and Eleeanna Galvan—seek. *See* Fees Motion at 13; Final Approval Mot. at 16; The Court previously discussed the propriety of the requested service awards in *supra* II.B.4.c. To summarize, the Court finds that the $10,000 service awards are not reasonable given the size of the class and the modest award individual class members are expected to receive. Therefore, the Court grants $5,000 in service awards to each of the Class Representatives.

### D. Conclusion

For the foregoing reasons, Plaintiffs' motion for attorney's fees, expenses, and service awards is GRANTED IN PART AND DENIED IN PART. Class Counsel are awarded attorneys' fees in the amount of $22,666,666.7, litigation expenses in the amount of $1,021,738.40. The Class Representatives are awarded service awards in the amount of $5,000 each.

## IV. OBJECTIONS

Class members have submitted seven objections. *See* ECF Nos. 561, 562-1, 563, 569, 570, 571, 572-1. The Court addresses each objection in turn.

### A. Thomas (ECF No. 561)

Ms. Thomas lodges general grievances about data privacy, intellectual property, and the

"violating of rights." *See* ECF No. 561 at 1–2. Ms. Thomas does not submit a specific objection with respect to the settlement at bar.

Therefore, Ms. Thomas's objection is OVERRULED.

**B. Kirkley (ECF No. 562-1)**

Mr. Kirkley objects that: (1) statutory rewards would have been higher should the case have proceeded; (2) the instant settlement "reflects a recurring pattern of disclosure-heavy" and "devalued" settlements; and (3) the fees are disproportionate and problematic under *Bluetooth*. *See* ECF No. 562-1 ("Kirkley Objection").

Mr. Kirkley's first objection underappreciates the risks involved with continued litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). Mr. Kirkley is a member of the Privacy Class. *See* Kirkley Objection at 1 ("I . . . am a member of the . . . Privacy Settlement Class."). But the Court declined to certify the Privacy Class, and so recovery for his claims would have been locked behind a successful appeal reversing the Court's denial of class certification. *See supra* II.B.3.a.

Mr. Kirkley's second objection is also unconvincing. To the extent that Mr. Kirkley argues that the inclusion of a disclosure provision deflates the available monetary recovery, the Court disagrees. In the Court's view, as previously discussed, the $68,000,000 recovery is an excellent outcome. *See supra* II.B.3. That is so even independent of any injunctive relief the settlement agreement endows upon the classes.

Mr. Kirkley's third objection is well taken, but the concerns animating *Bluetooth* are simply not present here. Here, as Class Counsel explain: (1) there is no "clear sailing" agreement, as Google has not agreed to refrain from opposing the fee; (2) there is no "kicker" or reverter returning unawarded fees to Google; and (3) the fee request is not disproportionate as the amount counsel receives is substantially less than the Settlement Classes. *See* Reply at 14–15.

To the extent Mr. Kirkley objects on *Bluetooth* grounds to the unopposed nature of Plaintiffs' motion for final approval, that too is unfounded. The settlement was a product of mediations before

experienced mediators and was subject to the Court's modifications. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The Court is ultimately satisfied that *Bluetooth* concerns are not present here both with respect to the fees motion and the motion for final approval.

Therefore, Mr. Kirkley's objection is OVERRULED.

**C. Cook (ECF No. 563)**

Mr. Cook "do[es] not object to the proposed Settlement itself" but "object[s] to the requested attorneys' fees, litigation expenses, and service awards . . . ." ECF No. 563 at 1. Mr. Cook's objection is well taken, and the Court is cognizant that "every dollar awarded in fees, expenses, or service awards is a dollar that is unavailable for distribution to the Settlement Class." *Id.* at 3. The Court has carefully and independently assessed the reasonableness of the settlement. Indeed, the Court reduced the Service Award. *See supra* III.C. The Court also scrutinized Class Counsel's fees chart for lodestar cross-check purposes and reduced billing rates that the Court found unreasonable. Even then, the lodestar cross-check yielded a ratio of 1.01 that falls comfortably within reason. *See supra* III.A.2.

Therefore, Mr. Cook's objection is OVERRULED.

**D. Smith (ECF No. 569)**

Mr. Smith objects (1) that the settlement undervalues the extinguished claims; (2) that the Plan of Allocation's three-device cap is improper; (3) that the Claim Form's serial-number requirement in addition to the proof of purchase requirement is unduly demanding; and (4) that the requested fee exceeds the Ninth Circuit's benchmark. ECF No. 569 at 4 ("Smith Objection"). The Court addresses each objection in turn.

**1. Undervalued Claims**

Mr. Smith first objects that Class Counsel undervalue the claims. To calculate the recoverable damages figure, Class Counsel applied a $3.74 price premium per device amounting to a total valuation of $448,800,000. *See* ECF No. 549-1 ¶ 53. Mr. Smith objects that the $3.74 figure is flawed. The $3.74 figure was based on a willingness-to-pay metric (i.e., how much were class

members willing to pay to avoid Google's alleged wrongdoing?). Mr. Smith contends that other metrics, such as a willingness-to-accept metric (i.e., how much would class members be willing to accept in compensation to tolerate Google's alleged wrongdoing?), would have yielded a higher valuation. Smith Objection at 7–11. Consequently, the settlement amount of $68,000,000 would be dwarfed in comparison to the true value of the claims (and thus rendered unreasonable).

The Court agrees with Class Counsel that Mr. Smith fails to appreciate events in this case. Google has vigorously challenged Plaintiffs' price premium estimate. This is perhaps best exemplified by the following passage in Plaintiffs' unopposed motion for final approval of class action settlement:

> As it did during the litigation, and as noted in the Motion for Preliminary approval, ECF No. 549 at 16 n.4, Google vehemently disputes Class Counsel's estimate of recoverable damages and the assumptions on which it is based, including Class Counsel's estimate of the number of devices sold and the amounts that Class Counsel claim the Purchaser Class could recover for each purchased Google-Made Device if they succeeded at trial (which Google contends they would not).

Final Approval Mot. at 10 n.5.

Mr. Smith's post-hoc damages valuation does not grapple with Google's disputes and instead merely contends—with no expert support—that a greater damages measure is appropriate. That post-hoc and conclusory argument is belied by the record is insufficient to sustain this objection. *See also DIRECTV*, 221 F.R.D. at 527 ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

In any event, as Class Counsel points out, courts in the Ninth Circuit routinely approve settlements recovering far less than the 15.15% to 56.67% recovered here. *See, e.g.*, *Rodriguez*, 563 F.3d at 965 (10% of estimated damages fair and reasonable); *see also* Reply at 6 (collecting cases). Head-on numerical comparisons to other cases, to be sure, provide less insight because those cases may not have similar factual or legal circumstances. But the crux here is that Mr. Smith fails to appreciate the risks of proceeding with litigation: the Purchaser Class's risk of losing on summary judgment, at trial, or following an appeal, and the Privacy Class's need to also secure a reversal on

the denial of class certification. So even if Mr. Smith's objection regarding undervalued claims were to be credited, in light of the aforementioned risks, the settlement amount would still likely be adequate.

**2. Three-Device Cap**

Next, Mr. Smith objects to the Plan of Allocation, arguing that the three-device cap unfairly diminishes the claim value. *See* Smith Objection at 11–14. But an allocation formula "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018). And Courts routinely approve device or claim caps of this species. *See, e.g.*, *Lopez v. Apple Inc.*, No. 4:19-cv-04577, ECF No. 406 (N.D. Cal. Sept. 4, 2025) (five-device cap). *Cf. Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 593 (N.D. Cal. 2020) (15-claim cap). Counsel here are undoubtedly experienced and competent, and it bears further emphasis that the settlement negotiations were overseen by experienced mediators.

Here, the Court finds that the three-device cap has a reasonable, rational basis. Specifically, Class Counsel contends that the three-device cap is based on the expected lifetime of Google devices. *See* Final Approval Mot. at 8 n.3. Moreover, the appropriate course of action for individuals who own greater than three devices would have been to opt out of the settlement. *See Chipotle*, 336 F.R.D. at 600 (N.D. Cal. 2020) ("[T]he opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms."). Mr. Smith did not opt out. *See* Smith Objection at 7 ("Objector has timely submitted Claim Forms . . . ."). The crux is that Mr. Smith (and people similarly situated) had an adequate, alternative remedy: opt out.

**3. Serial Number Requirement**

Mr. Smith also objects to the serial number requirement for claim submission. *See* Smith Objection at 14–20. Specifically, Mr. Smith challenges the serial number requirement as prejudicing owners of devices who cannot readily find those serial numbers. Mr. Smith further contends that the pertinent serial numbers are either (1) not readily available in users' Google accounts; or (2) do not list the serial numbers of all devices purchased. *See* Smith Objection at 15.

The Court finds that the serial number requirement is not unduly demanding and is a

practicably necessary fraud-prevention measure. The Advisory Committee's note to Rule 23(e) instructs that "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. As Class Counsel submit, "the modern claims process is fraught with automated 'bot' operations" that willingly sign false claim forms for the opportunity to receive settlement payments." Reply at 9 (citing ECF No. 574-1 ¶¶ 18–19); *see also In re Novartis & Par Antitrust Litig.*, 2024 WL 7033291, at *3 (S.D.N.Y. July 26, 2024) ("[I]n recent years, the filing of fraudulent claims in class action settlements has meaningfully increased[.]"). In light thereof, courts in modern times routinely uphold similar verification requirements as not unduly onerous. *See Shay v. Apple, Inc.*, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024); *Zoom Video Commc'ns, Inc.*, 2022 WL 1593389, at *7.

Mr. Smith contends that the serial number requirement "serves no verification function the Settlement does not already discharge." Smith Objection at 18. The Court is not convinced. Tellingly, the same challenge could be independently lodged against *any* of the other fraud-prevention measures in the settlement. An objector could, for instance, argue that the proof-of-purchase requirement was unnecessary because of the perjury requirement, or that the perjury requirement was not necessary because of the serial number requirement. These measures collectively defend against fraudulent claims. Isolating a particular fraud-prevention measure and arguing that it is not important is unavailing. *See also* Reply at 10 (citing ECF No. 574-1 ¶ 20).

Mr. Smith also objects that the serial number requirement is further problematic because A.B. Data, the claims administrator, is the final reviewer. *See* Smith Objection at 19. The Court finds this argument meritless; A.B. Data is a sophisticated neutral evaluator. *See* ECF No. 549-8, Ex. A.

**4. Inflated Fees**

Lastly, Mr. Smith challenges the fee request and contends that it should be reduced. *See* Smith Objection at 21–25. Mr. Smith recycles his argument that Class Counsel undervalued the claims, which the Court disagrees with for the same reasons set forth in *supra* IV.D.1.

The Court, however, agrees with Mr. Smith's contention that "[t]he lodestar cross-check

must be calibrated before its 1.01 multiplier is credited." *Id.* at 22. The Court has independently reviewed the fees chart and docked billing rates that the Court deemed unreasonable. *See supra* III.A.2.

Here, the Court carefully walked through the Rule 23 factors, the *Churchill* factors, and further scrutinized the record for signs of collusion. The Court concluded that the requested fee of one-third of the settlement fund was a reasonable upward departure from the 25% baseline given the factors set forth in *Vizcaino*, 290 F.3d at 1048–50. *See supra* II.B–D. Moreover, the Court, after modifying several attorneys' billing rates, confirmed the one-third ask against the lodestar, yielding a well-within-reason multiplier of 1.01. *See supra* III.A.2. The 1.01 lodestar figure demonstrates that Class Counsel is recovering virtually no premium over the value of the hours they invested into the case. And that is not considering the risk of nonrecovery should their claims have fallen through.

* * *

Therefore, Mr. Smith's objection is OVERRULED.

**E. Abbatecola (ECF No. 570)**

Ms. Abbatecola submits a succinct objection: "I object to the Fee Application presented by these attorneys." ECF No. 570 at 1. Ms. Abbatecola's objection appears to be directed to a different Google case, *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), not this case. *See* Reply at 1 n.1.

In any event, even assuming that Ms. Abbatecola's objection is properly lodged against this case, the Court is ultimately satisfied that the attorney's fees request is reasonable. *See supra* III.A; *see also LinkedIn*, 309 F.R.D. at 592; *Wells Fargo*, 445 F. Supp. at 533.The Court's conclusion is further buttressed by the lodestar cross-check yielding a ratio of 1.01 (after the Court made modifications to Class Counsel's lodestar calculation). In other words, Class Counsel recover barely any premium over the amount of billed hours that went into the case. That is not to mention the billable hours omitted from the fees request due to billing discretion and the risks inherent in taking this case on a contingency basis.

Therefore, Ms. Abbatecola's objection is OVERRULED.

**F. Goldstone (ECF No. 571)**

Mr. Goldstone first objects that the *cy pres* provision's failure to identify who the *cy pres* recipient will be is a "material omission" that "prevents the class from verifying whether the chosen charity is heavily funded by Google or tied to the attorneys." ECF No. 571 at 1–2 ("Goldstone Objection"). The Court disagrees. Mr. Goldstone's objection appears to misunderstand the *cy pres* provision. The *cy pres* provision does not enable an organization to receive a "multi-million-dollar windfall" as Mr. Goldstone suggests. Goldstone Objection at 2. Leftover funds will be redistributed until it becomes economically infeasible to distribute the remainder. *See* ECF No. 567-2 ¶ 12. That is, if there is $100 left in the fund but it costs $101 to redistribute the remainder, only then would the remainder be distributed to a *cy pres* recipient. And all that is after Class Counsel move to do so and the Court approves. Indeed, selection of a *cy pres* recipient is contingent on further approval by the Court, as Mr. Goldstone himself acknowledges. *See* Goldstone Objection at 1.

Mr. Goldstone also objects that the fees request far exceeds the Ninth Circuit's 25% benchmark. As the Court previously discussed, the *Vizcaino* factors and lodestar cross-check buttress the Court's finding that the requested fees are reasonable. Moreover, Mr. Goldstone's objection appears principally founded on the view that "99.5% of the notified class will receive nothing." Goldstone Objection at 2. But as Class Counsel persuasively explain, "[t]he 171 million delivered Notices" is not the class size, but "is simply the notice population of those *who potentially could be* Settlement Class Members." Reply at 14 (original emphases).

Furthermore, Mr. Goldstone's criticisms of the "email-blast notice campaign" and "high-friction claim form" both (1) undersells additional steps taken by A.B. Data beyond email notices; and (2) are contradicted by the more than 1.49 million timely claims A.B. Data has received as of September 17, 2026. Teichmiller Decl. ¶ 13. As discussed previously, A.B. Data sent email notices to 173,814,291 valid email addresses with a 98.76% successful delivery rate. Teichmiller Decl. ¶ 7. A.B. Data also sent reminder emails. *See* Teichmiller Decl. ¶ 8. And A.B. Data also implemented a social and digital media campaign and set up a toll-free telephone line. *See* Teichmiller Decl. ¶ 9–13; Parks Decl. ¶¶ 14, 17–18.

Therefore, Mr. Goldstone's objection is OVERRULED.

**G. Brown (ECF No. 572-1)**

Ms. Brown objects that: (1) she cannot supply serial numbers and proof of purchase for the devices she purchased; (2) her children were minors when the devices were used; and (3) the Plan of Allocation is "unspecified." ECF No. 572-1 at 1-2. Ms. Brown's first objection fails for the same reasons Mr. Smith's similar argument fails. *See supra* IV.D. Those requirements are necessary and practical to prevent fraud. The second objection also fails because Ms. Brown's children, according to her exhibits, are now adults and could have filed their own claims under the Privacy Settlement Class. *See* ECF No. 573-3, Ex. 4. Ms. Brown's third objection that the Plan of Allocation is "unspecified" also fails. The Plan of Allocation is available on the Settlement Website accompanied by explanations and estimates regarding the potential payout. *See* Teichmiller Decl. ¶ 16; ECF No. 549-1 ¶ 53; ECF No. 567 at 10.

Therefore, Ms. Brown's objection is OVERRULED.

United States District Court
Northern District of California

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Motion for Final Approval of the Class Action Settlement is GRANTED;

a. The Court CERTIFIES Plaintiff Kumandan as the Class Representative for the Purchaser Settlement Class, and Plaintiffs Kumandan, Melissa Spurr, Lourdes Galvan, and Eleeanna Galvan as the Class Representatives for the Privacy Settlement Class;

(2) The Motion for Attorney's Fees, Expenses, and Service Awards is GRANTED IN PART AND DENIED IN PART;

a. Class Counsel are awarded attorneys' fees in the amount of $22,666,666.7;

b. Class Counsel are awarded litigation expenses in the amount of $1,021,738.40;

c. The Class Representatives are awarded Service Awards in the amount of $5,000 each;

(3) The objections are OVERRULED;

(4) This order terminates ECF Nos. 566 and 567.

(5) Class Counsel SHALL submit a proposed judgment consistent with this Order and attach to it the list of class members who opted out of this settlement.

Dated: October 13, 2026

BETH LABSON FREEMAN
United States District Judge